**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| *In re Six Flags Entertainment Corp. Securities Litigation* | Civil Action No. 4:20-cv-00201-P<br><br>CLASS ACTION |

**PLAINTIFFS' MOTION TO AMEND OR SET ASIDE THE JUDGMENT**
**UNDER FED. R. CIV. P. 59(E) AND FOR LEAVE TO FILE AN AMENDED**
**COMPLAINT UNDER FED. R. CIV. P. 15(A), AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 3

I.      FE1, WHO OVERSAW CONSTRUCTION OF THE CHINA PARKS FOR SIX
        FLAGS, CONFIRMED THAT THE PARKS WERE "IRREVERSIBLY OFF-
        TRACK" ............................................................................................................................ 3

ARGUMENT ............................................................................................................................... 7

I.      THE COURT SHOULD RECONSIDER ITS DISMISSAL WITH PREJUDICE,
        RE-OPEN THE CASE, AND GRANT LEAVE TO AMEND ......................................... 7

        A.      The Liberal Rule 15(a) Standard Applies to Plaintiffs' Motion ............................ 8

        B.      The Proposed Amendment Would Not Be Futile .................................................. 10

        C.      Defendants Would Not Be Unduly Prejudiced by Amendment ........................... 16

        D.      There is No Undue Delay, Bad Faith, or Dilatory Motive.................................... 17

CONCLUSION........................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) ......................................................................................13

*Bamm, Inc. v. GAF Corp.*,
651 F.2d 389 (5th Cir. 1981) ......................................................................................17

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ......................................................................11

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ......................................................................................10

*Dawes v. Imperial Sugar Co.*,
975 F. Supp. 2d 666 (S.D. Tex. 2013) ........................................................................10

*DeGruy v. Wade*,
586 F. App'x 652 (5th Cir. 2014) .................................................................................8

*In re DePugh*,
409 B.R. 84 (Bankr. S.D. Tex. 2009) .........................................................................16

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) .....................................................................................8, 9

*Foman v. Davis*,
371 U.S. 178 (1962).....................................................................................................9

*Gadin v. Societe Captrade*,
2009 WL 1704049 (S.D. Tex. June 17, 2009).............................................................17

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .....................................................................................9, 10

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ......................................................................................14

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*,
537 F.3d 527 (5th Cir. 2008) .....................................................................................13, 14

*Inst'l Investors Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)........................................................................................14

*JECO Inv. P'ship v. Pac. Life Ins. Co.*,
2020 WL 6322003 (S.D. Tex. Oct. 28, 2020)...............................................................8

*Kinder Morgan, Inc. v. Crout*,
   814 F. App'x 811, 815 (5th Cir. 2020). ......................................................................8

*Lowrey v. Texas A&M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ...................................................................................16

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...............................................................................15

*Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
   935 F.3d 424 (5th Cir. 2019) ...................................................................................13

*N. Port Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*,
   Case No. 3:11-cv-03119-B (N.D. Tex.)............................................................... 13-14

*Omega Hosp., LLC v. United Healthcare Servs., Inc.*,
   389 F. Supp. 3d 412 (M.D. La. 2019)....................................................................9, 17

*Osborn v. Ekpsz, LLC*,
   821 F. Supp. 2d 859 (S.D. Tex. 2011) ................................................................ 16-17

*Owens v. Jastrow*,
   789 F.3d 429 (5th Cir. 2015) ...................................................................................13

*In re Pilgrim's Pride Corp. Sec. Litig.*,
   2010 WL 3257369 (E.D. Tex. Aug. 17, 2010) ...........................................................9

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................................8, 9

*Smith v. EMC Corp.*,
   393 F.3d 590 (5th Cir. 2004) .................................................................................8, 16

*StoneEagle Servs., Inc. v. Valentine*,
   2013 WL 12123938 (N.D. Tex. Mar. 21, 2013) ......................................................16

*Stripling v. Jordan Prod. Co.*,
   234 F.3d 863 (5th Cir. 2000) ...................................................................................10

*U.S. ex rel. Adrian v. Regents of the Univ. of Cal.*,
   363 F.3d 398 (5th Cir. 2004) .....................................................................................9

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) .....................................................................................9

*Van Noppen v. InnerWorkings, Inc.*,
   136 F. Supp. 3d 922 (N.D. Ill. 2015) .......................................................................14

iii

*Verizon Emp. Benefits Comm. v. Adams*,
    2006 WL 889997 (N.D. Tex. Apr. 5, 2006) ...........................................................................16

