**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND LOCAL 103 IBEW, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**APPENDIX TO DEFENDANTS' BRIEF (A) IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND (B) IN RESPONSE**
**TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

Defendants Six Flags Entertainment Corporation ("Six Flags"), James Reid-Anderson

("Reid-Anderson") and Marshall Barber ("Barber"), (collectively, "Defendants"), by and through

their undersigned attorneys, file this appendix (the "Appendix") in connection with *Defendants'*

*Brief (A) in Support of Their Motion for Judgment on the Pleadings and (B) In Response to*

*Plaintiff's Motion for Leave to Amend its Complaint*.

| Exhibit | Description |
|---|---|
| **APPENDIX MATERIALS** ||
| 1. | *Electrical Workers Pension Fund Local 103 IBEW, et al. v. Six Flags Entertainment Corp., et al.*, 21-10865 (5th Cir.), Docket No. 44, Appellant's Reply Brief. |
| 2. | Declaration of Robert S. Gans in Support of Lead Plaintiff New Jersey's Motion for Class Certification Ex. B, *Feder v. Elec. Data Sys. Corp.*, 6:03-CV-00110-LED, (E.D. Tex.), ECF Nos. 124-2, 124-4 |

*/s/ Scott A. Fredricks*
Ralph H. Duggins
Texas Bar No. 06183700
Scott A. Fredricks
Texas Bar No. 24012657
Michael Ackerman
Texas Bar No. 24120454
**CANTEY HANGER LLP**
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Tel:    817-877-2800
Fax:    817-877-2807
rduggins@canteyhanger.com
sfredricks@canteyhanger.com
mackerman@canteyhanger.com

Jay B. Kasner (*pro hac vice*)
Scott D. Musoff (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
One Manhattan West
New York City, NY 10001
Tel:    212-735-3000
Fax:    212-735-2000
jay.kasner@skadden.com
scott.musoff@skadden.com

Jessie K. Liu (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
1440 New York Ave. NW
Washington, DC 20005
Tel:    202-371-7000
Fax:    202-393-5760
jessie.liu@skadden.com

*Co-Lead Counsel for Defendants Six Flags
Entertainment Corporation,
James Reid-Anderson and Marshall Barber*

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of May 2023, all counsel of record were served with the foregoing via E-File service.

/s/ Scott A. Fredricks

Ralph H. Duggins
Texas Bar No. 06183700
Scott A. Fredricks
Texas Bar No. 24012657
Michael Ackerman
Texas Bar No. 24120454
**CANTEY HANGER LLP**
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Tel:    817-877-2800
Fax:    817-877-2807
rduggins@canteyhanger.com
sfredricks@canteyhanger.com
mackerman@canteyhanger.com

*Co-Lead Counsel for Defendants Six Flags
Entertainment Corporation, James Reid-
Anderson and Marshall Barber*

# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 21-10865

OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,

*Plaintiff-Appellant,*

– v. –

SIX FLAGS ENTERTAINMENT CORPORATION;
JAMES REID-ANDERSON; MARSHALL BARBER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, FORT WORTH IN CASE NO. 4:20-CV-201
HONORABLE MARK TIMOTHY PITTMAN, U.S. DISTRICT JUDGE

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

LEWIS T. LECLAIR
MCKOOL SMITH
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
lleclair@mckoolsmith.com

JOHN RIZIO-HAMILTON
KATHERINE M. SINDERSON
ADAM HOLLANDER
BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400
johnr@blbglaw.com
katiem@blbglaw.com
adam.hollander@blbglaw.com

*Attorneys for Plaintiff-Appellant*

EXHIBIT
**1**

1

# TABLE OF CONTENTS

I.    Plaintiff Has Alleged Actionable Misstatements ...................................1

     A.    Defendants' Misstatements Were False When Made .................1

          1.    Defendants' Timetable Statements Were False................1

          2.    Defendants' Construction Statements Were, At
                Minimum, Materially Misleading ...................................4

          3.    Defendants' Riverside Statements Were False ...............7

          4.    Defendants' Revenue-Recognition Statements
                Were False ......................................................................9

     B.    Defendants' Other Arguments Are Unavailing .........................9

          1.    The PSLRA Safe Harbor Does Not Apply......................9

          2.    Defendants' Misstatements Were Not Puffery Or
                Non-Actionable Opinions...............................................11

II.   Plaintiff Adequately Alleged Scienter ................................................13

     A.    The District Court Failed To Credit Defendants' Own
           Admissions Of Knowledge And The Former-Employee
           Accounts....................................................................................14

     B.    Reid-Anderson And Barber Were Motivated To Trigger
           Outsized Bonuses, Which They Missed Only When
           Required By Six Flags' Auditor ................................................19

     C.    The China Parks' Core Importance Supports Scienter.............21

     D.    Executive Resignations Support Scienter.................................23

     E.    Defendants' Opposing Inferences Fail .....................................24

III.  The District Court Abused Its Discretion In Denying Leave To
      Amend ..................................................................................................26

CONCLUSION ................................................................................................27

## TABLE OF AUTHORITIES

CASES                                                                                      Page(s)

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ...........................................................................8

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995) ...............................................................................8

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010) .......................................................5, 13

*Barrie v. Intervoice-Brite, Inc.*,
    397 F.3d 249 (5th Cir. 2005) ...........................................................................9

*Berger v. Beltic*,
    248 F. Supp. 2d 597 (N.D. Tex. 2003) .............................................................8

*Brody v. Zix Corp.*,
    2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) ...............................................16

*Budde v. Global Power Equipment Group, Inc.*,
    2017 WL 6621540 (N.D. Tex. Dec. 27, 2017)................................................15

*In re Capstead Mortgage Corp. Securities Litigation*,
    258 F. Supp. 2d 533 (N.D. Tex. 2003) ...........................................................3, 9

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016)............................................................20

*Dawes v. Imperial Sugar Co.*,
    975 F. Supp. 2d 666 (S.D. Tex. 2013)............................................................22

*Druskin v. Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004)............................................................4

*In re Express Scripts Holding Co. Sec. Litig.*,
    2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017)....................................................8

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018)................................................25

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
    764 F. App'x 127 (2d Cir. 2019) ...............................................................25

*Fla. St. Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) ...................................................................21

*In re Fleming Cos. Sec. & Derivative Litig.*,
    2004 WL 5278716 (E.D. Tex. June 16, 2004) .......................................15

*Goldstein v. MCI WorldCom*,
    340 F.3d 238 (5th Cir. 2003) ...................................................................19

*Hall v. Rent-A-Center, Inc.*,
    2017 WL 6398742 (E.D. Tex. Oct. 19, 2017)..................................16, 24

*Heck v. Orion Group Holdings, Inc.*,
    468 F. Supp. 3d 828 (S.D. Tex. 2020).....................................................16

*Huang v. EZCorp, Inc.*,
    2016 WL 6092717 (W.D. Tex. Oct. 18, 2016)........................................18

*Hutchins v. NBTY, Inc.*,
    2012 WL 1078823 (E.D.N.Y. Mar. 30, 2012)..........................................8

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ...................................................................19

*Kurtzman v. Compaq Computer Corp.*,
    2000 WL 34292632 (S.D. Tex. Dec. 12, 2000)........................................5

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
    810 F.3d 915 (5th Cir. 2016) .......................................................21, 22, 23

*Lormand v. US Unwired Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...........................................................*passim*

