**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND LOCAL 103 IBEW, ET AL., <br><br>                 Plaintiff, <br><br>     v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br>                 Defendants. | Civil Action No. 4:20-cv-00201-P <br><br><br> CLASS ACTION |

**MOTION TO INTERVENE AS ADDITIONAL PLAINTIFF AND PROPOSED CLASS**
**<u>REPRESENTATIVE BY KEY WEST POLICE & FIRE PENSION FUND</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ........................................... 4

III.    ARGUMENT...................................................................................................... 6

    A.    Key West Should be Granted Intervention As of Right ........................................ 6

    B.    In the Alternative, Key West Should be Granted Permissive Intervention ............ 9

IV.    CONCLUSION................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE(S)**

*Birmingham Steel Corp. v. Tennesse Valley Authority*,
   353 F.3d 1331 (11th Cir. 2003) ....................................................................................9

*In re Bridgestone Securities Litigation*,
   430 F. Supp. 2d 728 (M.D. Tenn. 2006)...............................................................1, 7, 8, 9

*In re California Micro Devices Securities Litigation*,
   168 F.R.D. 276 (N.D. Cal. 1996)................................................................................10

*In re Cigna Corp. Securities Litigation*,
   2005 WL 3952802 (E.D. Pa. Feb. 23, 2005) .........................................................11, 12, 13

*Dewan v. M-I, L.L.C.*,
   2014 WL 2981362 (S.D. Tex. June 27, 2014)............................................................9

*In re Enron Corp. Securities, Derivative & Erisa Litigation*,
   2004 WL 405886 (S.D. Tex. Feb. 25, 2004) ...................................................... *passim*

*Florida Pediatric Society v. Benson*,
   2008 WL 4072605 (S.D. Fla. Aug. 28, 2008)............................................................10

*Fleming v. Impax Laboratories. Inc.*,
   2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .........................................................13

*Fuller v. Volk*,
   351 F.2d 323 (3d Cir.1965)..........................................................................................2

*In re Lease Oil Antitrust Litigation*,
   570 F.3d 244 (5th Cir. 2009) .......................................................................................7

*In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation*,
   2002 WL 31371945 (D. Minn. Oct. 7, 2002) .........................................................10

*Makhlouf v. Tailored Brands, Inc.*,
   2017 WL 1092311 (S.D. Tex. Mar. 23, 2017)........................................................13

*Neri v. Monroe*,
   2012 WL 12995650 (W.D. Wis. Mar. 23, 2012)....................................................13

*Oatis v. Crown Zellerbach*,
   398 F.2d 496 (5th Cir. 1968) .....................................................................................10

*Ruderman v. Washington National Insurance Company*,
   263 F.R.D. 670 (S.D. Fla. 2010)...............................................................................10

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ...............................................................................................1, 7

*Stallworth v. Monsanto Company*,
    558 F.2d 257 (5th Cir. 1977) ....................................................................................................7

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ....................................................................................................7

*VanDerStok v. Garland*,
    2022 WL 19023858 (N.D. Tex. Dec. 19, 2022) .......................................................................7

*Vuyanich v. Republic National Bank of Dallas*,
    82 F.R.D. 420 (N.D. Tex. 1979) .............................................................................................10

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*,
    834 F.3d 562 (5th Cir. 2016) ...........................................................................................1, 6, 7, 9

*Wallach v. Eaton Corp.*,
    837 F.3d 356 (3d Cir. 2016)....................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(d) ......................................................................................................................6

Fed. R. Civ. P. 24(a) ......................................................................................................................7

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................................9

Fed. R. Civ. P. 24(b)(3)..................................................................................................................9

3 Herbert Newberg & Alba Conta, *Newberg on Class Actions* (3d ed. 1992) ..............................10

## I.    INTRODUCTION

Key West Police & Fire Pension Fund ("Key West"), joined by Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters"), the Court-appointed Lead Plaintiff in this securities class action, respectfully requests leave to intervene as of right as a named plaintiff in this action under Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to the permissive intervention provided under Rule 24(b)(2).[1] Here, Key West satisfies the requirements to intervene, and its intervention would ensure that all valid claims are prosecuted fully. The addition of Key West as a named plaintiff is in the best interests of the putative Class and should be permitted.[2]

Rule 24 "is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Courts routinely permit intervention by class members where questions arise regarding the standing or representation of a class by the named class representative. *See*, *e.g.*, *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 2004 WL 405886, at *33 (S.D. Tex. Feb. 25, 2004) (granting motion to intervene as named plaintiff to cure standing deficiency by lead plaintiff); *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 732 (M.D. Tenn. 2006) (granting intervention as of right to additional institutional investor after appellate court shortened the class period and the appointed lead plaintiff no longer had standing). As explained below, intervention here is appropriate and should be granted.

