**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| ELECTRICAL WORKERS PENSION FUND LOCAL 103 IBEW, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS AND IN FURTHER SUPPORT OF LEAD
<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 5

ARGUMENT ......................................................................................................................... 10

I.      Oklahoma Firefighters Has Article III Standing Because It Suffered An Injury-In-
        Fact ........................................................................................................................... 10

        A.      Oklahoma Firefighters Was Harmed by the Fraud .............................................. 10

        B.      Oklahoma Firefighters Bought Shares At Artificially Inflated Prices, And
                The Fifth Circuit Did Not Hold Otherwise ......................................................... 12

II.     Defendants' Challenge To Oklahoma Firefighters' Standing Based On "Reliance"
        Fails .......................................................................................................................... 17

III.    Defendants' Failure To Previously Raise Their Standing Challenge And Their
        Answer To The Consolidated Complaint Shows This Is Merely A Delay Tactic ............ 20

IV.     Oklahoma Firefighters' Motion To Amend Should Be Granted ................................... 22

V.      CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*A.W. v. Tuscaloosa City Schools Board of Education*,
  744 F. App'x 668 (11th Cir. 2018) ...............................................................24

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997)...........................................................................24

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
  568 U.S. 455 (2013)....................................................................................2

*In re Bridgestone Securities Litigation*,
  430 F. Supp. 2d 728 (M.D. Tenn. 2006)..............................................10, 12, 17, 19

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018)...............................................................................22

*City of Bristol Pension Fund v. Vertex Pharmaceuticals Inc.*,
  12 F. Supp. 3d 225 (D. Mass. 2014) ..........................................................16, 17

*Cottrell v. Alcon Laboratories*,
  874 F.3d 154 (3d Cir. 2017)........................................................................17

*In re Dr. Reddy's Laboratory Limited Securities Litigation*,
  2019 WL 1299673 (D.N.J. Mar. 21, 2019)....................................................17

*In re Dynegy, Inc. Securities Litigation*,
  226 F.R.D. 263 (S.D. Tex. 2005)..................................................................15

*Estate of Cornejo ex rel. Solis v. City of Los Angeles*,
  618 F. App'x 917 (9th Cir. 2015) ................................................................24

*Federal Recovery Services, Inc. v. United States*,
  72 F.3d 447 (5th Cir. 1995) ........................................................................24

*Ferris v. Wynn Resorts Limited.*,
  2023 WL 2337364 (D. Nev. Mar. 1, 2023) ............................................11, 12, 15

*FindWhat Investor Group v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ..............................................................10, 11

*Francisco v. Abengoa, S.A.*,
  481 F. Supp. 3d 179 (S.D.N.Y. 2020)........................................................16, 17

*Freeland v. Iridium World Communications Ltd.*,
  545 F. Supp. 2d 59 (D.D.C. 2008).................................................................18

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
    991 F.3d 370 (2d Cir. 2021)............................................................................................23

*Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*,
    141 S. Ct. 1951 (2021)...................................................................................................20

*J.A. v. Texas Education Agency*,
    2022 WL 1143326 (W.D. Tex. Apr. 16, 2022)..............................................................25

*Jackson v. Fidelity National Title Insurance Company*,
    2008 WL 508489 (N.D. Tex. Feb. 26, 2008)................................................................25

*King v. Select Portfolio Servicing, Inc.*,
    2019 WL 4309045 (E.D. Tex. Aug. 9, 2019) ...............................................................25

*Kinney v. Metro Global Media, Inc.*,
    170 F. Supp. 2d 173 (D.R.I. 2001)..........................................................................10, 15

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions
    Financial Corporation*,
    762 F.3d 1248 (11th Cir. 2014) ....................................................................................20

*Longden v. Sunderman*,
    737 F. Supp. 968 (N.D. Tex. 1990) .................................................................................4

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) .....................................................................................2, 11

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ........................................................................................11

*Martone v. Robb*,
    902 F.3d 519 (5th Cir. 2018) ........................................................................................10

*Mathews v. Diaz*,
    426 U.S. 67 (1976)........................................................................................................24

*National Post Office Mail Handlers Local No. 305 v. U.S. Postal Service*,
    594 F.2d 988 (4th Cir. 1979) ........................................................................................24

*Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment
    Corporation*,
    58 F.4th 195 (5th Cir. 2023) ................................................................................ *passim*

*Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) .....................................................................................4, 15

*In re Red Hat, Inc. Securities Litigation*,
   261 F.R.D. 83 (E.D.N.C. 2009) ................................................................................19

*In re Seagate Tech. II Securities Litigation*,
   802 F. Supp. 271 (N.D. Cal. 1992) ..........................................................................18

*Sierra Club v. Morton*,
   405 U.S. 727 (1972).................................................................................................24

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).................................................................................................10

*Stripling v. Jordan Production Company*,
   234 F.3d 863 (5th Cir. 2000) ...................................................................................22

*Summit Office Park, Inc. v. United States Steel Corporation*,
   639 F.2d 1278 (5th Cir. 1981) .................................................................................23

*In re Teva Securities Litigation*,
   2023 WL 3186407 (D. Conn. May 1, 2023)......................................................14, 17

*Turner v. First Wisconsin Mortgage Trust*,
   454 F. Supp. 899 (E.D. Wis. 1978)........................................................................3, 25

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016).....................................................................................11

*In re Wells Fargo & Co. Securities Litigation*,
   2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021).........................................................18

*Yan v. ReWalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020)..................................................................................24, 25

**STATUTES**

28 U.S.C. § 1653..............................................................................................................24

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" or "Lead Plaintiff") respectfully submits this brief in opposition to Defendants' motion for judgment on the pleadings and in further support of its motion to amend.

## PRELIMINARY STATEMENT

Oklahoma Firefighters has prosecuted this Action since the Court appointed it Lead Plaintiff in May 2020. Through its counsel, Oklahoma Firefighters investigated and filed an amended complaint (the "Complaint"), briefed Defendants' motion to dismiss, and successfully sought appellate review of the Court's dismissal decision. The Fifth Circuit's decision found that Oklahoma Firefighters had successfully pled scienter and falsity for nearly all the statements alleged in the Complaint. Since remand, Defendants have answered the Complaint and engaged in extensive early discovery efforts. Never once did Defendants even *hint* that they viewed the Fifth Circuit's decision as meaningfully limiting the scope of the sustained Action, let alone depriving Oklahoma Firefighters of standing as a matter of law.

Yet almost four months after the Fifth Circuit issued its decision, Defendants now ask this Court to conclude that the Court of Appeals—without actually stating so or having any briefing on the issue—ruled as a matter of law that no class member could reasonably rely on *any* of Defendants' prior misstatements as of October 23, 2019, or four months before the end of the Class Period. As a result, Defendants argue that Oklahoma Firefighters does not have standing, because its purchases took place after October 23, 2019 (but before the final two corrective disclosures). Defendants' argument is entirely without merit.

