**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND LOCAL 103 IBEW, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**DEFENDANTS' BRIEF (A) IN RESPONSE TO KEY WEST'S**
**MOTION TO INTERVENE AND (B) IN FURTHER SUPPORT**
<u>**OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Six Flags Entertainment Corporation ("Six Flags"), James Reid-Anderson ("Reid-Anderson") and Marshall Barber ("Barber") (collectively, "Defendants"), file this Brief (A) in Response to Key West Police & Fire Pension Fund's ("Key West," and collectively with Oklahoma Firefighters Pension & Retirement System ("Oklahoma Firefighters" or "Plaintiff"), "Movants") motion for Key West to intervene as a named plaintiff in this action (the "Motion to Intervene") (ECF No. 108), and (B) in Further Support of Defendants' Motion for Judgment on the Pleadings (ECF No. 102).[1]

---

[1]   In light of the relatedness of the standing, amendment, and intervention issues, which Plaintiff and Key West acknowledge in their own briefing (*see* Intervention Mot. at 2, ECF No. 110, Opposition Mot. ("Opp.") at 22), Defendants have combined their response and reply into one joint brief.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

PROCEDURAL BACKGROUND.................................................................................................3

ARGUMENT .................................................................................................................................5

        I.      OKLAHOMA FIREFIGHTERS LACKS ARTICLE III STANDING. ..................5

                A.     The Fifth Circuit Held That The October 23, 2019 Disclosure "Adequately Tempered" Defendants' Alleged Misstatements. ...................5

                B.     Oklahoma Firefighters Lacks Standing Because Its Reliance Was Unreasonable....................................................................................................9

        II.     NEITHER AMENDMENT NOR INTERVENTION SHOULD BE GRANTED IN LIGHT OF OKLAHOMA FIREFIGHTERS' LACK OF STANDING. ..........................................................................................................14

CONCLUSION............................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alex A. ex rel. Smith v. Edwards,*
  No. 22-573-SDD-RLB, 2023 WL 2700712 (M.D. La. Mar. 29, 2023)..............................16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013)......................................................................................................12

*Barnes v. Levitt,*
  118 F.3d 404 (5th Cir. 1997) .....................................................................................3, 13

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)..................................................................................................12, 13

*In re Bridgestone Securities Litigation,*
  430 F. Supp. 2d 728 (M.D. Tenn. 2006)...............................................................11, 15, 16

*China Agritech, Inc. v. Resh,*
  138 S. Ct. 1800 (2018)...................................................................................................16

*City of Bristol Pension Fund v. Vertex Pharmaceuticals Inc.,*
  12 F. Supp. 3d 225 (D. Mass. 2014) ...............................................................................9, 10

*In re Dr. Reddy's Laboratory Limited Securities Litigation,*
  No. 3:17-cv-6436, 2019 WL 1299673 (D.N.J. Mar. 21, 2019) ..........................................9

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005).......................................................................................................13

*In re Dynegy, Inc. Securities Litigation,*
  226 F.R.D. 263 (S.D. Tex. 2005).....................................................................................11

*In re Enron Corporation Securities, Derivative & "Erisa" Litigation,*
  No. MDL–1446, Civ.A. H–01–3624, 2004 WL 405886 (S.D. Tex. Feb. 25, 2004).........15

*Federal Recovery Services, Inc. v. United States,*
  72 F.3d 447 (5th Cir. 1995) .................................................................................15, 16, 17

*Ferris v. Wynn Resorts Ltd.,*
  No. 2:18-cv-00479, 2023 WL 2337364 (D. Nev. Mar. 1, 2023) ......................................11

*Francisco v. Abengoa, S.A.,*
  481 F. Supp. 3d 179 (S.D.N.Y. 2020)....................................................................9, 10, 12

*Jackson v. Fidelity National Title Insurance Co.*,
    No. 3:07-CV-1706-G, 2008 WL 508489 (N.D. Tex. Feb. 26, 2008) ................................14

*Kinney v. Metro Global Media, Inc.*,
    170 F. Supp. 2d 173 (D.R.I. 2001)..................................................................................11

*Lopez v. Southwest Airlines Co.*,
    Nos. 3:08-cv-01975-O, 3:09-cv-00137-O, 2013 WL 12121233 (N.D. Tex. July
    10, 2013) ...................................................................................3, 13, 14, 15, 17

*Mandujano v. City of Pharr*,
    786 F. App'x 434 (5th Cir. 2019) .....................................................................................4

*Medical Center Pharmacy v. Holder*,
    634 F.3d 830 (5th Cir. 2011) ............................................................................................6

*Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment Corp.*,
    58 F.4th 195 (5th Cir. 2023) ..........................................1, 2, 4, 5, 6, 7, 8, 13, 14

*Summit Office Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) .......................................................................................14

*In re Teva Securities Litigation*,
    Nos. 3:17-cv-00558, 3:18-cv-01681, 2023 WL 3186407 (D. Conn. May 1, 2023) ....11, 12

*Turner v. First Wisconsin Mortgage Trust*,
    454 F. Supp. 899 (E.D. Wis. 1978)................................................................................17

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*,
    834 F.3d 562 (5th Cir. 2016) .........................................................................................15

*Yan v. ReWalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020)............................................................................................17

## PRELIMINARY STATEMENT

Oklahoma Firefighters lacks Article III standing.  As a result, and notwithstanding the Fifth Circuit's "liberal rules" for intervention and amendment:  Oklahoma Firefighters can neither continue to prosecute this case nor seek the joinder of Key West (which claims to have standing); and Key West, for its part, cannot intervene in an action where there is no plaintiff with standing and thus no "case or controversy."  Based on the undisputed facts and the Fifth Circuit's unambiguous holding, Movants' motions must be denied and the action dismissed for lack of subject matter jurisdiction.

