**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| ELECTRICAL WORKERS PENSION FUND LOCAL 103 IBEW, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**BRIEF IN FURTHER SUPPORT OF MOTION TO INTERVENE AS ADDITIONAL**
**PLAINTIFF AND PROPOSED CLASS REPRESENTATIVE BY**
<u>**KEY WEST POLICE & FIRE PENSION FUND**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.    Defendants Do Not Contest Key West Satisfies Rule 24. .................................... 2

II.   Oklahoma Firefighters Has Standing Because Defendants Concede It Suffered an
      Injury-in-Fact. ..................................................................................................... 2

III.  Reasonable Reliance Is A Fact Question For Class Certification...................................... 9

CONCLUSION...................................................................................................................... 10

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Basic v. Levinson*,
   485 U.S. 224 (1988)..................................................................................................10

*Birmingham Steel Corporation v. Tennessee Valley Authority*,
   353 F.3d 1331 (11th Cir. 2003) ................................................................................2

*In re Bridgestone Securities Litigation*,
   430 F. Supp. 2d 728 (M.D. Tenn. 2006).................................................................4, 6

*City of Bristol Pension Fund v. Vertex Pharmaceuticals Inc.*,
   12 F. Supp. 3d 225 (D. Mass. 2014) ........................................................................8

*In re Dr. Reddy's Laboratory Limited Securities Litigation.*,
   2019 WL 1299673 (D.N.J. Mar. 21, 2019)..............................................................8

*Duhaime v. John Hancock Mutual Life Insurance Company*,
   183 F.3d 1 (1st Cir. 1999)........................................................................................9

*Francisco v. Abengoa, S.A.*,
   481 F. Supp. 3d 179 (S.D.N.Y. 2020)......................................................................8

*Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System Retirement System*,
   141 S. Ct. 1951 (2021).............................................................................................10

*Lynch v. Baxley*,
   651 F.2d 387 (5th Cir. 1981) ................................................................................1, 9

*Martone v. Robb*,
   902 F.3d 519 (5th Cir. 2018) ................................................................................1, 3

*In re National Australia Bank Securities Litigation*,
   2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006)...........................................................9

*Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment Corporation*,
   58 F.4th 195 (5th Cir. 2023) .............................................................................4, 5, 7

*Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ...................................................................................7

*Silva v. Vowell*,
   621 F.2d 640 (5th Cir. 1980) ...................................................................................9

*Summit Office Park, Inc. v. U.S. Steel Corporation,*
    639 F.2d 1278 (5th Cir. 1981) ........................................................................1, 8, 9

*Unger v. Amedisys Inc.,*
    401 F.3d 316 (5th Cir. 2005) ................................................................................10

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission,*
    834 F.3d 562 (5th Cir. 2016) ..................................................................................2

## PRELIMINARY STATEMENT

Defendants do not dispute that Key West's motion is proper under the "liberal rules" for intervention under Rule 24. Defendants' entire opposition to intervention rests on their meritless contention that Oklahoma Firefighters[1] lacks standing. Defendants are wrong: under controlling Fifth Circuit law, Oklahoma Firefighters has standing because it adequately alleged an injury-in-fact from its purchases of Six Flags' common stock at artificially inflated prices due to Defendants' fraud, and thus Oklahoma Firefighters was injured after Defendants' January and February 2020 corrective disclosures caused the stock price to decline. *See Martone v. Robb*, 902 F.3d 519, 523-24 (5th Cir. 2018). Defendants concede that that Oklahoma Firefighters purchased during a period of alleged artificial inflation and held through two corrective disclosures—and thus plainly satisfy the Fifth Circuit's showing for standing. Moreover, Defendants do not contend that the Fifth Circuit shortened the Class Period or altered the period of alleged artificial inflation in any way, and further Defendants disclaim that they are raising any "truth-on-the market" defense. Accordingly, Defendants' challenge to standing fails.

Defendants continue to misread the Fifth Circuit's decision in *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981), as somehow requiring this Court to deny Key West's motion simply based on Defendants' contention that Oklahoma Firefighters supposedly lacks standing. But the Fifth Circuit did not say that and, in fact, controlling Fifth Circuit authority (which Defendants do not cite) ***requires*** that absent class members like Key West be given an opportunity to intervene where the named plaintiff's standing is called into question. *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981).

