UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM,**

Plaintiff,

v. **No. 4:20-cv-0201-P**

**SIX FLAGS ENTERTAINMENT CORPORATION ET AL.,**

Defendants.

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Leave to File its Amended Complaint (ECF No. 101), Defendants' Motion for Judgment on the Pleadings (ECF No. 102), and Key West Police & Fire Pension Fund's Motion to Intervene (ECF No. 108). For the reasons below, the Court **DENIES** Plaintiff's Motion (ECF No. 101), **GRANTS** Defendants' Motion (ECF No. 102), and **DENIES** Movant's Motion (ECF No. 108).

## BACKGROUND

This case arises from Defendants' failed attempt to expand their amusement parks into China. *See* ECF No. 50. Throughout 2018, Defendant Executives repeatedly maintained that their development and earnings schedule remained on-track. *Id.* But the projected park opening schedule was allegedly "in serious jeopardy" as early as May 2018. *Id.* at 8. Movant began purchasing shares of Defendants' stock in July 2018. ECF No. 109 at 126. Throughout the rest of the year, Riverside began defaulting on its licensing payments, and "construction in China came to a standstill" by 2019. ECF No. 50 at 8–9.

Beginning in February 2019, Defendants began announcing negative revenue adjustments due to the delays. ECF No. 50 at 10. On an October 23, 2019, earnings call, Defendants announced a "very high likelihood going forward that [Defendants would] see changes in the timing of park

openings," *Id.*; ECF No. 103 at 8–9, and that it was "unrealistic" to think the original timelines would hold. *Id.* Days after, Plaintiff began purchasing shares of Defendants' stock. ECF No. 28-2 at 12.

By February 2020, Defendants disclosed that they had terminated its development agreements with Riverside and that Six Flags would not recognize any revenue from the planned China expansion. ECF No. 103 at 8–9.

Plaintiff then sued, alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act for false and misleading statements made to investors from 2018 to 2020 about the progress, timeline for opening, and accounting for various Six Flags parks in China. ECF No. 50. Pursuant to Plaintiff's request, the Court appointed Oklahoma Firefighters as a Co-Lead Plaintiff for a potential future putative class. ECF No. 26. Oklahoma filed its Amended Complaint, which Defendants moved to dismiss. ECF Nos. 50, 51, The Court then granted Defendants' Motion. ECF No. 69.

Oklahoma Firefighters appealed. ECF No. 77. In January 2023, the Fifth Circuit reversed and remanded this Court's decision, holding that Plaintiff pled sufficient facts to support a claim for securities fraud to survive a motion to dismiss. ECF Nos. 82, 83. But the Fifth Circuit also held that "statements before October, 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not." *Oklahoma Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 218 (5th Cir. 2023).

As a result, Plaintiff moved to amend its complaint, ECF No. 101, and seeks to add Movant Key West and substitute them as Lead Plaintiff. *Id.* In response, Defendant moved for judgment on the pleadings, arguing that Plaintiff lacks standing based on the Fifth Circuit's holding. ECF Nos. 102, 103.

Key West then moved to intervene. ECF No. 108. Movant argues that they should be added to the suit because its injuries are nearly "identical" to Plaintiff's—except that it bought stock over a year earlier. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." FED. R. CIV. P. 12(c). In considering such a motion, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Brittan Commc'ns Int'l Corp. v. Sw. Bell. Tel. Co., 313 F.3d 899, 904 (5th Cir. 2002).* (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). Therefore, the nonmovant "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Doe. v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no genuine issues of material fact and only questions of law remain." *Brittan Commc'ns Int'l Corp. v. Sw. Bell. Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

## ANALYSIS

### I. Article III Standing

Standing contains three requirements. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). *First*, there must be a concrete injury in fact that is not conjectural or hypothetical. *Whitmore v. Arkansas*, 495 U.S. 149, 149 (1990). *Second*, there must be causation—a fairly traceable connection between a plaintiff's injury and the complained-of conduct of the defendant. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). *Third*, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *See Lujan*, 504 U.S. at 562. These three requirements constitute the core of Article III's case-or-controversy requirement. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) ("The constitutional limits on standing eliminate claims in which the plaintiff had failed to make out a case or controversy.").

