IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

OKLAHOMA FIREFIGHTERS          )
PENSION AND RETIREMENT         )
SYSTEM,                        )
                               ) CASE NO. 4:20-CV-00201-P
     PLAINTIFFS,               )
                               ) FORT WORTH, TEXAS
Vs.                            )
                               ) MAY 23, 2024
SIX FLAGS ENTERTAINMENT        )
CORPORATION, JAMES             )
REID-ANDERSON, AND             )
MARSHALL BARBER,               )
                               )  9:07 A.M.
     DEFENDANTS.               )

VOLUME 1 OF 1
TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE MARK T. PITTMAN
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: MR. JOHN J. RIZIO-HAMILTON
                    MS. KATHERINE M. SINDERSON
                    BERNSTEIN LITOWITZ BERGER & GROSSMAN
                    1251 Avenue of the Americas
                    New York, New York  10020
                    Telephone:  212.554.1444

FOR THE PLAINTIFFS: MR. LEWIS T. LeCLAIR
                    McKOOL SMITH
                    300 Crescent Court, Suite 1500
                    Dallas, Texas  75201
                    Telephone:  214.978.4984

A P P E A R A N C E S:

FOR THE PLAINTIFFS: MR. STUART ANDREW KAUFMAN
                    KLAUSNER KAUFMAN JENSEN & LEVINSON
                    7080 NW 4th Street
                    Plantation, Florida 33317
                    Telephone:  954.916.1202

ALSO PRESENT FOR    MR. CHASE RANKIN, MR. MARK EDWARDS,
PLAINTIFFS:         MR. KEVIN CATES

FOR THE DEFENDANTS: MR. RALPH H. DUGGINS
                    MR. SCOTT A. FREDRICKS
                    MR. MICHAEL WILLIAM ACKERMAN
                    CANTEY HANGER, LLP
                    CANTEY HANGER PLAZA
                    600 W. 6th Street, Suite 300
                    Fort Worth, Texas 76102
                    Telephone:  817.877.2800

FOR THE DEFENDANTS: MR. MARK FOSTER
                    SKADDEN ARPS SLATE MEAGHER & FLOM
                    525 University Avenue, Suite 1400
                    Palo Alto, California 94301
                    Telephone:  650.470.4580

ALSO PRESENT FOR    MR. JAMES REID-ANDERSON, MR. MARSHALL
DEFENDANTS:         BARBER, MR. DEREK SAMPLE

COURT REPORTER:         ZOIE M. WILLIAMS, RMR, RDR, FCRR
                        United States Federal Court Reporter
                        501 W. 10th Street
                        Fort Worth, Texas  76102
                        zwilliams.rmr@gmail.com
                        817.850.6630

     The above styled and numbered cause was reported by computerized stenography and produced by computer.

I N D E X

Court's Remarks.....................................09

Reporter's Certificate..............................37

Word Index..........................................38

MAY 23, 2024

oOo

P R O C E E D I N G S

COURT SECURITY OFFICER:  All rise.

THE COURT:  I see several folks.  If you're an attorney or client, you need to come up into the gallery.  Okay?  Come up here.  Sit on these benches.

Zoie, thank you for filling in for us today.

All right.  At this time, the Court calls the following matter for a status conference.  This is Oklahoma Fire Fighters Pension and Retirement System, et al., vs. Six Flags Entertainment Corporation, et al.  This is Case No. 4:20-CV-201-P.

Before we begin, I have to apologize.  I've got a terrible sinus infection and I keep losing my voice.  So if I lose it here today, or you don't understand me, just ask me to repeat what I've said.  I've got what's going around.

All right.  Let's begin with our plaintiffs and their counsel.  The Court's order at Docket No. 121 ordered the plaintiffs, defendants, and their lead and local counsel to make an appearance today.

So I would like to begin with the Firefighters Pension System, please rise and tell me who you are and who you represent.

MR. RIZIO-HAMILTON:  Good morning, Your Honor.

Thank you very much for having us here today.  My name is John Rizio-Hamilton with Bernstein Litowitz Berger & Grossman.

THE COURT:  One second.  I want to be sure I get all these because, by my count, you have 11 attorneys on this.  You could always form an Army division in your own army if you get tired of practicing law.

Okay.  Mr. Hamilton, are you the lead counsel?

MR. RIZIO-HAMILTON:  I am, Your Honor.

THE COURT:  You conducted the argument out of the Fifth Circuit?

MR. RIZIO-HAMILTON:  I did, Your Honor.

THE COURT:  Did you sign off on this brief to the Fifth Circuit?  Did you sign the brief?

MR. RIZIO-HAMILTON:  I believe I did, Your Honor, yes.

THE COURT:  Okay.  Who else do you have with you?

MR. RIZIO-HAMILTON:  My partner, Ms. Katie Sinderson.

THE COURT:  Okay.

MR. RIZIO-HAMILTON:  And I have also our local counsel, Mr. Lew LeClair of McKool Smith.

THE COURT:  Local counsel from Dallas; is that right?

MR. RIZIO-HAMILTON:  That's right, Your Honor.

THE COURT:  Who do we have as your client rep?

MR. RIZIO-HAMILTON:  We have from Oklahoma Firefighters, Mr. Chase Rankin, who is the executive director.  We also have --

THE COURT:  Where are you based out of, Mr. Rankin?

MR. RANKIN:  I'm in Oklahoma City.

THE COURT:  Okay.  Thank you for being with us today.

Who else do you have?

MR. RIZIO-HAMILTON:  We have Mr. Mark Edwards, who is counsel to the Oklahoma Firefighters Fund.

THE COURT:  Tell me your name.

MR. EDWARDS:  Mark Edwards.

THE COURT:  Okay.

MR. RIZIO-HAMILTON:  We also have Mr. Kevin Cates who's the vice chairman of the Key West Police and Fire Pension Fund.

THE COURT:  Where are you from?

MR. CATES:  Me?  Key West, Florida.

THE COURT:  Thank you.

MR. RIZIO-HAMILTON:  And finally, we have Mr. Stewart Kaufman, who is counsel for Key West.

THE COURT:  I got a pro hac vice request from you.  Was that yesterday?

MR. KAUFMAN:  Yes.

THE COURT:  Why don't you pull up a chair at counsel table?

All right.  You can be seated.

Mr. Duggins, who do we have for your client?

MR. DUGGINS:  Your Honor, do you want the attorneys introduced or the parties?

THE COURT:  If you would do both for me that would be great.

MR. DUGGINS:  Yes, Your Honor.

Ralph Duggins and Scott Fredricks here on behalf of the defendants.  I would also like to introduce Mark Foster, who is in the Palo Alto office of Skadden Arps.

MR. FOSTER:  Morning, Your Honor.

THE COURT:  Good morning.

Who is your lead counsel, Mr. Duggins?

MR. DUGGINS:  I am, Your Honor.

THE COURT:  Okay.  I'm a little bit disappointed Mr. Ackerman is not here, because I know he was a law clerk for the previous judge, and he would be able to relate to many of my comments that I'm going to make today, particularly on how Judge McBryde would handle this, but that's fine.

Who else do you have, Mr. Duggins?

MR. DUGGINS:  Your Honor, I have Derek Sample, who

is the chief accounting officer at Six Flags.  I have Marshall Barber, who is the former CFO at Six Flags, and a defendant.

And Mr. James Reid-Anderson, the former CEO is en route from the airport.  He lives in Chicago and could not get in last night due to no fault of his own.  He should be here in 15 to 20 minutes.  I have one of our young lawyers that is driving here.  I take responsibility that he's not here.

THE COURT:  John, be sure and radio down and tell them when Mr. Anderson gets here to escort him on up ASAP.

COURT SECURITY OFFICER:  Yes, sir.

MR. DUGGINS:  I apologize to the Court for that.

THE COURT:  That's fine.  My Six Flags party reps, where are you-all officed?

MR. SAMPLE:  Our offices are in Arlington.

THE COURT:  Both of you?

MR. BARBER:  I live in Flower Mound, and I'm consulting.

THE COURT:  Okay.

All right.  You can be seated, Mr. Duggins.

I want to make some comments and ask some questions and perhaps enlighten you-all on something you didn't know about practice here in the Fort Worth Division.

Now, this is a speech that I've given a number of

times, but just so you know that this is not coming from thin air. If you have any questions about some of the numbers I'm about to give you, I would encourage you to look at the following cases.

You might want to take a look at this case. X Corporation vs. Media Matters. You can find that on WestLaw. It hasn't entered the F.Supp publication yet, but it's 2024 WL 1895255.

Second case that you might want to take a look at is a recent one involving me. In fact, it was issued less than two weeks ago. That case is the Chamber of Commerce vs. Consumer Financial Protection Bureau. You can find the WestLaw cite for that at 2024 WL 2310515.

All right. I'm going to give you a brief overview of things that are outlined in those two cases. Oftentimes, when we are based outside of the Dallas-Fort Worth area, there is a tendency, and I don't know why, to consider Dallas and Fort Worth to be the same place, the same town, indeed the same court, district, and division.

While we might both be in the Northern District of Texas, please don't think that the Fort Worth and Dallas Divisions are the same. Fort Worth and Dallas are very different places. We have different histories, different cultures, different judges, different juries.

I don't just say this to be provincial or

paternal. I'm just telling you they're much different. The jury pools that we draw from are very, very different culturally.

It's perfectly okay if we're from out of town and we decide to use Dallas counsel as our local counsel here in Fort Worth, but it's also very important to know the differences in both of the divisions.

If you have any questions, Mr. Duggins has practiced around here for, what, 40 years, Ralph?

MR. DUGGINS: A little over that, Your Honor.

THE COURT: Pretty different places. Let me give you some examples. Let's just take a look at our dockets. You can look at the two case cites I gave you, if you would like any elaboration on this.

So when I get cases like this, which I will note initially, despite Six Flags being in Arlington, Texas, since I think about 1960, is that right, gentlemen?

MR. BARBER: That's right.

MR. SAMPLE: That's right, 1960.

THE COURT: Here's an interesting, fun fact. My parents had so little money when they were married back in Rising Star, Texas, back in 1970, their honeymoon was at Six Flags.

Needless to say, it's been based in the Fort Worth Division in Tarrant County since 1960, not in Dallas.

Let me tell you some differences about Dallas and Fort Worth and how our dockets work.  Here in the Fort Worth Division, we have two active judges.  When you run the numbers and you read these two cases that I will give you, you will see what I'm about to tell you.

For the last four years, the number of filings per judge in the Fort Worth vs. the Dallas Divisions is about two to three times higher.  So every month we get two to three times the number of filings the average active Dallas judge gets.

So we're very busy.  But please don't think that that number means that we move our cases slowly.  Indeed, if we did move our cases slowly, we would be drowned in the amount of work.

If you look at the recent Chamber of Commerce case that I pointed you to, you will see these numbers.  Let me give you an example.  The average time -- I better look at my numbers just to be sure that I don't misstate this -- but the average time from an indictment to a trial in a criminal case in the Dallas Division is 38 months from indictment to trial.  In Fort Worth, the average is five months.

Well, what about civil cases, which I know you're interested in?  In Dallas, the average civil case took 35 months to proceed from the filing of a complaint for the filing of trial.  Here in Fort Worth, the average is 16

months.  So we're very different places, Dallas and Fort Worth.  Even if we didn't have our different histories, our courts are different.

Indeed, the Office of Court Administration tells me that the Fort Worth Division is the largest division in the entire country, population wise, with only two active federal judges.

Fort Worth is also one of the number-one growing cities in the entire United States.  We're currently the 12th largest city in the United States.  I'm told by the end of this year, we will be the 10th largest city in the United States, surpassing Austin.

That means, ladies and gentlemen, that the City of Fort Worth, and I'm not including the outlying areas, is larger than such cities as Boston, Detroit, Kansas City, New Orleans, Las Vegas, Baltimore, et cetera, et cetera.

Not many people realize that.  But for some reason, when it comes to having cases here, we oftentimes get local counsel who maybe don't understand how things work in Fort Worth vs. Dallas.

Now, I'm not faulting any particular party. Indeed, initially in this case, the Six Flags defendants were represented by counsel from Dallas.  I'm not faulting McKool Smith.  It's a great law firm.

However, it always helps to have folks that know

how the practice is over here.  You might not say things as you might do otherwise in other courts.  Somebody might tell you, why don't you google John McBryde, Mark Pittman, and Reed O'Connor.

So we are pretty different.  These problems with our docket are not getting any better.  When I say that we only have two judges and we're as big as we are, I want you to compare some of the other divisions in Texas that have two active judges.

The first two that come to mind are the Beaumont and Tyler Divisions.  Beaumont and Tyler both have about a hundred thousand people.  The City of Fort Worth has about 10 times that amount.

So I say all this to put in context, when I have a case that was filed back in 2020, going on five years ago, in fact, I've been an attorney now for 25 years, so I guess you could say I've dealt with this case for one-fifth of my entire legal career, and you compare those numbers that I gave you, obviously, it behooves me as a judge in my discretion, which I hope I still have after some of the Fifth Circuit rulings to control my docket, and how things should work.

