**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY**
**APPROVING PROPOSED CLASS ACTION SETTLEMENT AND AUTHORIZING**
<u>**DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS**</u>

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   Factual and Procedural Background of the Litigation ............................................... 2

III.  The Proposed Settlement Warrant Preliminary Approval ......................................... 6

      A.    Description of the Settlement.................................................................... 6

      B.    The Settlement Meets the Standards for Preliminary Approval Under Rule
            23................................................................................................................ 7

            1.    The Settlement Is the Result of Good Faith, Arm's-Length
                  Negotiations by Well-Informed and Experienced Counsel ..................... 8

            2.    The Settlement Is Fair and Reasonable in Light of Potential Risks
                  and Delays................................................................................................ 9

            3.    The Litigation Is at a Point Suitable for Settlement................................ 11

            4.    The Settlement Should Be Preliminarily Approved in Light of the
                  Range of Possible Recovery .................................................................... 12

            5.    The Opinion of Lead Counsel Supports Approval ................................... 13

            6.    The Other Factors Set Forth in Rule 23(e)(2) Support Preliminary
                  Approval ................................................................................................... 13

IV.   THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION ..................... 16

      A.    The Settlement Class Satisfies the Requirements of Rule 23(a)........................ 17

            1.    The Settlement Class Members Are Numerous ....................................... 17

            2.    There Are Questions of Law or Fact Common to the Settlement
                  Class ........................................................................................................ 18

            3.    Plaintiffs' Claims Are Typical of the Settlement Class's Claims............ 18

            4.    Plaintiffs Have Fairly and Adequately Protected the Interests of the
                  Settlement Class....................................................................................... 19

      B.    The Settlement Satisfies the Requirements of Rule 23(b) .................................. 21

            1.    Questions Common to the Settlement Class Predominate Over
                  Individual Questions ............................................................................... 21

2.    A Class Action Is Superior to Other Available Means of
Adjudication .......................................................................................... 22

V.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ........................................ 23

VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED ............................................ 24

VII.  CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................21, 22

*In re Biolase, Inc. Sec. Litig.*,
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015).......................................................12

*Bridges v. Ridge Nat. Res., LLC*,
    2020 WL 7495252 (W.D. Tex. Jan. 3, 2020) ...........................................................7

*Buettgen v. Harless*,
    2011 WL 1938130 (N.D. Tex. May 19, 2011) .......................................................19

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................12

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ..................................................................................7

*Daves v. Dallas Cnty., Texas*,
    2018 WL 4537202 (N.D. Tex. Sept. 20, 2018).......................................................19

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ............................................................................7, 18

*In re Deepwater Horizon*,
    785 F.3d 1003 (5th Cir. 2015) ................................................................................19

*In re Dell Inc.*,
    2010 WL 2371834 (W.D. Tex. June 11, 2010) ...............................................14, 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .......................................................16

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ..................................................................................19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................9

*Hernandez v. City of Houston, Texas*,
    2019 WL 2869157 (S.D. Tex. July 3, 2019).........................................................19

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ..................................................................................23

*Klein v. O'Neal, Inc.*,
     705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................................10

*Lehocky v. Tidel Techs., Inc.*,
     220 F.R.D. 491 (S.D. Tex. 2004) ....................................................................8, 18

*Lewis v. Newman*,
     59 F.R.D. 525 (S.D.N.Y. 1973) ..........................................................................10

*Manchacha v. Chater*,
     927 F. Supp. 962 (E.D. Tex. 1996) ...............................................................11, 12

*Newby v. Enron Corp.*,
     394 F.3d 296 (5th Cir. 2004) ................................................................................8

*In re OCA, Inc. Sec. & Derivative Litig.*,
     2009 WL 512081 (E.D. La. Mar. 2, 2009) ...........................................................14

*Patel v. Reata Pharms. Inc.*,
     549 F. Supp. 3d 559 (E.D. Tex. 2021) .................................................................20

*Reed v. Gen. Motors Corp.*,
     703 F.2d 170 (5th Cir. 1983) ..............................................................................13

*Rooney v. EZCORP, Inc.*,
     330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................18

*Rougier v. Applied Optoelectronics, Inc.*,
     2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) ................................................18, 20

*Schwartz v. TXU Corp.*,
     2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .............................................9, 10, 15

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
     91 F. Supp. 2d 942 (E.D. Tex. 2000) ...................................................................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
     2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................16

*Spegele v. USAA Life Ins. Co.*,
     336 F.R.D. 537 (W.D. Tex. 2020) ........................................................................18

*United States v. Tex. Educ. Agency*,
     679 F.2d 1104 (5th Cir. 1982) ............................................................................13

*Vine v. PLS Fin. Servs., Inc.*,
     331 F.R.D. 325 (E.D. Tex. 2019), *aff'd*, 807 F. App'x 320 (5th Cir. 2020) ...........22

**STATUTES**

15 U.S.C. § 78u-4 ....................................................................................................20, 24

**OTHER AUTHORITIES**

7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778
     (3d ed. 2024) ..............................................................................................................21

FED. R. CIV. P. 23 ................................................................................................. *passim*

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") and additional Named Plaintiff Key West Police & Fire Pension Fund ("Key West," and together with Oklahoma Firefighters, "Plaintiffs") hereby submit this unopposed motion for preliminary approval of the proposed settlement (the "Settlement") of the above-captioned securities class action (the "Action").[1]  Plaintiffs request that the Court grant preliminary approval of the Settlement, which satisfies the applicable standards set forth in Rule 23(e)(1) of the Federal Rules of Civil Procedure, and set a final approval hearing for December 12, 2024 or as soon thereafter as the Court's schedule permits.  Preliminary approval of the Settlement will allow Plaintiffs to mail notice of the proposed Settlement to potential members of the Settlement Class.

