## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., | Civil Action No. 4:20-cv-00201-P |
| Plaintiffs | |
| v. | <u>CLASS ACTION</u> |
| SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., | |
| Defendants. | |

## LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

MOTION.................................................................................................................................... 1

BRIEF IN SUPPORT ............................................................................................................... 1

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE........... 3

     A.     Counsel Is Entitled to a Reasonable Fee Award from the Common Fund ............. 3

     B.     The Requested Fee Is Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method .................................................................... 4

          1.     The Fee Request Is Reasonable Under the Percentage Method ................. 4

          2.     The Fee Request Is Reasonable Under the Lodestar Method .................... 7

     C.     The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable........... 15

          1.     The Time and Labor Expended................................................................. 16

          2.     The Novelty and Difficulty of the Issues................................................. 17

          3.     The Amount Involved and the Results Achieved ..................................... 19

          4.     The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys............................... 20

          5.     The Preclusion of Other Employment ..................................................... 21

          6.     The Customary Fee and Awards in Similar Cases................................... 21

          7.     The Contingent Nature of the Fee............................................................ 21

          8.     The Undesirability of the Case ................................................................ 22

          9.     Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable...................................................................... 22

               a.     Public Policy Considerations Support the Requested Fee ........... 22

               b.     Plaintiffs Have Approved the Requested Fee .............................. 23

        c.    The Settlement Class's Reaction to Date.......................................... 23

III.    LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE......................... 23

IV.    CONCLUSION............................................................................................................ 24

## **TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*,
   2021 WL 6428370 (N.D. Tex. Dec. 17, 2021) ........................................................13

*In re Apache Corp. Sec. Litig.*,
   2024 WL 4881432 (S.D. Tex. Nov. 25, 2024) ...................................................5, 6

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) ............................................................................3

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)...........................................................................................22

*Berger v. Compaq Computer Corp.*,
   Civ. A. No. 98-1148, slip op. (S.D. Tex. Nov. 22, 2002), ECF No. 148...................................7

*Billitteri v. Securities Am. Inc.*,
   2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)................................................. *passim*

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)....................................................20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................................................3

*Buettgen v. Harless*,
   2013 WL 12303194 (N.D. Tex. Nov. 13, 2013).....................................................7

*Burford v. Cargill, Inc.*,
   2012 WL 5471985 (W.D. La. Nov. 8, 2012)....................................................7, 21

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ......................................................9

*Celeste v. Intrusion, Inc.*,
   2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)..............................................13, 14

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................21

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965696 (W.D. La. Mar. 3, 2015) .........................................................14

*City of Pontiac Gen. Emps.'Ret. Sys. v. Dell Inc.*,
2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ............................................................6

*In re Corsicana Bedding, LLC*,
Case No. 22-90016-ELM-11, First and Final Application of Pachulski Stang
Ziehl & Jones LLP (Bankr. N.D. Tex. Nov. 23, 2022), ECF No. 509 ...................10

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................8, 14

*Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*,
2021 WL 118288 (N.D. Tex. Jan. 12, 2021) ....................................................6, 10

*Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*,
Civil Action No. 3:15-cv-02129-K, Appendix (N.D. Tex. Dec. 8, 2020), ECF
No. 256.....................................................................................................10

*Di Giacomo v. Plains All Am. Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)....................................................7

*Doyle v. Reata Pharms., Inc.*,
Case No. 4:21-cv-00987, slip op. (E.D. Tex. Mar 29, 2024), ECF No. 84 ..............6

*In re Eiger Biopharms*, Case No. 24-80040 (SGJ), First Interim and Final Fee
Application of Sidley Austin LLP (N.D. Tex. Sept. 27, 2024), ECF No. 681 ........11

*In re Endo Int'l, plc*,
Case No. 22-22549 (JLG), Fifth Interim and Final Fee Application of
Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. May 23,
2024), ECF No. 4312 .................................................................................12

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
2019 WL 7879735 (N.D. Tex. Feb. 27, 2019)....................................................14

*Faircloth v. Certified Fin. Inc.*,
2001 WL 527489 (E.D. La. May 16, 2001)........................................................23

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013) .....................................................................20

*Glock v. FTS Int'l, Inc.*,
2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ...............................................15, 22

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000).............................................................................4

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................................12

*Jenkins v. Trustmark Nat'l Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) ..............................................................4, 6, 22

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................................15, 17, 20, 21

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. Apr. 9, 2010) ..........................................8, 13, 15

*Leroy v. City of Houston*,
    831 F.2d 576 (5th Cir. 1987) ....................................................................10

*Marcus v. J.C. Penney Co., Inc.*,
    2018 WL 11275437 (E.D. Tex. Jan. 5, 2018) ...............................................6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)....................................................................................10

*In re Nat'l Rifle Ass'n*,
    Case No. 21-30085 (HDH), Debtors' Authorizing the Retention and
    Employment of Kirkland & Ellis LLP (Bankr. N.D. Tex. Feb. 17, 2021), ECF
    No. 173....................................................................................................12

*In re OCA, Inc. Sec. & Derivative Litig.*,
    2009 WL 512081 (E.D. La. Mar. 2, 2009) ...............................................17

*In re Oil Spill*,
    2016 WL 6215974 (E.D. La. Oct. 25, 2016) ...........................................14

*Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
    Case No. 4:17-CV-0449-ALM, slip op. (E.D. Tex. May 20, 2020), ECF No.
    289...................................................................................................6, 12

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
    2015 WL 5021954 (S.D. Tex. Aug. 24, 2015) .......................................14

*In re PETCO Corp. Sec. Litig.*,
    2008 WL 11508458 (S.D. Cal. Sept. 2, 2008).........................................9

*Phillips v. Triad Guar. Inc.*,
    2016 WL 2636289 (M.D.N.C. May 9, 2016) .........................................9