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................14

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................10

Fed. R. Civ. P. 15(a) ...................................................................................................1, 3, 8, 9, 10

Fed. R. Civ. P. 59(e) ......................................................................................................1, 3, 8, 17

**OTHER AUTHORITIES**

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357
    (1969)......................................................................................................................................10

Lead Plaintiffs Oklahoma Firefighters Pension and Retirement System and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Plaintiffs") hereby submit this Motion to Amend or Set Aside the Judgment Under Fed. R. Civ. P. 59(e) and for Leave to File an Amended Complaint Under Fed. R. Civ. P. 15(a) ("Motion"), and Memorandum in Support.

## INTRODUCTION

As the Court is aware, this securities class action arises from Defendants' alleged false and misleading statements concerning the progress and expected opening dates of three multibillion-dollar Six Flags parks in China. The Complaint[1] alleges that, while Six Flags' executives represented to investors that construction of the China parks was "ongoing" and "remained on schedule" to open in 2019 or the first months of 2020, in fact, from the beginning of the Class Period it was impossible for Six Flags to meet these goals—and Defendants knew it. The Complaint bases these allegations in large measure upon the account of Former Employee 1 ("FE1"), Six Flags International's Director of International Construction and Project Management throughout almost all of the Class Period, who was personally responsible for overseeing the China parks' construction and reporting on their progress to Six Flags' headquarters. FE1 provided extensive detail, alleged in the Complaint, concerning the numerous concrete steps in the parks' construction that would already have had to occur for Defendants' multiple statements to be true at the time they were made—but had not yet occurred.

---

[1] "Complaint" refers to Plaintiffs' July 2, 2020 Consolidated Class Action Complaint (ECF No. 50), and references to "CAC ¶ __" are to paragraphs of the Complaint. References to "PAC ¶ __" are to paragraphs of Plaintiffs' [Proposed] Amended Consolidated Class Action Complaint (the "PAC" or "Proposed Amended Complaint"), attached as Exhibit A. A redline of the PAC to the Complaint is attached as Exhibit B. Terms not otherwise defined herein retain the meanings assigned in the Complaint, and all emphasis is added unless noted otherwise.

On March 3, 2021, the Court entered an Opinion and Order (the "Order" or "Op.") dismissing the Complaint with prejudice. ECF No. 69. The Court entered judgment that same day. ECF No. 70. The Court based its decision in part on a "discount" that it applied to allegations of FE1's accounts because FE1 is not named in the Complaint. While Plaintiffs respectfully disagree with the Court's decision, as discussed below, Plaintiffs believe their Amended Complaint, attached hereto as Exhibit A, adds allegations that remedy the deficiencies noted in the Order and states cognizable claims under the Court's articulation of governing law.

Among other things, the PAC provides, for the first time, a screenshot of FE1's actual resignation letter, which he sent to Six Flags' Senior Vice President, who reported directly to Defendant Reid-Anderson. In his letter, FE1 wrote in scathing terms that the "projects in China are perhaps irreversibly off-track," and "Six Flags should have taken a legal stance against [Riverside] some time ago. . . . and to this date we have done nothing to remedy the situation." PAC ¶ 259. FE1 condemned the hopeless condition of the China parks project, calling assurances that Six Flags made to him about the project a "blatant misrepresentation" and writing that, "from the very first day I landed in China, it was obvious to me (as well as my coworkers) that the word 'mess' only began to describe the state this project was in." *Id*. And FE1 stressed that he had "never seen such a poorly planned project set into motion in this industry," and was resigning because he "cannot sacrifice" the "reputation of success, integrity, and professionalism" he had built for himself in the industry. *Id*.

At FE1's request and to protect him from potential retaliation or being "blackballed," Lead Counsel has not named him in a public filing. However, given the Proposed Amended Complaint's inclusion of this scathing resignation letter, which was internal to Six Flags and circulated amongst senior management, there can be no question that FE1 served in his identified role during the Class

2

Period and knew the information alleged in the Complaint, as he was one of the executives at Six Flags most knowledgeable about the parks' construction and the relevant information provided to Defendants. Indeed, Defendants have never challenged FE1's role, reports as set forth in the PAC, or close personal knowledge of the progress and timeline of the China parks' development. In light of this additional proof of FE1's identity, role at the Company, and internal reporting of facts and views entirely consistent with Plaintiff's allegations, there should be little or no "discount" applied to his allegations solely because—in order to protect him from potential retaliation—he is unnamed.