*Magruder v. Halliburton Co.*,
    359 F. Supp. 3d 452 (N.D. Tex. 2018) ......................................................9

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006) ...................................................................12

iii

4

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................................20

*Marcus v. J.C. Penney Co.*,
    2015 WL 5766870 (E.D. Tex. Sep. 29, 2015)......................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)................................................................................21

*Miyahira v. Vitacost.com, Inc.*,
    2011 WL 13136262 (S.D. Fla. Dec. 8, 2011)........................................3

*Nasyrova v. Immunomedics, Inc.*,
    2015 WL 382846 (D.N.J. Jan. 28, 2015)...............................................8

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) ...............................................................15

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) ...............................................................18

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    300 F. Supp. 3d 551 (S.D.N.Y. 2018) ...................................................8

*Plaisance v. Schiller*,
    2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) .....................................21

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) .................................................12, 15, 22

*Police & Fire Ret. Sys. of Detroit v. Crane*,
    87 F. Supp. 3d 1075 (N.D. Cal. 2015)..................................................21

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018) ................................................12

*Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) ...............................................................19

*Spitzberg v. Houston Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) .........................................................*passim*

*Stripling v. Jordan Prod. Co., LLC*,
 234 F.3d 863 (5th Cir. 2000) ...................................................................26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)...................................................................13, 14

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
 273 F. Supp. 3d 650 (N.D. Tex. 2017) ...............................................17

*In re UTStarcom, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009)...............................................24

*In re Venator Materials PLC Sec. Litig.*,
 2021 WL 2980581 (S.D. Tex. July 7, 2021) ...............................2, 6, 16

**STATUTES**

15 U.S.C. § 78u-5(c)(1)(B) ...................................................................11

In its Opening Brief, Plaintiff explained how the District Court erred in dismissing the Complaint. Defendants' arguments in response lack merit, and Plaintiff's claims should be reinstated.[1]

## I.    PLAINTIFF HAS ALLEGED ACTIONABLE MISSTATEMENTS

In their Opposition, Defendants do not address certain of their most egregious false and misleading Class Period misstatements. For example, Plaintiff highlighted Defendant James Reid-Anderson's April 2019 present-tense misrepresentation that "*[t]here are no delays that we're aware of on any of the parks*" (P.Br.3-5, 18, 28, 39), made two months after Defendants' self-described "comprehensive review" that demonstrated that construction was already substantially delayed and Defendants' public timetable was impossible. Defendants failed to address this misstatement at all, as did the District Court. At the least, the District Court's decision should be vacated or reversed as to this statement (along with others discussed below and in Plaintiff's Opening Brief).

### A.    Defendants' Misstatements Were False When Made

#### 1.    Defendants' Timetable Statements Were False

Throughout the Class Period, Defendants falsely assured investors that Riverside would meet specific timetables for opening the China parks. For instance,

---

[1] All citations to "¶__" refer to the Consolidated Class Action Complaint ("Complaint") (ROA.300-418). "P.Br.__" refers to Plaintiff's Opening Brief, and "D.Br.__" refers to Defendants' opposition brief. Unless otherwise noted, all emphasis is added, internal citations are omitted, and capitalized terms have the meaning provided in Plaintiffs' Opening Brief.

7

Defendants stated that the first Zhejiang park would open in December 2019. ¶¶184-85. On July 25, 2018—just 17 months before the scheduled opening—Reid-Anderson represented that "*[t]he timing of the parks remains exactly the same* as previously disclosed, *there's no change* on any of those." *Id.* The District Court ignored Plaintiff's allegations that FE1, Six Flags' executive in China in charge of monitoring and reporting on the parks' construction, recounted numerous facts that rendered the timetable impossible. *See* P.Br.12-17, 29-31.

Defendants mischaracterize these allegations as FE1's mere "opinions." D.Br.19, 38-41. But the Complaint details *facts* that FE1 knew and observed, including that throughout the Class Period, Riverside failed to pay key ride vendors, causing the cancelation of the theme-park rides that were the parks' main attractions and would take *36 to 60 months* to complete once paid for.[2] As a result, Riverside could not complete the parks on schedule, directly contradicting Defendants' repeated assurances that, for example, there were "no delays" (¶126), and Zhejiang was on schedule and never more than *20 months* from completion. *See* P.Br.29 (citing *In re Venator Materials PLC Sec. Litig.*, 2021 WL 2980581, at *19-20 (S.D. Tex. July 7, 2021) (sustaining false statements that construction was "on pace" and

---

[2] Defendants claim that there is no basis for the extensive lead time for rides (D.Br.40 n.19), but ignore allegations of FE1's position overseeing construction, knowledge of the rides planned, and decades-long industry expertise about the requirements for such projects. ¶¶66, 89-92. At best, these are factual disputes inappropriate at the pleading stage. *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 690 (5th Cir. 2014).

"on schedule")).  In addition, FE1 provided the additional facts that by the start of

the Class Period Riverside lacked necessary design drawings; by August 2018 it lost

funding and failed to make a licensing payment; and from May 2018 through

September 2019 it failed to pay necessary employees.  P.Br.30-31.[3]

The District Court did not consider these well-pled allegations, and

Defendants avoid addressing them.

Defendants do not dispute that Six Flags hired FE1, based on his extensive

industry experience, to oversee and report on Riverside's performance.  ¶¶8, 89.

Defendants also do not dispute that FE1 had firsthand knowledge of Riverside's

funding of the parks' rides, staffing levels, and construction progress based on his

working at Zhejiang, conducting site inspections at Chongqing, and meeting

regularly with Riverside and Six Flags employees.  *Id*.[4]

Defendants also mischaracterize Riverside's Class-Period-long failure to pay

critical vendors and secure the parks' rides as mere "one-off business difficulties."

D.Br.41.  FE1 reported that Riverside failed to pay ***all 40*** ride manufacturers and, as

---

[3] These allegations are not "conclusory" or "unmoored in time."  D.Br.41.  Nor is Riverside's Class-Period-long failure to pay for essential rides.  ¶¶66, 89-92.  *In re Capstead Mortgage Corp. Securities Litigation*, 258 F. Supp. 2d 533 (N.D. Tex. 2003), and *Miyahira v. Vitacost.com, Inc.*, 2011 WL 13136262, at *7 (S.D. Fla. Dec. 8, 2011), are inapplicable, as allegations there lacked such corroboration.

[4] The District Court erred in discounting the FEs.  P.Br.24-28.  Even if Fifth Circuit law requires some discount, which it does not, there is no support for the District Court's substantial discount given the detailed allegations concerning the FEs' titles, roles, tenures, and personal knowledge (¶¶8, 83, 89).

a result, *every* ride order was cancelled. ¶¶89-92. Those failures were chronic, not "one-off."[5] These allegations must be credited at the pleading stage.

### 2. Defendants' Construction Statements Were, At Minimum, Materially Misleading

In conjunction with reassurances that the China parks were on schedule, Defendants falsely assured analysts that Riverside had made meaningful construction progress. For example, Defendants stated, "[w]e are continuing to build those parks, and they are still progressing." ¶206; *see also, e.g.*, ¶¶222 ("progressing nicely"), 235 ("construction has continued"). In truth, any activity was de minimis. The construction sites lay barren, and Riverside failed to pay for rides, lost its funding, and employed a fraction of the people necessary to construct the parks. ¶¶86, 135, 240, 250-52.