---

[1] Capitalized terms shall have the same meaning as in the Consolidated Class Action Complaint For Violations Of The Federal Securities Laws (the "Complaint") (ECF No. 50). Unless otherwise indicated, all emphasis is added and all internal quotations and citations are omitted.

[2] A proposed Amended Complaint recognizing Key West's intervention is attached hereto as Exhibit A (PA0003-124).

The Court appointed Oklahoma Firefighters to serve as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA") on May 8, 2020. (ECF No. 30.) Since that time, Oklahoma Firefighters has filed a Consolidated Class Action Complaint (ECF No. 50), briefed Defendants' motion to dismiss the Complaint (ECF No. 54), successfully appealed the grant of Defendants' motion to dismiss to the Fifth Circuit (ECF Nos. 77, 83), and commenced discovery with Defendants. Defendants have answered the Complaint (ECF No. 100), served their initial disclosures, and launched their own discovery efforts as against Oklahoma Firefighters and multiple third parties.

On April 18, 2023—with discovery underway and before the Court-ordered deadline to amend the pleadings—Oklahoma Firefighters filed a motion to amend to add Key West as a named plaintiff. (*See* ECF Nos. 97, 101.) Only then, after Oklahoma Firefighters filed its motion to amend, did Defendants claim that Oklahoma Firefighters somehow does not have standing to prosecute these class claims sustained by the Fifth Circuit Court of Appeals or to amend the Complaint to add Key West. (ECF No. 103.) Defendants argue that Oklahoma Firefighters did not suffer any harm because it purchased Six Flags stock following the October 2019 alleged corrective disclosure—albeit before the January 2020 alleged corrective disclosure and the February 2020 corrective disclosure that concludes the Class Period.

As set forth in Lead Plaintiff's forthcoming opposition to Defendants' motion for judgment on the pleadings and in further support of Lead Plaintiff's motion to amend ("Lead Plaintiff's Amendment Reply"), Defendants' argument is without merit. Oklahoma Firefighters has Article III standing arising from its "injury-in-fact," because it purchased stock when Six Flags' stock was artificially inflated, and it held that stock through an alleged corrective disclosure and resulting

2

stock price decline.[3] Defendants do not argue that the Class Period ended on October 22, 2019 (before Lead Plaintiff's purchase)—nor could they, based upon the Fifth Circuit's decision upholding nearly all alleged false statements of the case, including statements regarding Riverside's financial condition, revenue recognition, and construction progress, that *no party* has argued were fully corrected before February 2020.

Nevertheless, to avoid distraction and delay, Oklahoma Firefighters and Key West believe it is prudent and in the best interests of the Class to add Key West as an additional plaintiff and Class Representative. Key West is an institutional investor that purchased over 3,700 shares of Six Flags during the Class Period, including purchases dating in July 2018, August 2018, and January 2019—before a single alleged corrective disclosure. *See* Exhibit B (PA0125-127). By moving to intervene, Key West moots Defendants' arguments that Oklahoma Firefighters lacks standing to amend the Complaint to add Key West to the Action.

Oklahoma Firefighters' and Key West's claims are otherwise *identical*: they are against the same defendants; arise from the same core misconduct; seek the same relief; and will involve the same documents and witnesses during discovery. Key West would simply join Oklahoma Firefighters' existing complaint as a named plaintiff, endorsing the complaint in its entirety, and both entities would continue the litigation without interruption or alteration. Intervention does not in any way affect the substantive merits of the sustained claims at issue or cause any delay in the proceedings. Instead, intervention benefits and conserves the resources of both the Court and the Class by avoiding diversionary litigation of issues ancillary to this case's merits.