Oklahoma Firefighters has Article III standing to prosecute this claim on behalf of the putative class and to amend the Complaint to add Key West Police & Fire Pension Fund ("Key West"). Oklahoma Firefighters suffered an "injury-in-fact" when it bought stock that was artificially inflated by Defendants' alleged fraud and suffered an "actual economic loss" when the

1

truth emerged. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 259 (5th Cir. 2009). Oklahoma Firefighters: (1) bought Six Flags stock during the Class Period at inflated prices, and (2) held that stock over the course of two alleged corrective disclosures, suffering an economic loss when Six Flags' stock price declined following those two disclosures. Nothing more is required to establish standing. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 464, 472 (2013) (finding standing for "all investors who purchased Amgen stock between the date of the first alleged misrepresentation and the date of the last alleged corrective disclosure").

Defendants' entire argument is based on an erroneous extrapolation from a single phrase by the Fifth Circuit regarding just one of the numerous alleged false statements in the Complaint affirmed by the Court of Appeals. As Defendants know, the Complaint alleges four categories of false statements and omissions by Defendants concerning Six Flags' construction of theme parks in China—(1) the financial condition of Riverside (Six Flags' Chinese development partner); (2) the ongoing construction of the China parks; (3) the timeline for completing the China parks; and (4) Six Flags' recognition of revenue related to the Riverside relationship. While finding that Oklahoma Firefighters had adequately pled falsity as to all four categories, including statements regarding, *inter alia*, Riverside's financial condition and Six Flags' improper revenue recognition, the Fifth Circuit found that as of October 23, 2019, Defendants had admitted that it was "'unrealistic' to think the timelines [for completion] would hold." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 217-18 (5th Cir. 2023) ("*Okla. Firefighters*"). As a result, Defendants now argue that the Fifth Circuit concluded that the October 23, 2019 disclosure "'adequately tempered' ***all*** of the allegedly false statements at issue." D.Br. at 7.[1] In essence,

---

[1] For the Court's convenience, a Glossary of Terms and References is attached as Appendix 1. All emphasis and other alterations are added, and internal citations and quotations are omitted, unless otherwise noted.

Defendants are contending that, in a single sentence, the Fifth Circuit held as a matter of law that *all* the relevant truth concerning *all* of the alleged false and misleading statements and omissions was disclosed on October 23, 2019, and the Class Period therefore *ends* on that date.

That so-called "holding" appears nowhere in the Fifth Circuit's opinion and is, frankly, manufactured by Defendants. *First*, the Fifth Circuit never held that the Class Period should be shortened to end on October 23, 2019; never questioned the merits of, let alone eliminated, the two corrective disclosures following October 23, 2019 (and following Oklahoma Firefighters' purchases); and never embraced any "truth on the market" defense as of October 23 as to all four categories of misstatements. And for good reason—Defendants have never lodged any arguments regarding any of these points, including on remand from the Fifth Circuit. But in order for the Court to accept Defendants' arguments on this motion, the Fifth Circuit would necessarily have had to make such findings and issue such holdings. It simply did not. Instead, the Fifth Circuit sustained statements issued on the *same day* that Defendants claimed all statements were "adequately tempered"—an inconsistency they ignore with their motion—as well as other false statements that no party has argued were corrected by the October 2019 disclosure. Accordingly, Oklahoma Firefighters has standing because it purchased stock at inflated prices during the Class Period, before the full truth was allegedly disclosed, and before all artificial inflation was removed from the stock price.

*Second*, even if Defendants were to argue that the truth was fully disclosed to the market as of October 23, 2019 (which they have not), such that the putative class could not show reliance as a matter of law, this "intensely fact-specific" argument would fail as entirely improper at this stage. These sorts of truth-on-the-market arguments are rarely decided on summary judgment, let alone the pleadings, as they raise numerous questions that can only be decided by weighing

extensive fact and expert evidence. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 325 (5th Cir. 2014) ("[T]he connection between [defendants'] misleading statements and the alleged corrective disclosures . . . is a highly fact intensive inquiry that need not be reached at [the pleading stage]."); *Longden v. Sunderman*, 737 F. Supp. 968, 975 (N.D. Tex. 1990) ("[T]he adequacy of disclosure is quintessentially a jury question."). And even if such an argument could be entertained now (it cannot), the facts here belie any such argument. Among other things, the significant stock price reaction to the January 2020 and February 2020 corrective disclosures, as well as the analysts commenting in surprise that they did not previously understand the debacle at the Six Flags China Parks, defeats any attempt to argue that, as a matter of law, investors were fully aware of the previously undisclosed information regarding, *inter alia*, Riverside's financial condition.

*Third*, Defendants' argument that Oklahoma Firefighters lacks standing because it did not reasonably rely on Defendants' false statements when it made its purchases fails for many other reasons as well. Defendants' argument turns on misconstruing the nature of Defendants' continuing fraud throughout the Class Period as alleged in the Complaint, as well as the well-established law setting forth how plaintiffs in a securities class action demonstrate reliance. Lead Plaintiff will establish a class-wide presumption of reliance at the class certification stage by showing that Six Flags stock traded in an efficient market during the Class Period—which applies to all Class members throughout the Class Period. At class certification, Defendants will have an opportunity to demonstrate that Oklahoma Firefighters did not rely on the efficiency of the market or that there was no "price impact" for the last two corrective disclosures. But Defendants cannot do that now, as such arguments require detailed fact and expert evidence to address.

4

*Fourth*, the timing and nature of Defendants' argument reveals that it is a delay tactic. If the Fifth Circuit's decision really showed that Oklahoma Firefighters lacked standing as a matter of law, Defendants and their counsel obviously would have raised this purported case-dispositive issue right away. But they did not. Rather, following the Fifth Circuit's decision, Defendants chose to answer the Complaint, rather than filing any renewed motion to dismiss. Notably, in their Answer, Defendants described the Fifth Circuit's opinion merely as "dismissal of Plaintiff's allegations that the statements made after October 2019 were false or misleading"—***not***, as they claim now, that the October 2019 disclosure "'adequately tempered' ***all*** of the allegedly false statements at issue." D.Br. at 7. Defendants' motive to make such a baseless argument now is clear: they wish to delay discovery at all costs, and they improperly view Oklahoma Firefighters' effort to buttress class representation by amending the Complaint as a chance to take a "Hail Mary" second bite at dismissal.

*Finally*, Defendants' brief does not claim that Lead Plaintiff's motion to amend the Complaint to add Key West would be futile or claim that they are prejudiced in any form by allowing amendment. Nor could they, given the Fifth Circuit's ruling. The motion for judgment on the pleadings should be denied, and the motion to amend should be granted.