In the face of constitutional requirements and controlling Fifth Circuit precedent, Oklahoma Firefighters parades a number of straw men arguments relating to potential class definitions, loss causation and the truth-on-the market presumption, among other things, and enlisted Key West to seek leave to intervene, all in an effort to confuse the basic and narrow issue presented: whether Oklahoma Firefighters lacks standing because its reliance on alleged misstatements was unreasonable.

According to its own allegations, while Oklahoma Firefighters indisputably purchased Six Flags stock in late October 2019 after the "last alleged false statement" (Opp. at 11), it also concedes it purchased stock well after the February 2019 disclosure when Oklahoma Firefighters told the Fifth Circuit that investors like it "first . . . learned they had been defrauded" (App'x at 26) and after the time when the Fifth Circuit held there to be no more potentially actionable statements.  Oklahoma Firefighters strains to backpedal from this latter concession (Opp. at 15), but it cannot dodge the conclusion that it purchased all of its Six Flags stock after it had "first learned" of the very alleged fraud that it later chose to sue upon.  Nor can it escape the effect of the Fifth Circuit's holding that "Defendants had adequately tempered their optimistic language by October," *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 218 (5th

Cir. 2023) ("Okla. Firefighters"), which it attempts to do by advancing a series of mischaracterizations of the Fifth Circuit's opinion. As described below, the plain meaning of the Fifth Circuit's holding is that the statements pre-dating October 2019 are no longer actionable—a conclusion decisively confirmed by the Circuit's decision to analyze the separate, independent element of scienter only for the February, April, and July 2019 statements. *Id.* ("The next inquiry is whether Plaintiff has adequately pled scienter for the February, April, and July 2019 statements.").

Oklahoma Firefighters nevertheless claims that it somehow suffered losses on its investment because the alleged inflation from the claimed fraud had not fully dissipated by the time Oklahoma Firefighters purchased Six Flags stock. At the appropriate stage, if necessary, Defendants will address this argument (with which they disagree). However, the Court need not reach or resolve that issue at this point because Oklahoma Firefighters was already on notice of the alleged fraud and thus unreasonably relied on statements that were "adequately tempered" by Six Flags' corrective disclosure when it purchased stock. This conclusion is case dispositive according to the authority that Defendants cite and that Oklahoma Firefighters brushes aside in only one paragraph of its 25-page Opposition. (Opp. at 16-17.) These decisions rejected the same arguments that Oklahoma Firefighters makes here.

Rather than grapple with Defendants' on-point case law, Oklahoma Firefighters resorts to ad hominem and inaccurate attacks regarding Defendants' timely raising of a jurisdictional issue. As described below, the procedural record belies these attacks, which are irrelevant in any event given that jurisdictional issues can be raised by the parties (or the Court sua sponte) at any point in the litigation. Even where Movants do engage on the merits, the cases they cite in their briefing are all distinguishable. None involves the fundamental issue here that the only plaintiff does not

2

have standing. Rather, they all pertain to issues irrelevant to Defendants' motion, including (i) arguments on loss causation—as opposed to the reasonableness of reliance; (ii) situations where the lead plaintiffs had standing because they purchased shares both before being on notice of an alleged fraud and after (unlike Oklahoma Firefighters, which only purchased after); or (iii) class certification arguments challenging typicality, not standing. None refutes Defendants' cases or supports Movants' various attempts to cure Oklahoma Firefighters' fatal lack of standing.

Other district courts that have confronted similar situations have overwhelmingly concluded that plaintiffs who purchase stock after being on notice of an alleged fraud cannot show reasonable reliance. Absent reasonable reliance, a plaintiff in a securities fraud action has no standing to sue. These courts reached these conclusions as a matter of law in connection with pleading challenges and did not need to wait for supposedly "fact intensive" or "expert-driven" inquiry about other defenses presented at later stages of litigation.

Finally, where there is a lack of standing, controlling Fifth Circuit precedent is clear. No procedural rule—whether by amendment under Rule 15, joinder under Rule 20 or intervention under Rule 24—can cure a plaintiff's lack of standing.