---

[1] For the Court's convenience, a Glossary of Terms and References is attached as Appendix 1. All emphasis and other alterations are added, and internal citations and quotations are omitted, unless otherwise noted.

At heart, Defendants' standing argument amounts to an attack on the continued reliance by the proposed Class on Defendants' false statements and omissions after October 23, 2019, as alleged. This flouts the holdings of the Supreme Court and the Fifth Circuit Court of Appeals that reliance is a fact-intensive issue and is inappropriate to decide at this stage of the case. Accordingly, the Court should grant Key West's motion to intervene and amend the complaint.

## ARGUMENT

### I.    Defendants Do Not Contest Key West Satisfies Rule 24.

Defendants concede that Key West satisfies the criteria of Fed. R. Civ. P. 24, which "is to be liberally construed" in line with this Circuit's "broad policy favoring intervention." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565, 569 (5th Cir. 2016). There is no dispute that Key West neither delayed making the motion to intervene, nor prejudiced Defendants in any way. Mot. at 7. In addition, Key West's interest in the litigation, as a class member, is identical to Oklahoma Firefighters' and other class members, and that interest would be impaired if the Court accepts Defendants' argument that Oklahoma Firefighters lacks standing or is otherwise an inadequate or atypical representative for some or all of the claims. *Id.* at 8. Indeed, courts have rejected as "insufficient" Defendants' cite-less argument that Key West's interests will not be impaired because "Key West can file its own individual lawsuit." *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1339-40 (11th Cir. 2003) (that class members "could still litigate their actions individually" was an "insufficient basis for refusing to allow class counsel time to locate an appropriate substitute representative"); Opp. at 16.

### II.    Oklahoma Firefighters Has Standing Because Defendants Concede It Suffered an Injury-in-Fact.

Defendants do not challenge Key West's satisfaction of Rule 24, and instead rely entirely on their incorrect and thoroughly debunked reading of the Fifth Circuit's decision reversing

dismissal and argument that Oklahoma Firefighters somehow lacks standing. But Defendants nonetheless make several concessions that undermine their entire argument. Specifically, Defendants admit that: 1) Oklahoma Firefighters purchased stock at artificially inflated prices; 2) the full truth of fraud had not been fully revealed prior to Oklahoma Firefighters' purchases; and 3) the alleged Class Period did not end on October 23, 2019—each of which dispatch their standing argument.

First, Defendants concede that Oklahoma Firefighters alleged that it purchased Six Flags' common stock during the Class Period while the stock price was artificially inflated due to Defendants' fraud and was injured when new information was revealed to the market and caused the stock price to decline. *See* Opp. at 2 ("Oklahoma Firefighters nevertheless claims that it somehow suffered losses on its investment because the alleged inflation from the claimed fraud had not fully dissipated by the time Oklahoma Firefighters purchased Six Flags stock."). Nothing more is required under Fifth Circuit law to establish Article III standing. *Martone*, 902 F.3d at 523-24 (holding that plaintiff in a securities fraud had Article III standing because he alleged that he "purchased and held shares . . . during the Class Period," and "when the truth came out [about the fraud,] the stock price fell"). Defendants simply ignore *Martone* and do not dispute that Oklahoma Firefighters has alleged that it was injured by Defendants' fraud because it bought at inflated prices and held stock when the stock price declined when the full truth about the fraud was later revealed to the market. ¶¶270-79.