"[A party's] lack of standing can be raised at any time." *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan* 883 F.2d 345, 348 (5th Cir. 1989). And a party's purported standing may be revoked by the

intervening opinion of a higher court. *See Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278 (5th Cir. 1981).

Defendant argues that Plaintiff lacks standing to pursue a claim for securities fraud because the Fifth Circuit determined that there was a full corrective disclosure by the time Plaintiff purchased stock. ECF No. 103 at 1. As a result, Plaintiff could not have suffered an injury in fact. *Id*.

Plaintiff responds that—to have standing—it only needed to buy stock when the price was still artificially inflated—i.e., before *all* artificial inflation was removed from the stock price. ECF No. 110 at 15. Plaintiff also contends that "the full truth" about Defendant's fraud was not known to investors until the disclosures made in early 2020 marked the end of the purported class period. *Id.* Plaintiff lastly asserts that the Fifth Circuit's holding regarding "statements" made after October 2019 applies only to one *category* of statements—those made about the timeline of the parks' opening. *Id.* at 10–15. And because Plaintiff purchased within the broader inflationary period in reliance on *other* statements before the 2020 disclosures, they have asserted an injury in fact. *Id.*

The Court therefore addresses whether Plaintiff has suffered an injury in fact.

**a. Injury in Fact and Securities Fraud**

To state a claim for securities fraud, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Oklahoma Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 206 (5th Cir. 2023) (quoting *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019).

Here, the "injury in fact" issue turns on the fourth element—whether Plaintiff can sufficiently allege that it reasonably relied on certain "statements" exempt from the Fifth Circuit's holding when it purchased Defendants' stock after the October 2019 disclosure.

**i. Reliance**

The reliance element requires that a "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury exists." *See Affco Inv. 2001, LLC v. Proskauer Rose, LLP*, 625 F.3d 185, 193 (5th Cir. 2010). An individual plaintiff must directly rely on a defendant's misrepresentation to connect the defendant's misrepresentation to the plaintiff's decision to buy. *See Basic v. Levinson*, 485 U.S. 224, 225 (1988). A plaintiff who buys stock after a corrective disclosure cannot suffer an injury in fact because any "reliance" on the earlier misrepresentation would not be reasonable given the disclosed information; and so a lack of reasonable reliance is a lack of standing under the PSLRA. *Basic, Inc.*, 485 U.S. 221, 246–47 (1988).

Plaintiff interprets the Fifth Circuit's holding in a way that parses Defendants' various "statements" by subject matter. ECF No. 111 at 16. Plaintiff claims it relied on Defendants' misrepresentation of its October 2019 *financial condition* (and other categories of continuing misrepresentations) in deciding to buy and that the Fifth Circuit's holding only applies to Defendants' representations on the timeline for park openings. *Id.*

Defendants contend that the Fifth Circuit's use of the term "statements" applies to *all* the alleged misrepresentations indiscriminately, and Plaintiff therefore bought stock too late to pursue a claim. ECF No. 112 at 13–18. Thus, the dispositive issue before the Court is defining and applying the term "statements."

**B. The 5th Circuit's Opinion**

The Parties' animosity now revolves around the following holding in the Fifth Circuit's Opinion:

> By late 2019, however, Defendants' language had changed. According to the Complaint, during the October 2019 earnings call, "Defendant Barber denied that there was 'any material change in the time line of China over the last 90 days.'" But in the full exchange on that call, Defendant Reid-Anderson admitted there was a 'very high likelihood going forward that we will see changes in the

> timing of the park openings' and that it was 'unrealistic' to think the timelines would hold.
>
> Therefore, we hold that the statements before October 2019 satisfy the pleading standard, but, because Defendants had adequately tempered their optimistic language by October, the later allegations do not.

*Oklahoma Firefighters*, 58 F.4th at 218.

Defendants' claim that, in an effort to revive this case, the Fifth Circuit's decision drafting[1] combined with the litigious creativity of the Parties has dealt Plaintiff an iatrogenic[2] blow.