Now, recently I was mandamused in a case and overruled because I did not rule upon a motion for preliminary injunction in a case where I only had the

preliminary injunction for six business days.

I was deeply disappointed by that, particularly because I had two full criminal days during those six days, and I also had two other injunction hearings, particularly when the rule being challenged was not going to be in effect until May the 14th.

So when you have to juggle all the balls that I do, you want to make extra special certain, especially considering the Fifth Circuit's recent admonishments in the Chamber of Commerce case to stay on top of the docket, and that's what I'm doing here. That's why I called you-all here today to hear my little speech.

So I do have some questions. I would like to ask you, Mr. Hamilton, would you please stand, I would like to ask you a question, and then I will ask Ms. Sinderson the same thing.

Are you familiar with a case called Dondi Properties vs. Commerce Savings and Loan Association?

MR. RIZIO-HAMILTON: Yes, Your Honor, I am.

THE COURT: How are you familiar with that case?

MR. RIZIO-HAMILTON: I have read it.

THE COURT: Okay. When is the last time you read it?

MR. RIZIO-HAMILTON: Two days ago.

THE COURT: Two days ago?

MR. RIZIO-HAMILTON:  Yes, Your Honor.

THE COURT:  Did you read it prior to seeking pro hac vice admission?

MR. RIZIO-HAMILTON:  I did.

THE COURT:  Why did you read it two days ago?

MR. RIZIO-HAMILTON:  Well, because I was coming before Your Honor, and I had done some background research and saw that it was an important case to you and some articles that quoted --

THE COURT:  Well, it should be important to everybody that practices here.

MR. RIZIO-HAMILTON:  Yes, Your Honor.

THE COURT:  Because that's standards of conduct that govern each and every one of us.  I wonder maybe if you had read that earlier you wouldn't have said some of the things that you said about me in the brief that you filed in the Fifth Circuit.  We will talk about that in a moment.

Ms. Sinderson --

MS. SINDERSON:  Yes, Your Honor.

THE COURT:  -- are you familiar with the case, Dondi Properties, I just mentioned?

MS. SINDERSON:  I am, Your Honor.

THE COURT:  When is the last time you had a chance to read it?

MS. SINDERSON:  Yesterday, Your Honor.

THE COURT:  Okay.  How about before you sought pro hac vice admission?

MS. SINDERSON:  I did.  I did read it then, Your Honor.

THE COURT:  All right.  Why did you read it a day ago?

MS. SINDERSON:  Because we were coming before Your Honor this morning, and I wanted to make sure it was fresh on my mind.

THE COURT:  Okay.  In my recent pro hac vice for the Key West players.

Have I granted your pro hac vice?  I'm sorry, I've been in court all week.  As I said, we can't always juggle everything and work on timelines that the lawyers demand from us.

Sir --

MR. CATES:  Yes.

THE COURT:  -- when's the last time you read Dondi Properties?

MR. CATES:  This morning.

THE COURT:  Did you read it before you sent in your application for --

MR. CATES:  Yes, I did.

THE COURT:  -- pro hac vice?

MR. CATES:  Yes, I did, Your Honor.

THE COURT: Okay. Why did you read it before you came?

MR. CATES: Because it's a requirement set forth in the motion.

THE COURT: Okay.

MR. CATES: And I think it's important to know the standards of conduct in which the Court -- in the Court in which you are practicing.

THE COURT: All right. You-all can be seated.

Now, let's talk about the case and the posture of the case. One of the things that's been a little bit bothersome to me is the confusion that I have as to what the actual statements are that plaintiffs are suing on and that they believe are actionable. This has already gone up twice, and it's been reversed twice.

I don't mean to sound that I'm saying this in a braggadocious manner, but just looking at the resume of me vs. any other judge in the Fifth Circuit, I would gather that I have more experience in securities fraud than anyone.

So when I am told by the Fifth Circuit -- oh, and I wonder if that's ever happened where you have an appeal on a second motion to dismiss where you get two of the same three panel members? That's the first time I've ever experienced that in 25 years or seen it.

But when I get a decision from the Fifth Circuit

that uses these types of words:  "We clearly held that Six Flags's October 2019 statements about the park's opening dates were not actionable.  Any fair reading shows why our prior opinion very clearly did not hold.  Given that conclusion, we would all but end the case as to the Oklahoma Firefighters.  It stands to reason if that is actually our decision, we would have said so explicitly."

Now, there are other kind of choice comments that they make, including this one:  "Despite receiving our prior opinion, the district court misapplied the very doctrine it sought to adhere to, parsing our opinion like the language of a statute to reach an incorrect outcome, when context and common sense clearly suggested otherwise."  Okay?

Now, I don't mind getting reversed.  In fact, the judge that wrote that opinion, I don't think she's ever ruled in favor of me on any case, unless it was a very small one.  So I'm used to getting reversed.  Okay?  And that doesn't bother me.

I don't like being told that I clearly didn't read something or read something out of context or that type of language.

I used to have a law professor, in fact, Mr. Fredricks remembers this, we went to law school together, he said when he graded law school exams and a student used words like clearly or plainly, it typically

meant it wasn't clearly or plainly.

So when I read that opinion, it appeared to me that I was actually being accused of what would amount to a Rule 11 violation, if we took the words of the Fifth Circuit seriously.

Indeed, Mr. Duggins, at my count, I believe you-all had eight attorneys from Skadden Arps and Cantey Hanger on your side, is that sound right?

MR. DUGGINS:  I believe that sounds right, Your Honor.

THE COURT:  So just perusing the resumes, I gathered that that's about 250 years' worth of legal experience.  They had the same confusion that I did.

I wonder too, maybe, if plaintiffs had some confusion, because they sought to join, and that's part of the reason we're here today, the Key West defendants.  If it was so clear and commonsensical, I wonder why there might have been a motion to add them?

I also have to wonder why eight attorneys with 250 years' worth of experience, a judge with 25 years' experience, including three different courts, including the court of appeals, a very active one, where I was even on the panel and authored a thousand different orders, by my last count, trial judge at the state where I handled a docket of 1200 cases and had 75 jury trials, and four of my law clerks

had the same confusion, maybe it wasn't as clear and commonsensical as the Court's telling us.

Now, I'm just a poor ol' country boy lawyer that went to Texas A&M that works in Fort Worth. So you might have to explain it really slow to me.

I want to make really, really sure that I know exactly what statements you-all are suing on. So that's the reason why I brought you here today. Because it seems to me, if it was so clear, maybe we wouldn't have had 300 years' worth of lawyer experience, maybe we wouldn't have had Key West seeking to join the case to save it, maybe the plaintiffs wouldn't have filed a brief asking for oral argument, maybe the Fifth Circuit wouldn't have asked for oral argument, if it was so clear. Because the way I read the rules, if it's clear, you're not supposed to get oral argument.

We will put that aside. One of the things that I would like to ask my attorneys for the plaintiffs, and I will begin with you, Mr. Hamilton, do you have any reason to believe that I can't do my duties as a judge and be fair in this case?

Do you have any evidence of that?

MR. RIZIO-HAMILTON: No, Your Honor.

THE COURT: Are you accusing the Court of not being fair or not being able to make a fair decision in this

case?

MR. RIZIO-HAMILTON:  No, Your Honor.

THE COURT:  Okay.  You can be seated.

How about you, Ms. Sinderson?

MS. SINDERSON:  No, Your Honor, I don't have any reason to think that.

THE COURT:  Any evidence you can give me?

MS. SINDERSON:  No, Your Honor.

THE COURT:  What about my McKool Smith attorney?

Mr. LeClair, what do you think?

MR. LECLAIR:  I have no reason to think so, Your Honor.

THE COURT:  Okay.  Well, one of the things I would like for you to talk to the New York attorneys about is how we talk about judges here in the Northern District.

I wish Mr. Ackerman were here, the young attorney that works at Cantey Hanger.  He was John McBryde's last law clerk.  I bet you've heard some stories about him over the years, haven't you?

MR. LECLAIR:  I appeared before Judge McBryde on numerous occasions, Your Honor.

THE COURT:  So you know what I'm talking about?

MR. LECLAIR:  I know exactly what you're talking about.

THE COURT:  Did you read the brief that your

clients made to the Fifth Circuit?

MR. LECLAIR:  I'm not sure that I actually read it, Your Honor.

THE COURT:  Okay.  Then I will let you out of the lion's den for now.  You can be seated.

The reason why I asked you about Dondi is I do take it very serious.  And practice here in Fort Worth, as I said, it's done a little bit different than it is in New York.  We pride ourselves on having a very cordial collegial bar.

And no offense to Mr. LeClair, we pride ourselves on being different from Dallas attorneys, when it comes to that type of practice.

Sharp, elbowed comments about the other side or the judge will not be tolerated.  And if I see any of it, I'm going to yank your ability to practice here.  I will open up a separate sanctions hearing.  I will appoint a special counsel to look at what you're doing.

If I find evidence of wrongdoing or violations of anything in the Texas Lawyer's Creed, in the Dondi decision, you will not be allowed to practice here in the Northern District of Texas via pro hac vice.

Do you-all understand that?

MS. SINDERSON:  Yes, Your Honor.

MR. RIZIO-HAMILTON:  Yes, Your Honor.

MR. LECLAIR:  Yes, Your Honor.

MR. CATES:  Yes.

THE COURT:  Do you understand that before I grant your pro hac vice?

MR. CATES:  Yes, sir.

THE COURT:  All right.  You can be seated.

Let me just tell you some of the things that are required under Dondi.  These are just a few tidbits you might want to keep in mind as we go forward.

If you think it might be something, Mr. LeClair, that John McBryde wouldn't put up with, you can be rest assured Judge Pittman won't.

You might even want to call Mr. Ackerman over at Cantey Hanger and ask him how John McBryde might handle something if you have any questions, because you can expect the same from me.

Let's talk about some of the things, beginning with the Texas Lawyer's Creed that it requires between a lawyer and a judge.  This is something that's in my judge-specific requirements.  Even if you're a New York lawyer, you have to go by the Texas Lawyer's Creed.  This was drafted, in large part, by a Fort Worth attorney by the name of David Keltner by the way.

All right.  "Among other things between a lawyer and a judge, a lawyer must also recognize the position of

the judge as a symbol of both the judicial system and the administration of justice.  I will refrain from conduct that degrades this symbol.

"Number two, I will conduct myself in court in a professional manner.  I will demonstrate my respect for the Court and the law."

Some other things.  "I will not knowingly misrepresent, mischaracterize, misquote, or misstate facts or authorities to gain an advantage."

Number seven, "I will respect the rulings of the court."

Number eight, "I will give issues in controversy deliberate, impartial study, analysis, and consideration."

Number nine.  "I will be considerate with the time constraints and pressures imposed upon the Court, Court staff, and counsel in efforts to administer justice and resolve disputes."

You will find similar sentiments in the Dondi decision.  Sounds like you-all read it before you came.  But there are all kinds of good quotes in there about the duty that we owe each other.

I will give you a couple of them.  I don't want to take up all of your valuable time.  But among other things, "To the office of the judge, a lawyer owes respect, diligence, candor, and punctuality, the maintenance of the

dignity and independence of the judiciary and protection against unjust and improper criticism and attack, and the judge, to render effective such conduct, has reciprocal responsibilities to uphold and protect the dignity and independence of the lawyer who is also an officer of the Court."

In addition, "The lawyer owes a duty of candor, diligence, and utmost respect to the judge."

Those are just samples of the rules of conduct that we have here. Might do you-all a good thing to review those.

I don't typically read or look at briefs that lawyers file in cases that I've been the trial judge on, but due to the age and nature of this case, due to the fact that there was a lot of confusion on the second order that came back, as I said, with all due respect to the learned judges on the Court, and I say this having been an appellate judge, I do not believe that I committed a Rule 11 agreement -- Rule 11 agreement? See, I was down at the state too long -- a Rule 11 violation, a violation of my oath as a judge, when I issued that opinion, nor do I believe that any of the eight lawyers and their 250 years' worth of legal experience, committed some sort of sanctionable conduct.

Because if you look at the letter, what's required under Rule 11 when you sign off on a brief, when the Skadden

Arps attorneys and Mr. Duggins and Mr. Fredricks approved of the brief in the motion for judgment on the pleadings and you compare for the requirements under Rule 11, Fifth Circuit is basically saying, we all committed a violation of our ethics rules.

Do you read that the way I do, Mr. Duggins, because that's the way I read it?

Did you commit a violation of Rule 11 in making that motion for judgment on the pleadings?

MR. DUGGINS:  We certainly did not.  It was filed with a great deal of study and reflection by the Skadden team and the Cantey Hanger team.  We respectfully disagree with the statements made in the Fifth Circuit's recent opinion, or I certainly do.

THE COURT:  You can argue that I made some sharp statements too.  But I can assure you, I wasn't violating any of my ethics rules when I ruled the way that I did.  I went with what was given to me, exactly like I've done for the last 10 years as a judge.

But I was interested to read the brief, particularly after some of the comments that the Fifth Circuit made about me.

Mr. Hamilton, I got to tell you, if I were John McBryde -- you don't need to stand up -- if I were John McBryde, I would already have you brought up on disciplinary

sanctions for saying this about me.  I would already have a miscellaneous number open.  And I would at least tentatively yank your ability to practice here.