## I.   **PRELIMINARY STATEMENT**

Plaintiffs, on behalf of themselves and the proposed Settlement Class, have agreed to settle all claims asserted in this Action in exchange for $40,000,000, subject to the approval of the Court. The proposed Settlement is a strong result for the Settlement Class, particularly in light of the costs, risks, and delays of further litigation and the range of realistic recovery in the Action.

In agreeing to resolve the Action, Plaintiffs and Lead Counsel were well informed of the strengths and weakness of the case.  They had extensively investigated the claims, briefed the motion to dismiss and motion for judgment on the pleadings, litigated two appeals, conducted substantial discovery, and exchanged exhaustive mediation statements with Defendants. Moreover, the Settlement was reached after arm's-length negotiations by experienced counsel that spanned several weeks, which were informed by the Parties' review of the discovery record and the Parties' briefing in preparation for mediation.

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated September 3, 2024 (the "Stipulation"), which is Exhibit 1 in the accompanying Appendix.  All capitalized terms not otherwise defined shall have the meanings ascribed to them in ¶ 1 of the Stipulation.  Unless otherwise indicated, internal citations and internal quotations are omitted.

The Settlement appropriately balances Plaintiffs' objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that the Settlement Class could receive a smaller recovery—or no recovery at all—after further litigation if Plaintiffs failed to prove their claims.  As discussed below, while Plaintiffs believed their claims were meritorious, they faced significant risks in establishing Defendants' liability and proving damages.  In particular, proving that Defendants' statements regarding Six Flags-branded theme parks in China (the "China Parks") caused investors' losses would have been challenging.  Among other arguments, Defendants contended that the stock price declines at issue were primarily caused by negative information unrelated to the China Parks.  Defendants also had meaningful arguments that their statements were not false, and that they did not act with scienter, i.e., fraudulent intent or deliberate recklessness.

Approval of a class action settlement is a two-step process.  *See* FED. R. CIV. P. 23(e)(1), (2).  At this stage, Plaintiffs request only that the Court grant preliminary approval of the Settlement, which will allow notice to be sent to proposed Settlement Class Members, and will set a date for the proposed final approval hearing (the "Settlement Hearing").  Next, at the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers submitted prior to that hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

Plaintiffs alleged that Defendants made false and misleading statements and omissions to investors about the financial health of Six Flags' Chinese partner, the China Parks' construction progress and opening timelines, and the revenue attributable to the China Parks.  Plaintiffs alleged that these misrepresentations and omissions caused Six Flags' common stock to trade at artificially inflated prices during the Class Period and that the Company's stock price declined as a result of a series of disclosures made between February 2019 and February 2020.

2

On February 12, 2020, an initial class action complaint was filed in the United States District Court for the Northern District of Texas (the "Court"), styled *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entertainment Corporation, James Reid-Anderson, and Marshall Barber*, Case No. 4:20-cv-00201-P, alleging violations of the federal securities laws. (ECF No. 1.)  On May 8, 2020, the Court appointed Oklahoma Firefighters and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") as Lead Plaintiffs, and approved Oklahoma Firefighters and Local 103's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the putative class.  (ECF No. 30.)

On July 2, 2020, Oklahoma Firefighters and Local 103 filed the Consolidated Class Action Complaint (the "CAC") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder. (ECF No. 50.)  The CAC asserted claims against Six Flags, its former Chief Executive James Reid-Anderson, and its former Chief Financial Officer Marshall Barber (together, Marshall and Barber are the "Individual Defendants").

On August 3, 2020, Defendants filed a motion to dismiss the CAC (the "Motion to Dismiss"), which was fully briefed on September 16, 2020.  (ECF Nos. 51, 54, 56.)  On March 3, 2021, the Court entered its Opinion and Order granting the Motion to Dismiss and dismissing the Action with prejudice (the "Motion to Dismiss Order").  (ECF Nos. 69, 70.)

On March 31, 2021, Oklahoma Firefighters and Local 103 filed a motion to amend or set aside the judgment and for leave to file an amended complaint (the "Motion to Set Aside"), which was fully briefed on May 5, 2021.  (ECF Nos. 71-73.)  On July 26, 2021, the Court denied the Motion to Set Aside (the "Motion to Set Aside Order").  (ECF No. 76.)

On August 25, 2021, Oklahoma Firefighters filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from, *inter alia*, the Motion to Dismiss Order and Motion to Set Aside Order.  (ECF No. 77.)  The Parties completed briefing on these issues on December 15, 2021, and on March 7, 2022, the Parties conducted oral argument.  (*Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, Case No. 21-10865 (the "First Appeal"), ECF Nos. 35, 42, 44, 58.)  On January 18, 2023, the Fifth Circuit reversed the Court's Motion to Dismiss Order (the "First Appeal Decision"), holding that Oklahoma Firefighters sufficiently pled the majority of its allegations.  (First Appeal, ECF No. 62.)