*Prause v. TechnipFMC PLC*,
    2021 WL 6053219 (S.D. Tex. Mar. 23, 2021)..............................6, 16, 22

*Roussel v. Brinker Int'l, Inc.*,
  2010 WL 1881898 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th
  Cir. 2011) ..................................................................................................................19

*Ryan v. Flowserve Corp.*,
  No. 3:03-CV-01769-B, slip op. (N.D. Tex. May 11, 2010), ECF No. 954 .............................7

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................................. *passim*

*SEC v. Stanford Int'l Bank, Ltd.*,
  2020 WL 13281406 (N.D. Tex. Feb. 25, 2020) ...................................................................5, 6

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................................6, 21

*In re SolarWinds Sec. Litig.*,
  Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 ...............6, 11

*Tellabs, Inc. v. Makor Issues & Rs., Ltd.*,
  551 U.S. 308 (2007) ...............................................................................................................4

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...........................................................6, 14, 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...................................................................................... *passim*

*In re Venator Materials PLC Sec. Litig.*,
  No. 4:19-cv-03464 (S.D. Tex. Sept. 15, 2022), ECF No. 129 ...............................................11

*In re Vioxx Prod. Liab. Litig.*,
  2013 WL 5295707 (E.D. La. Sept. 18, 2013) ......................................................................14

*In re Vista Proppants and Logistics, LLC*,
  Case No. 20-42002-ELM-11, First and Final Application of Haynes & Boone,
  LLP (Bankr. N.D. Tex. Nov. 20, 2020), ECF No. 767 ..........................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .....................................................................................................4

*In re Whitestone Industrial-Office, LLC*,
  Case No. 24-30653-MVL-11, First and Final Application for Payment of Fees
  and Expenses of Holland & Knight, LLP (N.D. Tex. Nov. 15, 2024), ECF No.
  378.........................................................................................................................................11

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................................................................8

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ..........................................................................9

*In re Yuma Energy Inc.*,
    Case No. 20-41455-MXM, First and Final Application of Locke Lord LLP
    (Bankr. N.D. Tex. Mar. 12, 2021), ECF No. 432 ...................................................................11

## STATUTES AND RULES

15 U.S.C. § 78u-4(a)(6) ..........................................................................................................5

Fed. R. Civ. P. 23(h) ...............................................................................................................1

## OTHER AUTHORITIES

NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION
    LITIGATION: 2023 FULL-YEAR REVIEW (2024) ........................................................................7

## MOTION

Pursuant to Federal Rule of Civil Procedure 23(h), Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), on behalf of itself and Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"), additional counsel for Named Plaintiff Key West Police & Fire Pension Fund ("Key West"), hereby respectfully moves for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund; and (ii) payment of litigation expenses in the amount of $500,558.88 incurred in litigating and resolving the Action.[1]   A proposed Order Awarding Attorneys' Fees and Litigation Expenses is submitted with this Motion. If necessary, an updated version will be submitted with the reply papers, following the objection deadline.

## BRIEF IN SUPPORT

## I.    PRELIMINARY STATEMENT

After more than four years of hard-fought litigation, Lead Counsel has successfully achieved a settlement of this securities class action that is favorable for the Settlement Class.  The proposed Settlement, if approved by the Court, will resolve the Action in exchange for $40,000,000 in cash.  As discussed in the accompanying Final Approval Motion and Rizio-Hamilton Declaration, the Settlement is a favorable result for the Settlement Class in light of the litigation risks that Plaintiffs faced in this Action.  Counsel devoted substantial time, effort, and

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 3, 2024 (ECF No. 145) (the "Stipulation") or in the Declaration of John Rizio-Hamilton in Support of: (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Rizio-Hamilton Declaration" or "Rizio-Hamilton Decl."), filed in the accompanying Appendix (App. 4-48).  Citations to "¶ __" refer to paragraphs in the Rizio-Hamilton Declaration; citations to "Ex. __" refer to exhibits to the Rizio-Hamilton Declaration; and citations to "App. __" are to pages in the Appendix.

resources on a purely contingency-fee basis advancing the interests of the Settlement Class Members in order to obtain this result.

As detailed in the Rizio-Hamilton Declaration, the $40 million Settlement was achieved as the result of Lead Counsel's extensive litigation efforts. These efforts included (i) conducting an investigation of the claims at issue, including a comprehensive review of public SEC filings, conference calls, analyst reports, and news articles; (ii) interviewing over 50 potential witnesses; (iii) preparing a detailed 114-page consolidated complaint based on this investigation; (iv) litigating several rounds of motions at the pleading stage—including Defendants' motion to dismiss the consolidated complaint and Defendants' motion for judgment on the pleadings, as well as Key West's motion to intervene; (v) prosecuting two appeals to the Fifth Circuit from the Court's dismissals of the Action at the pleading stage; (vi) engaging in substantial fact discovery efforts, including document requests, interrogatories, and document subpoenas to 14 third parties; (vii) analyzing a large number of documents produced by Defendants; and (viii) consulting extensively with experts in financial economics, accounting, and theme-park construction. ¶¶ 3, 17-55. Lead Counsel also engaged in settlement negotiations, which included preparing and exchanging mediations statements, and preparing final settlement papers. ¶¶ 56-61.

As compensation for these efforts and their commitment to bringing the Action to a successful conclusion for Settlement Class Members, Lead Counsel, on behalf of itself and Klausner Kaufman, requests a fee of 25% of the Settlement Fund or $10 million, plus interest accrued at the same rate as the Settlement Fund. An attorneys' fee request of 25% of the recovery is consistent with attorney fee awards commonly requested and approved in similar class actions in this District and Circuit. As courts have explained, "the customary fee awarded in securities cases in this District and across the country is 30% or more" and the "vast majority of Texas federal

courts and courts in this District have awarded fees of 25%–33% in securities class actions." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*31 (N.D. Tex. Nov. 8, 2005).