Accordingly, and as discussed below, Plaintiffs move the Court to amend or set aside the Judgment under Rule 59(e) and request leave to amend the Complaint and file the attached PAC under Rule 15(a)(2).

**FACTUAL BACKGROUND[2]**

**I.      FE1, WHO OVERSAW CONSTRUCTION OF THE CHINA PARKS FOR SIX FLAGS, CONFIRMED THAT THE PARKS WERE "IRREVERSIBLY OFF-TRACK"**

Plaintiffs' Complaint includes the detailed accounts of FE1, who as the Company's Director of International Construction and Project Management was responsible for overseeing the China parks' construction. *See* CAC ¶¶ 8-10, 12, 71, 83-84, 88-89, 91-93, 96, 98-99, 103-07, 119-21, 127, 129. Plaintiffs' Proposed Amended Complaint includes additional detail concerning FE1, which further support Plaintiffs' securities fraud claims.

---

[2] Plaintiffs's thorough factual allegations are set forth in the Complaint and PAC and detailed in Plaintiffs' opposition to Defendants' motion to dismiss. ECF No. 54 at 3-8. In the interest of efficiency, Plaintiffs primarily focus here on the facts most relevant to this Motion, including new information that was included in the Complaint.

3

In his role overseeing the China parks' construction, FE1 served as Six Flags' eyes and ears on the ground in China with regard to both the parks' construction and Six Flags' relationship with Riverside Investment Group, the Company's partner in China with which it contracted to build the China parks in exchange for substantial licensing and management fees. PAC ¶¶ 72, 85, 87.

FE1's accounts establish that Defendants made materially false and misleading misrepresentations and omissions throughout the Class Period. Among other things, Defendants represented to investors that the "timing of the parks" to begin opening in 2019 was "exactly the same as previously disclosed" (i.e., that the first park would open in 2019), Six Flags had "a first-class partner in China with Riverside" that had "a lot of assets" and was in "great shape," and Six Flags and Riverside were "continuing to build those parks." PAC ¶¶ 80, 84, 119, 121, 190, 209-10.

Contrary to those positive public statements, however, as FE1 explained in his August 3, 2019 resignation letter to Six Flags—consistent with his Class Period reports to senior management, and accounts provided during Plaintiffs' investigation—"the projects [Six Flags was] undertaking in China [we]re perhaps irreversibly off-track." PAC ¶ 259. The Proposed Amended Complaint sets forth the full text of FE1's resignation letter, as well as a screenshot of the letter itself. The letter reads:

> Dear Kathy,
>
> I am writing this letter to inform you that after careful consideration, I have decided to leave my position as Director of International Construction with the Six Flags company. I came to work here at Six Flags to be part of something big; something never done before. It was worth the sacrifices I made to do so, or so I thought. As you are aware, the projects we are undertaking in China are perhaps irreversibly off-track.
>
> The current development partners [Riverside] are unable to control their projects and have made it clear that they have zero funds remaining to proceed with. Project managers show zero management experience, and our partners have failed to retain enough funds to support their payroll. Employees have not been paid in nearly 90

4

days and are instructed to continue working anyway.  In a completely unacceptable (and frankly disgusting) manner, they are seemingly forcing abused employees to resign under duress, while owed nearly 3 months back pay.

Six Flags should have taken a legal stance against this partner some time ago. . . . and to this date we have done nothing to remedy the situation.  This, combined with a complete lack of monetary support from our own company (Six Flags), forces me to remove myself from this situation as quickly as possible.

The examples of Six Flags' lack of support for our own team are plentiful and well-documented.  The company has failed to retain an adequate operating budget for this project to keep it viable.  One of the key questions I asked during my interview process was, "Is this project already a mess?"  I was assured by two of Six Flags' top management staff that this was not the case at all.  However, from the very first day I landed in China, it was obvious to me (as well as my coworkers) that the word "mess" only began to describe the state this project was in.

This was a blatant misrepresentation to me on behalf of Six Flags.  At first, I attempted to rally our team request support from a true program management company and take over management of the project.  However, it soon became apparent that Six Flags would not be dedicating ANY resources to help make this happen—whether it be from a program management, legal, contract bre[a]ch enforcement, or financial perspective. . . .

The fact that Six Flags will continue to do business with a partner whose practices are equivalent to that of illegal child labor is astounding to me.  My initial perception of the Six Flags company has forever been altered, as I now feel the company cares more about its quarterly fiscal reports than it does this project, or any of its employees tied to it in the field.