The District Court concluded that because Defendants' statements may have been in some bare sense *literally* true ("construction . . . was ongoing or not"), they were not misleading as a matter of law. *See* D.Br.36-37. As discussed in Plaintiff's Opening Brief (P.Br.32)—and Defendants do not address—this constituted legal error. "[T]he disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead

---

[5] *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307 (S.D. Fla. 2004), is inapposite. *Druskin* involved whether a counterparty *could* continue to pay the defendant—not whether, as here, Riverside *had already* failed to fund its obligations. *Id*. at 1312.

prospective buyers." *Lormand v. US Unwired Inc.*, 565 F.3d 228, 248 (5th Cir. 2009).  Where executives "voluntarily chose to speak publicly" on a topic, "they were required to speak the full truth and accurately inform, rather than mislead." *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 716 (W.D. Tex. 2010); *see also Kurtzman v. Compaq Computer Corp.*, 2000 WL 34292632, at *22 (S.D. Tex. Dec. 12, 2000) ("[O]nce a company makes a disclosure, even if it is literally true, the company is under a duty to speak the full truth.").  Defendants' representations that construction was "ongoing" and "progressing" were at the very least misleading given their failure to disclose that, for example, none of the 40 ride vendors had been paid, without which the parks' construction could not be completed.

Further, the District Court was required to, but did not, read Defendants' construction-progress statements in the context of their accompanying misrepresentations about opening-date timetables, which were false and misleading. *See* P.Br.32-34.  Defendants claim that, alongside each construction-progress statement, Defendants also disclosed delays. D.Br. at 38-39. Not so.[6]  On the April 24, 2019 call (¶219: "There's ongoing building," "they're progressing nicely"), in response to an analyst inquiry as to whether there were "any incremental delays,"

---

[6]  Defendants' claim that they disclosed brief construction suspension at times is irrelevant. D.Br.37.  Those suspensions concerned unrelated government approvals, and only of Chongqing and Nanjing in April 2019, and Nanjing in July and October 2019.  They are irrelevant to Defendants' false progress statements about *all* parks in February 2019 (¶205), Zhejiang in April 2019 (¶219), and Zhejiang and Chongqing in July 2019 (¶¶235-36).

Reid-Anderson answered, "*No . . . . There are no delays that we're aware of on any of the parks.   The same timing as we outlined [before]*" (¶221).   *Compare also* ¶236 (7/24/19 call: "construction has continued," "we are progressing") *with* ¶237 (same call: "the timeline that we described 180 days ago still holds right now . . . same as it was 90 days ago").[7]  After the July 2019 call, Macquarie Research reported that the Company's "int'l story has *improved*," and credited Defendants' representations that the projects were "*back on track, and with no change to the last timeline*."  ¶¶134, 136.[8]

Finally, the District Court and Defendants mischaracterize FE1's description of negligible construction at the parks as admissions that construction was progressing.  D.Br.37; ROA.997.  FE1 reported facts and expert analysis—which was his job to provide to Defendants—demonstrating that activity was functionally at a standstill, and the scant, haphazard activity was nothing like the massive effort required to open the parks.  *See* § I.A.1, *supra*.  A contemporaneous photograph shows the barren Zhejiang site at the start of the Class Period, and FE1 reported that

---

[7] Even in February 2019, when Defendants disclosed slight delays, they provided a new, equally false timetable (e.g., "[Zhejiang] to begin opening mid-to-late 2020").  ¶¶205-10.

[8] Defendants do not meaningfully distinguish Plaintiff's cited authority that statements regarding progress toward important corporate goals are actionable.  *See* P.Br.32; D.Br.39 n17.  Plaintiff alleged specific facts, including Riverside's failure to pay all 40 ride manufacturers, that contradicted Defendants' statements.  *See* § I.A.1, *supra*; *Venator*, 2021 WL 2980581, at *19-20 (undisclosed facts contradicted representations on rebuilding progress).

by February 2019, there was no construction and weeds had taken over the site. ¶¶86, 105.

Because the District Court failed to read the challenged statements in context and did not characterize FE1's statements in Plaintiff's favor, the dismissal of progress misstatements should be reversed.

### 3.    Defendants' Riverside Statements Were False

Defendants' statements concerning Riverside and its ability to develop the China parks were misleading because they failed to disclose Riverside's chronic failures that precluded the parks' construction, including lost government funding, canceled rides, missed payments, and mass layoffs.  P.Br.37-38; *see Lormand*, 565 F.3d at 248-49 ("[A] duty to speak the full truth arises when a defendant undertakes a duty to say anything").  Defendants' arguments in response fail.

Defendants mischaracterize allegations about Riverside's ***actions*** as concerning "Riverside's financial condition," about which FE1 purportedly lacked direct knowledge.  D.Br.19.  For example, on February 14, 2019, Barber stated that Riverside was "***providing the funding for the development of the parks***."  ¶¶207-08.  This statement was directly contradicted by Riverside's failures to pay ***all*** ride vendors and its own employees.  Defendants do not dispute that FE1 was in a position to know these facts, which did not require knowledge of Riverside's underlying ***ability*** to fund.  The Complaint more than "supports the probability" that

FE1 had access to such information.  P.Br.24-25; *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002).

Defendants argue that they had no duty to disclose Riverside's repeated failures, because "the outcome" of Six Flags' contractual relationship with Riverside was "speculative."  D.Br.43.[9]  But Defendants' duty to disclose was not limited to whether the contract would be terminated.  *See Nasyrova v. Immunomedics, Inc.*, 2015 WL 382846, at *6-8 (D.N.J. Jan. 28, 2015) (failure to disclose adverse information about counterparty could be actionable where non-disclosure made other positive statements misleading); *Hutchins v. NBTY, Inc.*, 2012 WL 1078823 (E.D.N.Y. Mar. 30, 2012) (statements actionable where relationship threatened but not terminated).  Here, Riverside's undisclosed failures to fund or develop the parks or make licensing payments were already manifest.[10]  Because Defendants hid those problems, their positive statements about Riverside were materially misleading.  *See Lormand*, 565 F.3d at 248.

---

[9]  *Berger v. Beletic* is inapt, as the plaintiff did not allege that the omission made other statements misleading.  248 F. Supp. 2d 597, 603-04 (N.D. Tex. 2003).

[10] Unlike Defendants' statements about current progress, and Riverside's demonstrated failures, Defendants' cases involved speculative outcomes.  *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (outcome of factory inspection unknown); *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *11 (S.D.N.Y. Aug. 1, 2017) (outcome of negotiations uncertain); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 576-77 (S.D.N.Y. 2018) (opinion statements about feasibility of integrating acquired business).

### 4.    Defendants' Revenue-Recognition Statements Were False

The District Court erred by dismissing allegations that Six Flags' Class Period financial statements falsely recognized revenue and misstated GAAP compliance. P.Br.34-37.  Defendants raise disputes about the amount of overstated income and the extent to which Riverside failed to perform (D.Br.42-43), but such "fact-based" accounting arguments are inappropriate at the motion-to-dismiss stage.  *Id.* (*quoting Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005)).[11]

### B.    Defendants' Other Arguments Are Unavailing

### 1.    The PSLRA Safe Harbor Does Not Apply

First, the District Court held, and Defendants do not challenge, that Defendants' statements during Six Flags' October 2018 earnings call were not accompanied by meaningful cautionary language and accordingly are not entitled to safe-harbor protection.  For example, Reid-Anderson's statement that the parks were "on time" and Barber's statement that Zhejiang would open in January or February 2020 (¶¶196-97) are not protected.  *See* ROA.1005-06.  Given the uncontested allegations that this schedule of 14 months to opening was *impossible* to meet due

---

[11] Defendants' inapt cases involved allegations that lacked any specificity, including amounts of improperly recognized revenue.  *Capstead*, 258 F. Supp. 2d at 550-53 (no allegation of amount of improper revenue or how accounting violated GAAP); *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 465-66 (N.D. Tex. 2018) (allegation reserves were off by unspecified "huge multiple").  Here, Plaintiff has alleged $15 million of misstated revenue quarterly other than Q4 2018, and detailed Riverside's missed performance obligations.  P.Br.36-37.

to the undisclosed failure to order rides at the time, these statements' dismissal should be reversed.