---

[3] Key West refers the Court to Lead Plaintiff's forthcoming Amendment Reply for a full discussion of the background relevant to Defendants' standing argument.

This request to intervene is prudent and proper pursuant to Fed. R. Civ. P. 24(a) and (b) and should be granted.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On May 8, 2020, the Court appointed Oklahoma Firefighters to serve as Lead Plaintiff for the litigation. (*See* ECF No. 30.) On July 2, 2020, Oklahoma Firefighters filed the Complaint. The Complaint asserts class claims under Sections 10(b) and 20(a) of the Exchange Act arising from multiple categories of misrepresentations and omissions that Defendants made to Six Flags' shareholders concerning the construction of certain theme parks in China, Six Flags' relationship with Riverside, the Chinese developer that was supposed to be constructing the parks, and Six Flag's financial statements. Oklahoma Firefighters alleged four categories of misstatements: (1) Riverside's financial condition or quality as a partner; (2) construction progress at the parks in China; (3) statements concerning projected park opening dates and plans for new parks; and (4) Six Flags' revenue recognition.

Defendants moved to dismiss the Complaint, arguing that the Complaint inadequately pled falsity and scienter related to each of the four categories of alleged misstatements. (ECF No. 51.) After this Court granted Defendants' motion to dismiss the Complaint (ECF No. 69), Oklahoma Firefighters appealed the dismissal to the Fifth Circuit. On January 18, 2023, the Fifth Circuit reversed the Court's dismissal and, on February 9, 2023, reinstated the Action for further proceedings before this Court. (ECF No. 82.)

Although Defendants now claim that the Fifth Circuit's decision shows that Oklahoma Firefighters lacks standing, their behavior upon remand belies that contention. Rather than raising this supposedly clear case-dispositive issue, Defendants engaged in discovery for months. The parties negotiated and submitted an agreed-upon case schedule (ECF No. 96); the parties exchanged initial disclosures; Defendants answered the Complaint (ECF No. 100); and the parties

4

both served document requests and interrogatories, served responses and objections to those document requests, served document subpoenas on third parties, and initiated the meet-and-confer process to agree upon the scope of document production. At no time did Defendants raise any objection to Oklahoma Firefighters' ability to lead this litigation, much less a standing objection.

Pursuant to the Court-ordered case schedule, the deadline to request leave to amend the Complaint was May 9, 2023. Accordingly, on April 18, 2023, Oklahoma Firefighters filed a motion for leave to amend the Complaint solely to add Key West as an additional Named Plaintiff. (ECF No. 101) (the "Motion to Amend"). As explained in the Motion to Amend, Oklahoma Firefighters, as fiduciary to the Class, sought to moot any argument Defendants may make at class certification that Oklahoma Firefighters does not meet the requirements of Rule 23, because its purchases were made after the October 2019 corrective disclosure and thus, Defendants may argue, the purchases raise questions regarding typicality or adequacy. (Motion to Amend ¶¶15-16.) As Oklahoma Firefighters stated, they believed any such Rule 23 arguments would be refuted at the class certification stage, but in an abundance of caution and to protect the Class, they proposed to add Key West, since it was not subject to these same (meritless) attacks. *Id*.

Defendants responded by opposing the motion to amend, moving for judgment on the pleadings, and moving for a discovery stay during the pendency of their motion. (ECF Nos. 103, 105.) For the first time, Defendants raised the argument that Oklahoma Firefighters lacked *standing* to pursue any claims in this case, notwithstanding the fact that Oklahoma Firefighters purchased stock during the Class Period when Six Flags' stock is alleged to be artificially inflated. (ECF No. 103.) According to Defendants, in the Fifth Circuit's decision reversing the Court's dismissal of the Complaint, the Circuit supposedly concluded that the October 23, 2019 disclosure somehow "'adequately tempered' *all* of the allegedly false statements at issue." (ECF No. 103 at

5

7-8.) Defendants also argued that Oklahoma Firefighters lacked standing to move to amend the Complaint to include Key West as a named plaintiff (which they do not dispute would cure any representation issues for the Class). (*Id*. at 11-13.) The Court granted Defendants' motion to stay discovery the next day. (ECF No. 107.)