## BACKGROUND

On July 7, 2020, Oklahoma Firefighters filed the operative Complaint, alleging that Defendants made a series of misstatements and omissions to Six Flags' investors regarding the Company's development of eleven branded theme parks in China ("China Parks"), through its Chinese partner Riverside. Defendants' misstatements and omissions artificially inflated Six Flags' stock price during the Class Period, and injured Oklahoma Firefighters and the proposed Class when the truth was revealed. *E.g.*, ¶¶1-21.

As alleged, Defendants made four types of misstatements, which the Court and the parties have adopted since nearly the beginning of this litigation:[2]

- Riverside's financial condition and quality as a partner, including statements identifying Riverside as financially "healthy" and "providing the funding for the development of the parks." ¶¶206-09.

- Construction progress, including statements such as, "[t]here's ongoing building going on," ¶126, "we are continuing to build those parks and they are still progressing . . . so that is ongoing as we speak," and "construction has continued [in Zhejiang and Chongqing] . . . we're progressing at both of those parks." ¶236.

- Projected park openings and future parks, including statements such as "all our parks are progressing nicely towards their anticipated opening dates," ¶¶172-74, and "the timing of the parks remains exactly the same as previously disclosed." ¶¶184-85.

- Improper recognition of revenue relating to Six Flags' agreements with Riverside. ¶¶ 163-65.

Oklahoma Firefighters further alleged that Defendants' fraud was revealed through a series of partial corrective disclosures. ¶¶270-79. First, on February 14, 2019, Six Flags took a $15 million write-down for the fourth quarter of 2018 related to the Company's agreements with Riverside, and further announced relatively modest six-to-twelve-month delays in opening the China Parks. ¶271. However, Defendants continued to mislead investors and the market had not learned the full truth concerning the China Parks' construction progress, Riverside's poor financial

---

[2] Defendants recognized and adopted the categories of misstatements set forth herein in arguing their motion to dismiss. *See* Defs.' MTD at 7-17 (categorizing the alleged false statements into "(1) Riverside's financial condition or quality as a partner; (2) construction progress at the parks in China; (3) statements concerning projected park opening dates and plans for new parks; and (4) Six Flags' revenue recognition," and arguing throughout the brief on a categorical basis). The Court's Opinion and Order identified identical categories of misstatements. *See* ECF No. 69, at 36-43 & nn. 4, 6, 10, 11 (identifying identical categories of misstatements). Defendants again used the categories in their brief to the Fifth Circuit. *See* Defs.-Appellees' Br. at 35-43. While Lead Plaintiff set forth five similar categories in the Complaint, *see* ¶270, for convenience Lead Plaintiff thereafter has referred to Defendants' formulation, which is not meaningfully different from Lead Plaintiff's original categories. *See* Pl. Opp. to MTD at 8-17; *see also* Pl.-Appellant's Br. at 28-38.

condition, its failure to make licensing payments to Six Flags, and the status of financing for each park. ¶272.

Then, on October 23, 2019, Defendants stated there was a "very high likelihood going forward that we will see changes in the timing of park openings" and that it was "unrealistic" to think the timelines would hold. ¶273. Nevertheless, Defendant Barber reaffirmed that there was "no material change in the timeline of China," *id.*, and, notably, Defendants continued to improperly recognize revenue from Six Flags' agreement with Riverside. ¶¶241-45. Once again, this disclosure did not reveal the full truth, as Defendants did not reveal the extent of Riverside's financial woes, or unpaid licensing fees, and led investors to believe that construction of the China Parks would continue, and the parks would eventually be completed. ¶274.

On October 29, October 30, October 31, November 26, and December 2, 2019, Oklahoma Firefighters purchased Six Flags common stock at artificially inflated prices while the fraud was ongoing. *See* ECF No. 28, Exhibit C. At this point, the market had not yet learned the full truth, including the full extent of the negative issues with the China Parks that Defendants had concealed from investors, and Six Flags' stock price remained artificially inflated.

Significantly, on January 10, 2020, Defendants admitted for the first time that the challenges at the China Parks extended farther than simply delaying the timeline for completion: Riverside had defaulted on its licensing payments and Defendants warned for the first time that the China Parks "faced severe challenges." ¶275. Defendants also announced that the company would take a negative revenue adjustment related to its Chinese international agreements, as they had collected no licensing fees. *Id.* Oklahoma Firefighters was injured when, in response to this news, ***Six Flags stock fell more than 18%*** on high trading volume, as the artificial inflation caused by the ongoing fraud continued to come out of the share price. *Id.* Nonetheless, the full truth

remained concealed (and the share price remained artificially inflated), as Defendants still did not explain the full extent of Riverside's financial issues but instead held out the possibility that one or more parks would still be built under the Riverside agreement. ¶276.

Investors learned the full truth when, on February 20, 2020, Defendants announced that Riverside *could not cure* its continuing defaults under the agreement, and as a result Six Flags terminated the relationship. ¶277. In addition, Six Flags announced the sudden departure of its CFO, Defendant Barber. *Id.* This revelation of the full truth further injured Oklahoma Firefighters and other members of the Class as, in response, Six Flags stock plummeted *another 16%* on high trading volume. *Id*.

The Court dismissed the Complaint on March 3, 2021, (ECF No. 69), and Oklahoma Firefighters appealed that decision. (ECF No. 77.)

On January 18, 2023, the Fifth Circuit Court of Appeals reversed the dismissal and remanded the case for further proceedings, holding that the Complaint adequately alleged the falsity and materiality of the majority of the alleged misstatements, and that the Complaint adequately alleged scienter. *See Okla. Firefighters*, 58 F.4th at 221 ("[W]e conclude that Plaintiff sufficiently pled its claims for securities fraud[.]"). The Fifth Circuit found that *one* October 23, 2019 statement about the timeline for opening the China Parks did not meet the standard for pleading falsity and materiality, because on that date, Defendants had "adequately tempered their optimistic language" with respect to that statement. *Id.* at 218. The Fifth Circuit also held that on that same day Defendants made actionable misstatements concerning Six Flags' recognition of revenue related to its agreement with Riverside. *Id.* at 220-21. The Fifth Circuit simply did *not* hold that the Class Period was shortened, and indeed referred specifically to the Class Period as *extending through February 2020* (*id*. at 205 ("On February 20, 2020, Six Flags announced the

termination of its agreements with Riverside and that Barber would retire as Chief Financial Officer. Throughout the Class Period, Six Flags' stock declined from a high of $73.38 on June 22, 2018, to close at $31.89 on February 20, 2020, the company's lowest stock price in over seven years.")).[3]

Although Defendants now claim that the Fifth Circuit's opinion somehow demonstrates that Oklahoma Firefighters lacks standing as a matter of law, Defendants did not file a renewed Rule 12(b)(6) motion or otherwise challenge standing upon remand. Instead, for several months, the parties negotiated and submitted an agreed-upon case schedule (ECF No. 96); the parties exchanged initial disclosures; Defendants answered the Complaint (ECF No. 100); both parties served document requests and interrogatories, served responses and objections to those document requests, served document subpoenas on third parties, and initiated the meet-and-confer process to agree upon the scope of document production. At no time did Defendants raise any objection to Oklahoma Firefighters' ability to lead this litigation, much less a standing objection.