## PROCEDURAL BACKGROUND

Movants complain that Defendants were somehow dilatory in challenging Oklahoma Firefighters' standing. That is belied by the facts and is irrelevant in all events because jurisdictional challenges are never waived. *See, e.g.*, *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997) ("[A] jurisdictional matter cannot be waived and can be raised at any time."); *Lopez v. Sw Airlines Co.*, Nos. 3:08-cv-01975-O, 3:09-cv-00137-O, 2013 WL 12121233, at *4 (N.D. Tex. July 10, 2013) ("[D]efects in subject-matter jurisdiction can be raised at any time during the proceedings or even *sua sponte* by the court.").

3

The Fifth Circuit issued its decision remanding this action on January 18, 2023, and stated, among other things, that "statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not." *Okla. Firefighters*, 58 F.4th at 218. Reflecting its holding that these statements were no longer actionable, the Fifth Circuit analyzed scienter only for the statements predating October 2019, explaining: "the next inquiry is whether Plaintiff has adequately pled scienter for the February, April, and July 2019 statements." *Id.*

The parties filed a joint status report on March 6, 2023 (ECF No. 96). At no point while negotiating a potential schedule did Oklahoma Firefighters indicate it had solicited or intended to seek leave to add potential additional plaintiffs to cure its lack of standing issue or, as it now contends, to "moot" a challenge to adequacy. On March 20, 2023, Defendants answered the Complaint, stating throughout that the Fifth Circuit affirmed this Court's Decision and Order dismissing any alleged misstatements from before October 2019.[2] (ECF No. 100 ¶¶ 241-47.)

Oklahoma Firefighters waited eleven more days (until March 31, 2023) to communicate to Defendants its intent to seek leave to file an amended complaint to add Key West as an additional named plaintiff. During the meet-and-confer process over the next two weeks, Defendants confirmed that they would not consent to the proposed amended complaint and explained that they saw no basis to add a new plaintiff at this stage, and to the extent Oklahoma Firefighters' standing was defective, it could not be cured by the proposed amendment. Oklahoma Firefighters filed its Motion for Leave to Amend on April 18, 2023.[3] The parties engaged in further meet-and-confers

---

[2]   Filing an answer is a prerequisite to filing a motion for judgment on the pleadings. *See Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019) ("Accordingly, for purposes of 12(c), the pleadings are closed upon the filing of a complaint and an answer…").

[3]   In its Motion for Leave to Amend, Oklahoma Firefighters sought to remove former Lead Plaintiff Local 103. As explained in Defendants' Motion for Judgment on the Pleadings (ECF No. 103 at 4), Defendants concur that

*(cont'd)*

4

on Defendants' motion for judgment on the pleadings, in which Defendants provided Oklahoma Firefighters authority supporting their position that Oklahoma Firefighters lacks standing to pursue this claim. Oklahoma Firefighters indicated it still would oppose any motion.

Defendants filed their motion for judgment on the pleadings on May 2, 2023. The next day, Oklahoma Firefighters stated that Key West now intended to file a motion to intervene in this matter. In that motion, Key West concedes that the motion was filed because Oklahoma Firefighters "may be inadequate" as a class representative. (Motion to Intervene at 9.) That is an understatement, but belies Movants' pretense that their series of motions do not seek to cure a standing defect. During meet-and-confers, Defendants confirmed that they would not consent to any motion to intervene, since that motion could also not cure Oklahoma Firefighters' defective standing. On May 9, 2023, Key West filed its motion to intervene.

## **ARGUMENT**

### I.    **OKLAHOMA FIREFIGHTERS LACKS ARTICLE III STANDING.**

### A.    **The Fifth Circuit Held That The October 23, 2019 Disclosure "Adequately Tempered" Defendants' Alleged Misstatements.**

In the wake of the Fifth Circuit's holding in *Oklahoma Firefighters*, it is clear that Oklahoma Firefighters lacks Article III standing. In evaluating "whether Plaintiff ha[d] pled with particularity that the statements were misleading as a matter of law," the Fifth Circuit concluded: "we hold that the statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not." *Id.* There is nothing "so called" about this holding—Defendants did not "manufacture" it or "extrapolate[]" it from a "single phrase by the Fifth Circuit," as Oklahoma Firefighters contends.

---

Local 103 is no longer a plaintiff in this case due to its failure to appeal the District Court's decision, and the record after Oklahoma Firefighters' Opposition remains silent as to Local 103's basis for failing to appeal or now seeking to withdraw.

(Opp. at 2-3.)  Rather, Defendants applied its plain terms to Oklahoma Firefighters' operative complaint, as all the parties and the Court must do in light of the Fifth Circuit's mandate for "further proceedings consistent with this opinion."  *Id.* at 222; *see generally Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 n.2 (5th Cir. 2011) ("The law-of-the-case doctrine is called the 'mandate rule' when it embodies the policy that a district court on remand must obey the letter and spirit of the earlier decision of an appeals court.").  The upshot is that Oklahoma Firefighters no longer has standing to challenge statements made before October 2019—*i.e.*, the only remaining actionable statements in this case—because it admits to not only having purchased stock "after the last alleged false statement" (Opp. at 11), but also concedes they did not purchase shares until after the February 2019 disclosure.