Having conceded this fact—as they must—Defendants instead make much of Lead Plaintiff's passing reference to the February 14, 2019 partial corrective disclosure in its appellate briefing as when investors "first . . . learned that they had been defrauded." Opp. at 1, 9 (citing

Pl.-Appellant's Reply Br. at 20).[2] But Defendants' attempted "gotcha" falls flat given Lead Plaintiff's clear allegations that the February 14, 2019 disclosure revealed only part of the truth that had been concealed by Defendants' fraud, and that investors were still in the dark about the full extent of Defendants' misrepresentations. ¶¶271-72. Indeed, Defendants' argument is refuted further by Defendants' concession that the Fifth Circuit held that alleged false statements and omissions *after* the February 2019 corrective disclosure were actionable. *See* Opp. at 6-7 ("the alleged misstatements from February, April, and July 2019 [] satisf[ied] the pleading standard" (quoting *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 218 (5th Cir. 2023) ("*Okla. Firefighters*")). Thus, all parties agree that the allegations establish that there was still artificial inflation in the price of Six Flags stock for later purchasers like Oklahoma Firefighters.

In their attempt to distinguish *In re Bridgestone Securities Litigation*, 430 F. Supp. 2d 728 (M.D. Tenn. 2006), Defendants further concede that a plaintiff in Oklahoma Firefighters' position, that "***purchased one ADR after a [partial corrective disclosure]***," has standing where it purchased prior to "***subsequent corrective disclosures revealed new information*** concerning [the fraud]." Opp. at 11. Defendants' argument effectively concedes that *Bridgestone* is on all fours here, because Oklahoma Firefighters purchased after the October 2019 partial corrective disclosure regarding the construction timetables and before the January 10 and February 20, 2020 disclosures revealed "new information" about the fraud. ¶¶275-79. Neither in their Motion for Judgment on the Pleadings nor their Opposition to Key West's Motion to Intervene have Defendants raised any

---

[2] The full sentence, which Defendants truncate, is, "This *partial corrective disclosure* was the first time investors learned they had been defrauded, and is not exculpatory just because Defendants were required to make a partial admission." Pl.-Appellant's Reply Br. at 20. Defendants' bad-faith interpretation of Lead Plaintiff's argument undermines their argument, and the full reading makes it clear that the February 2019 disclosure was always partial.

arguments concerning the latter two corrective disclosures: 1) Six Flags' January 10, 2020 disclosure, which was altogether different than the October 23, 2019 revelation about the opening timetable, and revealed for the first time that Riverside was in *default*, causing an 18% drop in share price (¶¶275-76); and 2) Six Flags' February 20, 2020 disclosure of entirely new information that Riverside could not cure its defaults, Six Flags terminated its partnership with Riverside, and Defendant Barber, Six Flags' long-time CFO, suddenly resigned, causing a further 16% share price decline and further injury to Oklahoma Firefighters (¶¶277-79). In failing to challenge these disclosures, Defendants implicitly concede that the Fifth Circuit did not shorten the Class Period at all. Of course, the Fifth Circuit did no such thing.[3]

Defendants' conclusory argument that "Oklahoma Firefighters' injuries cannot be readily traced to Six Flags' alleged actionable misstatements" fails to address the latter two corrective disclosures and is simply wrong. Opp. at 10-11. The latter disclosures above revealed the truth about Defendants' previously uncorrected misstatements about, *inter alia*, Riverside's financial condition and purported funding and "on going" building of the China Parks, misstatements upheld by the Fifth Circuit, and relied on by Oklahoma Firefighters through the inflated share price it paid. *See Okla. Firefighters*, 58 F.4th at 205 (describing the January 10, 2020 corrective disclosure as revealing Riverside's default and negative revenue adjustments related to international licensing revenue recognition, and the February 20, 2020 disclosure as revealing "the termination of [Six

---

[3] Faced with the fact that the Fifth Circuit acknowledged the Class Period extends until February 2020, *see* Pl.'s Opp. to MJOP at 8-9 & n.3, Defendants bizarrely claim that they "do not know what class [Plaintiff] will propose" and decline "to challenge that issue." Opp. at 13 n.6. Key West maintains that the Class Period runs through February 2020, as alleged in the first paragraph on the first page of the Complaint and as maintained by the Fifth Circuit. *See Okla. Firefighters*, 58 F.4th at 204 n.2, 205 (5th Cir. 2023) (("The parties identify the 'Class Period' in their pleadings as being from April 24, 2018, to February 19, 2020"; "Throughout the Class Period, Six Flags' stock declined from a high of $73.38 on June 22, 2018, to close at $31.89 **on February 20, 2020**, the company's lowest stock price in over seven years.").