"We [should] not [travel], in our search for the meaning of the lawmakers, beyond the borders of [the Fifth Circuit's Opinion]." *United States v. Great N. Ry.*, 287 U.S. 144, 154 (1932). "[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979). But the opinions of appellate courts dispose of discreet cases and must be read with a careful eye toward context. *See Cohens v. Virginia*, 6 Wheat. 264, 399–400 (1821) (Marshall, C.J.). So this Court must take the Fifth Circuit's Opinion at its word and by its "plain meaning." *See Reiter*, 442 U.S. 330; *Cohens*, 6 Wheat. 264; ECF Nos. 110 at 15–16; 112 at 6.

The Court must examine the "very words of [the opinion]" for their ordinary meaning. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (1st ed. 2012) "The ordinary-meaning rule is the most fundamental semantic rule of interpretation . . . [o]ne should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise . . . which ordinarily comes from context." *Id.* at 69–70. And "a word or phrase is presumed to have

---

[1] Where Man's original sin was his persistent desire to be like God, so the Judiciary's was its desire to write with the opaqueness of a legislature. It is not often that the Court must apply the canons of statutory construction to decipher the "guidance" set forth by its own Circuit. But it is necessary where the resolution of its ambiguity is determinative.

[2] "Iatrogenic" or "Iatrogenesis" refers to a consequence, often an injury or illness, induced by a physician or surgeon through medical treatment or diagnostic procedures. *Iatrogenic*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981). In laymen's terms, it may refer to situation where, in an attempt to render aid or diagnosis, one actually inflicts more harm than benefit.

the same meaning throughout a text," unless there is a "material variation" in terms or usage. *Id.* at 170.

As it appears in this excerpt, "statements" appears to refer to the preceding paragraph, which only addresses the topic of the park opening timeline. But to stop the analysis there would be to sell short the term's "contextually appropriate ordinary meaning." SCALIA & GARNER at 69–70. Evaluating the appearance of "statements" within the context of its entire subsection and the Opinion as a whole, it is clear the "statements" to which the holding applies are all statements of every subject matter.

*First*, the Fifth Circuit initially outlines that it "will analyze the arguments about the sufficiency of this complaint principally by grouping the allegations into two time periods, 2018 and 2019, in which the supposed material misstatements were made. For each section, we consider as relevant (1) whether *the statements* were forward-looking and protected . . . (2) whether *the statements* were material misstatements or omissions; and (3) if scienter was properly alleged." 58 F.4th at 207 (emphasis added). This shows the court's intent to deal with the allegations at issue temporally rather than by subject matter. Thus, the court's analysis addresses whether the statements collectively meet the pleading standard based on when in the class period allegations may arise, not which statements do or do not remain actionable throughout the "purported Class Period" as it is pled by Plaintiff.

*Second*, the use of "statements" in the quoted excerpt at issue is consistent with the opinion's structure in its entirety. Here, consistent with the Fifth Circuit's declared intent, the opinion first divides the statements into "2018 statements" and "2019 statements" and then by dividing each of those categories into subcategories labeled "Forward-looking statements," "Material misrepresentations or omissions," and "Scienter." The section at issue concludes that "the question, then, is whether Plaintiff has pled with particularity that *the 2019 statements* (1) were materially misleading . . . and (2) give rise to a strong inference of scienter." *Oklahoma Firefighters*, 58 F.4th at 217 (emphasis added). But within the analysis of each subsection, the opinion addresses a mix of issues. For example, "statements about Riverside . . . that the 'financing is in place' . . . [and] statements about the new park

deadlines." *Id.* at 216–17. This example of the general structure of the Fifth Circuit's analysis remains consistent throughout the opinion. Thus, a structural evaluation of the opinion must conclude that "statements" would refer to statements of every subject matter within the requisite category as labelled by its headings and subheadings, rather than only those statements on a specific issue—e.g., only the park opening timeline.