Let's see some of those choice comments.  And if this was a younger lawyer that read it or wrote it, you need to go back and tell him, we don't do this.  At least not in Fort Worth.  At least not if you want to practice here in the Northern District.

But ultimately, at the end of the day, just like General Eisenhower on D-Day, you're responsible for what was submitted.  So you can't blame it on anybody else.  You're the lead name on it and you told me you did.  I think you argued it too, didn't you?

MR. RIZIO-HAMILTON:  Yes, Your Honor.

THE COURT:  All right.  Let me point out some of the statements that really disturbed me.  You know, I had the opportunity to clerk for Eldon Mahon, the judge who this building is named after, desegregated the Fort Worth schools, very well-respected judge.

One thing he used to say is that name calling and personal attacks among the attorneys do little to advance a party's position and only serve to cloud the real issues before the Court.

Well, name calling of opposing counsel is certainly one thing.  Name calling of the judge that's

presiding over the case is another.  Let's read some of those comments.  Shall we?

Here in your brief you refer to my prior opinion as "a manufactured holding that appears nowhere in the Court's reversal and contradicts what the reversal says. Rather than accepting this, the district court chose to distort the reversal."  That's very close to accusing the judge of a Rule 11 violation.

Here's some other comments.  "At bottom, the district court's analysis is deeply unfaithful to this Court's decision in the reversal."

"The district court's decision tries to avoid that result through its distorted interpretation of the reversal."

"The district court was taken to task for shortening Oklahoma's time to oppose the motion for judgment on the pleadings from three weeks to one."

Now, as I said, I just got reversed from the Fifth Circuit because I didn't rule on a preliminary injunction on a rule that was not going to be in effect for over 60 days in less than six business days.

I've told you the story about my docket and how busy we are.  That's perfectly within my discretion to do that.  So if that was made a dig directed at me that was unnecessary.

"This is not the first time the district court has criticized the reversal.  In another recent matter, the district court criticized this Court's opinion on multiple fronts, including calling this Court's opinion on scienter nonsensical."

You cite my Genesee County opinion.  I did not refer to the Court's opinion as that.  I did state a fact that, in the first reversal in this case, the Court did change the standard as to how a district court is supposed to consider confidential testimony or confidential information in these types of cases.

I don't think anybody can deny that.  The Court relied on Seventh Circuit precedent, not Fifth Circuit precedent the first time.

I don't believe that I've said these things.  I went back and read the Genesee County opinion.  I think, at the very least, that significantly mischaracterizes the Court's opinion.

Here's some other choice words from you.  "It defies reason to suggest that the October 2019 statement could have corrected misstatements about the topics that it did not even address.  Even more bafflingly, the district court acknowledged and then rejected the only natural and correct reading of the reversal."

Here I'm accused of ignoring the reversal.  "The

district court's analysis misapplied interpretive tools to distort reversal and manufacture a holding that's not there."

Now, these are really playing with fire here, Mr. Hamilton.  "The district court took this approach to prop up its mischaracterization of a reversal as being written with the opaqueness of the legislature."

"At bottom, the district court concluded at the pleading stage, without any factual record."

You get my point, these type of statements directed at me are grossly improper.  I hope I don't see them throughout this lawsuit.  Because if I do, this is your first and last warning.  We don't practice like that here.

Mr. LeClair, if you are going to continue to be local counsel on this case, I know you know what your requirements are under these local rules.  I want you to read everything that they submit, because it's fine if you want to say those bad things about me to the Fifth Circuit, basically accuse me of violating my ethics requirements.

You told me today you don't have any evidence, both you and your partner, or any reason to believe that I wouldn't be fair or otherwise follow my rules.

I don't know why you made those statements that you did.  Obviously, like any good lawyer, you're trying to zealously advocate for your client.  You are trying to argue

the best position.

But when you are making those sorts of comments about the trial judge, you're running awfully darn close to violating the rules of practice.

You are here on a pro hac vice.  You are not admitted to practice law here.  I would tread very, very carefully.  Because a lot of the confusion in this case, a lot of the reason why I've got a four-and-a-half-year-old case that's been twice up at the Fifth Circuit falls squarely on your back.  You-all are the ones that pled this case.

So when you-all go back and you have your joint status conference, you ought to consider whether you ought to amend your pleadings.  Because if you don't specifically outline every single statement that you believe is actionable, and I mean with the utmost clarity that even a Texas Aggie like me can understand, I'm going to have you redo it.  I will have you keep redoing it until it's clear, because I am not going to get reversed on another 12(b)(6) in this case.

But if it goes up again, I bet there's a pretty good chance you won't draw the same panel like you've done the last two times.  So I want you to keep that in mind.

There's something else that I think you ought to keep in mind.  I've told you a lot of the differences

between the Dallas and Fort Worth Divisions.  I hope you remember that when you leave today.  I hope you read those two cases that I cited to you.

One of the things that I do not do here in Fort Worth, because of the differences in Dallas and Fort Worth, I don't, unless there're rare circumstances where parties move me to do so, I don't use Dallas mediators in Fort Worth cases.

Now, I want you-all to think about something for a minute.  You-all are very high-end lawyers.  I don't have near the experience that you do, but I used to practice in Washington D.C. for a while.  You wouldn't have Baltimore attorneys on Washington D.C. cases.

Yet, for some reason, even though it's easier to get from Baltimore -- from Dallas to Fort Worth -- from Baltimore to D.C. than it is from Dallas to Fort Worth, we continue to not get Fort Worth lawyers on Fort Worth cases.

I think anybody that's in here that's had a ninth-grade education can tell you, Baltimore and D.C. are different places.

For the same reason, if you ever had a case I bet by Skadden attorneys out in California, if you got a case in San Diego, do you use L.A. counsel or do you use San Diego counsel?

MR. FOSTER:  Your Honor, you would typically

involve some San Diego counsel.

THE COURT:  That's what I mean.  That's what I'm talking about.

So because of that, because of these differences -- thank you for sharing that -- I don't use Dallas mediators or Fort Worth cases.

I'm going to be assigning the Honorable David Evans to serve as the mediator in this case.  I would like to see this case mediated in the next 90 days.

Now, Judge Evans is involved in a very high-level mediation, which I believe Mr. Duggins is involved, probably, on a daily basis in as well.

I can assure you, Mr. -- Judge Evans has the ability and experience to handle this case, if we can just get it on his books in the next 90 days.

Right now, he's handling one of the biggest family disputes in the entire country.  But I will tell you something about Judge Evans, he continues to be the Chief Administrative Regional Judge here, over I think about 21 counties surrounding Fort Worth, so he's still a judge.  If you think I have issues being talked to like the way you did in my brief, you better not talk to David Evans like that.

Cantey Hanger attorneys, am I correct?

MR. DUGGINS:  You are absolutely correct, Your Honor.

THE COURT: If you think I don't have any patience, you need to try him.

So I look forward to you-all having your meeting today. I would like to have your joint status report on how you would like to proceed in this case outlining those requirements that I have or any other issues you would like for me to consider. I would like to have that on file by May the 30th. I believe that's what my order provides.

I know we've got a large group here. You-all can go back into my jury room. My other hearings today got canceled. It's perfectly fine if you would like to remain here in the courtroom to conduct your conference but it's time to get this case going.

It's time to actually know what's being asserted as the false or fraudulent statements under the Securities Act, because saying something is clear and it being clear are two different things.

Thinking that you've accomplished the communication -- I'm not as smart as George Bernard Shaw, but I will give you his quote, at least one that's been contributed to him: "The single biggest problem in communication is the illusion that it has taken place."

Now, certainly, I'm not as smart as the author of My Fair Lady and Pygmalion. I need some help. You're going to have to be very specific.

You understand, Mr. Hamilton?

MR. RIZIO-HAMILTON:  Yes, Your Honor, crystal clear.

THE COURT:  And I look forward to seeing the briefing regarding the Key West folks.  We will have a hearing on that at a later date.

Unless there's anything else, I'm prepared to go off the record, and let you-all visit.

MR. DUGGINS:  Your Honor, with your indulgence, I would like to note that Defendant James Reid-Anderson has appeared while you were making your comments.

I assure you we will share the substance of your remarks and the record of this proceeding with him.  Again, my apologies that he was unable to be here earlier.  It is not his fault.  It is mine.

THE COURT:  That's fine.  Sorry for the delay.

Be careful what you say about the judge.

MR. RIZIO-HAMILTON:  Yes, Your Honor.

THE COURT:  Never a good idea.

Google John McBryde.

All right.  Thank you, guys.

COURT SECURITY OFFICER:  All rise.

(The proceedings concluded at 9:51 a.m.)

REPORTER'S CERTIFICATE

I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that the foregoing is a true and correct transcript from the record of proceedings in the foregoing entitled matter to the best of my ability to hear.

Further, due to the COVID-19 pandemic, some participants are wearing masks, and/or appeared via videoconferencing, so proceedings were transcribed to the best of my ability.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

Signed this                    day of              ,
20   .

___/s/ Zoie Williams_____
Zoie Williams, RMR, RDR, FCRR
Official Court Reporter
Northern District of Texas
Fort Worth Division

Business Address:    501 W. 10th Street
                     Fort Worth, Texas 76102
                     zwilliams.rmr@gmail.com
                     817.850.6630

COURT SECURITY OFFICER: **[3]** 5/4 9/12 36/22
MR. BARBER: **[2]** 9/18 11/18
MR. CATES: **[9]** 7/20 17/17 17/20 17/23 17/25 18/3 18/6 24/2 24/5
MR. DUGGINS: **[10]** 8/6 8/10 8/17 8/25 9/13 11/10 20/9 27/10 34/24 36/9
MR. EDWARDS: **[1]** 7/14
MR. FOSTER: **[2]** 8/14 33/25
MR. KAUFMAN: **[1]** 8/1
MR. LECLAIR: **[5]** 22/11 22/20 22/23 23/2 24/1
MR. RANKIN: **[1]** 7/7
MR. RIZIO-HAMILTON: **[24]** 5/25 6/9 6/12 6/15 6/18 6/21 6/25 7/2 7/11 7/16 7/22 15/19 15/21 15/24 16/1 16/4 16/6 16/12 21/23 22/2 23/25 28/14 36/2 36/18
MR. SAMPLE: **[2]** 9/16 11/19
MS. SINDERSON: **[8]** 16/19 16/22 16/25 17/3 17/7 22/5 22/8 23/24
THE COURT: **[61]**

**/**

/s **[1]** 37/18

**1**

10 **[2]** 14/13 27/19
10020 **[1]** 1/18
10th **[2]** 3/3 37/21
10th largest **[1]** 13/11
11 **[9]** 6/5 20/4 26/18 26/19 26/20 26/25 27/3

27/8 29/8
12 **[1]** 32/19
1200 **[1]** 20/25
121 **[1]** 5/19
1251 **[1]** 1/17
12th largest **[1]** 13/10
1400 **[1]** 2/12
14th **[1]** 15/6
15 **[1]** 9/7
1500 **[1]** 1/20
16 **[1]** 12/25
1895255 **[1]** 10/8
19 **[1]** 37/8
1960 **[3]** 11/17 11/19 11/25
1970 **[1]** 11/22

**2**

20 **[2]** 9/7 37/16
2019 **[2]** 19/2 30/20
2020 **[1]** 14/15
2024 **[4]** 1/7 5/1 10/8 10/13
21 **[1]** 34/19
212.554.1444 **[1]** 1/18
214.978.4984 **[1]** 1/21
23 **[2]** 1/7 5/1
2310515 **[1]** 10/13
25 **[3]** 14/16 18/24 20/20
250 **[3]** 20/12 20/19 26/22

**3**

300 **[3]** 1/20 2/9 21/9
30th **[1]** 35/8
33317 **[1]** 2/3
35 **[1]** 12/23
38 **[1]** 12/20

**4**

40 **[1]** 11/9
4:20-CV-00201-P **[1]** 1/5
4:20-CV-201-P **[1]** 5/13
4th **[1]** 2/3

**5**

501 **[2]** 3/3 37/21
525 **[1]** 2/12

**6**

60 **[1]** 29/20
600 **[1]** 2/9
650.470.4580 **[1]** 2/13
6th **[1]** 2/9

**7**

7080 **[1]** 2/3
75 **[1]** 20/25
75201 **[1]** 1/21
76102 **[3]** 2/9 3/3 37/21

**8**

817.850.6630 **[2]** 3/4 37/22
817.877.2800 **[1]** 2/10

**9**

90 **[2]** 34/9 34/15
94301 **[1]** 2/12
954.916.1202 **[1]** 2/4
9:07 **[1]** 1/10
9:51 a.m **[1]** 36/23