The Action was remanded to the Court and Defendants filed their Answer on March 20, 2023.  (ECF No. 100.)  Defendants' Answer denied Lead Plaintiff's allegations of wrongdoing and asserted various defenses to the claims pled against them.

The Parties began initial discovery efforts at this time.  The Parties exchanged initial disclosures, and Lead Plaintiff produced several thousand pages to Defendants, and served subpoenas on Defendants' auditor and several China Parks vendors.

On April 18, 2023, Oklahoma Firefighters filed a motion for leave to amend the complaint (the "Motion to Amend") to add Key West as a Named Plaintiff.  (ECF No. 101.)  In response, on May 2, 2023, Defendants filed a motion for judgment on the pleadings (the "MJOP"), arguing that the effect of the First Appeal Decision, which found that certain of Defendants' alleged misstatements were inactionable, was that Oklahoma Firefighters lacked standing.  (ECF No. 102.)  On May 9, 2023, Key West filed a motion to intervene (the "Motion to Intervene") (ECF No. 108).  On June 2, 2023, the Court granted Defendants' MJOP and denied the Motions to Amend and Intervene, dismissing the Action with prejudice (the "Pleadings Order").  (ECF Nos. 114, 115.)

On June 30, 2023, Oklahoma Firefighters and Key West filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from the Pleadings Order. (ECF No. 116.) The Parties completed briefing on December 4, 2023, and conducted oral argument on March 4, 2024. (*Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment Corporation*, Case No. 23-10696 (the "Second Appeal"), ECF Nos. 59, 63, 65, 96.) On April 18, 2024, the Fifth Circuit reversed the Pleadings Order and allowed Key West to intervene. (Second Appeal, ECF No. 100.)

The Action was remanded to the Court on May 10, 2024. (ECF No. 119.) On May 23, 2024, the Parties appeared for a Fed. R. Civ. P. 26(f) scheduling conference. That day, the Court entered an Order that referred the case to mediation, appointed the Honorable David L. Evans as mediator (the "Mediator"), and required the Parties to hold a mediation on or before August 21, 2024. (ECF No. 128.)

The Parties re-commenced discovery. Defendants made an initial production of over 40,000 documents, totaling approximately 180,000 pages, to Plaintiffs. In exchange for Defendants' prompt production of these documents, Plaintiffs agreed to undertake a review of this initial production and then identify gaps in the production for the Parties to discuss. Plaintiffs also continued to work with their experts regarding, among other things, accounting, loss causation, and damages issues. Pursuant to the Court's direction, Plaintiffs also filed a motion to amend the complaint on July 29, 2024, to specify the remaining false and misleading statements, and the reasons why those statements are false and misleading. (ECF No. 138.) The Court granted the motion on July 29, 2024, (ECF No. 139), and Plaintiffs filed the operative complaint (the "Complaint") that day. (ECF No. 140.)

Meanwhile, following the Parties' exchange of mediation briefs on July 18, 2024, Lead Counsel and Defendants' Counsel commenced settlement discussions.  They had extensive negotiations on multiple occasions regarding settlement in the weeks leading up to the mediation that was scheduled to take place on August 20, 2024.  On August 16, 2024, the Parties' negotiations culminated in an agreement-in-principle to settle and release all claims against Defendants in the Action in return for payment of $40,000,000 in cash, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

On September 3, 2024, the Parties entered into the Stipulation and Agreement of Settlement, which includes the terms and conditions of the Settlement, subject to the approval of the Court.  That same day, Plaintiffs and Six Flags also entered into a Supplemental Agreement that provides that Six Flags has the right to terminate the Settlement if the number of persons who request exclusion from the Settlement Class reaches a certain threshold.  *See* Stipulation ¶ 39(b) (App. 35).

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Description of the Settlement

The Settlement provides that Defendants will pay or cause to be paid $40,000,000 in cash into an Escrow Account for the benefit of the Settlement Class.  This consideration, after deduction of any Taxes, Notice and Administration Costs, and the Litigation Expenses and attorneys' fees approved by the Court (the "Net Settlement Fund"), will be distributed among the Settlement Class Members who submit timely and valid Claim Forms in accordance with the Plan of Allocation set forth in the Notice.  Plaintiffs believe that the Settlement is in all respects, fair, adequate, reasonable, and in the best interests of the Settlement Class.

**B.      The Settlement Meets the Standards for Preliminary Approval Under Rule 23**

In the Fifth Circuit, there is a strong policy in favor of voluntary settlement of litigation, and particularly so in class actions. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting "overriding public interest in favor of settlement," "[p]articularly in class action suits"); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (same).

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements, following a two-step process. First, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* FED. R. CIV. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement. *See* FED. R. CIV. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). This rule codifies case law indicating that courts should grant preliminary approval where "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys, and appears to fall within the range of possible approval." *Bridges v. Ridge Nat. Res., LLC*, 2020 WL 7495252, at *4 (W.D. Tex. Jan. 3, 2020).

At the final approval stage, the Court will determine whether the proposed Settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) provides that the Court should consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  In addition, the Fifth Circuit has historically considered six factors in evaluating the adequacy of a proposed class action settlement:

(1) [whether there is] evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' [*sic*] prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).  All of these factors support approval of the Settlement and, thus, preliminary approval is appropriate here.