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") and Key West support the requested fees and expenses. The reaction of the Settlement Class to date also supports the requested fees and expenses. Pursuant to the Court's Preliminary Approval Order, a total of 96,288 copies of the Notice have been mailed to potential Settlement Class Members and nominees through December 19, 2024, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (Ex. 2) ("Segura Decl.") (App. 79-84), at ¶¶ 3-12. The Notice advised potential Settlement Class Members that Lead Counsel would seek fees in an amount up to 25% of the Settlement Fund and Litigation Expenses in an amount not to exceed $650,000. *See* Notice ¶¶ 5, 52 (App. 87, 97). Although the deadline for Settlement Class Members to object to the requested fees and expenses has not yet passed, to date, there have been no objections to the fee or expense amounts set forth in the Notice. ¶¶ 119, 127.

For all of these reasons and those set forth below, Lead Counsel respectfully requests that the Court approve the motion for attorneys' fees and litigation expenses.

## II.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE

### A.    Counsel Is Entitled to a Reasonable Fee Award from the Common Fund

The Supreme Court and the Fifth Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). Awards of fair attorneys'

fees from a common fund serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

In addition, awards of attorneys' fees from a common fund ensure that "competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). The Supreme Court has stated that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the Securities and Exchange Commission. *Tellabs, Inc. v. Makor Issues & Rs., Ltd.*, 551 U.S. 308, 313 (2007).

**B.    The Requested Fee Is Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method**

In this Circuit, fees awarded to counsel from a common fund may be evaluated under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("*Dell*"). Lead Counsel respectfully submit that the 25% fee request is fair and reasonable under either method and warrants approval by the Court.

**1.    The Fee Request Is Reasonable Under the Percentage Method**

The Fifth Circuit has approved the percentage method for awarding fees, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

Both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the preferred method of many courts when there is a common fund settlement. *See Dell*, 669 F.3d at 643; *SEC v. Stanford Int'l Bank, Ltd.*, 2020 WL 13281406, at *2 (N.D. Tex. Feb. 25, 2020); *Schwartz*, 2005 WL 3148350, at *25. In *Schwartz*, the court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. Courts have also observed that—because the lodestar method is calculated based on the number of attorney-hours spent on the case—it can deter the early settlement of disputes. *See Stanford*, 2020 WL 13281406, at *2; *Schwartz*, 2005 WL 3148350, at *25. For these reasons, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Schwartz*, 2005 WL 3148350, at *26.

The use of the percentage-of-recovery method also comports with the language of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added); *see also Dell*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

Lead Counsel's 25% fee request is well within the range of percentage fees awarded in the Fifth Circuit in comparable cases. *See In re Apache Corp. Sec. Litig.*, 2024 WL 4881432, at *7 (S.D. Tex. Nov. 25, 2024) (reviewing cases and selecting 25% as "benchmark" percentage for $65 million settlement of a securities class action); *Schwartz*, 2005 WL 3148350, at *27 ("courts

throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third").

A review of percentage attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit supports the reasonableness of the 25% fee request. *See, e.g., Apache*, 2024 WL 4881432, at *7 (awarding 25% of $65 million settlement); *Doyle v. Reata Pharms., Inc.*, Case No. 4:21-cv-00987, slip op. at 2 (E.D. Tex. Mar 29, 2024), ECF No. 84 (Ex. 4A, App. 185) (awarding 30% of $45 million settlement, net of expenses, representing a 2.24 multiplier); *In re SolarWinds Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. at 2 (W.D. Tex. July 28, 2023), ECF No. 111 (Ex. 4B, App. 190) (awarding 25% of $26 million settlement, 1.9 multiplier); *Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*, 2021 WL 118288, at *1 (N.D. Tex. Jan. 12, 2021) (awarding 30% of $47 million settlement); *Prause v. TechnipFMC PLC*, 2021 WL 6053219, at *1-2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, Case No. 4:17-CV-0449-ALM, slip op. at 2 (E.D. Tex. May 20, 2020), ECF No. 289 (Ex. 4C, App. 195-196) (awarding 25% of $44 million settlement); *Stanford*, 2020 WL 13281406, at *2 (awarding 25% of $65 million recovery); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2020 WL 218518, at *1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Marcus v. J.C. Penney Co., Inc.*, 2018 WL 11275437, at *1 (E.D. Tex. Jan. 5, 2018) (awarding 30% of $97.5 million settlement, 3.2 multiplier); *The Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *14 (N.D. Tex.

Apr. 25, 2018) (awarding 33.3% of $100 million settlement); *Buettgen v. Harless*, 2013 WL 12303194, at *1 (N.D. Tex. Nov. 13, 2013) (awarding 30% of $33.75 million settlement); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement); *Billitteri v. Securities Am. Inc.*, 2011 WL 3585983, at *4, *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement, 1.97 multiplier); *Ryan v. Flowserve Corp.*, No. 3:03-CV-01769-B, slip op. at 1 (N.D. Tex. May 11, 2010), ECF No. 954 (Ex. 4D, App. 200) (awarding 25% of $55 million settlement); *Berger v. Compaq Computer Corp.*, Civil Action No. 98-1148, slip op. at 2 (S.D. Tex. Nov. 22, 2002), ECF No. 148 (Ex. 4E, App. 204) (awarding 30% of $28.7 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *8, *13 (S.D. Tex. Dec. 19, 2001) (awarding 30% of combined $29.5 million funds, 5.3 multiplier).