Six Flags has chosen a partner that will not be successful in building a safe and reliable theme park.  I have been in the theme park and commercial construction business for a very long time, and have built a reputation of success, integrity, and professionalism that I cannot sacrifice.  I have never seen such a poorly planned project set into motion in this industry. . . . I cannot afford to have my name attached to a project that will be constructed so poorly and without care, and I refuse to be party to the misdealings and unscrupulous behavior of our partner.

My last day with Six Flags will be September 20th, 2019.  Please call me at your earliest convenience to discuss.

*Id*.

FE1's strident warnings about Riverside and that the China parks were "irreversibly off-track" were accurate when made.  Those contemporaneously expressed concerns were also

5

confirmed by later events, including Defendants' corrective disclosures at the end of the Class

Period, on January 10 and February 20, 2020, that (1) Riverside had defaulted on its payment

obligations to Six Flags; (2) Six Flags was holding Riverside in default; (3) Six Flags ultimately

terminated its agreements with Riverside; and (4) Six Flags would not recognize any revenues from

the China parks.  PAC ¶¶ 147-65.

In addition to FE1's full resignation letter, the Proposed Amended Complaint includes other

factual allegations that underscore FE1's credibility and strengthen Plaintiffs' allegations of falsity

and scienter.  Among other things, the Proposed Amended Complaint adds allegations that evidence

FE1's knowledge of Riverside's failures to develop the China parks or make necessary payments

to vendors, employees, and Six Flags, all of which meant the parks would not open on time.  Those

details include:

- FE1 has worked designing and developing theme parks and attractions for industry leaders since 1991, including more than a decade spent working for Disney (PAC ¶ 72), which experience serves as a basis for his understanding of the problems plaguing Riverside and the parks, including that given the derelict conditions on the ground it was impossible for the parks to open on time;

- FE1 interacted on a day-to-day basis with the Riverside team that was onsite in his building (PAC ¶ 85), which informed his knowledge of Riverside's fundamental problems developing the parks;

- FE1 attended industry trade shows in Hong Kong and Shanghai in 2018 and 2019, where he personally spoke to vendors who were irate because Riverside placed orders for numerous rides for the China parks, but had not paid for any of them, which led to every ride order that Riverside placed being cancelled (PAC ¶ 95); and

- Six Flags employees in Beijing told FE1 that Six Flags was owed $18 million by Riverside, and Six Flags executives were going to have a conversation about with Riverside's Chairman Li about the debt (PAC ¶ 104).

The Amended Complaint also adds further detail evidencing that the Individual Defendants

were well informed about the critical problems with Riverside and the parks' development, contrary

to Defendants' positive statements on those topics.  The Complaint alleged that FE1 had weekly or

biweekly meetings with the entire Six Flags team in China, including David McKillips, who oversaw that team and reported directly to Defendant Reid-Anderson. FE1 presented regular presentations and reports during those meetings that documented the problems on the ground. The weekly presentations and periodic reports that FE1 provided to McKillips included photographic and textual updates on sections of each park, specifying where there had been no progress over "x number of days." PAC ¶¶ 253-54.

The Proposed Amended Complaint includes additional allegations that two Six Flags executives, McKillips and Six Flags Zhejiang President Mark Kane, expressly informed FE1 these presentations were to be presented to the Six Flags Board of Directors, including Reid-Anderson. PAC ¶¶ 109, 253, 255. The Six Flags Board met six times in 2018 and eight times in 2019, during which Reid-Anderson and the Board reviewed the reports, analyses, and materials provided to them. PAC ¶¶ 109, 255.

In addition, and further corroborating Defendants' knowledge, the Proposed Amended Complaint includes additional detailed allegations demonstrating that knowledge about the China parks' failures was widespread within Six Flags. Those allegations include that FE1 voiced his concerns about Riverside and the China parks' development on a conference call with 17 people from Six Flags' U.S. headquarters and in China, during which he stated that Riverside was in breach of contract and that Six Flags should hold Riverside in breach, only to be told to hang on and that it would be discussed later. PAC ¶ 256.

**ARGUMENT**

## I.   THE COURT SHOULD RECONSIDER ITS DISMISSAL WITH PREJUDICE, RE-OPEN THE CASE, AND GRANT LEAVE TO AMEND

Plaintiffs respectfully request that the Court reconsider its decision to dismiss the Complaint with prejudice and allow Plaintiffs to file an amended complaint setting forth new allegations.