Second, Defendants do not contest that many of the statements, such as Defendants' repeated assurances that there were "no delays" and construction was "progressing nicely" and "ongoing," concerned then-present facts about the parks' construction and funding.  D.Br.46-48 & n.30 (discussing P.Br.38-39 (citing ¶¶172, 206-09, 219-21)).  Because the allegedly misleading parts of these statements— including concerning construction status and revenue recognition—were not forward-looking, the Safe Harbor does not apply.  *Spitzberg*, 758 F.3d at 692 (mixed statements concerning present facts not forward-looking).

Third, Defendants do not address the insufficient risk warnings that did not "meaningful[ly] caution" investors about the severe delays that had *already* accrued. P.Br.40-41; D.Br.47-48; *see Lormand*, 565 F.3d at 247 (forward-looking statements must be accompanied by meaningful cautionary language).

Defendants contend that the District Court cited "specific warnings concerning the market in China and difficulties facing Riverside."  D.Br.40.  But those "warnings" concerned unspecific references to "macroeconomic events" and the mere possibility of "lumpy international agreements revenue."  ROA.1005-06. Defendants repeatedly reference their "lumpy" revenue statement (D.Br.8-10), yet do not explain how that vague word supposedly cautioned investors about extensive

ongoing delays—or the impossibility of meeting the timetables falsely reaffirmed by Defendants *on those same calls*.  *See Marcus v. J.C. Penney Co.*, 2015 WL 5766870, at *3 (E.D. Tex. Sep. 29, 2015) (no Safe Harbor where warnings "failed to correct the false impression . . . created by [defendants'] public statements").[12] Defendants also do not cite a single analyst who understood "lumpy" to mean that the timeline would be impossible to meet and no meaningful construction was ongoing.  To the contrary, as of January 2019, securities analysts maintained their buy ratings and reported that they "d[id] NOT see any material risk to SIX's China developments."  ¶108; *see also* ¶¶128 (April 2019: analyst report that Zhejiang "remain[s] on track to open as planned"), 136 (July 2019: "management confirmation that the timeline for China park development is intact"), 142 (October 2019: "SIX's international projects remain on track").

### 2.    Defendants' Misstatements Were Not Puffery Or Non-Actionable Opinions

As discussed above, Defendants' falsity arguments did not address their misrepresentations that there were "no delays," and Riverside "was providing the funding" and would complete construction on specific timetables.  Thus, although it

---

[12] Because Defendants knew of delays due to Riverside's funding failures (*see* § II.A), and thus their contrary Class Period statements were false, such statements, including the October 2018 statements the District Court determined lacked sufficient cautionary language, do not qualify for the Safe Harbor.  15 U.S.C. § 78u-5(c)(1)(B).

17

should, the Court need not consider whether *other* statements were "puffery" or non-actionable "opinions" to reverse the District Court.

The misstatements that Defendants contest on these grounds (e.g., the "parks are progressing nicely" (¶172) and Six Flags "will not be stopping at 10 parks" in China (¶175)), were highly material in context.  P.Br.41.  For instance, Defendants' rosy assessments of Riverside's performance were in the context of assurances that despite "macroeconomic challenges," Riverside would complete construction of the parks on disclosed timetables, generating substantial high-margin revenue.  *E.g.*, ¶¶39-40.[13]

Defendants' strawman argument about whether conversations with analysts are *always* material (D.Br.49) fails.  Defendants spoke *repeatedly* about the China parks in response to close analyst questioning.  *See* P.Br.42.  It is highly relevant that analysts paid attention to and relied on Defendants' statements on those topics.  *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006).

Finally, even if certain statements are considered opinions, they are actionable because Defendants omitted material, contrary facts.  *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 848 (N.D. Tex. 2018) ("If the underlying facts are not

---

[13] Defendants' attempt to distinguish *Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005), fails. Here, like *Plotkin*, Defendants' statements represented that Riverside would perform under the lucrative international-licensing contracts, which Defendants claimed would deliver a substantial payoff for Six Flags. *Id*. at 698-99 (statements were "designed to create an impression that a substantial payoff would soon flow from the contracts").

provided and contradict the opinion statement, the statement will be misleading by omission"). Such statements as "I think 20 parks is possible" and Riverside has "been a very good partner for us" (¶¶177, 179) are directly contradicted by Defendants' knowledge that, *inter alia*, Riverside had lost government funding, cancelled all ride orders, failed to fund necessary construction drawings, and stopped paying key vendors and employees. ¶224.[14]

## II. PLAINTIFF ADEQUATELY ALLEGED SCIENTER

Under the holistic analysis required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007), the Complaint adequately alleged a strong inference of scienter—by alleging **either** an "intent to deceive" **or** "severe recklessness" (*see* P.Br.43-52). *Spitzberg*, 758 F.3d at 684; *ArthroCare*, 726 F. Supp. 2d. at 711. Contrary to Defendants' arguments, the inference of scienter need not be "irrefutable, i.e., of the 'smoking-gun' genre[.]" *Tellabs*, 551 U.S. at 324. A complaint cannot be dismissed if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw

---

[14] The District Court erroneously concluded that Plaintiff waived certain arguments. *See* P.Br.43 n.2. Even accepting the District Court's error (which the Court should not), the ruling below should be reversed. None of the supposedly waived arguments address Defendants' misrepresentations that, e.g., there were "no delays," construction was "ongoing," Riverside "was providing the funding for the development of the parks," and Riverside would complete the parks on schedule.

from the facts alleged." *Tellabs*, 551 U.S. at 324. Stated differently, "a tie favors the plaintiff." *Spitzberg*, 758 F.3d at 686.

Here, the Court's commonsense analysis must include, among other things: (1) Six Flags hired FE1 to oversee and report back on the China parks' construction (¶83); (2) FE1 produced regular reports "includ[ing] updates on specific sectors of each park, specifying where there had been no progress over 'x number of days' and that there was no infrastructure on the roads," and the inadequate staffing levels at the project sites, to be conveyed to Reid-Anderson and the Board (¶250); (3) the Individual Defendants were highly motivated to trigger massive bonuses (¶265); (4) the China parks were one of the Company's five "key growth drivers" (¶¶39-45); and (5) Defendants repeatedly discussed the timeline and status of the China parks in detail (¶¶74, 78, 80, 110, 118, 126, 129, 133-34, 142).

### A. The District Court Failed To Credit Defendants' Own Admissions Of Knowledge And The Former-Employee Accounts

On February 14, 2019, Reid-Anderson announced that Defendants "performed a comprehensive review of our project timelines" with Riverside, and "construction is continuing." ¶¶205, 257. Defendants entirely ignore their supposed "comprehensive" review and the facts it necessarily would have demonstrated, which directly contradicted their repeated misrepresentations.