## III.    ARGUMENT

The Fifth Circuit has a "broad policy favoring intervention." *Wal-Mart*, 834 F.3d at 569 (5th Cir. 2016). In light of Defendants' recent challenge to Lead Plaintiff's standing, granting Key West's motion would best protect members of the proposed class and advance the fair conduct of this action. *See* Fed. R. Civ. P. 23(d); *Enron*, 2004 WL 405886, at * 1 n.2 ("courts have great discretion" to allow intervention for such purposes). As set forth below, Key West's application meets the standards for both intervention as of right and permissive intervention.

### A.    Key West Should be Granted Intervention As of Right

In order to intervene as a matter of right, an intervenor must demonstrate that the intervenor: (1) files a timely application; (2) claims "an interest relating to the property or transaction which is the subject matter of the action"; (3) is situated such that "disposition of the action may, as a practical matter, impair or impede [his] ability to protect [his] interests;" and (4) has an interest "not adequately protected by an existing party." Fed. R. Civ. P. 24(a); *see also Bridgestone*, 430 F. Supp. 2d at 732 (granting intervention as of right to intervening class member where appellate decision had limited class period and undermined standing by the lead plaintiff). "And though the would-be intervenor bears the burden of establishing all four elements for intervention as of right, that burden is 'minimal,' albeit cognizable." *VanDerStok v. Garland*, 2022 WL 19023858, at *2 (N.D. Tex. Dec. 19, 2022) (citing *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015)).

6

*First*, Key West's application is timely. "The timeliness inquiry is contextual" and "not limited to chronological considerations but is to be determined from all the circumstances." *Wal-Mart*, 834 F.3d at 565 (quotations omitted) (motion to intervene was timely because, *inter alia*, "it did not seek to delay or reconsider phases of the litigation that had already concluded"). Courts in the Fifth Circuit analyze the following factors to decide timeliness: (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene; (2) the extent of prejudice to existing parties from allowing late intervention; (3) the extent of prejudice to the would-be intervenor if the petition is denied; and (4) any unusual circumstances. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-66 (5th Cir. 1977)). First, the time between Key West learning of their interest and filing the petition is minimal, as Key West is filing this motion three weeks after Defendants first signaled that they would challenge Oklahoma Firefighters' standing and six days after they filed their submission doing so.[4] Second, "prejudice [in the second and third factors] is measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206. As set forth below, no existing party would be prejudiced by intervention at this stage of the litigation, while Key West would be prejudiced if this case were dismissed (which it should not be). Discovery is in its early stages,[5] and Key West's intervention will have no impact on the case schedule. And there are no unusual

---

[4] Notably, Defendants' challenge came *after* Key West preemptively moved to join the case by amendment on April on April 18, 2023.

[5] Defendants suggest as much in their Motion to Enforce the PSLRA's Automatic Stay of Discovery & Brief in Support: "this case is in its infancy—few documents have been produced (and the only productions were in the past few days after Defendants raised their plan to file the current PSLRA-stay motion, no depositions have been noticed, no experts have been designated, mediation is stull a full eight months away, and trial is nearly two *years* from now." (ECF No. 105, emphasis in original.) Defendants can easily take discovery of Key West alongside their nascent discovery of Oklahoma Firefighters.

7

circumstances weighing against intervention here. This is more than adequate to establish the timeliness of Key West's motion. *See*, *e.g.*, *Bridgestone*, 430 F. Supp. 2d at 732 (intervenor's motion ten months after appellate decision that concededly eliminated the lead plaintiff's standing was timely because defendants were not prejudiced and the court had not yet heard a class certification motion).

*Second*, Key West has an interest in the subject matter of the action that is identical to other Class members' interests. Key West purchased Six Flags shares after sustained false statements and well before any alleged partial corrective disclosures were issued. Because Defendants' alleged violations of the federal securities laws artificially inflated the price of those shares, Key West sustained substantial financial losses. As a member of the Class, Key West holds a definite interest in the prosecution and outcome of this litigation. As with Oklahoma Firefighters and the rest of the Class, Key West seeks damages arising from losses resulting from Defendants' false and misleading statements. That financial interest qualifies under the requirements of Rule 24.