On April 18, 2023, consistent with the Court-ordered case schedule jointly submitted by the parties, Oklahoma Firefighters filed its Motion for Leave to File a First Amended Consolidated Class Action Complaint. (ECF No. 101.) As stated in their motion papers, Oklahoma Firefighters sought to obviate arguments at class certification regarding the typicality and adequacy of Oklahoma Firefighters to serve as a class representative. *Id.* Only in response to that motion did Defendants for the first time assert their position that Oklahoma Firefighters did not have standing to amend the Complaint or otherwise prosecute the claims at all. Defendants also moved to stay the case while their motion was pending (ECF No. 105), which the Court granted the next day. (ECF No. 107.)

---

[3] *See also Okla. Firefighters*, 58 F.4th at 204 n.2 ("The parties identify the 'Class Period' in their pleadings as being from April 24, 2018, to February 19, 2020.").

## ARGUMENT

**I.     Oklahoma Firefighters Has Article III Standing Because It Suffered An Injury-In-Fact**

**A.     Oklahoma Firefighters Was Harmed by the Fraud**

At the pleading stage, Article III standing requires only that plaintiff have "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). For securities class actions such as this one, plaintiffs have standing where they allege that they have purchased a security sometime during the class period while the stock price was artificially inflated, before the full truth was revealed and all artificial inflation is removed from the stock. *Martone v. Robb*, 902 F.3d 519, 523 (5th Cir. 2018) (Article III standing is established where investor alleges that they purchased when the stock was artificially inflated and held when truth regarding the scheme was revealed); *see also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011) ("Every investor who purchases at an inflated price—whether at the beginning, middle, or end of the inflationary period—is at risk of losing the inflationary component of his investment when the truth underlying the misrepresentation comes to light."); *Kinney v. Metro Glob. Media, Inc.*, 170 F. Supp. 2d 173, 181 (D.R.I. 2001) (class representatives in securities fraud case had standing even where they purchased after partial corrective disclosures, and "even when the information available to the class changes during the course of the class period"); *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 736 (M.D. Tenn. 2006) (finding that purchase after all alleged misstatements, and in between first and second corrective disclosures, is actionable, because plaintiff suffered injury from stock price decrease following second disclosure).

Thus, any Class member—including Lead Plaintiff—who purchased Six Flags' stock while it was artificially inflated, and then held the stock over an alleged corrective disclosure,

suffered economic harm and has standing. *See Lormand*, 565 F.3d at 259 (securities class members who purchased during the class period and held over a corrective disclosure suffered "actual economic loss"); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("With respect to class representative standing, it is well established that where, as here, plaintiffs allege that their losses were the result of a sustained course of conduct that propped up defendant's stock price throughout the class period, the class may be represented by an individual who purchased his shares prior to the close of the class period.").

Lead Plaintiff has standing because it purchased stock at artificially inflated prices, before the January and February 2020 corrective disclosures, and suffered injury when those disclosures revealed the full extent of Defendants' fraud and led to stock price declines. *See* ¶¶273-79 (explaining that the October 23, 2019 corrective disclosure did not reveal the full extent of the fraud and concerned only the timeline for completing the China Parks—one of four categories of misstatements Lead Plaintiff pled); *see also Lormand*, 565 F.3d at 259; *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015) ("a purchaser of securities may recover against a defendant . . . only the difference between the price paid and the 'true' value of the security . . . at the time of the initial purchase by the defrauded buyer."); *FindWhat Inv. Grp.*, 658 F.3d at 1315 (every investor that bought at inflated prices suffered an injury).

The fact that Oklahoma Firefighters purchased after the last alleged false statement, and after a ***partial*** corrective disclosure announcing certain delays in construction, does not rob it of standing. This is because, in all events, Oklahoma Firefighters purchased when artificial inflation remained in the stock price and suffered injury when later partial corrective disclosures revealed new information and caused the stock price to decline further. *See, e.g., Ferris v. Wynn Resorts*

*Ltd.*, 2023 WL 2337364, at *3 (D. Nev. Mar. 1, 2023) (finding that there was "no dispute" that a lead plaintiff had established Article III standing where, as here, it purchased after the first corrective disclosure but before the last alleged corrective disclosure and agreeing that plaintiffs "need not have suffered every price decline"); *Bridgestone*, 430 F. Supp. 2d at 735-36, 738 (rejecting defendants' assertion that initial corrective disclosure cured all prior misrepresentations and holding that plaintiffs' purchase of a single ADR after all alleged misstatements were made and after a partial corrective disclosure established standing).

### B.   Oklahoma Firefighters Bought Shares At Artificially Inflated Prices, And The Fifth Circuit Did Not Hold Otherwise

As noted above, Oklahoma Firefighters bought Six Flags stock at artificially inflated prices before the fraud was fully revealed and was injured when Six Flags later disclosed, *inter alia*, that Riverside was in default, it would not be funding or building any of the China Parks, and that its partnership agreement with Six Flags was terminated—information corrective of the alleged fraud that had not been revealed at the time of Oklahoma Firefighters' stock purchases. *See* I.A, *supra.*

Defendants' entire argument ignores this fact and instead hinges completely on misconstruing the appellate record. Specifically, Defendants contend that somehow the Fifth Circuit held that, as of October 23, 2019, the entire fraud had been fully revealed to the market, all of the actionable misstatements had been fully corrected, and all of the artificial inflation had been removed from Six Flags' stock price. D.Br. at 7-8 ("According to the Fifth Circuit, [the October 23 Disclosure] 'adequately tempered' *all* of the allegedly false statements at issue.").

The Fifth Circuit made no such findings. Rather, Defendants mischaracterize the Fifth Circuit's decision. The portion of the decision they rely on pertained only to the narrow issue of whether *one* statement made by Defendant Barber about the timing of the China Parks' opening

12

satisfied the standard for pleading falsity and materiality. *Okla. Firefighters*, 58 F.4th at 218. As

the Fifth Circuit stated:

> According to the complaint, during the **October 2019 earnings call**, "**Defendant Barber** denied that there was 'any material change **in the time line** of China over the last 90 days." But in the full exchange on that call, Defendant Reid-Anderson admitted there was a "very high likelihood going forward that we will see changes in **the timing of park openings**" and that it was "unrealistic" to think **the timelines** would hold. Therefore, we hold that the statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not.