In an ironic attempt to escape this conclusion, Oklahoma Firefighters itself mischaracterizes the Fifth Circuit's opinion.  Specifically, it contends that the Fifth Circuit's holding applies only to the alleged "timeline"-specific misstatements—one of four categories of misstatements that it insists have been "divided and analyzed" separately "at every step of the litigation."  (Opp. at 13.)  But neither the "plain meaning" nor the "context" of the Fifth Circuit's holding suggests such a cramped interpretation.  (*Id.*)

On the contrary, the Fifth Circuit analyzed the complaint by "grouping the allegations into two time periods"—regardless of subject matter—and then considering, for each time period, "(1) whether the statements were forward-looking and protected by the safe harbor [under the PSLRA]; (2) whether the statements were material misstatements or omissions; and (3) if scienter was properly alleged."  *Okla. Firefighters*, 58 F.4th at 207.  Consistent with this approach, the Fifth Circuit evaluated the 2019 statements together before concluding, in the final paragraphs of that section, that "the alleged misstatements from February, April, and July 2019 [] satisf[ied] the

6

pleading standard," while those "later allegations do not . . . because Defendants had adequately tempered their optimistic language by October." *Id*. at 218. That the Fifth Circuit wholly discarded those "later allegations" as non-actionable is confirmed by its treatment of them in the very next section of the opinion, where it evaluated scienter ***only*** for "the February, April, and July 2019 statements." *Id*. Accordingly, nothing in the plain terms or surrounding context of the Fifth Circuit's holding suggests it reached only a "single statement of a single category of alleged misstatements." (Opp. at 13.)

The substance of the October 23 disclosure itself does not limit the breadth of the Fifth Circuit's holding. First, the Fifth Circuit's holding regarding the consequences of the October 23 disclosure is not limited by its terms to the timeline-specific statements made in 2019. *Okla. Firefighters*, 58 F.4th at 218 ("Therefore, we hold that the statements before October 2019 satisfy the pleading standard, but . . . the later allegations do not."). Second, it is clear from the Fifth Circuit's analysis that it viewed the Defendants' October 23 disclosure as marking a critical shift in Six Flags' disclosures overall, the effect of which "adequately tempered [Six Flags'] optimistic language" about the China Parks more broadly, regardless of the category of the misstatement explicitly referenced. *Id*. ("By late 2019, however, Defendants' language had changed."). It is simply logical to interpret Six Flags' disclosure expressing uncertainty as to the opening of the China Parks as reflecting pessimism about the status of construction and Riverside's funding— *i.e.*, the conditions necessary for the "development of several multibillion-dollar Six Flags-branded parks in China." (Compl. ¶ 1.) Indeed, contrary to its position now that the alleged misstatements belong to "discreet [sic] categories of misinformation" (Opp. at 13), Oklahoma Firefighters highlighted their interdependence in its Complaint:

- Defendant Reid-Anderson's statement that ***"[t]here's ongoing build going on"*** . . . were materially false and misleading because construction was at a

7

standstill at the time the statements were made.  Practically no progress on construction was made . . . *and future construction of any parks was unlikely because Riverside still did not have the funding to pay for the necessary manpower, construction drawings or theme park rides*.  (Compl. ¶ 225 (emphases added).)

- Indeed, at the time, *it was materially false and misleading as well as improper under GAAP, to recognize such revenue* in connection with the China parks, *given that the represented timeline for the park's opening could not be met*, as evidenced by the facts that Riverside had already failed to make required licensing payments to Six Flags, and *Riverside's financial condition had already deteriorated* to the point that it was unable to pay its employees, its park design firm, international ride vendors, and construction workers for work on the Six Flags [China Parks].  (Compl. ¶ 245 (emphases added).)

This interdependence also undermines Oklahoma Firefighters' argument that the Fifth Circuit "explicitly upheld *all* of the revenue misstatements in Six Flags' Class Period financial statements . . . *including revenue reported on October 23, 2019*."  (Opp. at 14.)  The Fifth Circuit held only that Six Flags improperly recognized revenue on the China Parks to the extent its statements regarding the parks' construction progress were also misleading.  *Okla. Firefighters*, 58 F.4th at 221 ("By themselves, such allegations of improper revenue recognition might not satisfy the pleading demands of the PSLRA.  In this case, though, we have already held that Plaintiff has sufficiently pled that Defendants knowingly made false and misleading statements regarding the progress and opening dates of the China parks.  It is not unreasonable, then, to infer that Defendants also may have overstated the revenue *that depended on the projected opening dates*." (emphasis added)).  Since the Fifth Circuit held that the October 23 disclosure was not an actionable misstatement, Oklahoma Firefighters' contention that Defendants' revenue recognition statement from the same day was upheld as actionable is categorically false.  There is simply no way to reconcile Oklahoma Firefighters' interpretation with the holding that the October 23 disclosure was not actionable.

8

**B.      Oklahoma Firefighters Lacks Standing Because Its Reliance Was Unreasonable.**

The import of the Fifth Circuit decision is case dispositive: Oklahoma Firefighters—which concedes that it only purchased Six Flags stock in late October 2019 after the "last alleged false statement" (Opp. at 11) and several months after the February 2019 disclosure—has no standing to pursue this litigation because it unreasonably relied on statements that were "adequately tempered" by Six Flags' corrective disclosure.