Flags'] agreements with Riverside and that Barber would retire as Chief Financial Officer"). *See also Bridgestone*, 430 F. Supp. 2d at 737 ("Plaintiff has alleged the share price drop and tied it directly to the market's acknowledgment of [Defendants'] prior alleged misrepresentations.").

Defendants attempt to revive their failed standing challenge by contending baselessly that the Fifth Circuit held that all of the misstatements were "interdependent" or "interrelated" and therefore the October 2019 disclosure about additional delays in opening somehow "adequately tempered" *all* of Six Flags' prior actionable misstatements. Opp. at 7-8, 11. But Defendants can identify no such ruling by the Fifth Circuit—because the Fifth Circuit did no such thing. In fact, Defendants' argument is really just a "truth-on-the-market defense,"[4] *see Bridgestone*, 430 F. Supp. 2d at 735 (to rebut standing where plaintiff purchased after partial corrective, defendants must show "***the 'truth' was revealed to the market before she purchased***"), which Defendants concede was not at issue before the Fifth Circuit and cannot be decided on the pleadings. Opp. at 12 (characterizing truth-on-the-market as an argument that is not "ripe for adjudication"); *see also* Pl.'s Opp. to MJOP at 17-19.

Second, Defendants' contentions that the statements are "interrelated" or "interdependent"—whatever that may mean—have no basis in caselaw, much less any application on standing. Indeed, the Fifth Circuit did not use the words "interdependent" or "interrelated" or any similar concept in describing the misstatements. Rather, as Oklahoma Firefighters has already explained, the Fifth Circuit's discussion regarding the October 23, 2019 disclosure and the "later allegations" that day concerned the falsity and materiality of a ***single statement*** made by Defendant Barber about the ***timetables*** for opening the China Parks, just one of four distinct categories of misstatements that the Fifth Circuit held were actionable. Pl.'s Opp. to MJOP at 13 & n.4. Unable

---

[4] Defendants do not and cannot explain how an argument that *all* prior misstatements were "adequately tempered" is any different than a full truth-on-the-market defense.

to credibly challenge this plain reading, Defendants instead suggest disingenuously that the categories of misstatements do not apply—notwithstanding that Defendants themselves *adopted* those categories and have used them since the outset of the litigation, Opp. at 6, and which this Court and the Fifth Circuit also used in analyzing the misstatements. Pl.'s Opp. to MJOP at 12-14; *see also Okla. Firefighters*, 58 F.4th at 217 ("The February 2019 statements *about Riverside*—such as that Riverside 'continues to pay' for the parks' development and that the 'financing is in place'—concern . . . Riverside's financial condition and ability to finance the parks. Similarly, the February 2019 statements *about the new park deadlines* are not forward-looking."). Read in context, the Fifth Circuit addressed only a single misstatement regarding the opening timetables for the parks, and Defendants' contention that instead the Court of Appeals was ruling on *all* the other categories of misstatements—including, *inter alia*, Riverside's financial condition and funding of the China Parks, and revenue recognition under the Riverside agreement—lacks any support. *Id.* at 12-14.

Defendants' further contention that "it is simply logical" that announced delays in the opening timetable also revealed the full truth about Riverside's troubles, Opp. at 7, is anything but logical and flies in the face of Defendants' October 2019 reassurances that the delays had nothing to do with Riverside and were due to "recent macroeconomic events" in China. ¶272. As alleged, the full fraud can be revealed through a series of partial disclosures. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 326 (5th Cir. 2014). Finally, there is no indication that the Fifth Circuit dismissed the allegedly false revenue recognition statement on October 23, 2019, as Defendants assert. Opp. at 5-6. But even if the Fifth Circuit had, it would not make a difference, since Defendants concede that they are not challenging that the full truth about ongoing construction and Riverside's financial condition remained uncorrected at the time of Lead

Plaintiff's purchases. Opp. at 12.