*Third*, the structure and content of the specific subsection in which the excerpt at issue supports the same conclusion. Following the same literary architecture of its preceding sections, this portion of the opinion continues to address the materiality and falsity of various types of "statements" without dividing them by subject matter. This subsection begins with a discussion regarding "the February 2019 statements about Riverside's financial health," then moves to Defendants' alleged omissions regarding Riverside's assets, continuing ability to pay, and Defendants' financing for the parks. 58 F.4th at 217. Following that, the discussion transitions into recounting Defendants' February, April, and July earnings call statements about the construction progress of the parks. *Id.* at 217–18. And the paragraph preceding the excerpt begins: "[t]he question, though, is whether Plaintiff has pled with particularity *that the statements* were misleading as a matter of law." 58 F.4th at 218. The Fifth Circuit states that "[they] cannot read Defendants' construction-progress statements in isolation," but rather "in the context of investors' expectations about the meaning of that progress." *Id.* The paragraph concludes that "the alleged misstatements from February, April, and July 2019" are actionable—but no longer by October. *Id.* Thus, the Fifth Circuit chose to address issue-specific statements together to determine whether they collectively met the requisite pleading standard for Plaintiff to allege "material misrepresentations or omissions."

To read the opinion according to Plaintiff's interpretation of "statements" would take the term out of context and interrupt a coherent line of reason. Plaintiff's reading of the Opinion requires the Court to miss the whole herd for a single head. While the question may remain whether the Fifth Circuit's recounting of this case was artful or

correct,[3] an unrefined presentation of its reasoning does not strip the Opinion's terms of their "contextually appropriate ordinary meaning." And where the Opinion contains no "material change" in the term "statements" or its use throughout, the Court must presume no transformation in its meaning.

Based on the plain meaning of the Fifth Circuit Opinion, this Court concludes that its holding applies to all the alleged misrepresentations or omissions on or before the October 23, 2019, earnings call, closing the purported class period. *See* 1 McLaughlin on Class Actions § 4:3 (19th ed. 2022) (explaining that class periods may be limited by courts because "liability for misrepresentations or omissions . . . terminates when curative information is publicly announced or otherwise effectively disseminated.").

**ii. Application on Remand**

If a plaintiff purchases stock after an alleged corrective disclosure, his or her "reliance" on a prior misrepresentation cannot be reasonably justified given the new information. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–46 (2005).

Without Movant's intervention, Plaintiff remains an individual claimant who must show direct reliance on actionable misrepresentations by purchasing stock before "new information" surfaces that would cast doubt on Defendants' prior fraudulent optimism. *Regents of Univ. of Calif. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 383 (5th Cir. 2007). Here, Plaintiff purchased stock after the Fifth Circuit held that Defendants' alleged misrepresentations or omissions had been depleted of actionability to plead a claim for securities fraud. *See* ECF No. 28-2 at 12.

---

[3] In these complex cases in which the interrelation of various statements, their subject matter, and their specificity can become dispositive legal issues, this Court generally abides by the practice of breaking down each statement and its application to the most granular level possible to remove doubt as to the Court's intent and conclusions deduced from it. *See e.g. Genesee Cnty Emps.' Ret. Sys. v. FirstCash Holdings, Inc.*, No. 4:23-cv-0033-P, 2023 WL 2752846 (N.D. Tex. March 31, 2023) (Pittman, J.).

Plaintiff primarily points to *Martone v. Robb*, 902 F.3d 519 (5th Cir. 2018) to argue it has proven reliance because it purchased stock and held it until the "full truth" of the state of the China expansion emerged in early 2020. ECF No. 111 at 16; *see, e.g., In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). In *Martone*, the Fifth Circuit upheld standing for a plaintiff who bought stock during its broader "inflationary period" and held it until "the full truth was revealed" and "all artificial inflation [of the stock price was] removed from the market." ECF No. 111 at 15; *Martone*, 902 F.3d at 524. But *Martone* is distinguishable from these facts. In *Martone*, the principal—if not the only—corrective disclosure that "revealed the truth" and "removed all artificial inflation" from the stock price did not occur until Whole Foods filed its Form 8-k and its executives formally apologized. *Martone*, 902 F.3d at 521–23. Thus, the "inflationary period" in *Martone* was not tempered, even with headlines regarding investigatory fines, until the truth was revealed for the first time at the end of the class period in 2015. According to Plaintiff, Defendants made partial disclosures as early as February 2019, ECF No. 110 at 16, and according to the Fifth Circuit, had gradually "tempered their optimism" *by* October. 58 F.4th at 218. Therefore, Plaintiff cannot rely on *Martone*.