**A**

a.m **[2]** 1/10 36/23
ability **[5]** 23/16 28/3 34/14 37/7 37/11
able **[2]** 8/20 21/25
about **[38]**
above **[1]** 3/8
absolutely **[1]** 34/24
accepting **[1]** 29/6
accomplished **[1]** 35/18
accounting **[1]** 9/1
accuse **[1]** 31/19
accused **[2]** 20/3 30/25
accusing **[2]** 21/24 29/7
ACKERMAN **[4]** 2/7 8/19 22/16 24/13

| A | | |
|---|---|---|
| acknowledged [1] 30/23 | 7/4 7/16 8/12 11/6 13/8 15/4 20/19 24/25 26/5 | are [45] |
| Act [1] 35/16 | Alto [2] 2/12 8/13 | area [1] 10/16 |
| actionable [3] 18/14 19/3 32/16 | always [3] 6/6 13/25 17/13 | areas [1] 13/14 |
| active [5] 12/3 12/9 13/6 14/9 20/22 | am [7] 6/9 8/17 15/19 16/22 18/20 32/19 34/23 | argue [2] 27/15 31/25 |
| actual [1] 18/13 | amend [1] 32/14 | argued [1] 28/13 |
| actually [4] 19/6 20/3 23/2 35/14 | Americas [1] 1/17 | argument [4] 6/10 21/13 21/14 21/16 |
| add [1] 20/18 | among [3] 24/24 25/23 28/21 | Arlington [2] 9/16 11/16 |
| addition [1] 26/7 | amount [3] 12/14 14/13 20/3 | army [2] 6/6 6/7 |
| address [2] 30/22 37/21 | analysis [3] 25/13 29/10 31/1 | around [2] 5/17 11/9 |
| adhere [1] 19/11 | ANDERSON [5] 1/9 2/15 9/4 9/11 36/10 | ARPS [4] 2/11 8/13 20/7 27/1 |
| administer [1] 25/16 | ANDREW [1] 2/2 | articles [1] 16/9 |
| administration [2] 13/4 25/2 | another [3] 29/1 30/2 32/19 | as [31] 7/1 11/5 13/15 14/1 14/7 14/7 14/19 17/13 18/12 19/5 21/1 21/2 21/20 23/7 24/9 25/1 26/16 26/20 27/19 29/4 29/18 30/7 30/9 31/6 34/8 34/12 35/15 35/19 35/19 35/23 35/23 |
| Administrative [1] 34/19 | any [22] 10/2 11/8 11/14 13/21 14/6 18/18 19/3 19/16 21/19 21/22 22/5 22/7 23/15 24/15 26/21 27/17 31/9 31/20 31/21 31/24 35/1 35/6 | |
| admission [2] 16/3 17/2 | | |
| admitted [1] 32/6 | | |
| Admonishment [1] 37/15 | | ASAP [1] 9/11 |
| admonishments [1] 15/9 | | aside [1] 21/17 |
| advance [1] 28/21 | | ask [7] 5/16 9/22 15/13 15/15 15/15 21/18 24/14 |
| advantage [1] 25/9 | anybody [3] 28/11 30/12 33/18 | asked [2] 21/13 23/6 |
| advocate [1] 31/25 | | asking [1] 21/12 |
| after [3] 14/20 27/21 28/18 | anyone [1] 18/19 | asserted [1] 35/14 |
| again [2] 32/21 36/13 | anything [2] 23/20 36/7 | assigning [1] 34/7 |
| against [1] 26/2 | apologies [1] 36/14 | Association [1] 15/18 |
| age [1] 26/14 | apologize [2] 5/14 9/13 | assure [3] 27/16 34/13 36/12 |
| Aggie [1] 32/17 | appeal [1] 18/21 | |
| ago [6] 10/11 14/15 15/24 15/25 16/5 17/6 | appeals [1] 20/22 | assured [1] 24/12 |
| agreement [2] 26/18 26/19 | appearance [1] 5/21 | at [37] 5/9 5/19 8/2 9/1 9/2 10/4 10/5 10/9 10/13 11/12 11/13 11/22 12/15 12/17 18/17 20/6 20/24 22/17 23/18 24/13 26/12 26/19 26/24 28/2 28/6 28/7 28/9 29/9 29/24 30/16 31/8 31/8 31/11 32/9 35/20 36/6 36/23 |
| air [1] 10/2 | appeared [4] 20/2 22/20 36/11 37/9 | |
| airport [1] 9/5 | appears [1] 29/4 | |
| al [2] 5/11 5/12 | appellate [1] 26/17 | |
| all [38] | application [1] 17/22 | |
| allowed [1] 23/21 | appoint [1] 23/17 | |
| already [3] 18/14 27/25 28/1 | approach [1] 31/5 | |
| also [12] 2/5 2/15 6/21 | approved [1] 27/1 | |

## A

**attack [1]** 26/2
**attacks [1]** 28/21
**attorney [5]** 5/6 14/16 22/9 22/16 24/22
**attorneys [12]** 6/5 8/7 20/7 20/19 21/18 22/14 23/12 27/1 28/21 33/13 33/22 34/23
**Austin [1]** 13/12
**author [1]** 35/23
**authored [1]** 20/23
**authorities [1]** 25/9
**Avenue [2]** 1/17 2/12
**average [6]** 12/9 12/17 12/19 12/21 12/23 12/25
**avoid [1]** 29/12
**awfully [1]** 32/3

## B

**back [9]** 11/21 11/22 14/15 26/16 28/6 30/16 32/10 32/12 35/10
**background [1]** 16/7
**bad [1]** 31/18
**bafflingly [1]** 30/22
**balls [1]** 15/7
**Baltimore [5]** 13/16 33/12 33/15 33/16 33/19
**bar [1]** 23/10
**BARBER [3]** 1/9 2/15 9/2
**based [3]** 7/5 10/16 11/24
**basically [2]** 27/4 31/19
**basis [1]** 34/12
**be [33]** 6/4 8/4 8/9 8/20 9/6 9/10 9/21 10/18 10/20 10/25 12/13 12/18 13/11 15/5 16/10 18/9 21/20 22/3 23/5 23/15 23/21 24/6 24/10 24/11 25/14 29/20 31/14 31/22 34/7 34/18 35/25 36/14 36/17

**Beaumont [2]** 14/10 14/11
**because [24]** 6/5 8/19 14/24 15/3 16/6 16/13 17/7 18/3 20/15 21/8 21/14 24/15 26/24 27/7 29/19 31/12 31/17 32/7 32/14 32/19 33/5 34/4 34/4 35/16
**been [10]** 11/24 14/16 17/13 18/11 18/15 20/18 26/13 26/17 32/9 35/20
**before [11]** 1/13 5/14 16/7 17/1 17/7 17/21 18/1 22/20 24/3 25/19 28/23
**begin [4]** 5/14 5/18 5/22 21/19
**beginning [1]** 24/17
**behalf [1]** 8/11
**behooves [1]** 14/19
**being [12]** 7/8 11/16 15/5 19/19 20/3 21/25 21/25 23/12 31/6 34/21 35/14 35/16
**believe [12]** 6/15 18/14 20/6 20/9 21/20 26/18 26/21 30/15 31/21 32/15 34/11 35/8
**benches [1]** 5/7
**BERGER [2]** 1/17 6/2
**Bernard [1]** 35/19
**BERNSTEIN [2]** 1/17 6/2
**best [3]** 32/1 37/7 37/11
**bet [3]** 22/18 32/21 33/21
**better [3]** 12/17 14/6 34/22
**between [3]** 24/18 24/24 33/1
**big [1]** 14/7
**biggest [2]** 34/16 35/21
**bit [3]** 8/18 18/11 23/8
**blame [1]** 28/11
**books [1]** 34/15

**Boston [1]** 13/15
**both [7]** 8/8 9/17 10/20 11/7 14/11 25/1 31/21
**bother [1]** 19/18
**bothersome [1]** 18/12
**bottom [2]** 29/9 31/8
**boy [1]** 21/3
**braggadocious [1]** 18/17
**brief [11]** 6/13 6/14 10/14 16/16 21/12 22/25 26/25 27/2 27/20 29/3 34/22
**briefing [1]** 36/5
**briefs [1]** 26/12
**brought [2]** 21/8 27/25
**building [1]** 28/18
**Bureau [1]** 10/12
**business [3]** 15/1 29/21 37/21
**busy [2]** 12/11 29/23
**but [22]** 8/22 10/1 10/7 11/6 12/11 12/18 13/17 18/17 18/25 19/5 25/19 25/23 26/13 27/16 27/20 28/9 32/2 32/21 33/11 34/17 35/12 35/20

## C

**California [2]** 2/12 33/22
**call [1]** 24/13
**called [2]** 15/11 15/17
**calling [4]** 28/20 28/24 28/25 30/4
**calls [1]** 5/9
**came [3]** 18/2 25/19 26/15
**can [20]** 8/4 9/21 10/6 10/12 11/13 18/9 22/3 22/7 23/5 24/6 24/11 24/15 27/15 27/16 30/12 32/17 33/19 34/13 34/14 35/9
**can't [3]** 17/13 21/20 28/11
**canceled [1]** 35/11
**candor [2]** 25/25 26/7

**C**

CANTEY [7]  2/8 2/8 20/7 22/17 24/14 27/12 34/23

career [1]  14/18

careful [1]  36/17

carefully [1]  32/7

case [41]

cases [16]  10/4 10/15 11/15 12/4 12/12 12/13 12/22 13/18 20/25 26/13 30/11 33/3 33/8 33/13 33/17 34/6

CATES [2]  2/5 7/16

cause [1]  3/8

CEO [1]  9/4

certain [1]  15/8

certainly [4]  27/10 27/14 28/25 35/23

CERTIFICATE [1]  37/2

Certificate...................
...........**37 [1]**  4/5

certify [2]  37/4 37/12

cetera [2]  13/16 13/16

CFO [1]  9/2

chair [1]  8/2

chairman [1]  7/17

challenged [1]  15/5

Chamber [3]  10/11 12/15 15/10

chance [2]  16/23 32/22

change [1]  30/9

CHASE [2]  2/5 7/3

Chicago [1]  9/5

chief [2]  9/1 34/18

choice [3]  19/8 28/4 30/19

chose [1]  29/6

Circuit [17]  6/11 6/14 14/21 16/17 18/18 18/20 18/25 20/4 21/13 23/1 27/4 27/22 29/19 30/13 30/13 31/18 32/9

Circuit's [2]  15/9 27/13

circumstances [1]  33/6

cite [2]  10/13 30/6

cited [1]  33/3

cites [1]  11/13

cities [2]  13/9 13/15

city [6]  7/7 13/10 13/11 13/13 13/15 14/12

civil [2]  12/22 12/23

clarity [1]  32/16

clear [9]  20/17 21/1 21/9 21/14 21/15 32/18 35/16 35/16 36/3

clearly [6]  19/1 19/4 19/13 19/19 19/25 20/1

clerk [3]  8/19 22/18 28/17

clerks [1]  20/25

client [4]  5/6 7/1 8/5 31/25

clients [1]  23/1

close [2]  29/7 32/3

cloud [1]  28/22

collegial [1]  23/9

come [3]  5/6 5/7 14/10

comes [2]  13/18 23/12

coming [3]  10/1 16/6 17/7

comments [10]  8/21 9/22 19/8 23/14 27/21 28/4 29/2 29/9 32/2 36/11

Commerce [4]  10/11 12/15 15/10 15/18

commit [1]  27/8

committed [3]  26/18 26/23 27/4

common [1]  19/13

commonsensical [2]  20/17 21/2

communication [2]  35/19 35/22

compare [3]  14/8 14/18 27/3

complaint [1]  12/24

comply [1]  37/13

computer [1]  3/9

computerized [1]  3/9

concluded [2]  31/8 36/23

conclusion [1]  19/5

conduct [8]  16/13 18/7 25/2 25/4 26/3 26/9 26/23 35/12

conducted [1]  6/10

conference [4]  5/10 32/13 35/12 37/14

confidential [2]  30/10 30/10

confusion [6]  18/12 20/13 20/15 21/1 26/15 32/7

consider [4]  10/17 30/10 32/13 35/7

considerate [1]  25/14

consideration [1]  25/13

considering [1]  15/9

constraints [1]  25/15

consulting [1]  9/19

Consumer [1]  10/12

context [3]  14/14 19/12 19/20

continue [2]  31/14 33/17

continues [1]  34/18

contradicts [1]  29/5

contributed [1]  35/21

control [1]  14/21

controversy [1]  25/12

cordial [1]  23/9

CORPORATION [3]  1/8 5/12 10/6

correct [4]  30/24 34/23 34/24 37/5

corrected [1]  30/21

could [4]  6/6 9/5 14/17 30/21

counsel [20]  5/19 5/20 6/8 6/22 6/23 7/12 7/23 8/3 8/16 11/5 11/5 13/19 13/23 23/18 25/16 28/24 31/15