### 1.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

The process by which the Settlement was reached strongly indicates that the Settlement is fair and reached without any fraud or collusion.  The Settlement was reached after extensive arm's-length negotiations by experienced counsel that spanned several weeks, which were informed by the Parties' diligent review of the discovery record and the Parties' mediation papers.  Plaintiffs, like the rest of the Settlement Class, have an interest in obtaining the largest possible recovery from Defendants.  *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502-03 (S.D. Tex. 2004) ("all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class").  Lead Counsel has many years of experience litigating securities class actions and has negotiated scores of other class settlements which have been approved by courts throughout the country.  Similarly, Defendants have been at all times represented by law firms with reputations for their tenacious defense of class actions and other complex civil matters.

Moreover, the Settlement was reached at a time that counsel had a well-developed understanding of the risks of the case following four years of litigation—including two appeals—during which the Parties completed briefing on the motions to dismiss and conducted meaningful discovery.

Accordingly, this factor favors preliminary approval. *See, e.g.*, *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (settlement approved where "proposed settlement was the result of intense, arms-length negotiations between the parties and the final agreement suggests no bias, collusion or coercion in favor of any party or sub-group of class members"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) (a "presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

### 2. The Settlement Is Fair and Reasonable in Light of Potential Risks and Delays

The proposed Settlement provides for a Settlement Amount of $40,000,000 in cash. This recovery is a substantial result for the Settlement Class, especially in light of the risks of continued litigation and trial. The benefit of the present Settlement must be compared to the risk that a lesser, or no, recovery might be achieved after further discovery, a summary judgment motion, trial, and likely appeals, most likely years into the future. As with every complex litigation of this kind, Plaintiffs faced formidable obstacles to recovery at trial, both with respect to liability and damages. By agreeing to the proposed Settlement, Plaintiffs ensure a significant recovery for the Settlement Class while avoiding the risks and delays of expensive and protracted litigation.

### a. The Complexity, Expense, and Likely Duration of the Action

In evaluating a proposed settlement in securities and shareholder litigations, courts have frequently recognized that such cases are "notably difficult and notoriously uncertain." *Lewis v.*

*Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). Thus, when considering "the complexity, expense, and likely duration" of cases such as this Action, settlements are particularly appropriate. *See Schwartz*, 2005 WL 3148350, at *18 ("Litigation relating to such fact-intensive and difficult-to-prove claims would thus be extraordinarily complicated and time consuming, and require expert testimony."). In addition to the general complexity of securities cases, there are several factors that make it more likely that this case would require substantial additional expenditures of time and money to reach a litigated judgment. These factors include:

- If the Action were to go to trial, it would require many months of effort, addressing complicated disclosure matters, briefing multiple vigorously contested evidentiary motions, and expending substantial additional expenses. Such expenses would include large expert expenses related to damages and loss causation, accounting and the construction of theme parks. The outcome of a trial, including a "battle of the experts" on these issues, would by no means be certain.

- Even if Plaintiffs secured a judgment on behalf of the Settlement Class following a trial that is larger than the Settlement Amount, given the time value of money, such a future recovery may not be more beneficial than receiving the benefits of the Settlement now.

- Any judgment against Defendants would likely be appealed, adding further costs, delay and uncertainty.

The above considerations, which are by no means exhaustive, illustrate that the proposed Settlement provides a certain, immediate and substantial benefit to the Settlement Class, which supports preliminary approval. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010).

### b.   *Risks to Liability and Damages*

Plaintiffs believe that their claims have merit. Nevertheless, Plaintiffs recognize that there are significant hurdles to proving liability and damages through summary judgment and at trial. The risks of continued litigation concerned each main element of Plaintiffs' claims.

Plaintiffs first faced challenges in proving that Defendants made materially false and misleading statements during the Class Period. For example, Defendants were expected to argue

that, contrary to Plaintiffs' allegations that Defendants misled investors regarding the financial condition of Riverside, Riverside continued to make some payments to Six Flags and its vendors until the end of the Class Period. Moreover, Defendants would argue they had no obligation to disclose Riverside's purported financial difficulties until the end of the Class Period, when they decided to terminate their agreements with Riverside.

Plaintiffs also faced challenges in proving scienter—*i.e.*, that Defendants knowingly or recklessly deceived investors. For instance, Defendants were expected to argue that they updated investors when they became aware of delays to the China Parks opening timelines. There was a risk that the Court or jury may agree on a complete record at summary judgment or trial.

Last, Plaintiffs faced further risks relating to proof of loss causation and damages. Plaintiffs would have to show that Defendants' alleged corrective disclosures directly caused investors' losses. Defendants were expected to argue that the market was already aware of much of the information in the corrective disclosures and therefore did not react to that information. Defendants were also expected to contend that "confounding" information, i.e., negative information not related to the fraud, was intertwined with the corrective disclosures, and that the impact of such confounding information must be disaggregated from Plaintiffs' damages. If Defendants had succeeded on their loss causation and damages arguments, the potentially recoverable damages would have been very substantially reduced.

Thus, the $40,000,000 payment, particularly in the context of the significant risks and uncertainties of proving liability and damages, weighs strongly in favor of approval.

### 3.    The Litigation Is at a Point Suitable for Settlement

Plaintiffs undertook an extensive investigation, fully briefed two dispositive motions and appeals, and conducted meaningful fact discovery. The Parties "have arrived at a compromise with a full understanding of the legal and factual issues surrounding this case." *Manchacha v.*

11

*Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Thus, the third factor in the Fifth Circuit's test counsels in favor of preliminarily approving the Proposed Settlement.