Moreover, a statistical review of all PSLRA settlements from 2014 to 2023 reveals that the 25% was the median fee award across all settlements ranging in size from $25 million to $100 million. *See* NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2023 FULL-YEAR REVIEW, at 29 (2024) (Ex. 4F, App. 239).

### 2. The Fee Request Is Reasonable Under the Lodestar Method

Lead Counsel's fee request is also reasonable when considering counsel's "lodestar." In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of Lead Counsel's fee request.

When utilizing the lodestar method "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43. In securities class actions and other cases with substantial contingency risks, fees representing positive multipliers of the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g.*,

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.").

Through December 13, 2024, Lead Counsel and Klausner Kaufman collectively spent over 7,767,20 hours of attorney and other professional support time prosecuting the Action on behalf of the Settlement Class. ¶ 112. Counsel's collective lodestar is $5,140,933.75. *Id.*; *see also* Exs. 3A & 3B. This lodestar is a function of the vigorous prosecution of the case for over four years, as described in the Rizio-Hamilton Declaration. Counsel's work included the investigation, preparation of a detailed consolidated Complaint, full briefing of extensive pleading motions, two appeals to the Fifth Circuit, substantial discovery, work with multiple experts, and extensive settlement negotiations. The 25% fee request represents a multiplier of approximately 1.9 on the lodestar value of counsel's time at their normal hourly rates—which is well within the normal range of multipliers approved in securities class actions. *See, e.g.*, *Billitteri*, 2011 WL 3585983, at *4, *9 (awarding 25% of $80 million settlement with a 1.97 multiplier); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 681 (N.D. Tex. Apr. 9, 2010) (finding 30% fee request, which equated to a 2.5 multiplier, reasonable).

Further, should the Court approve the Settlement, Lead Counsel will continue to perform legal work on behalf of the Settlement Class. Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and related inquires and working with the Claims Administrator, JND Legal Administration ("JND"), to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort

already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

Lead Counsel's lodestar does not include any of the significant time devoted to this Action by Lead Counsel's secretarial and administrative staff, document clerks, copy room clerks, and IT staff, who performed clerical, administrative, or support roles.  A small percentage of Lead Counsel lodestar (8%) is comprised of time extended by Lead Counsel's in-house professionals other than attorneys and paralegals, such as investigators and financial analysts, who have been included in the lodestar on an hourly basis based on the meaningful work they dedicated to this case.  Courts have approved the inclusion of investigators and financial analysts (and other similar professionals doing non-clerical work) in class counsel's lodestar in securities class actions and other similar cases.  *See, e.g., Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *5 (S.D.N.Y. Aug. 18, 2017) (approving fee based on lodestar that included time for "financial and economic analysts, investigators, [and] paralegals"); *Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *5 (M.D.N.C. May 9, 2016) (approving fee based on lodestar that included time for "economic analysts, a research analyst, [and] an investigator"); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *10 (N.D. Cal. Nov. 20, 2015) (including hours from "Forensic Accountants" and "Economic Analysts" in lodestar analysis); *In re PETCO Corp. Sec. Litig.*, 2008 WL 11508458, at *4 (S.D. Cal. Sept. 2, 2008) (approving fee based on lodestar that included time for "investigators").

The rates used to calculate counsel's lodestar, which are their current standard hourly rates, are also reasonable.[2]  The hourly rates for Lead Counsel range from $850 to $1,250 for partners,

---

[2] The use of current hourly rates to calculate the lodestar figure as a means of compensating for the delay in receiving payment has been approved by the U.S. Supreme Court and the Fifth Circuit.

$875 for senior counsel; $475 to $550 for associates, $395 to $450 for staff attorneys; and from $325 to $425 for paralegals and case managers. *See* Ex. 3A-1 (App. 135-136). The rate for the partners at Klausner Kaufman who worked on the case was $750 per hour. *See* Ex. 3B-1 (App. 175). The blended hourly rate for all timekeepers in the application is $662. Lead Counsel believes that its standard rates, while above the average attorney rates charged in the Fort Worth Division, are within the range of reasonable fees for attorneys working in the specialized area of securities class action litigation in this District, including in the Fort Worth Division. For example, in *Deka Investment*, 2021 WL 118288, at *1, a Court in this District approved fees in a securities class action more than three years ago where class counsel's rates that made up the lodestar were comparable to Lead Counsel's here, ranging from $800 to $1,200 for partners; $575 to $1,080 for of counsel or senior counsel; and $425 to $525 for associates admitted to the bar. *See Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*, Civil Action No. 3:15-cv-02129-K, Appendix at 46, 209 (N.D. Tex. Dec. 8, 2020), ECF No. 256 (Ex. 4G, App. 251, 258).

Rates submitted in recent bankruptcy cases in this District and Division also support the reasonableness of counsel's rates. *See, e.g., In re Corsicana Bedding, LLC*, Case No. 22-90016-ELM-11, First and Final Application of Pachulski Stang Ziehl & Jones LLP (Bankr. N.D. Tex. Nov. 23, 2022), ECF No. 509 (Ex. 4H, App. 262) (in a 2022 fee application in bankruptcy case in Fort Worth Division, hourly rates for counsel for creditors ranged from $1,195 to $1,525 for partners; $995 to $1,425 for counsel; $825 for an associate; and $495 for paralegals); *In re Corsicana Bedding, LLC*, Case No. 22-90016-ELM-11, First and Final Application of Hayes & Boone, L.L.P. (Bankr. N.D. Tex. Nov. 23, 2022), ECF No. 504 (Ex. 4I, App. 268) (in a 2022 fee

---

*See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment").