7

Plaintiffs propose to amend the Complaint to add the full text of FE1's resignation letter, and additional details provided by FE1. Leave to amend is warranted under the liberal Rule 15(a) standard because the proposed amendment would not be futile and Defendants would not be prejudiced by amendment.

### A.    The Liberal Rule 15(a) Standard Applies to Plaintiffs' Motion

When judgment has already been entered, a plaintiff can request leave to amend "only by either appealing the judgment, or seeking to alter or reopen the judgment under Rule 59 or 60." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). Accordingly, Plaintiffs seek leave to amend under Rule 59(e). Motions for leave to amend "under Rule 59(e) should be governed by the same considerations controlling the exercise of discretion under [R]ule 15(a)." *Id*. (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981)); *see also, e.g.*, *DeGruy v. Wade*, 586 F. App'x 652, 655 (5th Cir. 2014) ("Where a district court has entered a judgment on the pleadings and the plaintiff moves under Rule 59(e) to . . . amend the complaint, the court should analyze the motion under the Rule 15(a) standard.") (citations omitted). The Fifth Circuit recognizes that "under these circumstances, the considearations for a Rule 59(e) motion are governed by Rule 15(a)," and accordingly "review[s] the district court's denial of a Rule 59(e) motion for abuse of discretion, in light of the limited discretion of Rule 15(a). This discretion is limited because Rule 15(a) evinces a bias in favor of granting leave to amend." *Kinder Morgan, Inc. v. Crout*, 814 F. App'x 811, 815 (5th Cir. 2020) (quotation marks, citations, and brackets omitted).

"Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *JECO Inv. P'ship v. Pac. Life Ins. Co.*, 2020 WL 6322003, at *3 (S.D. Tex. Oct. 28, 2020) (quoting *Rosenzweig*, 332 F.3d at 863). Under Rule 15(a), a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation

8

omitted).  Leave to amend is "freely given" absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of the amendment." *Rosenzweig*, 332 F.3d at 864 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Courts have little discretion to deny leave to amend under Rule 15(a).  *Dussouy*, 660 F.2d at 598 ("[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").  "[O]utright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion."  *U.S. ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) (citing *Foman*, 371 U.S. at 182).  Even if the Court otherwise denies reconsideration, the presumption in favor of granting leave to amend remains intact.  *See, e.g.*, *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 389 F. Supp. 3d 412, 429–31 (M.D. La. 2019) (denying reconsideration but finding no substantial reason to deny the plaintiff an opportunity to amend its complaint a second time).

There is no substantial reason to deny Plaintiffs leave to amend.  Plaintiffs have not previously moved to amend, and seek only to file a <u>first</u> amended complaint following the filing of the first Consolidated Complaint.  Leave to file a first amended complaint is routinely granted. *See, e.g.*, *Foman*, 371 U.S. at 182; *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *In re Pilgrim's Pride Corp. Sec. Litig.*, 2010 WL 3257369, at *28 (E.D. Tex. Aug. 17, 2010) (granting leave to amend securities class action complaint where plaintiff had not "been given multiple chances to correct pleading deficiencies" and court was "not convinced that granting [] leave to amend  . . . would be futile").

Additionally, the Court did not dismiss the Complaint on any jurisdictional basis, nor for any reason that could not be remediated by way of an opportunity to replead. Rather, the Court dismissed the Complaint for failure to state a claim. "When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a)." *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 685 (S.D. Tex. 2013) (citing *Great Plains Tr. Co.*, 313 F.3d at 329). Accordingly, leave to amend is appropriate here.

## B.     The Proposed Amendment Would Not Be Futile

As a threshold matter, leave to amend would not be futile. In considering whether a proposed amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in [Plaintiffs'] behalf, the [amended] complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1969)). Because the additional allegations substantially bolster the existing allegations in the Complaint, the Amended Complaint will also satisfy Rule 12(b)(6) and amendment would not be futile.

In its Order, the Court applied a "discount" to the allegations from FE1 because the Complaint does not provide his name. *See, e.g.*, Op. at 32-33. As result of this "discount," the Court assigned little weight to the allegations in the Complaint, that, among other things, Riverside had failed to pay key ride vendors, leading them to cancel contracts for ride construction that had not been renewed by the time FE1 left in September 2019. CAC ¶¶ 89-93. Given the necessary lead time needed to obtain materials and to build the rides, which ranged from 18 months to five years, it was impossible for Six Flags to meet the 2019 deadline for the Zhejiang park opening

10

Defendants touted early in the Class Period, or the January/February 2020 deadline Defendants announced in October 2018.