Given the parks' true undeveloped state, if Defendants actually performed that "comprehensive review," they willfully made false statements when Reid-Anderson

represented that construction was "continuing" and, two months later on April 24, 2019, that "[t]here's ongoing building."   ¶219.   If Defendants did not actually perform a "comprehensive review," those misrepresentations about construction progress were severely reckless.  *See, e.g.*, *Plotkin*, 407 F.3d at 700; *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 425 (5th Cir. 2001) (scienter pled given CEO's "ample opportunity" to "become familiar with" issue before statements).  Defendants are therefore wrong that the Complaint does not support Reid-Anderson's scienter for his April 24, 2019 "ongoing building" statement, among others.  D.Br.28.

As discussed above, the District Court erred when it discounted the detailed, reliable, highly relevant accounts of FE1 and FE2.[15]  Defendants do not dispute the existence and accuracy of FE1's Class Period reports concerning the lack of funding and progress—only whether the Individual Defendants received FE1's reports and should have credited them.  Either Defendants reviewed those regular, vital reports yet willfully made false contradictory statements, or they were severely reckless because they did not even review the reports.  Both scenarios support scienter.  *See, e.g.*, *Plotkin*, 407 F.3d at 700; *Nathenson*, 267 F.3d at 425; *In re Fleming Cos. Sec.*

---

[15] Defendants cite *Budde v. Global Power Equipment Group, Inc.* to argue that "opinions of confidential witnesses add nothing to scienter." D.Br.24 (citing *Budde*, 2017 WL 6621540, at *3 (N.D. Tex. Dec. 27, 2017)).  But the "opinion" there was the witness's interpretation of a defendant's ambiguous statement that the company was "going through some stuff," not the detailed facts FE1 reported here.  As *Budde* itself recognized, even those opinions "do[] not automatically disqualify [their] statement[s] from consideration in the scienter calculus." *Id*. at *3 n.8.

*& Derivative Litig.*, 2004 WL 5278716, at *10 (E.D. Tex. June 16, 2004) (a "strong inference of fraud may be established where the complaint sufficiently alleges that the defendants . . . failed to check information they had a duty to monitor").

Defendants mischaracterize the allegations derived from the FE accounts and the relevant case law.  First, Defendants argue that the accounts cannot support scienter unless the FEs had direct contact with the Individual Defendants.  D.Br.24-26.  That is not the law.  Courts regularly hold scienter adequately pled when former employees reported specific information that was provided to individual defendants. *See Hall v. Rent-A-Center, Inc.*, 2017 WL 6398742, at *18 (E.D. Tex. Oct. 19, 2017) (witnesses "wrote and/or received reports which the Individual Defendants also received," which "rendered [defendants'] statements knowingly false"); *Venator*, 2021 WL 2980581, at *26 (scienter pled where former employee reported individual defendants "had regular access to information" regarding problems with "construction progress"); *Brody v. Zix Corp.*, 2006 WL 2739352, at *7 (N.D. Tex. Sept. 26, 2006) (scienter pled where defendants regularly received reports "which would have alerted them to the fact that their statements to analysts . . . were materially misleading").[16]

---

[16] Defendants' only cited case on point does not require direct contact with individual defendants. In *Heck v. Orion Group Holdings, Inc.*, 468 F. Supp. 3d 828 (S.D. Tex. 2020), the complaint did not allege that former employees "provided any information" to one defendant, or told another defendant information establishing improper revenue recognition.  *Heck*, 468 F. Supp. 3d at 855-

Second, Defendants wrongly claim that the Complaint "did not allege that FE1's supposed reports were prepared for, or sent to, the Individual Defendants or the Board." D.Br.27-28. The Complaint, however, expressly alleges that David McKillips—former Senior V.P. of International Park Operations, President of Six Flags International, and one of Reid-Anderson's direct reports—informed FE1 that FE1's regular reports were presented to Reid-Anderson and the Board. ¶¶106, 250, 252. In other words, Defendants, not Plaintiff, are attempting to "rewrite the Complaint" (D.Br.27).

Defendants further claim that "Plaintiff fails to allege the content or dates of any alleged report." D.Br.28. But the Complaint specifies that "FE1 prepared weekly presentations" (¶106) during FE1's tenure "from May 2018 to September 2019," which went to McKillips and then Reid-Anderson and the Board (¶¶250-51). Whatever Defendants mean by calling FE1's reports "vaguely gloomy" (D.Br.28), the reports detailed critical problems and the lack of progress on specific sectors of each park, directly contradicting Defendants' false statements that, for example, there was "ongoing building" that supported Defendants' timeline.[17]

---

56. Here, the Complaint expressly alleges that FE1's reports were provided to Reid-Anderson (¶¶106, 250, 252), and included copious detail contradicting Defendants' misrepresentations (¶¶106-07, 250-52).

[17] Defendants' cited cases are inapt. *See* D.Br.27-28. In *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 673 (N.D. Tex. 2017), individual defendants received internal sales and inventory data, not reports stating that the sales and inventory levels evidenced

17

Third, Defendants contend that FE1's accounts are "mere opinions that cannot contribute to an inference of scienter." D.Br.25. But as discussed above at § I.A.1, the Complaint paragraphs that Defendants claim set forth "mere opinions" discuss particular factual information, including the regular reports FE1 prepared for Reid-Anderson, the Board, and other senior executives, and FE1's oral reports to McKillips (¶¶250-53). Those facts included, among other things, where there had been no progress on specific sectors of each park over "x number of days," Riverside's inadequate staffing levels, and Riverside's missed licensing payments. *Id.* Either Defendants reviewed those reports, or they were severely reckless because they did not.[18]

---

underlying problems. Here, FE1's reports documented the specific failures and problems he observed, which directly contradicted Defendants' misrepresentations. In *Huang v. EZCorp, Inc.*, 2016 WL 6092717, at *9 (W.D. Tex. Oct. 18, 2016), the former employee was not in position to know contents of internal reports, which allegedly went to "senior management" but not specifically any individual defendant. Defendants cite *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017), to argue that FE1's reports support scienter only if those reports are "connect[ed] . . . to the speaking executive" and Plaintiff pleads "details regarding the[ir] contents . . . , authors and recipients." D.Br.27. In *Neiman*, there was no basis to infer the reports were provided to individual defendants. *Neiman*, 854 F.3d at 748. Here, FE1's reports were prepared for Reid-Anderson and the Board and detailed the endemic failures at the park sites.

[18] Defendants claim that Plaintiff waived its argument concerning whether FE1's accounts should be disregarded as mere "opinions." D.Br.25. Plaintiff squarely addressed that argument below. ROA.829 & n.23.