*Third*, without intervention, it is possible that Key West's interests in this litigation would be impaired. The Court's acceptance of Defendants' standing arguments (or any Rule 23 arguments they might later make) could possibly terminate this litigation, which would hinder Key West's ability to recover damages for the losses it has suffered resulting from Defendants' conduct. Nor is the argument that Key West can protect its interest by filing its own individual action persuasive, as "requiring individual parties to file separate lawsuits while a potential class action is pending would unnecessarily multiply litigation, lead to potentially different results and defeat the purpose of class action lawsuits." *Bridgestone*, 430 F. Supp. 2d at 740; *see also Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1339 (11th Cir. 2003) (the fact that the class

8

members "could still litigate their actions individually" was an "insufficient basis for refusing to allow class counsel time to locate an appropriate substitute representative").

*Fourth*, while Key West believes that Defendants' standing challenges (and any subsequent Rule 23 challenges) are without merit, in light of these challenges, Key West nonetheless has satisfied the "minimal" burden of demonstrating that the representation "*may* be inadequate." *Wal-Mart*, 834 F.3d at 569 (emphasis in original). Through this intervention motion, Key West is moving expeditiously to ensure that its and the Class's interests will be protected against the possibility that the Court may find these procedural arguments persuasive.

**B.      In the Alternative, Key West Should be Granted Permissive Intervention**

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision whether to allow permissive intervention rests in the Court's discretion, "consider[ing] whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In determining whether intervention will cause undue delay or prejudice, "it has been the traditional attitude of the federal courts to allow intervention where no one would be hurt and greater justice would be attained." *Dewan v. M-I, L.L.C.*, 2014 WL 2981362, at *2 (S.D. Tex. June 27, 2014). Courts have routinely allowed permissive intervention by class members where there are questions regarding the standing or representation by named class representatives. *See Ruderman v. Wash. Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (permitting intervention under Rule 24(b) "to bolster the representation offered by Plaintiffs" while the class certification motion was pending); *Fla. Pediatric Soc'y v. Benson*, 2008 WL 4072605, at *1 (S.D. Fla. Aug. 28, 2008) (noting that the "Eleventh Circuit has recognized intervention as a means for plaintiffs to attempt to cure the alleged deficiencies of the representatives when class certification is opposed" and granting

9

intervention to include additional "named plaintiffs class representatives"); *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 276, 277-78 (N.D. Cal. 1996) (allowing permissive intervention by institutional investor after questions were raised about whether the appointed class representative had suffered any compensable losses).

In a putative class action, courts are "particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation." *Enron*, 2004 WL 405886, at *33 (granting motion to intervene as named plaintiff); 3 Herbert Newberg & Alba Conta, *Newberg on Class Actions* §§ 16.08-.09 (3d ed. 1992); *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Pracs. Litig.*, 2002 WL 31371945, at *4 (D. Minn. Oct. 7, 2002) ("intervention under Rule 24(b) is allowable in the context of class action to enhance or strengthen the representation of the class"). The Fifth Circuit Court of Appeals has approved the addition of plaintiffs to better represent potential subclasses where the named plaintiffs were not inadequate representatives. *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420, 437 (N.D. Tex. 1979) (citing *Oatis v. Crown Zellerbach*, 398 F.2d 496 (5th Cir. 1968)). It stated that this principle should be applied to allow permissive intervention to make the class "representation even stronger and to protect the class members most completely." *Id*.

Here, permitting Key West to intervene is appropriate because doing so would cause no undue prejudice and would only "strengthen the adequacy of class representation." *Enron*, 2004 WL 405886, at *33. Regardless of the strength (or lack thereof) of any potential argument raised by Defendants in their motion for judgment on the pleadings or in opposition to Oklahoma Firefighters' anticipated class certification motion, there is good reason to allow Key West to intervene and join this action as an additional plaintiff and proposed Class Representative. Courts