*Id*.

Both by its plain meaning *and* when read in context, the Fifth Circuit's decision makes

clear "the later allegations" that failed to satisfy the pleading standard referred only to a ***single***

***statement*** of a ***single category*** of alleged misstatements: whether the China Parks would open

according to the specific ***timelines*** reaffirmed by Barber on the October 2019 earnings call. *Id*. As

the parties and this Court have done at every step of the litigation, the Fifth Circuit divided and

analyzed the misstatements into discreet categories of misinformation,[4] and the relevant discussion

above, including the "optimistic language," i.e., the "statements before October 2019" that had

been "adequately tempered," concerned only the specific "timeline" statements for opening the

parks. *Id.*

The Fifth Circuit's holding about Defendants' disclosures on the earnings call said nothing

about the broader category of whether construction was ongoing, and nothing about the separate

category of whether Riverside was making licensing payments, had secured adequate financing

---

[4] For instance, the Fifth Circuit separately evaluated and considered falsity and scienter for misstatements concerning (i) the projected timeline for park openings (*Okla. Firefighters*, 58 F.4th at 212-14, 218), (ii) construction progress and whether construction was ongoing (*id*. at 210-11, 216-17); (iii) Riverside's financial condition and ability to fund to the parks (*id*. at 209, 217) and (iv) revenue recognition misstatements (*id.* at 220-21).

and was funding construction of the parks as it was contractually obligated to do. Nor did the Fifth Circuit say the October 2019 earnings call had tempered any expectation as to whether Six Flags had continued to correctly state revenue from its international licensing agreements, and the Fifth Circuit explicitly upheld **all** of the revenue misstatements in Six Flags' "Class Period financial statements due to Defendants' misleading statements regarding the parks' construction progress," **including revenue reported on October 23, 2019**. *Id.* at 220-221; *see also* ¶¶241-45. It is impossible to square Defendants' reading of the Fifth Circuit's opinion that the fraud had been fully revealed on October 23, 2019, with these facts, including the Court's holding that Defendants simultaneously continued to mislead the market about Six Flags' revenue. *Okla. Firefighters*, 58 F.4th at 218.

The bottom-line fact of the matter is that the Court of Appeals did **not** shorten the Class Period; did **not** hold that the full truth about all Defendants' misstatements was disclosed to the market on October 23, 2019; did **not** dismiss the later alleged partial corrective disclosures; and did **not** otherwise determine there was no artificial inflation remaining in Six Flags' stock at the time Oklahoma Firefighters purchased it—**all findings which the Fifth Circuit would have had to make for this Court to grant Defendants' present motion and deny Plaintiff's motion to amend**. *See In re Teva Sec. Lit.*, 2023 WL 3186407, at *28 (D. Conn. May 1, 2023) (rejecting nearly identical standing, reliance, and loss causation arguments based on court's prior opinion, where, as here, the prior opinion was clearly "addressing a specific argument raised in the motion to dismiss, and expressed no opinion regarding [later] disclosures," and the court "never decided as a matter of law that the full scope of [the alleged fraud] had been disclosed").

Defendants' contention that Lead Plaintiff took the position on appeal that the earlier February 14, 2019 disclosure "was the first time investors learned they had been defrauded," D.Br.

14

at 8 (citing Pl.-Appellant's Reply Br. at 20),[5] misrepresents Lead Plaintiff's contention, which has nothing to do with standing and does not support Defendants' motion. Specifically, Lead Plaintiff very explicitly stated that the February 14, 2019 disclosure was a "***partial*** corrective disclosure"— language that Defendants intentionally omitted from their papers. Partial correctives are just that: partial, incomplete revelations of the facts concealed by the alleged fraud and are routinely pled and accepted in securities fraud class actions. *Amedisys, Inc.*, 769 F.3d at 326 ("[T]he truth can be gradually perceived in the marketplace through a series of ***partial disclosures***.").

Contrary to Defendants' assertion, there is no requirement that the lead plaintiffs in a class action must purchase before the first partial corrective disclosure. Article III standing requires only that lead plaintiff purchase at some point during the class period, before the ***last*** alleged corrective disclosure, as Oklahoma Firefighters undeniably did here. *See Ferris*, 2023 WL 2337364, at *3 (no need to suffer every alleged drop to establish Article III standing); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 275 (S.D. Tex. 2005) (finding standing for Exchange Act claims for purchases made after the initial corrective disclosure, because "as long as the representative parties have a direct and substantial interest," as Oklahoma Firefighters clearly has here, "they have standing"); *Kinney*, 170 F. Supp. 2d at 181 (class representatives had standing where they purchased after first partial disclosure). Defendants' mischaracterization of the appellate record in this case in no way shows that Lead Plaintiff lacks standing.

---

[5] Defendants conspicuously omit Lead Plaintiff's description of the February 14 Disclosure as a "partial corrective disclosure," and selectively quote the brief to give the false impression that Plaintiff argued that the full fraud had been revealed to the market when it had not. D.Br. at 8. Moreover, Defendants say ***nothing at all*** about the later January 10, 2020 partial disclosure and final February 20, 2020 partial disclosure, which only underscores the fundamental weakness of their motion.

Defendants do not cite a single case for the proposition that a lead plaintiff lacks standing for all claims because it purchased during the class period sometime after the first partial corrective disclosure but before the final corrective disclosure. The cases Defendants cite uniformly involve situations, entirely unlike this case, where the courts determined that plaintiffs had purchased after a *full* disclosure of the relevant truth, rather than here, where Oklahoma Firefighters purchased after the second of four *partial* corrective disclosures and *before* the end of the class period. Moreover, none of the cases involved situations where the court found plaintiff lacked standing entirely, as Defendants are asking the Court to do here. For example, in *City of Bristol Pension Fund v. Vertex Pharmaceuticals Inc.*, the court found that plaintiff lacked standing for claims brought against a pharmaceutical company based on a single false press release that claimed positive clinical trial results showed that patients experienced "absolute" improvement, where plaintiff purchased stock after the company issued a second press release fully correcting the first. 12 F. Supp. 3d 225, 234-35 (D. Mass. 2014). Moreover, the Court found that plaintiff still had standing for other misstatements not corrected by the second press release made before plaintiff's purchase. *Id.* at 235. Similarly, in *Francisco v. Abengoa, S.A.*, plaintiffs lacked standing for statements mischaracterizing defendants' debt, where plaintiffs purchased their securities after defendants fully disclosed the correct classification of its debt as "non-recourse." 481 F. Supp. 3d 179, 191-92, 205-07 (S.D.N.Y. 2020) (finding a lack of standing for only one category of misstatements, and the corrective was full and not partial, because unlike here, plaintiffs admitted that the misstatements at issue were not part of a sustained course of conduct). Last, the plaintiff in *Dr. Reddy's* had purchased its stock months after certain misstatements had been fully corrected by an FDA Warning Letter, and before a separate and distinct second set of misstatements, facts

entirely missing here. *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at \*13 (D.N.J. Mar. 21, 2019).