**(i)      Movants' Attempts To Distinguish Defendants' On-Point Cases Fail.**

The authority cited by Defendants in their motion for judgment on the pleadings is clear: a purchaser "who did not reasonably rely on a misrepresentation or who suffered no loss because of a misrepresentation lacks standing to sue under the PSLRA." *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 235 (D. Mass. 2014).  The plaintiff in *City of Bristol* lacked Article III standing because it purchased stock "after a corrective disclosure," which rendered its reliance on the earlier misrepresentation "no longer reasonable in light of the new information."  *Id.*  As a separate, additional reason for dismissal, the Court concluded, "furthermore, the market is assumed to have processed the correction, which would be reflected in the stock price."  *Id.*  The plaintiffs in *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 206 (S.D.N.Y. 2020), and *In re Dr. Reddy's Laboratory Limited Securities Litigation*, No. 3:17-cv-6436, 2019 WL 1299673, at *13 (D.N.J. Mar. 21, 2019), suffered the same fate for the same reason: they lacked standing because they purchased after, and in spite of, corrective disclosures that revealed alleged fraud and rendered their reliance unreasonable as a matter of law.

Oklahoma Firefighters' arguments against this straightforward line of cases is unavailing. It first argues that these cases are inapposite because they involve plaintiffs that purchased after a full disclosure, "rather than here, where Oklahoma Firefighters purchased after the second of four ***partial*** corrective disclosures." (Opp. at 16.)  As an initial matter, Oklahoma Firefighters' theory

9

of a "continuing fraud throughout the Class Period as alleged in the Complaint" (*id.* at 4) is no longer tenable in light of the Fifth Circuit's holding that the October 23 disclosure was not only accurate, but also "tempered" Defendants' prior optimistic statements.

But in any event, *City of Bristol* does involve a situation where a plaintiff contended that it purchased stock in between a series of "multiple allegedly misleading statements that "perpetuate[d] a know[ing] misleading presentation of the study's results." *City of Bristol*, 12 F. Supp. 3d at 235. The court there disagreed, holding that the disclosure issued the day prior to the plaintiff's purchase sufficiently corrected the defendant's prior misstatements and that Plaintiff "lack[ed] standing to contest that the statements defendants made [prior to the corrective disclosure] were misrepresentations under the PSLRA." *Id.* Here, as in *City of Bristol*, Oklahoma Firefighters lacks standing because it purchased after the corrective disclosure and therefore could no longer reasonably rely on the earlier misrepresentations. And here, because the Fifth Circuit also affirmed the Court's decision that no statements postdating Oklahoma Firefighters' purchase are actionable, there are no misstatements left for it to challenge.

Oklahoma Firefighters next argues that these cases do not apply because it purchased stock while the stock price "was artificially inflated," and thus endured an "injury-in-fact." (Opp. at 10.) The plaintiffs in *Abengoa* made the same argument, which the court squarely rejected in adopting *City of Bristol*'s holding that a plaintiff's belated purchase was an issue of standing, not loss causation. 481 F. Supp. 3d at 206-07. Moreover, by purchasing "in spite of the revelatory nature" of the corrective disclosures, the plaintiffs' injuries in *Abengoa* could not be "readily traced" to the prior misstatements—one of the three requirements to confer Article III standing. *Id.* The same is true here. By purchasing in spite of the admittedly revelatory nature of the February 2019

and October 23 disclosure, Oklahoma Firefighters' injuries cannot be readily traced to Six Flags' alleged actionable misstatements, which preceded its purchase.

Given Oklahoma Firefighters' failure to meaningfully grapple with Defendants' on-point caselaw, it is no surprise that its own cases are inapposite. Oklahoma Firefighters cites *In re Dynegy, Inc. Securities Litigation*, 226 F.R.D. 263, 275 (S.D. Tex. 2005), for the proposition that a plaintiff has standing for purchases made after the initial corrective disclosure "as long as the representative parties have a direct and substantial interest." (Opp. at 15.) Unlike here, however, the lead plaintiff in *Dynegy* indisputably had standing based on purchases in connection with an initial public offering, and the question considered by the Court on a motion for class certification was whether the lead plaintiff was required to demonstrate standing for absent members of the putative class who made purchases after that offering. *Dynegy*, 226 F.R.D. 263 at 274.