The caselaw cited by Defendants is entirely inapposite, as *none* of those cases found that plaintiff lacked standing for *all* of the alleged misstatements simply because the plaintiff purchased after a partial corrective disclosure, as Defendants are asking the Court to do here without any precedent. Instead, each of those cases involve situations in which the court at most dismissed *only a portion* of the plaintiff's claims for lack of standing. For example, in *City of Bristol*, the plaintiff alleged defendants made misstatements on May 7, 29, and 30, and purchased their stock on May 30. *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 234 (D. Mass. 2014). The court there held *only* that plaintiff lacked standing to pursue the May 7 claims, because those misstatements were fully corrected by a May 29 disclosure and were unrelated to the May 29 and 30 misstatements. *Id.* at 235-41 ("Of course, the May 29 and 30 statements may themselves be misleading, and therefore grounds for suit."). Thus, the court in *City of Bristol* found that there were essentially two frauds and one had been fully corrected prior to plaintiff's purchase—and ruled that the plaintiff had standing to pursue other uncorrected statements.[5]

Defendants overextend and misread the Fifth Circuit's holding in *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981) (discussed at Opp. at 14-18). At the outset, *Summit* is inapplicable because both Oklahoma Firefighters and Key West have standing, the old

---

[5] The same is true of *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179 (S.D.N.Y. 2020). In that case, plaintiffs alleged claims related to misstatements made in relation to a 2013 offering, a 2014 bond offering, other 2013-2015 financial reports. *Id.* at 188-93. The court held that plaintiffs lacked standing to assert claims related only to the 2014 bond offering, because the plaintiff had purchased after the bond offering statements had been fully corrected and expressly argued that the bond offering was completely unrelated to the other alleged frauds. *Id.* at 205-07. Once again, unlike here, plaintiff lacked standing to pursue an entirely separate fraud that had been fully corrected prior to its purchase but had standing pursue other claims. Likewise, in *Dr. Reddy's*, the court held that plaintiff had standing to pursue claims that were unrelated to a separate fraud that had been fully corrected by a disclosure made before plaintiff's purchases. *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at *14 (D.N.J. Mar. 21, 2019).

and new plaintiffs in *Summit* had *no* overlapping interests, and *Summit* did not involve a motion to intervene by an absent class member with standing. 639 F.2d at 1282 ("there was no proper party," including absent class members, "available to amend the complaint"). Defendants ignore the plain implication of the Fifth Circuit's ruling in *Summit*: that an absent class member with standing would have been permitted to amend the complaint to be added as a named plaintiff. *Id.* at 1284 (affirming refusal to allow amendment only after ruling that the proposed new plaintiffs were *not* "members of the original putative class who, as such, had a right to propose this amendment"); *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 3 (1st Cir. 1999) (absent class member has standing to intervene to protect its interests). Indeed, four months after the Fifth Circuit issued its decision in *Summit*, it held that in class actions where "[i]t seems likely that the original plaintiffs no longer have standing," ***absent class members must be given an opportunity to amend or intervene to be named as plaintiffs***. *Lynch*, 651 F.2d at 388 (5th Cir. 1981) ("Under these circumstances we find that the district court erred in dismissing the case without giving members of the original class with live claims an opportunity to become plaintiffs by amendment of the complaint or by intervention[.]"); *see also Silva v. Vowell*, 621 F.2d 640, 650 (5th Cir. 1980) ("Once . . . the named plaintiffs' standing was in question, the plaintiffs and the judge should have realized that intervention by another named plaintiff was appropriate."). This rule applies even if a class has not been certified where, as here, "plaintiff has not yet had a reasonable opportunity to move for class certification." *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) (collecting cases).

## III.  Reasonable Reliance Is A Fact Question For Class Certification.

Defendants' challenge to the purported "unreasonableness of Oklahoma Firefighters' reliance" on the false and misleading statements and omissions made by Defendants and sustained

by the Court of Appeals (Opp. at 12) is premature, where, as here, Oklahoma Firefighters will rely on a class-wide presumption of reliance. Defendants' recitation of the proposition from *Basic v. Levinson* that the presumption of reliance can in certain circumstances be rebutted (Opp. at 13) confirms that class certification is the earliest appropriate juncture, if ever, for this sort of attack. 485 U.S. 224, 228 (1988) (appeal of district court's grant of summary judgment and class certification). Only then, with an appropriate evidentiary record, can Defendants attempt to satisfy the heavy burden to "'seve[r] the link' between a misrepresentation and the price paid by the plaintiff." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1962 (2021).