Defendants' partial disclosures "sever the link between the alleged misrepresentation[s] and [Plaintiff's] decision to trade at a fair market price." *Basic Inc.*, 485 U.S., at 248. Here, Plaintiff cannot have "reasonably relied" upon prior misrepresentations when it purchased stock days after the earnings call which the Fifth Circuit held was the point after which Defendants' disclosures closed the class period. *See* 1 McLaughlin on Class Actions § 4:3. Therefore, Plaintiff lacks standing.

## II. Curing Jurisdictional Defects

"[S]tanding is essential to the exercise of jurisdiction." *Sommers Drug Stores Co.*, 883 F.2d at 348. "[W]here a Plaintiff [does not have] standing to assert a claim against [a defendant], it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs [or] a new class." *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981). And because a lack of standing is a "jurisdictional defect," "neither Rule 15 nor any other

rule of civil procedure permit[s] [Plaintiff] to cure [it] by including or substituting [another plaintiff]." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995); *see also Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770 (5th Cir. 1986) (holding that Rule 15 does not permit a plaintiff to amend its complaint to substitute a new plaintiff to cure a lack of subject matter jurisdiction).

Under this binding precedent, a plaintiff in line at this Court without standing is too short to ride. Because Plaintiff lacks of standing, the Fifth Circuit declared the unavailability of "Rule 15 [or] any other rule of civil procedure" at Plaintiff's disposal to cure this Court's resulting lack of jurisdiction. *Fed. Recovery Servs.*, 72 F.3d at 453. As the party "invoking the jurisdiction of the federal courts," Plaintiff must establish its standing to sue; otherwise, "[t]he constitutional limits on standing eliminate [its claim]." *Lewis*, 699 F.2d at 236. Plaintiff's attempt to establish standing necessarily fails, and there is no "case" or "controversy" before the Court.

### III. Movant Key West's Intervention

Despite Plaintiff's lack of standing, Movant Key West contends it should still be allowed to intervene and substitute itself as the lead plaintiff of this nascent "class." ECF No. 113. On top of its recitation of Plaintiff's "same old song and [injury in fact]," Movant argues that—as a Class Member, regardless of their absence as a named plaintiff—it is either (1) the ideal candidate to intervene under Rule 24, or (2) that its status as a Class Member entitles it to an opportunity to intervene or amend the Complaint to protect its interests and the interests of the rest of the Class. *Id.* at 6, 12–13; *see Lynch v. Baxley*, 651 F.2d 387 (5th Cir. 1981); *Silva v. Vowell*, 621 F.2d 640, 650 (5th Cir. 1980); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 3 (1st Cir. 1999); *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006).

Movant cannot deploy Federal Rule 24 when there is no "case" or "controversy" in which it may intervene. *Fed. Recovery Servs., Inc.*, 72 F.3d at 453; *see also* FED. R. CIV. P. 82 ('rules shall not be construed to extend . . . the [subject matter] jurisdiction of the United States district

courts"). Thus, the Court will focus its analysis on whether Movant's alleged status as a "Class Member" may afford it any redemption.

Federal Rule of Civil Procedure 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). And "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997), quoting 28 U.S.C. § 2072(b). Rule 23 does more than set forth a mere pleading standard; plaintiffs seeking class certification must "affirmatively demonstrate [their] compliance with the Rule . . . and [ ] certification is proper only if 'the trial court is satisfied . . . that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). Without certification of a Class by order of the Court, there is no "class action." *See* FED. R. CIV. P. 23(c)(1)(A).

A ruling on class certification may be instigated by a party's motion or the Court sua sponte. *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554 (5th Cir. 1981). But "a fraud class action cannot be certified when individual reliance will be an issue." *Regents of Univ. of Calif.*, 482 F.3d at 383. Even without a hearing on class certification, it may properly consider the fact that "[Plaintiff's] counsel [has not moved] for certification during the [three] years the suit [has been] pending." *Id.* at 559. And while Rule 23 does not require that the case be brought by the best possible plaintiff in the potential class, it does require such a plaintiff who will "adequately protect the interests of the class." *Id.*; FED. R. CIV. P. 23(a)(4).