**C**

counsel... **[3]**  33/23 33/24 34/1

count **[3]**  6/5 20/6 20/24

counties **[1]**  34/20

country **[3]**  13/6 21/3 34/17

County **[3]**  11/25 30/6 30/16

couple **[1]**  25/22

court **[35]**  1/1 1/13 1/20 3/2 3/2 5/9 9/13 10/19 13/4 17/13 18/7 18/7 19/10 20/22 21/24 25/4 25/6 25/11 25/15 25/15 26/6 26/17 28/23 29/6 29/15 30/1 30/3 30/8 30/9 30/12 30/23 31/5 31/8 37/13 37/19

court's **[12]**  4/4 5/19 21/2 29/5 29/10 29/11 29/12 30/3 30/4 30/7 30/18 31/1

courtroom **[1]**  35/12

courts **[3]**  13/3 14/2 20/21

COVID **[1]**  37/8

COVID-19 **[1]**  37/8

Creed **[3]**  23/20 24/18 24/21

Crescent **[1]**  1/20

criminal **[2]**  12/19 15/3

criticism **[1]**  26/2

criticized **[2]**  30/2 30/3

crystal **[1]**  36/2

culturally **[1]**  11/3

cultures **[1]**  10/24

currently **[1]**  13/9

CV **[2]**  1/5 5/13

**D**

D-Day **[1]**  28/10

D.C **[4]**  33/12 33/13 33/16 33/19

daily **[1]**  34/12

Dallas **[23]**  1/21 6/23 10/16 10/18 10/21 10/22 11/5 11/25 12/1 12/7 12/9 12/20 12/23 13/1 13/20 13/23 23/12 33/1 33/5 33/7 33/15 33/16 34/6

Dallas-Fort **[1]**  10/16

darn **[1]**  32/3

date **[1]**  36/6

dates **[1]**  19/3

David **[3]**  24/23 34/7 34/22

day **[4]**  17/5 28/9 28/10 37/15

days **[10]**  15/1 15/3 15/3 15/24 15/25 16/5 29/20 29/21 34/9 34/15

deal **[1]**  27/11

dealt **[1]**  14/17

decide **[1]**  11/5

decision **[7]**  18/25 19/7 21/25 23/20 25/19 29/11 29/12

deeply **[2]**  15/2 29/10

defendant **[2]**  9/3 36/10

defendants **[8]**  1/10 2/6 2/11 2/15 5/20 8/12 13/22 20/16

defies **[1]**  30/20

degrades **[1]**  25/3

delay **[1]**  36/16

deliberate **[1]**  25/13

demand **[1]**  17/14

demonstrate **[1]**  25/5

den **[1]**  23/5

deny **[1]**  30/12

DEREK **[2]**  2/15 8/25

desegregated **[1]**  28/18

despite **[2]**  11/16 19/9

Detroit **[1]**  13/15

did **[29]**  6/12 6/13 6/14 6/15 12/13 14/24 16/2 16/4 16/5 17/3 17/3 17/5 17/21 17/23 17/25 18/1 19/4 20/13 22/25 27/8 27/10 27/17 28/12 30/6 30/7 30/8 30/22 31/24 34/21

didn't **[5]**  9/24 13/2 19/19 28/13 29/19

Diego **[3]**  33/23 33/23 34/1

differences **[5]**  11/7 12/1 32/25 33/5 34/5

different **[18]**  10/23 10/23 10/23 10/24 10/24 11/1 11/2 11/11 13/1 13/2 13/3 14/5 20/21 20/23 23/8 23/12 33/20 35/17

dig **[1]**  29/24

dignity **[2]**  26/1 26/4

diligence **[2]**  25/25 26/8

directed **[2]**  29/24 31/11

director **[1]**  7/4

disagree **[1]**  27/12

disappointed **[2]**  8/18 15/2

disciplinary **[1]**  27/25

discretion **[2]**  14/20 29/23

dismiss **[1]**  18/22

disputes **[2]**  25/17 34/17

distort **[2]**  29/7 31/2

distorted **[1]**  29/13

district **[21]**  1/1 1/2 1/13 10/19 10/20 19/10 22/15 23/22 28/8 29/6 29/10 29/12 29/15 30/1 30/3 30/9 30/22 31/1 31/5 31/8 37/19

disturbed **[1]**  28/16

division **[10]**  1/3 6/6 9/24 10/19 11/25 12/3 12/20 13/5 13/5 37/20

divisions **[6]**  10/22 11/7 12/7 14/8 14/11 33/1

## D

**do [33]** 6/17 7/1 7/10 8/5 8/6 8/8 8/24 14/2 15/8 15/13 21/19 21/20 21/22 22/10 23/6 23/23 24/3 26/10 26/18 26/21 27/6 27/6 27/14 28/6 28/21 29/23 31/12 33/4 33/4 33/7 33/11 33/23 33/23
**docket [6]** 5/19 14/6 14/21 15/10 20/24 29/22
**dockets [2]** 11/12 12/2
**doctrine [1]** 19/10
**doesn't [1]** 19/18
**doing [2]** 15/11 23/18
**don't [30]** 5/16 8/2 10/17 10/21 10/25 12/11 12/18 13/19 14/3 18/16 19/14 19/15 19/19 22/5 25/22 26/12 27/24 28/6 30/12 30/15 31/11 31/13 31/20 31/23 32/14 33/6 33/7 33/10 34/5 35/1
**Dondi [7]** 15/17 16/21 17/18 23/6 23/20 24/8 25/18
**done [4]** 16/7 23/8 27/18 32/22
**down [2]** 9/10 26/19
**drafted [1]** 24/22
**draw [2]** 11/2 32/22
**driving [1]** 9/8
**drowned [1]** 12/13
**due [5]** 9/6 26/14 26/14 26/16 37/8
**DUGGINS [11]** 2/6 8/5 8/11 8/16 8/24 9/21 11/8 20/6 27/1 27/6 34/11
**during [1]** 15/3
**duties [1]** 21/20
**duty [2]** 25/20 26/7

## E

**each [2]** 16/14 25/21
**earlier [2]** 16/15 36/14
**easier [1]** 33/14
**education [1]** 33/19
**EDWARDS [3]** 2/5 7/11 7/14
**effect [2]** 15/5 29/20
**effective [1]** 26/3
**efforts [1]** 25/16
**eight [4]** 20/7 20/19 25/12 26/22
**Eisenhower [1]** 28/10
**elaboration [1]** 11/14
**elbowed [1]** 23/14
**Eldon [1]** 28/17
**else [6]** 6/17 7/10 8/24 28/11 32/24 36/7
**en [1]** 9/4
**encourage [1]** 10/3
**end [4]** 13/10 19/5 28/9 33/10
**enlighten [1]** 9/23
**entered [1]** 10/7
**ENTERTAINMENT [2]** 1/8 5/12
**entire [4]** 13/6 13/9 14/18 34/17
**entitled [1]** 37/6
**escort [1]** 9/11
**especially [1]** 15/8
**et [4]** 5/11 5/12 13/16 13/16
**ethics [3]** 27/5 27/17 31/19
**Evans [5]** 34/8 34/10 34/13 34/18 34/22
**even [8]** 13/2 20/22 24/13 24/20 30/22 30/22 32/16 33/14
**ever [4]** 18/21 18/23 19/15 33/21

**every [3]** 12/8 16/14 32/15
**everybody [1]** 16/11
**everything [2]** 17/14 31/17
**evidence [4]** 21/22 22/7 23/19 31/20
**exactly [3]** 21/7 22/23 27/18
**example [1]** 12/17
**examples [1]** 11/12
**exams [1]** 19/24
**executive [1]** 7/3
**expect [1]** 24/15
**experience [8]** 18/19 20/13 20/20 20/21 21/10 26/23 33/11 34/14
**experienced [1]** 18/24
**explain [1]** 21/5
**explicitly [1]** 19/7
**extra [1]** 15/8

## F

**F.Supp [1]** 10/7
**fact [7]** 10/10 11/20 14/16 19/14 19/22 26/14 30/7
**facts [1]** 25/8
**factual [1]** 31/9
**fair [6]** 19/3 21/20 21/25 21/25 31/22 35/24
**falls [1]** 32/9
**false [1]** 35/15
**familiar [3]** 15/17 15/20 16/20
**family [1]** 34/16
**fault [2]** 9/6 36/15
**faulting [2]** 13/21 13/23
**favor [1]** 19/16
**FCRR [3]** 3/2 37/4 37/18
**federal [2]** 3/2 13/7
**fees [1]** 37/12
**few [1]** 24/8
**fifth [19]** 6/11 6/14 14/17 14/21 15/9 16/17 18/18 18/20 18/25 20/4 21/13

Case 4:20-cv-00201-P    Document 130    Filed 05/28/24    Page 44 of 54    PageID 2465

**F**

**fifth… [8]** 23/1 27/3 27/13 27/21 29/18 30/13 31/18 32/9
**Fighters [1]** 5/11
**file [2]** 26/13 35/7
**filed [4]** 14/15 16/16 21/12 27/10
**filing [2]** 12/24 12/25
**filings [2]** 12/6 12/9
**filling [1]** 5/8
**finally [1]** 7/22
**Financial [1]** 10/12
**find [4]** 10/6 10/12 23/19 25/18
**fine [5]** 8/23 9/14 31/17 35/11 36/16
**fire [3]** 5/11 7/17 31/4
**FIREFIGHTERS [5]** 1/4 5/22 7/3 7/12 19/6
**firm [1]** 13/24
**first [6]** 14/10 18/23 30/1 30/8 30/14 31/13
**five [2]** 12/21 14/15
**FLAGS [8]** 1/8 5/12 9/1 9/2 9/14 11/16 11/23 13/22
**Flags's [1]** 19/2
**FLOM [1]** 2/11
**Florida [2]** 2/3 7/20
**Flower [1]** 9/18
**folks [3]** 5/5 13/25 36/5
**follow [1]** 31/22
**following [2]** 5/10 10/4
**foregoing [2]** 37/5 37/6
**form [1]** 6/6
**format [1]** 37/12
**former [2]** 9/2 9/4
**FORT [39]**
**forth [1]** 18/3
**forward [3]** 24/9 35/3 36/4
**FOSTER [2]** 2/11 8/13

**four [3]** 12/6 20/25 32/8
**four-and-a-half-year-old [1]** 32/8
**fraud [1]** 18/19
**fraudulent [1]** 35/15
**FREDRICKS [4]** 2/7 8/11 19/23 27/1
**fresh [1]** 17/8
**fronts [1]** 30/4
**full [1]** 15/3
**fun [1]** 11/20
**Fund [2]** 7/12 7/18
**further [2]** 37/8 37/12

**G**

**gain [1]** 25/9
**gallery [1]** 5/6
**gather [1]** 18/18
**gathered [1]** 20/12
**gave [2]** 11/13 14/19
**General [1]** 28/10
**Genesee [2]** 30/6 30/16
**gentlemen [2]** 11/17 13/13
**George [1]** 35/19
**get [15]** 6/4 6/7 9/6 11/15 12/8 13/19 18/22 18/25 21/15 31/10 32/19 33/15 33/17 34/15 35/13
**gets [2]** 9/11 12/10
**getting [3]** 14/6 19/14 19/17
**give [9]** 10/3 10/14 11/11 12/4 12/17 22/7 25/12 25/22 35/20
**given [3]** 9/25 19/4 27/18
**gmail.com [2]** 3/4 37/22
**go [6]** 24/9 24/21 28/6 32/12 35/10 36/7
**goes [1]** 32/21
**going [13]** 5/17 8/21 10/14 14/15 15/5 23/16 29/20 31/14 32/17 32/19 34/7 35/13 35/24

**gone [1]** 18/14
**good [7]** 5/25 8/13 25/20 26/10 31/24 32/22 36/19
**google [2]** 14/3 36/20
**got [9]** 5/14 5/17 7/24 27/23 29/18 32/8 33/22 35/9 35/10
**govern [1]** 16/14
**grade [1]** 33/19
**graded [1]** 19/24
**grant [1]** 24/3
**granted [1]** 17/12
**great [3]** 8/9 13/24 27/11
**grossly [1]** 31/11
**GROSSMAN [2]** 1/17 6/3
**group [1]** 35/9
**growing [1]** 13/8
**guess [1]** 14/16
**guys [1]** 36/21

**H**

**hac [9]** 7/24 16/3 17/2 17/10 17/12 17/24 23/22 24/4 32/5
**had [17]** 11/21 14/25 15/3 15/4 16/7 16/15 16/23 20/7 20/13 20/14 20/25 21/1 21/9 21/11 28/16 33/18 33/21
**half [1]** 32/8
**HAMILTON [8]** 1/16 6/2 6/8 15/14 21/19 27/23 31/5 36/1
**handle [3]** 8/22 24/14 34/14
**handled [1]** 20/24
**handling [1]** 34/16
**HANGER [7]** 2/8 2/8 20/8 22/17 24/14 27/12 34/23
**happened [1]** 18/21
**has [8]** 11/8 14/12 18/14 26/3 30/1 34/13 35/22 36/10

Case 4:20-cv-00201-P   Document 130   Filed 05/28/24   Page 45 of 54   PageID 2406

## H

hasn't [1]  10/7
have [67]
haven't [1]  22/19
having [5]  6/1 13/18 23/9
 26/17 35/3
he [10]  8/19 8/20 9/5 9/6
 19/24 19/24 22/17 28/20
 34/18 36/14
he's [3]  9/8 34/16 34/20
hear [2]  15/12 37/7
heard [1]  22/18
hearing [3]  1/12 23/17
 36/6
hearings [2]  15/4 35/10
held [1]  19/1
help [1]  35/24
helps [1]  13/25
here [41]
Here's [3]  11/20 29/9
 30/19
high [2]  33/10 34/10
high-end [1]  33/10
high-level [1]  34/10
higher [1]  12/8
him [7]  9/11 22/18 24/14
 28/6 35/2 35/21 36/13
his [4]  9/6 34/15 35/20
 36/15
histories [2]  10/23 13/2
hold [1]  19/4
holding [2]  29/4 31/2
honeymoon [1]  11/22
Honor [38]
HONORABLE [2]  1/13 34/7
hope [4]  14/20 31/11 33/1
 33/2
how [13]  8/22 12/2 13/19
 14/1 14/21 15/20 17/1 22/4
 22/14 24/14 29/22 30/9
 35/4
However [1]  13/25

## I

hundred [1]  14/12
I'm [27]  7/7 8/18 8/21
 9/18 10/3 10/14 11/1 12/5
 13/10 13/14 13/21 13/23
 15/11 17/12 18/16 19/17
 21/3 22/22 23/2 23/16
 30/25 32/17 34/2 34/7
 35/19 35/23 36/7
I've [14]  5/14 5/17 5/17
 9/25 14/16 14/17 17/12
 18/23 26/13 27/18 29/22
 30/15 32/8 32/25
idea [1]  36/19
if [42]
ignoring [1]  30/25
illusion [1]  35/22
impartial [1]  25/13
important [4]  11/6 16/8
 16/10 18/6
imposed [1]  25/15
improper [2]  26/2 31/11
in [120]
including [5]  13/14 19/9
 20/21 20/21 30/4
incorrect [1]  19/12
indeed [5]  10/19 12/12
 13/4 13/22 20/6
independence [2]  26/1
 26/5
Index..........................
...................38 [1]  4/6
indictment [2]  12/19 12/20
indulgence [1]  36/9
infection [1]  5/15
information [1]  30/11
initially [2]  11/16 13/22
injunction [4]  14/25 15/1
 15/4 29/19
interested [2]  12/23 27/20
interesting [1]  11/20
interpretation [1]  29/13

interpretive [1]  31/1
into [2]  5/6 35/10
introduce [1]  8/12
introduced [1]  8/7
involve [1]  34/1
involved [2]  34/10 34/11
involving [1]  10/10
is [56]
issued [2]  10/10 26/21
issues [4]  25/12 28/22
 34/21 35/6
it [58]
it's [16]  10/8 11/4 11/6
 11/24 13/24 18/3 18/6
 18/15 21/15 23/8 31/17
 32/18 33/14 35/11 35/12
 35/14
its [2]  29/13 31/6

## J

JAMES [4]  1/8 2/15 9/4
 36/10
JENSEN [1]  2/2
JOHN [10]  1/16 6/2 9/10
 14/3 22/17 24/11 24/14
 27/23 27/24 36/20
join [2]  20/15 21/11
joint [2]  32/12 35/4
judge [36]  1/13 8/20 8/22
 12/7 12/10 14/19 18/18
 19/15 20/20 20/24 21/20
 22/20 23/15 24/12 24/19
 24/20 24/25 25/1 25/24
 26/3 26/8 26/13 26/17
 26/20 27/19 28/17 28/19
 28/25 29/8 32/3 34/10
 34/13 34/18 34/19 34/20
 36/17
judge-specific [1]  24/20
judges [7]  10/24 12/3 13/7
 14/7 14/9 22/15 26/16
judgment [3]  27/2 27/9
 29/16

**J**

judicial **[2]** 25/1 37/13
judiciary **[1]** 26/1
juggle **[2]** 15/7 17/13
juries **[1]** 10/24
jury **[3]** 11/2 20/25 35/10
just **[16]** 5/16 10/1 10/25 11/1 11/12 12/18 16/21 18/17 20/11 21/3 24/7 24/8 26/9 28/9 29/18 34/14
justice **[2]** 25/2 25/16

**K**

Kansas **[1]** 13/15
KATHERINE **[1]** 1/16
Katie **[1]** 6/18
KAUFMAN **[3]** 2/2 2/2 7/23
keep **[5]** 5/15 24/9 32/18 32/23 32/25
Keltner **[1]** 24/23
KEVIN **[2]** 2/5 7/16
Key **[7]** 7/17 7/20 7/23 17/11 20/16 21/11 36/5
kind **[1]** 19/8
kinds **[1]** 25/20
KLAUSNER **[1]** 2/2
know **[17]** 8/19 9/24 10/1 10/17 11/6 12/22 13/25 18/6 21/6 22/22 22/23 28/16 31/15 31/15 31/23 35/9 35/14
knowingly **[1]** 25/7

**L**

L.A **[1]** 33/23
ladies **[1]** 13/13
Lady **[1]** 35/24
language **[2]** 19/11 19/21
large **[2]** 24/22 35/9
larger **[1]** 13/15
largest **[3]** 13/5 13/10

Las **[1]** 13/16
last **[10]** 9/6 12/6 15/22 16/23 17/18 20/23 22/17 27/19 31/13 32/23
later **[1]** 36/6
law **[10]** 6/7 8/19 13/24 19/22 19/23 19/24 20/25 22/17 25/6 32/6
lawsuit **[1]** 31/12
lawyer **[11]** 21/3 21/10 24/19 24/21 24/24 24/25 25/24 26/5 26/7 28/5 31/24
Lawyer's **[3]** 23/20 24/18 24/21
lawyers **[6]** 9/7 17/14 26/13 26/22 33/10 33/17
lead **[4]** 5/20 6/8 8/16 28/12
learned **[1]** 26/16
least **[5]** 28/2 28/6 28/7 30/17 35/20
leave **[1]** 33/2
LeCLAIR **[6]** 1/19 6/22 22/10 23/11 24/10 31/14
legal **[3]** 14/18 20/12 26/22
legislature **[1]** 31/7
less **[2]** 10/10 29/21
let **[7]** 11/11 12/1 12/16 23/4 24/7 28/15 36/8
let's **[6]** 5/18 11/12 18/10 24/17 28/4 29/1
letter **[1]** 26/24
level **[1]** 34/10
LEVINSON **[1]** 2/2
Lew **[1]** 6/22
LEWIS **[1]** 1/19
like **[27]** 5/22 8/12 11/14 11/15 15/13 15/14 19/11 19/19 19/25 21/18 22/14

25/19 27/18 28/9 31/13 31/24 32/17 32/22 34/8 34/21 34/22 35/4 35/5 35/6 35/7 35/11 36/10
lion's **[1]** 23/5
LITOWITZ **[2]** 1/17 6/2
little **[7]** 8/18 11/10 11/21 15/12 18/11 23/8 28/21
live **[1]** 9/18
lives **[1]** 9/5
LLP **[1]** 2/8
Loan **[1]** 15/18
local **[7]** 5/20 6/21 6/23 11/5 13/19 31/15 31/16
long **[1]** 26/19
look **[12]** 10/3 10/5 10/9 11/12 11/13 12/15 12/17 23/18 26/12 26/24 35/3 36/4
looking **[1]** 18/17
lose **[1]** 5/16
losing **[1]** 5/15
lot **[4]** 26/15 32/7 32/8 32/25

**M**

made **[6]** 23/1 27/13 27/15 27/22 29/24 31/23
Mahon **[1]** 28/17
maintenance **[1]** 25/25
make **[8]** 5/21 8/21 9/22 15/8 17/8 19/9 21/6 21/25
making **[3]** 27/8 32/2 36/11
mandamused **[1]** 14/23
manner **[2]** 18/17 25/5
manufacture **[1]** 31/2
manufactured **[1]** 29/4
many **[2]** 8/21 13/17
MARK **[7]** 1/13 2/5 2/11 7/11 7/14 8/12 14/3
married **[1]** 11/21
MARSHALL **[3]** 1/9 2/15

**M**

MARSHALL... **[1]** 9/2

masks **[1]** 37/9

matter **[3]** 5/10 30/2 37/7

Matters **[1]** 10/6

MAY **[4]** 1/7 4/7 15/6 35/8

maybe **[8]** 13/19 16/14 20/14 21/1 21/9 21/10 21/11 21/13

McBryde **[8]** 8/22 14/3 22/20 24/11 24/14 27/24 27/25 36/20

McBryde's **[1]** 22/17

McKOOL **[4]** 1/20 6/22 13/24 22/9

me **[37]** 5/16 5/17 5/23 7/13 7/20 8/8 10/10 11/11 12/1 12/16 13/5 14/19 16/16 18/12 18/17 19/16 19/18 20/2 21/5 21/9 22/7 24/7 24/16 27/18 27/22 28/1 28/12 28/15 28/16 29/24 31/11 31/18 31/19 31/20 32/17 33/7 35/7

MEAGHER **[1]** 2/11

mean **[3]** 18/16 32/16 34/2

means **[2]** 12/12 13/13

meant **[1]** 20/1

Media **[1]** 10/6

mediated **[1]** 34/9

mediation **[1]** 34/11

mediator **[1]** 34/8

mediators **[2]** 33/7 34/6

meeting **[1]** 35/3

members **[1]** 18/23

mentioned **[1]** 16/21

MICHAEL **[1]** 2/7

might **[13]** 10/5 10/9 10/20 14/1 14/2 14/2 20/17 21/4 24/9 24/10 24/13 24/14 26/10

mind **[6]** 14/10 17/9 19/14 24/9 32/23 32/25

mine **[1]** 36/15

minute **[1]** 33/10

minutes **[1]** 9/7

misapplied **[2]** 19/10 31/1

miscellaneous **[1]** 28/2

mischaracterization **[1]** 31/6

mischaracterize **[1]** 25/8

mischaracterizes **[1]** 30/17

misquote **[1]** 25/8

misrepresent **[1]** 25/8

misstate **[2]** 12/18 25/8

misstatements **[1]** 30/21

moment **[1]** 16/17

money **[1]** 11/21

month **[1]** 12/8

months **[5]** 12/20 12/21 12/24 13/1 37/15

more **[2]** 18/19 30/22

morning **[5]** 5/25 8/14 8/15 17/8 17/20

motion **[7]** 14/24 18/4 18/22 20/18 27/2 27/9 29/16

Mound **[1]** 9/18

move **[3]** 12/12 12/13 33/7

MR **[15]** 1/16 1/19 2/2 2/5 2/5 2/5 2/6 2/7 2/7 2/11 2/15 2/15 2/15 7/3 34/13

Mr. **[31]** 6/8 6/22 7/6 7/11 7/16 7/23 8/5 8/16 8/19 8/24 9/4 9/11 9/21 11/8 15/14 19/23 20/6 21/19 22/10 22/16 23/11 24/10 24/13 27/1 27/1 27/6 27/23 31/5 31/14 34/11 36/1

Mr. Ackerman **[3]** 8/19 22/16 24/13

Mr. Anderson **[1]** 9/11

Mr. Duggins **[9]** 8/5 8/16

8/24 9/21 11/8 20/6 27/1 27/6 34/11

Mr. Fredricks **[2]** 19/23 27/1

Mr. Hamilton **[6]** 6/8 15/14 21/19 27/23 31/5 36/1

Mr. James **[1]** 9/4

Mr. Kevin **[1]** 7/16

Mr. LeClair **[4]** 22/10 23/11 24/10 31/14

Mr. Lew **[1]** 6/22

Mr. Mark **[1]** 7/11

Mr. Rankin **[1]** 7/6

Mr. Stewart **[1]** 7/23

MS **[3]** 1/16 15/15 16/18

Ms. **[2]** 6/18 22/4

Ms. Katie **[1]** 6/18

Ms. Sinderson **[1]** 22/4

much **[2]** 6/1 11/1

multiple **[1]** 30/3

must **[1]** 24/25

my **[39]**

myself **[1]** 25/4

**N**

name **[7]** 6/1 7/13 24/23 28/12 28/20 28/24 28/25

named **[1]** 28/18

natural **[1]** 30/23

nature **[1]** 26/14

near **[1]** 33/11

need **[5]** 5/6 27/24 28/5 35/2 35/24

Needless **[1]** 11/24

Never **[1]** 36/19

New **[6]** 1/18 1/18 13/15 22/14 23/8 24/20

next **[2]** 34/9 34/15

night **[1]** 9/6

nine **[1]** 25/14

ninth **[1]** 33/19

ninth-grade **[1]** 33/19

## N

**no [10]** 1/5 5/12 5/19 9/6 21/23 22/2 22/5 22/8 22/11 23/11

**nonsensical [1]** 30/5

**nor [1]** 26/21

**NORTHERN [6]** 1/2 10/20 22/15 23/21 28/8 37/19

**not [40]**

**note [2]** 11/15 36/10

**now [15]** 9/25 13/21 14/16 14/23 18/10 19/8 19/14 21/3 23/5 29/18 31/4 33/9 34/10 34/16 35/23

**nowhere [1]** 29/4

**number [10]** 9/25 12/6 12/9 12/12 13/8 25/4 25/10 25/12 25/14 28/2

**number-one [1]** 13/8

**numbered [1]** 3/8

**numbers [5]** 10/3 12/4 12/16 12/18 14/18

**numerous [1]** 22/21

**NW [1]** 2/3

## O

**O'Connor [1]** 14/4

**oath [1]** 26/20

**obviously [2]** 14/19 31/24

**occasions [1]** 22/21

**October [2]** 19/2 30/20

**October 2019 [2]** 19/2 30/20

**off [3]** 6/13 26/25 36/8

**offense [1]** 23/11

**office [3]** 8/13 13/4 25/24

**officed [1]** 9/15

**officer [2]** 9/1 26/5

**offices [1]** 9/16

**Official [1]** 37/19

**oftentimes [2]** 10/15 13/18

**oh [1]** 18/20

**okay [19]** 5/7 6/8 6/17 6/20 7/8 7/19 8/18 9/20 11/4 15/22 17/1 17/10 18/1 18/5 19/13 19/17 22/3 22/13 23/4

**OKLAHOMA [6]** 1/4 5/10 7/2 7/7 7/12 19/5

**Oklahoma's [1]** 29/16

**ol' [1]** 21/3

**old [1]** 32/8

**on [49]**

**one [19]** 6/4 9/7 10/10 13/8 13/8 14/17 16/14 18/11 19/9 19/17 20/22 21/17 22/13 28/20 28/25 29/17 33/4 34/16 35/20

**one-fifth [1]** 14/17

**ones [1]** 32/10

**only [5]** 13/6 14/7 14/25 28/22 30/23

**oOo [1]** 5/2

**opaqueness [1]** 31/7

**open [2]** 23/17 28/2

**opening [1]** 19/2

**opinion [14]** 19/4 19/10 19/11 19/15 20/2 26/21 27/14 29/3 30/3 30/4 30/6 30/7 30/16 30/18

**opportunity [1]** 28/17

**oppose [1]** 29/16

**opposing [1]** 28/24

**or [25]** 5/6 5/16 8/7 10/25 18/24 19/20 19/20 19/25 20/1 21/25 23/14 23/19 25/8 25/9 26/12 27/14 28/5 30/10 31/21 31/22 33/23 34/6 35/6 35/15 37/9

**oral [3]** 21/12 21/14 21/15

**order [3]** 5/19 26/15 35/8

**ordered [1]** 5/19

**orders [1]** 20/23

**Orleans [1]** 13/16

**other [14]** 14/2 14/8 15/4 18/18 19/8 23/14 24/24 25/7 25/21 25/23 29/9 30/19 35/6 35/10

**otherwise [3]** 14/2 19/13 31/22

**ought [3]** 32/13 32/13 32/24

**our [17]** 5/18 6/21 9/7 9/16 11/5 11/12 12/2 12/12 12/13 13/2 13/2 14/6 19/3 19/6 19/9 19/11 27/5

**ourselves [2]** 23/9 23/11

**out [7]** 6/10 7/5 11/4 19/20 23/4 28/15 33/22

**outcome [1]** 19/12

**outline [1]** 32/15

**outlined [1]** 10/15

**outlining [1]** 35/5

**outlying [1]** 13/14

**outside [1]** 10/16

**over [7]** 11/10 14/1 22/18 24/13 29/1 29/20 34/19

**overruled [1]** 14/24

**overview [1]** 10/14

**owe [1]** 25/21

**owes [2]** 25/24 26/7

**own [2]** 6/6 9/6

## P

**Palo [2]** 2/12 8/13

**pandemic [1]** 37/8

**panel [3]** 18/23 20/23 32/22

**parents [1]** 11/21

**park's [1]** 19/2

**parsing [1]** 19/11

**part [2]** 20/15 24/22

**participants [1]** 37/9

**particular [1]** 13/21

**particularly [4]** 8/22 15/2 15/4 27/21

**P**

parties [2]  8/7 33/6
partner [2]  6/18 31/21
party [2]  9/14 13/21
party's [1]  28/22
paternal [1]  11/1
patience [1]  35/2
PENSION [4]  1/4 5/11 5/23 7/18
people [2]  13/17 14/12
per [1]  12/6
perfectly [3]  11/4 29/23 35/11
perhaps [1]  9/23
personal [1]  28/21
perusing [1]  20/11
PITTMAN [3]  1/13 14/3 24/12
place [2]  10/18 35/22
places [4]  10/23 11/11 13/1 33/20
plainly [2]  19/25 20/1
plaintiffs [11]  1/6 1/16 1/19 2/2 2/5 5/18 5/20 18/13 20/14 21/12 21/18
Plantation [1]  2/3
players [1]  17/11
playing [1]  31/4
PLAZA [1]  2/8
pleading [1]  31/9
pleadings [4]  27/2 27/9 29/17 32/14
please [4]  5/23 10/21 12/11 15/14
pled [1]  32/10
point [2]  28/15 31/10
pointed [1]  12/16
Police [1]  7/17
pools [1]  11/2
poor [1]  21/3
population [1]  13/6
position [3]  24/25 28/22 32/1
posture [1]  18/13
practice [12]  9/24 14/1 23/7 23/13 23/16 23/21 28/3 28/7 31/13 32/4 32/6 33/11
practiced [1]  11/9
practices [1]  16/11
practicing [2]  6/7 18/8
precedent [2]  30/13 30/14
preliminary [3]  14/25 15/1 29/19
prepared [1]  36/7
prescribed [1]  37/13
PRESENT [2]  2/5 2/15
presiding [1]  29/1
pressures [1]  25/15
pretty [3]  11/11 14/5 32/21
previous [1]  8/20
pride [2]  23/9 23/11
prior [4]  16/2 19/4 19/9 29/3
pro [9]  7/24 16/2 17/1 17/10 17/12 17/24 23/22 24/4 32/5
probably [1]  34/12
problem [1]  35/21
problems [1]  14/5
proceed [2]  12/24 35/5
proceeding [1]  36/13
proceedings [3]  36/23 37/6 37/10
produced [1]  3/9
professional [1]  25/5
professor [1]  19/22
prop [1]  31/6
Properties [3]  15/18 16/21 17/19
protect [1]  26/4
protection [2]  10/12 26/1
provides [1]  35/8
provincial [1]  10/25

publication [1]  10/7
pull [1]  8/2
punctuality [1]  25/25
put [3]  14/14 21/17 24/11
Pygmalion [1]  35/24

**Q**

question [1]  15/15
questions [5]  9/23 10/2 11/8 15/13 24/15
quote [1]  35/20
quoted [1]  16/9
quotes [1]  25/20

**R**

radio [1]  9/10
RALPH [3]  2/6 8/11 11/9
RANKIN [3]  2/5 7/3 7/6
rare [1]  33/6
Rather [1]  29/6
RDR [3]  3/2 37/4 37/18
reach [1]  19/12
read [28]  12/4 15/21 15/22 16/2 16/5 16/15 16/24 17/3 17/5 17/18 17/21 18/1 19/19 19/20 20/2 21/14 22/25 23/2 25/19 26/12 27/6 27/7 27/20 28/5 29/1 30/16 31/17 33/2
reading [2]  19/3 30/24
real [1]  28/22
realize [1]  13/17
really [5]  21/5 21/6 21/6 28/16 31/4
reason [13]  13/18 19/6 20/16 21/8 21/19 22/6 22/11 23/6 30/20 31/21 32/8 33/14 33/21
receiving [1]  19/9
recent [6]  10/10 12/15 15/9 17/10 27/13 30/2
recently [1]  14/23
reciprocal [1]  26/3

**R**

recognize [1]  24/25
record [4]  31/9 36/8
 36/13 37/6
redo [1]  32/18
redoing [1]  32/18
Reed [1]  14/4
refer [2]  29/3 30/7
reflection [1]  27/11
refrain [1]  25/2
regarding [1]  36/5
Regional [1]  34/19
REID [4]  1/9 2/15 9/4
 36/10
REID-ANDERSON [4]  1/9
 2/15 9/4 36/10
rejected [1]  30/23
relate [1]  8/20
relied [1]  30/13
remain [1]  35/11
remarks [1]  36/13
Remarks.....................
.................09 [1]  4/4
remember [1]  33/2
remembers [1]  19/23
render [1]  26/3
rep [1]  7/1
repeat [1]  5/17
report [1]  35/4
reported [1]  3/8
REPORTER [3]  3/2 3/2
 37/19
Reporter's [2]  4/5 37/2
represent [1]  5/24
represented [1]  13/23
reps [1]  9/14
request [1]  7/24
required [2]  24/8 26/24
requirement [1]  18/3
requirements [5]  24/20
 27/3 31/16 31/19 35/6
requires [1]  24/18

research [1]  16/7
resolve [1]  29/17
respect [5]  25/5 25/10
 25/24 26/8 26/16
respected [1]  28/19
respectfully [1]  27/12
responsibilities [1]  26/4
responsibility [1]  9/8
responsible [1]  28/10
rest [1]  24/11
result [1]  29/13
resume [1]  18/17
resumes [1]  20/11
RETIREMENT [2]  1/4 5/11
reversal [11]  29/5 29/5
 29/7 29/11 29/14 30/2
 30/8 30/24 30/25 31/2
 31/6
reversed [5]  18/15 19/14
 19/17 29/18 32/19
review [1]  26/10
right [19]  5/9 5/18 6/24
 6/25 8/4 9/21 10/14 11/17
 11/18 11/19 17/5 18/9 20/8
 20/9 24/6 24/24 28/15
 34/16 36/21
rise [3]  5/4 5/23 36/22
Rising [1]  11/22
RIZIO [2]  1/16 6/2
RIZIO-HAMILTON [2]
 1/16 6/2
RMR [3]  3/2 37/4 37/18
room [1]  35/10
route [1]  9/5
rule [12]  14/24 15/5 20/4
 26/18 26/19 26/20 26/25
 27/3 27/8 29/8 29/19
 29/20
ruled [2]  19/16 27/17
rules [7]  21/15 26/9 27/5
 27/17 31/16 31/22 32/4
rulings [2]  14/21 25/10

run [1]  12/3
running [1]  32/3

**S**

said [10]  5/17 16/15 16/16
 17/13 19/7 19/24 23/8
 26/16 29/18 30/15
same [11]  10/18 10/18
 10/19 10/22 15/16 18/22
 20/13 21/1 24/16 32/22
 33/21
SAMPLE [2]  2/15 8/25
samples [1]  26/9
San [3]  33/23 33/23 34/1
sanctionable [1]  26/23
sanctions [2]  23/17 28/1
save [1]  21/11
Savings [1]  15/18
saw [1]  16/8
say [10]  10/25 11/24 14/1
 14/6 14/14 14/17 26/17
 28/20 31/18 36/17
saying [4]  18/16 27/4 28/1
 35/16
says [1]  29/5
school [2]  19/23 19/24
schools [1]  28/19
scienter [1]  30/4
SCOTT [2]  2/7 8/11
seated [6]  8/4 9/21 18/9
 22/3 23/5 24/6
second [4]  6/4 10/9 18/22
 26/15
securities [2]  18/19 35/15
see [8]  5/5 12/5 12/16
 23/15 26/19 28/4 31/11
 34/9
seeing [1]  36/4
seeking [2]  16/2 21/11
seems [1]  21/8
seen [1]  18/24
sense [1]  19/13
sent [1]  17/21

**S**

sentiments [1]  25/18
separate [1]  23/17
serious [1]  23/7
seriously [1]  20/5
serve [2]  28/22 34/8
set [1]  18/3
seven [1]  25/10
Seventh [1]  30/13
several [1]  5/5
Shall [1]  29/2
share [1]  36/12
sharing [1]  34/5
sharp [2]  23/14 27/15
Shaw [1]  35/19
she's [1]  19/15
shortening [1]  29/16
should [3]  9/6 14/22 16/10
shows [1]  19/3
side [2]  20/8 23/14
sign [3]  6/13 6/14 26/25
Signed [1]  37/15
significantly [1]  30/17
similar [1]  25/18
since [2]  11/17 11/25
SINDERSON [5]  1/16 6/19
 15/15 16/18 22/4
single [2]  32/15 35/21
sinus [1]  5/15
sir [3]  9/12 17/16 24/5
Sit [1]  5/7
six [12]  1/8 5/11 9/1 9/2
 9/14 11/16 11/22 13/22
 15/1 15/3 19/1 29/21
SKADDEN [6]  2/11 8/13
 20/7 26/25 27/11 33/22
SLATE [1]  2/11
slow [1]  21/5
slowly [2]  12/12 12/13
small [1]  19/16
smart [2]  35/19 35/23
SMITH [4]  1/20 6/22

13/24 22/9
so [34]  5/15 9/22 10/1
 11/15 11/21 12/8 12/11 13/1
 14/5 14/14 14/16 15/7
 15/13 18/20 19/7 19/17
 20/2 20/11 20/17 21/4
 21/7 21/9 21/14 22/11
 22/22 28/11 29/24 32/12
 32/23 33/7 34/4 34/20
 35/3 37/10
some [29]  9/22 9/22 10/2
 11/12 12/1 13/17 14/8
 14/20 15/13 16/7 16/8
 16/15 20/14 22/18 24/7
 24/17 25/7 26/23 27/15
 27/21 28/4 28/15 29/1
 29/9 30/19 33/14 34/1
 35/24 37/8
Somebody [1]  14/2
something [10]  9/23 19/20
 19/20 24/10 24/15 24/19
 32/24 33/9 34/18 35/16
sorry [2]  17/12 36/16
sort [1]  26/23
sorts [1]  32/2
sought [3]  17/1 19/11 20/15
sound [2]  18/16 20/8
sounds [2]  20/9 25/19
special [2]  15/8 23/18
specific [2]  24/20 35/25
specifically [1]  32/14
speech [2]  9/25 15/12
squarely [1]  32/10
staff [1]  25/16
stage [1]  31/9
stand [2]  15/14 27/24
standard [1]  30/9
standards [2]  16/13 18/7
stands [1]  19/6
Star [1]  11/22
state [3]  20/24 26/19
 30/7

statement [2]  30/20 32/15
statements [3]  18/13 19/2
 21/7 27/13 27/16 28/16
 31/10 31/23 35/15
STATES [7]  1/1 1/13 3/2
 13/9 13/10 13/12 37/14
status [4]  1/12 5/10 32/13
 35/4
statute [1]  19/12
stay [1]  15/10
stenography [1]  3/9
Stewart [1]  7/23
still [2]  14/20 34/20
stories [1]  22/18
story [1]  29/22
Street [4]  2/3 2/9 3/3
 37/21
STUART [1]  2/2
student [1]  19/25
study [2]  25/13 27/11
styled [1]  3/8
submit [1]  31/17
submitted [1]  28/11
substance [1]  36/12
such [2]  13/15 26/3
suggest [1]  30/20
suggested [1]  19/13
suing [2]  18/13 21/7
Suite [3]  1/20 2/9 2/12
supposed [2]  21/15 30/9
sure [6]  6/4 9/10 12/18
 17/8 21/6 23/2
surpassing [1]  13/12
surrounding [1]  34/20
symbol [2]  25/1 25/3
system [4]  1/5 5/11 5/23
 25/1

**T**

table [1]  8/3
take [6]  9/8 10/5 10/9
 11/12 23/7 25/23
taken [2]  29/15 35/22

**T**

talk [6]  16/17 18/10 22/14
 22/15 24/17 34/22

talked [1]  34/21

talking [3]  22/22 22/23
 34/3

Tarrant [1]  11/25

task [1]  29/15

team [2]  27/12 27/12

Telephone [5]  1/18 1/21
 2/4 2/10 2/13

tell [11]  5/23 7/13 9/10
 12/1 12/5 14/2 24/7 27/23
 28/6 33/19 34/17

telling [2]  11/1 21/2

tells [1]  13/4

tendency [1]  10/17

tentatively [1]  28/2

terrible [1]  5/15

testimony [1]  30/10

TEXAS [17]  1/2 1/6 1/21
 2/9 3/3 10/21 11/16 11/22
 14/8 21/4 23/20 23/22
 24/18 24/21 32/17 37/19
 37/21

than [7]  10/11 13/15 18/19
 23/8 29/6 29/21 33/16

thank [6]  5/8 6/1 7/8 7/21
 34/5 36/21

that [142]

that's [28]  6/25 8/23
 9/14 11/18 11/19 15/11
 15/11 16/13 18/11 18/21
 18/23 20/12 20/15 21/7
 24/19 27/7 28/25 29/7
 29/23 31/2 32/9 33/18
 33/18 34/2 34/2 35/8
 35/20 36/16

their [4]  5/19 5/20 11/22
 26/22

them [4]  9/11 20/18 25/22
 31/12

then [4]  15/15 17/3 23/4
 30/23

there [7]  10/17 19/8 20/17
 25/20 25/20 26/15 31/3

there're [1]  33/6

there's [3]  32/21 32/24
 36/7

these [13]  5/7 6/5 12/4
 12/16 14/5 19/1 24/8 30/11
 30/15 31/4 31/10 31/16
 34/4

they [6]  11/21 18/14 19/9
 20/13 20/15 31/17

they're [1]  11/1

thin [1]  10/2

thing [4]  15/16 26/10
 28/20 28/25

things [17]  10/15 13/19
 14/1 14/21 16/16 18/11
 21/17 22/13 24/7 24/17
 24/24 25/7 25/23 30/15
 31/18 33/4 35/17

think [18]  10/21 11/17
 12/11 18/6 19/15 22/6
 22/10 22/11 24/10 28/12
 30/12 30/16 32/24 33/9
 33/18 34/19 34/21 35/1

Thinking [1]  35/18

this [54]

those [13]  10/15 14/18
 15/3 26/9 26/11 28/4 29/2
 31/18 31/23 32/2 33/2
 35/5 37/13

though [1]  33/14

thousand [2]  14/12 20/23

three [5]  12/8 12/9 18/23
 20/21 29/17

through [1]  29/13

throughout [1]  31/12

tidbits [1]  24/8

time [14]  5/9 12/17 12/19
 15/22 16/23 17/18 18/23

25/14 25/23 29/16 30/1
 30/14 35/13 35/14

timelines [1]  17/14

times [5]  10/1 12/8 12/9
 14/13 32/23

tired [1]  6/7

today [13]  5/8 5/16 5/21
 6/1 7/9 8/21 15/12 20/16
 21/8 31/20 33/2 35/4
 35/10

together [1]  19/24

told [7]  13/10 18/20 19/19
 28/12 29/22 31/20 32/25

tolerated [1]  23/15

too [4]  20/14 26/19 27/16
 28/13

took [3]  12/23 20/4 31/5

tools [1]  31/1

top [1]  15/10

topics [1]  30/21

town [2]  10/18 11/4

transcribed [1]  37/10

transcript [3]  1/12 37/5
 37/12

tread [1]  32/6

trial [6]  12/19 12/21 12/25
 20/24 26/13 32/3

trials [1]  20/25

tries [1]  29/12

true [1]  37/5

try [1]  35/2

trying [2]  31/24 31/25

twice [3]  18/15 18/15 32/9

two [21]  10/11 10/15 11/13
 12/3 12/4 12/8 12/8 13/6
 14/7 14/9 14/10 15/3 15/4
 15/24 15/25 16/5 18/22
 25/4 32/23 33/3 35/17

Tyler [2]  14/11 14/11

type [3]  19/20 23/13 31/10

types [2]  19/1 30/11

typically [3]  19/25 26/12

**T**

typically… [1]  33/25

**U**

ultimately [1]  28/9
unable [1]  36/14
under [5]  24/8 26/25 27/3
 31/16 35/15
understand [6]  5/16 13/19
 23/23 24/3 32/17 36/1
unfaithful [1]  29/10
UNITED [7]  1/1 1/13 3/2
 13/9 13/10 13/11 37/14
University [1]  2/12
unjust [1]  26/2
unless [3]  19/16 33/6 36/7
unnecessary [1]  29/25
until [2]  15/6 32/18
up [13]  5/6 5/7 8/2 9/11
 18/14 23/17 24/11 25/23
 27/24 27/25 31/6 32/9
 32/21
uphold [1]  26/4
upon [2]  14/24 25/15
us [6]  5/8 6/1 7/8 16/14
 17/15 21/2
use [5]  11/5 33/7 33/23
 33/23 34/5
used [5]  19/17 19/22 19/25
 28/20 33/11
uses [1]  19/1
utmost [2]  26/8 32/16

**V**

valuable [1]  25/23
Vegas [1]  13/16
very [21]  6/1 10/22 11/2
 11/2 11/6 12/11 13/1 19/4
 19/10 19/16 20/22 23/7
 23/9 28/19 29/7 30/17
 32/6 32/6 33/10 34/10
 35/25
via [2]  23/22 37/9

vice [10]  7/17 7/24 16/3
 17/2 17/10 17/12 17/24
 23/22 24/4 32/5
videoconferencing [1]
 37/10
violating [3]  27/16 31/19
 32/4
violation [6]  20/4 26/20
 26/20 27/4 27/8 29/8
violations [1]  23/19
visit [1]  36/8
voice [1]  5/15
VOLUME [1]  1/12

**W**

want [16]  6/4 8/6 9/22
 10/5 10/9 14/7 15/8 21/6
 24/9 24/13 25/22 28/7
 31/16 31/18 32/23 33/9
wanted [1]  17/8
warning [1]  31/13
was [32]  3/8 7/25 8/19
 10/10 11/22 14/15 14/23
 15/2 15/5 16/6 16/8 17/8
 19/16 20/3 20/17 20/22
 21/9 21/14 22/17 24/22
 26/15 26/19 27/10 27/18
 27/20 28/5 28/10 29/15
 29/20 29/24 29/24 36/14
Washington [2]  33/12
 33/13
wasn't [3]  20/1 21/1 27/16
way [6]  21/14 24/23 27/6
 27/7 27/17 34/21
we [52]
we're [6]  11/4 12/11 13/1
 13/9 14/7 20/16
we've [1]  35/9
wearing [1]  37/9
week [1]  17/13
weeks [2]  10/11 29/17
well [7]  12/22 16/6 16/10
 22/13 28/19 28/24 34/12

well-respected [1]  28/19
went [4]  19/23 21/4 27/18
 30/16
were [9]  11/21 13/23 17/7
 19/3 22/16 27/23 27/24
 36/11 37/10
West [7]  7/17 7/20 7/23
 17/11 20/16 21/11 36/5
WestLaw [2]  10/7 10/13
what [21]  5/17 11/9 12/5
 12/22 15/11 18/12 20/3
 21/7 22/9 22/10 22/22
 22/23 23/18 27/18 28/10
 29/5 31/15 34/2 34/2 35/8
 36/17
what's [3]  5/17 26/24
 35/14
when [25]  9/11 10/16 11/15
 11/21 12/3 13/18 14/6
 14/14 15/5 15/7 15/22
 16/23 18/20 18/25 19/12
 19/24 20/2 23/12 26/20
 26/25 26/25 27/17 32/2
 32/12 33/2
when's [1]  17/18
where [9]  7/5 7/19 9/15
 14/25 18/21 18/22 20/22
 20/24 33/6
whether [1]  32/13
which [6]  11/15 12/22
 14/20 18/7 18/8 34/11
while [3]  10/20 33/12
 36/11
who [17]  5/23 5/23 6/17
 7/1 7/3 7/10 7/11 7/23 8/5
 8/13 8/16 8/24 8/25 9/2
 13/19 26/5 28/17
who's [1]  7/17
why [14]  8/2 10/17 14/3
 15/11 16/5 17/5 18/1 19/3
 20/17 20/19 21/8 23/6
 31/23 32/8

## W

**will [28]** 11/15 12/4 12/5 12/16 13/11 15/15 16/17 21/17 21/19 23/4 23/15 23/16 23/17 23/21 25/2 25/4 25/5 25/7 25/10 25/12 25/14 25/18 25/22 32/18 34/17 35/20 36/5 36/12

**WILLIAM [1]** 2/7

**WILLIAMS [4]** 3/2 37/4 37/18 37/18

**wise [1]** 13/6

**wish [1]** 22/16

**within [1]** 29/23

**without [1]** 31/9

**WL [2]** 10/8 10/13

**won't [2]** 24/12 32/22

**wonder [5]** 16/14 18/21 20/14 20/17 20/19

**Word [1]** 4/6

**words [4]** 19/1 19/25 20/4 30/19

**work [5]** 12/2 12/14 13/19 14/22 17/14

**works [2]** 21/4 22/17

**worth [43]**

**would [30]** 5/22 8/8 8/8 8/12 8/20 8/22 10/3 11/13 12/13 15/13 15/14 15/14 18/18 19/5 19/7 20/3 21/18 22/13 27/25 28/1 28/2 32/6 33/25 34/8 35/4 35/5 35/6 35/7 35/11 36/10

**wouldn't [8]** 16/15 21/9 21/10 21/12 21/13 24/11 31/22 33/12

**written [1]** 31/7

**wrongdoing [1]** 23/19

**wrote [2]** 19/15 28/5

## Y

**yank [2]** 23/16 28/3

**year [2]** 13/11 32/8

**years [7]** 11/9 12/6 14/15 14/16 18/24 22/19 27/19

**years' [5]** 20/12 20/20 20/20 21/10 26/22

**yes [19]** 6/16 8/1 8/10 9/12 15/19 16/1 16/12 16/19 17/17 17/23 17/25 23/24 23/25 24/1 24/2 24/5 28/14 36/2 36/18

**yesterday [2]** 7/25 16/25

**yet [2]** 10/7 33/14

**York [5]** 1/18 1/18 22/14 23/9 24/20

**you [213]**

**you and [1]** 16/8

**you're [11]** 5/5 12/22 21/15 22/23 23/18 24/20 28/10 28/11 31/24 32/3 35/24

**you've [3]** 22/18 32/22 35/18

**you-all [16]** 9/15 9/23 15/11 18/9 20/7 21/7 23/23 25/19 26/10 32/10 32/12 33/9 33/10 35/3 35/9 36/8

**young [2]** 9/7 22/16

**younger [1]** 28/5

**your [65]**

## Z

**zealously [1]** 31/25

**ZOIE [5]** 3/2 5/8 37/4 37/18 37/18

**zwilliams.rmr [2]** 3/4 37/22