> **4.      The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery**

Given the possibility that this Action may have resulted in a smaller, or even no, recovery, the $40,000,000 recovery achieved by the Settlement is significant.  The abnormal stock price declines on the corrective disclosure dates totaled approximately $930 million, but Lead Counsel understood that this did not reflect a realistically achievable damages assessment because it did not account for disaggregating the full impact of confounding information unrelated to the alleged fraud.  After consultation with their damages expert on the issue of disaggregation, Lead Counsel believe that, if Plaintiffs prevailed on all liability arguments, the maximum potential damages that could realistically be established would be between approximately $370 million and $470 million.

Significantly, however, Defendants were expected to assert that the maximum damages were much lower than that range, or even zero.  Further, as discussed above, the risks of establishing liability here were significant.  In sum, the $40 million recovery contemplated by the Settlement, which represents approximately 8.5% to 10.8% of the maximum achievable damages, is a favorable result for the Settlement Class and meets the fifth factor of the Fifth Circuit's test. *See In re Biolase, Inc. Sec. Litig*., 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding that a settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *In re China Sunergy Sec. Litig*., 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlements in securities class actions "have ranged from 3% to 7% of the class members' estimated losses").

### 5.      The Opinion of Lead Counsel Supports Approval

A presumption that the settlement is fair and reasonable is created where, as here, experienced counsel have negotiated a settlement at arm's length.  *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgement of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Lead Counsel acquired a thorough understanding of this Action by independently investigating claims, conducting meaningful discovery, and negotiating with Defendants, and submit that the Settlement is appropriate and should be approved.  At this stage, where other Settlement Class Members have not yet had the opportunity to provide their input, Lead Counsel's opinion is sufficient to satisfy the sixth factor of the Fifth Circuit's test.

### 6.      The Other Factors Set Forth in Rule 23(e)(2) Support Preliminary Approval

Rule 23(e)(2) also considers (i) whether the class representatives and class counsel have adequately represented the class; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees; (iv) any agreements made in connection with the proposed settlement; and (v) the equitable treatment of class members.  *See* FED. R. CIV. P. 23(e)(2)(A); FED. R. CIV. P. 23(e)(2)(C)(ii), (iii), (iv); FED. R. CIV. P. 23(e)(2)(D).

#### a.      *Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class*

In determining whether to approve a class action settlement, the Courts consider whether Plaintiffs and Lead Counsel "have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). Here, Lead Plaintiff litigated this Action on behalf of the Settlement Class for more than four years. Lead Plaintiff consulted with Lead Counsel on litigation strategy and case developments and actively participated in discovery, including by producing documents in response to Defendants'

13

document requests.  In addition, as discussed further below, Lead Plaintiff and additional Named Plaintiff Key West are adequate representatives of the Settlement Class because they have claims that are typical of, and no interests antagonistic to, other Settlement Class Members.

As also discussed below, Lead Counsel has likewise adequately represented the Settlement Class throughout the litigation, by among other things, conducting an extensive investigation to the claims asserted in the Action; drafting the detailed Complaint and opposing Defendants' motion to dismiss and motion for judgment on the pleadings; litigating two appeals; consulting with multiple experts; engaging in significant fact discovery; and conducting extensive settlement negotiations.

### b.    The Proposed Method of Distributing Settlement Proceeds is Effective

The Court also will assess the "effectiveness" of the Settlement's "proposed method of distributing relief to the class."  FED. R. CIV. P. 23(e)(2)(C)(ii).  Here, the proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to the Claims Administrator.  The Claims Administrator will review and process the claims received, provide claimants with an opportunity to cure any deficiencies or request review of the denial of their claims by the Court, and will ultimately mail or wire claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation.[2]  This type of claims processing is standard in securities class actions and has long been used and found to be effective.  *See, e.g.*, *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *6 (E.D. La. Mar. 2, 2009); *In re Dell Inc.*, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010).

---

[2] The Settlement is not a claims-made settlement. If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or value of Claims submitted. *See* Stipulation ¶ 13 (App. 23).

c.      **The Settlement Does Not Excessively Compensate Plaintiffs' Counsel**

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel. Plaintiffs' Counsel will be compensated solely out of the Settlement Fund in an amount to be approved by the Court.

As set forth in the Notice, when the motion for final approval of the Settlement is filed, Lead Counsel will also file a motion for attorneys' fees and payment of Litigation Expenses in which Lead Counsel will seek fees in an amount not to exceed 25% of the Settlement Fund. A fee award of no more than 25% is reasonable and supported by case law in this Circuit. *See Schwartz*, 2005 WL 3148350, at *27 ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"). Lead Counsel will also seek payment of Litigation Expenses incurred in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $650,000.

Importantly, by granting preliminary approval, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application. That issue will be decided at the Settlement Hearing. Lead Counsel's fee and expense application will be fully briefed and supported by a formal motion made pursuant to the schedule set by the Preliminary Approval Order.

d.      **Plaintiffs Have Identified All Agreements Made in Connection with the Settlement**

Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. Here, the only such agreement is the confidential Supplemental Agreement that sets forth the conditions under which Six Flags would be able to

terminate the Settlement if the number of Settlement Class Members who request exclusion from the Settlement Class reaches a certain threshold. *See* Stipulation ¶ 39(b) (App. 35). This type of agreement is standard in securities class actions and is routinely maintained as confidential to avoid allowing potential opt-outs to use this provision as leverage. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020). The agreement has no negative impact on the fairness of the Settlement. *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (granting final approval of securities settlement that included a similar agreement). The Parties will provide a copy of the Supplemental Agreement to the Court for *in camera review* if the Court requests.

### e. The Settlement Treats Settlement Class Members Equitably

Finally, the proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* FED. R. CIV. P. 23(e)(2)(D). No Settlement Class Member receives preferential treatment. The Net Settlement Fund will be distributed among Settlement Class Members in accordance with the proposed Plan of Allocation set forth in the Notice, which provides a fair and equitable method of allocation of the Settlement proceeds. Plaintiffs will receive a recovery based on the same formula under the Plan of Allocation as all other Settlement Class Members.

For these and all of the foregoing reasons, Plaintiffs submit that the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Settlement Class.

## IV.   THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION

The Parties have stipulated to the certification of the Settlement Class pursuant to Rules 23(a) and 23(b)(3) for settlement purposes only. Stipulation ¶ 2 (App. 19). The Settlement Class that the Parties seek to certify is the same as the class that Plaintiffs asserted in the Complaint. Specifically, the Settlement Class includes "all persons and entities who purchased the publicly

traded common stock of Six Flags between April 24, 2018 and February 19, 2020, inclusive (the 'Class Period'), and were damaged thereby." Stipulation ¶ 1(qq) (App. 17).[3]

Certification of a settlement class is appropriate where the proposed class and proposed class representatives meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and the two requirements of Rule 23(b)(3)—that questions of law or fact common to the members of the class predominate over any individual issues of fact or law, and that a class action is superior to other available methods to adjudicate the controversy. At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. *See* FED. R. CIV. P. 23(e)(1)(B)(ii).

Here, the proposed Settlement Class meets the requirements of Rules 23(a) and 23(b)(3).

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.    The Settlement Class Members Are Numerous

Rule 23(a)(1) allows certification of a class if "the class is so numerous that joinder of all members is impracticable[.]" "[T]he Fifth Circuit has held the numerosity requirement is 'generally assumed to have been met in class action suits involving nationally traded securities.'" *Dell*, 2010 WL 2371834, at *2.

Here, Six Flags' common stock traded on the New York Stock Exchange and there were approximately 84 million shares of its common stock outstanding at the end of the Class Period. (ECF No. 140, ¶28.) "[T]he sheer number of shareholders alone . . . indicates joinder of all class

---

[3] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who is, or was during the Class Period, an officer or director of Six Flags and any members of their Immediate Family; (iv) any affiliates or subsidiaries of Six Flags; (v) any entity in which any Defendant or any members of their Immediate Family has or had a controlling interest; and (vi) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. *Id.* (App. 17).

members is impracticable." *Lehocky*, 220 F.R.D. at 499 (finding numerosity where company traded on the NASDAQ had over 17 million shares outstanding).

### 2.   There Are Questions of Law or Fact Common to the Settlement Class

Courts require commonality, a question of law or fact common to the proposed class, in order to satisfy Rule 23(a)(2). *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 548 (W.D. Tex. 2020); FED. R. CIV. P. 23(a)(2).  The Fifth Circuit holds that Rule 23's commonality requirement simply requires that class members "have suffered the same injury" and "raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810.  "The claims of all Class Members hinge on common contentions that are capable of being resolved class-wide." *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019).  Here, Plaintiffs allege that Defendants made misrepresentations and omissions to all members of the Settlement Class via public statements, including SEC filings, and, accordingly, the issues of falsity, materiality, and scienter can all be resolved on a class-wide basis.  *See id.* ("The materiality and veracity of those statements will be proven class-wide.").

Indeed, Plaintiffs' allegations "implicate multiple questions common to the class, including whether Defendants' statements . . . violated federal securities law, . . . and the extent to which the market price of [Six Flags'] . . . shares w[ere] affected by various public statements and disclosures made by Defendants."  *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445-46 (W.D. Tex. 2019). Finally, the alleged "injury"—a loss of value in Six Flags' share price—is common among the Settlement Class Members.  These common questions of law and fact satisfy Rule 23(a)(2).

### 3.   Plaintiffs' Claims Are Typical of the Settlement Class's Claims

Under Rule 23(a)(3), Plaintiffs must demonstrate that "the claims of the representative parties are typical of the claims of the class."  FED. R. CIV. P. 23(a)(3).  "[C]ommonality and typicality . . . tend to merge, as both requirements serve as guideposts for determining . . . whether

the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Daves v. Dallas Cnty., Texas*, 2018 WL 4537202, at *2 (N.D. Tex. Sept. 20, 2018).  The typicality test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Hernandez v. City of Houston, Texas*, 2019 WL 2869157, at *3 (S.D. Tex. July 3, 2019).

Here, Plaintiffs' claims are typical of the other Settlement Class Members' claims because they are all investors who purchased Six Flags common stock during the Class Period and were allegedly harmed by the same alleged false and misleading statements.

### 4.   Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class

Under Rule 23(a)(4)'s adequacy prerequisite, courts examine whether "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To determine adequacy, the Fifth Circuit utilizes a three-prong test, where the proposed class representatives must show that:

> (1) there are no conflicts of interest between them and the proposed class; (2) the proposed class representatives have the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members; and (3) that class counsel has the competence and ability to vigorously conduct the litigation.

*Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011); *see Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005).

Plaintiffs satisfy all three prongs.  First, there are no conflicts between Plaintiffs and the Settlement Class.  Plaintiffs are "part of the class and possess the same interest" as well as "suffer the same injury as the class members."  *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015).  Like other potential Settlement Class Members, Plaintiffs purchased Six Flags common

stock during the Class Period and were subjected to the same alleged misstatements.  There are no conflicts between Plaintiffs and the Settlement Class they seek to represent.

Second, Plaintiffs have the willingness and ability to play an active role in the litigation and vigorously represent the Settlement Class.  Plaintiffs made investments in Six Flags stock during the Class Period, are familiar with the case, have been actively engaged in the litigation, have regularly communicated with counsel regarding the status of the case, and attended the Court-ordered in-person Fed. R. Civ. P. 26(f) conference.

Plaintiffs are also the type of institutional investors Congress sought to encourage to lead securities class actions when it enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  15 U.S.C. § 78u-4.  The "PSLRA has been construed to afford a preference for securities fraud litigation to be directed by institutional investors."  *Patel v. Reata Pharms. Inc.*, 549 F. Supp. 3d 559, 571 (E.D. Tex. 2021).  Further, in granting Oklahoma Firefighters' Motion for Appointment as Lead Plaintiff, this Court previously found that Oklahoma Firefighters is the "most capable of adequately representing the interests of class members[.]" (ECF No. 30); 15 U.S.C. § 78u-4(a)(3)(B)(i).

Third, Lead Counsel's "participation in the suit and their experience in complex securities class actions support a finding that they will adequately represent the interests of the Class." *Rougier*, 2019 WL 6111303, at *7.  The Court-appointed firm serving as Lead Counsel, BLB&G, is experienced in prosecuting class actions, having successfully prosecuted securities class actions in this District and throughout the country.  BLB&G is routinely appointed as class counsel in courts across the nation in securities class actions.  Lead Counsel's firm resume was previously submitted to the Court.  (ECF No. 28-7.)

The Settlement was reached only after Lead Counsel spent considerable time on this Action for the benefit of Six Flags investors.  Lead Counsel's work included: conducting an extensive investigation; drafting the detailed Complaint; opposing Defendants' motion to dismiss and motion for judgment on the pleadings; litigating two appeals; consulting with experts in damages, loss causation, Chinese project finance, theme park construction, and accounting; engaging in comprehensive fact discovery (including obtaining and reviewing approximately 180,000 pages of documents produced by Defendants, participating in numerous meet and confer sessions between the Parties, and serving subpoenas on third parties); preparing and exchanging mediation materials; and negotiating the settlement.  BLB&G's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.  Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### B.       The Settlement Satisfies the Requirements of Rule 23(b)

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  This Action satisfies these criteria.

### 1.       Questions Common to the Settlement Class Predominate Over Individual Questions

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  When common questions are a significant aspect of a case and may be resolved in a single action, class certification is appropriate.  *See* 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2024).  Indeed, the Supreme Court has noted that

predominance is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625. As the above analysis demonstrates, *infra* Section IV.A.2., at minimum, the core liability issues of Plaintiffs' Exchange Act claims—falsity, materiality, scienter, loss causation, and damages—are all common issues whose proof can be made on a classwide basis. Accordingly, classwide issues predominate over individual questions.

### 2.    A Class Action Is Superior to Other Available Means of Adjudication

In considering the "superiority" requirement under Rule 23(b)(3), courts analyze four factors: (a) the class members' interest in individually controlling their separate actions; (b) the extent and nature of existing litigation by class members concerning the same claims; (c) the desirability of concentrating the litigation in a particular forum; and (d) the likely difficulties of managing a class action. *See Vine v. PLS Fin. Servs., Inc*., 331 F.R.D. 325, 341 (E.D. Tex. 2019), *aff'd*, 807 F. App'x 320 (5th Cir. 2020).

Here, the Settlement Class Members' interests in individually adjudicating separate actions are minimal; Plaintiffs are not aware of any separate actions brought on an individual or group basis by Six Flags' shareholders; the Northern District of Texas, where the Company was based at the time the suit was initiated and where many witnesses still reside, is the appropriate forum for litigating this matter; and there are no issues in management of the class action and the Settlement. *See id.* (finding Rule 23(b)(3) satisfied where no "single member would pursue her own action"; "no other actions commenced by or against members of the class have been filed"; "each of the events in question occurred in Texas and Texas law applies, making this forum an appropriate forum for this dispute"; and the "case does not present especially troubling management or administration issues"). Thus, a class action is the superior method of adjudication here.

In sum, Plaintiffs submit that all the requirements of Rules 23(a) and (b)(3) have been satisfied, and therefore request that the Court preliminarily certify the Settlement Class for settlement purposes.

## V.   NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23 of the Federal Rules of Civil Procedure requires that notice of the pendency of a class action and class members' right to request exclusion should be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound by the [settlement]. FED. R. CIV. P. 23(e)(1)(B). "Under Rule 23(e), a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010). "Notice . . . therefore requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *Id*.

The proposed Notice advises Settlement Class Members of, *inter alia*: (i) the terms of the Settlement; (ii) the proposed Plan of Allocation; and (iii) information regarding Lead Counsel's forthcoming motion for an award of Attorneys' Fees and Litigation Expenses. The Notice also provides specific information regarding the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim Form; (ii) requesting exclusion from the Settlement; and (iii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and Litigation Expenses.[4]

---

[4] The content of the proposed Notice also meets the requirements of the PSLRA. In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, in the aggregate and on an average per-share basis; (ii) a statement of the potential outcome of the case; and (iii) a

As outlined in the proposed Preliminary Approval Order, the proposed Claims Administrator, JND Legal Administration ("JND"), under the direction of Lead Counsel, will notify Settlement Class Members of the Proposed Settlement.  JND was selected following a bidding process among three potential administrators.  JND provided competitive pricing and has significant experience in serving as the claims administrator in securities class actions.

JND will mail the Notice and Claim Form substantially in the forms of Exhibits A-1 (App. 63-85) and Exhibit A-2 (App. 87-96) to the Stipulation by First-Class U.S. mail to all potential Settlement Class Members who can be reasonably identified, including those identified by Six Flags and those identified by brokers and other nominee owners.  *See* Proposed Preliminary Approval Order ¶¶ 8(b), 9.  This direct notice will be supplemented by publication of the Summary Notice in both *The Wall Street Journal* and *PR Newswire*.  In addition, copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, will be posted on the Settlement website, www.SixFlagsSecuritiesLitigation.com, and on Lead Counsel's website.

Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement.  Plaintiffs respectfully submit the schedule set forth in Appendix A for the Court's consideration, as set forth in the proposed Preliminary Approval Order.  Plaintiffs request that the

---

brief statement that explains the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. § 78u-4(a)(7).

Settlement Hearing be scheduled for 90 days after entry of the Preliminary Approval Order, but no earlier than December 12, 2024.  Therefore, if the Court enters the Preliminary Approval Order on or before September 13, 2024, Plaintiffs request that the hearing be scheduled for December 12, 2024 (or at the Court's earliest convenience thereafter).  The Court only needs to select the Settlement Hearing date; all other dates will flow from the date of entry of the Preliminary Approval Order or the date selected for the Settlement Hearing.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith which will: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Settlement Class Members; and (iii) set a date and time for the Settlement Hearing to consider final approval of the Settlement.

DATED:  September 3, 2024                          Respectfully submitted,

/s/ John Rizio-Hamilton
**BERNSTEIN LITOWITZ BERGER &**
**GROSSMANN LLP**
John Rizio-Hamilton*
Katherine M. Sinderson*
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
johnr@blbglaw.com
katiem@blbglaw.com
jesse.jensen@blbglaw.com
john.esmay@blbglaw.com
brandon.slotkin@blbglaw.com

*Counsel for Plaintiff Key West and Lead Counsel for Lead Plaintiff Oklahoma Firefighters and the Settlement Class*

*\* pro hac vice*

25

**THE LAW OFFICE OF JASON NASH, P.L.L.C.**
Jason C. Nash, Texas Bar No. 24032894
601 Jameson Street
Weatherford, TX 76086
Tel: 817 757-7062
jnash@jasonnashlaw.com

*Local Counsel for Plaintiff Key West and Lead Plaintiff Oklahoma Firefighters*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert Klausner, Texas Bar No. 24117265
Stuart A. Kaufman*
7080 NW 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel for Plaintiff Key West*

*\* pro hac vice*

**Appendix A**

| Event | Deadline | Example Dates* |
|---|---|---|
| Commence mailing of Notice and Claim Form and establish Settlement Website | 10 business days after entry of Preliminary Approval Order ("Notice Date") | September 20, 2024 |
| Publish Summary Notice | 10 business days after Notice Date | October 4, 2024 |
| Plaintiffs to file motion for final approval of the Settlement and Lead Counsel to file motion for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing | November 7, 2024 |
| Deadline to request exclusion from the Settlement Class or to submit objections | 21 calendar days prior to Settlement Hearing | November 21, 2024 |
| Plaintiffs and Lead Counsel to file reply papers | 7 calendar days prior to Settlement Hearing | December 5, 2024 |
| Settlement Hearing | At the Court's earliest convenience at least 90 days after entry of the Preliminary Approval Order, but no earlier than December 12, 2024 | December 12, 2024 |
| Deadline to Submit Proofs of Claim Forms | 120 days after Notice Date | January 18, 2025 |

* The example dates provided assume, for illustration purposes, that the Preliminary Approval Order is entered on September 6, 2024, and that the Court sets the Settlement Hearing for December 12, 2024.

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with Scott D. Musoff and Mark Foster of Skadden, Arps, Slate, Meagher & Flom LLP, as well as Ralph Duggins of Cantey Hanger LLP, counsel for Defendants, on September 3, 2024.  Defendants confirmed they do not oppose this motion, which is submitted in accordance with the Parties' Stipulation and Agreement of Settlement.  Because the motion is unopposed, Plaintiff will not submit a separate brief in support of the motion.

*/s/ John Rizio-Hamilton*
John J. Rizio-Hamilton


## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024, I electronically filed the foregoing document and its exhibits by using the court's CM/ECF system.  Per agreement among the parties, all parties will be served by the CM/ECF system.

*/s/ John Rizio-Hamilton*
John J. Rizio-Hamilton