application in bankruptcy case in Fort Worth Division, hourly rates for debtor's counsel Hayes & Boone, based in Fort Worth, ranged from $740 to $1,150 for partners; $950 for counsel; $525 to $800 for associates; and $325 to $450 for paralegals); *In re Yuma Energy Inc.,* Case No. 20-41455-MXM, First and Final Application of Locke Lord LLP (Bankr. N.D. Tex. Mar. 12, 2021), ECF No. 432 (Ex. 4J, App. 272) (in 2021 fee application in bankruptcy case in Fort Worth Division, hourly rates for counsel for creditors ranged from $650 to $1,040 for partners; $745 for senior counsel; and $405 to $645 for associates); *In re Vista Proppants and Logistics, LLC*, Case No. 20-42002-ELM-11, First and Final Application of Haynes & Boone, LLP (Bankr. N.D. Tex. Nov. 20, 2020), ECF No. 767 (Ex. 4K, App. 276-277) (in 2020 fee application for Hayes & Boone in the Fort Worth Division, its rates ranged from $700 to $1,200 for partners; $650 to $900 for counsel; and $380 to $675 for associates); *see also In re Eiger Biopharms*, Case No. 24-80040 (SGJ), First Interim and Final Fee Application of Sidley Austin LLP (N.D. Tex. Sept. 27, 2024), ECF No. 681 (Ex. 4L, App. 282-284) (reporting 2024 partner rates ranging from $1,525 to $2,125; associate rates from $760 to $1,390; and paralegal rates from $335 to $590, with a blended rate for all timekeepers of $1,165); *In re Whitestone Industrial-Office, LLC*, Case No. 24-30653-MVL-11, First and Final Application for Payment of Fees and Expenses of Holland & Knight, LLP (N.D. Tex. Nov. 15, 2024), ECF No. 378 (Ex. 4M, App. 288-289) (reporting 2024 partner rates ranging from $900 to $1,800 and associate rates from $625 to $855, with a blended rate for all timekeepers of $860).

Moreover, Lead Counsel's hourly rates have been approved for use in the lodestar cross-check in numerous cases throughout the country, including cases in recent years in this Circuit. *See, e.g.*, *In re SolarWinds Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 (Ex. 4B, App. 189-192); *In re Venator Materials PLC Sec. Litig.*, No. 4:19-

cv-03464, slip op. (S.D. Tex. Sept. 15, 2022), ECF No. 129 (Ex. 4N, App. 291-295); *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, Case No. 4:17-CV-0449-ALM, slip op. (E.D. Tex. May 20, 2020), ECF No. 289 (Ex. 4C, App. 194-197).

The reasonableness of Lead Counsel's rates is further supported by the significantly higher rates charged by defense counsel as reflected in publicly available filings in bankruptcy matters. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving as reasonable hourly rates in securities action that were "comparable to . . . defense-side law firms litigating matters of similar magnitude"). Defendants' principal counsel in this Action have been Skadden, Arps, Slate, Meagher, and Flom LLP and Kirkland & Ellis LLP. According to a recent filing by Skadden, its partners' hourly rates range from $1,395 to $2,133; counsel and of counsel rates range from $1,268 to $1,674; rates for associates admitted to the bar range from $596 to $1,359; and paraprofessional rates range from $263 to $621. *See In re Endo Int'l, plc*, Case No. 22-22549 (JLG), Fifth Interim and Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. May 23, 2024), ECF No. 4312 (Ex. 4O, App. 306-311). Rates for Kirkland & Ellis submitted in an application for employment in the Northern District of Texas more than three years ago ranged from $1,085 to $1,895 for partners; $625 to $1,895 for counsel; $625 to $1,195 for associates; and $255 to $475 for paraprofessionals. *See In re Nat'l Rifle Ass'n*, Case No. 21-30085 (HDH), Debtors' Authorizing the Retention and Employment of Kirkland & Ellis LLP (Bankr. N.D. Tex. Feb. 17, 2021), ECF No. 173 (Ex. 4P, App. 319). Defendants' Counsel's rates appear to be substantially higher—at all levels—than the rates of Lead Counsel and Klausner Kaufman.

To be sure, there are many highly skilled attorneys in the Fort Worth Division with hourly rates that are below Lead Counsel's and Defendants' Counsel. Lead Counsel respectfully submit

that the most relevant comparators for rates are firms doing most similar work, such as the firms in *Deka Investment*, or firms that are litigating directly against Lead Counsel such as Skadden and Kirkland. However, for purposes of the lodestar cross-check here, even if Lead Counsel's rates were adjusted downward, the 25% fee requested would still produce a lodestar multiplier that is within the reasonable range.

For example, if counsel's rates were reduced across the board by 20%, the blended hourly rate for all timekeepers would be $529.50, and the adjusted lodestar multiplier would be 2.4. These adjusted rates would fall within the central part of the bell curve of rates in the District and Division. *See, e.g.*, https://www.legal.io/pricing-tool/hourly-rates/fort-worth/business-and-corporate-law (average hourly rate for lawyers specializing in "Business & Corporate Law" in Fort Worth is $590 per hour); https://www.legal.io/pricing-tool/hourly-rates/fort-worth/litigation-law (average hourly rate for lawyers specializing in "Litigation" in Fort Worth, regardless of specialty, is $433 per hour); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding attorneys' rates ranging from $537 to $862 per hour were reasonable rates in ERISA action); *Billitteri*, 2011 WL 3585983, at *10 (finding more than 13 years ago, that $487.63 blended hourly rate in securities class was "reasonable for purposes of the lodestar calculation").

The alternate lodestar multiplier of 2.4 would be appropriate here given the reasonableness of the 25% fee request on a percentage basis and the significant risks of non-recovery that counsel faced in prosecuting this Action. *See Celeste v. Intrusion, Inc.*, 2022 WL 17736350, at *14 (E.D. Tex. Dec. 16, 2022) ("When a lodestar cross-check is applied to a class-action fee award in a common fund case, courts frequently use a multiplier ranging from one to four…;" and awarding fee representing a 2.32 multiplier); *Klein*, 705 F. Supp. 2d at 681 (finding 30% fee request, which

13

equated to a 2.5 multiplier, reasonable); *Evans on behalf of United Dev. Funding IV v. Greenlaw*, 2019 WL 7879735, at *3-4 (N.D. Tex. Feb. 27, 2019) (awarding 3.06 multiplier in securities class action and noting "other common fund securities cases where the fees awarded were similar multipliers"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *10 (W.D. La. Mar. 3, 2015) (finding that "[m]ultipliers ranging from one to four frequently are awarded in common fund cases" and "[a] large common fund award may warrant an even larger multiplier"); *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5021954, at *13-14 (S.D. Tex. Aug. 24, 2015) (awarding 3.0 multiplier); *DeHoyos*, 240 F.R.D. at 333 ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.")

"[D]istrict courts in [the Fifth Circuit] regularly use the percentage method blended with a *Johnson* reasonableness check." *Dell*, 669 F.3d at 643. When used as a cross-check on the percentage award, the analysis does not entail the same level of detailed analysis of the lodestar as when the lodestar method is used directly, as under a fee-shifting statute. *See Celeste*, 2022 WL 17736350, at *14 (where "the Court is employing the lodestar method only as a rough cross-check to confirm the reasonableness of the percentage award" reviewing a summary of counsel's lodestar is sufficient); *Halliburton*, 2018 WL 1942227, at *9 ("courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records").

The lodestar cross-check is applied "to avoid windfall fees, i.e., to 'ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012); *see also Halliburton*, 2018 WL 1942227, at *9; *In re Oil Spill*, 2016 WL 6215974, at *19 (E.D. La. Oct. 25, 2016) ("[T]he loadstar [sic] cross-check is a streamlined process, avoiding the detailed analysis that goes into a traditional lodestar examination."); *In re*

*Vioxx Prod. Liab. Litig.*, 2013 WL 5295707, at *3 (E.D. La. Sept. 18, 2013) ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method").

In sum, whether calculated utilizing the percentage-of-recovery method or based on the lodestar/multiplier method, the requested 25% fee is reasonable and well within the range of fees awarded by courts in these actions.

### C.    The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*") also confirms that a 25% fee award is fair and reasonable in this case. The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[3]

*Id.*; *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri*, 2011 WL 3586217, at *3 (same). In addition, courts may consider other factors, such as (i) public policy considerations, (ii) the class representative's approval of the fee request, and (iii) the reaction of the class. *See, e.g.*, *Glock v. FTS Int'l, Inc.*, 2021 WL 1422714, at *1-2 (S.D. Tex. Apr. 13, 2021);

---

[3] Two of the *Johnson* factors—the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client"—are not relevant in this case. *See Klein*, 705 F. Supp. 2d at 676 ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

*Prause*, 2021 WL 6053219, at *2.   Consideration of these factors here provides further

confirmation that the fee requested is reasonable.

### 1.    The Time and Labor Expended

The substantial time and effort expended by Lead Counsel in prosecuting this Action and

achieving the Settlement supports the requested fee.  Over the last four years, Lead Counsel, among

other things:

- conducted a factual investigation into the Settlement Class's claims, which included interviews of over 50 potential witnesses and a thorough review of Six Flags' SEC filings, analyst reports, call transcripts, and news articles (¶¶ 20-22);

- drafted a 114-page Consolidated Complaint based on Lead Counsel's investigation (¶ 23);

- opposed Defendants' motion to dismiss the Consolidated Complaint and Defendants' motion for judgment on the pleadings and litigated other pleading stage motions, such as motions to amend the complaint and Key West's motion to intervene (¶¶ 24-29, 39-45);

- successfully prosecuted two appeals to the Fifth Circuit through briefing and oral argument that ultimately allowed the bulk of Plaintiffs' claims to be sustained at the pleading stage (¶¶ 30-34, 46-48);

- engaged in substantial document discovery, which included preparing and serving requests for documents and interrogatories, directing document subpoenas to 14 non-parties, and the searching and analysis of more than 180,000 pages of documents produced (¶¶ 37-38, 51-52);

- consulted with experts across a variety of disciplines, including financial economics, accounting, and the theme-park industry (¶¶ 54-55);

- engaged in arm's-length settlement negotiations, including preparation of detailed mediation statements (¶¶ 56-58); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related Settlement documents (¶¶ 59-61).

As noted above, Lead Counsel and Klausner Kaufman expended over 7,700 hours prosecuting this Action, with a lodestar value of approximately $5.14 million.  ¶¶ 112.  This time and effort were critical in obtaining the favorable result represented by the Settlement.

### 2.    The Novelty and Difficulty of the Issues

The difficulty of questions presented by the litigation may also be considered in determining the reasonableness of a requested fee.  *See Johnson*, 488 F.2d at 718.  Courts have long recognized that securities class actions are complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult."  *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009); s*ee also Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain.").

This case was no exception.  From the outset of this case, Plaintiffs faced substantial challenges to establishing Defendants' liability, which were starkly illustrated by the Court's dismissal of all claims in the Action following Defendants' motion to dismiss and again following the motion for judgment on the pleadings.

Even after the appeals, Plaintiffs still faced a number of challenges to establishing liability and damages at trial.  First, to prevail on its claims, Plaintiffs would need to convince the trier-of-fact on a full discovery record that the challenged statements were materially false or misleading.  ¶¶ 69-72.  Plaintiffs anticipate that Defendants would contend, pointing to internal documents and testimony, that Riverside had continued to pay Six Flags and its vendors during the time period at issue, and that Defendants' statements about progress of the China Parks and the timeline for opening of the China Parks were based on best information that Defendants had at the time.  ¶¶ 70-71.  Defendants would argue that they had no obligation to disclose Riverside's financial difficulties to investors until the end of the Class Period, when Six Flags decided to terminate its

agreements with Riverside, and that any alleged misstatements concerning the timelines for opening of the China Parks were protected forward-looking statements. *Id*. Finally, with respect to the alleged misstatements concerning revenue recognition, Plaintiffs expected that Defendants would argue that their revenue recognition was appropriate under the relevant accounting standards and had been approved by Six Flag's auditor, KPMG. ¶ 72. There was no certainty that Plaintiffs would have succeeded at summary judgment or before a jury at trial.

Second, the Action also presented risks in proving that Defendants acted with scienter, *i.e.*, intentionally or with severe recklessness. ¶¶ 74-77. To prevail at summary judgment and trial, Plaintiffs would need to overcome Defendants' arguments that they genuinely believed their statements were true and that they had no motive to engage in the alleged conduct. Defendants were expected to argue that they honestly believed all of their statements regarding the progress of, and timeline for, opening the China Parks, and that they updated investors when they became aware of developments that would delay the China Parks. ¶ 75. Defendants would argue that these disclosures and other cautionary statements showed that Defendants were making their best efforts to keep investors updated on the evolving progress of the China Parks. *Id*. If the case had proceeded, Plaintiffs would have sought to marshal evidence showing that Defendants knew that the delays were more significant than what was disclosed to investors—and were known by Defendants earlier than their disclosures. But there was no certainty that Plaintiffs would succeed in doing so. *Id*. Defendants would also contend KPMG approved of the Company's handling of revenue recognition as further evidence that Defendants honestly believed that their statements about revenue were accurate. ¶ 76.

Moreover, Defendants would have challenged Plaintiffs' motive allegations which centered on their bonus compensation structure. ¶ 77. Among other things, Defendants would

point to the fact their voluntary revenue adjustment in February 2019 had caused Defendants to lose their bonuses. *Id.*

Third, Plaintiffs faced challenges proving loss causation and damages in this Action. ¶¶ 81-82. Plaintiffs anticipated that Defendants would strenuously argue that the price declines in Six Flags common stock were not caused by revelation of any concealed information about the progress of the China Parks. *Id.* Defendants were expected to argue that by the time of the final two alleged corrective disclosures, Defendants had made sufficient cautionary statements about the prospect of the China Parks that the disclosures did not add any new material information to the market. ¶ 81. Even with respect to first two alleged corrective disclosures, Defendants would have colorable arguments that other non-fraud related negative information released on those days were responsible for some of the price declines at issue. ¶ 82. These arguments, if accepted by the Court at summary judgment or a jury at trial, could eliminate or dramatically reduce recoverable damages in this case—even if Defendants were found to have made materially false statements.

Notwithstanding these significant difficulties and uncertainties, Lead Counsel zealously prosecuted this Action to secure a favorable result for the Settlement Class. Accordingly, this factor weighs in favor of the requested fee.

### 3. The Amount Involved and the Results Achieved

Courts recognize that the result achieved is a factor to be considered in awarding attorneys' fees. *See Roussel v. Brinker Int'l, Inc.*, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd*, 441 F. App'x 222 (5th Cir. 2011) (considering "overall degree of success achieved" in awarding fees). Here, Lead Counsel secured a $40 million cash Settlement that will provide payment to Settlement Class Members in the near term while avoiding the risks of continued litigation.

Plaintiffs' damages expert estimated the Settlement Class's maximum aggregate damages that could realistically be established at trial was approximately $370 to $470 million. Defendants, meanwhile, asserted that damages were far lower, even assuming a verdict for the Settlement Class on all liability issues. The $40 million Settlement, accordingly, represents approximately 8.5% to 10.8% of the maximum damages that could likely be established for the Settlement Class if liability were proved. This level of recovery is favorable in such cases. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (a settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement approximating "4-8% of the 'best case scenario' potential recovery" deemed reasonable); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlements in securities class actions "have ranged from 3% to 7% of the class members' estimated losses").

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation and Ability of the Attorneys

Courts also consider the skills required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. *See Johnson*, 488 F.2d at 718-19. Here, as demonstrated by its firm resume (App. 138-170), Lead Counsel is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases. Lead Counsel is consistently ranked among the top plaintiffs' firms in the country by reputable industry sources. As reflected in ISS/Securities Class Action Services' latest report on the "Top 100 U.S. Class Action Settlements of All Time," BLB&G has been lead or co-lead counsel in more top recoveries in securities class actions than any other firm in U.S. history. BLB&G has taken complex cases such as this to trial, and it is among the few

20

firms with experience doing so on behalf of plaintiffs in securities class actions. Plaintiffs' Counsel's experience and skill were essential to achieving a meaningful resolution to the Action.

Courts have also recognized the quality of opposing counsel in assessing plaintiffs' counsel's efforts. *See, e.g.*, *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation"). In this Action, Defendants were represented by experienced and able counsel from Skadden, Arps, Slate, Meagher, and Flom LLP; Kirkland & Ellis; and Cantey Hanger LLP, who aggressively litigated this Action on behalf of their clients. In the face of this formidable opposition, Lead Counsel achieved a settlement on terms that were favorable to the Settlement Class. This factor also supports the requested fee.

### 5.    The Preclusion of Other Employment

Plaintiffs' Counsel dedicated substantial time and effort to the Action on a fully contingent basis. This curtailed their ability to assign their attorneys and professionals to perform work on other matters. Accordingly, this *Johnson* factor also supports the requested fee. *See, e.g.*, *Johnson*, 488 F.2d at 718; *Burford*, 2012 WL 5471985, at *3; *Shaw*, 91 F. Supp. 2d at 970.

### 6.    The Customary Fee and Awards in Similar Cases

As discussed above, Lead Counsel's fee request is well within the range of fees awarded in similar cases on a percentage or lodestar basis. *See* § II.B above. This factor further supports the reasonableness of the requested fee. *See Johnson*, 488 F.2d at 717-19.

### 7.    The Contingent Nature of the Fee

Plaintiffs' Counsel undertook this Action on a fully contingent fee basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31-32; *see also City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

### 8.    The Undesirability of the Case

Plaintiffs' Counsel did not consider this case to be "undesirable."  However, there were substantial risks in financing and prosecuting the Action on a fully contingent basis, including the real possibility that Plaintiffs' Counsel would not receive compensation or reimbursement for its expenses.  From the start, Plaintiffs' Counsel knew that they would have to spend substantial time and money and face risks without any assurance of being compensated for their efforts.  *See, e.g.*, *Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee).

### 9.    Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts may consider other factors in determining an appropriate fee in a class action.  *See, e.g.*, *Glock*, 2021 WL 1422714, at *1-2 (considering public policy and reaction of class in approving attorney fee award); *Prause*, 2021 WL 6053219, at *2. These additional factors further confirm the reasonableness of the fee request.

#### a.    Public Policy Considerations Support the Requested Fee

As noted above, the Supreme Court has stated that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action."  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).  Here, that public policy was advanced, as Lead Counsel achieved a meaningful recovery for investors. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued

availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

### b.    Plaintiffs Have Approved the Requested Fee

Lead Plaintiff Oklahoma Firefighters is a multiemployer pension fund with more than $31 billion in funds under management.  Named Plaintiff Key West is also an institutional investor. Both Plaintiffs have authorized the fee request as fair and reasonable.

### c.    The Settlement Class's Reaction to Date

The reaction of the Settlement Class to date also supports the requested fee.  As of December 19, 2024, a total of 96,228 Notices have been mailed to potential Settlement Class Members and nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for attorneys' fees in an amount up to 25% of the Settlement Fund and Litigation Expenses in an amount not to exceed $650,000.  *See* Notice ¶¶ 5, 52 (App. 87, 97).  To date, no objections to these amounts have been received.  ¶¶ 119, 127.[4]

## III.    LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also requests payment of $500,558.88 from the Settlement Fund for expenses that counsel reasonably and necessarily incurred in prosecuting and resolving the Action.  These expenses are properly recovered by counsel.  *See Halliburton*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri*, 2011 WL 3585983, at *10 (same); *Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee).  Plaintiffs' Counsel's expenses are set forth by category within Exhibit 3.

---

[4] Lead Counsel will address any objections that may be received in reply papers to be filed with the Court on January 21, 2025.

A significant component of Plaintiffs' Counsel's expense request relates to fees payable to Plaintiffs' experts and consultants.  ¶ 123.  As detailed in the Rizio-Hamilton Declaration, Plaintiffs retained several experts in disciplines including financial economics, accounting, and the theme-park industry to assist in the prosecution of this Action.  These experts were necessary to the prosecution and resolution of the Action.  Other components of Lead Counsel's expenses included the fees and expenses of local counsel, the costs of on-line legal and factual research, and expenses associated with the databases utilized to host, organize, and search the document production.  ¶¶ 124-126.  These and the other types of expenses incurred by Lead Counsel were necessary to the successful prosecution of this Action and routinely charged to clients billed by the hour.  ¶ 126.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for Litigation Expenses in an amount not to exceed $650,000.  The total amount of expenses requested $500,558.88 is substantially below the amount listed in the Notice.  Moreover, as noted above, to date, there has been no objection to the request for expenses.  ¶ 127.

## IV.    CONCLUSION

For the reasons stated herein and in the Rizio-Hamilton Declaration, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund; and approve payment of Lead Counsel's Litigation Expenses in the amount of $500,558.88.

DATED:  December 24, 2024                    Respectfully submitted,

*/s/ John Rizio-Hamilton*
**BERNSTEIN LITOWITZ BERGER &**
    **GROSSMANN LLP**
John Rizio-Hamilton*
Katherine M. Sinderson*
Jesse Jensen*
John Esmay*
1251 Avenue of the Americas
New York, New York 10020

24

Tel: (212) 554-1400
Fax: (212) 554-1444
johnr@blbglaw.com
katiem@blbglaw.com
jesse.jensen@blbglaw.com
john.esmay@blbglaw.com

*Counsel for Plaintiff Key West and Lead
Counsel for Lead Plaintiff Oklahoma
Firefighters and the Settlement Class*

*\* admitted pro hac vice*

**THE LAW OFFICE OF JASON NASH,
P.L.L.C.**
Jason C. Nash, Texas Bar No. 24032894
601 Jameson Street
Weatherford, TX 76086
Tel: 817 757-7062
jnash@jasonnashlaw.com

*Local Counsel for Plaintiff Key West and
Lead Plaintiff Oklahoma Firefighters*

**KLAUSNER, KAUFMAN, JENSEN &
LEVINSON**
Robert Klausner, Texas Bar No. 24117265
Stuart A. Kaufman\*
7080 NW 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Plaintiff Key West*

*\* admitted pro hac vice*

<u>**CERTIFICATE OF CONFERENCE**</u>

On December 23, 2024, I conferred with Scott Musoff and Ralph Duggan, counsel for Defendants.  Defendants take no position on Lead Counsel's motion for attorney's fees and litigation expenses.

By: */s/ John Rizio-Hamilton*
        John Rizio-Hamilton



<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 24, 2024, I electronically filed the foregoing by using the court's CM/ECF system.  Per agreement among the parties, all parties will be served by the CM/ECF system.

By: */s/ John Rizio-Hamilton*
        John Rizio-Hamilton