These facts, along with others detailed in the Complaint concerning Riverside's failure to undertake necessary predicate steps to meet the stated deadlines (CAC ¶¶ 93-96, 103-04), rendered Defendants' statements materially false and misleading.  This is true even under the Court's articulated standard for such statements, pursuant to which Plaintiffs must "plead specific facts that show how . . . problems and difficulties <u>necessarily precluded</u>" Six Flags from meeting its announced park opening dates.  *See* Op. at 41 (quoting *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012)) (emphasis added).

The Amended Complaint adds critical new details that lend further weight to Plaintiffs' allegations generally, and FE1's accounts specifically.  <u>First</u>, the PAC adds significant new details and facts to support FE1's credibility and trustworthiness, to rebut any imposition of an extensive "discount" to his accounts.  As the PAC alleges, FE1 resigned from Six Flags in September 2019, citing in his resignation letter to the Senior Vice President of the Company—who reported directly to Defendant Reid-Anderson—the fact that the "projects in China are perhaps irreversibly off-track" and that "Six Flags should have taken a legal stance against this partner some time ago. . . . and to this date we have done nothing to remedy the situation."  PAC ¶ 259.  FE1 concluded, "The fact that Six Flags will continue to do business with a partner whose practices are equivalent to that of illegal child labor is astounding to me.  My initial perception of the Six Flags company has forever been altered, as I now feel the company cares more about its quarterly fiscal reports than it does this project, or any of its employees tied to it in the field."  *Id.*

Significantly, the PAC includes a full screenshot and a copy of the text of FE1's full resignation letter to Six Flags.  PAC ¶¶ 258-59.

11



(Internal redactions by FE1.)

This internal Six Flags document leaves no question that FE1 is who Plaintiffs say he is—

Six Flag's International Director of International Construction and Project Management during the

Class Period, who was one of the executives at Six Flags who was most knowledgeable about the

progress of the parks' construction and the information provided to Defendants.  Indeed, Defendants

have never questioned the existence and identify of FE1, or that he was in a position to know the

facts attributed to him concerning the construction of the China parks that the Complaint alleged.

Given this additional proof of FE1's identity, role at the Company, and internal reporting of

facts and views entirely consistent with those facts alleged in the Complaint, there should be little

or no "discount" applied to allegations derived from his reports solely because he is unnamed. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002) (requiring only "sufficient particularity to support the probability that a person in the position occupied by the source as described would possess the information pleaded"). Moreover, FE1's resignation letter—which clearly conveys facts that he understands to have been well-known at the top levels of the Company before he provided this letter—further strengthens the inference of Defendants' scienter and is consistent with his accounts that he had been regularly providing reports for Defendant Reid-Anderson and the Board demonstrating the lack of progress and issues at the China parks.

The only three cases where the Fifth Circuit has discussed whether and to what extent any "discount" should be applied to confidential witnesses concern facts far less compelling than this case, and raise questions concerning the witnesses' accounts not present here. In *Shaw*, the allegations from confidential sources that the court held should be discounted "lack[e]d specificity about what [a named defendant] may have known or, for that matter, was reckless not to have known." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*, 537 F.3d 527, 535 (5th Cir. 2008). In *Pier 1 Imports*, the confidential witness's accounts concerned events "well before the class period," were not alleged to have provided information to the individual defendants, and "fail[ed] to tie [the witness] statements" to the alleged fraud. *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 433-34 (5th Cir. 2019). And in *Owens*, the court applied a discount to an email that the confidential witness described sending to the individual defendants prior to the Class Period and the email was described only generally in plaintiff's complaint, rather than quoted or having the actual email included in the complaint; the court nevertheless held the email to be "relevant to scienter." *Owens v. Jastrow*, 789 F.3d 429, 432-43 & n.12 (5th Cir. 2015); *see N. Port*

13

*Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*, Case No. 3:11-cv-03119-B (N.D. Tex.), ECF No. 68 at ¶ 59.

None of those cases presented the ample indicia of veracity and reliability present here: a witness with direct responsibility over the specific facts and events at issue, who provided reports detailing the specific problems at issue that went to the Individual Defendants during the Class Period, which directly contradicted Defendants' alleged misrepresentations, and which were laid out in lengthy documentary evidence that is fully reproduced for the Court's review. Accordingly, there is no question that FE1's accounts, which go well beyond the cases where the Fifth Circuit discussed a confidential witness discount, are credible and support Plaintiffs' allegations.

Moreover, in *Shaw*, the Fifth Circuit relied on the Seventh Circuit's *Higginbotham* decision to impose a discount on confidential witness allegations. *Shaw*, 537 F.3d at 535 (citing *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007)). Courts applying *Higginbotham* "decline[] to discount *categorically*" confidential witness allegations "where, as here, [p]laintiff[s] ha[ve] described the witnesses with enough detail that this Court can determine that the confidential witnesses have a foundation for their allegations." *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 934-35 (N.D. Ill. 2015) (emphasis in original). *See also, e.g.*, *Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 262-63 (3d Cir. 2009) (distinghishing *Higginbotham*; "the weight accorded to anonymous sources will depend in large part on the level of detail with which they are described. . . . Other circuits have staked out similar positions . . . . Shareholders have adequately described the duration of each CW's employment, the time period during which the CWs acquired the relevant information, and how each CW had access to such information"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (question is "whether a complaint . . . provide[s] a basis for attributing the facts reported by that witness");

14

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239 (11th Cir. 2008) ("Confidentiality . . . should not eviscerate the weight given [to confidential witnesses] if the complaint otherwise fully describes the foundation or basis of the confidential witnesses's knowledge").

Second, the PAC provides additional facts concerning Defendant Reid-Anderson's and Defendant Barber's scienter. For example, the PAC adds allegations confirming that FE1 was directly told by two different executives that his presentations demonstrating the lack of progress at the China parks were provided to the Board of Directors and Defendant Reid-Anderson—facts that directly contradicted Defendants' public statements about the parks' anticipated opening dates and progress toward those dates. PAC ¶¶ 253-55. This reporting was consistent with Six Flags' purported governance model by its Board of Directors. *Id*. Further, FE1 recounted a large-scale conference call with U.S. headquarters and the China office, in which FE1 announced that Riverside was in breach of contract and that Six Flags should hold Riverside in breach—concerns he had expressed repeatedly from his first days in his position, near the beginning of the Class Period. PAC ¶ 256. FE1 was told to just "hang on" and it would be discussed later. *Id*. These facts corroborate and further support the allegations of both Defendants' direct knowledge and the widespread knowledge within Six Flags of the issues with the China parks. These facts, together and collectively with those already alleged, support a strong inference of scienter.

Third, the PAC provides further detail concerning the basis for the Complaint's allegations concerning Riverside's financial condition and its impact on Six Flags and the parks' development. *See* Op. at 36-38. These allegations include the fact that there was a Riverside team onsite in FE1's building in Zhejiang, and he interacted with those Riverside employees on a day-to-day basis. PAC ¶ 85. The PAC further alleges that FE1 learned that Six Flags was owed $18 million by Riverside, and that Six Flags executives were going to have to go to Riverside's Chairman Li to discuss this

15

debt. PAC ¶ 104. The PAC further clarifies that Chinese court records provided the source of the allegations concerning Riverside's defaulted debts to other parties. PAC ¶ 105. These allegations further buttress the facts already alleged in the Complaint concerning FE1's knowledge of Riverside's failure to pay its vendors and employees, all of which was material information to Six Flags in evaluating whether Riverside could build the parks on the schedule Six Flags had announced.

### C.    Defendants Would Not Be Unduly Prejudiced by Amendment

Leave to amend is also appropriate because Defendants would not be unduly prejudiced. "In determining whether an amendment imposes undue prejudice, courts consider whether the amendment would require the defendant to reopen discovery and prepare a defense for a claim different from the one that was previously before the court." *Verizon Emp. Benefits Comm. v. Adams*, 2006 WL 889997, at *2 (N.D. Tex. Apr. 5, 2006) (citing *EMC Corp.*, 393 F.3d at 596). Here, there has been no discovery, and the proposed amendment adds only additional facts supporting the claims and theories alleged initially, not a new theory of recovery or new claims. *See, e.g.*, *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997) (undue prejudice where defendants are denied "notice of the nature of the complaint"); *In re DePugh*, 409 B.R. 84, 106 (Bankr. S.D. Tex. 2009) (undue prejudice concerns whether defendants are required "to respond to unexpected theories of recovery based on different facts than those originally pled").

Amendment at the motion-to-dismiss stage is generally considered non-prejudicial. *See StoneEagle Servs., Inc. v. Valentine*, 2013 WL 12123938, at *2 (N.D. Tex. Mar. 21, 2013) ("the probability that undue delay, bad faith, undue prejudice, and futility may be playing a role [in a motion for leave to amend] is low at this early stage"); *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 878 (S.D. Tex. 2011); *Gadin v. Societe Captrade*, 2009 WL 1704049, at *4 (S.D. Tex. June 17, 2009).

16

**D.      There is No Undue Delay, Bad Faith, or Dilatory Motive**

There is also no basis here to deny leave to amend on the basis of undue delay, bad faith, or dilatory motive.  Plaintiffs promptly seek leave to amend within the 28 days that Rule 59(e) allows following the entry of judgment (which was the same day as the Court's Order dismissing the case). *Omega Hospital*, from a district court in this Circuit, is instructive.  There, during the pendency of a second motion to dismiss, the plaintiff filed a brief in opposition but did not to seek leave to amend if the motion were granted.  *Omega Hosp.*, 389 F. Supp. at 430.  After the court granted the motion to dismiss and closed the case, the plaintiff "gleaned a misunderstanding of its case and deemed a second amendment was warranted and would be helpful to the [c]ourt."  *Id.*  The court found that the "minimal delay" between the dismissal of the complaint and the request to reopen the case warranted leave to amend.  *Id.*

Likewise, here, Plaintiffs believe that amendment is warranted and would assist the court in its consideration of Plaintiffs' securities fraud claims, and the accounts of FE1 that support those claims.  Accordingly, no undue delay, bad faith, or dilatory motive is present here, and leave to amend is warranted.  *See Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391–92 (5th Cir. 1981) (finding abuse of discretion by district court's denial of leave to amend where "[t]he record [was] devoid of facts that would indicate that counsel for [the plaintiff] acted in bad faith with any dilatory motive").

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court reconsider its Order dismissing the Complaint with prejudice, amend or set aside the Judgment, and grant Plaintiffs leave to amend the Complaint to add the particularized allegations set forth above.

17

DATED: March 31, 2021

Respectfully submitted,

*/s/ Katherine M. Sinderson*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Hannah Ross, *pro hac vice*
John Rizio Hamilton, *pro hac vice*
Katherine M. Sinderson, *pro hac vice*
Adam D. Hollander, *pro hac vice*
Christopher R. Miles, *pro hac vice*
1251 Avenue of the Americas
New York, NY 10020
Tel:      (212) 554-1400
Fax:      (212) 554-1444
hannah@blbglaw.com
johnr@blbglaw.com
katiem@blbglaw.com
adam.hollander@blbglaw.com
christopher.miles@blbglaw.com

*Lead Counsel for Lead Plaintiffs*

**McKOOL SMITH PC**
Lewis T. LeClair
Texas Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel:      (214) 978-4000
Fax:      (214) 978-4044
lleclair@mckoolsmith.com
*Liaison Counsel for Lead Plaintiffs*

18

## <u>CERTIFICATE OF CONFERENCE</u>

On March 31, 2021, I conferred with Daniel Cellucci, counsel for Defendants, concerning

Plaintiffs' request for leave to file an amended complaint.  Mr. Cellucci informed me that

Defendants oppose the request.

Dated: March 31, 2021                                    Respectfully submitted,


                                                    <u>/s/ Adam D. Hollander</u>
                                                    **BERNSTEIN LITOWITZ BERGER**
                                                      **& GROSSMANN LLP**
                                                    Adam D. Hollander, *pro hac vice*
                                                    1251 Avenue of the Americas
                                                    New York, NY 10020
                                                    Tel:    (212) 554-1400
                                                    Fax:    (212) 554-1444
                                                    adam.hollander@blbglaw.com

                                                    *Lead Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on counsel of

record through the Court's ECF Program on this 31st day of March, 2021.


Dated: March 31, 2021                          Respectfully submitted,



                                               */s/ Katherine M. Sinderson*_____
                                               **BERNSTEIN LITOWITZ BERGER**
                                                  **& GROSSMANN LLP**
                                               Katherine M. Sinderson, *pro hac vice*
                                               1251 Avenue of the Americas
                                               New York, NY 10020
                                               Tel:    (212) 554-1400
                                               Fax:    (212) 554-1444
                                               katiem@blbglaw.com

                                               *Lead Counsel for Lead Plaintiffs*