18                                                                                      24

**B.**   **Reid-Anderson And Barber Were Motivated To Trigger Outsized Bonuses, Which They Missed Only When Required By Six Flags' Auditor**

Defendants' scienter is supported by the Individual Defendants' strong motivation to mislead investors in order to reap millions of dollars of incentive compensation—several multiples of their base salaries—for hitting Six Flags' Project 600 target. ¶265. These were "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 543 (5th Cir. 2008). Six Flags very nearly hit the target, which it missed only when forced to take a $15 million write-down due to the problems at the China parks. ¶¶109, 111, 269.[19]

Defendants contend that the $15 million write-down weighs against scienter because, they claim, "when presented with an opportunity to mislead investors for their own benefit, Defendants accurately disclosed a downward revenue adjustment." D.Br.22-23 & n.4. Defendants mischaracterize the Complaint. Far from a voluntary disclosure, the Complaint alleges that Six Flags adjusted its revenue downward likely only because its "auditor had raised concerns during its

---

[19] Plaintiff does not "admit[]" that Defendants' motivations to reap outsized bonus compensation are "commonplace." *See* D.Br.22. Rather, the Project 600 allegations support scienter (P.Br.46-47), particularly because "the potential bonus [wa]s extremely high." *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 431 (5th Cir. 2019); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 250 (5th Cir. 2003). The language Defendants cite concerns Plaintiff's alternative argument that, even if this Court agrees with the District Court that the Complaint did not allege motive, "correspondingly greater" evidence of scienter is *not* required. P.Br.51.

year-end audit that Riverside was not paying Six Flags its licensing fees" (¶111), and the Company was "forced" to take the write-down (¶109). Six Flags stock declined 14.1% in response, causing losses to Six Flags' investors. ¶113. This partial corrective disclosure was the first time investors learned they had been defrauded, and is not exculpatory just because Defendants were required to make a partial admission.

Further, rather than honestly attribute the write-down to the massive problems plaguing the China parks, Defendants continued their fraud and untruthfully blamed the adjustment on "a challenging macroeconomic environment." ¶109. Defendants falsely reassured investors that "construction [wa]s continuing." *Id.* Such statements—"[d]isclos[ing] . . . problems . . . but assur[ing] investors that operations could be salvaged"—supports scienter. *Carlton v. Cannon*, 184 F. Supp. 3d 428, 484 (S.D. Tex. 2016). Accordingly, Defendants' failure to hit the Project 600 targets, and the write-down they admitted as the fraud began to unravel, are in no way exculpatory. *See, e.g., Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) ("The fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered . . . gamble.").

Defendants suggest, without support, that insider sales are "the normal way securities plaintiffs try to plead motive." D.Br.23. Not so. "[T]he difference

between a case in which the defendant allegedly lied to increase his or her performance-driven compensation and one in which he or she allegedly lied to profit from insider trading is not so much a difference in the type of motive as a difference in the evidence that the defendant intended to capitalize on the opportunity." *Fla. St. Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 656 (8th Cir. 2001); *see also Lormand*, 565 F.3d at 254 n.17 ("allegations of direct knowledge sufficiently support a compelling inference of scienter even in absence of insider trading"); *Police & Fire Ret. Sys. of Detroit v. Crane*, 87 F. Supp. 3d 1075, 1086 (N.D. Cal. 2015) ("[I]rregular trading by insiders is not necessary. . . [where] high-level executives had detailed knowledge of a serious problem that obviously needed to be disclosed" (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48-49 (2011)).

## C.    The China Parks' Core Importance Supports Scienter

Defendants mischaracterize the Complaint's allegations about the China parks' core importance to the Company.  D.Br.29-30.  Defendants contend that case law requires each of the four "special circumstances" identified in *Diodes* for a core-operations inference, but that is not the law.  *Id.* (citing *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 915, 959 (5th Cir. 2016)).    Rather, in *Diodes*, "[t]he Fifth Circuit reiterated" that "special circumstances" giving rise to a strong inference of scienter "***may*** include" any of the four *Diodes* factors, which are not an exhaustive list.  *Plaisance v. Schiller*, 2019

WL 1205628, at *31 (S.D. Tex. Mar. 14, 2019). Accordingly, it is in no way dispositive that Six Flags may not be a "small" company. *See* D.Br.29. Further, *Diodes* approvingly cited *Plotkin*, where "omissions concerning the poor financial condition of a . . . contractual counterparty allowed a strong inference of scienter" because the company "had predicted that the contracts would bring in millions of dollars." *Diodes*, 810 F.3d at 959 (citing *Plotkin*, 407 F.3d at 700).[20] Here, Defendants omitted highly material information regarding Riverside's failures, despite claims before and throughout the Class Period that the China parks would generate millions of high-EBITDA-margin dollars. ¶¶39-42, 184.

Defendants are wrong that the China parks were not "critical to Six Flags' continued vitality." *Id*. The partnership with Riverside could purportedly increase EBITDA by nearly 60% and would enable Six Flags to hit the Project 600 targets. ¶¶39-45. Rather than just "one facet of Six Flags' international licensing program" (D.Br.29), the China parks represented 11 of 13 Six Flags international parks under development during the Class Period, and the vast majority (84%) of Six Flags' international licensing revenue. ¶42. That international revenue was one of five

---

[20] Defendants also rely on *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666 (S.D. Tex. 2013), which discussed case law explaining that "facts such as exposure to content-identified internal corporate documents (and who drafted them, who received them or how plaintiffs learned of them)" supports application of the core-operations theory. *Dawes*, 975 F. Supp. 2d at 699. As discussed above, consistent with *Dawes*, FE1 recounted to Plaintiffs that he drafted regular reports that included specific factual content that was presented to (at least) Reid-Anderson and the Board detailing the fundamental failures and problems plaguing the China parks' development.

"key growth drivers" Six Flags depended on to drive overall revenues and growth. *Id.*

Defendants are also wrong that there were no "internally inconsistent" statements or "readily apparent" contradictory facts—other "special circumstances" *Diodes* discusses.  D.Br.29.  Among other things, Defendants' "comprehensive review" made "readily apparent" that there was no meaningful progress at the parks, as did FE1's reports that went to Reid-Anderson and the Board.  ¶¶114, 205, 257. The February 2019 "comprehensive review" disclosure was accordingly "internally inconsistent" with the contemporaneous reassurance that the parks were only slightly delayed and improving, and "construction is continuing."  *Id.*

### D.    Executive Resignations Support Scienter

Defendants are wrong that Plaintiff has failed to connect the multiple executive resignations with the revelation of Defendants' fraud.  D.Br.30-33.

Among other things, Defendants do not substantively address the strong link between Barber's unexpected resignation as Six Flags' CFO on February 24, 2020, just six days after the Company received the SEC Subpoena concerning the Company's improper accounting for its relationship with Riverside.  D.Br.32-33; *see* ¶259; ROA.1424-25 ¶160.  Although the close temporal link between the SEC Subpoena and Barber's departure is not alleged in the Complaint that the District Court addressed in its order of dismissal, that is only because Defendants concealed

23

29

the SEC Subpoena until May 2021, after that order issued. CFO Barber's departure immediately following receipt of that subpoena is far different from "the mere existence" of the SEC's investigation (D.Br.33), and is the type of sudden, suspicious departure that supports scienter. *See, e.g.*, *Hall*, 2017 WL 6398742, at *32; *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 (N.D. Cal. 2009) (scienter alleged given "proximity of Defendants' departures" to restatement and SEC investigation).

### E.    Defendants' Opposing Inferences Fail

Facing these allegations, Defendants urge the baseless, implausible inference that they "hoped that Riverside would work through the issues it was facing . . . and were disappointed when Riverside failed." D.Br.33. Whatever Defendants "hoped" would eventually happen, their actual statements concerning the parks' status were misleading and contradicted by the information they knew or recklessly ignored. Defendants do not squarely present an opposing inference concerning the information available to them about park status and construction. Their implied inference, however, is nonsensical: that Six Flags executives carefully created internal reports, told another executive that they would be conveyed to the Board, and then secretly refused to do so, burying the documents before they could be conveyed up the chain of review. The more compelling inference—indeed, the only compelling inference—is that Defendants' misrepresentations were made with

either knowledge or severe recklessness. *See Spitzberg*, 758 F.3d at 686 ("Defendants['] subjective beliefs regarding the ultimate potential [for the project] are irrelevant to whether Defendants['] statements . . . were factually false and severely reckless.").

Similarly, Defendants contend that the District Court properly dismissed the Complaint for failure to establish that "Defendants knew that Riverside was certain to default in early 2018" yet "chose not to issue notices of default or terminate until 2020." D.Br.33. Regarding Defendants' Riverside misstatements, Plaintiff does not allege that Defendants misled investors concerning the narrow question of Riverside's "certain" contractual default. Plaintiff alleges that Defendants falsely assured investors that Riverside "continue[d] to pay," when it had already missed required licensing payments and payments to key vendors. ¶¶117, 207-13. If accurate information had been disclosed—which it was not—investors could have made their own, much more accurate, assessment of the risk of Riverside's default.[21]

---

[21] Defendants cite *In re Ferrellgas Partners, L.P., Sec. Litig.*, 764 F. App'x 127, 128 (2d Cir. 2019), to argue that Plaintiff was required to allege that Defendants knew or should have known Riverside would default. D.Br.33. *Ferrellgas* was a three-paragraph summary order; the opinion below discussed the company's public warnings that its counterparty "owed Ferrellgas $18.6 million and that Ferrellgas had doubts" about the counterparty's ability to "satisfy its payment obligations." *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *12 (S.D.N.Y. Mar. 30, 2018).

## III.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND

There is no dispute that Plaintiff's Motion to Amend was timely.  ROA.1019. While that motion was pending, Six Flags disclosed the SEC Subpoena (which investigation is ongoing), as well as facts that specifically addressed one of the District Court's stated concerns.  Plaintiff moved to supplement the Motion to Amend and file a revised proposed amended complaint (the "RPAC").

Defendants wrongly contend that the District Court's denial of Plaintiff's post-judgment motions on futility grounds was correct.  D.Br.52-54.  While the Complaint satisfies Plaintiff's pleading burdens, the PAC and RPAC add material new allegations that bolster the Complaint's adequacy and further support reversal. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (Rule 12(b)(6) analysis applied to proposed amendments).  The PAC adds allegations buttressing FE1's credibility, obviating any "discount." *E.g.*, ROA.1149-51 ¶¶106-07, 250, 259. The RPAC adds newly available allegations that Six Flags announced Barber's sudden departure directly after the Company received the SEC Subpoena (ROA.1424-25 ¶160)— addressing the District Court's concern that the Complaint failed to link Barber's resignation to the fraud.

Remarkably, Defendants claim that the information in FE1's resignation letter was consistent with Six Flags' tight opening timetables.  D.Br.57.  But in that letter, FE1 reported to Six Flags, "I have never seen such a poorly planned project set into

26

motion in this industry," and "from the very first day . . . it was obvious to me (as well as my coworkers) that the word 'mess' only began to describe the state this project was in." ROA.1149-51. FE1's observation that the projects were "perhaps irreversibly off track" (*id.*) is consistent with Plaintiff's allegations that meeting the announced opening dates was impossible. Whether Riverside could ***someday*** put the project ***back*** on track is irrelevant.

## CONCLUSION

The Complaint's dismissal should be vacated or reversed and the Action remanded for further proceedings. If this Court affirms dismissal, Plaintiff should be granted leave to amend.

Dated: December 15, 2021                Respectfully submitted,

                                        By: /s/ Katherine Sinderson
                                        **BERNSTEIN LITOWITZ BERGER
                                          & GROSSMANN LLP**
                                        John Rizio-Hamilton
                                        Katherine M. Sinderson
                                        Adam Hollander
                                        1251 Avenue of the Americas
                                        New York, NY 10020
                                        Tel.: (212) 554-1400
                                        Fax: (212) 554-1444
                                        johnr@blbglaw.com
                                        katiem@blbglaw.com
                                        adam.hollander@blbglaw.com

                                        **McKOOL SMITH PC**
                                        Lewis T. LeClair
                                        Texas Bar No. 12072500
                                        300 Crescent Court, Suite 1500
                                        Dallas, Texas 75201
                                        Tel: (214) 978-4000
                                        Fax: (214) 978-4044
                                        lleclair@mckoolsmith.com

                                        *Counsel for Lead Plaintiff Oklahoma
                                        Firefighters Pension and Retirement
                                        System*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court for the Fifth Circuit Court of Appeals by using the appellate CM/ECF.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Notice will be electronically mailed to:

Jeremy Alan Fielding, jeremy.fielding@kirkland.com

Lewis T. LeClair, lleclair@mckoolsmith.com

Adam Hollander, adam.hollander@blbglaw.com

Stefan H. Atkinson, stefan.atkinson@kirkland.com

Sandra Goldstein, sandra.goldstein@kirkland.com

Dan Cellucci, dan.cellucci@kirkland.com

John Rizio-Hamilton, johnr@blbglaw.com

Dated:      New York, New York
            December 15, 2021

/s/ Katherine Sinderson
Katherine Sinderson

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that Lead Plaintiff-Appellant's Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,488 words according to the word count provided by Microsoft Word 365 Version 2109 word-processing software. The document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 because it uses a proportionally spaced Times New Roman typeface with 14-point font and 12-point font footnotes.

/s/ Katherine Sinderson
Katherine Sinderson

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| IN RE ELECTRONIC DATA SYSTEMS CORPORATION SECURITIES LITIGATION | CASE NO. 6:03-MD-1512 LEAD CASE 6:03-CV-110 ("SECURITIES") |
| THIS DOCUMENT RELATES TO: | |
| ALL CASES | JUDGE DAVIS |

DECLARATION OF ROBERT S. GANS IN SUPPORT OF
LEAD PLAINTIFF NEW JERSEY'S MOTION FOR CLASS CERTIFICATION

EXHIBIT

**2**

37

I, Robert S. Gans, declare as follows:

1.      I am an attorney licensed to practice law in the States of New York and California and admitted *pro hac vice* in this case. I am a member of the law firm of Bernstein Litowitz Berger & Grossmann LLP, co-lead counsel for the lead plaintiff the Department of the Treasury of the State of New Jersey and its Division of Investment, on behalf of Common Pension Fund A ("New Jersey").   I respectfully submit this declaration, together with the exhibits annexed hereto, in support of New Jersey's motion: (1) to certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Class defined in the Motion; (2) to certify New Jersey as Class Representative; and (3) to appoint the law firms of Bernstein Litowitz Berger & Grossmann LLP and Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP as Lead Class Counsel and the law firm of Nickens, Keeton, Lawless, Farrell & Flack, LLP, as Liaison Class Counsel, pursuant to Fed. R. Civ. P. 23(g).  I am fully familiar with the facts set forth herein.

2.      Attached as exhibits are true and correct copies of the following:

Exhibit A:      Declaration of John E. McCormac CPA, Treasurer of the State of New Jersey, on behalf of New Jersey, originally submitted in support of New Jersey's motion to be appointed Lead Plaintiff;

Exhibit B:      Loss Calculation of New Jersey;

Exhibit C:      Declaration of C. Judson Hamlin in Support of Lead Plaintiff's Motion for Class Certification;

Exhibit D:      Declaration of Atulya Sarin, Ph.D. dated October 30, 2004;

Exhibit E:      Cover pages and relevant pages from Electronic Data Systems Corp. ("EDS"), Forms 10-K for the years ended December 31, 2000, 2001 and

2002 reflecting the number of record holders of EDS common stock as of February 28, 2001, February 19, 2002, and March 3, 2003, respectively;

Exhibit F:     Article published on *Reuters* dated September 19, 2002 at 20:44 entitled *EDS troubles far from over, analysts say*;

Exhibit G:     Article published on *Reuters* dated September 19, 2002 at 11:56 entitled *S&P cuts long-term ratings on EDS*; and

Exhibit H:     Article published on *Reuters* dated September 19, 2002 at 11:49 entitled *Fitch cuts EDS' long-term debt rating to "A" from "A+"*.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this 1st day of November 2004.

                                        _____
                                        ROBERT S. GANS

3

39

# New Jersey Public Employees' Retirement System

Losses in Electronic Data Systems Corporation (EDS)

Class Period: 2/7/01-9/18/02

| Transaction | Date | Amount | Price | Transaction | Date | Amount | Price | trading price* | Loss |
|---|---|---|---|---|---|---|---|---|---|
| Shares held at start of class period: | | 1,115,000 | | | | | | | |
| | | | | SALE | 1/2/2002 | -27,500 | $67.02 | | |
| | | | | SALE | 1/2/2002 | -27,500 | $67.02 | | |
| | | | | SALE | 1/2/2002 | -1,000 | $68.20 | | |
| | | | | SALE | 1/3/2002 | -5,000 | $66.95 | | |
| | | | | SALE | 1/3/2002 | -5,000 | $68.95 | | |
| | | | | SALE | 1/4/2002 | -25,000 | $66.04 | | |
| | | | | SALE | 1/4/2002 | -25,000 | $66.04 | | |
| | | | | SALE | 1/22/2002 | -15,000 | $66.51 | | |
| | | | | SALE | 1/23/2002 | -10,000 | $66.47 | | |
| | | | | SALE | 1/24/2002 | -25,000 | $65.03 | | |
| | | | | SALE | 1/25/2002 | -5,000 | $64.47 | | |
| | | | | SALE | 1/28/2002 | -20,000 | $63.76 | | |
| | | | | SALE | 3/12/2002 | -3,000 | $62.95 | | |
| | | | | SALE | 4/9/2002 | -10,000 | $52.03 | | |
| | | | | SALE | 5/7/2002 | -3,000 | $53.64 | | |
| | | | | SALE | 5/14/2002 | -75,000 | $54.28 | | |
| | | | | SALE | 5/21/2002 | -5,000 | $53.96 | | |
| | | | | SALE | 5/22/2002 | -5,000 | $54.02 | | |
| | | | | SALE | 5/23/2002 | -45,000 | $53.88 | | |
| | | | | SALE | 5/24/2002 | -20,000 | $53.60 | | |
| | | | | *Sales offset by opening balance:* | | -357,000 | | | |
| | | | | *Remainder of opening balance shares:* | | 758,000 | | | |

40

| Transaction | Date | Amount | Price | Transaction | Date | Amount | Price | trading price* | Loss |
|---|---|---|---|---|---|---|---|---|---|
| BUY | 6/5/2001 | 20,000 | $61.79 | | | | | $15.55 | –$924,740.00 |
| BUY | 6/5/2001 | 500 | $61.65 | | | | | $15.55 | –$23,050.00 |
| BUY | 6/6/2001 | 80,000 | $61.15 | | | | | $15.55 | –$3,647,624.00 |
| BUY | 6/7/2001 | 60,000 | $60.94 | | | | | $15.55 | –$2,723,598.00 |
| BUY | 6/12/2001 | 20,000 | $61.18 | | | | | $15.55 | –$912,576.00 |
| BUY | 6/13/2001 | 40,000 | $61.70 | | | | | $15.55 | –$1,846,096.00 |
| BUY | 6/14/2001 | 40,000 | $60.78 | | | | | $15.55 | –$1,809,124.00 |
| BUY | 6/19/2001 | 20,000 | $61.48 | | | | | $15.55 | –$918,600.00 |
| BUY | 6/20/2001 | 80,000 | $60.10 | | | | | $15.55 | –$3,564,088.00 |
| BUY | 9/4/2001 | 30,000 | $60.30 | | | | | $15.55 | –$1,342,605.00 |
| BUY | 9/4/2001 | 500 | $59.55 | | | | | $15.55 | –$22,000.00 |
| BUY | 9/5/2001 | 100,000 | $58.87 | | | | | $15.55 | –$4,332,400.00 |
| BUY | 9/6/2001 | 40,000 | $59.04 | | | | | $15.55 | –$1,739,620.00 |
| BUY | 10/9/2001 | 35,000 | $57.51 | | | | | $15.55 | –$1,468,561.50 |
| BUY | 10/10/2001 | 30,000 | $58.12 | | | | | $15.55 | –$1,277,040.00 |
| BUY | 10/11/2001 | 40,000 | $58.04 | | | | | $15.55 | –$1,699,536.00 |
| BUY | 10/16/2001 | 15,000 | $59.01 | | | | | $15.55 | –$651,925.00 |
| BUY | 10/17/2001 | 15,000 | $60.97 | | | | | $15.55 | –$681,340.50 |
| BUY | 10/18/2001 | 15,000 | $60.72 | | | | | $15.55 | –$677,482.50 |
| BUY | 10/19/2001 | 25,000 | $60.49 | | | | | $15.55 | –$1,123,600.00 |
| BUY | 10/23/2001 | 10,000 | $61.95 | | | | | $15.55 | –$464,000.00 |
| BUY | 10/23/2001 | 5,000 | $61.95 | | | | | $15.55 | –$232,000.00 |
| BUY | 10/24/2001 | 25,000 | $61.89 | | | | | $15.55 | –$1,158,465.00 |
| BUY | 10/25/2001 | 15,000 | $63.57 | | | | | $15.55 | –$720,349.50 |
| BUY | 10/26/2001 | 55,000 | $64.75 | | | | | $15.55 | –$2,706,159.50 |
| BUY | 10/29/2001 | 30,000 | $64.06 | | | | | $15.55 | –$1,455,198.00 |
| BUY | 2/13/2002 | 500 | $60.15 | | | | | $15.55 | –$22,300.00 |
| BUY | 2/13/2002 | 2,500 | $59.30 | | | | | $15.55 | –$109,375.00 |
| BUY | 4/9/2002 | 8,700 | $52.02 | | | | | $15.55 | –$317,245.50 |

| | | | | | | |
|-----|-----------|--------|---------|---|--------|-----------------|
| BUY | 4/9/2002 | 1,300 | $52.07 | | $15.55 | -$47,476.00 |
| BUY | 4/9/2002 | 3,000 | $51.75 | | $15.55 | -$108,600.00 |
| BUY | 4/10/2002 | 45,000 | $51.88 | | $15.55 | -$1,634,886.00 |
| BUY | 4/11/2002 | 25,000 | $51.36 | | $15.55 | -$895,175.00 |
| BUY | 4/12/2002 | 20,000 | $51.80 | | $15.55 | -$724,900.00 |
| | | 952,000 | | | | |

Shares held at end of class period: 1,710,000

Total Loss: -$41,981,736.00

*Mean trading price since the end of the class period is as of 12/18/02.*

| | |
|-------------|---------|
| Total buys: | 952,000 |
| Total sales: | 357,000 |
| net | 595,000 |