in this district have allowed permissive intervention in similar circumstances. For example, in *Enron*, this Court considered an institutional investor's "motion to intervene as plaintiff and as additional class representative for purchasers" of certain securities at issue in the case. *Id.* at *1. The Court noted that "the factual bases of the claims of this new group of investors [seeking intervention] [were] very similar to and have much in common [with] those of the [current] investors, minimizing any surprise or prejudice to Defendants." *Id.* at *35. The Court found that the intervention "would serve to protect the class better by bolstering class representation," and was proper and timely because, as here, "no class has yet been certified, there is an existing suit into which the intervenor can be admitted, and there is legal authority supporting this Court's discretionary right to permit such intervention." *Id.* The Court also found that the proposed intervenor "ha[d] also adopted the [operative] complaint, further demonstrating a lack of prejudice to existing parties because the parties have all had notice of the nature of the claims." *Id.* at *36. The rationale for permitting Key West's intervention is even stronger than in *Enron*, because the claims are not just "very similar" (as in *Enron*) but rather exactly the same.

Likewise, in *In re Cigna Corp. Securities Litigation*, the court considered a motion to intervene filed jointly by the lead plaintiff and two proposed additional plaintiffs and class representatives before the close of discovery and before class certification. 2005 WL 3952802, at *1 (E.D. Pa. Feb. 23, 2005). Although "th[e] case ha[d] been proceeding for over three years," the Court found "that there has not been any undue delay in the motion to intervene" because "the delays in this case have not been the fault of any of the parties." *Id.* The court noted that the motion to intervene was motivated by the Defendant's contention, which it planned to raise in a summary judgment motion, that the lead plaintiff had not suffered loss causation and/or economic loss. *Id.* The court observed that such a motion properly seeks to "protect the interests of the putative class,"

11

and that "this [is] a legitimate substantive reason to allow the intervention." *Id.* The court further concluded that the "Defendant w[ould] not be prejudiced by th[e] motion" because it "will not change the merits of the case at all," and because "merits discovery . . . [was] still ongoing." *Id.* at *2. The court rejected the defendant's burden argument, because the "[d]efendant [did] not offer[] any substantive reason, other than the fact that they do not want the burden of dealing with the claims of new parties to delay what they hope will be a successful termination of [the current] Lead Plaintiff." *Id.* This does not constitute undue prejudice, because a "[d]efendant has no right to expect that any ruling against [the lead plaintiff] . . . will necessarily terminate [the d]efendant's liability to the other members of the putative class." *Id.* To allow a defendant to pick off the lead plaintiff in this manner "would eviscerate the whole concept that Congress had in mind in establishing the Lead Plaintiff concept in the PSLRA." *Id.*

Similarly, here, if Defendants raise an argument pertaining to Oklahoma Firefighters' standing or reliance that the Court finds meritorious at the class certification or another stage (which it should not), Defendants should not be permitted to discharge their liability as to the entire Class. Rather, it is prudent to add additional plaintiffs and proposed class representatives now, to avoid delay and waste of resources should this occur later in the litigation.

Because Key West's claims are identical to Oklahoma Firefighters', Key West would simply adopt the already sustained Complaint, as noted above. *See Neri v. Monroe*, 2012 WL 12995650, at *1 (W.D. Wis. Mar. 23, 2012) (no independent pleading required under Rule 24(c) when proposed intervenor "agrees and supports [the] last operative pleading on file with the court," such that "no additional pleading is necessary from [any party]"). Defendants would not suffer any prejudice from Key West's intervention.

Defendants are not prejudiced in any event as Key West is not seeking to "re-open discovery or re-brief class certification, and additional discovery [defendants] may require would be limited to [Key West's] standing, typicality, and adequacy as [a] class representative[]"—and such discovery has barely commenced even as against Oklahoma Firefighters. *Wallach v. Eaton Corp.*, 837 F.3d 356, 378 (3d Cir. 2016). As a practical matter, since discovery is just beginning, the intervention motion comes at an appropriate point in time. As a result, allowing intervention here will not postpone these proceedings or prejudice Defendants in any way.

Finally, adding a named plaintiff comports with the PSLRA. The addition of named plaintiffs, where appropriate, is within the scope of a PSLRA lead plaintiff's "responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses who may be determined to have distinct interests or claims" in the litigation. *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *3 (S.D. Tex. Mar. 23, 2017) (internal citations and quotations omitted); *Enron*, 2004 WL 405886, at *21; *Cigna*, 2005 WL 3952802, at *2; *Fleming v. Impax Labs. Inc.*, 2021 WL 5447008, at *7 (N.D. Cal. Nov. 22, 2021) (motion to add named plaintiff and class representative evinces "vigorous[] prosecut[ion]" and supports adequacy finding under Rule 23(a)(4)).

While Defendants' standing attacks—and Defendants' anticipated class certification arguments—are without merit, for the sake of judicial economy, it is prudent and within Oklahoma Firefighters' duties to join in Key West's motion to intervene to ensure that the interests of all Class members are fully protected as this litigation progresses. Defendants notified Plaintiff during the parties' meet-and-confer on May 8, 2023, that they would oppose Key West's intervention on the ground that Oklahoma Firefighters lacks standing, so there is no action in which to intervene. While Plaintiff will respond in full once Defendants fully explain their arguments, Defendants are

wrong on the law. It "is now accepted by most courts, that even though intervention contemplates an existing suit in a court of competent jurisdiction, if the original claims have been dismissed for lack of jurisdiction, a court has the discretion to treat a pleading for intervention, where the intervenor has a separate and independent basis for jurisdiction and where the failure to adjudicate the claim will only result unnecessary delay, as a separate action that may continue the suit." *Enron*, 2004 WL 405886, at *7 n.24 (rejecting defendants' argument that certain purported intervenors cannot intervene into a case where lead plaintiff did not have standing to prosecute claims on behalf of intervenor) (citing *Fuller v. Volk,* 351 F.2d 323, 328-29 (3d Cir.1965)).

## IV.    CONCLUSION

For the foregoing reasons, Key West, joined by Oklahoma Firefighters, respectfully requests that the Court permit Key West's intervention in this matter as an additional named plaintiff and proposed Class Representative.

DATED: May 9, 2023                    Respectfully submitted,

                                      */s/ Katherine M. Sinderson*

                                      **BERNSTEIN LITOWITZ BERGER**
                                      **& GROSSMANN LLP**
                                      Hannah Ross* (N.Y. Bar No. 4020285)
                                      John Rizio-Hamilton* (N.Y. Bar No. 4323846)
                                      Katherine M. Sinderson* (N.Y. Bar No. 4503405)
                                      Jesse L. Jensen* (N.Y. Bar No.4825949)
                                      John J. Esmay* (N.Y. Bar No.4609293)
                                      Brandon A. Slotkin* (N.Y. Bar No. 5941539)
                                      1251 Avenue of the Americas
                                      New York, New York 10020
                                      Tel:  (212) 554-1400
                                      Fax:  (212) 554-1444
                                      hannah@blbglaw.com
                                      johnr@blbglaw.com
                                      katiem@blbglaw.com
                                      jesse.jensen@blbglaw.com
                                      john.esmay@blbglaw.com
                                      brandon.slotkin@blbglaw.com

14

*Lead Counsel for Lead Plaintiff and the Class, and Counsel to Proposed Intervenor Key West*
*\*pro hac vice*

**McKOOL SMITH PC**

Lewis T. LeClair
Texas Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel:  (212) 554-1400
Fax: (212) 554-1444
lleclair@mckoolsmith.com

*Liaison Counsel for Lead Plaintiff*

15

**CERTIFICATION OF CONFERENCE**

On May 8, 2023 I, along with Jesse Jensen, John Esmay, and Brandon Slotkin, conferred with Mark Foster, Judy Flumenbaum, Scott Fredricks, and Jacob Lefkowitz, concerning Lead Plaintiff's foregoing Motion to Intervene as Additional Plaintiff and Proposed Class Representative by Key West Police & Fire Pension Fund. Defendants notified Lead Plaintiff that they opposed this motion on grounds of standing.

DATED: May 9, 2023                    /s/ Katherine M. Sinderson

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Katherine M. Sinderson
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 554-1400
Fax:  (212) 554-1444
katiem@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class, and Counsel to Proposed Intervenor Key West*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on counsel

of record through the Court's CM/ECF Document Filing System on May 9, 2023.


DATED: May 9, 2023                    */s/ Katherine M. Sinderson*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Katherine M. Sinderson (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 554-1400
Fax:  (212) 554-1444
katiem@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class, and
Counsel to Proposed Intervenor Key West*