None of Defendants' cases reflect the key fact at issue here: that Oklahoma Firefighters purchased its shares before two corrective disclosures removed all remaining inflation from the price of the stock.

## II.    Defendants' Challenge To Oklahoma Firefighters' Standing Based On "Reliance" Fails

Defendants argue that "a plaintiff who purchases stock after a corrective disclosure was made cannot show reasonable reliance and so lacks standing to sue." D.Br. at 7. As an initial matter, this argument fails because it is misplaced: it confuses Article III standing with the merits of the claim, i.e., the independent element of reliance. *See Cottrell v. Alcon Laboratories*, 874 F.3d 154, 163 (3d Cir. 2017) ("In assessing whether a plaintiff has carried [its] burden, we separate our standing inquiry from any assessment of the merits of the plaintiff's claim."). As explained above, Oklahoma Firefighters has Article III standing because it adequately alleged that the fraud was not fully corrected at the time it purchased and that it was injured when the full truth was later revealed. *See Bridgestone,* 430 F. Supp. 2d at 735-36 (rejecting defendants' reliance argument and crediting plaintiff's allegations that truth had not been fully revealed at the time she purchased).[6]

Defendants' argument also fails because it rests on the untested, highly fact-intensive assertion that the later disclosures alleged in the Complaint revealed nothing new to the market. This is essentially a ***complete*** "truth-on-the-market defense." *See Teva*, 2023 WL 3186407, at \*30 ("[T]ruth-on-the-market . . . is intensively fact-specific and is rarely an appropriate basis for

---

[6] Again, Defendants' reliance on *City of Bristol Pension Fund*, 12 F. Supp. 3d 225, *Dr. Reddy's*, 2019 WL 1299673, and *Abengoa*, 481 F. Supp. 3d 179 is misplaced, as those cases all feature plaintiffs who failed to adequately allege that they bought their securities before the full truth was revealed.

dismissing a Section 10(b) complaint."). Such an argument cannot be entertained on this motion, as it requires fact and expert discovery to resolve. Indeed, defendants seeking to establish such a defense must point to relevant news, including analyst coverage, industry coverage, media and press reports and make an affirmative showing that the corrective information has been "transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression" created by the prior false statements. *See, e.g.*, *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at \*21 (S.D.N.Y. Sept. 30, 2021) (rejecting defendants' truth-on-the-market at the pleading stage as premature); *see also In re Seagate Tech. II Sec. Litig.*, 802 F. Supp. 271, 275 (N.D. Cal. 1992) (denying summary judgment based on a truth-on-the-market defense, noting the lack of expert and factual material offered to the court by both defendants and plaintiffs concerning the defense). Indeed, as many courts throughout the country have recognized, it is "perhaps impossible" for Defendants to meet their "onerous burden" even at summary judgment. *See, e.g.*, *Freeland v. Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 79 (D.D.C. 2008) (collecting cases) ("[F]ederal courts have even expressed skepticism over whether the defense may be successfully invoked under Rule 56 given that it typically presents questions involving the nature, extent, and ultimate market influence of the disclosed information—an inquiry that would require a jury to weigh a volume of conflicting evidence and contrary inferences."). *A fortiori*, the argument is inappropriate at this pre-summary judgment juncture.

Not only is this argument inappropriate at this stage of the litigation (both on the pleadings and on a Rule 12(c) motion), but even if it could be considered, it would fail. The Complaint alleges that immediately following the two corrective disclosures that occurred ***after*** Oklahoma Firefighters purchased stock, Six Flags stock price dropped by the staggering amounts of 18% and

then 16%. *See Bridgestone*, 430 F. Supp. 2d at 735-36 (holding that plaintiffs established reliance where they alleged that stock price dropped following corrective disclosures after plaintiff had purchased securities). Further, public analyst reactions following the last two corrective disclosures indicate that new fraud-related information was revealed. *See In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 93 (E.D.N.C. 2009) (analysts' negative reaction to later disclosures discredits defendants' arguments that the full truth was revealed earlier). For instance, following the October 2019 Disclosure, analysts still believed Six Flags and Riverside would complete the China Parks. On October 23, 2019, Wells Fargo remained "cautiously optimistic" regarding the "international revenue/China timetable." *See* Sinderson Decl., Ex. A at PA004. On December 9, Wells Fargo stated that it believed "SIX is planning on opening multiple additional international parks under an asset light approach over the next several years, with a continued focus in Asia." Sinderson Decl., Ex. B at PA015. After the January 2020 Disclosure, however, reacting to the news of Riverside's default, Wedbush blamed its earlier favorable forecasts on the fact that "management continued to tell anybody that would listen until very recently that incremental projects (and revenues) in China were likely." ¶149. The final corrective disclosure on February 2020 that the entire deal with Riverside had been terminated fully soured all remaining prospects analysts had. For example, on February 20, Janney wrote that "we didn't think it could get worse…but it just did." ¶160. These reactions completely undermine Defendants' contention that the truth had been fully revealed by October 2019. There is no basis for the Court to accept Defendants' truth-on-the-market argument as a matter of law at this stage.

Finally, Defendants' argument incorrectly presupposes that Lead Plaintiff must establish individual reliance to establish standing. D.Br. at 8-9 ("Oklahoma Firefighters could not reasonably rely on the statements predating the alleged corrective disclosure"). But Oklahoma

Firefighters does not need to establish individual reliance, and instead will establish a class-wide presumption of reliance at the class certification stage by showing that Six Flags stock traded in an efficient market during the Class Period. *See, e.g.*, *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1261 (11th Cir. 2014) (in an efficient market, the class is entitled to the presumption of reliance).

To rebut the presumption of reliance at class certification, Defendants will have to show that the alleged misstatements did not actually affect the market price of the stock, or in other words, that the stock had no artificial inflation at the time of Lead Plaintiff's purchases (*i.e.*, "no price impact"). *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1962 (2021) (Defendants bear the burden of rebutting reliance and must "in fact seve[r] the link between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of *some* evidence relevant to price impact would rarely accomplish that feat."). Again, this requires extensive fact and expert evidence. Lead Plaintiff is confident that Defendants will be unable to rebut this presumption at class certification, but in all events that determination will be made on a complete factual and expert record.

III. **Defendants' Failure To Previously Raise Their Standing Challenge And Their Answer To The Consolidated Complaint Shows This Is Merely A Delay Tactic**

Finally, Defendants' unexplained delay in bringing this standing challenge belies their argument that the Fifth Circuit opinion proves that Oklahoma Firefighters' standing is subject to case-dispositive arguments. Defendants have had Oklahoma Firefighters' trading records for over three years. (*See* ECF No. 28-3.) The Fifth Circuit issued its decision on January 8, 2023. (ECF No. 83.) Rather than raising any challenges to Lead Plaintiff's standing, Defendants answered the Complaint on March 20, 2023. (ECF No. 100.)

Defendants' Answer demonstrates that they did not understand the Fifth Circuit's opinion to fully disclose the truth on October 23, 2019. Indeed, in the prologue to their Answer, Defendants characterize this aspect of the Fifth Circuit's decision as merely "dismissal of Plaintiff's allegations that the statements made after October 2019 were false or misleading." (ECF No. 100 at 2.) *Nowhere* do Defendants claim that the Fifth Circuit shortened the Class Period, that the full truth was disclosed as of October 23, 2019, that no artificial inflation remained in the stock price after that date, that Class members who purchased after October 23, 2019 would not be able to satisfy the reliance element.

Instead, Defendants proceeded to launch into discovery. The parties (i) negotiated and submitted an agreed-upon case schedule (ECF No. 96); (ii) exchanged initial disclosures; and (iii) served document requests and interrogatories, served responses and objections to those document requests, served document subpoenas on third parties, and initiated the meet-and-confer process to agree upon the scope of document production. In fact, in agreeing to the case-schedule (*id.*), Defendants agreed to a date by which Oklahoma Firefighters could move for leave to amend to add a party, contradicting its position now that Lead Plaintiff does not have standing to make such a motion. At no time did Defendants raise any objection to Oklahoma Firefighters' ability to lead this litigation, much less a standing objection.

Indeed, Defendants only raised this standing argument once Oklahoma Firefighters sought to moot a potential class certification argument by Defendants by amending the Complaint to add Key West. (ECF No. 101.) As explained in the Motion to Amend, Oklahoma Firefighters, as fiduciary to the Class, sought to moot any argument Defendants may make at class certification that Oklahoma Firefighters does not meet the requirements of Rule 23, because its purchases were made after the October 2019 corrective disclosure, and thus, Defendants may argue the purchases

raise issues with typicality and adequacy. (ECF No. 101 at 5-6.) As Oklahoma Firefighters stated, they believed any such Rule 23 arguments would be without merit, but in an abundance of caution and to protect the Class, they proposed to add Key West, since it was not subject to these same (meritless) attacks. *Id*. at 6. Seeing that Lead Plaintiff was taking appropriate steps to moot this class certification argument, Defendants for the first time (i) suddenly raised a challenge to Oklahoma Firefighters' standing and (ii) immediately sought to stall discovery from proceeding pending their challenge.

Defendants' delay undermines their entire standing argument. Had the Fifth Circuit's opinion self-evidently demonstrated that the full fraud was disclosed in October 2019, and that Oklahoma Firefighters lacked standing, there is no question that Defendants would have raised this supposed "case dispositive" argument immediately. Instead, Defendants raised this argument *for the first time* four months after the Fifth Circuit opinion was issued.

## IV.    Oklahoma Firefighters' Motion To Amend Should Be Granted

The Court should grant Oklahoma Firefighters' motion to amend. Defendants have not advanced any argument that amendment would be futile or prejudicial or was somehow the product of undue delay or bad faith. In such circumstances, where there is no substantial justification to deny the motion, amendment should be permitted, particularly given the liberal standards favoring amendment under Rule 15. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Defendants' lone argument against amendment—that Oklahoma Firefighters does not have standing—is both wrong, as discussed above, and has been obviated by Key West's May 9, 2023 motion to intervene.[7]

---

[7] Oklahoma Firefighters' motion to amend and Key West's motion to intervene also moot Defendants' argument that Key West would be time-barred from bringing a new, separate putative class action under the holding in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) (limiting

22

Even if Defendants are somehow correct that Oklahoma Firefighters does not have standing (it does), Fifth Circuit precedent does not require this Court to find that Key West cannot be added by amendment under Rule 15 or any other procedural device. The Fifth Circuit authority cited by Defendants for this proposition was decided under "unique" circumstances that are entirely absent here. *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981). In *Summit*, the lead plaintiff's claims were nullified by an intervening Supreme Court decision, and unlike here, it sought to amend the complaint to entirely substitute lead plaintiffs and assert "***new plaintiffs, a new class, and new cause of action***" *Id*. (finding the original plaintiff was without power to "initiate a new lawsuit with new plaintiffs and a new cause of action"). But Lead Plaintiff is not seeking leave to do any of that, as Key West is merely being proposed as an additional named plaintiff and class representative under the existing causes of action to avoid meritless class certification arguments.

Moreover, the Fifth Circuit went out of its way to explain that its narrow holding did not apply to instances where the party being added would have had claims under the original suit, as Key West has here, and its holding was limited to the "special circumstances," not applicable here, where there was "no proper party" including absent class members, available to amend the complaint. *Id*. (finding that the two proposed new plaintiffs were not members of the original class, and thus "cannot amend the original complaint"). It follows then that an absent class member with a valid claim under the original complaint, such as Key West here, would have been allowed to be added to cure any defect, even if the original lead plaintiff had no standing. *Id*. ("Nor is our decision

---

*American Pipe* tolling to subsequently filed individual actions). As Defendants concede, Circuit Courts have held that "nothing in *China Agritech* purports to say that equitable tolling does not apply to new class representatives joined within the *same* class action," as is the case with Key West's addition here. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 393 (2d Cir. 2021) (permitting amendment under Rule 15 to add plaintiff with standing).

in this case a restriction or limitation on the amendment procedure as it pertains to adding parties plaintiff or curing a defect in the cause of action."). Thus, the Fifth Circuit has already indicated that it would reject Defendants' overly formalistic argument that Key West cannot be added by amendment simply because Oklahoma Firefighters lacks standing, and so should this Court.[8]

Indeed, other Circuit Courts have held that a lead plaintiff without standing may add a named plaintiff that has standing to pursue an Exchange Act claim. *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 36, 38-39 (1st Cir. 2020) (collecting cases, and rejecting Defendants' argument as "pure formalism" that "run[s] contrary to [the] recognition that Rule 15 helps courts and litigants to avoid pointless formality"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 13 (2d Cir. 1997) (reversing denial of leave to amend to add shareholders to pursue claims for which lead plaintiff did not have standing).[9] Moreover, the additional cases cited by Defendants

---

[8] The special circumstances presented to the Fifth Circuit in *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995), cited by Defendants, are also absent here. There, the Fifth Circuit prevented lawyers from using Rule 15 to substitute their client as the proper relator in a *qui tam* action, after they had improperly brought and appropriated their client's claims under another entity that did not meet the special jurisdictional requirements for such suits. *Id*. Those facts are completely missing here, and the Fifth Circuit emphasized that its holding worked no "technical or unfair result." *Id.* Based on the Fifth Circuit's own observation, its holding in *Federal Recovery Services* should be limited to the circumstances of that case and should not be extended to circumstances here, where the lack of standing, if any, came about through no fault of the plaintiffs.

[9] The Supreme Court has indicated on at least two separate instances that plaintiffs without standing may amend to cure any jurisdictional defect. *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972) ("Our decision [finding a lack of standing], does not, of course, bar the Sierra Club from seeking in the district court to amend its complaint by a motion under Rule 15."); *see also Mathews v. Diaz*, 426 U.S. 67, 75 & n.8 (1976) (recognizing that a defect in standing did not void the suit from the start because "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue"). The 4th, 9th, and 11th Circuits have issued similar rulings. *See A.W. v. Tuscaloosa City Schs. Bd. of Educ.*, 744 F. App'x 668, 672 (11th Cir. 2018) ("[C]ourts may authorize amendment of a complaint under Rule 15 even in the absence of jurisdiction."); *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 n.2 (9th Cir. 2015) (plaintiffs properly resolved any standing issues through Rule 15 amendment of their pleadings before judgment); *Nat'l Post Off. Mail Handlers Loc. No. 305 v. U.S. Postal Serv.*, 594 F.2d 988, 991 (4th Cir. 1979) (amendment to allege standing should be permitted). Moreover, Congress has

24

are either inapposite or are squarely against the weight of authority that permits amendment in these circumstances.[10]

Because Defendants have raised no valid reasons why amendment should not be allowed, the Court should grant Oklahoma Firefighters' motion and permit amendment.

## V.      CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that its Motion to Amend should be granted and Defendants' Motion for Judgment on the Pleadings should be denied.

DATED: May 10, 2023                         Respectfully submitted,

                                            */s/ Katherine M. Sinderson*

                                            **BERNSTEIN LITOWITZ BERGER &
                                                GROSSMANN LLP**
                                            Hannah Ross* (N.Y. Bar No. 4020285)
                                            John Rizio-Hamilton* (N.Y. Bar No. 4323846)
                                            Katherine M. Sinderson* (N.Y. Bar No. 4503405)
                                            Jesse L. Jensen* (N.Y. Bar No.4825949)
                                            John J. Esmay* (N.Y. Bar No.4609293)
                                            Brandon A. Slotkin* (N.Y. Bar No. 5941539)

---

expressly authorized courts to allow amendment to cure all jurisdictional defects, including Article III standing. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *see also Yan*, 973 F.3d at 36 (holding that 28 U.S.C. § 1653 explicitly authorized court to allow plaintiff without standing to amend complaint to add plaintiff with standing).

[10] For example, *King v. Select Portfolio Servicing, Inc.,* is not a class action, and unlike here, plaintiff sought to add new claims and declined an opportunity to add the proposed new plaintiff at the outset of the case when the court inquired whether she was a necessary party. 2019 WL 4309045, at *6 (E.D. Tex. Aug. 9, 2019). *J.A. v. Texas Education Agency* also was not a class action, and plaintiff did not respond to defendants' arguments against joinder of additional plaintiffs under Rule 20, and the court found that the plaintiffs failed to meet the two-part test under 20(a). 2022 WL 1143326, at *4 (W.D. Tex. Apr. 16, 2022). *Jackson v. Fidelity National Title Insurance Company* was also not a class action, and recognized that *Summit* did not involve just the addition of a named plaintiff, but, unlike here, the amendment sought "abandons the original plaintiff and class and asserts new claims upon which the original plaintiff and class could not recover." 2008 WL 508489, at *3 (N.D. Tex. Feb. 26, 2008). The lone class action, *Turner v. First Wisconsin Mortgage Trust*, 454 F. Supp. 899 (E.D. Wis. 1978), was decided 45 years ago and runs contrary to the weight of recent Circuit Courts that permit amendment to cure any standing deficiencies of lead plaintiffs.

1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
johnr@blbglaw.com
katiem@blbglaw.com
jesse.jensen@blbglaw.com
john.esmay@blbglaw.com
brandon.slotkin@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class,
and Counsel to Proposed Intervenor Key West
\*pro hac vice*

**McKOOL SMITH PC**
Lewis T. LeClair
Texas Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-4000
Fax: (214) 978-4044
lleclair@mckoolsmith.com

*Liaison Counsel for Lead Plaintiff*

26

**Appendix 1**

**Glossary of Terms & References in Lead Plaintiff's Brief in Opposition to Defendants'
Motion for Judgment on the Pleadings and Reply in Further Support of its Motion for
Leave to Amend the Complaint**

| Terms/Reference | Definition |
|---|---|
| ¶ | Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed on July 2, 2020 (ECF No. 50). |
| D.Br. | Defendants' Brief (A) In Support of Their Motion for Judgment on the Pleadings and (B) In Response to Plaintiff's Motion for Leave to Amend Its Complaint, filed on May 2, 2023 (ECF No. 103). |
| Defs.' MTD | Defendants' Motion to Dismiss and Brief in Support, filed on August 3, 2020 (ECF No. 51). |
| Defs.-Appellees' Br. | Brief for Appellees, *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, No. 21-10865 (5th Cir. Nov. 24, 2021), Doc. 42. |
| Key West | Key West Police & Fire Pension Fund. |
| Motion to Amend | Lead Plaintiff's Motion for Leave to Amend Complaint, filed on April 18, 2023 (ECF No. 101). |
| Oklahoma Firefighters or Lead Plaintiff | Oklahoma Firefighters Pension and Retirement System. |
| Opinion and Order | Opinion and Order to Defendants' Motion to Dismiss, filed on March 3, 2021 (ECF No. 69). |
| Pl. Opp. to MTD | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint, filed on September 2, 2020 (ECF No. 54). |
| Pl.-Appellant's Br. | Brief for Plaintiff-Appellant, *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, No. 21-10865 (5th Cir. Oct. 25, 2021), Doc. 35-1. |
| Pl.-Appellant's Reply Br. | Reply Brief for Plaintiff-Appellant, *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, No. 21-10865 (5th Cir. Nov. 24, 2021), Doc. 44. |
| Sinderson Decl. | Declaration of Katherine M. Sinderson in Opposition to Defendants' Motion for Judgment on the Pleadings and in Further Support of Lead Plaintiff's Motion for Leave to Amend the Complaint, filed concurrently herewith. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on counsel of record through the Court's CM/ECF Document Filing System on May 10, 2023.

DATED: May 10, 2023

/s/ Katherine M. Sinderson
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Katherine M. Sinderson (*pro hac vice)*
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
katiem@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class, and
Counsel to Proposed Intervenor Key West*