In *Ferris v. Wynn Resorts Ltd.*, No. 2:18-cv-00479, 2023 WL 2337364 (D. Nev. Mar. 1, 2023) (Opp. at 11-12), also on a motion for class certification, one set of named plaintiffs purchased defendant's shares three days before the January 26, 2018 partial corrective disclosure and thus had standing to assert their claims, regardless of challenges relating to subsequent, additional purchases by the plaintiff after that disclosure. *Id.* at *4. Similarly, in *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001) (Opp. at 15), one named plaintiff (Kinney) indisputably purchased shares during the relevant class period and before the first corrective disclosure and thus had standing. *Id.* at 180-81. In *In re Bridgestone Securities Litigation*, 430 F. Supp. 2d 728, 738 (M.D. Tenn. 2006) (Opp. at 10, 12), while the plaintiff purchased one ADR after a tire recall that constituted a partial disclosure, subsequent corrective disclosures revealed new information concerning the defendants knowledge and concealment of defects in the recalled tires. Here, as described above (*see supra* Part I.A.), the interrelatedness of the purported false

11

and misleading statements necessarily means that the October 2019 disclosure "adequately tempered" **all** of Six Flags' prior actionable misstatements.  Finally, while the court in *In re Teva Securities Litigation*, Nos. 3:17-cv-00558, 3:18-cv-01681, 2023 WL 3186407 (D. Conn. May 1, 2023) (Opp. at 14), rejected defendants' argument that plaintiffs who purchased shares after "[i]nvestors and analysts . . . were on notice that Teva was internally raising its prices, in lockstep with its competitors" lack standing, it did so primarily because it had no occasion to reach the question of whether later corrective disclosures were actionable and analyzed the issue primarily through the lens of loss causation, *id.* at *28-30, which has not been raised at this stage.[4]

    **(b)**    **Movants' Straw Man Arguments Fail.**

Movants parade an army of straw men designed to confuse the issue before this Court. According to Oklahoma Firefighters, (1) Defendants' argument is a premature, fact-intensive "truth-on-the-market defense" (Opp. at 3, 17); (2) its purchase of Six Flags shares at allegedly inflated prices—relevant for loss causation purposes only—means that it has standing (*id.* at 10-12); and (3) its individual reliance is irrelevant because it can rely on the class-wide presumption of reliance at class certification, which will require "extensive fact and expert evidence" to rebut (*id.* at 19-20).

None of the arguments upon which Oklahoma Firefighters relies is ripe for adjudication. Defendants are only challenging, on the undisputed record, the unreasonableness of Oklahoma Firefighters' reliance on the purportedly false and misleading statements alleged and still

---

4    Plaintiff also relies on *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 464, 472 (2013) (Opp. at 2), claiming that the Supreme Court "[found] standing for 'all investors who purchased Amgen stock between the date of the first alleged misrepresentation and the date of the last corrective disclosure.'"  Not so.  The only issue before the Supreme Court was whether, on a motion for class certification, the lead plaintiff had satisfied Rule 23(b)(3)'s predominance requirement through the fraud-on-the-market class-wide presumption of reliance. *Id.* at 465-66.  The Supreme Court did not consider the lead plaintiff's individual standing at all, let alone assess whether a lead plaintiff who purchased after statements that "adequately tempered" all of Defendants' prior alleged misstatements had individual standing.

actionable in the Complaint.  *See Abengoa*, 481 F. Supp. 3d at 206-07.  While the fraud-on-the-market theory may provide a presumption of class-wide reliance, *see Basic Inc. v. Levinson*, 485 U.S. 224 (1988), it may be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price."  *Id*. at 248.  *Basic* went on to hold that severing can be done by showing "a plaintiff who believed that [defendants'] statements were false" or if such an investor "could not be said to have relied on the integrity of a price he knew had been manipulated."  *Id.* at 249.  The same is true here given Oklahoma Firefighters purchased all of its Six Flags stock after investors had "first learned they had been defrauded" (App'x at 26) and after the October 2019 disclosure that "adequately tempered [Defendants' prior] optimistic language."  *Okla. Firefighters*, 58 F.4th at 217-18.[5]  To hold otherwise would "transform a private securities action into a partial downside insurance policy."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347–48, (2005).

At this procedural juncture, Defendants are not raising—and this Court need not reach—those separate issues (or any truth-on-the-market defense).  For these reasons, there is no merit to Oklahoma Firefighters' contention that the Fifth Circuit would have had to shorten the class period,[6] dismiss later alleged corrective disclosures or determine that there was no remaining artificial inflation to find that Oklahoma Firefighters' reliance was unreasonable. On the basis of an undisputed factual record, this Court knows when Oklahoma Firefighters purchased its stock

---

[5]    Oklahoma Firefighters wrongly accuses Defendants of misrepresenting that concession by not including the phrase "partial corrective disclosure." (Opp. at 15.)  Whether the alleged correction was partial or not is irrelevant to the arguments Defendants assert.  What matters—and why Defendants point to the concession—is that Plaintiff makes clear that investors had learned of and were on notice of an alleged fraud and Oklahoma Firefighters nevertheless chose to buy Six Flags stock, assuming that risk.

[6]    Because Oklahoma Firefighters has not moved for class certification yet, Defendants do not know what class it will propose and for that reason have had no occasion to challenge that issue.  Should it be necessary, Defendants reserve their rights to challenge any class definition that does not conform to the Fifth Circuit's opinion (which at a minimum would require any class period to end no later than October 23) and this Court's rulings or is otherwise uncertifiable or fails to satisfy Fed. R. Civ. P. 23.

and therefore can conclude Oklahoma Firefighters lacks standing in light of the Fifth Circuit's holding. (Opp. at 14.)[7] None of the other issues were raised with the Fifth Circuit, and none is necessary for this Court to conclude that any reliance on the allegedly false statements was unreasonable as a matter of law.

## II.    NEITHER AMENDMENT NOR INTERVENTION SHOULD BE GRANTED IN LIGHT OF OKLAHOMA FIREFIGHTERS' LACK OF STANDING.

Because Oklahoma Firefighters lacks standing, it cannot amend the Complaint to join Key West under Rules 15 or 20, nor can Key West intervene under Rule 24. Fifth Circuit precedent is unequivocal. If the original plaintiff has standing—even over just one claim—there is an Article III "case or controversy" in which other parties can join. *See Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981). But where, as here, a plaintiff lacks standing to bring any claim, it does not have "the power to bring in a new plaintiff and continue the litigation" through any of the procedural tools "set forth in Rules 15, 21, 23, and 24." *Jackson v. Fid. Nat'l Title Ins. Co.*, No. 3:07-CV-1706-G, 2008 WL 508489, at *3 (N.D. Tex. Feb. 26, 2008). Accordingly, Movants' suggestion that Key West's motion to intervene "obviated" Oklahoma Firefighters' lack of standing (Opp. at 22) misunderstands the fundamental premise underlying the Fifth Circuit's controlling precedent. *See, e.g.*, *Lopez v. Sw. Airlines Co.*, Nos. 3:08-cv-01975-O, 3:09-cv-00137-O, 2013 WL 12121233, at *6 (N.D. Tex. July 10, 2013) (criticizing plaintiffs' attempt to use procedural rules as "backdoor" because "they fail[ed] to adequately consider the *underlying and preemptory* standing problems" (emphasis added)).

---

[7]    *See Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997) ("[A] jurisdictional matter cannot be waived and can be raised at any time"); *Lopez*, 2013 WL 12121233, at *4 (same). Movants devote pages to these strawman arguments (*see, e.g.*, Opp. at 17-20) while recognizing Defendants did not raise them at this stage. (*See id.* at 3 ("Even if Defendants were to argue that the truth was fully disclosed to the market as of October 23, 2019 (which they have not). . . .").)

14

*Lopez*, 2013 WL 12121233, is instructive. There, "[a]fter several years of discovery, it was revealed that none of the original named Plaintiffs had flown on an aircraft that violated [the at-issue directive]," and they therefore lacked standing to bring these claims.[8] *Id.* at *2. The court rejected plaintiffs' attempt to add a group of intervenors to cure this defect, holding that its previous order granting intervention was improper because "this Court never had jurisdiction over these claims." *Id.*; *see also id.* at *5 ("Plaintiffs cannot now reverse engineer a legitimate claim by inserting Intervenors, because the Court never had proper subject-matter jurisdiction over even the broadest of these claims."). The court emphasized that "[w]hile the dismissal is on strictly technical grounds, the Constitution and precedent require such a result." *Id.* at *3. The same is true here.

That "[t]he Fifth Circuit [also] has a 'broad policy favoring intervention,'" is a truism that cannot save Movants' claims. (Motion to Intervene at 6 (quoting *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016)).) Indeed, in each of the cases cited by Movants, the original plaintiff had standing, thus allowing the courts there to entertain motions to amend or intervene pursuant to the "broad policy favoring intervention." In *Wal-Mart*, for example, there was no dispute over whether the original plaintiff had standing. *See Wal-Mart Stores, Inc.*, 834 F.3d at 569. Similarly, in *In re Enron Corporation Securities, Derivative & "Erisa" Litigation*, No. MDL–1446, Civ.A. H–01–3624, 2004 WL 405886, at *1, *7 (S.D. Tex. Feb. 25, 2004) (Motion to Intervene at 10-13), there was no dispute that the lead plaintiff had standing to bring *some* claims based on its debt investments. While the court granted intervention

---

[8]    Key West's suggestion that, because "Defendants engaged in discovery for months" (Motion to Intervene at 4), they cannot now challenge its standing, is yet another straw man. The Fifth Circuit is clear: "regardless of when the district court actually determines it lacks subject matter jurisdiction over the original plaintiff, 'Rule 15 . . . do[es] not allow a party to amend to create jurisdiction where none actually existed.'" *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995).

into the existing "case or controversy," it did so to allow representation for the other subclass of claims. Finally, in *In re Bridgestone Securities Litigation*, 430 F. Supp. 2d at 738 (Motion to Intervene at 6, 8), the court held that Plaintiff Ziemer had "standing to sue for her own injury," and while "Plaintiff Ziemer *remains in the suit*," intervention was proper because she "does not adequately protect the interests of [the intervenor]." *Id.* at 739-40 (emphasis added).

Nor is there any merit in the argument that denying intervention "would hinder Key West's ability to recover damages for the losses it has suffered resulting from Defendants' conduct." (Motion to Intervene, at 8.) Key West can file its own individual lawsuit. What it cannot do is intervene to carry-on a class action lawsuit being prosecuted by Oklahoma Firefighters without standing to do so. Oklahoma Firefighters mischaracterizes Defendants' argument on this point. (Opp. at 22 n.7.) Defendants never argued that Key West's individual claims would be time-barred, only that it could not bring or continue a class action in light of *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018). Defendants pointed out—and Movants ignore—that Fifth Circuit precedent on standing (which differs from other Circuits) would preclude Key West from joining as a new class representative. (Defendants' Motion for Judgment on the Pleadings at 13 n.5.)

In a last-ditch effort to save its case, Oklahoma Firefighters attempts to narrow the holding of *Summit Office Park* to its "unique circumstances." (Opp. at 23.) Unfortunately for Oklahoma Firefighters, *Summit*'s holding is not only clear but has been broadly applied and remains controlling. *See, e.g.*, *Alex A. ex rel. v. Edwards*, No. 22-573-SDD-RLB, 2023 WL 2700712, at *3-6 (M.D. La. Mar. 29, 2023) (citing *Summit* and denying motion to intervene until court decides if entire action should be dismissed for lack of standing).

Oklahoma Firefighters' suggestion that "the Fifth Circuit has already indicated that it would reject Defendants' overly formalistic argument that Key West cannot be added by

16

amendment simply because Oklahoma Firefighters lacks standing" (Opp. at 24) is belied by the other case it cites for this proposition. Indeed, in *Federal Recovery Services, Inc. v. United States*, 72 F.3d 447 (5th Cir. 1995), the court emphasized that the "precedent controlling the panel" dictated that "neither Rule 15 nor any other rule of civil procedure permit [plaintiff] to cure this jurisdictional defect by including or substituting" a new plaintiff. *Id*. at 453. It even rejected the Tenth Circuit's less-formalistic approach to standing, stressing that "[w]e do not take such a sanguine view of the federal courts' limited subject matter jurisdiction." *Id*. at 453.

The Fifth Circuit's approach to standing remains controlling here, despite out of Circuit opinions. *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 36, 38-39 (1st Cir. 2020) (noting that while "[t]here are indeed some cases [like *Summit Office Park*] in which courts suggest this formalistic approach is correct," "[t]he better-reasoned authority. . . allows a court to entertain and grant a motion to amend filed by a plaintiff who lacks standing to pursue the claim pleaded.")[9] In addition, Plaintiff's attempt to dismiss *Turner v. First Wisconsin Mortgage Trust*, 454 F. Supp. 899 (E.D. Wis. 1978), a securities case cited favorably by *Summit Office Park*, because it "was decided 45 years ago and runs contrary to the weight of recent Circuit Courts that permit amendment to cure any standing deficiencies of lead plaintiffs" (Opp. at 25 n.10) fails for the same reasons.

Because of this Circuit's standing authority, the intervention analysis in which Key West engages is superfluous. (Motion to Intervene at 6-14.) While Oklahoma Firefighters' fix sounds simple—"Key West would simply join Oklahoma Firefighters' existing complaint" (Motion to Intervene at 3)—it is constitutionally prohibited in the Fifth Circuit, where intervention

---

[9]    In a lengthy footnote, Movants list the very cases that *Yan* cited that criticize the Fifth Circuit's standing jurisprudence. *Compare* Opp. at 24 n.9 *with Yan*, 973 F.3d at 36. Those cases predate *Summit*, which remains controlling here.

"presupposes the pendency of an action in a court of competent jurisdiction." *Lopez*, 2013 WL 12121233, at *5. Therefore, regardless of what procedural mechanism Oklahoma Firefighters or Key West cite, none will cure the fundamental jurisdictional deficiency that warrants dismissal of this case.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for judgment on the pleadings dismissing with prejudice Oklahoma Firefighters' claims against Defendants and deny the Movants' motions to add Key West by amendment, joinder or intervention.

*/s/ Scott A. Fredricks*
Ralph H. Duggins
Texas Bar No. 06183700
Scott A. Fredricks
Texas Bar No. 24012657
Michael Ackerman
Texas Bar No. 24120454
**CANTEY HANGER LLP**
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Tel:   817-877-2800
Fax:   817-877-2807
rduggins@canteyhanger.com
sfredricks@canteyhanger.com
mackerman@canteyhanger.com

Jay B. Kasner (*pro hac vice*)
Scott D. Musoff (*pro hac vice*)
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
One Manhattan West
New York City, NY 10001
Tel:   212-735-3000
Fax:   212-735-2000
jay.kasner@skadden.com
scott.musoff@skadden.com

Jessie K. Liu (*pro hac vice*)
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
1440 New York Ave. NW
Washington, DC 20005
Tel:   202-371-7000
Fax:   202-393-5760
jessie.liu@skadden.com


*Co-Lead Counsel for Defendants Six Flags*
 *Entertainment Corporation,*
 *James Reid-Anderson and Marshall Barber*

19

## CERTIFICATE OF SERVICE

I certify that on the 16 day of May 2023, all counsel of record were served with the foregoing via E-File service.


*/s/ Scott A. Fredricks*

Scott A. Fredricks