Defendants' argument will, at that time, require Defendants to *prove* that the truth concealed by Defendants' misstatements had been fully revealed to the market by October 23, 2019, such that **all** artificial inflation due to the fraud had dissipated by the time Oklahoma Firefighters purchased its Six Flags' common stock. Defendants will not be able to meet that heavy burden; in any event, Defendants clearly have not done so here. *See* Opp. at 13 ("Defendants are not raising . . . any truth-on-the-market defense"). Nor could they, given that this sort of fact-intensive analysis related to the *Basic* presumption of reliance is usually not appropriate before class certification, as the Fifth Circuit has recognized. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005) (*Basic's* fraud-on-the market theory, requires the court to engage in "thorough analysis" and **"base its ruling on admissible evidence**."); *see also* Pl.'s Opp. to MJOP at 17-19 (reliance can rarely be decided, if ever, at summary judgment).

## CONCLUSION

For the foregoing reasons, Key West respectfully submits that its Motion to Intervene should be granted and Defendants' Motion for Judgment on the Pleadings should be denied.

10

DATED: May 24, 2023

Respectfully submitted,

*/s/ Katherine M. Sinderson*
**BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP**
Hannah Ross* (N.Y. Bar No. 4020285)
John Rizio-Hamilton* (N.Y. Bar No. 4323846)
Katherine M. Sinderson* (N.Y. Bar No.
4503405)
Jesse L. Jensen* (N.Y. Bar No.4825949)
John J. Esmay* (N.Y. Bar No.4609293)
Brandon A. Slotkin* (N.Y. Bar No. 5941539)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
johnr@blbglaw.com
katiem@blbglaw.com
jesse.jensen@blbglaw.com
john.esmay@blbglaw.com
brandon.slotkin@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class,
and Counsel to Proposed Intervenor Key West*
*\*pro hac vice*

**MCKOOL SMITH PC**
Lewis T. LeClair
Texas Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-4000
Fax: (214) 978-4044
lleclair@mckoolsmith.com

*Liaison Counsel for Lead Plaintiff*

11

**Appendix 1**

**Glossary of Terms & References in Brief in Further Support of Motion to Intervene as Additional Plaintiff and Proposed Class Representative by Key West Police & Fire Pension Fund**

| Terms/Reference | Definition |
|---|---|
| ¶ | Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed on July 2, 2020 (ECF No. 50). |
| Key West | Key West Police & Fire Pension Fund. |
| Mot. | Motion to Intervene as Additional Plaintiff and Proposed Class Representative by Key West Police & Fire Pension Fund, filed on May 9, 2023 (ECF No. 108). |
| Oklahoma Firefighters or Lead Plaintiff | Oklahoma Firefighters Pension and Retirement System. |
| Opp. | Defendants' Brief (A) In Response to Key West's Motion to Intervene and (B) in Further Support of Their Motion for Judgment on the Pleadings, filed on May 16, 2023 (ECF No. 112). |
| Pl.'s MJOP Opp. | Lead Plaintiff's Brief in Opposition to Defendants' Motion for Judgment on the Pleadings and in Further Support of Lead Plaintiff's Motion for Leave to Amend the Complaint, filed on May 10, 2023 (ECF No. 110). |
| Pl.-Appellant's Reply Br. | Reply Brief for Plaintiff-Appellant, *Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, No. 21-10865 (5th Cir. Dec. 15, 2021), Doc. 44. |

12

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on counsel of record through the Court's CM/ECF Document Filing System on May 24, 2023.

DATED: May 24, 2023

/s/ Katherine M. Sinderson
**BERNSTEIN LITOWITZ BERGER**
    **& GROSSMANN LLP**
Katherine M. Sinderson (*pro hac vice)*
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
katiem@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class, and Counsel to Proposed Intervenor Key West*

13