Plaintiff has consistently labeled its Complaint as a "Consolidated Class Action Complaint," *see* ECF No. 50, but merely pleading an action as a "class action" does not make it so. *See* FED. R. CIV. P. 23(c)(1)(A); *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51. A plaintiff must demonstrate its adequacy to represent the interests of the class. It is difficult for this Court to imagine a more inadequate Plaintiff to represent a class of

persons than one without standing, since a lack of standing amounts to a failure to invoke this Court's jurisdiction. *Sommers Drug Stores Co.*, 883 F.2d at 348. Without an adequate representative or jurisdiction, this Court cannot certify a class.[4] To allow Movant—an unnamed, independent third party—to assert its "class membership" *now* to keep this case alive would be like allowing Plaintiff and Movant to "amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Off. Park, Inc.*, 639 F.2d at 1282. This Court heavily weighs the fact that Plaintiff's counsel has never accompanied any prior original or amended Complaint with a Motion for Class Certification. And because of this case's procedural posture, such a motion is too little, too late.

Without an order certifying a class, this case cannot be treated as a "class action." Without a class action, there can be no "Class." And Movant Key West metaphysically cannot be a "Member"—absent or not—of a "Class" that does not exist—at least not in this Court's reality. As Rule 23 must be read in light of "Article III constraints" and cannot be interpreted to "enlarge [or] modify any substantive right," this Court cannot allow Movant to insert itself into this litigation to effectively manufacture Article III jurisdiction by calling itself something it is not. The Court is therefore, merely left with an independent third party seeking to join the ride after this "Runaway Mine Train"[5] has left the station.

Although this jurisdictional issue is dispositive, the Court will note for the sake of its respected colleagues on the Fifth Circuit that it concludes that Plaintiff's cited authorities here are distinguishable because they only apply to cases with other *named* plaintiffs, *Silva v. Vowell*, 621 F.2d 640 (5th Cir. 1980), other absent *class members*, *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) and *members of an original class* with live claims. *Lynch v. Baxley*, 651 F.2d 387 (5th Cir. 1981).

---

[4] A district court's decision whether to certify a class is reviewed for abuse of discretion. *McGowan*, 659 F.2d at 559.

[5] Built in 1966, the "Runaway Mine Train" is the oldest roller coaster at Six Flags Over Texas, and consistently a crowd favorite.

Therefore, Movant's only applicable authority on this issue is *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006). There, the district court recognized that the defendants' motion to dismiss after filing an answer rendered a motion to certify the class "premature." *Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *2–3. Thus, the plaintiff lacked any "reasonable opportunity" to seek class certification. *Id.* The district court ultimately relied on this "reasonable opportunity" exception to the mootness doctrine to allow the substitution of a new lead plaintiff. *Id.* But this Court hesitates to adopt such a jurisdictionally creative doctrine based on a single unreported decision of a district court at risk of being overruled, *see China Agritech, Inc. v. Resh*, 138 S.Ct. 1800 (2018), particularly where the district court's cited precedent was a Third Circuit decision later abrogated by the United States Supreme Court. *Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *2–3, citing *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3rd Cir. 2004) (abrogated by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).

Thus, Movant cannot be made a party to this action without the availability to intervene under Rule 24 or a "class membership" status with which to continue this litigation.

## CONCLUSION

Accepting all Plaintiff's allegations as true and viewing its pleadings in the light most favorable to it does not alter the date it purchased Defendants' stock. Since the Fifth Circuit held as a matter of law that the October 2019 earnings call depleted Defendants' statements of any further actionability, Plaintiff cannot assert any "reasonable reliance" on prior misrepresentations in its "decision to purchase." So, Plaintiff lacks standing, and this Court lacks the power to manufacture jurisdiction sua sponte. Thus, Plaintiff no longer has a plausible claim for relief.

Because Plaintiff lacks standing to sue, the Court concludes that Defendants' Motion for Judgment on the Pleadings (ECF No. 102) is **GRANTED**, Plaintiff's Motion to File its Amended Complaint (ECF No.

101) is **DENIED**, and Movant's Motion to Intervene (ECF No. 108) is **DENIED.**

**SO ORDERED** on this **2nd day of June 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE