# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., <br><br> Plaintiffs <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br><br> <u>CLASS ACTION</u> |

## APPENDIX TO (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND (II) LEAD COUNSEL'S <u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>

## TABLE OF CONTENTS

| Exhibit | Document | Appendix Pages |
|---|---|---|
| | Declaration of John Rizio-Hamilton in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses | App. 4-48 |
| 1 | CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024) | App. 49-77 |
| 2 | Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date | App. 78-124 |
| 3 | Summary of Counsel's Lodestar and Expenses | App. 125-126 |
| 3A | Declaration of John Rizio-Hamilton on Behalf of Bernstein Litowitz Berger & Grossmann LLP in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses | App. 127-170 |
| 3B | Declaration of Robert D. Klausner on Behalf of Klausner, Kaufman, Jensen & Levinson in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses | App. 171-181 |
| 4 | Compendium of Unpublished Authority | App. 182 |
| 4A | *Doyle v. Reata Pharms., Inc.*, Case No. 4:21-cv-00987, slip op. (E.D. Tex. Mar 29, 2024), ECF No. 84 | App. 183-187 |
| 4B | *In re SolarWinds Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 | App. 188-192 |
| 4C | *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, Case No. 4:17-CV-0449-ALM, slip op. (E.D. Tex. May 20, 2020), ECF No. 289 | App. 193-197 |
| 4D | *Ryan v. Flowserve Corp.*, No. 303-CV-01769-B, slip op. (N.D. Tex. May 11, 2010), ECF No. 954 | App. 198-201 |
| 4E | *Berger v. Compaq Computer Corp.*, Civil Action No. 98-1148, slip op. (S.D. Tex. Nov. 22, 2002), ECF No. 148 | App. 202-207 |
| 4F | NERA ECONOMIC CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2023 FULL-YEAR REVIEW (2024) | App. 208-242 |
| 4G | *Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*, Civil Action No. 3:15-cv-02129-K, Appendix (N.D. Tex. Dec. 8, 2020), ECF No. 256 (excerpts) | App. 243-258 |
| 4H | *In re Corsicana Bedding, LLC*, Case No. 22-90016-ELM-11, First and Final Application of Pachulski Stang Ziehl & Jones LLP (Bankr. N.D. Tex. Nov. 23, 2022), ECF No. 509 (excerpts) | App. 259-263 |
| 4I | *In re Corsicana Bedding, LLC*, Case No. 22-90016-ELM-11, First and Final Application of Hayes & Boone, L.L.P. (Bankr. N.D. Tex. Nov. 23, 2022), ECF No. 504 (excerpts) | App. 264-268 |

| 4J | *In re Yuma Energy Inc.,* Case No. 20-41455-MXM, First and Final Application of Locke Lord LLP (Bankr. N.D. Tex. Mar. 12, 2021), ECF No. 432 (excerpts) | App. 269-272 |
|----|----|----|
| 4K | *In re Vista Proppants and Logistics*, LLC, Case No. 20-42002-ELM-11, First and Final Application of Haynes & Boone, LLP (Bankr. N.D. Tex. Nov. 20, 2020), ECF No. 767 (excerpts) | App. 273-277 |
| 4L | *In re Eiger Biopharms*, Case No. 24-80040 (SGJ), First Interim and Final Fee Application of Sidley Austin LLP (N.D. Tex. Sept. 27, 2024) ECF No. 681 (excerpts) | App. 278-284 |
| 4M | *In re Whitestone Industrial-Office, LLC*, Case No. 24-30653-MVL-11, First and Final Application for Payment of Fees and Expenses of Holland & Knight, LLP (N.D. Tex. Nov. 15, 2024) ECF No. 378 (excerpts) | App. 285-289 |
| 4N | *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464, slip op. (S.D. Tex. Sept. 15, 2022), ECF 129 | App. 290-295 |
| 4O | *In re Endo Int'l, plc*, Case No. 22-22549 (JLG), Fifth Interim and Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. May 23, 2024), ECF No. 4312 (excerpts) | App. 296-311 |
| 4P | *See In re Nat'l Rile Ass'n*, Case No. 21-30085 (HDH), Debtors' Authorizing the Retention and Employment of Kirkland & Ellis LLP (Bankr. N.D. Tex. Feb. 17, 2021), ECF No. 173 (excerpts) | App. 312-324 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., | Civil Action No. 4:20-cv-00201-P |
| Plaintiffs | CLASS ACTION |
| v. | |
| SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., | |
| Defendants. | |

**DECLARATION OF JOHN RIZIO-HAMILTON IN SUPPORT OF**
**(I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**
**AND PLAN OF ALLOCATION, AND (II) LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## TABLE OF CONTENTS

**Page**

TABLE OF EXHIBITS ...................................................................................................... iii

I.     INTRODUCTION ..................................................................................................... 1

II.    PROSECUTION OF THE ACTION ...................................................................... 6

     A.     Background ................................................................................................... 6

     B.     Appointment of Lead Plaintiff and Lead Counsel .................................... 8

     C.     Lead Plaintiff's Investigation and Filing of the Consolidated Complaint ............. 8

     D.     Defendants' Motion to Dismiss the Consolidated Complaint ............................. 10

     E.     The Court's 2021 Dismissal of the Action ........................................................ 11

     F.     Lead Plaintiff's Appeal of the Initial Dismissal of the Action ............................ 12

     G.     Proceedings on Remand in 2023 ........................................................................ 13

     H.     Plaintiffs' Second Appeal ................................................................................... 14

     I.     Proceedings on Remand in 2024 and Discovery ................................................ 15

     J.     Work with Experts .............................................................................................. 16

     K.     Mediation Process and Settlement ..................................................................... 17

III.    RISKS OF CONTINUED LITIGATION ............................................................. 18

     A.     General Risks in Prosecuting Securities Class Actions ..................................... 19

     B.     Specific Risks Concerning this Action ............................................................... 21

           1.     Risks Concerning Liability ..................................................................... 21

                a.     Falsity ........................................................................................ 21

                b.     Materiality ................................................................................. 22

                c.     Scienter ...................................................................................... 23

           2.     Risks Related to Loss Causation and Damages ....................................... 24

           3.     Risks Related to Class Certification ........................................................ 25

        4.    The Settlement Amount Compared To The Likely Maximum
              Damages That Could Be Proved At Trial ................................................. 26

IV.    PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY
       APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE ...................................... 28

V.     ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT ................... 30

VI.    THE FEE AND EXPENSE APPLICATION .................................................... 33

       A.    The Fee Application ........................................................................ 34

             1.    Plaintiffs Have Authorized and Support the Fee Application ................. 34

             2.    The Work Performed by Counsel.............................................................. 34

             3.    The Experience and Standing of Lead Counsel ....................................... 36

             4.    Standing and Caliber of Defendants' Counsel ......................................... 37

             5.    The Risks of Litigation and the Need to Ensure the Availability of
                   Competent Counsel in High-Risk Contingent Cases ............................... 37

             6.    The Reaction of the Settlement Class to the Fee Application.................. 38

       B.    The Expense Application ...................................................................... 39

## **TABLE OF EXHIBITS**

**Exhibit 1**      CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024)

**Exhibit 2**      Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date

**Exhibit 3**      Summary of Counsel's Lodestar and Expenses

  **Exhibit 3A**      Declaration of John Rizio-Hamilton on Behalf of Bernstein Litowitz Berger & Grossmann LLP in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses

  **Exhibit 3B**      Declaration of Robert D. Klausner on Behalf of Klausner, Kaufman, Jensen & Levinson in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses

**Exhibit 4**      Compendium of Unpublished Opinions and Authority

I, JOHN RIZIO-HAMILTON, declare as follows:

1.       I am an attorney admitted *pro hac vice* to this Court. I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel"). BLB&G serves as Lead Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") and additional Named Plaintiff Key West Police & Fire Pension Fund ("Key West") (collectively, "Plaintiffs"), and as Lead Counsel for the Settlement Class in the above-captioned Action (the "Action"). I submit this declaration in support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation (the "Settlement Motion"), and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Fee Motion"). I have personal knowledge of the matters set forth herein based on my active participation in the prosecution and settlement of this action and could and would testify competently thereto.[1]

## I.      INTRODUCTION

2.       The proposed Settlement before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $40 million, plus interest, for the benefit of the Settlement Class. The Settlement Amount has been paid into an escrow account and is earning interest. As detailed below, the Settlement provides a significant benefit to the Settlement Class by conferring a substantial, certain, and near-term recovery while avoiding the risks of continued litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation, appeals, and delay.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated September 3, 2024 (ECF No. 145) (the "Stipulation"), which was entered into by and among (i) Plaintiffs, on behalf of themselves and the Settlement Class, and (ii) Defendants Six Flags Entertainment Corporation ("Six Flags" or the "Company"), James Reid-Anderson, and Marshall Barber (collectively, "Defendants").

3.      The proposed Settlement is the result of extensive efforts by Plaintiffs and Lead

Counsel over the past four years, which included, among other things:

(a)    conducting an extensive investigation into the alleged fraud, including interviews with over 50 potential witnesses, and a thorough review of all publicly available information about the claims, including Six Flags' filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, conference call transcripts, and news articles;

(b)    drafting a detailed 114-page consolidated complaint based on Lead Counsel's extensive factual investigation and consultation with experts;

(c)    opposing Defendants' motion to dismiss the consolidated complaint, which was accompanied by a 357-page appendix;

(d)    filing a motion to amend or set aside the judgment and for leave to file an amended complaint following the Court's grant of Defendants' motion to dismiss;

(e)    appealing the Court's order granting Defendants' motion to dismiss to the United States Court of Appeals for the Fifth Circuit, which involved full briefing of the appeal and oral argument;

(f)    after remand by the Court of Appeals, Plaintiffs and Lead Counsel litigated a second motion to amend, Key West's motion to intervene, and Defendants' motion for judgment on the pleadings, which challenged Plaintiffs' standing;

(g)    appealing the Court's Opinion and Order denying the motion to intervene and granting Defendants' motion for judgment on the pleadings, which again involved full briefing and oral argument on appeal;

(h)    negotiating a case schedule, discovery parameters, and a confidentiality agreement, and preparing and responding to discovery requests, including requests for the production of documents and interrogatories, and preparing and serving subpoenas on 14 third parties;

(i)    obtaining 180,000 pages of documents from Defendants, conducting substantial review of the documents produced, including holding regular meetings to discuss and analyze these documents, preparing numerous memoranda, chronologies, and other work product concerning the relevant evidence to support the claims alleged, and developing a discovery plan to pursue further discovery from Defendants and third parties;

(j)    working with experts in the areas of financial economics (including loss causation, damages, and market efficiency); accounting; the theme park construction industry; and Chinese government-funded construction projects;

2

(k)    preparing for a mediation session before the Honorable David L. Evans, including exchanging opening statements and exhibits with Defendants, and preparing a presentation responsive to Defendants' arguments;

(l)    engaging in settlement negotiations with Defendants' Counsel prior to the scheduled mediation; and

(m)    drafting and negotiating the Stipulation setting out the terms of the Settlement, and related documentation.

4.    As a result of these efforts, Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in the Action at the time they achieved the proposed Settlement, including the risk that there might be no recovery at all. Indeed, the Court had twice dismissed the Action in its entirety and, while Plaintiffs were ultimately able to survive the pleading stage, there were numerous other hurdles that Plaintiffs would have had to face in continued litigation. As discussed further below, Plaintiffs faced significant risks in establishing all elements of their claims, including falsity, scienter, loss causation, and damages. Defendants have vigorously denied that they made any false or misleading statements and omissions regarding their construction of theme parks in China described in the pleadings or acted with scienter. Defendants argue that the construction of the China Parks was adequately funded, that Defendants were not aware of any construction deficiencies, that all construction progress was appropriately accounted for, and that they had no motive to mislead investors. In addition, Defendants contested Plaintiffs' loss causation arguments and damages calculations, claiming that certain of the alleged corrective disclosures are not actionable because they did not reveal new information or were unrelated to the alleged fraud, and that non-fraud related information released on the same days would need to be disaggregated from damages calculations, reducing Plaintiffs' total potential recovery on behalf of the Settlement Class. In light of these significant risks of litigation, Plaintiffs and Lead Counsel believe that the proposed $40 million Settlement represents a highly favorable result for the Settlement Class.

5.    The Settlement was achieved only after arm's-length negotiations between the Parties which were conducted in anticipation of a pending mediation session with the Honorable David L. Evans, a highly respected judge in Fort Worth. In advance of the scheduled mediation, Plaintiffs prepared and submitted a detailed mediation statement to Defendants and Judge Evans, including supporting exhibits compiled from documents produced in the course of discovery. Plaintiffs also reviewed Defendants' mediation submission. In light of the thorough argument presented in these statements, the Parties continued to negotiate toward a potential settlement. Shortly before the scheduled mediation, the Parties came to an agreement.

6.    Plaintiffs endorse the Settlement. Plaintiffs are institutional investors that participated in the Action and monitored the work of Lead Counsel. Plaintiffs' representatives authorized the settlement negotiations with an understanding of the strengths and weaknesses of the Action informed by counsel and their involvement in the case.  In enacting the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Congress expressly intended to give control over securities class actions to institutional investors like Plaintiffs and noted that increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in this type of case. H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. Accordingly, Plaintiffs' approval of the Settlement supports the reasonableness of the Settlement.

7.    In sum, due to their substantial efforts, Plaintiffs and Lead Counsel are well-informed of the strengths and weaknesses of the Action, and they believe that the Settlement is fair and reasonable and represents a favorable outcome for the Settlement Class.

8.    Plaintiffs also request that the Court approve the proposed Plan of Allocation for the settlement funds. As discussed in further detail below, the proposed Plan of Allocation, which

App. 011

was developed with the assistance of Plaintiffs' damages expert, provides for the equitable distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment by the Court. The proposed Plan of Allocation provides for distribution to eligible claimants on a *pro rata* basis, based on losses attributable to the allegations in the Complaint.

9. Lead Counsel worked diligently and efficiently to achieve the proposed Settlement in the face of risks. Lead Counsel prosecuted this case on a fully contingent basis and advanced all litigation-related expenses, and thus bore the risk of an unfavorable result. For its efforts in achieving the Settlement, Lead Counsel is applying for an award of attorneys' fees for Lead Counsel and Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"), additional counsel for Plaintiff Key West, in the amount of 25% of the Settlement Fund. The requested fee has been approved by Plaintiffs and is well within the range of fees that courts in this Circuit and elsewhere have awarded in securities class actions and other complex class actions with comparable recoveries.

10. Lead Counsel's Fee and Expense Application also seeks payment of $500,558.88 in Litigation Expenses incurred by Lead Counsel and Klausner Kaufman in connection with the institution, prosecution, and settlement of the Action, which includes, among other things, the cost of retaining experts and the fees and costs of local counsel.

11. For all the reasons discussed in this Declaration and in the accompanying motions, including the quality of the result obtained and the meaningful litigation risks discussed below, Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are "fair, reasonable, and adequate," and that the Court should approve them under Federal Rule of Civil Procedure 23(e). For similar reasons, and for the additional reasons discussed below, we

App. 012

respectfully submit that Lead Counsel's Fee and Expense Application is also fair and reasonable and should be approved.

## II.    PROSECUTION OF THE ACTION

### A.    Background

12.    The Action arises from Plaintiffs' allegations that Defendants made materially false or misleading statements and omissions concerning the development of several multibillion-dollar Six Flags-branded amusement parks in China (the "China Parks"). Plaintiffs allege that Defendants assured investors that Six Flags' Chinese development partner, Riverside Investment Group Co. Ltd. ("Riverside"), was on track to begin opening the China Parks in 2019. Plaintiffs allege that construction on the parks was essentially at a standstill and Defendants knew that the China Parks would not open on time. The Action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all persons and entities who purchased the publicly traded common stock of Six Flags during the period from April 24, 2018 through February 19, 2020 (the "Class Period") and were damaged thereby (the "Settlement Class").

13.    Plaintiffs allege that Defendants made false or misleading statements concerning four aspects of the construction of the China Parks. ***First***, Plaintiffs allege that Defendants made misleading statements concerning Riverside's financial condition and performance as a construction partner. This category includes statements identifying Riverside as "providing the funding for the development of the parks" and having "the ability to source additional funding." ¶ 204.[2] Plaintiffs allege that, at the time the statements were made, Riverside had lost financing and support from local Chinese governments located where Defendants intended to build the China

---

[2] In this Section II.A, citations to "¶ __" refer to paragraphs in the Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 140) (the "Complaint").

Parks, and as a result, Riverside was unable to pay its employees, key vendors, or make licensing payments to Six Flags.

14.     ***Second***, Plaintiffs allege that Defendants made misleading statements regarding the progress of the construction of the China Parks. For instance, this category includes statements such as, "there's ongoing building going on," and that construction is "ongoing" and "progressing." ¶¶ 74, 116, 120, 124. Plaintiffs allege that these statements were misleading because Defendants and Riverside had made no significant progress on construction and Riverside did not have the funding to pay for the necessary manpower, construction drawings, or theme park rides.

15.     ***Third***, Plaintiffs allege that Defendants made misleading statements concerning the timelines by which the China Parks would open. This category includes statements that identify specific dates or timetables for opening particular China Parks, such as, "The Chongqing parks are [opening] during 2020 . . . . Nanjing, those will start to open up in 2021," and that previously announced park construction timelines "still hold now" because "there are no delays we're aware of on any of the parks. The same timing as we outlined on the fourth quarter call." ¶¶ 191, 218. Plaintiffs allege that Defendants were aware of facts indicating that Riverside would not be able to meet the China Parks opening deadlines, including those reported by Six Flags International's Director of International Construction and Project Management ("FE 1").

16.     ***Fourth***, Plaintiffs allege that Defendants made misleading statements concerning their accounting for revenue attributable to the China Parks. Specifically, throughout the Class Period, Defendants reported revenue and revenue growth in their financial disclosures attributable to international licensing revenue related to the China Parks. Six Flags recognized international licensing revenue ratably over the lifespan of a construction project, and accordingly, any delays

7

in the opening of the China Parks meant that Six Flags should recognize proportionally lower revenue. Plaintiffs allege that Defendants overstated revenue throughout the Class Period because Defendants knew about the delays in the China Parks.

### B.    Appointment of Lead Plaintiff and Lead Counsel

17.    On February 12, 2020, Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") filed an initial class action complaint in the United States District Court for the Northern District of Texas, Dallas Division, against Six Flags, James Reid-Anderson, and Marshall Barber alleging securities fraud. ECF No. 1. On March 2, 2020, the Dallas court ordered the consolidation of Case No. 3:20-cv-00460-K with Case No. 3:20-cv-00346-K. ECF No. 6. That same day, the Dallas court transferred the case to the Fort Worth Division of the Northern District of Texas and the case was reassigned case number 4:20-cv-00201-P. ECF Nos. 7–8.

18.    On March 20, 2020, Local 103 filed an Amended Complaint for Violations of the Federal Securities Laws (ECF No. 25), and on April 13, 2020, Local 103 and Oklahoma Firefighters filed an unopposed motion for appointment as Lead Plaintiffs and approval of their selection of counsel (ECF Nos. 26-28).

19.    On May 8, 2020, the Court appointed Oklahoma Firefighters and Local 103 as Lead Plaintiffs for the Action, and approved Oklahoma Firefighters and Local 103's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the putative class. ECF No. 30.

### C.    Lead Plaintiff's Investigation and Filing of the Consolidated Complaint

20.    Lead Counsel undertook a significant factual investigation into the alleged fraud and a detailed analysis of the potential claims that could be asserted on behalf of investors in Six Flags securities. This investigation began prior to the Court's appointment of Lead Plaintiffs and continued through the preparation of the Consolidated Complaint in June 2020. The investigation

8

included a careful review and analysis of: (i) transcripts, press releases, news articles, and other public statements issued by or concerning Six Flags; (ii) research reports issued by financial analysts concerning the Company; (iii) reports and other documents filed publicly by Six Flags with the SEC; (iv) interviews with former Six Flags and Riverside employees; (v) analyses of the price movements in Six Flag's common stock; and (vi) other publicly available information.

21.    In connection with the investigation, Lead Counsel and its in-house investigators identified and located former employees of Six Flags and Riverside and other potential witnesses who may have had relevant information pertaining to the claims asserted in the Action. This included contacting 128 potential witnesses and interviewing 51 of them. Lead Plaintiffs included information from two of the former Six Flags employees—Six Flags International's Director of International Construction and Project Management and a former Account Manager at Six Flags— in the subsequently filed pleadings. These former employees provided information concerning Six Flags' understanding of the status of the construction of the China Parks and Riverside's failure to make scheduled licensing payments.

22.    In addition, to aid its review of the public record, Lead Counsel engaged consulting experts to help analyze certain complicated issues in the case. Lead Counsel worked with a financial economist on loss causation and damages issues, which was particularly important because there were several different partial corrective disclosures in the case. Lead Counsel also worked with an accounting expert on the claims concerning overstated international licensing revenue.

23.    On July 2, 2020, Oklahoma Firefighters and Local 103 filed the Consolidated Class Action Complaint (ECF No. 50) (the "Consolidated Complaint" or "CAC"), based on this extensive investigation. The Consolidated Complaint alleged violations of Sections 10(b) and

20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. The Consolidated Complaint alleged that Six Flags, Six Flags' former Chief Executive James Reid-Anderson, and its former Chief Financial Officer Marshall Barber (together, Reid-Anderson and Barber are the "Individual Defendants") made statements misrepresenting the status of the construction of the China Parks during the Class Period; that the price of Six Flag's common stock was inflated as a result of the alleged misstatements; and that the price declined when the truth was disclosed through a series of disclosures on February 14, 2019, October 23, 2019, January 10, 2020, and February 20, 2020.

#### D.    Defendants' Motion to Dismiss the Consolidated Complaint

24.    On August 3, 2020, Defendants filed a motion to dismiss the Consolidated Complaint (the "Motion to Dismiss") and an accompanying appendix attaching 20 exhibits totaling 357 pages. ECF Nos. 51, 52. Defendants' motion challenged virtually every aspect of the Consolidated Complaint and previewed many arguments they would continue to make throughout the life of the case, including through mediation. These core arguments included, *inter alia*,

(a)    that the Consolidated Complaint failed to allege adequately any false or misleading statement or omission because the allegations relied primarily on claims from one confidential witness and his statements were contradictory and vague as to timing; Defendants' statements were accurate when made; and that Defendants were not obligated to speculate or predict that Riverside might ultimately default;

(b)    that most of the challenged statements were inactionable as a matter of law because the Company had repeatedly warned investors of the risk that the Company "may not be able to realize the benefits of our international licensing agreements" because of "the performance of [its] partners and their ability to obtain financing." For example, Defendants argued that all forward-looking statements concerning the China Parks were inactionable on this basis;

(c)    that other of the challenged statements were inactionable statements of corporate optimism or puffery, or were genuinely held opinions; and

(d)    that the Consolidated Complaint did not allege facts giving rise to a strong inference that Defendants acted with the requisite intent to defraud investors.

10

Specifically, Defendants argued that their stock acquisitions during the Class Period negated any inference of scienter. Further, Defendants argued that Plaintiffs' allegation concerning motive—that Defendants wanted to achieve incentive compensation targets—were insufficient, and actually cut against an inference of scienter because those compensation targets were ultimately not achieved as a result of Defendants taking a negative revenue adjustment caused by delays in projected openings of the China Parks.

25.     On September 2, 2020, Oklahoma Firefighters and Local 103 filed their opposition to Defendants' motion. ECF Nos. 54-55. Plaintiffs' opposition challenged every argument raised by Defendants' motion, including among other things arguing that Plaintiffs sufficiently alleged the falsity of Defendants' four categories of statements concerning the China Parks and that the allegations gave rise to a strong inference of scienter.

26.     Defendants filed their reply brief in further support of the motion on September 16, 2020. ECF No. 56.

**E.      The Court's 2021 Dismissal of the Action**

27.     On March 3, 2021, the Court entered its Opinion and Order granting the Motion to Dismiss (ECF No. 69) (the "Motion to Dismiss Order") and a judgment dismissing the Action with prejudice (ECF No. 70). The Court's Motion to Dismiss Order found that the Consolidated Complaint failed to adequately plead an actionable misstatement or omission. The Court also found that certain of the alleged misstatements were inactionable because they were protected forward-looking statements or puffery. In addition, the Court found that the allegations of the Consolidated Complaint failed to support a strong inference of scienter because they did not support a motive to commit fraud and the circumstantial allegations of conscious misbehavior or reckless conduct were insufficient.

28.     On March 31, 2021, Oklahoma Firefighters and Local 103 filed a motion to amend or set aside the judgment and for leave to file an amended complaint (the "Motion to Set Aside"). ECF No. 71. The proposed amended complaint included additional allegations concerning FE 1,

11

his role at the Company, and his internal reporting to Defendants. The Motion to Set Aside was fully briefed on May 5, 2021. ECF Nos.72, 73.

29.     On July 26, 2021, the Court denied the Motion to Set Aside (the "Motion to Set Aside Order").

### F.     Lead Plaintiff's Appeal of the Initial Dismissal of the Action

30.     On August 25, 2021, Oklahoma Firefighters filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from the Motion to Dismiss Order and Motion to Set Aside Order. ECF No. 77.[3]

31.     On October 25, 2021, Oklahoma Firefighters filed its opening brief on appeal. Among other things, Oklahoma Firefighters' appeal argued that the Consolidated Complaint sufficiently alleged the falsity of Defendants' four category statements concerning the China Parks and that the allegations gave rise to a strong inference of scienter.

32.     Defendants filed their responsive brief on November 24, 2021, and Oklahoma Firefighters filed its reply on December 15, 2021.

33.     On March 7, 2022, the Parties conducted oral argument before a panel of the Court of the Appeals.

34.     On January 18, 2023, the Court of the Appeals reversed the Court's Motion to Dismiss Order (the "First Appeal Decision"), holding that Oklahoma Firefighters had sufficiently pled many, but not all, of its allegations. *See Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*, 58 F.4th 195 (5th Cir. 2023). For instance, the Court found the Consolidated Complaint did not sufficiently plead the falsity of statements concerning the timing of opening of

---

[3] Local 103 did not pursue an appeal and is no longer acting as a lead plaintiff or class representative in the Action, but remains a member of the Settlement Class.

the China Parks that were made in October 2019 because Defendants had adequately tempered their optimistic language by that time. The Court of Appeals also held that certain of Defendants' statements could be considered puffery, but held that Plaintiffs had otherwise adequately pled their claims.

**G.    Proceedings on Remand in 2023**

35.    The Action was remanded to the Court and the Court re-opened the case on February 9, 2023.

36.    Defendants filed their Answer to the Consolidated Complaint on March 20, 2023. ECF No. 100. In their Answer, Defendants denied all of the allegations asserted against them, as well as any liability to Lead Plaintiff and the class, and asserted 31 affirmative and other defenses.

37.    At that time, the Parties began initial discovery efforts. The Parties exchanged initial disclosures and served interrogatories. Oklahoma Firefighters served subpoenas on and began negotiations around document discovery with 14 third parties, including Six Flags' auditor, as well as several of Six Flags' consultants, designers, and ride suppliers for the China Parks.

38.    Defendants served their First Set of Requests for Production of Documents to Oklahoma Firefighters on March 22, 2023, which requested 28 categories of documents, including documents cited in the Consolidated Complaint and documents concerning Plaintiff's transactions in Six Flags and any related communications, involvement in the Action, and its engagement of Lead Counsel. On April 21, 2023, Oklahoma Firefighters served Responses and Objections to Defendants' request for production of documents, and made a production of documents on April 26, 2023.

39.    On April 18, 2023, Oklahoma Firefighters filed a motion for leave to file a first amended complaint (the "Motion to Amend") for the purpose of adding Key West as an additional Named Plaintiff. ECF No. 101.

13

40.    On May 2, 2023, Defendants filed a motion for judgment on the pleadings (the "Motion for Judgment on the Pleadings"), arguing that the effect of the First Appeal Decision, which found that certain of Defendants' alleged misstatements were inactionable, was that Oklahoma Firefighters lacked standing. ECF Nos. 102, 103. On the same day, Defendants also filed an opposition to the Motion to Amend. ECF No. 103. Also that day, Defendants filed a motion to stay discovery. ECF No. 105.

41.    On May 3, 2023, the Court granted Defendants' motion to stay discovery. ECF No. 107.

42.    On May 9, 2023, Key West filed a motion to intervene (the "Motion to Intervene") (ECF No. 108), and on May 10, 2023, Oklahoma Firefighters filed its opposition to the Motion for Judgment on the Pleadings (ECF No. 110).

43.    On May 16, 2023, Defendants filed a memorandum of law opposing the Motion to Intervene and in further support of the Motion for Judgment on the Pleadings. ECF No. 112.

44.    On May 24, 2023, Key West filed a reply in further support of its Motion to Intervene. ECF No. 113.

45.    On June 2, 2023, the Court granted Defendants' Motion for Judgment on the Pleadings, finding that Oklahoma Firefighters lacked standing, denied the Motion to Intervene, and granted Defendants' Motion for Judgment on the pleadings (the "Pleadings & Intervention Order"). ECF Nos. 114, 115.

**H.    Plaintiffs' Second Appeal**

46.    On June 30, 2023, Plaintiffs filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from the Pleadings & Intervention Order. ECF No. 116.

47.    On September 29, 2023, Plaintiffs filed their opening brief on appeal. Defendants filed their responsive brief on November 13, 2023, and Plaintiffs filed their reply on December 4,

2023. The Parties conducted oral argument before the Fifth Circuit Court of Appeals on March 4, 2024.

48.     On April 18, 2024, the Fifth Circuit reversed the Pleadings & Intervention Order.

**I.     Proceedings on Remand in 2024 and Discovery**

49.     The Action was remanded to the Court on May 10, 2024. ECF No. 120. That same day, the Court ordered the Parties to appear for a Fed. R. Civ. P. 26(f) scheduling conference on May 23, 2024. ECF No. 121.

50.     On May 22, 2024, the Court referred this case to mediation and appointed the Honorable David L. Evans as mediator (the "Mediator"). ECF No. 128. The Parties, including representatives from each Plaintiff, appeared for the Court-ordered Rule 26(f) scheduling conference on May 23, 2024, and submitted a joint Fed. R. Civ. P. 26(f) statement on May 30, 2024. ECF No. 131. On May 31, 2024, the Court issued a scheduling order. ECF No. 132. This order required, among other things, the Parties to mediate before the Hon. David L. Evans by August 21, 2024. The mediation was scheduled for August 20, 2024.

51.     After remand, the Parties re-commenced discovery. After substantial negotiations, Defendants made an initial production of over 40,000 documents, totaling approximately 180,000 pages. In exchange for Defendants' prompt production of these documents, Plaintiffs agreed to undertake a review of this initial production and then identify gaps in the production for the Parties to discuss. The Parties began good-faith negotiations over those identified discovery gaps before the mediation.

52.     Lead Counsel searched the documents produced for what they believed were the most relevant documents and carefully reviewed, analyzed, and coded those documents. In reviewing the documents, attorneys were tasked with making several analytical determinations as to the documents' importance and relevance. Specifically, they determined whether the documents

<div align="center">15</div>

were "hot," "relevant," or "not relevant." They also assessed which specific issues the documents concerned and determined the identities of the Six Flags employees or other potential deponents to whom the documents related. Lead Counsel's partners structured the document review to include weekly team meetings to discuss the documents of highest interest and other issues that arose during the document review. Through these meetings, Lead Counsel ensured that all attorneys involved in the review understood the developing nature of the evidence and focused document review on the key issues in the Action. The documents discussed included those that were particularly relevant to Plaintiffs' claims and that offered insight into other important aspects of the case, including Defendants' likeliest defenses. The attorneys working on the document review also prepared numerous chronologies and memoranda on various issues concerning the relevant evidence to support Plaintiffs' claims.

53.    At the Court's direction, Plaintiffs filed a motion to amend the complaint on July 29, 2024, to further specify the remaining alleged false and misleading statements and the reasons why they alleged those statements were false and misleading. ECF No. 138. The Court granted the motion to amend on July 29, 2024 (ECF No. 139), and Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 140) (the "Complaint") the same day.

**J.    Work with Experts**

54.    Throughout the litigation, including in connection with preparation of the Consolidated Complaint and the Complaint, and in connection with discovery and their review of documents produced in discovery, Plaintiffs worked with experts in the fields of financial economics (including loss causation, damages, and market efficiency), Chinese government project financing, theme park development, and accounting. These experts provided critical

App. 023

insights and assistance to Plaintiffs and Lead Counsel in the successful prosecution and resolution of this case.

55.    The experts included, among others: (i) Harris Devor of Marcum LLP, regarding accounting issues, including the application of GAAP; (ii) Professor Sorin Sorescu, Professor of Finance and the Foreman R. and Ruby Bennett Chair in Business Administration at Texas A&M University Mays Business School, regarding loss causation, damages, and market efficiency; and (iii) John Manning of KMI International, a theme park and civil engineering expert.

**K.    Mediation Process and Settlement**

56.    As noted above, the Court had ordered that the Parties mediate before the Honorable David L. Evans and that mediation was scheduled for August 20, 2024. In advance of that mediation, Lead Counsel and Defendants' Counsel prepared detailed mediation briefs addressing liability and damages issues, which they exchanged and submitted to Judge Evans on July 18, 2024. Plaintiffs' mediation statements included detailed discussion of several exhibits, including documents identified by Plaintiffs in discovery.

57.    In advance of the mediation, Lead Counsel and Defendants' Counsel commenced settlement discussions. The Parties had negotiations on multiple occasions regarding settlement in the weeks leading up to the scheduled mediation with Judge Evans.

58.    On August 16, 2024, the Parties' negotiations culminated in an agreement in principle to settle the Action in exchange for payment by Six Flags of $40,000,000 in cash, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Parties promptly informed Judge Evans of their proposed settlement, and submitted a Joint Report to the Court concerning the agreement to settle on August 26, 2024. ECF No. 143.

59.    Following their agreement in principle, the Parties negotiated the final terms of the Settlement and drafted the Stipulation of Settlement and related settlement papers. On September

3, 2024, the Parties executed the Stipulation, which embodies the Parties' final and binding agreement to settle the Action. *See* ECF No. 145. That same day, Plaintiffs and Six Flags also executed a confidential Supplemental Agreement which provides that Six Flags has the option to terminate the Settlement if persons who request exclusion from the Settlement Class exceed a certain threshold. *See* Stipulation ¶ 39(b).

60.    On September 3, 2024, Plaintiffs submitted the Stipulation to the Court as part of their motion for preliminary approval of the Settlement. ECF Nos. 144, 145.

61.    On September 23, 2024, the Court entered the Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 146) ("Preliminary Approval Order"), which, among other things: (a) preliminarily approved the Settlement; (b) approved the form of Notice, Summary Notice, and Claim Form, and authorized notice of the Settlement to be given to potential Settlement Class Members through mailing of the Notice and Claim Form, posting the Notice and Claim Form on a Settlement website, and publication of the Summary Notice in *The Wall Street Journal* and over *PR Newswire*; (c) established procedures and deadlines by which Settlement Class Members could participate in the Settlement, request exclusion from the Settlement Class, or object to the Settlement, the proposed Plan of Allocation, and/or the Fee and Expense Application; and (d) set a schedule for the filing of opening papers and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application. The Preliminary Approval Order also scheduled the Settlement Hearing for January 28, 2025 at 9:00 a.m. to determine, among other things, whether the Settlement should be finally approved.

## III.    RISKS OF CONTINUED LITIGATION

62.    The Settlement provides a certain and substantial benefit to the Settlement Class in the form of a $40,000,000 cash payment. Plaintiffs and Lead Counsel believe that the proposed Settlement is a favorable result for the Settlement Class considering the risks of continuing to

litigate. As explained below, Plaintiffs continued to face meaningful risks related to proving liability and establishing loss causation and damages at the several remaining stages of litigation, including at class certification, summary judgment, and trial. Even if Plaintiffs defeated Defendants' motion for summary judgment and prevailed at trial, Plaintiffs would have faced post-trial motions, including a potential motion for judgment as a matter of law, as well as further appeals that might have prevented Plaintiffs from obtaining a recovery for the Settlement Class—or, at the very least, delayed recovery for years.

      **A.**     **General Risks in Prosecuting Securities Class Actions**

     63.     In recent years, securities class actions have faced greater risks than in prior years, and it is not uncommon for district courts to dismiss securities class actions at the summary judgment stage after years of litigation. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (defendants prevailed at summary judgment in a securities class action against Mylan arising out of misstatements concerning the company's EpiPen product and other generic drugs); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *1 (D. Or. May 24, 2021) (granting defendants' renewed motion for summary judgment based on recent Ninth Circuit decision on forward-looking statements), *aff'd*, *AMF Pensionsforsakring AB v. Precision Castparts Corp.*, 2022 WL 2800825 (9th Cir. July 18, 2022); *see also Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017), *aff'd*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th. Cir. 2018); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 496 (D. Conn. 2013), *aff'd*, *Dalberth v. Xerox*, 766 F.3d 172 (2d Cir. 2014).

     64.     Even cases that have survived summary judgment can be dismissed prior to trial in connection with *Daubert* motions, such as those that were likely to be filed by Defendants here.

*See, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 197-98 (D. Mass. 2012), *aff'd* 752 F.3d 82 (1st Cir. 2014) (granting summary judgment *sua sponte* in favor of the defendants after finding that the event study offered by plaintiffs' expert was unreliable and that there was accordingly no evidence that the market reacted negatively to disclosures).

65.     Even when securities class action plaintiffs successfully overcome multiple substantive and procedural hurdles before trial, there remain significant risks that a jury will not find the defendants liable or award expected damages. *See, e.g.*, *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 (N.D. Cal. June 14, 2023) (defense verdict in securities class action even though the court had already found the statements were false and defendant had acted recklessly in issuing them, and the same conduct had resulted in SEC charges and a settlement).

66.     Further, post-trial motions, based on a complete record, also present risks. For example, in *In re BankAtlantic Bancorp, Inc.*, following a jury verdict in the plaintiffs' favor, the district court granted the defendants' motion for judgment as a matter of law and entered judgment in favor of the defendants on all claims. 2011 WL 1585605, at *14-22 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012) (finding that there was insufficient trial evidence to support a finding of loss causation). Intervening changes in the law may also impact a successful trial verdict. For example, a district court in Oregon reconsidered its order denying defendants' motion for summary judgment and granted the motion more than a year later based on a new decision by the Ninth Circuit. *See Precision Castparts*, 2021 WL 2080016, at *6.

67.     Accordingly, securities class actions face serious risks of dismissal and non-recovery at all stages of litigation.

App. 027

**B.    Specific Risks Concerning this Action**

68.    Plaintiffs and Lead Counsel believe the claims asserted against Defendants in this action are meritorious. They recognize, however, that this Action presented risks to establishing liability. As discussed further below, Defendants had vigorously contended that their challenged statements about construction of the China Parks were not false or misleading when made and further that, even if any of their statements were false or misleading, Defendants did not have any intent to mislead investors. Defendants would also argue that any alleged misstatements were not the cause of the declines in the price of Six Flags common stock at issue. Therefore, the risks of continued litigation were significant, and the class's ultimate potential for recovery was always in question.

**1.    Risks Concerning Liability**

**a.    Falsity**

69.    While Plaintiffs ultimately prevailed in sustaining the majority of their claims at the motion to dismiss stage—following two dismissals of the Action and two appeals— Plaintiffs recognize that they would face challenges in proving that Defendants' statements were materially false and misleading when made at summary judgment or at trial.

70.    For example, Defendants were expected to argue that Riverside had continued to pay Six Flags and its vendors during the time period at issue, and that, to the extent that Riverside missed any payments, it caught up. Defendants were also expected to argue that they had no obligation to disclose Riverside's financial difficulties to investors until the end of the Class Period, when they decided to terminate their agreements with Riverside and learned that Riverside had fallen out of favor with the Chinese government.

71.    Similarly, Defendants would argue that their statements about progress of the China Parks and the timeline for opening of the China Parks were true at the time they were made and

App. 028

were based on best information that Defendants had at the time—or were inactionable as either puffery or protected forward-looking statements. Defendants could point to the fact that they repeatedly updated investors during the Class Period concerning developments that had delayed the timelines for the opening of the China Parks. Thus, to prove falsity, it would not be sufficient for Plaintiffs to simply establish that the development of the China Parks was delayed: they would need to prove that they delays were much more significant than anything Defendants had disclosed and further were known by Defendants earlier than disclosed. While allegations in the Complaint in this regard, including those from former Six Flags employees, were found sufficient at the pleading stage, it was uncertain that the same result would be found after a review of all admissible evidence at summary judgment or trial.

72.    Finally, with respect to the alleged misstatements concerning revenue recognition, Plaintiffs expect that Defendants would argue that their revenue recognition was always appropriate under the relevant accounting standards at issue.  Defendants would also point to the fact that the Company's auditor, KPMG, had reviewed and approved the Company's revenue recognition practices and its financial statements.

**b.    Materiality**

73.    Defendants were also expected to argue that—even if any of the statements concerning the progress of the China Parks or revenue recognition were found to be false or misleading—these statements were not material to Six Flags' business because international licensing revenue only accounted for 3% of the Company's total revenue. Moreover, any adjustment to the Company's licensing revenue based on delays in the timeline for the opening of the China Parks would not have eliminated that revenue entirely, but only cause it to be proportionally adjusted based on the revised timetable. Thus, Defendants would have a colorable argument that any such revenue adjustments would be immaterial to investors.

22

### c.    Scienter

74.    Even if Plaintiffs succeeded in establishing that Defendants' statements were false or misleading, Plaintiffs would still need to prove to a jury that Defendants made the misstatements with scienter—i.e., an intent to defraud or with deliberate recklessness. Throughout this litigation, Defendants have vigorously argued that they believed their statements to be true and that they had no intent to commit fraud. They would certainly have continued to press those arguments at summary judgment and trial, when Plaintiffs' allegations no longer need to be accepted as true.

75.    As they have previously argued, Defendants were expected to argue that they earnestly believed their statements as to the progress of, and timeline for, opening the China Parks, and that they updated investors each time they became aware of developments that would delay the China Parks opening timeline, such as in October 2018, February 2019, and October 2019. Defendants would argue that these disclosures and other cautionary statements were good evidence that Defendants were making their best efforts to keep investors updated on the evolving progress of the China Parks. If the case had proceeded, Plaintiffs would have sought to marshal evidence showing that Defendants knew that the delays were more significant than what was disclosed to investors—or were known by Defendants earlier than their disclosures. But there was no certainty that Plaintiffs would succeed in convincing a jury of this.

76.    Defendants would also point to the blessing of the Company's handling of revenue recognition by KPMG—one of the "big four" accounting firms—as further evidence that Defendants honestly believed that their statements about revenue were accurate.

77.    Defendants would also contest Plaintiffs' theory of scienter, which alleged that Individual Defendants were motivated to make the alleged misstatements because of their bonus compensation structure. While the Fifth Circuit credited these motive allegations for the purposes of the pleading stage, at summary judgment and at trial Defendants would have the opportunity to

App. 030

rebut this motive argument through evidence, including documentary evidence and the Individual Defendants' testimony. Among other things, Defendants would be able to argue that their voluntary revenue adjustment in February 2019 had caused Defendants to lose their bonuses and thus weighs against any inference of fraudulent intent.

### 2.    Risks Related to Loss Causation and Damages

78.    Even assuming that Plaintiffs and Lead Counsel overcame Defendants' arguments and established liability at trial, Plaintiffs would have still confronted additional challenges in establishing loss causation and damages. Indeed, these were some of the most significant risks remaining in the case.

79.    Defendants were expected to argue that by October 23, 2019 sufficient information about difficulties in the development of the China Parks had been disclosed to the public, such that full truth was on the market. Thus, Defendants would argue that third and fourth alleged corrective disclosures (on January 10, 2020 and February 20, 2020) did not include any new, material information related to the allegations that had not already been disclosed to the market, and thus the price declines following those disclosures could not be included in damages. For these disclosures, it was expected that Defendants would attempt to show that analysts already knew about Riverside's financial difficulties and had already removed revenue attributable to the China Parks from their financial models for Six Flags. This argument would have been particularly challenging with respect to the final alleged corrective disclosures in February 2020. If the Court or the jury had agreed, this would have shortened the Class Period and would have reduced potential maximum damages significantly.

80.    In addition, Plaintiffs and Lead Counsel anticipate that Defendants would argue at summary judgment, trial, and subsequent stages of the proceedings, that the declines in the price of Six Flags common stock were not caused entirely—or at all—by the alleged corrective

disclosures. We expect that Defendants would argue that each of the alleged corrective disclosures coincided with the release of other negative information, unrelated to the allegations, which must be disaggregated from any measure of damages. Defendants would have colorable arguments that even the earlier February 2019 and October 2019 disclosures were accompanied by, for example, decreased park attendance growth, admissions per capita growth, and in-park spending per capita growth. Plaintiffs' expert estimated that disaggregating these factors would reduce recoverable damages considerably.

### 3.    Risks Related to Class Certification

81.    Plaintiffs and Lead Counsel believe that this Action is suitable for class certification and that it would have been appropriate for the Action to be certified. However, Defendants were expected to forcefully raise several challenges at the class certification stage. First, as noted above, the Fifth Circuit had found that Plaintiffs had not sufficiently alleged the falsity of Defendants' statements concerning the timeline for the China Parks made in October 2019 because, by that date, Defendants had already made sufficient disclosures about expected changes in the timelines. The Fifth Circuit held, on its Second Appeal Decision, that its finding with respect to *falsity* in that one category of statements did not necessarily mean that Defendants' disclosures had fully disclosed the fraud and removed all artificial inflation in Six Flags common stock based on the previous alleged misstatements (and thus eliminated loss causation for the subsequent disclosures). However, at the class certification stage, Defendants would have attempted to show that their disclosures had fully cured any misrepresentation on the market as of October 2019.

82.    Second, Defendants were also expected to argue that there should be no class-wide presumption of reliance (and thus no class certification) on the grounds that there was no "price impact" from Defendants' alleged false statements. As is common in securities fraud actions, Plaintiffs planned to rely on the stock price reactions to the alleged corrective disclosures to

25

establish the price impact of the alleged false statements. In turn, Defendants would have had an opportunity to "rebut the presumption of reliance," as permitted by the Supreme Court's decision in *Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*, 594 U.S. 113 (2021), by showing that there was not a sufficiently direct connection between the alleged misstatements and the corrective disclosures to establish price impact. *See Arkansas Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 96-105 (2d Cir. 2023) (decertifying a previously certified class on the ground that there was an "insufficient link between the corrective disclosures and the alleged misrepresentations"); *see also FibroGen*, 2024 WL 1064665, at *11 (finding no price impact after a specified date, eliminating final corrective disclosure, and certifying shorter class period than that proposed by the plaintiff). For these reasons, there were risks here to certifying a class that encompassed Plaintiffs' entire proposed Class Period.

### 4. The Settlement Amount Compared To The Likely Maximum Damages That Could Be Proved At Trial

83.    The Settlement Amount—$40 million in cash, plus interest—represents a significant recovery for the Settlement Class. The Settlement is more than three times the size of the median securities class-action settlement in the Fifth Circuit from 2014 to 2023 ($11.7 million). *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024), attached hereto as Exhibit 1, at 20 (App. 72).

84.    The $40 million Settlement is also a favorable result when it is considered in relation to the maximum amount of damages that realistically could be established at trial—even assuming that Plaintiffs and the Settlement Class prevailed on all liability issues, including falsity and scienter, for the remaining misstatements alleged and were able to maintain the full Class Period.

85.    The theoretical maximum damages here, based on full amount of the abnormal stock price declines on each of the four corrective disclosure dates, totaled approximately $930 million. However, Lead Counsel understood that this did not reflect a likely achievable damages assessment because it did not account for disaggregating the full impact of confounding information unrelated to the alleged fraud. After consultation with their damages expert on the issue of disaggregation, Lead Counsel believe that, if Plaintiffs prevailed on all liability arguments, the maximum damages that could realistically be established at trial would range between approximately $370 million and $470 million. Accordingly, the $40 million Settlement represents approximately 8.5% to 10.8% of the realistic maximum achievable damages, which is a favorable result for the Settlement Class.

86.    Significantly, Defendants were expected to assert that the maximum damages were much lower than that range, or even zero. Moreover, as discussed above, the risks of establishing liability here were significant, and there were risks that certain corrective disclosures might be eliminated from the case or that the Class Period might have been shortened, which would have furthered reduced potential damages. In sum, the $40 million recovery is a favorable result for the Settlement Class. *See, e.g.*, *In re Apache Corp. Sec. Litig.*, 2024 WL 4881432, at *6 (S.D. Tex. Nov. 25, 2024) (approving securities class action settlement representing "approximately 4.4% of the potential estimated damages for the class period"); *Celeste v. Intrusion Inc*., 2022 WL 17736350, at *2 (E.D. Tex. Dec. 16, 2022) (approving settlement as fair, reasonable and adequate where "class settlement value represents 7.61% of the maximum possible damages that could have been recovered at trial"); *see also See In re Biolase, Inc. Sec. Litig*., 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding that a settlement recovery of 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *In re China Sunergy Sec. Litig.*,

27

2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlements in securities class actions "have ranged from 3% to 7% of the class").

87.    Given the meaningful litigation risks, and the immediacy and amount of the $40,000,000 recovery for the Settlement Class, Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class.

## IV.    PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE

88.    The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to potential members of the Settlement Class. The Preliminary Approval Order also set January 7, 2025 as the deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application or to request exclusion from the Settlement Class.

89.    In accordance with the Preliminary Approval Order, Lead Counsel instructed JND Legal Administration ("JND"), the Court-approved Claims Administrator, to begin disseminating copies of the Notice and the Claim Form by mail and to publish the Summary Notice. The Notice contained, among other things, a description of the Action, the Settlement, the proposed Plan of Allocation, and Settlement Class Members' rights to participate in the Settlement, object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or exclude themselves from the Settlement Class. The Notice also informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and for Litigation Expenses in an amount not to exceed $650,000.

28

90.     In order to disseminate the Notice and Claim Form (together, the "Notice Packet"), JND obtained information from Six Flags and from banks, brokers, and other nominees regarding the names and addresses of potential Settlement Class Members. The accompanying Declaration of Luiggy Segura of JND, attached hereto as Exhibit 2, provides additional information about the Claims Administrator's distribution of the Notice Packet. *See* Segura Decl. ¶¶ 3-12 (App. 80-82).

91.     JND began mailing copies of the Notice Packet to potential Settlement Class Members and nominee owners on October 7, 2024. *Id*. ¶¶ 5-6 (App. 80-81). As of December 19, 2024, JND had mailed a total of 96,288 Notice Packets to potential Settlement Class Members and nominees. *Id*. ¶ 12 (App. 82).

92.     On October 17, 2024, in accordance with the Preliminary Approval Order, JND caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. *Id*. ¶ 13 (App. 82-83).

93.     Lead Counsel also caused JND to establish a dedicated settlement website, www.SixFlagsSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, Complaint, and other relevant documents. *See* Segura Decl. ¶ 14 (App. 83). That website became operational on October 7, 2024. *Id*. Lead Counsel also made copies of the Notice and Claim Form and other documents available on its own website, www.blbglaw.com. Lead Counsel and JND will continue to monitor and to update the website as needed as the settlement process continues. For example, Plaintiffs' papers in support of their motion for final approval of the Settlement and Lead Counsel's papers in support of its motion for attorneys' fees and litigation expenses will be made available on the website after

29

they are filed, and any orders entered by the Court in connection with the motions will also be posted.

94.     As noted above, the deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation, or Fee and Expense Application, or to request exclusion from the Settlement Class is January 7, 2025. To date, two requests for exclusion have been received, *see* Segura Decl. ¶ 16 (App. 84), and no objections to the Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application have been received. Lead Counsel will file reply papers on January 21, 2025, that will address all requests for exclusion and any objections that may be received.

## V.     ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

95.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who want to be eligible to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form with all required information postmarked (if mailed) or submitted online no later than February 4, 2025. As set forth in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members who submit eligible claims according to a plan of allocation approved by the Court.

96.     Lead Counsel consulted with Plaintiffs' damages expert in developing the proposed plan of allocation for the Net Settlement Fund (the "Plan of Allocation" or "Plan"). Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered economic losses as result of the conduct alleged in the Action.

97.     The Plan of Allocation is set forth at pages 17 to 22 of the Notice. *See* Segura Decl., Ex. A at pp. 17-22 (App. 102-107). As described in the Notice, the calculations under the Plan of Allocation are intended as a method to weigh the claims of Settlement Class Members against one

30

another for the purposes of making an equitable *pro rata* allocation of the Net Settlement Fund. Notice ¶ 72 (App. 102).

98.    In developing the Plan of Allocation, Plaintiffs' damages expert calculated the estimated amount of artificial inflation in the per-share price of Six Flags common stock which allegedly was proximately caused by Defendants' alleged materially false and misleading statements and omissions during the Class Period. *See* Notice ¶ 73 (App. 102). In calculating the estimated artificial inflation, Plaintiffs' damages expert considered the price changes in Six Flags common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry factors. *Id.*

99.    In this case, Plaintiffs allege that Defendants made false statements and omitted material facts during the Class Period (from April 24, 2018 through February 19, 2020, inclusive), which had the effect of artificially inflating the price of Six Flags common stock, and that corrective information allegedly revealing the truth concerning Defendants' alleged misrepresentations and omissions was released to the market on February 14, 2019, October 23, 2019, January 10, 2020, and February 20, 2020, which removed the artificial inflation from the price of Six Flags common stock on those dates. Notice ¶ 74 (App. 102). In order to be eligible under the Plan of Allocation, a Settlement Class Member that purchased or otherwise acquired Six Flags common stock during the Class Period must have held those shares through at least one of the dates where new corrective information was released to the market and partially removed the artificial inflation from the price of Six Flags common stock. *See* Notice ¶ 75 (App. 102-103).

100.    Recognized Loss Amounts are calculated under the Plan of Allocation for each purchase or acquisition of publicly traded Six Flags common stock during the Class Period that is

listed on a Claimant's Claim Form and for which adequate documentation is provided. In general, Recognized Loss Amounts are calculated as the lesser of: (a) the difference between the amount of alleged artificial inflation at the time of purchase or acquisition and the time of sale, or (b) the difference between the purchase price and the sale price for the shares. *See* Notice ¶ 75 (App. 102-103). For shares sold prior to the close of trading on February 13, 2019, the Recognized Loss Amount is zero, because those shares were sold before first alleged corrective disclosure and thus were not damaged by the alleged fraud. *Id*. ¶ 77.A (App. 103).

101.    In addition, as stated in the Notice, and in accordance with the PSLRA, Recognized Loss Amounts for shares of Six Flags common stock sold during the 90-day period after the end of the Class Period are further limited to the difference between the purchase price and the average closing price of the stock from the end of the Class Period to the date of sale. Notice ¶ 77.C(ii) (App. 103). Recognized Loss Amounts for shares of Six Flags common stock still held as of the close of trading on May 19, 2020, the end of the 90-day period, will be the lesser of (a) the amount of artificial inflation on the date of purchase or (b) the difference between the purchase price and $18.07, the average closing price for the stock during that 90-day period. *Id*. ¶ 77.D (App. 103).

102.    The sum of a Claimant's Recognized Loss Amounts for all of his, her, or its purchases of Six Flags common stock during the Class Period is the Claimant's "Recognized Claim." Notice ¶ 78 (App. 104). The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Six Flags common stock during the Class Period. A Claimant's Recognized Claim will be limited to the amount of his, her, or its market loss in Six Flags common stock transactions during the Class Period, and Claimants who have an overall market gain are not eligible for a recovery. *Id*. ¶¶ 85-86 (App. 104-105).

32

103.    The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶ 87 (App. 105). If an Authorized Claimant's *pro* rata distribution amount calculates to less than ten dollars, no payment will be made to that Authorized Claimant. *Id*. ¶ 88 (App. 105). Those funds will be included in the distribution to the Authorized Claimants whose payments exceed the ten-dollar minimum.

104.    One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. If any funds remain after the initial *pro rata* distribution, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions to Authorized Claimants will be conducted. Notice ¶ 89 (App. 105). Only when the residual amount left for re-distribution to Settlement Class Members is so small that a further re-distribution would not be cost effective (for example, where the administrative costs of conducting the additional distribution would largely subsume the funds available), the remaining balance will be contributed to one or more non-sectarian, not-for-profit, 501(c)(3) organizations to be proposed by Lead Counsel and approved by the Court. *Id*.

105.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on losses they suffered on purchases of Six Flags common stock that were attributable to the conduct alleged. To date, no objections to the proposed Plan of Allocation have been received.

## VI.    THE FEE AND EXPENSE APPLICATION

106.    Lead Counsel is applying to the Court on behalf of itself and Klausner Kaufman for an award of attorneys' fees of 25% of the Settlement Fund, including any interest earned (the "Fee Application"). Lead Counsel also requests payment for litigation expenses that it incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $500,558.88 (the "Expense Application"). The legal authorities supporting the requested fee and

33

expenses are discussed in Lead Counsel's Fee and Expense Motion. The primary factual bases for the requested fee and expenses are summarized below.

### A.    The Fee Application

107.    For their efforts on behalf of the Settlement Class, Lead Counsel is applying for a fee award to be paid from the Settlement Fund on a percentage basis. The percentage method is the standard and appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interests of Lead Plaintiff and the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. Use of the percentage method has been recognized as appropriate by the Supreme Court and Fifth Circuit for cases of this nature where an all-cash common fund has been recovered for the class.

108.    Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in the Fee Motion, a 25% fee award is well within the range of percentage fees typically awarded in securities class actions in this Circuit in comparable cases, and is fair and reasonable in light of all the circumstances in this case.

### 1.    Plaintiffs Have Authorized and Support the Fee Application

109.    Lead Plaintiff Oklahoma Firefighters and Named Plaintiff Key West are both institutional investors that monitored the prosecution and settlement of this Action. Plaintiffs have authorized Lead Counsel to seek the fee requested.

### 2.    The Work Performed by Counsel

110.    Lead Counsel and Klausner Kaufman devoted substantial time to the prosecution of the Action. The work that counsel performed in this Action included, among other things: (i) conducting a thorough investigation into the claims asserted, which included a detailed review

App. 041

of public documents, interviews with over 50 potential witnesses, and consultation with experts; (ii) drafting the detailed Consolidated Complaint based on this extensive investigation; (iii) preparing Plaintiffs' opposition to Defendants' motion to dismiss the Consolidated Complaint; (iv) following the Court's dismissal of the Action, filing a motion to amend or set aside the judgment and for leave to file an amended complaint; (v) preparing a second motion to amend the complaint and Key West's motion to intervene, and opposing Defendants' motion for judgment on the pleadings; (vi) litigating two appeals to the Fifth Circuit through briefing and oral argument; (vii) undertaking substantial fact discovery, including preparing and responding to requests for the production of documents and interrogatories, preparing and serving subpoenas on 14 third parties, obtaining approximately 180,000 pages of documents, and identifying and reviewing the most relevant documents produced; (viii) consulting with experts and consultants in the areas of financial economics (including loss causation, damages, and market efficiency); accounting; the theme park construction industry; and Chinese government-funded construction projects; and (ix) engaging in arm's-length settlement negotiations to achieve the Settlement.

111.    Attached hereto as Exhibits 3A and 3B are Declarations from myself on behalf of BLB&G and from Robert D. Klausner on behalf of Klausner Kaufman in support of the motion for attorneys' fees and litigation expenses. App. 127-181. The first page of Exhibit 3 contains a summary chart of the hours expended and lodestar amounts for each firm, as well as a summary of each firm's litigation expenses. App. 126. Included within each supporting Declaration are schedules summarizing the hours and lodestar of each firm from the inception of the case through December 13, 2024, and a summary of Litigation Expenses, by category, and a firm resume, among other documents. No time expended in preparing the application for fees and expenses has been included in the lodestar. Lead Counsel also notes that there will not be any additional fees charged

for any work by counsel following this application, notwithstanding that counsel already has and will continue to invest substantial time and effort in this case after the December 13, 2024 cut-off imposed for its lodestar submissions on this application.

112.    As set forth in Exhibit 3, Lead Counsel and Klasuner Kaufman collectively expended a total of 7,767.2 hours in the investigation and prosecution of the Action from its inception through December 13, 2024, with a total lodestar of $5,140,933.75. App. 126. The requested fee of 25% of the Settlement Fund (or $10,000,000, plus interest accrued at the same rate as the Settlement Fund) therefore represents a multiplier of approximately 1.9 of counsel's lodestar. As discussed in further detail in the Fee Motion, the requested multiplier cross-check is well within the range of multipliers typically seen in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

### 3.    The Experience and Standing of Lead Counsel

113.    A copy of Lead Counsel BLB&G's firm resume, which includes information about the standing of the firm and brief biographical summaries for each attorney who worked on the matter, including information about their position, education, and relevant experience, is attached as Exhibit 3A-3 hereto (App. 138-170). As demonstrated by the firm resume, BLB&G is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases. BLB&G is consistently ranked among the top plaintiffs' firms in the country. As reflected in ISS/Securities Class Action Services' latest report on the "Top 100 U.S. Class Action Settlements of All Time," BLB&G has been lead or co-lead counsel in more top recoveries than any other firm in U.S. history. BLB&G has taken complex cases such as this Action to trial, and it is among the few firms with experience doing so on behalf of plaintiffs in securities class actions. As reflected in its firm resume, BLB&G has obtained numerous significant settlements. BLB&G served as Lead Counsel in *In re WorldCom, Inc.*

App. 043

*Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which recoveries obtained for the class totaled in excess of $6 billion. BLB&G also secured a resolution of $2.43 billion for the class in *In re Bank of America Corp. Securities, Derivative & "ERISA" Litigation*, No. 09-md-2058 (S.D.N.Y.); a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.); a $1 billion dollar recovery for the class in 2023 in *In re Wells Fargo & Co. Securities Litigation*, No. 1:20-cv-04494-JLR-SN (S.D.N.Y.); and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.).

### 4.    Standing and Caliber of Defendants' Counsel

114.    Defendants were represented in the Action by a team of extremely able attorneys from Skadden, Arps, Slate, Meagher, and Flom LLP; Kirkland & Ellis LLP; and Cantey Hanger LLP, who vigorously litigated the Action. In the face of this skillful and well-financed opposition, Lead Counsel was able to develop a case that was sufficiently strong to persuade Defendants and their counsel to settle the case on terms that will benefit the Settlement Class.

### 5.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases

115.    The prosecution of these claims was undertaken on a contingent-fee basis, and the considerable risks assumed by Lead Counsel in bringing this Action to a successful conclusion are described above. The risks assumed by Lead Counsel here, and the time and expenses incurred by Lead Counsel without any payment, were extensive.

116.    From the outset, Lead Counsel understood that it was embarking on a complex, expensive, lengthy, and hard-fought litigation with no guarantee of being compensated for the substantial investment of time and the outlay of money that the prosecution of the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient

resources (in terms of attorney and support staff time) were dedicated to the litigation, and that Lead Counsel would further advance all of the costs necessary to pursue the case vigorously on a fully contingent basis, including funds to compensate vendors and consultants and to cover the considerable out-of-pocket costs that a case such as this typically demands. Because complex shareholder litigation often proceeds for several years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Counsel has received no compensation during the course of this Action and no reimbursement of out-of-pocket expenses, yet they have incurred over $500,000 in expenses in prosecuting this Action for the benefit of Six Flags investors.

117.    Lead Counsel also bore the risk that no recovery would be achieved in the Action. As discussed above, this case presented a number of significant trial risks and uncertainties, including challenges in proving the materiality and falsity of Defendants' statements, establishing scienter, and establishing loss causation and damages. These risks were elevated in this case, given that the Court twice dismissed the Action, and Six Flags never restated any of its financial statements or admitted to any wrongdoing whatsoever.

118.    Lead Counsel's persistent efforts in the face of risks and uncertainties have resulted in a significant and certain recovery for the Settlement Class.

### 6.    The Reaction of the Settlement Class to the Fee Application

119.    As noted above, as of December 19, 2024, over 96,000 Notice Packets had been sent to potential Settlement Class Members advising them that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund. *See* Segura Decl. ¶ 12 and Ex. A (Notice ¶¶ 5, 52) (App. 82, 87, 97). In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on October 17, 2024. *See*

38

Segura Decl. ¶ 13 (App. 82-83). To date, no objections to the request for attorneys' fees have been received.

### B.    The Expense Application

120.    Lead Counsel also respectfully seeks $500,558.88 in litigation expenses from the Settlement Fund that it reasonably incurred in connection with the prosecution of the Action.

121.    From the outset of the Action, Lead Counsel has been cognizant of the fact that it might not recover any of the expenses it incurred, and, further, if there were to be reimbursement of expenses, it would not occur until the Action was successfully resolved, often a period lasting several years. Lead Counsel also understood that, even assuming that the case were ultimately successful, reimbursement of expenses would not necessarily compensate them for the lost use of funds advanced by them to prosecute the Action. Consequently, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

122.    As set forth in Exhibit 3 hereto, Lead Counsel and Klausner Kaufman have paid or incurred a total of $500,558.88 in unreimbursed litigation expenses in connection with the prosecution of the Action. The expenses are summarized in the declarations submitted in Exhibit 3, which identify each category of expense (*e.g.*, experts and consultants, local counsel, online legal and factual research, court fees, telephone charges, and printing and copying) and the amount incurred for each category. App. 137, 176.

123.    Of the total amount of expenses, $139,330.88, or approximately 28%, was expended for the retention of experts and consultants. Lead Counsel consulted with a well-qualified expert in market efficiency, loss causation, and damages during its investigation and the preparation of the Consolidated Complaint and Complaint; during discovery; in connection with settlement negotiations with Defendants, and in the development of the proposed Plan of

App. 046

Allocation. In addition, Lead Counsel also consulted with experts in accounting; the theme park construction industry; and Chinese government-funded construction.

124.    Lead Counsel also seeks $139,403.71 for reimbursement of the legal fees and expenses for local counsel who worked for the benefit of the Settlement Class on hourly basis in this matter.  The two firms involved, McKool Smith and the Law Office of Jason Nash, provided Lead Counsel with substantial assistance throughout the litigation in reviewing certain papers, formulating strategy, and providing advice with respect practices and procedures in the District and the Fort Worth Division.

125.    Another large component of the litigation expenses was for online legal and factual research, which was necessary to prepare the complaints, research the law pertaining to the claims asserted in the Action, oppose Defendants' motion to dismiss and motion for judgment on the pleadings, and litigate the two appeals. The charges for on-line research amounted to $104,501.43 or 20.1% of the total amount of expenses.

126.    The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, mediator's fees; document management costs; court fees; long distance telephone charges; and postage and delivery expenses. All of the litigation expenses incurred were reasonable and necessary to the successful litigation of the Action.

127.    The total amount requested for expenses, $500,558.88, is substantially below the $650,000 that Settlement Class Members were advised could be sought in the Notice. To date, no objection has been raised as to the maximum amount of expenses set forth in the Notice.

128.    Attached hereto as Exhibit 4 is a compendium of true and correct copies of the following documents cited in the Fee Motion.  App. 182-324.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of December, 2024.

/s/ John Rizio-Hamilton
John Rizio-Hamilton

41

# Exhibit 1



# CORNERSTONE RESEARCH

Economic and Financial Consulting and Expert Testimony

# Securities Class Action Settlements

2023 Review and Analysis

# Table of Contents

| | |
|---|---|
| 2023 Highlights | 1 |
| Author Commentary | 2 |
| Total Settlement Dollars | 3 |
| Settlement Size | 4 |
| Type of Claim | 5 |
| Rule 10b-5 Claims and "Simplified Tiered Damages" | 5 |
| Plaintiff-Estimated Damages | 7 |
| '33 Act Claims and "Simplified Statutory Damages" | 8 |
| Analysis of Settlement Characteristics | 10 |
| GAAP Violations | 10 |
| Derivative Actions | 11 |
| Corresponding SEC Actions | 12 |
| Institutional Investors | 13 |
| Time to Settlement and Case Complexity | 14 |
| Case Stage at the Time of Settlement | 15 |
| Cornerstone Research's Settlement Analysis | 16 |
| Research Sample | 17 |
| Data Sources | 17 |
| Endnotes | 18 |
| Appendices | 19 |
| About the Authors | 24 |

# Figures and Appendices

| | |
|---|---|
| Figure 1: Settlement Statistics | 1 |
| Figure 2: Total Settlement Dollars | 3 |
| Figure 3: Distribution of Settlements | 4 |
| Figure 4: Median and Average "Simplified Tiered Damages" in Rule 10b-5 Cases | 5 |
| Figure 5: Median Settlement as a Percentage of "Simplified Tiered Damages" by Damages Ranges in Rule 10b-5 Cases | 6 |
| Figure 6: Settlements by Nature of Claims | 8 |
| Figure 7: Median Settlement as a Percentage of "Simplified Statutory Damages" by Damages Ranges in '33 Act Claim Cases | 9 |
| Figure 8: Median Settlement as a Percentage of "Simplified Tiered Damages" and Allegations of GAAP Violations | 10 |
| Figure 9: Frequency of Derivative Actions | 11 |
| Figure 10: Frequency of SEC Actions | 12 |
| Figure 11: Median Settlement Amounts and Institutional Investors | 13 |
| Figure 12: Median Settlement by Duration from Filing Date to Settlement Hearing Date | 14 |
| Figure 13: Median Settlement Dollars and Resolution Stage at Time of Settlement | 15 |
| Appendix 1: Settlement Percentiles | 19 |
| Appendix 2: Settlements by Select Industry Sectors | 19 |
| Appendix 3: Settlements by Federal Circuit Court | 20 |
| Appendix 4: Mega Settlements | 20 |
| Appendix 5: Median and Average Settlements as a Percentage of "Simplified Tiered Damages" | 21 |
| Appendix 6: Median and Average Settlements as a Percentage of "Simplified Statutory Damages" | 21 |
| Appendix 7: Median and Average Maximum Dollar Loss (MDL) | 22 |
| Appendix 8: Median and Average Disclosure Dollar Loss (DDL) | 22 |
| Appendix 9: Median Docket Entries by "Simplified Tiered Damages" Range | 23 |

Analyses in this report are based on nearly 2,200 securities class actions filed after passage of the Private Securities Litigation Reform Act of 1995 (Reform Act) and settled from 1996 through year-end 2023. See page 17 for a detailed description of the research sample. For purposes of this report and related research, a settlement refers to a negotiated agreement between the parties to a securities class action that is publicly announced to potential class members by means of a settlement notice.

# 2023 Highlights

In 2023, while the number of settled securities class actions declined 21% relative to the 15-year high in 2022, the median settlement amount, median "simplified tiered damages," and median total assets of issuer defendants all remained at historically elevated levels.[1]

- There were 83 securities class action settlements in 2023 with a total settlement value of approximately $3.9 billion, compared to 105 settlements in 2022 with a total settlement value of approximately $4.0 billion. (page 3)

- The median settlement amount of $15 million is the highest level since 2010 and represents an increase of 11% from 2022, while the average settlement amount ($47.3 million) increased by 25% over 2022. (page 4)

- There were nine mega settlements (equal to or greater than $100 million), with a total settlement value of $2.5 billion. (page 3)

- In 2023, 34% of cases settled for more than $25 million, the highest percentage since 2012. (page 4)

- Median "simplified tiered damages" declined 16% from the record high in 2022, but remained at elevated levels compared to the prior nine years.[2] (page 5)

- Issuer defendant firms involved in cases that settled in 2023 were 19% larger than defendant firms in 2022 settlements as measured by median total assets, which reached its highest level since 1996. (page 5)

- The median duration from the case filing to the settlement hearing date of 3.7 years in 2023 was unusually high. Since the Reform Act's passage, the time to settle reached this level in only one other year (2006). (page 14)

---

**Figure 1: Settlement Statistics**
(Dollars in millions)

| | 2018–2022 | 2022 | 2023 |
|---|---|---|---|
| Number of Settlements | 420 | 105 | 83 |
| Total Amount | $19,545.7 | $3,974.7 | $3,927.3 |
| Minimum | $0.4 | $0.7 | $0.8 |
| Median | $11.7 | $13.5 | $15.0 |
| Average | $46.5 | $37.9 | $47.3 |
| Maximum | $3,640.9 | $842.9 | $1,000.0 |

Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented.

# Author Commentary

## Insights and Findings

Continuing an increase observed in 2022, the size of settled cases in 2023 (measured by the median settlement amount) reached the highest level in over a decade. This occurred despite a decline in median "simplified tiered damages," a measure of potential shareholder losses that our research finds to be the single most important factor in explaining individual settlement amounts.

The size of the issuer defendant firms involved in cases settled in 2023 (measured by median total assets) also increased. Indeed, median total assets for defendants in 2023 settlements reached an all-time high among post–Reform Act settlements and was 19% higher than in 2022. Issuer defendant assets serve, in part, as a proxy for resources available to fund a settlement and are highly correlated with settlement amounts. Thus, the increase in defendant assets likely contributed to the growth in settlement amounts in 2023.

One factor causing the increase in asset size of defendant firms in cases settled in 2023 may be that, overall, these firms were more mature than in prior years. Specifically, the median age as a publicly traded firm was 16 years, compared to the median age of 11 years for cases settled from 2014 to 2022. In addition, the percentage of cases settled in 2023 that involved firms in the financial sector (over 15%) was higher than the prior nine-year average. Firms in the financial sector involved in securities class action settlements have consistently reported higher total assets than other issuer firm defendants.

In 2023, cases took longer to settle. They also reached more advanced stages prior to resolution, including a smaller proportion of cases settled before a ruling on class certification compared to prior years. Since longer periods to reach settlement are also correlated with higher settlement amounts, this increase is consistent with the higher overall median settlement value.

*Securities class actions settled in 2023 continued to take longer to resolve—disruptions associated with the COVID-19 pandemic may have contributed to this increase.*

*Dr. Laarni T. Bulan*
*Principal, Cornerstone Research*

Longer times to reach a settlement and more advanced litigation stages are also typically correlated with greater case activity, as measured by the number of entries on the court dockets. Surprisingly, the median number of docket entries increased only slightly compared to 2022. This, and the fact that over 80% of cases settled in 2023 had been filed by the end of 2020, suggests that the lengthened time to settlement can potentially be explained by delays related to the COVID-19 pandemic.

*The size of issuer defendants in 2023 settlements surpassed even the previous record in 2022, in part due to an increase in the number of financial sector defendants to the highest level in the last decade.*

*Dr. Laura E. Simmons*
*Senior Advisor, Cornerstone Research*

## Looking Ahead

While we do not necessarily expect new record highs in settlement dollars in the upcoming years, it is possible that settlement amounts will remain at relatively high levels, based on recent trends in securities class action filings, including elevated levels of Disclosure Dollar Loss and Maximum Dollar Loss. (See Cornerstone Research's *Securities Class Action Filings—2023 Year in Review*.)

Further, the most recent emergence of case filings related to the 2023 bank failures, combined with a relatively high proportion in the last few years of settled cases involving financial firms, may result in a continued rise in the asset size of issuer defendants involved in settlements. This may also contribute to high settlement amounts.

Additionally, considering the levels of filing activity in recent years, we do not anticipate dramatic increases in the number of cases settled in the upcoming years.

*—Laarni T. Bulan and Laura E. Simmons*

# Total Settlement Dollars

- While the number of settlements in 2023 declined by more than 20% from 2022, 2023 total settlement dollars were roughly the same as in 2022.

- The nine mega settlements in 2023—the highest number since 2016—ranged from $102.5 million to $1 billion. *(See Appendix 4 for an analysis of mega settlements.)*

- Cases involving institutional investors as lead plaintiffs represented 86% of total settlement dollars in 2023, in line with the percentage in 2022.

*Mega settlements accounted for nearly two-thirds of 2023 total settlement dollars, up from 52% in 2022.*

Figure 2: Total Settlement Dollars
2014–2023

(Dollars in billions)



| Year | Value | N |
|---|---|---|
| 2014 | $1.5 | N=63 |
| 2015 | $3.9 | N=77 |
| 2016 | $7.6 | N=85 |
| 2017 | $1.8 | N=80 |
| 2018 | $6.1 | N=78 |
| 2019 | $2.5 | N=74 |
| 2020 | $4.9 | N=76 |
| 2021 | $2.0 | N=87 |
| 2022 | $4.0 | N=105 |
| 2023 | $3.9 | N=83 |

Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented. "N" refers to the number of cases.

# Settlement Size

- The median settlement amount in 2023 was $15 million, an 11% increase from 2022 and 44% higher than the 2014–2022 median ($10.4 million). Median values provide the midpoint in a series of observations and are less affected than averages by outlier data.

- The average settlement amount in 2023 was $47.3 million, a 25% increase from 2022. (*See Appendix 1 for an analysis of settlements by percentiles*.)

- In 2023, 6% of cases settled for less than $2 million, the lowest percentage since 2013.

*The median settlement amount in 2023 reached the highest level since 2010.*

- The percentage of settlement amounts greater than $25 million (34%) was the highest since 2012, driven in part by the continued increase in settlement amounts in the $25 million to $50 million range.

- Issuers that have been delisted from a major exchange and/or declared bankruptcy prior to settlement are generally associated with lower settlement amounts. The number of such issuers declined from 10% in 2022 to a new all-time low of 7% in 2023, contributing to the higher overall median settlement amount in 2023.[3]

Figure 3: Distribution of Settlements
2014–2023

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented. Percentages may not sum to 100% due to rounding.

# Type of Claim

## Rule 10b-5 Claims and "Simplified Tiered Damages"

"Simplified tiered damages" uses simplifying assumptions to estimate per-share damages and trading behavior for cases involving Rule 10b-5 claims. It provides a measure of potential shareholder losses that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends.[4]

Cornerstone Research's analysis finds this measure to be the most important factor in estimating settlement amounts.[5] However, this measure is not intended to represent actual economic losses borne by shareholders. Determining any such losses for a given case requires more in-depth economic analysis.

*Median "simplified tiered damages" remained at elevated levels in 2023.*

- In 2023, the average "simplified tiered damages" was nearly six times as large as the median, the largest difference since 2016. This difference was primarily driven by seven cases with "simplified tiered damages" exceeding $5 billion.

- Higher "simplified tiered damages" are typically associated with larger issuer defendants. Consistent with the elevated levels of "simplified tiered damages," the median total assets of issuer defendants among settled cases in 2023 was $3.1 billion—154% higher than the prior nine-year median and higher than any other post–Reform Act year.

- Higher "simplified tiered damages" are also generally associated with larger Maximum Dollar Loss (MDL).[6] In 2023, the median MDL fell only slightly from the historical high in 2022. *(See Appendix 7 for additional information on median and average MDL.)*

Figure 4: Median and Average "Simplified Tiered Damages" in Rule 10b-5 Cases 2014–2023

(Dollars in millions)



Note: "Simplified tiered damages" are adjusted for inflation based on class period end dates and are estimated for common stock only; 2023 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

- Larger cases, as measured by "simplified tiered damages," typically settle for a smaller percentage of damages.

- In 2023, the overall median settlement as a percentage of "simplified tiered damages" of 4.5% increased 27% from 2022, but was in-line with the prior nine-year average percentage. *(See Appendix 5 for additional information on median and average settlement as a percentage of "simplified tiered damages.")*

- The median settlement as a percentage of "simplified tiered damages" of 4.6% for cases with "simplified tiered damages" from $500 million to $1 billion reached a five-year high in 2023.

Figure 5: Median Settlement as a Percentage of "Simplified Tiered Damages" by Damages Ranges in Rule 10b-5 Cases 2014–2023

(Dollars in millions)



Note: Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

## Plaintiff-Estimated Damages

In their motions for settlement approval, plaintiffs typically report an estimate of aggregate damages ("plaintiff-estimated damages").[7]

As explained in Cornerstone Research's *Approved Claims Rates in Securities Class Actions* (2020), "plaintiff-estimated damages" are often represented as plaintiffs' "best-case scenario" or the "maximum potential recovery" calculated by plaintiffs. However, the authors highlight a "selection bias" present in these data due to potential plaintiff counsel incentives to report "the lower end of the range of estimated total aggregate damages" to be able "to demonstrate to the court a high settlement amount relative to potential recovery." To the extent such incentives exist, their impact may vary across cases. Detailed information on plaintiffs' methodology to determine the reported amount is not disclosed. Hence, it is not possible to determine from the settlement documents the degree to which the methodologies employed are consistent across cases.

With the significant caveats above, "plaintiff-estimated damages" represent an additional measure of potential shareholder losses that may be used alongside "simplified tiered damages" in conjunction with settlement analyses.

## '33 Act Claims and "Simplified Statutory Damages"

For Securities Act of 1933 ('33 Act) claim cases—those involving only Section 11 and/or Section 12(a)(2) claims—potential shareholder losses are estimated using a model in which the statutory loss is the difference between the statutory purchase price and the statutory sales price, referred to here as "simplified statutory damages."[8]

- There were 10 settlements for cases with only '33 Act claims in 2023, with the majority of those cases filed in federal court (7) as opposed to state court (3).[9]

- In 2023, the percentage of cases with an underwriter defendant was 70%, down from the prior nine-year average of 88%.

- The median length of time from case filing to settlement hearing date for '33 Act claim cases was greater than four years—the longest observed duration in any post–Reform Act year for this type of case.

*In 2023, the median settlement amount for cases with only '33 Act claims was $13.5 million, an 85% increase from 2022.*

Figure 6: Settlements by Nature of Claims
2014–2023

(Dollars in millions)

| | Number of Settlements | Median Settlement | Median "Simplified Statutory Damages" | Median Settlement as a Percentage of "Simplified Statutory Damages" |
|---|---|---|---|---|
| Section 11 and/or Section 12(a)(2) Only | 84 | $9.9 | $158.1 | 7.5% |

| | Number of Settlements | Median Settlement | Median "Simplified Tiered Damages" | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|---|---|---|---|---|
| Both Rule 10b-5 and Section 11 and/or Section 12(a)(2) | 123 | $14.7 | $307.4 | 6.6% |
| Rule 10b-5 Only | 596 | $10.3 | $291.7 | 4.5% |

Note: Settlement dollars and damages are adjusted for inflation; 2023 dollar equivalent figures are presented.

- Over 2014–2023, the median size of issuer defendants (measured by total assets) was 40% smaller for cases with only '33 Act claims relative to those that also included Rule 10b-5 claims.

- The smaller size of issuer defendants in cases with only '33 Act claims is consistent with most of these cases involving initial public offerings (IPOs). From 2014 through 2023, 80% of all cases with only '33 Act claims have involved IPOs.

- In 2023, however, the median total assets for settled cases with only '33 Act claims ($2.5 billion) was over four times as large as the median total assets for such cases in 2014–2022 ($580 million).

*The median "simplified statutory damages" in 2023 increased by 115% from the 2022 median and represents the third highest since 1996.*

Figure 7: Median Settlement as a Percentage of "Simplified Statutory Damages" by Damages Ranges in '33 Act Claim Cases 2014–2023

(Dollars in millions)



Jurisdictions of Settlements of '33 Act Claim Cases

|  | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|
| State Court | 0 | 2 | 4 | 5 | 4 | 4 | 7 | 6 | 6 | 3 |
| Federal Court | 2 | 2 | 6 | 3 | 4 | 5 | 1 | 10 | 3 | 7 |

Note: "N" refers to the number of cases. This analysis excludes cases alleging Rule 10b-5 claims.

# Analysis of Settlement Characteristics

## GAAP Violations

This analysis examines allegations of GAAP violations in settlements of securities class actions involving Rule 10b-5 claims, including two sub-categories of GAAP violations—financial statement restatements and accounting irregularities.[10] For further details regarding settlements of accounting cases, see Cornerstone Research's annual report on *Accounting Class Action Filings and Settlements*.[11]

- The percentage of settled cases in 2023 alleging GAAP violations (37%) remained well below the prior nine-year average (49%).

- Contributing to the low number of GAAP cases settled in 2023 were continued low levels of cases involving financial statement restatements and accounting irregularities. In particular, 14% of settled cases in 2023 involved a restatement of financial statements, compared to 22% for the prior nine years. Only 1% of settled cases in 2023 involved accounting irregularities.

- Auditor codefendants were involved in only 2% of settled cases, consistent with the past few years but substantially lower than the average from 2014 to 2022.

*In 2023, the median settlement as a percentage of "simplified tiered damages" for cases with alleged GAAP violations increased nearly 25% from 2022.*

Figure 8: Median Settlement as a Percentage of "Simplified Tiered Damages" and Allegations of GAAP Violations 2014–2023



Note: "N" refers to the number of cases. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

# Derivative Actions

- Securities class actions often involve accompanying (or parallel) derivative actions with similar claims, and such cases have historically settled for higher amounts than securities class actions without accompanying derivative matters.[12]

- The percentage of cases involving accompanying derivative actions in 2023 (40%) was the lowest since 2011, in part driven by a reduction in the number of cases filed in Delaware (13) compared to the prior four-year average (17).

- For cases settled during 2019–2023, 40% of parallel derivative suits were filed in Delaware. California and New York were the next most common venues, representing 19% and 17% of such settlements, respectively.

*In 2023, the median settlement amount for cases with an accompanying derivative action was $21 million, over 40% higher than in 2022.*

- It is commonly understood that most parallel derivative actions do not settle for monetary amounts (other than plaintiffs' attorney fees). However, the likelihood of a monetary settlement among parallel derivative actions is higher when the securities class action settlement is large, as shown in Cornerstone Research's *Parallel Derivative Action Settlement Outcomes*.[13]

Figure 9: Frequency of Derivative Actions
2014–2023



■ Settlements without an Accompanying Derivative Action
■ Settlements with an Accompanying Derivative Action

| Year | Without | With |
|------|---------|------|
| 2014 | 35 | 28 |
| 2015 | 38 | 39 |
| 2016 | 50 | 35 |
| 2017 | 42 | 38 |
| 2018 | 35 | 43 |
| 2019 | 34 | 40 |
| 2020 | 35 | 41 |
| 2021 | 50 | 37 |
| 2022 | 58 | 47 |
| 2023 | 50 | 33 |

## Corresponding SEC Actions

- The percentage of settled cases in 2023 involving a corresponding SEC action is 12%. This represents a slight rebound from 2021 and 2022, when this percentage was less than 10%, but is still well below the prior nine-year average of 19%.

*Over the past 10 years, nearly 75% of settled cases involving SEC actions also involved a restatement of financial statements or alleged GAAP violations.*

- Historically, cases with a corresponding SEC action have typically been associated with substantially higher settlement amounts.[14] However, this pattern did not hold in 2023 when, for the third time in the past 10 years, the median settlement amount for cases with a corresponding SEC action was less than that for cases without such an action.

- Among 2023 settled cases that involved a corresponding SEC action, 70% also had an institutional investor as a lead plaintiff, up from 33% in 2022.

Figure 10: Frequency of SEC Actions
2014–2023



# Institutional Investors

As discussed in prior reports, increasing institutional investor participation as lead plaintiff in securities litigation was a focus of the Reform Act.[15] Indeed, in years following passage of the Reform Act, institutional investor involvement as lead plaintiffs did increase, particularly in cases with higher "simplified tiered damages."

- In 2023, for cases involving an institutional investor as lead plaintiff, median "simplified tiered damages" and median total assets were two times and nine times higher, respectively, than the median values for cases without an institutional investor as a lead plaintiff.



*All nine mega settlements in 2023 included an institutional investor as lead plaintiff.*

- In 2023, a public pension plan served as lead plaintiff in nearly two-thirds of cases with an institutional lead plaintiff.

- Institutional investor participation as lead plaintiff continues to be associated with particular plaintiff counsel. For example, in 2023 an institutional investor served as a lead plaintiff in over 88% of settled cases in which Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and/or Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") served as lead or co-lead plaintiff counsel. In contrast, institutional investors served as lead plaintiff in 21% of cases in which The Rosen Law Firm, Pomerantz LLP, or Glancy Prongay & Murray LLP served as lead or co-lead plaintiff counsel.

Figure 11: Median Settlement Amounts and Institutional Investors 2014–2023

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented.

# Time to Settlement and Case Complexity

- Overall, less than one-third of cases settled in 2023 settled within three years of filing.

- Cases involving an institutional lead plaintiff continued to take longer to settle. In particular, cases settled in 2023 with an institutional lead plaintiff had a median time to settle of over 4.2 years compared to 3.4 years for cases without an institutional lead plaintiff.

- In 2023, the median time to settle for cases with GAAP allegations was almost a year longer than the median for cases without GAAP allegations.

*The median time from filing to settlement hearing date in 2023 (3.7 years) was up nearly 17% from 2022.*

- Historically, cases with The Rosen Law Firm, Pomerantz LLP, or Glancy Prongay & Murray LLP as lead or co-lead plaintiff counsel settled within three years of case filing. However, cases settled in 2023 with these firms acting as plaintiff counsel collectively took 3.9 years to settlement, a level reached in only one other year (2009). These three law firms were lead or co-lead plaintiff counsel in approximately 30% of cases in 2023.

- The presence of Robbins Geller as lead or co-lead plaintiff counsel is associated with a longer duration between filing and settlement. Cases settled in 2023 with Robbins Geller acting as lead or co-lead plaintiff counsel (28% of settled cases) had a median time to settle of 4.1 years compared to 3.5 years for cases in which the law firm was not involved.[16]

- The number of docket entries can be viewed as a proxy for the time and effort expended by plaintiff counsel and/or case complexity. Median docket entries in 2023 (142) increased only slightly from 2022 (138).

Figure 12: Median Settlement by Duration from Filing Date to Settlement Hearing Date 2014–2023

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented. "N" refers to the number of cases.

# Case Stage at the Time of Settlement

Using data obtained through collaboration with Stanford Securities Litigation Analytics (SSLA), this report analyzes settlements in relation to the stage in the litigation process at the time of settlement.

- Cases settling at later stages continue to be larger in terms of total assets and "simplified tiered damages."

- For example, both median total assets and median "simplified tiered damages" for cases that settled in 2023 after the ruling on a motion for class certification were over two times the respective medians for cases that settled in 2023 prior to such a motion being ruled on.

- In the five-year period from 2019 through 2023, over 90% of cases settled prior to the filing of a motion for summary judgment.

- In 2023, cases settling at later stages continued to include an institutional lead plaintiff at a higher percentage. Specifically, 68% of cases that settled after the filing of a motion for class certification involved an institutional lead plaintiff compared to 41% of cases that settled prior to the filing of such a motion.

*In 2023, the percentage of cases settling prior to the filing of a motion to dismiss continued to decline—from 14% of cases in 2019 to 7% of cases in 2023.*

Figure 13: Median Settlement Dollars and Resolution Stage at Time of Settlement 2019–2023

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented. "N" refers to the number of cases. MTD refers to "motion to dismiss," MCC refers to "motion for class certification," and MSJ refers to "motion for summary judgment." This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

# Cornerstone Research's Settlement Analysis

This research applies regression analysis to examine the relations between settlement outcomes and certain securities case characteristics. Regression analysis is employed to better understand the factors that are important for estimating what cases might settle for, given the characteristics of a particular securities class action.

## Determinants of Settlement Outcomes

Based on the research sample of cases that settled from January 2006 through December 2023, important determinants of settlement amounts include the following:

- "Simplified tiered damages"

- Maximum Dollar Loss (MDL)—the dollar-value change in the defendant issuer's market capitalization from its class period peak to the first trading day without inflation

- The most recently reported total assets prior to the settlement hearing date for the defendant issuer

- Number of entries on the lead case docket

- Whether there were accounting allegations

- Whether there was an SEC action with allegations similar to those included in the underlying class action complaint, as evidenced by a litigation release or an administrative proceeding against the issuer, officers, directors, or other defendants

- Whether there were criminal charges against the issuer, officers, directors, or other defendants with allegations similar to those included in the underlying class action complaint

- Whether there was a derivative action with allegations similar to those included in the underlying class action complaint

- Whether, in addition to Rule 10b-5 claims, Section 11 claims were alleged and were still active prior to settlement

- Whether the issuer has been delisted from a major exchange and/or has declared bankruptcy (i.e., whether the issuer was "distressed")

- Whether an institutional investor acted as lead plaintiff

- Whether securities other than common stock/ADR/ADS were included in the alleged class

Cornerstone Research analyses show that settlements were higher when "simplified tiered damages," MDL, issuer defendant asset size, or the number of docket entries was larger, or when Section 11 claims were alleged in addition to Rule 10b-5 claims.

Settlements were also higher in cases involving accounting allegations, a corresponding SEC action, criminal charges, an accompanying derivative action, an institutional investor lead plaintiff, or securities in addition to common stock included in the alleged class.

Settlements were lower if the issuer was distressed.

More than 75% of the variation in settlement amounts can be explained by the factors discussed above.

# Research Sample

# Data Sources

- The database compiled for this report is limited to cases alleging Rule 10b-5, Section 11, and/or Section 12(a)(2) claims brought by purchasers of a corporation's common stock. The sample contains only cases alleging fraudulent inflation in the price of a corporation's common stock.

- Cases with alleged classes of only bondholders, preferred stockholders, etc., cases alleging fraudulent depression in price, and mergers and acquisitions cases are excluded. These criteria are imposed to ensure data availability and to provide a relatively homogeneous set of cases in terms of the nature of the allegations.

- The current sample includes nearly 2,200 securities class actions filed after passage of the Reform Act (1995) and settled from 1996 through 2023. These settlements are identified based on a review of case activity collected by Securities Class Action Services LLC (SCAS).[17]

- The designated settlement year, for purposes of this report, corresponds to the year in which the hearing to approve the settlement was held.[18] Cases involving multiple settlements are reflected in the year of the most recent partial settlement, provided certain conditions are met.[19]

In addition to SCAS, data sources include Dow Jones Factiva, Bloomberg, the Center for Research in Security Prices (CRSP) at University of Chicago Booth School of Business, Standard & Poor's Compustat, Refinitiv Eikon, court filings and dockets, SEC registrant filings, SEC litigation releases and administrative proceedings, LexisNexis, Stanford Securities Litigation Analytics (SSLA), Securities Class Action Clearinghouse (SCAC), and public press.

# Endnotes

[1]  Reported dollar figures and corresponding comparisons are adjusted for inflation; 2023 dollar equivalent figures are presented in this report.

[2]  "Simplified tiered damages" are calculated for cases that settled in 2006 or later, following the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336. "Simplified tiered damages" is based on the stock-price declines associated with the alleged corrective disclosure dates that are described in the settlement plan of allocation.

[3]  Comparison to "all-time" refers to the inception of Cornerstone Research's database of post–Reform Act settlements beginning in 1996.

[4]  The "simplified tiered damages" approach used for purposes of this settlement research does not examine the mix of information associated with the specific dates listed in the plan of allocation, but simply applies the stock price movements on those dates to an estimate of the "true value" of the stock during the alleged class period (or "value line"). This proxy for damages utilizes an estimate of the number of shares damaged based on reported trading volume and the number of shares outstanding. Specifically, reported trading volume is adjusted using volume reduction assumptions based on the exchange on which the issuer defendant's common stock is listed. No adjustments are made to the underlying float for institutional holdings, insider trades, or short-selling activity during the alleged class period. Because of these and other simplifying assumptions, the damages measures used in settlement benchmarking may differ substantially from damages estimates developed in conjunction with case-specific economic analysis.

[5]  Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Estimating Damages in Settlement Outcome Modeling*, Cornerstone Research (2017).

[6]  MDL is the dollar-value change in the defendant issuer's market capitalization from its class period peak to the first trading day without inflation.

[7]  Catherine J. Galley, Nicholas D. Yavorsky, Filipe Lacerda, and Chady Gemayel, *Approved Claims Rates in Securities Class Actions: Evidence from 2015–2018 Rule 10b-5 Settlements*, Cornerstone Research (2020). Data on "plaintiff-estimated damages" is made available to Cornerstone Research through collaboration with Stanford Securities Litigation Analytics (SSLA). SSLA tracks and collects data on private shareholder securities litigation and public enforcements brought by the SEC and the U.S. Department of Justice (DOJ). The SSLA dataset includes all traditional class actions, SEC actions, and DOJ criminal actions filed since 2000. Available on a subscription basis at https://sla.law.stanford.edu/.

[8]  The statutory purchase price is the lesser of the security offering price or the security purchase price. Prior to the first complaint filing date, the statutory sales price is the price at which the security was sold. After the first complaint filing date, the statutory sales price is the greater of the security sales price or the "value" of the security on the first complaint filing date. For purposes of "simplified statutory damages," the "value" of the security on the first complaint filing date is assumed to be the security's closing price on this date. Similar to "simplified tiered damages," the estimation of "simplified statutory damages" makes no adjustments to the underlying float for institutional holdings, insider trades, or short-selling activity.

[9]  As noted in prior reports, the March 2018 U.S. Supreme Court decision in *Cyan Inc. v. Beaver County Employees Retirement Fund* (*Cyan*) held that '33 Act claim securities class actions could be brought in state court. While '33 Act claim cases had often been brought in state courts before *Cyan*, filing rates in state courts increased substantially following this ruling. This trend reversed, however, following the March 2020 Delaware Supreme Court decision in *Salzberg v. Sciabacucchi* upholding the validity of federal forum-selection provisions in corporate charters. See, for example, *Securities Class Action Filings—2021 Year in Review*, Cornerstone Research (2022).

[10] The two sub-categories of accounting issues analyzed in Figure 8 of this report are (1) restatements—cases involving a restatement (or announcement of a restatement) of financial statements, and (2) accounting irregularities.

[11] *Accounting Class Action Filings and Settlements—2023 Review and Analysis*, Cornerstone Research, forthcoming in spring 2024.

[12] To be considered an accompanying (or parallel) derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

[13] *Parallel Derivative Action Settlement Outcomes*, Cornerstone Research (2022).

[14] As noted in prior reports, it could be that the merits in such cases are stronger, or simply that the presence of a corresponding SEC action provides plaintiffs with increased leverage when negotiating a settlement. For purposes of this research, an SEC action is evidenced by the presence of a litigation release or an administrative proceeding posted on www.sec.gov involving the issuer defendant or other named defendants with allegations similar to those in the underlying class action complaint.

[15] See, for example, *Securities Class Action Settlements—2006 Review and Analysis*, Cornerstone Research (2007); Michael A. Perino, "Have Institutional Fiduciaries Improved Securities Class Actions? A Review of the Empirical Literature on the PSLRA's Lead Plaintiff Provision," St. John's Legal Studies Research Paper No. 12-0021 (2013).

[16] Although Robbins Geller is associated with a longer duration to settlement, its presence as lead or co-lead plaintiff counsel is not associated with significantly higher settlements as a percentage of "simplified tiered damages."

[17] Available on a subscription basis. For further details see https://www.issgovernance.com/securities-class-action-services/.

[18] Movements of partial settlements between years can cause differences in amounts reported for prior years from those presented in earlier reports.

[19] This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is re-categorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

# Appendices

## Appendix 1: Settlement Percentiles
(Dollars in millions)

| Year | Average | 10th | 25th | Median | 75th | 90th |
|------|---------|------|------|--------|------|------|
| 2014 | *$23.5* | $2.2 | $3.7 | *$7.7* | $17.0 | $64.4 |
| 2015 | *$50.6* | $1.7 | $2.8 | *$8.4* | $20.9 | $120.9 |
| 2016 | *$89.6* | $2.4 | $5.3 | *$10.9* | $41.9 | $185.4 |
| 2017 | *$22.9* | $1.9 | $3.2 | *$6.5* | $19.0 | $44.0 |
| 2018 | *$78.7* | $1.8 | $4.4 | *$13.7* | $30.0 | $59.6 |
| 2019 | *$33.6* | $1.7 | $6.7 | *$13.1* | $23.8 | $59.6 |
| 2020 | *$64.9* | $1.6 | $3.8 | *$11.5* | $23.8 | $62.8 |
| 2021 | *$23.1* | $1.9 | $3.5 | *$9.3* | $20.1 | $65.9 |
| 2022 | *$37.9* | $2.1 | $5.2 | *$13.5* | $36.4 | $74.8 |
| 2023 | *$47.3* | $3.0 | $5.0 | *$15.0* | $33.3 | $101.0 |

Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented.

## Appendix 2: Settlements by Select Industry Sectors
2014–2023
(Dollars in millions)

| Industry | Number of Settlements | Median Settlement | Median "Simplified Tiered Damages" | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|----------|-----------------------|-------------------|-------------------------------------|------------------------------------------------------------------|
| Financial | 91 | $17.8 | $313.3 | 5.3% |
| Technology | 106 | $9.4 | $318.2 | 4.3% |
| Pharmaceuticals | 122 | $8.5 | $242.5 | 3.9% |
| Telecommunication | 28 | $11.4 | $381.0 | 4.4% |
| Retail | 51 | $15.2 | $350.4 | 4.6% |
| Healthcare | 21 | $10.1 | $240.4 | 6.0% |

Note: Settlement dollars and "simplified tiered damages" are adjusted for inflation; 2023 dollar equivalent figures are presented. "Simplified tiered damages" are calculated only for cases involving Rule 10b-5 claims (whether alone or in addition to other claims).

Appendix 3: Settlements by Federal Circuit Court
2014–2023

(Dollars in millions)

| Circuit | Number of Settlements | Median Settlement | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|---|---|---|---|
| First | 20 | $14.1 | 2.8% |
| Second | 212 | $8.9 | 4.9% |
| Third | 85 | $7.3 | 4.9% |
| Fourth | 23 | $24.5 | 3.9% |
| Fifth | 38 | $11.7 | 4.7% |
| Sixth | 35 | $15.8 | 6.7% |
| Seventh | 40 | $18.0 | 3.7% |
| Eighth | 14 | $48.3 | 4.6% |
| Ninth | 190 | $9.0 | 4.4% |
| Tenth | 19 | $12.4 | 5.3% |
| Eleventh | 36 | $13.7 | 4.7% |
| DC | 4 | $27.9 | 2.2% |

Note: Settlement dollars are adjusted for inflation; 2023 dollar equivalent figures are presented. Settlements as a percentage of "simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

Appendix 4: Mega Settlements
2014–2023

■ Total Mega Settlement Dollars as a Percentage of All Settlement Dollars

■ Number of Mega Settlements as a Percentage of All Settlements



Note: Mega settlements are defined as total settlement funds equal to or greater than $100 million.

Appendix 5: Median and Average Settlements as a Percentage of "Simplified Tiered Damages"
2014–2023



Note: "Simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

Appendix 6: Median and Average Settlements as a Percentage of "Simplified Statutory Damages"
2014–2023



Note: "Simplified statutory damages" are calculated only for cases alleging Section 11 ('33 Act) claims and no Rule 10b-5 claims.

## Appendix 7: Median and Average Maximum Dollar Loss (MDL)
## 2014–2023

(Dollars in millions)



Note: MDL is adjusted for inflation based on class period end dates; 2023 dollar equivalents are presented. MDL is the dollar-value change in the defendant issuer's market capitalization from its class period peak to the first trading day without inflation. This analysis excludes cases alleging '33 Act claims only.

## Appendix 8: Median and Average Disclosure Dollar Loss (DDL)
## 2014–2023

(Dollars in millions)



Note: DDL is adjusted for inflation based on class period end dates; 2023 dollar equivalents are presented. DDL is the dollar-value change in the defendant firm's market capitalization between the end of the class period to the first trading day without inflation. This analysis excludes cases alleging '33 Act claims only.

Appendix 9: Median Docket Entries by "Simplified Tiered Damages" Range
2014–2023

(Dollars in millions)



Note: "Simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

# About the Authors

**Laarni T. Bulan**

Ph.D., Columbia University; M.Phil., Columbia University; B.S., University of the Philippines

Laarni Bulan is a principal in Cornerstone Research's Boston office, where she specializes in finance. Her work has focused on securities and other complex litigation addressing class certification, damages, and loss causation issues; mergers and acquisitions (M&A) and firm valuation; and corporate governance, executive compensation, and risk management issues. She has also consulted on cases related to insider trading, market manipulation and trading behavior, financial institutions and the credit crisis, derivatives, foreign exchange, and securities clearing and settlement.

Dr. Bulan has published notable academic articles in peer-reviewed journals. Her research covers topics in dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan had a joint appointment at Brandeis University as an assistant professor of finance in its International Business School and in the economics department.

**Laura E. Simmons**

Ph.D., University of North Carolina at Chapel Hill; M.B.A., University of Houston; B.B.A., University of Texas at Austin

Laura Simmons is a senior advisor with Cornerstone Research. She has more than 25 years of experience in economic consulting. Dr. Simmons has focused on damages and liability issues in securities class actions, as well as litigation involving the Employee Retirement Income Security Act (ERISA). She has also managed cases involving financial accounting, valuation, and corporate governance issues. She has served as a testifying expert in litigation involving accounting analyses, securities case damages, ERISA matters, and research on securities lawsuits.

Dr. Simmons's research on pre– and post–Reform Act securities litigation settlements has been published in a number of reports and is frequently cited in the public press and legal journals. She has spoken at various conferences and appeared as a guest on CNBC addressing the topic of securities case settlements. She has also published in academic journals, including research focusing on the intersection of accounting and litigation. Dr. Simmons was previously an accounting faculty member at the Mason School of Business at the College of William & Mary. From 1986 to 1991, she was an accountant with Price Waterhouse.

The authors gratefully acknowledge the research efforts and significant contributions of their colleagues at Cornerstone Research in the writing and preparation of this annual update. The views expressed herein do not necessarily represent the views of Cornerstone Research.

App. 076

The authors request that you reference Cornerstone Research in any reprint of the information or figures included in this report.

Please direct any questions and requests for additional information to the settlement database administrator at settlementdatabase@cornerstone.com.

## Cornerstone Research

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. Cornerstone Research has earned a reputation for consistently high quality and effectiveness by delivering rigorous, state-of-the-art analysis since 1989. The firm has over 900 staff in nine offices across the United States and Europe.

www.cornerstone.com

© 2024 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.

# Exhibit 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., | Civil Action No. 4:20-cv-00201-P |
| Plaintiffs | |
| v. | CLASS ACTION |
| SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., | |
| Defendants. | |

**DECLARATION OF LUIGGY SEGURA REGARDING: (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, LUIGGY SEGURA, declare as follows:

1.      I am the Vice President of Securities Operations at JND Legal Administration ("JND"). Pursuant to the Court's September 23, 2024 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 146) (the "Preliminary Approval Order"), JND was appointed to supervise and administer the notice procedure as well as the processing of claims in connection with the Settlement of the above-captioned action (the "Action").[1] I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I submit this declaration in order to provide the Court and the parties to the Action with information regarding: (i) dissemination of the Court-approved Notice of (I) Pendency of

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated September 3, 2024 (ECF No. 145) (the "Stipulation").

Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form") (collectively, the "Notice Packet"); (ii) publication of the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Summary Notice"); (iii) establishment of the website and toll-free telephone number dedicated to this Settlement; and (iv) the requests for exclusion from the Settlement Class received to date by JND.

## **DISSEMINATION OF THE NOTICE PACKET**

3.      Pursuant to the Preliminary Approval Order, JND was responsible for disseminating the Notice Packet to potential Settlement Class Members. A copy of the Notice Packet is attached hereto as Exhibit A.

4.      In connection with the initiation of the notice program, JND established a settlement database for this administration (the "Settlement Database"). The Settlement Database keeps a record of each person who is mailed a copy of the Notice Packet by JND.

5.      On September 23, 2024, Lead Counsel emailed to JND a data file provided by Defendants' Counsel containing 125 unique names and addresses of potential Settlement Class Members and 104 email addresses.[2] Prior to the initial mailing JND runs the list through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[3] Based on its

---

[2] In the event that both an email address and mailing address were provided for the same potential Settlement Class Member, a Notice was both emailed and mailed.

[3] The NCOA database is the official USPS technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS. The address information is maintained on the database for 48 months.

searches of the NCOA database, JND identified updated addresses for 9 potential Settlement Class Members prior to the initial mailing.  The data file with the updated addresses was loaded into the Settlement Database, and on October 7, 2024, JND caused the Notice Packet to be sent by first-class mail to the 125 potential Settlement Class Members identified in the data file. JND also emailed 104 potential Settlement Class Members where the email was provided in addition to the physical mailing address.

6.     As in most actions of this nature, a large majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name," *i.e.*, the securities are purchased by brokerage firms, banks, and other institutions (referred to as "nominees" or "records holders") in the name of the nominee, on behalf of the beneficial purchasers. JND maintains a proprietary database with names and addresses of the largest and most common nominees that purchase securities on behalf of beneficial owners (the "Nominee Database"). At the time of the initial mailing, JND's Nominee Database contained 4,078 records. On October 7, 2024, JND caused Notice Packets to be sent by first-class mail to the 4,078 mailing records contained in its Nominee Database and emailed 440 brokers where emails were available.

7.     JND also researched filings with the U.S. Securities and Exchange Commission (SEC) on Form 13-F to identify additional institutions or entities who may have purchased Six Flags Entertainment Corporation common stock during the Class Period. Based on this research, 833 address records were added to the list of potential Settlement Class Members. On October 7, 2024, JND caused Notice Packets to be sent by first-class mail to those potential Settlement Class Members.

8.     In total, 5,036 Notice Packets were mailed to potential Settlement Class Members and nominees by first-class mail on October 7, 2024.

9.    The Notice directed those who purchased or otherwise acquired Six Flags common stock during the Class Period, for the beneficial interest of a person or entity other than themselves, to either (i) within seven (7) calendar days of receipt of the Notice, request from JND sufficient copies of the Notice Packet to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners, or (ii) within seven (7) calendar days of receipt of the Notice, provide a list of the names, mailing addresses, and, if available, email addresses, of all such beneficial owners to JND (which would then mail copies of the Notice Packet to those persons). JND followed up with phone calls and reminder postcards to the brokers and nominees to increase the response rate.

10.    JND also provided a copy of the Notice to the Depository Trust Company ("DTC") for posting on its Legal Notice System ("LENS"). The LENS may be accessed by any Nominee that is a participant in DTC's security system. JND posted the Notice on the DTC's LENS on October 4, 2024.

11.    Through December 19, 2024, JND has received 19,811 additional names and mailing addresses, and 158 email addresses, of potential Settlement Class Members from individuals or nominees. JND has also received requests from nominees for 71,441 Notice Packets to be forwarded directly by the nominees to their customers. All such requests have been, and will continue to be, complied with and addressed in a timely manner.

12.    Through December 19, 2024, a total of 96,288 Notice Packets have been mailed to potential Settlement Class Members and nominees.

**PUBLICATION OF THE SUMMARY NOTICE**

13.    In accordance with Paragraph 8(d) of the Preliminary Approval Order, JND caused the Summary Notice to be published in *Wall Street Journal* and released via *PR Newswire* on

App. 082

October 17, 2024. Copies of proof of publication of the Summary Notice in *Wall Street Journal* and over *PR Newswire* are attached hereto as Exhibit B. The Summary Notice released via *PR Newswire* has been available online since its publication on October 17, 2024.

## SETTLEMENT WEBSITE

14.    On October 4, 2024, JND established a website ("Settlement Website") dedicated to the Settlement, www.SixFlagsSecuritiesLitigation.com. The address for the Settlement Website is set forth in the Notice Packet and in the Summary Notice. The Settlement Website includes information regarding the Action and the proposed Settlement, including the exclusion, objection, and claim filing deadlines, and details about the Court's Settlement Hearing. Copies of the Notice and Claim Form, as well as the Stipulation, Preliminary Approval Order and Complaint are posted on the Settlement Website and are available for downloading. The Settlement Website also contains a secure online filing portal that allows Settlement Class Members to file a claim and receive a confirmation that their claim has been received by the Claims Administrator. The Settlement Website is accessible 24 hours a day, 7 days a week. JND will update the Settlement Website as necessary through the administration of the Settlement.

## TELEPHONE HELPLINE

15.    On October 4, 2024, JND established a case-specific, toll-free telephone helpline, 877-753-9183, with an interactive voice response system and live operators, to accommodate potential Settlement Class Members with questions about the Action and the Settlement. The automated attendant answers the calls and presents callers with a series of choices to respond to basic questions. Callers requiring further help have the option to be transferred to a live operator during business hours. JND continues to maintain the telephone helpline and will update the interactive voice response system as necessary through the administration of the Settlement.

App. 083

## REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE

16.    The Notice informs potential Settlement Class Members that requests for exclusion from the Settlement Class must be submitted by mail addressed to Six Flag Securities Litigation, EXCLUSIONS, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111, and must be received no later than January 7, 2025. Through December 19, 2024, JND has received two (2) requests for exclusion. JND will submit a supplemental declaration after the January 7, 2025, deadline for requesting exclusion that will address all requests for exclusion received.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of December 2024, at New Hyde Park, New York.

LUIGGY SEGURA

6

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL.,<br><br>　　　　Plaintiffs<br><br>v.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION, ET AL.,<br><br>　　　　Defendants. | Civil Action No. 4:20-cv-00201-P<br><br><br>CLASS ACTION |

**NOTICE OF (I) PENDENCY OF CLASS ACTION**
**AND PROPOSED SETTLEMENT; (II) SETTLEMENT HEARING; AND**
**(III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

NOTICE OF PENDENCY OF CLASS ACTION: Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Northern District of Texas (the "Court"), if you purchased the publicly traded common stock of Six Flags Entertainment Corporation ("Six Flags" or the "Company") between April 24, 2018 and February 19, 2020, inclusive (the "Class Period"), and were allegedly damaged thereby.[1]

NOTICE OF SETTLEMENT: Please also be advised that Court-appointed Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") and additional Named Plaintiff Key West Police & Fire Pension Fund ("Key West," and collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined in ¶ 25 below), have reached a proposed settlement of the Action for $40,000,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement"). The terms and provisions of the Settlement are contained in the Stipulation.

This Notice is directed to you in the belief that you may be a member of the Settlement Class. If you do not meet the Settlement Class definition, this Notice does not apply to you.

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have as a member of the Settlement Class, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact the Court, the Office of the Clerk of the Court, Six Flags, any other Defendants in the Action, or their counsel. All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶¶ 6 and 69 below).**

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 3, 2024 (the "Stipulation"), which is available at www.SixFlagsSecuritiesLitigation.com.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

App. 086

1. **Description of the Action and the Settlement Class**:  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that Defendants Six Flags, James Reid-Anderson (Six Flags' former Chairman, President, and Chief Executive Officer), and Marshall Barber (Six Flags' former Chief Financial Officer) (collectively, "Defendants") violated the federal securities laws by making false and misleading statements to investors concerning the development of several Six Flags-branded theme parks in China.  A more detailed description of the Action is set forth in ¶¶ 11-24 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in ¶ 25 below.

2. **Statement of the Settlement Class's Recovery**:  Subject to Court approval, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $40,000,000 in cash (the "Settlement Amount").  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court.  The proposed plan of allocation (the "Plan of Allocation") is set forth in Appendix A at the end of this Notice.  The Plan of Allocation will determine how the Net Settlement Fund shall be allocated among eligible Settlement Class Members.

3. **Estimate of Average Amount of Recovery Per Share**:  Based on Plaintiffs' damages expert's estimate of the number of shares of Six Flags common stock purchased during the Class Period that may have been affected by the conduct at issue in the Action, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses, and costs as described herein) is $0.51 per affected share of Six Flags common stock.  Settlement Class Members should note, however, that the foregoing average recovery is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased or sold their Six Flags shares, and the total number and value of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth in Appendix A or such other plan of allocation as may be ordered by the Court.

4. **Average Amount of Damages Per Share**:  The Parties do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to prevail in the Action.  Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any Settlement Class Members as a result of their conduct.

5. **Attorneys' Fees and Expenses Sought**:  Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") has been prosecuting the Action on a wholly contingent basis since its inception in 2020, has not received any payment of attorneys' fees for its representation of the Settlement Class, and has advanced the funds to pay expenses necessarily incurred to prosecute the Action.  Lead Counsel, on behalf of itself and counsel for additional Named Plaintiff Key West, Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"), will apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund.  In addition, Lead Counsel will apply for payment of Litigation Expenses[2] incurred in connection with the institution, prosecution, and resolution of the Action in an amount not to exceed $650,000.  Any fees and expenses awarded by the Court will be paid from the

---

[2]  "Litigation Expenses" means costs and expenses incurred by Plaintiffs' Counsel in connection with commencing, prosecuting, and settling the Action, including payments to current and former Plaintiffs' local counsel for their time and expenses incurred in connection with the Action, for which Lead Counsel intends to apply to the Court for payment from the Settlement Fund.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 2 of 22
App. 087

Settlement Fund.  The estimated average cost for such fees and expenses, if the Court approves Lead Counsel's fee and expense application, is $0.14 per affected share of Six Flags common stock.

6.   **Identification of Attorneys' Representatives:**  Plaintiffs and the Settlement Class are represented by John Rizio-Hamilton of Bernstein Litowitz Berger & Grossmann LLP, 1251 Avenue of the Americas, 44th Floor, New York, NY 10020; 1-800-380-8496; settlements@blbglaw.com.  Further information regarding the Action, the Settlement, and this Notice may be obtained by contacting Lead Counsel or the Claims Administrator at: Six Flags Securities Litigation, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111;  1-877-753-9183;  info@SixFlagsSecuritiesLitigation.com;  www.SixFlagsSecuritiesLitigation.com. **Please do not contact the Court regarding this Notice.**

7.   **Reasons for the Settlement:**  Plaintiffs' principal reason for entering into the Settlement is the substantial and certain recovery that the Settlement provides for the Settlement Class without the risk or the delays inherent in further litigation.  Moreover, the substantial recovery provided under the Settlement must be considered against the significant risk that a smaller recovery—or indeed no recovery at all— might be achieved after contested motions, a trial of the Action, and the likely appeals that would follow a trial.  This process could be expected to last several years.  Defendants, who deny that they have committed any act or omission giving rise to liability under the federal securities laws, are entering into the Settlement solely to eliminate the uncertainty, burden, and expense of further litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** *POSTMARKED* **(IF MAILED), OR** *SUBMITTED ONLINE*, **NO LATER THAN FEBRUARY 4, 2025.** | This is the only way to be eligible to receive a payment from the Settlement Fund.  If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in ¶ 34 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 35 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS** *RECEIVED* **NO LATER THAN JANUARY 7, 2025.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiffs' Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS** *RECEIVED* **NO LATER THAN JANUARY 7, 2025.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation, or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON JANUARY 28, 2025, AT 9:00 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS** | Filing a written objection and notice of intention to appear by January 7, 2025 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and Litigation Expenses.  In the Court's discretion, the January 28, 2025 hearing |

| **YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT:** | |
|---|---|
| **RECEIVED NO LATER THAN JANUARY 7, 2025.** | may be conducted by telephone or video conference (see ¶¶ 58-59 below). If you submit a written objection, you may (but you do not have to) participate in the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a Settlement Class Member and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund. You will, however, remain a Settlement Class Member, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

**These rights and options—and the deadlines to exercise them—are further explained in this Notice. Please Note: The date and time of the Settlement Hearing—currently scheduled for January 28, 2025, at 9:00 a.m.—is subject to change without further notice to the Settlement Class. It is also within the Court's discretion to hold the hearing in person or by video or telephonic conference. If you plan to attend the hearing, you should check the settlement website, www.SixFlagsSecuritiesLitigation.com (the "Settlement Website"), or with Lead Counsel as set forth above to confirm that no change to the date and/or time of the hearing has been made.**

| **WHAT THIS NOTICE CONTAINS** |
|---|

Why Did I Get This Notice? ...................................................................................................Page 5

What Is This Case About? ......................................................................................................Page 5

How Do I Know If I Am Affected By The Settlement?
Who Is Included In The Settlement Class?........................................................................Page 7

What Are The Parties' Reasons For The Settlement? .......................................................Page 8

What Might Happen If There Were No Settlement? .........................................................Page 8

How Are Settlement Class Members Affected By The Action And The Settlement? ......Page 9

How Do I Participate In The Settlement? What Do I Need To Do?................................Page 11

How Much Will My Payment Be?........................................................................................Page 11

What Payment Are The Attorneys For The Settlement Class Seeking?
How Will The Lawyers Be Paid? ......................................................................................Page 12

What If I Do Not Want To Be A Member Of The Settlement Class? How Do I
Exclude Myself? ...............................................................................................................Page 13

When And Where Will The Court Decide Whether To Approve The Settlement? Do I
Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like
The Settlement? ................................................................................................................Page 13

What If I Bought Six Flags Common Stock On Someone Else's Behalf? .....................Page 16

Can I See The Court File? Whom Should I Contact If I Have Questions? ...................Page 16

Appendix A: Plan Of Allocation Of The Net Settlement Fund ......................................Page 17

## WHY DID I GET THIS NOTICE?

8.    The Court directed that this Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased publicly traded Six Flags common stock during the Class Period.  The Court has directed us to send you this Notice because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  If the Court approves the Settlement and the Plan of Allocation (or some other plan of allocation), the Claims Administrator selected by Lead Counsel and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.    The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and the motion by Lead Counsel for attorneys' fees and Litigation Expenses (the "Settlement Hearing").  *See* ¶¶ 58-59 below for details about the Settlement Hearing, including the date and location of the hearing.

10.    The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action in favor of Plaintiffs or Defendants, and the Court still must decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.    On February 12, 2020, an initial class action complaint was filed in the United States District Court for the Northern District of Texas (the "Court"), styled *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Six Flags Entertainment Corporation, James Reid-Anderson, and Marshall Barber*, Case No. 4:20-cv-00201-P, alleging violations of the federal securities laws.

12.    By Order dated May 8, 2020, the Court (the Honorable Mark T. Pittman) appointed Oklahoma Firefighters and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") as Lead Plaintiffs, and approved Oklahoma Firefighters and Local 103's selection of BLB&G as Lead Counsel for the putative class.

13.    On July 2, 2020, Oklahoma Firefighters and Local 103 filed the Consolidated Class Action Complaint (the "CAC") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder.  Among other things, the CAC alleges that Defendants made false and misleading statements and omissions to investors about the development of Six Flags-branded theme parks in China (the "China Parks"), which caused the price of Six Flags common stock to be artificially inflated during the Class Period and caused damages to investors when they ultimately learned the truth about Defendants' alleged prior misrepresentations.  The CAC further alleges that investors learned the truth about Defendants' misrepresentations through various corrective disclosures, including (i) on February 14, 2019, when Six Flags announced a negative $15 million revenue adjustment for the fourth quarter of 2018 due to delays in the expected opening dates of some of its China parks; (ii) on October 23, 2019, when Six Flags again postponed the timing of its park openings in China; (iii) on January 10, 2020, when the Company revealed that Riverside Investment Group Co. Ltd., the developer of the China Parks, had defaulted on its payment obligations to Six Flags;

and (iv) on February 20, 2020, when the Company revealed that it had terminated its development agreements with Riverside and that it was unlikely that Six Flags would recognize any revenue or income from the development of the China Parks.

14.   On August 3, 2020, Defendants filed a motion to dismiss the CAC (the "Motion to Dismiss"), which was fully briefed on September 16, 2020. On March 3, 2021, the Court entered its Opinion and Order granting the Motion to Dismiss and dismissing the CAC with prejudice (the "Motion to Dismiss Order").

15.   On March 31, 2021, Oklahoma Firefighters and Local 103 filed a motion to amend or set aside the judgment and for leave to file an amended complaint (the "Motion to Set Aside"), which was fully briefed on May 5, 2021. On July 26, 2021, the Court denied the Motion to Set Aside (the "Motion to Set Aside Order").

16.   On August 25, 2021, Oklahoma Firefighters filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from, *inter alia*, the Motion to Dismiss Order and Motion to Set Aside Order, which was fully briefed on December 15, 2021. On March 7, 2022, the Parties conducted oral argument. On January 18, 2023, the Fifth Circuit reversed the Court's Motion to Dismiss Order (the "First Appeal Decision"), holding that Oklahoma Firefighters sufficiently pled the majority, but not all, of its allegations.

17.   The Action was remanded to the Court and the Court re-opened the case on February 9, 2023. Defendants filed their Answer to the CAC on March 20, 2023. The Parties also began initial discovery efforts. The Parties exchanged initial disclosures and served interrogatories. Plaintiffs also served subpoenas on and negotiated document discovery with 14 third parties, including Six Flags' auditor, as well as several of Six Flags' consultants, designers, and ride suppliers for the China Parks. Additionally, Plaintiffs worked with experts on issues such as Chinese government project financing, theme park development, accounting, and damages and market efficiency.

18.   On April 18, 2023, Oklahoma Firefighters filed a motion for leave to file a first amended complaint (the "Motion to Amend") for the purpose of adding Key West as a Named Plaintiff. In response, on May 2, 2023, Defendants filed a motion for judgment on the pleadings (the "Motion for Judgment on the Pleadings"), arguing that the effect of the First Appeal Decision, which found that certain of Defendants' alleged misstatements were inactionable, was that Oklahoma Firefighters lacked standing. On May 9, 2023, Key West filed a motion to intervene (the "Motion to Intervene"), and on May 10, 2023, Oklahoma Firefighters filed its opposition to the Motion for Judgment on the Pleadings. On May 16, 2023, Defendants filed a memorandum of law opposing the Motion to Intervene and in further support of the Motion for Judgment on the Pleadings. Key West then filed its reply in further support of its Motion to Intervene on May 24, 2023. On June 2, 2023, the Court granted Defendants' Motion for Judgment on the Pleadings and denied the Motion to Intervene, dismissing the Action with prejudice (the "Pleadings Order").

19.   On June 30, 2023, Oklahoma Firefighters and Key West filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit from the Pleadings Order, which was fully briefed on December 4, 2023. The Parties conducted oral argument on March 4, 2024. On April 18, 2024, the Fifth Circuit reversed the Pleadings Order and allowed Key West to intervene.

20.   The Action was remanded to the Court on May 10, 2024. That same day, the Court ordered the Parties to appear for a Fed. R. Civ. P. 26(f) scheduling conference. On May 22, 2024, the Court referred this case to mediation and appointed the Honorable David L. Evans as mediator (the "Mediator"). The Parties appeared for the Court-ordered 26(f) scheduling conference on May 23, 2024, and submitted a joint Fed. R. Civ. P. 26(f) statement on May 30, 2024. On May 31, 2024, the Court issued a scheduling order. This order required, among other things, the Parties to mediate before the Hon. David L. Evans, which was scheduled for August 20, 2024.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

21.    After remand, the Parties re-commenced discovery.  After substantial negotiations, Defendants made an initial production of over 40,000 documents, totaling approximately 180,000 pages, to Plaintiffs. Plaintiffs reviewed these documents quickly and efficiently in advance of the Parties' mediation.  In exchange for Defendants' prompt production of these documents, Plaintiffs agreed to undertake a review of this initial production and then identify gaps in the production for the Parties to discuss.  The Parties began good-faith negotiations over those identified discovery gaps before the mediation.  Plaintiffs also continued to work with their experts regarding, among other things, accounting, loss causation, and damages issues.  Last, Plaintiffs filed a motion to amend the complaint on July 29, 2024, to specify the remaining alleged false and misleading statements, and the reasons why they alleged those statements were false and misleading, following Fifth Circuit's rulings in this matter.  The Court granted the motion on July 29, 2024, and Plaintiffs filed the operative complaint (the "Complaint") that same day.

22.    Following the Parties' exchange of mediation briefs on July 18, 2024, Lead Counsel and Defendants' Counsel commenced settlement discussions.  They had extensive negotiations on multiple occasions regarding settlement in the weeks leading up to the mediation that was scheduled to take place before the Mediator on August 20, 2024.  On August 16, 2024, the Parties' negotiations culminated in an agreement-in-principle to settle and release all claims against Defendants in the Action in return for payment by Six Flags of $40,000,000 in cash, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

23.    After additional negotiations regarding the specific terms of their agreement, the Parties entered into the Stipulation on September 3, 2024.  The Stipulation, which reflects the final and binding agreement between the Parties on the terms and conditions of the Settlement, can be viewed at www.SixFlagsSecuritiesLitigation.com.

24.    On September 23, 2024, the Court preliminarily approved the Settlement, authorized this Notice to be disseminated to potential Settlement Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

---

**HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?**
**WHO IS INCLUDED IN THE SETTLEMENT CLASS?**

---

25.    If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.  The Settlement Class consists of:

> All persons and entities who purchased the publicly traded common stock of Six Flags between April 24, 2018 and February 19, 2020, inclusive (the "Class Period"), and were damaged thereby.

Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) any person who is, or was during the Class Period, an officer or director of Six Flags and any members of their Immediate Family; (iv) any affiliates or subsidiaries of Six Flags; (v) any entity in which any Defendant or any members of their Immediate Family has or had a controlling interest; and (vi) the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities.  Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court in accordance with the requirements set forth in this Notice.  *See* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," on page 13 below.

**PLEASE NOTE:  Receipt of this Notice does not mean that you are a Settlement Class Member or that you will be entitled to a payment from the Settlement.**

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com.

**If you are a Settlement Class Member and you wish to be eligible to receive a payment from the Settlement, you are required to submit the Claim Form that is being distributed with this Notice, and the required supporting documentation as set forth in the Claim Form,** *postmarked* **(if mailed), or** *submitted online* **through the Settlement Website, www.SixFlagsSecuritiesLitigation.com, no later than February 4, 2025.**

<div style="text-align:center">

**WHAT ARE THE PARTIES' REASONS FOR THE SETTLEMENT?**

</div>

26.    Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through class certification, summary judgment, trial, and appeals, as well as the very substantial risks they would face in establishing liability and damages. For example, those risks include challenges in establishing that Defendants' statements about the development of China Parks—which necessarily involved some element of estimation and prediction—were materially false or misleading and that the Individual Defendants knew that the statements were false or were deliberately reckless in making them. Defendants have contended—and would have contended at summary judgment or trial—that their statements were neither false nor misleading and were supported by contemporaneous facts.

27.    Plaintiffs also faced further risks relating to proof of loss causation and damages. Defendants would have contended that Plaintiffs could not establish a causal connection between the alleged misrepresentations and any of the alleged corrective disclosures that Plaintiffs contended caused investors' losses allegedly suffered, as required by law. If Defendants had succeeded on one or more of their loss causation and damages arguments, even if Plaintiffs had established liability for its securities fraud claims, the potentially recoverable damages could have been dramatically reduced or even eliminated.

28.    In light of these risks, the amount of the Settlement, and the immediacy of recovery to the Settlement Class, Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Plaintiffs and Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $40,000,000 in cash, less the various deductions described in this Notice, as compared to the risk that the claims in the Action would produce a smaller recovery, or no recovery, and not until after summary judgment, trial, and appeals, possibly years in the future.

29.    Defendants have denied the claims asserted against them in the Action and deny that the Settlement Class was harmed or suffered any damages as a result of the conduct alleged in the Action. Defendants believe that all of their public disclosures were accurate when made and deny all allegations of wrongdoing that have been asserted against them. Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation. Accordingly, the Settlement is not and may not be construed as an admission of any wrongdoing by Defendants.

<div style="text-align:center">

**WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?**

</div>

30.    If there were no Settlement and Plaintiffs failed to establish any essential legal or factual element of its claims against Defendants, neither Lead Plaintiff nor the other Settlement Class Members would recover anything from Defendants. Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial, or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 8 of 22

App. 093

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

31.   As a Settlement Class Member, you are represented by Lead Plaintiff and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense.  You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf as provided in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

32.   If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and Litigation Expenses, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

33.   If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court.  If the Settlement is approved, the Court will enter a judgment (the "Judgment").  The Judgment will dismiss with prejudice the claims in the Action against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, trustees, predecessors, successors, and assigns in their capacities as such only, will have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any or all of the Released Plaintiffs' Claims (as defined in ¶ 34 below) against Defendants and the other Defendants' Releasees (as defined in ¶ 35 below), and will forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against the Defendants' Releasees.

34.   "Released Plaintiffs' Claims" means, to the fullest extent that the law permits their release, of and from all claims, suits, actions, appeals, causes of action, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential or special damages, and restitution and disgorgement), demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, duties, liabilities, losses, or obligations of every nature and description whatsoever, whether or not concealed or hidden, fixed or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by Plaintiffs or all Settlement Class Members, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common or foreign law, including known claims and Unknown Claims, that are based upon, arise from, or relate to (a) the purchase, acquisition, or trading of any Six Flags common stock during the Class Period; and (b) the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint or any other complaints filed in this Action.  Released Plaintiffs' Claims do not cover, include, or release: (i) claims asserted in any ERISA or derivative action, including without limitation the claims asserted in *Cruz v. Reid-Anderson*, No. 4:23-CV-0457-P (N.D. Tex.) or any cases consolidated into that action; (ii) claims by any governmental entity that arise out of any governmental investigation of Defendants relating to the conduct alleged in the Action; (iii) claims relating to the enforcement of the Settlement; or (iv) claims of any persons or entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court ("Excluded Plaintiffs' Claims").

35.   "Defendants' Releasees" means Defendants and their current and former parents, affiliates, subsidiaries, controlling persons, associates, related or affiliated entities, and each and all of their respective past or present officers, directors, employees, partners, members, principals, agents, representatives, attorneys, auditors, financial or investment advisors, consultants, underwriters, accountants, investment bankers, commercial bankers, entities providing fairness opinions, advisors,

insurers, reinsurers, heirs, spouses, executors, trustees, general or limited partners or partnerships, limited liability companies, members, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors or assigns, or any member of their Immediate Family, marital communities, or any trusts for which any of them are trustees, settlers, or beneficiaries or anyone acting or purporting to act for or on behalf of them or their successors or collectively.

36. "Unknown Claims" means any Released Plaintiffs' Claims which Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members shall be deemed to have waived, and by operation of the Judgment or, if applicable, the Alternate Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs, any Settlement Class Member, or any Defendant may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims and the Released Defendants' Claims, but the Parties shall expressly, fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Settlement Class Member shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date and by operation of the Judgment or, if applicable, the Alternate Judgment, shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Plaintiffs' Claims and Released Defendants' Claims, as applicable, known or unknown, suspected or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which now exist, or heretofore existed, or may hereafter exist, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

37. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, trustees, predecessors, successors, and assigns in their capacities as such only, will have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any or all of the Released Defendants' Claims (as defined in ¶ 38 below) against Plaintiffs and the other Plaintiffs' Releasees (as defined in ¶ 39 below), and will forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against the Plaintiffs' Releasees.

38. "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include: (i) claims relating to the enforcement of the Settlement; or (ii) claims against any persons or entities

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 10 of 22
App. 095

who or which submit a request for exclusion from the Settlement Class that is accepted by the Court ("Excluded Defendants' Claims").

39.    "Plaintiffs' Releasees" means Plaintiffs, all other plaintiffs in the Action, all other Settlement Class Members, and Plaintiffs' Counsel, and their respective current and former parents, affiliates, subsidiaries, controlling persons, associates, related or affiliated entities, and each and all of their respective past or present officers, directors, employees, partners, members, principals, agents, representatives, attorneys, auditors, financial or investment advisors, consultants, underwriters, accountants, investment bankers, commercial bankers, entities providing fairness opinions, advisors, insurers, reinsurers, heirs, spouses, executors, trustees, general or limited partners or partnerships, limited liability companies, members, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors or assigns, or any member of their Immediate Family, marital communities, or any trusts for which any of them are trustees, settlers or beneficiaries or anyone acting or purporting to act for or on behalf of them or their successors or collectively.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

40.    To be eligible for a payment from the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation *postmarked* (**if mailed**), or *submitted online* **at www.SixFlagsSecuritiesLitigation.com, no later than February 4, 2025**.  A Claim Form is included with this Notice, or you may obtain one from the Settlement Website, www.SixFlagsSecuritiesLitigation.com.  You may also request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-877-753-9183 or by emailing the Claims Administrator at info@SixFlagsSecuritiesLitigation.com.  **Please retain all records of your ownership of and transactions in Six Flags common stock, as they will be needed to document your Claim.**  The Parties and Claims Administrator do not have information about your transactions in Six Flags common stock.  If you do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

41.    If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

42.    At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

43.    Pursuant to the Settlement, Six Flags has agreed to cause $40,000,000 in cash (the "Settlement Amount") to be paid into an escrow account.  The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

44.    The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal, or review, whether by *certiorari* or otherwise, has expired.

45.    Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants will not have any liability, obligation, or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund, or the plan of allocation.

46.    Approval of the Settlement is independent from approval of a plan of allocation.    Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

47.    Unless the Court otherwise orders, any Settlement Class Member who or which fails to submit a Claim Form *postmarked* (if mailed), *or submitted online*, on or before February 4, 2025, shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a member of the Settlement Class and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases, and will be barred and enjoined from prosecuting, the Released Plaintiffs' Claims (as defined in ¶ 34 above) against the Defendants' Releasees (as defined in ¶ 35 above) whether or not such Settlement Class Member submits a Claim Form.

48.    Participants in, and beneficiaries of, a Six Flags employee benefit plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Six Flags common stock held through the ERISA Plan in any Claim Form that they submit in this Action.  They should include ONLY those shares that they purchased outside of the ERISA Plan.  Claims based on any ERISA Plan's purchases of Six Flags common stock during the Class Period may be made by the plan's trustees.

49.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.  Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, their, or its Claim Form.

50.    Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund.  Persons or entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  The only security that is included in the Settlement is publicly traded Six Flags common stock.

51.    **Appendix A to this Notice sets forth the Plan of Allocation for allocating the Net Settlement Fund among Authorized Claimants, as proposed by Plaintiffs.  At the Settlement Hearing, Plaintiffs will request that the Court approve the Plan of Allocation.  The Court may modify the Plan of Allocation, or approve a different plan of allocation, without further notice to the Settlement Class.**

<div style="border:1px solid black; text-align:center; font-weight:bold;">

WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING?
HOW WILL THE LAWYERS BE PAID?

</div>

52.    Lead Counsel has not received any payment for its services in pursuing claims against Defendants on behalf of the Settlement Class, nor has Lead Counsel been paid for its Litigation Expenses.  Lead Counsel, on behalf of itself and Klausner Kaufman (counsel for additional Named Plaintiff Key West), will apply to the Court for an immediate award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund.  At the same time, Lead Counsel also intends to apply for payment of Litigation Expenses from the Settlement Fund in an amount not to exceed $650,000.  The Court will determine the amount of any award of attorneys' fees or Litigation Expenses.  Any award of attorneys' fees and Litigation Expenses will be paid from the Settlement Fund at the time of award by the Court and prior to

allocation and payment to Authorized Claimants. ***Settlement Class Members are not personally liable for any such fees or expenses.***

---

**WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?**

---

53.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to Six Flag Securities Litigation, EXCLUSIONS, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111.  The Request for Exclusion must be ***received no later than January 7, 2025***.  You will not be able to exclude yourself from the Settlement Class after that date.  Each Request for Exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Oklahoma Firefighters Pension and Retirement System, et al. v. Six Flags Entertainment Corporation, et al.*, Case No. 4:20-cv-00201-P (N.D. Tex.)"; (iii) state the number of shares of publicly traded Six Flags common stock that the person or entity requesting exclusion (A) owned as of the opening of trading on April 24, 2018 and (B) purchased and/or sold during the period between April 24, 2018 and February 19, 2020, inclusive, as well as the dates, number of shares, and prices of each such purchase and sale transaction; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A Request for Exclusion shall not be effective unless it provides all the information called for above and is received within the time stated above, or is otherwise accepted by the Court.  Lead Counsel is authorized to request from any person or entity requesting exclusion documentation sufficient to prove the information called for above, or additional transaction information or documentation regarding his, her, their, or its holdings and trading in Six Flags common stock.

54.    If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendants' Releasees.

55.    If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

56.    Six Flags has the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiffs and Six Flags.

---

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

---

57.    **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing**.

58.    **Please Note**:  The date and time of the Settlement Hearing may change without further written notice to the Settlement Class.  In addition, the Court may decide to conduct the Settlement Hearing by video or telephonic conference, or otherwise allow Settlement Class Members to appear at the hearing by phone, without further written notice to the Settlement Class.  **In order to determine whether the date**

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 13 of 22
App. 098

**and time of the Settlement Hearing have changed, or whether Settlement Class Members must or may participate by phone or video, it is important that you monitor the Court's docket and calendar** (https://www.txnd.uscourts.gov/sites/ceocalendars/pittman.html) **or the Settlement Website, www.SixFlagsSecuritiesLitigation.com, before making any plans to attend the Settlement Hearing. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or remote appearances at the hearing, will be posted to the Settlement Website, www.SixFlagsSecuritiesLitigation.com.  If the Court requires or allows Settlement Class Members to participate in the Settlement Hearing by telephone or video conference, the information for accessing the telephone or video conference will be posted to the Settlement Website, www.SixFlagsSecuritiesLitigation.com.**

59.    The Settlement Hearing will be held on **January 28, 2025, at 9:00 a.m.**, before the Honorable Mark T. Pittman of the United States District Court for the Northern District of Texas, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, located at 501 W. 10th Street, Fort Worth, Texas, 76102-3673, for the following purposes: (i) to determine whether the Settlement Class should be certified for purposes of the Settlement; (ii) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be finally approved by the Court; (iii) to determine whether a Judgment, substantially in the form attached as Exhibit B to the Stipulation, should be entered dismissing the Action with prejudice against Defendants and granting the Releases specified and described in the Stipulation (and in this Notice); (iv) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (v) to determine whether the motion by Lead Counsel for an award of attorneys' fees and Litigation Expenses should be approved; and (vi) to consider any other matters that may properly be brought before the Court in connection with the Settlement.  The Court reserves the right to approve the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses, and/or consider any other matter related to the Settlement at or after the Settlement Hearing without further notice to Settlement Class Members.

60.    Any Settlement Class Member that does not request exclusion may object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.  Objections must be in writing.  To object, you must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Northern District of Texas at the address set forth below **on or before January 7, 2025**. You must also serve the papers on Lead Counsel and on Representative Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before January 7, 2025.**

| Clerk's Office: | Lead Counsel: | Representative Defendants' Counsel: |
|---|---|---|
| United States District Court<br>  Northern District of Texas<br>501 West 10th Street, Room 310<br>Fort Worth, TX 76102-3673 | Bernstein Litowitz Berger &<br>  Grossmann LLP<br>John Rizio-Hamilton<br>1251 Avenue of the Americas,<br>  44th Floor<br>New York, NY 10020 | Skadden, Arps, Slate, Meagher,<br>  and Flom LLP<br>Scott D. Musoff<br>One Manhattan West<br>New York, NY 10001 |

61.    Any objections, filings, and other submissions by the objecting Settlement Class Member must (i) identify the case name and case number, *Oklahoma Firefighters Pension and Retirement System, et al. v. Six Flags Entertainment Corporation, et al.*, Case No. 4:20-cv-00201-P (N.D. Tex.); (ii) state the name, address, and telephone number of the person or entity objecting; (iii) be signed by the objector (even if

the objector is represented by counsel); (iv) state with specificity the grounds for the Settlement Class Member's objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and (v) include documents sufficient to provide membership in the Settlement Class, including documents showing the number of shares of publicly traded Six Flags common stock that the objecting Settlement Class Member (1) owned as of the opening of trading on April 24, 2018 and (2) purchased and/or sold during the period between April 24, 2018 and February 19, 2020, inclusive, as well as the dates, number of shares, and prices of each such purchase and sale transaction. The documentation establishing membership in the Settlement Class must consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from the objector's broker containing the transactional and holding information found in a broker confirmation slip or account statement. Lead Counsel is authorized to request from any objector additional transaction information or documentation regarding his, her, their, or its holdings and trading in Six Flags common stock.

62. You may not object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

63. You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file a written objection in accordance with the procedures described above, unless the Court orders otherwise.

64. If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and Litigation Expenses, assuming you timely file a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and on Representative Defendants' Counsel at the addresses set forth in ¶ 60 above so that it is *received* **on or before January 7, 2025.** Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Objectors who intend to appear at the Settlement Hearing through counsel must also identify that counsel by name, address, and telephone number. It is within the Court's discretion to allow appearances at the Settlement Hearing either in person or by telephone or videoconference, with or without the filing of written objections.

65. You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Representative Defendants' Counsel at the addresses set forth in ¶ 60 above so that the notice is *received* **on or before January 7, 2025.**

66. The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Settlement Hearing, you should confirm the date and time of the hearing as stated in ¶ 58 above.

67. **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and Litigation Expenses. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SIX FLAGS COMMON STOCK ON SOMEONE ELSE'S BEHALF?

68.    If you purchased Six Flags common stock between April 24, 2018 and February 19, 2020, inclusive, for the beneficial interest of persons or organizations other than yourself, you must either (a) within seven (7) calendar days of receipt of this Notice, request from the Claims Administrator sufficient copies of the Notice and Claim Form (the "Notice Packet") to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Notice Packets forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of this Notice, provide a list of the names and addresses of all such beneficial owners to Six Flags Securities Litigation, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111.  If you choose the second option, the Claims Administrator will send a copy of the Notice and the Claim Form to the beneficial owners.  Upon full compliance with these directions, such nominees may seek payment of their reasonable expenses actually incurred, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Copies of this Notice and the Claim Form may also be obtained from Settlement Website, www.SixFlagsSecuritiesLitigation.com, by calling the Claims Administrator toll-free at 1-877-753-9183, or by emailing the Claims Administrator at SFESecurities@JNDLA.com.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

69.    This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Northern District of Texas, 501 West 10th Street, Room 310, Fort Worth, TX 76102-3673.  Additionally, copies of the Stipulation and any related orders entered by the Court, as well as other documents pertaining to the Action, will be posted on the Settlement Website, www.SixFlagsSecuritiesLitigation.com.

All inquiries concerning this Notice and the Claim Form should be directed to:

| | |
|---|---|
| Six Flags Securities Litigation | John Rizio-Hamilton |
| c/o JND Legal Administration | Bernstein Litowitz Berger |
| P.O. Box 91074 | & Grossmann LLP |
| Seattle, WA 98111 | 1251 Avenue of the Americas, 44th Floor |
| | New York, NY 10020 |
| 1-877-753-9183 | |
| info@SixFlagsSecuritiesLitigation.com | 1-800-380-8496 |
| www.SixFlagsSecuritiesLitigation.com | settlements@blbglaw.com |

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: October 7, 2024

By Order of the Court
United States District Court
Northern District of Texas

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 16 of 22
App. 101

## Appendix A

## PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

70.    As discussed above, the Settlement provides $40,000,000 in cash for the benefit of the Settlement Class.  The Settlement Amount and any interest it earns constitute the "Settlement Fund."  The Settlement Fund, after deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Costs, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund."  If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants, i.e., members of the Settlement Class who timely submit valid Claim Forms that are accepted for payment by the Court, in accordance with a plan of allocation to be adopted by the Court. Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will otherwise be bound by the Settlement.

71.    The Plan of Allocation (the "Plan") set forth herein is the plan that is being proposed to the Court for approval by Plaintiffs after consultation with their damages expert.  The Court may approve the Plan with or without modification, or approve another plan of allocation, without further notice to the Settlement Class.  Any Orders regarding a modification to the Plan will be posted to the Settlement Website, www.SixFlagsSecuritiesLitigation.com.  Defendants have had, and will have, no involvement or responsibility for the terms or application of the Plan.

72.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic losses as a proximate result of the alleged wrongdoing.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

73.    The Plan of Allocation was created with the assistance of a consulting damages expert and reflects the assumption that Defendants' alleged false and misleading statements and material omissions proximately caused the price of publicly traded Six Flags common stock ("Six Flags Common Stock") to be artificially inflated throughout the Class Period.  In calculating the estimated artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' damages expert considered price changes in Six Flags Common Stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.

74.    In order to have recoverable damages, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of Six Flags Common Stock.  In this case, Plaintiffs allege that Defendants made false statements and omitted material facts during the period from April 24, 2018 through February 19, 2020, inclusive, which had the effect of artificially inflating the price of Six Flags Common Stock.  Plaintiffs further allege that corrective information was released to the market on February 14, 2019, October 23, 2019, January 10, 2020, and February 20, 2020, which removed the artificial inflation from the price of Six Flags Common Stock on those dates.

75.    Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Six Flags Common Stock at the time of purchase and at the time of sale, or the difference between the actual purchase price and sale price.  Accordingly, in order to have a Recognized Loss Amount under the Plan of Allocation, a Settlement Class Member that purchased Six Flags Common

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 17 of 22
App. 102

Stock during the Class Period must have held those shares through at least one of the dates where new corrective information was released to the market and partially removed the artificial inflation from the price of Six Flags Common Stock.

## **CALCULATION OF RECOGNIZED LOSS AMOUNTS**

76.   Based on the formula stated below, a "Recognized Loss Amount" will be calculated for each purchase of Six Flags Common Stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that Recognized Loss Amount will be zero.[3]

77.   For each share of Six Flags Common Stock purchased during the Class Period (that is, the period from April 24, 2018 through and including the close of trading on February 19, 2020), and:

A.    Sold prior to the close of trading on February 13, 2019, the Recognized Loss Amount will be $0.00.

B.    Sold from February 14, 2019 through and including the close of trading on February 19, 2020, the Recognized Loss Amount will be ***the lesser of:*** (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below *minus* the amount of artificial inflation per share on the date of sale as stated in Table A below; or (ii) the purchase price minus the sale price.

C.    Sold from February 20, 2020 through and including the close of trading on May 19, 2020, the Recognized Loss Amount will be ***the least of***: (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below; (ii) the purchase price minus the average closing price from February 20, 2020 through the date of sale as stated in Table B below; or (iii) the purchase price minus the sale price.

D.    Held as of the close of trading on May 19, 2020, the Recognized Loss Amount will be ***the lesser of***: (i) the amount of artificial inflation per share on the date of purchase as stated in Table A below, or (ii) the purchase price *minus* $18.07.[4]

---

[3] Any transactions in Six Flags Common Stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

[4] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."  Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Six Flags Common Stock during the "90-day look-back period," February 20, 2020 through and including the close of trading on May 19, 2020.  The mean (average) closing price for Six Flags Common Stock during this 90-day look-back period was $18.07.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

## ADDITIONAL PROVISIONS

78.   **Calculation of Claimant's "Recognized Claim":** A Claimant's "Recognized Claim" will be the sum of his, her, or its Recognized Loss Amounts as calculated under ¶ 77 above.

79.   **FIFO Matching:** If a Claimant made more than one purchase or sale of Six Flags Common Stock during the Class Period, all purchases and sales will be matched on a First In, First Out ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases in chronological order, beginning with the earliest purchase made during the Class Period.

80.   **Purchase/Sale Prices:** For the purposes of calculations under ¶ 77 above, "purchase price" means the actual price paid, excluding any fees, commissions, and taxes, and "sale price" means the actual amount received, not deducting any fees, commissions, and taxes.

81.   **"Purchase/Sale" Dates:** Purchases and sales of Six Flags Common Stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance, or operation of law of Six Flags Common Stock during the Class Period will not be deemed a purchase or sale of Six Flags Common Stock for the calculation of a Claimant's Recognized Loss Amount, nor will the receipt or grant be deemed an assignment of any claim relating to the purchase or sale of Six Flags Common Stock unless (i) the donor or decedent purchased or sold such Six Flags Common Stock during the Class Period; (ii) the instrument of gift or assignment specifically provides that it is intended to transfer such rights; and (iii) no Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to shares of such shares of Six Flags Common Stock.

82.   **Short Sales:** The date of covering a "short sale" is deemed to be the date of purchase of the Six Flags Common Stock.  The date of a "short sale" is deemed to be the date of sale of the Six Flags Common Stock.  In accordance with the Plan of Allocation, however, the Recognized Loss Amount on "short sales" and the purchases covering "short sales" is zero.

83.   In the event that a Claimant has an opening short position in Six Flags Common Stock, the earliest purchases of Six Flags Common Stock during the Class Period will be matched against such opening short position, and not entitled to a recovery, until that short position is fully covered.

84.   **Common Stock Purchased/Sold Through the Exercise of Options:** Option contracts are not securities eligible to participate in the Settlement.  With respect to Six Flags Common Stock purchased or sold through the exercise of an option, the purchase/sale date of the common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

85.   **Market Gains and Losses:**  The Claims Administrator will determine if the Claimant had a "Market Gain" or a "Market Loss" with respect to his, her, or its overall transactions in Six Flags Common Stock during the Class Period.  For purposes of making this calculation, the Claims Administrator shall determine the difference between (i) the Claimant's Total Purchase Amount[5] and (ii) the sum of the

---

[5] The "Total Purchase Amount" is the total amount the Claimant paid (excluding all fees, commissions, and taxes) for all shares of Six Flags Common Stock purchased during Class Period.

Claimant's Total Sales Proceeds[6] and the Claimant's Holding Value.[7] If the Claimant's Total Purchase Amount *minus* the sum of the Claimant's Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's Market Loss; if the number is a negative number or zero, that number will be the Claimant's Market Gain.

86.    If a Claimant had a Market Gain with respect to his, her, or its overall transactions in Six Flags Common Stock during the Class Period, the value of the Claimant's Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlement. If a Claimant suffered an overall Market Loss with respect to his, her, or its overall transactions in Six Flags Common Stock during the Class Period but that Market Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss.

87.    **Determination of Distribution Amount:** The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

88.    If an Authorized Claimant's Distribution Amount calculates to less than $10.00, no distribution will be made to that Authorized Claimant. Those funds will be included in the distribution to Authorized Claimants whose Distribution Amount is $10.00 or more.

89.    After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund seven (7) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance will be contributed to one or more non-sectarian, not-for-profit, 501(c)(3) organizations to be selected by Lead Counsel and approved by the Court.

90.    Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, will be conclusive against all Claimants. No person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Plaintiffs' damages experts, Plaintiffs' consulting experts, Defendants, Defendants' Counsel, or any of the other Plaintiffs' Releasees or Defendants' Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance

---

[6] The Claims Administrator shall match any sales of Six Flags Common Stock during the Class Period first against the Claimant's opening position in Six Flags Common Stock (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (not deducting any fees, commissions, and taxes) for sales of the remaining shares of Six Flags Common Stock sold during the Class Period is the "Total Sales Proceeds."

[7] The Claims Administrator shall ascribe a "Holding Value" of $31.89 to each share of Six Flags Common Stock purchased during the Class Period that was still held as of the close of trading on February 19, 2020.

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Plaintiffs, Defendants, and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund; the plan of allocation; the determination, administration, calculation, or payment of any Claim or nonperformance of the Claims Administrator; the payment or withholding of Taxes; or any losses incurred in connection therewith.

**TABLE A**

| Estimated Artificial Inflation in Six Flags Common Stock April 24, 2018 through and including February 19, 2020 | |
|---|---|
| **Date Range** | **Artificial Inflation Per Share** |
| April 24, 2018 – February 13, 2019 | $27.97 |
| February 14, 2019 – October 22, 2019 | $19.80 |
| October 23, 2019 – January 9, 2020 | $13.55 |
| January 10, 2020 – February 19, 2020 | $5.89 |

**TABLE B**

| 90-Day Look-back Table for Six Flags Common Stock Closing Price and Average Closing Price February 20, 2020 through and including May 19, 2020 | | | | | | |
|---|---|---|---|---|---|---|
| **Date** | **Closing Price** | **Average Closing Price from February 20, 2020 through Date Shown** | | **Date** | **Closing Price** | **Average Closing Price from February 20, 2020 through Date Shown** |
| 2/20/2020 | $31.89 | $31.89 | | 4/6/2020 | $12.64 | $18.28 |
| 2/21/2020 | $32.63 | $32.26 | | 4/7/2020 | $13.41 | $18.14 |
| 2/24/2020 | $31.30 | $31.94 | | 4/8/2020 | $14.29 | $18.03 |
| 2/25/2020 | $27.95 | $30.94 | | 4/9/2020 | $16.14 | $17.98 |
| 2/26/2020 | $25.78 | $29.91 | | 4/13/2020 | $14.70 | $17.89 |
| 2/27/2020 | $25.84 | $29.23 | | 4/14/2020 | $15.51 | $17.83 |
| 2/28/2020 | $25.28 | $28.67 | | 4/15/2020 | $15.78 | $17.77 |
| 3/2/2020 | $25.14 | $28.23 | | 4/16/2020 | $14.89 | $17.70 |
| 3/3/2020 | $23.87 | $27.74 | | 4/17/2020 | $15.59 | $17.65 |
| 3/4/2020 | $23.57 | $27.33 | | 4/20/2020 | $15.67 | $17.60 |
| 3/5/2020 | $21.09 | $26.76 | | 4/21/2020 | $14.92 | $17.54 |
| 3/6/2020 | $21.33 | $26.31 | | 4/22/2020 | $15.20 | $17.49 |
| 3/9/2020 | $19.02 | $25.75 | | 4/23/2020 | $16.08 | $17.46 |
| 3/10/2020 | $20.36 | $25.36 | | 4/24/2020 | $16.00 | $17.42 |
| 3/11/2020 | $17.32 | $24.82 | | 4/27/2020 | $17.69 | $17.43 |
| 3/12/2020 | $13.49 | $24.12 | | 4/28/2020 | $18.97 | $17.46 |
| 3/13/2020 | $16.91 | $23.69 | | 4/29/2020 | $21.14 | $17.54 |
| 3/16/2020 | $14.58 | $23.19 | | 4/30/2020 | $20.01 | $17.59 |
| 3/17/2020 | $12.86 | $22.64 | | 5/1/2020 | $20.15 | $17.64 |
| 3/18/2020 | $10.36 | $22.03 | | 5/4/2020 | $20.62 | $17.69 |
| 3/19/2020 | $11.39 | $21.52 | | 5/5/2020 | $18.92 | $17.72 |
| 3/20/2020 | $11.80 | $21.08 | | 5/6/2020 | $19.01 | $17.74 |
| 3/23/2020 | $11.19 | $20.65 | | 5/7/2020 | $18.99 | $17.76 |
| 3/24/2020 | $12.94 | $20.33 | | 5/8/2020 | $21.19 | $17.83 |
| 3/25/2020 | $15.04 | $20.12 | | 5/11/2020 | $20.30 | $17.87 |
| 3/26/2020 | $15.58 | $19.94 | | 5/12/2020 | $18.83 | $17.89 |
| 3/27/2020 | $13.95 | $19.72 | | 5/13/2020 | $17.94 | $17.89 |
| 3/30/2020 | $12.57 | $19.47 | | 5/14/2020 | $18.61 | $17.90 |
| 3/31/2020 | $12.54 | $19.23 | | 5/15/2020 | $19.11 | $17.92 |
| 4/1/2020 | $11.41 | $18.97 | | 5/18/2020 | $22.69 | $18.00 |
| 4/2/2020 | $11.05 | $18.71 | | 5/19/2020 | $22.65 | $18.07 |
| 4/3/2020 | $10.68 | $18.46 | | | | |

Questions? Call 1-877-753-9183, visit www.SixFlagsSecuritiesLitigation.com, or email info@SixFlagsSecuritiesLitigation.com

Page 22 of 22
App. 107

# PROOF OF CLAIM AND RELEASE FORM

**Six Flags Securities Litigation**
**Toll-Free Number:  1-877-753-9183**
**Email:  info@SixFlagsSecuritiesLitigation.com**
**Website:  www.SixFlagsSecuritiesLitigation.com**

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this Proof of Claim and Release Form ("Claim Form") and submit it, together with the required supporting documentation, either by mail or online.  If you choose to submit by mail, you must send the Claim Form, together with the required supporting documentation, by First-Class Mail to the address below, and your mailing must be *postmarked* **no later than February 4, 2025.**

| | |
|---|---|
| **Mail to:** | **Six Flags Securities Litigation** |
| | **c/o JND Legal Administration** |
| | **P.O. Box 91074** |
| | **Seattle, WA 98111** |

If you chose to submit the Claim Form, together with the required supporting documentation, **online**, you must do so **at www.SixFlagsSecuritiesLitigation.com, no later than February 4, 2025.**

Failure to submit your Claim Form by the date specified will subject your Claim to rejection and may preclude you from being eligible to receive a payment from the Settlement.

**Do not mail or deliver your Claim Form to the Court, Lead Counsel, Defendants' Counsel, or any of the Parties to the Action.  Submit your Claim Form only to the Claims Administrator at the address set forth above.**

## CONTENTS

**02**  I.  CLAIMANT INFORMATION

**03**  II.  GENERAL INSTRUCTIONS

**06**  III. SCHEDULE OF TRANSACTIONS IN PUBLICLY TRADED SIX FLAGS COMMON STOCK (NYSE TICKER: SIX, CUSIP: 83001A102)

**08**  IV. RELEASE OF CLAIMS AND SIGNATURE

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183,
or email info@SixFlagsSecuritiesLitigation.com

App. 108    1 of 10

# PART I – CLAIMANT INFORMATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's First Name

MI

Beneficial Owner's Last Name

Joint Beneficial Owner's First Name (*if applicable*)

MI

Joint Beneficial Owner's Last Name (*if applicable*)

If this Claim is submitted for an IRA, and if you would like any check that you MAY be eligible to receive made payable to the IRA, please include "IRA" in the "Last Name" box above (e.g., Jones IRA).

Entity Name (if the Beneficial Owner is not an individual)

Name of Representative, if applicable (*executor, administrator, trustee, c/o, etc.*), if different from Beneficial Owner

Last 4 digits of Social Security Number or Taxpayer Identification Number

Street Address

City

State/Province

Zip Code

Foreign Postal Code (if applicable)

Foreign Country (if applicable)

Telephone Number (Day)

Telephone Number (Evening)

Email Address (email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim)

Account Number

**Type of Beneficial Owner** (Specify one of the following):

☐ Individual(s)    ☐ Corporation    ☐ UGMA Custodian    ☐ IRA    ☐ Partnership

☐ Estate    ☐ Trust    ☐ Other (describe): _____

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

App. 109    2 of 10

# PART II – GENERAL INSTRUCTIONS

1.     It is important that you completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice.  The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.     By submitting this Claim Form, you will be making a request to receive a payment from the Settlement described in the Notice.  If you are not a Settlement Class Member (*see* the definition of the Settlement Class on page 7 of the Notice, which sets forth who is included in and who is excluded from the Settlement Class), or if you, or someone acting on your behalf, submitted a request for exclusion from the Settlement Class, do not submit a Claim Form.  **You may not, directly or indirectly, participate in the Settlement if you are not a Settlement Class Member.**  Thus, if you are excluded from the Settlement Class, any Claim Form that you submit, or that may be submitted on your behalf, will not be accepted.

3.     **Submission of this Claim Form does not guarantee that you will be eligible to receive a payment from the Settlement.  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.**

4.     Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) in, and holdings of, the publicly traded common stock of Six Flags Entertainment Corporation ("Six Flags").  On this schedule, provide all of the requested information with respect to your holdings, purchases, and sales of publicly traded Six Flags common stock (including free transfers and deliveries), whether such transactions resulted in a profit or a loss.  **Failure to report all transaction and holding information during the requested time period may result in the rejection of your Claim.**

5.     **Please note**:  Only publicly traded Six Flags common stock purchased during the Class Period (that is, the period from April 24, 2018 through and including the close of trading on February 19, 2020) is eligible under the Settlement.  However, sales of publicly traded Six Flags common stock during the period from February 20, 2020 through and including the close of trading on May 19, 2020, will be used for purposes of calculating your claim under the Plan of Allocation.  Therefore, in order for the Claims Administrator to be able to balance your claim, the requested purchase and sale information during this period must also be provided.

6.     You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of publicly traded Six Flags common stock as set forth in the Schedule of Transactions in Part III of this Claim Form.  Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  The Parties and the Claims Administrator do not independently have information about your investments in Six Flags common stock.  If such documents are not in your possession, please obtain copies of the documents or equivalent documents from your broker.  Failure to supply this documentation may result in the rejection of your claim.  Do not send original documents.

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183,
or email info@SixFlagsSecuritiesLitigation.com

App. 110     3 of 10

7.      **Please keep a copy of all documents that you send to the Claims Administrator. Also, do not highlight any portion of the Claim Form or any supporting documents.**

8.      Use Part I of this Claim Form entitled "CLAIMANT INFORMATION" to identify the beneficial owner(s) of the Six Flags common stock. The complete name(s) of the beneficial owner(s) must be entered. If you held the Six Flags common stock in your own name, you were the beneficial owner as well as the record owner. If, however, your shares of Six Flags common stock were registered in the name of a third party, such as a nominee or brokerage firm, you were the beneficial owner of the stock, but the third party was the record owner. The beneficial owner, not the record owner, must sign this Claim Form to be eligible to participate in the Settlement. If there were joint beneficial owners, each must sign this Claim Form and their names must appear as "Claimants" in Part I of this Claim Form.

9.      **One Claim should be submitted for each separate legal entity or separately managed account.** Separate Claim Forms should be submitted for each separate legal entity (e.g., an individual should not combine his or her IRA holdings and transactions with holdings and transactions made solely in the individual's name). Generally, a single Claim Form should be submitted on behalf of one legal entity including all holdings and transactions made by that entity on one Claim Form. However, if a single person or legal entity had multiple accounts that were separately managed, separate Claims may be submitted for each such account. The Claims Administrator reserves the right to request information on all the holdings and transactions in Six Flags common stock made on behalf of a single beneficial owner.

10.     Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)     expressly state the capacity in which they are acting;

(b)     identify the name, account number, last four digits of the Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Six Flags common stock; and

(c)     furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

11.     By submitting a signed Claim Form, you will be swearing that you:

(a)     own(ed) the Six Flags common stock you have listed in the Claim Form; or

(b)     are expressly authorized to act on behalf of the owner thereof.

12.     By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your Claim and may subject you to civil liability or criminal prosecution.

13.     If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing. The claims process will take substantial time to complete fully and fairly. Please be patient.

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

App. 111    4 of 10

14. **PLEASE NOTE:** As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

15. If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, JND Legal Administration, at the above address, by email at info@SixFlagsSecuritiesLitigation.com, or by toll-free phone at 1-877-753-9183, or you can visit the Settlement Website, www.SixFlagsSecuritiesLitigation.com where copies of the Claim Form and Notice are available for downloading.

16. NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the *mandatory* electronic filing requirements and file layout, you may visit the Settlement Website at www.SixFlagsSecuritiesLitigation.com or you may email the Claims Administrator's electronic filing department at SFESecurities@JNDLA.com. Any file not in accordance with the required electronic filing format will be subject to rejection. The *complete* name of the beneficial owner of the securities must be entered where called for (*see* ¶ 8 above). No electronic files will be considered to have been submitted unless the Claims Administrator issues an email to that effect. **Do not assume that your file has been received until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at SFESecurities@JNDLA.com to inquire about your file and confirm it was received.**

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM WITHIN 60 DAYS OF YOUR SUBMISSION. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, CONTACT THE CLAIMS ADMINISTRATOR TOLL-FREE AT 1-877-753-9183.**

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

App. 112   5 of 10

# PART III – SCHEDULE OF TRANSACTIONS IN PUBLICLY TRADED SIX FLAGS COMMON STOCK

Use this section to provide information on your holdings and trading of publicly traded Six Flags common stock during the requested time periods. During the Class Period, Six Flags common stock traded on the New York Stock Exchange under the ticker symbol SIX, and now trades under the ticker FUN. The CUSIP number was 83001A102. Please be sure to include proper documentation with your Claim Form as described in detail in Part II – General Instructions, ¶ 6 above. Do not include information regarding securities other than publicly traded Six Flags common stock.

| | |
|---|---|
| **1. HOLDINGS AS OF APRIL 24, 2018** – State the total number of shares of publicly traded Six Flags common stock held as of the opening of trading on April 24, 2018. (Must be documented.) If none, write "zero" or "0." | Confirm Proof of Holding Position Enclosed ☐ |

**2. PURCHASES FROM APRIL 24, 2018 THROUGH FEBRUARY 19, 2020, INCLUSIVE** – Separately list each and every purchase (including free receipts) of publicly traded Six Flags common stock from after the opening of trading on April 24, 2018 through and including the close of trading on February 19, 2020. (Must be documented.)

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding fees, commissions, and taxes) | Confirm Proof of Purchase Enclosed |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

**3. PURCHASES FROM FEBRUARY 20, 2020 THROUGH MAY 19, 2020, INCLUSIVE** – State the total number of shares of publicly traded Six Flags common stock purchased (including free receipts) from after the opening of trading on February 20, 2020 through and including the close of trading on May 19, 2020. (Must be documented.) If none, write "zero" or "0."[1]

---

[1] **Please note**: Information requested with respect to your purchases of publicly traded Six Flags common stock from after the opening of trading on February 20, 2020 through and including the close of trading on May 19, 2020, is needed in order to perform the necessary calculations for your Claim; purchases during this period, however, are not eligible transactions and will not be used for purposes of calculating Recognized Loss Amounts under the Plan of Allocation.

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

**4. SALES FROM APRIL 24, 2018 THROUGH MAY 19, 2020, INCLUSIVE** – Separately list each and every sale (including free deliveries) of publicly traded Six Flags common stock from after the opening of trading on April 24, 2018 through and including the close of trading on May 19, 2020. (Must be documented.)

**IF NONE, CHECK HERE** ☐

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (not deducting fees, commissions, and taxes) | Confirm Proof of Sale Enclosed |
|---|---|---|---|---|
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |
| / / | | $ | $ | ☐ |

**5. HOLDINGS AS OF MAY 19, 2020 –** State the total number of shares of publicly traded Six Flags common stock held as of the close of trading on May 19, 2020. (Must be documented.) If none, write "zero" or "0."

Confirm Proof of Holding Position Enclosed ☐

**IF YOU REQUIRE ADDITIONAL SPACE FOR THE SCHEDULE ABOVE, ATTACH EXTRA SCHEDULES IN THE SAME FORMAT. PRINT THE BENEFICIAL OWNER'S FULL NAME AND LAST FOUR DIGITS OF SOCIAL SECURITY/TAXPAYER IDENTIFICATION NUMBER ON EACH ADDITIONAL PAGE. IF YOU DO ATTACH EXTRA SCHEDULES, CHECK THIS BOX.**

☐

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

App. 114    7 of 10

# PART IV - RELEASE OF CLAIMS AND SIGNATURE

**YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE 9 OF THIS CLAIM FORM.**

I (we) hereby acknowledge that, pursuant to the terms set forth in the Stipulation and Agreement of Settlement dated September 3, 2024, without further action by anyone, upon the Effective Date of the Settlement, I (we), on behalf of myself (ourselves) and my (our) (the Claimant(s)') heirs, executors, administrators, trustees, predecessors, successors, and assigns in their capacities as such only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any or all of the Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against the Defendants' Releasees.

## CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) agree(s) to the release above and certifies (certify) as follows:

1.      that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      that the Claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Settlement Class as set forth in the Notice;

3.      that the Claimant(s) did *not* submit a request for exclusion from the Settlement Class;

4.      that I (we) own(ed) the Six Flags common stock identified in the Claim Form and have not assigned the claim against any of the Defendants or any of the other Defendants' Releasees to another;

5.      that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

6.      that the Claimant(s) has (have) not submitted any other Claim covering the same purchases of Six Flags common stock and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

7.      that the Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') Claim and for purposes of enforcing the releases set forth herein;

8.      that I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator, or the Court may require;

9.      that the Claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the determination by the Court of the validity or amount of this Claim, and waives any right of appeal or review with respect to such determination;

10.     that I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183, or email info@SixFlagsSecuritiesLitigation.com

App. 115     8 of 10

11.    that the Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (i) the Claimant(s) is (are) exempt from backup withholding or (ii) the Claimant(s) has (have) not been notified by the IRS that he, she, or it is subject to backup withholding as a result of a failure to report all interest or dividends or (iii) the IRS has notified the Claimant(s) that he, she, or it is no longer subject to backup withholding.  **If the IRS has notified the Claimant(s) that he, she, it, or they is (are) subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                        Date

_____

Print Claimant name here

_____

Signature of Joint Claimant, if any                          Date

_____

Print Joint Claimant name here

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____

Signature of person signing on behalf of Claimant            Date

_____

Print name of person signing on behalf of Claimant here

_____

Capacity of person signing on behalf of Claimant, if other than an individual, e.g., executor, president, trustee, custodian, etc.  (Must provide evidence of authority to act on behalf of Claimant – *see* ¶ 10 on page 4 of this Claim Form.)

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183,
or email info@SixFlagsSecuritiesLitigation.com

App. 116    9 of 10

# REMINDER CHECKLIST



1. Sign the above release and certification.  If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.





3. Do not highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days of your submission.  Your Claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll-free at 1-877-753-9183.**





6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, you must send the Claims Administrator written notification of your new address.  If you change your name, inform the Claims Administrator.

7. If you have any questions or concerns regarding your Claim, contact the Claims Administrator at the address below, by email at info@SixFlagsSecuritiesLitigation.com, or by toll-free phone at 1-877-753-9183, or you may visit www.SixFlagsSecuritiesLitigation.com.  DO NOT call Six Flags or its counsel with questions regarding your claim.



THIS CLAIM FORM MUST EITHER BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL **POSTMARKED NO LATER THAN FEBRUARY 4, 2025, OR SUBMITTED ONLINE AT WWW.SIXFLAGSSECURITIESLITIGATION.COM NO LATER THAN FEBRUARY 4, 2025**.  IF MAILED, THE CLAIM FORM SHOULD BE ADDRESSED AS FOLLOWS:

Six Flags Securities Litigation
c/o JND Legal Administration
P.O. Box 91074
Seattle, WA 98111

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before February 4, 2025, is indicated on the envelope and it is mailed First Class and addressed in accordance with the above instructions.  In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all Claim Forms.  Please be patient and notify the Claims Administrator of any change of address.

Questions? Visit www.SixFlagsSecuritiesLitigation.com, call 1-877-753-9183,
or email info@SixFlagsSecuritiesLitigation.com

App. 117    10 of 10

# EXHIBIT B

THE WALL STREET JOURNAL.   * *                                Thursday, October 17, 2024 | **B7**

# COMMODITIES

wsj.com/market-data/commodities

## Futures Contracts

### Metal & Petroleum Futures

| | Open | High | hi lo | Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|---|
| **Copper-High** (CMX)-25,000 lbs.; $ per lb. | | | | | | | |
| Oct | 4.3190 | 4.3395 | | 4.3140 | 4.3315 | 0.0310 | 924 |
| Dec | 4.3415 | 4.3950 | | 4.3295 | 4.3675 | 0.0390 | 130,664 |
| **Gold** (CMX)-100 troy oz.; $ per troy oz. | | | | | | | |
| Oct | 2655.00 | 2655.30 | | 2655.00 | 2674.00 | 12.60 | 105 |
| Nov | 2666.00 | 2689.80 | | 2666.00 | 2679.30 | 12.30 | 1,542 |
| Dec | 2679.50 | 2702.50 | | 2674.90 | 2691.30 | 12.40 | 439,590 |
| Feb'25 | 2702.90 | 2726.00 | | 2698.00 | 2716.90 | 12.50 | 53,125 |
| April | 2718.80 | 2745.10 | | 2718.80 | 2734.90 | 12.90 | 22,396 |
| June | 2744.00 | 2764.70 | | 2739.60 | 2755.00 | 13.00 | 13,497 |
| **Palladium** (NYM)-50 troy oz.; $ per troy oz. | | | | | | | |
| Oct | 1041.00 | 1049.00 | | 1041.00 | 1029.00 | 14.30 | 15 |
| Dec | 1012.50 | 1032.00 | | 1011.00 | 1026.00 | 14.10 | 16,918 |
| **Platinum** (NYM)-50 troy oz.; $ per troy oz. | | | | | | | |
| Oct | 940.00 | 992.20 | | 940.00 | 993.80 | 6.10 | 10 |
| Jan'25 | 995.20 | 1012.20 | | 994.00 | 1002.60 | 6.00 | 65,069 |
| **Silver** (CMX)-5,000 troy oz.; $ per troy oz. | | | | | | | |
| Oct | 31.690 | 31.735 | | 31.645 | 31.760 | 0.233 | 4 |
| Dec | 31.665 | 32.385 | | 31.600 | 31.974 | 0.218 | 117,647 |
| **Crude Oil, Light Sweet** (NYM)-1,000 bbls.; $ per bbl. | | | | | | | |
| Nov | 70.99 | 71.31 | | 69.64 | 70.39 | -0.19 | 137,849 |
| Dec | 70.39 | 70.69 | | 69.12 | 69.82 | -0.19 | 280,609 |
| Jan'25 | 69.98 | 70.27 | | 68.77 | 69.43 | -0.21 | 150,142 |
| March | 69.50 | 69.63 | | 68.20 | 68.81 | -0.24 | 62,868 |
| June | 66.75 | 66.96 | | 67.64 | 66.16 | -0.29 | 151,388 |
| Dec | 67.73 | 67.86 | | 66.66 | 67.08 | -0.39 | 152,972 |
| **Natural Gas** (NYM)-10,000 MMBtu.; $ per MMBtu. | | | | | | | |
| Nov | 2.488 | 2.497 | v | 2.358 | 2.367 | -.131 | 131,870 |
| Dec | 2.937 | 2.942 | v | 2.830 | 2.841 | -.103 | 203,537 |
| Jan'25 | 3.196 | 3.204 | v | 3.107 | 3.120 | -.089 | 246,751 |
| Feb | 3.101 | 3.106 | v | 3.019 | 3.027 | -.079 | 119,596 |
| March | 2.872 | 2.874 | v | 2.792 | 2.801 | -.073 | 199,735 |
| April | 2.763 | 2.763 | | 2.720 | 2.725 | -.050 | 89,306 |

### Agriculture Futures

| | Open | High | hi lo | Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|---|
| **Corn** (CBT)-5,000 bu.; cents per bu. | | | | | | | |
| Dec | 401.25 | 406.75 | | 401.00 | 404.75 | 3.50 | 754,065 |

### Bonds | wsj.com/market-data/bonds/benchmarks

#### Tracking Bond Benchmarks

Return on investment and spreads over Treasurys and/or yields paid to investors compared with 52-week highs and lows for different types of bonds

| | Total return close | YTD total return (%) | Index | | Yield (%) Latest Low High |
|---|---|---|---|---|---|
| **Broad Market** Bloomberg Fixed Income Indices | | | | | |
| 2135.75 | 3.4 | U.S. Aggregate | | 4.656 | 4.100 5.740 |
| **U.S. Corporate Indexes** Bloomberg Fixed Income Indices | | | | | |
| 3269.87 | 4.6 | U.S. Corporate | | 4.870 4.640 6.430 | |
| 3154.31 | 5.2 | Intermediate | | 4.660 4.400 6.350 | |
| 4365.82 | 3.4 | Long term | | 5.290 5.070 6.600 | |
| 624.18 | 3.3 | Double-A-rated | | 4.530 4.260 5.760 | |
| 888.32 | 5.1 | Triple-B-rated | | 5.070 4.850 6.700 | |
| **High Yield Bonds** ICE BofA | | | | | |
| 567.33 | 7.7 | High Yield Constrained | | 7.085 6.970 9.560 | |
| 580.17 | 7.1 | Triple-C-rated | | 13.147 12.060 16.020 | |
| 3792.69 | 7.1 | High Yield 100 | | 6.384 6.280 9.101 | |
| 453.40 | 6.8 | Global High Yield Constrained | | 7.326 7.110 9.700 | |
| 370.57 | 7.1 | Europe High Yield Constrained | | 6.376 6.322 9.440 | |
| **U.S Agency** Bloomberg Fixed Income Indices | | | | | |
| 1849.01 | 3.7 | U.S Agency | | 4.270 3.990 5.370 | |
| 1636.07 | 3.2 | 10-20 years | | 4.120 3.850 5.290 | |
| 3564.00 | 3.1 | 20-plus years | | 4.660 4.320 5.760 | |
| 2600.72 | 2.5 | Yankee | | 4.680 4.440 6.100 | |

| | Total return close | YTD total return (%) | Index | | Yield (%) Latest Low High |
|---|---|---|---|---|---|
| **Mortgage-Backed** Bloomberg Fixed Income Indices | | | | | |
| 2109.52 | 3.4 | Mortgage-Backed | | 4.760 4.340 6.050 | |
| 2072.93 | 2.9 | Ginnie Mae (GNMA) | | 4.760 4.310 6.070 | |
| 1244.82 | 3.5 | Fannie mae (FNMA) | | 4.740 4.340 6.040 | |
| 1914.47 | 3.6 | Freddie Mac (FHLMC) | | 4.680 4.190 6.190 | |
| 598.28 | 1.7 | Muni Master | | 3.233 3.030 4.311 | |
| 421.74 | 0.8 | 7-12 year | | 3.103 2.920 4.200 | |
| 484.27 | 1.8 | 12-22 year | | 3.561 3.440 4.567 | |
| 462.91 | 3.1 | 22-plus year | | 4.001 3.910 5.279 | |
| **Global Government** J.P. Morgan | | | | | |
| 552.21 | 1.6 | Global Government | | 3.220 2.950 3.310 | |
| 826.81 | 3.0 | Canada | | 3.370 2.890 3.690 | |
| 348.96 | 1.2 | EMU§ | | 2.820 2.450 3.200 | |
| 660.73 | 0.1 | France | | 2.990 2.520 3.270 | |
| 471.85 | 0.9 | Germany | | 2.260 2.020 3.000 | |
| 272.43 | -2.4 | Japan | | 1.050 0.720 1.170 | |
| 513.74 | 0.9 | Netherlands | | 2.500 2.150 3.080 | |
| 871.28 | 1.0 | U.K. | | 4.260 3.840 4.830 | |
| 912.12 | 7.2 | Emerging Markets * | | 7.242 7.084 8.842 | |

*Constrained indexes limit individual issuer concentrations to 2%; the High Yield 100 are the 100 largest bonds  †In local currency  ‡Euro-zone bonds
§ EMBI Global Index  Sources: ICE Data Services; Bloomberg Fixed Income Indices; S&P Dow Jones Indices; J.P.Morgan

### Global Government Bonds: Mapping Yields

Yields and spreads over or under U.S. Treasurys on benchmark two-year and 10-year government bonds in selected other countries; arrows indicate whether the yield rose(▲) or fell(▼) in the latest session

| Country | Coupon (%) | Maturity, in years | | Yield (%) Latest(l) | Previous | Month ago | Year ago | Spread Under/Over U.S. Treasurys, in basis points | | |
|---|---|---|---|---|---|---|---|---|---|---|
| U.S. | 3.934 | 2 | 3.955 | 3.954 | 3.556 | 5.106 | | | |
| | 3.975 | 10 | 4.037 | 4.022 | 3.709 | 4.845 | | | |
| Australia | 3.500 | 2 | 3.853 | 3.876 | 3.643 | 4.062 | -10.2 | -7.9 | -105.9 |
| | 3.000 | 10 | 4.216 | 4.238 | 3.913 | 4.714 | 19.7 | 20.2 | -21.1 |
| France | 2.500 | 2 | 2.340 | 2.355 | 2.364 | 3.554 | -151.4 | -154.2 | -154.6 |
| | 3.000 | 10 | 2.991 | 3.006 | 2.867 | 3.418 | -104.6 | -101.5 | -165.3 |
| Germany | 2.200 | 2 | 2.179 | 2.198 | 2.228 | 3.243 | -173.7 | -169.2 | -152.8 |
| | 2.600 | 10 | 2.257 | 2.281 | 2.133 | 2.884 | -178.1 | -174.0 | -197.2 |
| Italy | 2.650 | 2 | 2.625 | 2.653 | 2.843 | 3.904 | -130.0 | -123.1 | -113.1 |
| | 3.850 | 10 | 3.530 | 3.578 | 3.461 | 4.782 | -50.7 | -44.4 | -6.3 |
| Japan | 0.100 | 2 | 0.440 | 0.433 | 0.373 | 0.060 | -351.4 | -352.1 | -504.6 |
| | 0.800 | 10 | 0.946 | 0.957 | 0.853 | 0.762 | -309.1 | -306.5 | -408.3 |
| Spain | 2.500 | 2 | 2.430 | 2.448 | 2.478 | 3.559 | -152.5 | -150.6 | -154.7 |
| | 3.900 | 10 | 2.934 | 2.974 | 2.848 | 3.869 | -110.4 | -104.8 | -97.6 |
| U.K. | 4.125 | 2 | 4.185 | 4.201 | 3.813 | 4.824 | 23.1 | 24.7 | -28.2 |
| | 4.000 | 10 | 4.068 | 4.089 | 3.763 | 4.503 | 3.1 | 6.7 | -34.2 |

Source: Tullett Prebon, Tradeweb ICE U.S. Treasury Close

### Corporate Debt

Prices at firms' bonds reflect factors including investors' economic, sectoral and company-specific expectations

#### Investment-grade spreads that tightened the most...

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Current | Spread*, in basis points One day ago | Last week |
|---|---|---|---|---|---|---|---|
| Boeing | BA | 5.875 | 6.059 | Feb. 15, '40 | 169 | -15 | 165 |
| John Deere Capital | | 6.550 | 4.558 | Oct. 15, '28 | 34 | -10 | 18 |
| El Paso Natural Gas | | 3.500 | 5.259 | Feb. 15, '32 | 113 | -9 | ... |
| Progressive | PGR | 2.450 | 4.23 | Jan. 15, '27 | 40 | -8 | 28 |
| Morgan Stanley | MS | 3.125 | 4.67 | July 27, '26 | 31 | -7 | 36 |
| Alibaba | BABA | 4.500 | 5.015 | Nov. 28, '34 | 92 | -7 | ... |
| Bank of America | BAC | 4.330 | 5.177 | March 15, '50 | 94 | -7 | 92 |
| Metropolitan Life Global Funding I | | 5.050 | 4.637 | Jan. 06, '28 | 41 | -7 | 43 |

#### ...And spreads that widened the most

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Current | One day ago | Last week |
|---|---|---|---|---|---|---|---|
| Northrop Grumman | NOC | 7.750 | 4.77 | Feb. 15, '31 | 76 | 80 | 69 |
| Rohm and Haas | | 7.850 | 4.920 | July 15, '29 | 60 | 72 | 57 |
| Massachusetts Institute of Technology | UNH | 5.600 | 5.170 | July 01, '51 | 72 | 71 | 69 |
| UnitedHealth | UNH | 5.350 | 4.880 | Feb. 15, '33 | 60 | 57 | 53 |
| Toronto-Dominion Bank | TD | 5.156 | 4.868 | Jan. 10, '28 | 67 | 64 | 65 |
| Barrick North America Finance | | 5.700 | 4.986 | May 15, '38 | 87 | 84 | 90 |
| Barclays | | 5.304 | 5.091 | Aug. 09, '26 | 84 | 81 | 86 |

#### High-yield issues with the biggest price increases...

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Current | Bond Price as % of face value One day ago | Last week |
|---|---|---|---|---|---|---|---|
| Lumen Technologies | LUMN | 7.650 | 12.02 | March 15, '42 | 0.75 | 0.750 | 67.000 |
| Rockies Express Pipeline | | 4.950 | 5.49 | July 15, '29 | 97.375 | 0.57 | ... |
| Tenet Healthcare | THC | 6.875 | 5.37 | Nov. 15, '31 | 108.739 | 0.52 | 108.218 |
| Telecom Italia Capital | | 6.000 | 6.08 | Sept. 30, '34 | 99.375 | 0.50 | 99.375 |
| Paramount Global | PARA | 6.875 | 6.71 | April 30, '36 | 101.294 | 0.48 | 100.809 |
| DISH DBS | | 7.750 | 18.86 | July 1, '26 | 81.750 | 0.46 | 81.750 |
| Teva Pharmaceutical Finance Netherlands III | | 4.100 | 5.24 | Oct. 1, '46 | 72.491 | 0.37 | 72.750 |
| Venture Global Calcasieu Pass | | 4.125 | 5.43 | Aug. 15, '31 | 92.625 | 0.34 | 92.340 |

#### ...And with the biggest price decreases

| Issuer | Symbol | Coupon (%) | Yield (%) | Maturity | Current | One day ago | Last week |
|---|---|---|---|---|---|---|---|
| Hughes Satellite Systems | | 6.625 | 14.46 | Aug. 1, '26 | 88.000 | -0.21 | 87.125 |
| Occidental Petroleum | OXY | 6.450 | 5.64 | Sept. 15, '36 | 106.944 | -0.18 | 107.294 |
| Rakuten | | 11.250 | 7.04 | Feb. 15, '27 | 108.851 | -0.18 | 109.010 |

*Estimated spread over 2-year, 3-year, 5-year, 10-year or 30-year hot-run Treasury; 100 basis points=one percentage pt.; change in spread shown is for 2-spread. Note: Data are for the most active issue of bonds with maturities of two years or more
Source: MarketAxess

---

### Interest Rate Futures

| | Open | High | hi lo | Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|---|
| **Ultra Treasury Bonds** (CBT)-$100,000; pts 32nds of 100% | | | | | | | |
| Dec | 127-02 | 127-29 | | 125-20 | 126-19 | 18.0 | 1,727,246 |
| **Treasury Bonds** (CBT)-$100,000; pts 32nds of 100% | | | | | | | |
| Dec | 121-010 | 121-230 | | 120-310 | 121-110 | 9.0 | 1,708,432 |
| **Treasury Notes** (CBT)-$100,000; pts 32nds of 100% | | | | | | | |
| Dec | 112-140 | 112-220 | | 112-120 | 112-190 | 3.0 | 4,780,712 |
| March'25 | 112-140 | 113-040 | | 112-135 | 112-270 | 3.0 | 5,155 |
| **5 Yr. Treasury Notes** (CBT)-$100,000; pts 32nds of 100% | | | | | | | |
| Dec | 108-180 | 108-227 | | 108-170 | 108-195 | 1.2 | 6,342,957 |
| March'25 | 108-307 | 100-067 | | 108-305 | 108-315 | 1.0 | 790 |
| **2 Yr. Treasury Notes** (CBT)-$200,000; pts 32nds of 100% | | | | | | | |
| Dec | 103-149 | 103-166 | | 103-141 | 103-144 | 1.3 | 4,469,989 |
| March'25 | 103-244 | 103-252 | | 103-240 | 103-251 | 1.1 | 799 |
| **30 Day Federal Funds** (CBT)-$5,000,000; 100 - daily avg. | | | | | | | |
| Oct | 95.2125 | 95.2125 | | 95.2100 | 95.2100 | ... | 748,471 |
| Nov | 95.3275 | 95.3500 | | 95.3275 | 95.3500 | .0200 | 268,960 |
| **Three-Month SOFR** (CME)-$1,000,000; 100 - daily avg. | | | | | | | |
| Aug | 94.9975 | 95.0000 | | 94.9975 | 94.9975 | ... | n.a. |
| Sept | 95.2250 | 95.2300 | | 95.2175 | 95.2275 | -0.0050 | 1,256,605 |

### Currency Futures

| | Open | High | hi lo | Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|---|
| **Japanese Yen** (CME)-¥12,500,000; $ per 100¥ | | | | | | | |
| Dec | .6747 | .6747 | | .6705 | .6706 | -.0023 | 586 |
| Dec | .6756 | .6773 | | .6730 | .6735 | -.0023 | 195,338 |
| **Canadian Dollar** (CME)-CAD 100,000; $ per CAD | | | | | | | |
| Nov | .7267 | .7280 | | .7258 | .7275 | .0013 | 327 |
| Dec | .7268 | .7283 | | .7259 | .7276 | .0013 | 180,049 |
| **British Pound** (CME)-£62,500; $ per £ | | | | | | | |
| Nov | 1.3071 | 1.3076 | v | 1.2977 | 1.2993 | -.0084 | 139 |

### Index Futures

| | Open | High | hi lo | Low | Settle | Chg | Open interest |
|---|---|---|---|---|---|---|---|
| **Mini DJ Industrial Average** (CBT)-$5 x index | | | | | | | |
| Dec | 43009 | 43369 | | 42937 | 43142 | 327 | 88,965 |
| March'25 | 43218 | 43218 | | 43218 | 43729 | 331 | 462 |
| **Mini S&P 500** (CME)-$50 x index | | | | | | | |
| Dec | 5841.00 | 5892.75 | | 5819.25 | 5837.00 | 24.25 | 2,551,007 |
| March'25 | 5917.00 | 5968.75 | | 5912.50 | 5946.75 | 24.00 | 30,910 |
| **Mini S&P Midcap 400** (CME)-$100 x index | | | | | | | |
| Dec | 3191.40 | 3223.10 | | 3165.90 | 3182.40 | 20.00 | 78,910 |
| March'25 | 3235.00 | 3242.20 | | 3241.70 | 3242.20 | 26.00 | n.a. |
| **Mini Nasdaq 100** (CME)-$20 x index | | | | | | | |
| Dec | 20314.50 | 20396.50 | | 20206.25 | 20249.50 | 7.50 | 259,833 |
| March'25 | 20574.75 | 20654.00 | | 20431.00 | 20573.25 | 7.00 | 1,242 |
| **Mini Russell 2000** (CME)-$50 x index | | | | | | | |
| Dec | 2271.30 | 2306.30 | | 2238.80 | 2225.30 | 36.80 | 454,932 |
| Dec | 2269.00 | 2306.30 | | 2239.00 | 2255.30 | 37.30 | 2,833 |
| **Mini Russell 1000** (CME)-$50 x index | | | | | | | |
| Dec | 3202.60 | 3202.10 | | 3202.70 | 15.50 | 6,021 | |
| **U.S. Dollar Index** (ICE-US)-$1,000 x index | | | | | | | |
| Dec | 103.07 | 103.42 | | 102.97 | 103.40 | .24 | 23,645 |
| March'25 | 102.72 | 102.62 | | 102.63 | 103.06 | .35 | 661 |

Source: FactSet

### New Highs and Lows

The following explanations apply to the New York Stock Exchange, NYSE Arca, NYSE American and Nasdaq Stock Market stocks that hit a new 52-week intraday high or low in the latest session. **% CHG** Daily percentage change from the previous trading session.

#### Highs

(table of stock symbols and values)

Continued on Page B8

---

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

### LEGAL NOTICE

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

OKLAHOMA FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM, ET AL., Plaintiffs v.

SIX FLAGS ENTERTAINMENT
CORPORATION, ET AL., Defendants.

Civil Action No. 4:20-cv-00201-P

### CLASS ACTION

**SUMMARY NOTICE OF (I) PENDENCY OF
CLASS ACTION AND PROPOSED
SETTLEMENT; (II) SETTLEMENT HEARING;
AND (III) MOTION FOR ATTORNEYS'
FEES AND LITIGATION EXPENSES**

**TO:** All persons and entities who purchased the publicly traded common stock of Six Flags Entertainment Corporation ("Six Flags") between April 24, 2018 and February 19, 2020, inclusive (the "Class Period"), and were damaged thereby (the "Settlement Class").

PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Texas (the "Court"), that the above-captioned securities class action (the "Action") is pending in the Court.

YOU ARE ALSO NOTIFIED that Court-appointed Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and additional Named Plaintiff Key West Police & Fire Pension Fund (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, and Defendants Six Flags, James Reid-Anderson, and Marshall Barber (collectively, "Defendants") have reached a proposed settlement of the Action for $40,000,000 in cash (the "Settlement"). If approved, the Settlement will resolve all claims in the Action.

A hearing will be held on **January 28, 2025, at 9:00 a.m.**, before the Honorable Mark T. Pittman of the United States District Court for the Northern District of Texas, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, located at 501 W. 10th Street, Fort Worth, Texas, 76102-3673, for the following purposes: (i) to determine whether the Settlement Class should be certified for purposes of the Settlement; (ii) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be finally approved by the Court; (iii) to determine whether a Judgment, substantially in the form attached as Exhibit B to the Stipulation, should be entered dismissing the Action with prejudice against Defendants and granting the Releases specified and described in the Stipulation (and in the Notice); (iv) to determine whether the amount of Plaintiffs' Counsel's application for an award of attorneys' fees and Litigation Expenses should be approved; and (v) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Net Settlement Fund. If you have not yet received the full printed Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form"), you may obtain copies of these documents by contacting the Claims Administrator by mail at Six Flags Securities Litigation, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111; by telephone at 1-877-753-9185; or by email at info@SixFlagsSecuritiesLitigation.com. Copies of the Notice and Claim Form can also be downloaded from the Settlement website, www.SixFlagsSecuritiesLitigation.com.

If you are a Settlement Class Member, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked (if mailed),* or *submitted online through the Settlement website, www.SixFlagsSecuritiesLitigation.com, no later than February 4, 2025.* If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion in accordance with the instructions set forth in the Notice *received no later than January 7, 2025.* If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court and you will not be eligible to share in the distribution of the net proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received no later than January 7, 2025,* in accordance with the instructions set forth in the Notice.

Please do not contact the Court, the Clerk's office, Six Flags, any other Defendants in the Action, or their counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to the Claims Administrator or Lead Counsel.

Requests for the Notice and Claim Form should be directed to:

Six Flags Securities Litigation
c/o JND Legal Administration
P.O. Box 91074
Seattle, WA 98111
1-877-753-9185
info@SixFlagsSecuritiesLitigation.com
www.SixFlagsSecuritiesLitigation.com

Inquiries, other than requests for the Notice and Claim Form, may be made to Lead Counsel:

John Rizio-Hamilton
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
(800) 380-8496
settlements@blbglaw.com

By Order of the Court

† Certain persons and entities are excluded from the Settlement Class by definition, as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") available at www.SixFlagsSecuritiesLitigation.com.

**1-877-753-9185**

---

## THE MARKETPLACE

### ADVERTISE TODAY

(800) 366-3975

For more information visit:
wsj.com/classifieds

© 2024 Dow Jones & Company, Inc.
All Rights Reserved.

---

### BUSINESS OPPORTUNITIES



INFOWARS
BANKRUPTCY

Production Rights, Archival Library & Associated Intellectual Property, Social Media & E-Commerce Site, Trade & Domain Names and much more

SEALED BID AUCTION

Bids Due By:
November 8 at 2 p.m. CT

adteam@360bid.sale
888-345-SOLD

tranzon  360  THREESIXTY

---

### DEA

### LEGAL NOTICE

DEA NOTICE OF FORFEITURE SOUTHERN DISTRICT OF TEXAS

$196,369.00 US2 seized from Javier Trejo on 01/14/24 at 6000 block of Highway 59, Beasley TX. Any person desiring to claim the above USC has 30 days from the date of first publication to file a claim. Forfeiture and Seal, Case 24, Nassau Bay, TX 77058. Attn: DEA ARG/Group Supervisor.

# Bernstein Litowitz Berger & Grossmann LLP Announces Proposed Settlement Involving All Persons or Entities who Purchased the Common Stock of Six Flags Entertainment Corporation between April 24, 2018 and February 19, 2020, Inclusive

NEWS PROVIDED BY
**JND Legal Administration ➞**
Oct 17, 2024, 09:17 ET

SEATTLE, Oct. 17, 2024 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., <br><br> Plaintiffs <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br><br> CLASS ACTION |

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION**

**AND PROPOSED SETTLEMENT; (II) SETTLEMENT HEARING; AND**

**(III) MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO:** **All persons and entities who purchased the publicly traded common stock of Six Flags Entertainment Corporation ("Six Flags") between April 24, 2018 and February 19, 2020, inclusive (the "Class Period"), and were damaged thereby (the "Settlement Class")[1]:**

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Northern District of Texas (the "Court"), that the above-captioned securities class action (the "Action") is pending in the Court.

YOU ARE ALSO NOTIFIED that Court-appointed Lead Plaintiff Oklahoma Firefighters Pension and Retirement System and additional Named Plaintiff Key West Police & Fire Pension Fund (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, and Defendants Six Flags, James Reid-Anderson, and Marshall Barber (collectively, "Defendants") have reached a proposed settlement of the Action for $40,000,000 in cash (the "Settlement"). If approved, the Settlement will resolve all claims in the Action.

A hearing will be held on **January 28, 2025, at 9:00 a.m.**, before the Honorable Mark T. Pittman of the United States District Court for the Northern District of Texas, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, located at 501 W. 10th Street, Fort Worth, Texas, 76102-3673, for the following purposes: (i) to determine whether the Settlement Class should be certified for purposes of the Settlement; (ii) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be finally approved by the Court; (iii) to determine whether a Judgment, substantially in the form attached as Exhibit B to the Stipulation, should be entered dismissing the Action with prejudice against Defendants and granting the Releases specified and described in the Stipulation (and in the Notice); (iv) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (v) to determine whether the motion by Lead Counsel for an award of attorneys' fees and Litigation Expenses should be approved; and (vi) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Net Settlement Fund**. If you have not yet received the full printed Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form"), you may obtain copies of these documents by contacting the Claims Administrator by mail at Six Flags Securities Litigation, c/o JND Legal Administration, P.O. Box 91074, Seattle, WA 98111; by telephone at 1-877-753-9183; or by email at **info@SixFlagsSecuritiesLitigation.com.** Copies of the Notice and Claim Form can also be downloaded from the Settlement website, **www.SixFlagsSecuritiesLitigation.com**.

If you are a Settlement Class Member, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form **postmarked** (if mailed), or **submitted online** through the Settlement website, **www.SixFlagsSecuritiesLitigation.com, no later than February 4, 2025**. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is **received no later than January 7, 2025**, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to receive a payment from the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and expenses, must be filed with the Court and delivered to Lead Counsel and Representative Defendants' Counsel such that they are **received no later than January 7, 2025**, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Six Flags, any other Defendants in the Action, or their counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed the Claims Administrator or Lead Counsel.**

Requests for the Notice and Claim Form should be made to:

Six Flags Securities Litigation

c/o JND Legal Administration

P.O. Box 91074

Seattle, WA 98111

1-877-753-9183

**info@SixFlagsSecuritiesLitigation.com**

**www.SixFlagsSecuritiesLitigation.com**

Inquiries, other than requests for the Notice and Claim Form, may be made to Lead Counsel:

John Rizio-Hamilton

Bernstein Litowitz Berger & Grossmann LLP

1251 Avenue of the Americas, 44th Floor

New York, NY 10020

1-800-380-8496

**settlements@blbglaw.com**

By Order of the Court

[1] Certain persons and entities are excluded from the Settlement Class by definition, as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice"), available at **www.SixFlagsSecuritiesLitigation.com**.

SOURCE JND Legal Administration

WANT YOUR COMPANY'S NEWS

App. 123

# FEATURED ON PRNEWSWIRE.COM?

## GET STARTED

**440k+**
Newsrooms &
Influencers

**9k+**
Digital Media
Outlets

**270k+**
Journalists
Opted In

# **Exhibit 3**

**EXHIBIT 3**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

**SUMMARY OF COUNSEL'S
LODESTAR AND EXPENSES**

| Exhibit | FIRM | HOURS | LODESTAR | EXPENSES |
|---------|------|-------|----------|----------|
| 3A | Bernstein Litowitz Berger & Grossmann LLP | 7,684.00 | $5,078,533.75 | $496,847.97 |
| 3B | Klausner, Kaufman, Jensen & Levinson | 83.20 | $62,400.00 | $3,710.91 |
| | **TOTAL:** | **7,767.20** | **$5,140,933.75** | **$500,558.88** |

# Exhibit 3A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF JOHN RIZIO-HAMILTON ON BEHALF OF BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

I, JOHN RIZIO-HAMILTON, hereby declare as follows:

1.      I am a Partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G").  I submit this Declaration in support of Lead Counsel's motion for an award of attorneys' fees in the above-captioned securities class action ("Action"), as well as for payment of Litigation Expenses incurred by my firm in connection with the Action.[1]   Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      My firm, as Lead Counsel for Plaintiffs and the Settlement Class, was involved in all aspects of the prosecution and resolution of the Action, as set forth in the Declaration of John

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated September 3, 2024 (ECF No. 145).

Rizio-Hamilton in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary of the amount of time spent by BLB&G attorneys and professional support staff from the inception of the Action through and including December 13, 2024, and the lodestar calculation for those individuals based on their current hourly rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the hourly rates for such personnel in their final year of employment with my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by BLB&G. All time expended in preparing this application for fees and expenses has been excluded.

4.      The number of hours expended by BLB&G in the Action, from inception through December 13, 2024, as reflected in Exhibit 1, is 7,684.00. The lodestar for my firm, as reflected in Exhibit 1, is $5,078,533.75.

5.      The hourly rates for the BLB&G attorneys and professional support staff employees included in Exhibit 1 are their standard rates and are the same as, or comparable to, the rates submitted by my firm and accepted by courts for lodestar cross-checks in other class action fee applications. *See, e.g.*, *In re SolarWinds Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 (approving fee based on lodestar cross-check using BLB&G's 2023 rates); *In re Grand Canyon Educ., Inc. Sec. Litig.*, No. 20-639-JHL-CJB (D. Del. Aug. 22, 2024), ECF No. 155 (approving fee based on lodestar cross-check using BLB&G's current 2024 rates); *In re James River Grp. Holdings Ltd. Sec. Litig.*, No. 3:21-cv-444 (DJN) (E.D. Va. May 24, 2024), ECF No. 131 (same); *In re Boston Scientific Corp. Sec. Litig.*, No. 1:20-cv-12225-ADB (D. Mass. April 23, 2024), ECF 166 (approving fee based on lodestar cross-check using BLB&G's 2023 rates); *In re BioMarin Pharm. Inc. Sec. Litig.*, Case No. 20-cv-06719-WHO

2

(N.D. Cal. Nov. 14, 2023), ECF No. 155 (same); *In re Kraft Heinz Sec. Litig.*, Case No. 1:19-cv-01339 (N.D. Ill. Sept. 19, 2023), ECF No. 493 (same); *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494- JLR-SN (S.D.N.Y. Sept. 8, 2023), ECF No. 206 (same), *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *11 (D. Conn. Aug. 4, 2023) (same); *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464 (S.D. Tex. Sept. 15, 2022), ECF 129 (approving fee based on lodestar cross-check using BLB&G's 2022 rates).

6.      My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and that have been approved by courts.  Different timekeepers within the same employment category (*e.g.*, Partners, Associates, Paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a Partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

7.      BLB&G reviewed its time and expense records to prepare this Declaration. Reductions were made in the interest of billing judgment.  I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as stated in this Declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.

8.      As set forth in Exhibit 2 hereto, BLB&G is seeking payment for $496,847.97 in expenses incurred in connection with the prosecution and resolution of the Action.  The following is additional information regarding certain of these expenses:

a.      **Experts & Consultants** ($139,330.88).   Lead Plaintiff retained and consulted with several highly qualified experts to assist in the prosecution of this Action.

(1) **Vega Economic & Financial Consulting, Inc.** ($35,228.00).  Plaintiffs consulted with Professor Sorin Sorescu, Professor of Finance and the Foreman R.

3

and Ruby Bennett Chair in Business Administration at Texas A&M University Mays Business School, and his team at Vega Economic & Financial Consulting, regarding loss causation, damages, and market efficiency in connection with an anticipated class certification motion;

(2) **Global Economics Group LLC** ($31,218.75) and **Peregrine Economics LLC** ($31,131.25). Plaintiffs also worked with Chad W. Coffman, CFA, a financial economist, to analyze damages and loss causation issues including in connection with the preparation of the Consolidated Complaint and in preparation for the mediation. Mr. Coffman and his team also assisted in the preparation of the proposed Plan of Allocation. During the course of the litigation Mr. Coffman moved from Global Economics Group LLC to Peregrine Economics LLC.

(3) **John Manning** ($13,327.25). Plaintiffs consulted with John Manning of KMI International, a civil engineer and expert on theme park construction, on issues related to the process of theme park construction and related industry issues.

(4) **Marcum LLP** ($11,062.50). Plaintiffs retained and consulted with Harris Devor, CPA of Marcum LLP, regarding accounting issues, including the application of GAAP;

(5) **Victor Shih** ($5,000). Victor Shih is a professor of political science at University of California San Diego, where he is the director of the 21st Century China Center and the Ho Miu Lam Chair in China and Pacific Relations, and an expert on the politics of Chinese banking policies and fiscal policies. Plaintiffs consulted with Professor Shih regarding government-funded construction projects in China.

(6) **Gryphon Strategies** ($5,988.13) Plaintiffs retained Gryphon Strategies to provide investigative assistance into the claims at the outset of the litigation, in particular obtaining information located in China concerning the construction of the China Parks, including records of litigation arising out of the project.

b.        **PSLRA Notice** ($4,010.00).  Lead Counsel incurred $4,010 for the costs of publishing initial notices of the pendency of the Action, as required under the PSLRA, over the *PR Newswire* on February 12, 2020 and March 20, 2020.

c.        **Online Factual Research** ($29,207.90) and **Online Legal Research** ($75,293.53).  The charges reflected are for out-of-pocket payments to vendors such as Westlaw, Lexis/Nexis, Bureau of National Affairs, Court Alert, and PACER for research done in connection with this litigation.  These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual information regarding the claims asserted and to locate potential witnesses through access to various financial databases and other factual databases.  These expenses represent the actual expenses incurred by BLB&G for use of these services in connection with this litigation.  There are no administrative charges included in these figures.  Online research is billed to each case based on actual usage at a charge set by the vendor.  When BLB&G utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period, BLB&G's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

d.        **Document Management & Litigation Support** ($15,366.40).   This category of costs includes $15,366.40 for costs incurred by BLB&G associated with establishing and maintaining the internal document database that was used by Lead

Counsel to process and review the substantial volume of documents produced by Defendants in this Action. BLB&G charges a rate of $4 per gigabyte of data per month and $17 per user to recover the costs associated with maintaining its document database management system, which includes the costs to BLB&G of necessary software licenses and hardware. BLB&G has conducted a review of market rates charged for the similar services performed by third-party document management vendors and found that its rate was at least 80% below the market rates charged by these vendors, resulting in a savings to the class.

   e. **Mediation** ($5,000.00). Plaintiffs paid 50% of Judge Evans's fees for the scheduled mediation. Defendants paid the other 50%.

   f. **Local Counsel** ($139,403.71). Plaintiffs incurred $127,672.21 for the attorneys' fees and expenses of initial Local Counsel McKool Smith PC and $11,731.50 for the fees and expenses of current Local Counsel, Law Office of Jason Nash, which includes an estimate of Mr. Nash's time through the final approval hearing.

   g. **Independent Counsel for Witnesses** ($52,132.50). Lead Counsel incurred $52,132.50 in attorneys' fees for the retention of independent counsel, Hach Rose Schirripa & Cheverie LLP, to represent a former Six Flags employee that Lead Counsel contacted during the course of its investigation and who wished to be represented by independent counsel. Similar expenses have been approved by courts. *See, e.g.*, *In re SolarWinds Sec. Litig.*, Case No. 1:21-cv-00138-RP, slip op. (W.D. Tex. July 28, 2023), ECF No. 111 (awarding expenses reimbursing class counsel for the costs of paying for independent counsel for third-party witnesses); *In re Venator Materials PLC Sec. Litig.*, No. 4:19-cv-03464 (S.D. Tex. Sept. 15, 2022), ECF 129 (same); *In re James River Grp. Holdings Ltd. Sec. Litig.*, No. 3:21-cv-444 (DJN) (E.D. Va. May 24, 2024), ECF No. 131; *In re Willis*

<div align="center">6</div>

*Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338-AJT-JFA, slip op. at 1-2-3 (E.D. Va. May 21, 2021), ECF No. 347 (same).

      h.    **Out-of-Town Travel** ($17,329.63).  BLB&G seeks reimbursement of $17,329.63 in costs incurred in connection with travel in connection with the Action, which includes costs for attorneys at BLB&G and representatives of Plaintiffs to travel for Court hearings in Fort Worth and in New Orleans (for Fifth Circuit arguments), including the scheduled final approval hearing in January 2025.  Airfare is at coach rates, hotel charges per night are capped at $350; and travel meals are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

      i.    **Working Meals** ($527.32).  In-office working meals are capped at $25 per person for lunch and $40 per person for dinner.

  9.    The expenses incurred by BLB&G in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  I believe these expenses were reasonable and expended for the benefit of the Settlement Class in the Action.

  10.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a firm résumé, which includes information about my firm and biographical information concerning the firm's attorneys.

      I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on December 24, 2024.

                            */s John Rizio-Hamilton*
                            JOHN RIZIO-HAMILTON

**EXHIBIT 1**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

From Inception Through December 13, 2024

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Adam Hollander | 591.50 | $850 | 502,775.00 |
| Jesse Jensen | 229.25 | $950 | 217,787.50 |
| John Rizio-Hamilton | 392.00 | $1,250 | 490,000.00 |
| Katherine Sinderson | 834.25 | $1,050 | 875,962.50 |
| | | | |
| **Senior Counsel** | | | |
| David L. Duncan | 60.25 | $875 | 52,718.75 |
| John Esmay | 843.50 | $875 | 738,062.50 |
| John Mills | 50.75 | $875 | 44,406.25 |
| | | | |
| **Associates** | | | |
| Christopher Miles | 644.50 | $550 | 354,475.00 |
| Brandon Slotkin | 893.00 | $475 | 424,175.00 |
| | | | |
| **Staff Attorneys** | | | |
| Girolamo Brunetto | 128.25 | $395 | 50,658.75 |
| Erika Connolly | 1,323.50 | $450 | 595,575.00 |
| Ryan McCurdy | 306.25 | $450 | 137,812.50 |
| Dylan Yaegar | 384.00 | $425 | 163,200.00 |
| | | | |
| **Director of Investor Services** | | | |
| Adam Weinschel | 28.50 | $625 | 17,812.50 |
| | | | |
| **Financial Analysts** | | | |
| Milana Babic | 32.00 | $425 | 13,600.00 |
| Nick DeFilippis | 28.00 | $650 | 18,200.00 |
| | | | |
| | | | |

8

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Investigators** | | | |
| Amy Bitkower | 48.50 | $625 | 30,312.50 |
| Joelle Sfeir | 155.50 | $525 | 81,637.50 |
| | | | |
| **Case Managers & Paralegals** | | | |
| Jose Echegaray | 63.00 | $400 | 25,200.00 |
| Michelle Leung | 217.50 | $400 | 87,000.00 |
| Matthew Molloy | 81.25 | $325 | 26,406.25 |
| Desiree Morris | 92.75 | $350 | 32,462.50 |
| Yulia Tsoy | 135.25 | $325 | 43,956.25 |
| | | | |
| **Managing Clerk** | | | |
| Mahiri Buffong | 120.75 | $450 | 54,337.50 |
| | | | |
| **TOTALS:** | **7,684.00** | | **$5,078,533.75** |

9

**EXHIBIT 2**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $3,974.00 |
| Service of Process | $3,263.70 |
| PSLRA Notice Costs | $4,010.00 |
| On-Line Legal Research | $29,207.90 |
| On-Line Factual Research | $75,293.53 |
| Document Management/Litigation Support | $15,366.40 |
| Telephone | $526.71 |
| Postage & Express Mail | $781.58 |
| Hand Delivery Charges | $479.00 |
| Printing & Copying | $8,717.08 |
| Local Transportation | $1,142.23 |
| Out of Town Travel | $17,329.63 |
| Working Meals | $527.32 |
| Court Reporters & Transcripts | $361.80 |
| Experts & Consultants | $139,330.88 |
| Local Counsel Fees | $139,403.71 |
| Witness Counsel | $52,132.50 |
| Mediation Fees | $5,000.00 |
| | |
| **TOTAL EXPENSES:** | **$496,847.97** |

10

**EXHIBIT 3**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**FIRM RESUME**

11



*Bernstein Litowitz Berger & Grossmann LLP*
*Attorneys at Law*

# Firm Resume

# Table of Contents

Firm Overview ................................................................................................................................. 3

    More Top Securities Recoveries Than Any Other Firm .............................................................. 3

    Giving Shareholders a Voice and Changing Business Practices for the Better ........................... 4

Practice Areas ................................................................................................................................ 5

    Securities Fraud Litigation ......................................................................................................... 5

    Corporate Governance and Shareholder Rights ........................................................................ 5

    Distressed Debt and Bankruptcy ............................................................................................... 6

    Commercial Litigation ............................................................................................................... 6

    Alternative Dispute Resolution ................................................................................................. 6

Feedback from the Courts .............................................................................................................. 7

Significant Recoveries .................................................................................................................... 8

    Securities Fraud Litigation ......................................................................................................... 8

    Corporate Governance and Shareholders' Rights .................................................................... 17

Clients and Fees ........................................................................................................................... 21

In the Public Interest .................................................................................................................... 22

Our Attorneys .............................................................................................................................. 23

    Partners ................................................................................................................................... 23

    Senior Counsel ........................................................................................................................ 29

    Associates ................................................................................................................................ 30

    Senior Staff Attorneys ............................................................................................................. 31

    Staff Attorneys ........................................................................................................................ 32



*Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained more than $40 billion in recoveries on behalf of investors. The firm has obtained some of the largest settlements ever agreed to by public companies related to securities fraud, including six of the 15 largest in history. Working with our clients, we have also used the litigation process to achieve precedent-setting reforms that have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.*

# Firm Overview

Bernstein Litowitz Berger & Grossmann LLP (BLB&G), a national law firm with offices located in New York, California, Delaware, Louisiana, and Illinois, prosecutes class and private actions on behalf of individual and institutional clients. The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; and distressed debt and bankruptcy. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes U.S. public pension funds the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the Los Angeles County Employees Retirement Association; the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities. Our European client base includes APG; Aegon AM; ATP; Blue Sky Group; Hermes IM; Robeco; SEB; Handelsbanken; Nykredit; PGB; and PGGM, among others.

# More Top Securities Recoveries Than Any Other Firm

Since its founding in 1983, BLB&G has prosecuted some of the most complex cases in history and obtained more than $40 billion on behalf of investors. The firm has negotiated and obtained many of the largest securities recoveries in history, including:

- *In re WorldCom, Inc. Securities Litigation – $6.19 billion recovery*

- *In re Cendant Corporation Securities Litigation – $3.3 billion recovery*

- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation – $2.43 billion recovery*



- *In re Allianz Global Investors U.S. Litigation – More than $2 billion recovered in a series of direct actions*

- *In re Nortel Networks Corporation Securities Litigation (Nortel II) – $1.07 billion recovery*

- *In re Merck & Co., Inc. Securities Litigation – $1.06 billion recovery*

- *In re McKesson HBOC, Inc. Securities Litigation – $1.05 billion recovery*

- *In re Wells Fargo & Company Securities Litigation – $1.00 billion recovery*

Based on our record of success, BLB&G has been at the top of the rankings by ISS Securities Class Action Services (ISS-SCAS), a leading industry research publication that provides independent and objective third-party analysis and statistics on securities-litigation law firms, since its inception. In its most recent report, *Top 100 U.S. Class Action Settlements of All-Time*, ISS-SCAS once again ranked BLB&G as the top firm in the field for the 14th year in a row. BLB&G has served as lead or co-lead counsel in 38 of the ISS-SCAS's top 100 U.S. securities-fraud settlements—significantly more than any other firm—and recovered over $27 billion for investors in those cases, nearly $9 billion more than any other plaintiffs' securities firm.

# Giving Shareholders a Voice and Changing Business Practices for the Better

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, or M&A transactions, seeks to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedent that has increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways. We have confronted a variety of questionable, unethical, and proliferating corporate practices, setting new standards of director independence, restructuring board practices in the wake of persistent illegal conduct, challenging the improper use of defensive measures and deal protections for management's benefit, and confronting stock options backdating abuses and other self-dealing by executives.



# Practice Areas

## Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class litigation.

The firm also pursues direct actions in securities fraud cases, when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

Our attorneys have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities. Biographies for our attorneys can be accessed on the firm's website by clicking here.

## Corporate Governance and Shareholder Rights

Our Corporate Governance and Shareholder Rights attorneys prosecute derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. We have prosecuted actions challenging numerous highly publicized corporate transactions that violated fair process, fair price, and the applicability of the business judgment rule, and have also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation.

Our attorneys have prosecuted numerous cases regarding the improper "backdating" of executive stock options that resulted in windfall undisclosed compensation to executives at the direct expense of shareholders—and returned hundreds of millions of dollars to company coffers. We also represent institutional clients in lawsuits seeking to enforce fiduciary obligations in connection with mergers and acquisitions and going-private transactions that deprive shareholders of fair value when participants buy companies from their public shareholders "on the cheap." Although enough shareholders accept the consideration offered for the transaction to close, many sophisticated investors correctly recognize and ultimately enjoy the increased returns to be obtained by pursuing appraisal rights and demanding that courts assign a "true value" to the shares taken private in these transactions.

Our attorneys are well versed in changing SEC rules and regulations on corporate governance issues and have a comprehensive understanding of a wide variety of corporate law transactions and both substantive and courtroom expertise in the specific legal areas involved. As a result of the firm's high-profile and widely recognized capabilities, our attorneys are increasingly in demand with institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the boards' accountability to shareholders.





# Distressed Debt and Bankruptcy

BLB&G has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses. As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy. Our record in this practice area is characterized by extensive trial experience in addition to successful settlements.

# Commercial Litigation

BLB&G provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees, and other business entities. We have faced down the most powerful and well-funded law firms and defendants in the country—and consistently prevailed. For example, on behalf of the bankruptcy trustee, the firm prosecuted *BFA Liquidation Trust v. Arthur Andersen*, arising from the largest nonprofit bankruptcy in U.S. history. After two years of litigation and a week-long trial, the firm obtained a $217 million recovery from Andersen for the Trust. Combined with other recoveries, the total amounted to more than 70 percent of the Trust's losses.

Having obtained huge recoveries with nominal out-of-pocket expenses and fees of less than 20 percent, we have repeatedly demonstrated that valuable claims are best prosecuted by a first-rate litigation firm on a contingent basis at negotiated percentages. Legal representation need not compound the risk and high cost inherent in today's complex and competitive business environment. We are paid only if we (and our clients) win. The result: the highest quality legal representation at a fair price.

# Alternative Dispute Resolution

BLB&G offers clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process. We have experience in U.S. and international disputes, and our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad, representing clients before all the major arbitration tribunals, including the American Arbitration Association, FINRA, JAMS, International Chamber of Commerce, and the London Court of International Arbitration.

Our lawyers have successfully arbitrated cases that range from complex business-to-business disputes to individuals' grievances with employers. It is our experience that in some cases, a well-executed arbitration process can resolve disputes faster, with limited appeals and a higher level of confidentiality than public litigation.

In the wake of the credit crisis, for example, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation. We have also assisted clients with disputes involving failure to honor compensation commitments, disputes over the purchase of securities, businesses seeking compensation for uncompleted contracts, and unfulfilled financing commitments.

# Feedback from the Courts

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members. A few examples are set forth below.

### *In re WorldCom, Inc. Securities Litigation*

*- The Honorable Denise Cote of the United States District Court for the Southern District of New York*

"I have the utmost confidence in plaintiffs' counsel…they have been doing a superb job…The Class is extraordinarily well represented in this litigation."

"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy…The quality of the representation given by Lead Counsel…has been superb…and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."

"Lead Counsel has been energetic and creative…Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

\*          \*          \*

### *In re Clarent Corporation Securities Litigation*

*- The Honorable Charles R. Breyer of the United States District Court for the Northern District of California*

"It was the best tried case I've witnessed in my years on the bench…."

"[A]n extraordinarily civilized way of presenting the issues to you [the jury]…We've all been treated to great civility and the highest professional ethics in the presentation of the case…"

"These trial lawyers are some of the best I've ever seen."

\*          \*          \*

### *Landry's Restaurants, Inc. Shareholder Litigation*

*- Vice Chancellor J. Travis Laster of the Delaware Court of Chancery*

"I do want to make a comment again about the excellent efforts…put into this case…This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system…you hold up this case as an example of what to do."

\*          \*          \*

### *McCall V. Scott (Columbia/HCA Derivative Litigation)*

*- The Honorable Thomas A. Higgins of the United States District Court for the Middle District of Tennessee*

"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."



# Significant Recoveries

BLB&G has successfully identified, investigated, and prosecuted many of the most significant securities and shareholder actions in history, recovering billions of dollars on behalf of defrauded investors and obtaining groundbreaking corporate-governance reforms. These resolutions include eight recoveries of over $1 billion, more than any other firm in our field. Examples of cases with our most significant recoveries include:

## Securities Fraud Litigation

**Case:**              *In re WorldCom, Inc. Securities Litigation*

**Court:**             United States District Court for the Southern District of New York

**Highlights:**        $6.19 billion securities fraud class action recovery—the second largest in history; unprecedented recoveries from Director Defendants.

**Case Summary:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the New York State Common Retirement Fund, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank, and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals—20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.

**Case:**              *In re Cendant Corporation Securities Litigation*

**Court:**             United States District Court for the District of New Jersey

**Highlights:**        $3.3 billion securities fraud class action recovery—the third largest in history; significant corporate governance reforms obtained.



**BLB&G**

*Summary*:      The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of companywide accounting irregularities, Cendant restated its financial results for its 1995, 1996, and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion and to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds, the three largest public pension funds in America, in this action.

*Case*:         *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*

*Court*:        United States District Court for the Southern District of New York

*Highlights*:   $2.425 billion in cash; significant corporate governance reforms to resolve all claims. This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim—the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history.

*Summary*:      The firm represented Co-Lead Plaintiffs the State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, and the Teacher Retirement System of Texas in this securities class action filed on behalf of shareholders of Bank of America Corporation (BAC) arising from BAC's 2009 acquisition of Merrill Lynch & Co. The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition. These violations included the alleged failure to disclose information regarding billions of dollars of losses Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses. Not privy to these material facts, BAC shareholders voted to approve the acquisition.

*Case*:         *In re Allianz Global Investors U.S. Litigation*

*Court*:        Cases primarily filed in the United States District Court for the Southern District of New York

*Highlights*:   Over $2 billion dollars recovered for investors in a series of more than 20 direct actions.



**Summary**:    BLB&G prosecuted claims on behalf of institutional investors that suffered losses in connection with investments in the Allianz Structured Alpha Funds—a suite of investment products developed and overseen by Allianz Global Investors U.S.—due to Allianz's breaches of fiduciary and contractual duties. BLB&G negotiated settlements that returned over $2 billion to investors. Our firm filed a series of direct actions, including the first complaint in this matter on behalf of Arkansas Teacher Retirement System, and subsequently served as liaison counsel in more than 20 related actions.

Allianz's representations concerning the Alpha Funds were also investigated by the SEC and the U.S. Department of Justice. Allianz ultimately set aside over $6 billion to deal with government investigations and lawsuits resulting from the collapse of the Structured Alpha Funds.

**Case**:        *In re Nortel Networks Corporation Securities Litigation (Nortel II)*

**Court**:       United States District Court for the Southern District of New York

**Highlights**:  Over $1.07 billion in cash and common stock recovered for the class.

**Summary**:    This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class. In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock to resolve both matters. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion.

**Case**:        *In re Merck & Co., Inc. Securities Litigation*

**Court**:       United States District Court, District of New Jersey

**Highlights**:  $1.06 billion recovery for the class.

**Summary**:    This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" COX-2 painkiller Vioxx, which Merck withdrew from the market in 2004. In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court. This settlement is the second-largest recovery ever obtained in the Third Circuit and one of the top securities recoveries of all time. BLB&G represented Lead Plaintiff the Public Employees' Retirement System of Mississippi.



| **Case:** | *In re McKesson HBOC, Inc. Securities Litigation* |
|---|---|
| **Court:** | United States District Court for the Northern District of California |
| **Highlights:** | $1.05 billion recovery for the class. |
| **Summary:** | This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson, and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results. On behalf of Lead Plaintiff the New York State Common Retirement Fund, BLB&G obtained a $960 million settlement from the company, $72.5 million in cash from Arthur Andersen, and, on the eve of trial, a $10 million settlement from Bear Stearns & Co., with total recoveries reaching more than $1 billion. |

| **Case:** | *In re Wells Fargo & Company Securities Litigation* |
|---|---|
| **Court:** | United States District Court for the Southern District of New York |
| **Highlights:** | $1 billion recovery for the class, the top U.S. securities class action settlement of 2023, among the top six in the past decade, and among the top 17 of all time. |
| **Summary:** | In 2018, Wells Fargo's regulators imposed unprecedented consent orders on Wells Fargo designed to halt the bank's decades-long, fraudulent banking practices and rectify the severely deficient corporate oversight that allowed those fraudulent practices to develop and endure (the "2018 Consent Orders"). In this action, lead plaintiffs, represented by BLB&G as co-lead counsel, alleged that Wells Fargo and certain of its senior executives issued false and misleading statements to investors regarding the status of Wells Fargo's compliance with the 2018 Consent Orders, claiming that the bank had regulator-approved "plans" and that it was "in compliance" with the Orders. In reality, Wells Fargo had yet to submit to regulators an acceptable plan or schedule for overhauling the bank's compliance and oversight practices and was nowhere near meeting the regulators' requirements that were a predicate to lifting the severe measures imposed on the bank. Wells Fargo investors were harmed after a series of disclosures, including damning congressional hearings and reports, revealed the truth to the market that the bank had blatantly disregarded the basic requirements set forth in the 2018 Consent Orders. The $1 billion settlement was reached after three years of hard-fought litigation and was achieved with the assistance of a respected mediator, former U.S. District Judge Layn R. Phillips. |

| **Case:** | *HealthSouth Corporation Bondholder Litigation* |
|---|---|
| **Court:** | United States District Court for the Northern District of Alabama |
| **Highlights:** | $804.5 million in total recoveries. |
| **Summary:** | In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the Retirement Systems of Alabama. This action arose from allegations that Birmingham-based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy. Subsequent revelations disclosed that the overstatement exceeded |



over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years. A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants, and $33.5 million in cash from the company's auditor. The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages.

**Case:** *In re Washington Public Power Supply System Litigation*

**Court:** United States District Court for the District of Arizona

**Highlights:** Over $750 million—the largest securities fraud settlement ever achieved at the time.

**Summary:** BLB&G was appointed Chair of the Executive Committee responsible for litigating on behalf of the class in this action. The case was litigated for over seven years and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million—then the largest securities fraud settlement ever achieved.

**Case:** *In re Lehman Brothers Equity/Debt Securities Litigation*

**Court:** United States District Court for the Southern District of New York

**Highlights:** $735 million in total recoveries.

**Summary:** Representing the Government of Guam Retirement Fund, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings' issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of a $426 million settlement with underwriters of Lehman securities offerings, a $90 million settlement with former Lehman directors and officers, a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved), and a $120 million settlement that resolves claims against UBS Financial Services. This recovery is remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and the auditors never disavowed the statements.

**Case:** *In re Citigroup, Inc. Bond Action Litigation*

**Court:** United States District Court for the Southern District of New York

**Highlights:** $730 million cash recovery, the second largest recovery in a litigation arising from the financial crisis.



***Summary***:     In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery—the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs Minneapolis Firefighters' Relief Association, Louisiana Municipal Police Employees' Retirement System, and Louisiana Sheriffs' Pension and Relief Fund.

***Case***:     *In re Schering-Plough Corporation/Enhance Securities Litigation; In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*

***Court***:     United States District Court for the District of New Jersey

***Highlights***:     $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough.

***Summary***:     After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness. The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital. When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors. The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 settlements of all time, and among the 10 largest recoveries ever in a case where there was no financial restatement. BLB&G represented Lead Plaintiffs Arkansas Teacher Retirement System, the Public Employees' Retirement System of Mississippi, and the Louisiana Municipal Police Employees' Retirement System.

***Case***:     *In re Lucent Technologies, Inc. Securities Litigation*

***Court***:     United States District Court for the District of New Jersey



**Highlights:**   $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues, and possible conflicts between new and old allegations.

**Summary:**   BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the Parnassus Fund, Teamsters Locals 175 & 505 D&P Pension Trust, Anchorage Police and Fire Retirement System, and the Louisiana School Employees' Retirement System. The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock, and warrants.

**Case:**   *In re Wachovia Preferred Securities and Bond/Notes Litigation*

**Court:**   United States District Court for the Southern District of New York

**Highlights:**   $627 million recovery—among the largest securities class action recoveries in history; third-largest recovery obtained in an action arising from the subprime mortgage crisis.

**Summary:**   This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG. The case alleged that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multibillion-dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate. According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs Orange County Employees Retirement System and Louisiana Sheriffs' Pension and Relief Fund in this action.

**Case:**   *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*

**Court:**   United States District Court for the District of Columbia

**Highlights:**   $612.4 million jury award for Fannie Mae and Freddie Mac investors in a unanimous trial verdict.

**Summary:**   BLB&G secured a $612.4 million jury award for Fannie Mae and Freddie Mac investors in a unanimous trial verdict against the Federal Housing Finance Agency (FHFA). The action challenged FHFA's decision to sweep the entire net worth of Fannie Mae and Freddie Mac to the U.S. Treasury, depriving



shareholders of significant value. The award came after two trials and 10 years of intense litigation and negotiations. The court also recently approved our request for prejudgment interest, adding approximately $198 million to the recovery for investors (pending entry of judgment).

| | |
|---|---|
| *Case:* | *Bear Stearns Mortgage Pass-Through Litigation* |
| *Court:* | United States District Court for the Southern District of New York |
| *Highlights:* | $500 million recovery—the largest recovery ever on behalf of purchasers of residential mortgage-backed securities. |
| *Summary*: | BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company sold mortgage pass-through certificates using false and misleading offering documents. The offering documents contained false and misleading statements related to, among other things, the underwriting guidelines used to originate the mortgage loans underlying the certificates and the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis. |

| | |
|---|---|
| *Case:* | *Gary Hefler et al. v. Wells Fargo & Company et al.* |
| *Court:* | United States District Court for the Northern District of California |
| *Highlights* | $480 million recovery—the fourth largest securities settlement ever achieved in the Ninth Circuit. |
| *Summary*: | BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses. |

| | |
|---|---|
| *Case:* | *In re Kraft Heinz Securities Litigation* |
| *Court:* | United States District Court for the Northern District of Illinois |



**Highlights:**   $450 million in total recoveries.

**Summary:**   BLB&G litigated claims against Kraft Heinz arising from the defendants' misstatements regarding the company's financial position, including the carrying value of Kraft's assets, the sustainability of Kraft's margins, and the success of recent cost-cutting strategies by the company. After overcoming defendants' motions to dismiss and conducting discovery involving the production of over 14.7 million pages of documents, the parties engaged in mediation and reached a settlement that represented a recovery of $450 million for impacted investors.

**Case:**   *Ohio Public Employees Retirement System v. Freddie Mac*

**Court:**   United States District Court for the Southern District of Ohio

**Highlights:**   $410 million settlement.

**Summary:**   This securities fraud class action was filed on behalf of the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio alleging that Freddie Mac and certain of its current and former officers issued false and misleading statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by engaging in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete.

**Case:**   *In re Refco, Inc. Securities Litigation*

**Court:**   United States District Court for the Southern District of New York

**Highlights:**   Over $407 million in total recoveries.

**Summary:**   The lawsuit arises from the revelation that Refco, a once-prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff RH Capital Associates LLC.

**Case:**   *In re Allergan, Inc. Proxy Violation Securities Litigation*

**Court:**   United States District Court for the Central District of California

**Highlights:**   Recovered over $250 million for investors while challenging an unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman.



**Summary:**  As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquired a near 10% stake in pharmaceutical concern Allergan as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International. What Ackman knew—but investors did not—was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price. Ackman enjoyed a massive instantaneous profit upon public news of the proposed acquisition, and the scheme worked for both parties as he kicked back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder. After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtained a $250 million settlement for Allergan investors, and created precedent to prevent similar such schemes in the future. The Plaintiffs in this action were the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and Patrick T. Johnson.

# Corporate Governance and Shareholders' Rights

**Case:**  *Tornetta v. Musk*

**Court:**  Delaware Court of Chancery

**Highlights:**  Achieved a historic ruling rescinding Elon Musk's $55 billion compensation package at Tesla—the largest such package in history.

**Summary:**  BLB&G led a headline-grabbing shareholder derivative action against Elon Musk and certain Tesla board members challenging the $55 billion compensation plan granted to Musk—the largest such compensation plan in history. BLB&G served as lead trial counsel in this case on behalf of a Tesla stockholder. The firm litigated for more than four years, examined eight of the most critical witnesses—including Elon Musk himself—and presented a strong factual record to the Court. On January 30, 2024, in a historic decision, the court nullified Musk's entire $55 billion compensation package, finding that Tesla's board of directors had breached their fiduciary duty in structuring Musk's multi-tranched compensation.

**Case:**  *City of Monroe Employees' Retirement System, Derivatively on Behalf of Twenty-First Century Fox, Inc. v. Rupert Murdoch, et al.*

**Court:**  Delaware Court of Chancery

**Highlights:**  Landmark derivative litigation established unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**Summary:**  Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation,



discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC serves as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the City of Monroe (Michigan) Employees' Retirement System.

| | |
|---|---|
| **Case:** | *In re McKesson Corporation Derivative Litigation* |
| **Court:** | United States District Court, Northern District of California, Oakland Division and Delaware Chancery Court |
| **Highlights:** | Litigation recovered $175 million and achieved substantial corporate governance reforms. |
| **Summary:** | BLB&G represented the Police & Fire Retirement System City of Detroit and Amalgamated Bank in this derivative class action arising from the company's role in permitting and exacerbating America's ongoing opioid crisis. The complaint, initially filed in Delaware Chancery Court, alleged that defendants breached their fiduciary duties by failing to adequately oversee McKesson's compliance with provisions of the Controlled Substances Act and a series of settlements with the Drug Enforcement Administration intended to regulate the distribution and misuse of controlled substances such as opioids. Even after paying fines and settlements in the hundreds of millions of dollars, McKesson was sued in the National Opioid Multidistrict Litigation. In May 2018, our clients joined a substantially similar action being litigated in California federal court. Acting as co-lead counsel, BLB&G played a major role in litigating the case, opposing a motion to stay the action by a special litigation committee, and engaging in extensive pretrial discovery. Ultimately, $175 million was recovered for the benefit of McKesson's shareholders in a settlement that also created substantial corporate-governance reforms to prevent a recurrence of McKesson's inadequate legal compliance efforts. |

| | |
|---|---|
| **Case:** | *UnitedHealth Group, Inc. Shareholder Derivative Litigation* |
| **Court:** | United States District Court for the District of Minnesota |
| **Highlights:** | Recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses. |
| **Summary:** | This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered over $920 million in ill-gotten compensation |



directly from the former officer Defendants—the largest derivative recovery in history. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings." The Plaintiffs in this action were the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado.

| | |
|---|---|
| **Case:** | *Caremark Merger Litigation* |
| **Court:** | Delaware Court of Chancery – New Castle County |
| **Highlights:** | Landmark Court ruling ordered Caremark's board to disclose previously withheld information, enjoined a shareholder vote on the CVS merger offer, and granted statutory appraisal rights to Caremark shareholders. The litigation ultimately forced CVS to raise its offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders. |
| **Summary:** | Commenced on behalf of the Louisiana Municipal Police Employees' Retirement System and other shareholders of Caremark RX, this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation, while refusing to fairly consider an alternative transaction proposed by another bidder. In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total). |

| | |
|---|---|
| **Case:** | *In re Pfizer Inc. Shareholder Derivative Litigation* |
| **Court:** | United States District Court for the Southern District of New York |
| **Highlights:** | Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board to be supported by a dedicated $75 million fund. |
| **Summary:** | In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread. The suit was brought by Court-appointed Lead Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Skandia Life Insurance Company, Ltd. In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug |



marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

| | |
|---|---|
| **Case:** | *Miller et al. v. IAC/InterActiveCorp et al.* |
| **Court:** | Delaware Court of Chancery |
| **Highlights:** | This litigation shut down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending a strong message to boards and management in all sectors that such moves will not go unchallenged. |
| **Summary:** | BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers sought ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights." Diller laid out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family. BLB&G litigation on behalf of IAC shareholders ended in capitulation with the Defendants effectively conceding the case by abandoning the proposal. This became a critical corporate governance precedent, given the trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies. |

| | |
|---|---|
| **Case:** | *In re News Corp. Shareholder Derivative Litigation* |
| **Court:** | Delaware Court of Chancery – Kent County |
| **Highlights:** | An unprecedented settlement in which News Corp. recouped $139 million and enacted significant corporate governance reforms that combat self-dealing in the boardroom. |
| **Summary:** | Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, BLB&G filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management. BLB&G ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management. |

Firm Resume

Case 1:22-cv-00201-P    Document 149    Filed 12/24/24    Page 159 of 324    Page ID 8...



# Clients and Fees

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we encourage retentions in which our fee is contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client. The firm generally negotiates with our clients a contingent fee schedule specific to each litigation, and all fee proposals are approved by the client prior to commencing litigation, and ultimately by the Court.

Our clients include many large and well-known financial and lending institutions and pension funds, as well as privately held companies that are attracted to our firm because of our reputation, expertise, and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors, and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.



# In the Public Interest

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community, and pro bono activities and regularly participate as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School. Highlights of our community contributions include:

## Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows

BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donates funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This fund at Columbia Law School provides Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. BLB&G Fellows can begin their careers free of any school debt if they make a long-term commitment to public interest law.

## Firm Sponsorship of Her Justice

BLB&G is a sponsor of Her Justice, a not-for-profit organization in New York City dedicated to providing pro bono legal representation to indigent women, principally vulnerable women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide pro bono counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses or representation on issues such as child support, custody, and visitation. To read more about Her Justice, visit the organization's website at http://www.herjustice.org/.

## Firm Sponsorship of City Year New York

BLB&G is an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development, and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

## Max W. Berger Pre-Law Program

The Max W. Berger Pre-Law Program was established at Baruch College to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession. Providing workshops, seminars, counseling, and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, and places them in appropriate internships and other pre-law working environments.



# Our Attorneys

BLB&G employs a dedicated team of attorneys, including partners, counsel, associates, and senior staff attorneys. Biographies for each of our attorneys can be found on our website here. On a case-by-case basis, we also make use of a pool of staff attorneys to supplement our litigation teams. The BLB&G team also includes investigators, financial analysts, paralegals, e-discovery specialists, information technology professionals, and administrative staff. Biographies for our investigative team are available on our website here, and biographies for the leaders of our administrative departments are viewable here.

## Partners

**Max Berger**, Founding Partner, has grown BLB&G from a partnership of four lawyers in 1983 into what the *Financial Times* described as "one of the most powerful securities class action law firms in the United States" by prosecuting seminal cases which have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.

Described by sources quoted in leading industry publication *Chambers USA* as "the smartest, most strategic plaintiffs' lawyer [they have] ever encountered," Max has litigated many of the firm's most high-profile and significant cases and secured some of the largest recoveries ever achieved in securities fraud lawsuits, negotiating seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion), *Citigroup-WorldCom* ($2.575 billion), *Bank of America/Merrill Lynch* ($2.4 billion), *JPMorgan Chase-WorldCom* ($2 billion), *Nortel* ($1.07 billion), *Merck* ($1.06 billion), and *McKesson* ($1.05 billion). Max's prosecution of the *WorldCom* litigation, which resulted in unprecedented monetary contributions from WorldCom's outside directors (nearly $25 million out of their own pockets on top of their insurance coverage) "shook Wall Street, the audit profession and corporate boardrooms." (*The Wall Street Journal*)

Max's cases have resulted in sweeping corporate governance overhauls, including the creation of an independent task force to oversee and monitor diversity practices (*Texaco* discrimination litigation), establishing an industry-accepted definition of director independence, increasing a board's power and responsibility to oversee internal controls and financial reporting (*Columbia/HCA*), and creating a Healthcare Law Regulatory Committee with dedicated funding to improve the standard for regulatory compliance oversight by a public company board of directors (*Pfizer*). His cases have yielded results which have served as models for public companies going forward.

Most recently, before the #metoo movement came alive, on behalf of an institutional investor client, Max handled the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery, and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveiled a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind—the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC)—majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries—$90 million—ever obtained in a pure corporate board oversight dispute. The WPIC is expected to serve as a model for public companies in all industries.



Max's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications. *The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the *Bank of America/Merrill Lynch Merger* litigation. In 2011, Max was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* For his outstanding efforts on behalf of WorldCom investors, he was featured in articles in *BusinessWeek* and *The American Lawyer,* and *The National Law Journal* profiled Max (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

**One of the "100 Most Influential Lawyers in America"**

Widely recognized as the "Dean" of the U.S. plaintiff securities bar for his remarkable career and his professional excellence, Max has a distinguished and unparalleled list of honors to his name.

- He was selected as one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.

- Described as a "standard-bearer" for the profession in a career spanning nearly 50 years, he is the recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Max's "numerous headline-grabbing successes," as well as his unique stature among colleagues—"warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table." Max has been recognized as a litigation "star" and leading lawyer in his field by *Chambers* since its inception.

- *Benchmark Litigation* recently inducted him into its exclusive "Hall of Fame" and named him a 2021 "Litigation Star" in recognition of his career achievements and impact on the field of securities litigation.

- Upon its tenth anniversary, *Lawdragon* named Max a "Lawdragon Legend" for his accomplishments. He was recently inducted into *Lawdragon's* "Hall of Fame." He is regularly included in the publication's "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" lists.

- *Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," named him one of only six litigators selected nationally as a "Legal MVP," and selected him as one of "10 Legal Superstars" nationally for his work in securities litigation.

- Max has been regularly named a "leading lawyer" in the *Legal 500 US Guide* where he was also named to their "Hall of Fame" list, as well as *The Best Lawyers in America®* guide.

- Max was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, which named him a "Trial Lawyer of the Year" Finalist in 1997 for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Max has lectured extensively for many professional organizations, and is the author and co-author of numerous articles on developments in the securities laws and their implications for public policy. He was chosen, along with



several of his BLB&G partners, to author the first chapter—"Plaintiffs' Perspective"—of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*. An esteemed voice on all sides of the legal and financial markets, in 2008 the SEC and Treasury called on Max to provide guidance on regulatory changes being considered as the accounting profession was experiencing tectonic shifts shortly before the financial crisis.

Max also serves the academic community in numerous capacities. A long-time member of the Board of Trustees of Baruch College, he served as the President of the Baruch College Fund from 2015-2019 and now serves as its Chairman. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in 2019, was awarded an honorary Doctor of Laws degree at Baruch's commencement, the highest honor Baruch College confers upon an individual for non-academic achievement. The award recognized his decades-long dedication to the mission and vision of the College, and in bestowing it, Baruch's President described Max as "one of the most influential individuals in the history of Baruch College." Max established the Max Berger Pre-Law Program at Baruch College in 2007.

A member of the Dean's Council to Columbia Law School as well as the Columbia Law School Public Interest/Public Service Council, Max has taught Profession of Law, an ethics course at Columbia Law School, and serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In February 2011, Max received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence." This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students. As a recipient of this award, Max was profiled in the Fall 2011 issue of *Columbia Law School Magazine*. Max is a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project. Max recently endowed the Max Berger '71 Public Interest/Public Service Fellows Program at Columbia Law School. The program provides support for law students interested in pursuing careers in public service. Max and his wife, Dale, previously endowed the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and, under Max's leadership, BLB&G also created the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship at Columbia.

Among numerous charitable and volunteer works, Max is a significant and long-time contributor to Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally survivors of intimate partner violence, in connection with the many legal problems they face. In recognition of their personal support of the organization, Max and his wife, Dale Berger, were awarded the "Above and Beyond Commitment to Justice Award" by Her Justice in 2021 for being steadfast advocates for women living in poverty in New York City. In addition to his personal support of Her Justice, Max has ensured BLB&G's long-time involvement with the organization. Max is also an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his commitment to, service for, and work in the community. A celebrated photographer, Max has held two successful photography shows that raised hundreds of thousands of dollars for City Year and Her Justice.

**Education:** Columbia Law School, 1971, J.D., Editor of the *Columbia Survey of Human Rights Law*; Baruch College-City University of New York, 1968, B.B.A., Accounting

**Bar Admissions:** New York; United States District Court for the Eastern District of New York; United States District Court for the Southern District of New York; United States Court of Appeals for the Second Circuit; United States

Court of Appeals for the Third Circuit; United States Court of Appeals for the Sixth Circuit; Supreme Court of the United States

**Bar Admissions:** New York; New Jersey; United States District Court for the Southern District of New York; United States District Court for the District of New Jersey; United States District Court for the Western District of Wisconsin; United States Court of Appeals for the Ninth Circuit

**Adam Hollander** [Former Partner] practiced in the firm's New York office.

Adam prosecuted securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's clients in federal and state trial and appellate courts.

Adam has represented investors and corporations in state and federal trial and appellate courts throughout the country. Adam was a senior member of the team that recovered $74 million for investors in *In re SunEdison, Inc. Securities Litigation*, which concerned what had been the world's largest renewable energy company. Adam also played a key role in recovering $48 million for investors in the American Depository Receipts (ADRs) of Volkswagen, relating to the automaker's alleged misrepresentations concerning its "clean diesel" cars, which claims involved significant international discovery, foreign jurisdictional issues and overlapping litigation in Europe. Adam's work was integral to the successful appeal before the U.S. Court of Appeals for the Fifth Circuit in *Bach v. Amedisys, Inc.*, as well as the litigation on remand that resulted in a $43.75 million recovery in that case.

In addition, Adam was an integral member of the teams that prosecuted, among other matters, cases concerning *Salix Pharmaceuticals* (recovering $210 million for investors); *Cliffs Natural Resources* ($84 million); *Dole Food Company* ($74 million*); Opko Health* ($16.5 million*); Kinder Morgan Energy Partners* ($27.5 million); *Sanchez Energy* ($28.5 million and governance reforms following successful appeal); *Trinity Industries* ($7.5 million) and *Abercrombie & Fitch* (significant corporate governance reforms in areas of ethics, internal controls, and executive compensation).

Adam was a senior member of the teams prosecuting cases against *Boeing*, arising out of the fatal crashes of the company's 737 MAX aircraft, as well as cases on behalf of investors in *Novo Nordisk, Six Flags, Baxter International, and CVS.*

Prior to joining BLB&G, Adam clerked for the Honorable Barrington D. Parker, Jr. of the U.S. Court of Appeals for the Second Circuit, and for the Honorable Stefan R. Underhill of the U.S. District Court for the District of Connecticut. He has also been associated with two New York defense firms, where he gained significant experience representing clients in various civil, criminal, and regulatory matters, including white-collar and complex commercial litigation.

**Education:** Yale Law School, 2006, J.D., Editor, *Yale Law and Policy Review*; Brown University, 2001, A.B., *magna cum laude*, Urban Studies

**Bar Admissions:** New York, Connecticut, United States District Court for the Southern District of New York, United States District Court for the District of Connecticut, United States Court of Appeals for the Second Circuit



**Jesse Jensen** prosecutes securities fraud, corporate governance and shareholder rights litigation on behalf of the firm's institutional clients.

Prior to joining the firm, Jesse was a litigation associate at Hughes Hubbard & Reed, where he represented accounting firms, banks, investment firms and high-net-worth individuals in complex commercial, securities, commodities and professional liability civil litigation and alternative dispute resolution. He also gained considerable experience in responding to investigations and inquiries by government regulators such as the SEC and CFTC. In addition, Jesse actively litigated several *pro bono* civil rights cases, including a federal suit in which he secured a favorable settlement for an inmate alleging physical abuse by corrections officers.

Since joining the firm, Jesse has helped investors achieve hundreds of millions in recoveries, including as a key member of the teams obtaining a record $450 million settlement in *In re Kraft Securities Litigation*; a $110 million settlement in *Fresno County Employees' Retirement Association v. comScore, Inc.*; a $32 million cash settlement in an action against real estate service provider Altisource Portfolio Solutions, S.A.; a $210 million dollar settlement in *In re Wilmington Trust Securities Litigation*; a $22 million settlement in an action against mutual fund company Virtus Investment Partners, Inc.; a $35 million settlement in an action against student loan servicer Navient Corporation; a $15.5 million in *In re Frontier Communications Corp. Sec. Litig.*; a $95 million settlement in In re Cognizant Technology Solutions Co. Sec. Litig.; a $90 million recovery for investors in *In re Willis Towers Watson plc Proxy Litigation*; and a $34 million settlement in *In re Synchrony Financial Sec. Litig.* He is currently assisting the firm in its prosecutions of *In re Macquarie Infrastructure Corp.; Roofer's Pension Fund v. Papa et al.; In re EQT Corporation.; In re Six Flags Corporation; Bardaji v. Match Group et al.; and In re Mobileye Inc.*

Jesse also stays active in providing legal commentary on securities issues, including in articles published in *Law360*, *Bloomberg Law*, and *The Review of Securities & Commodities Regulation.* Jesse also helps in the firm's pro bono work, including overseeing its involvement assisting in the Incarcerated Mothers Project.

In recognition of his professional achievements and reputation, Jesse was named to *Benchmark Litigation's "40 & Under" list* and a Rising Star for seven years by *Thomson Reuters Super Lawyers*—an honor awarded to no more than 2.5% of New York lawyers each year. In addition, Jesse has been named to *Lawdragon's 500 X – The Next Generation and 500 Leading Plaintiff Financial Lawyers* lists.

**Education:** New York University School of Law, 2009, J.D., NYU Journal of Law and Business, Staff Editor; University of Washington, 2005, B.A., Honors, English Literature

**Bar Admissions:** New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York; United States Court of Appeals for the Second Circuit; United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fourth Circuit; Supreme Court of the United States



**John Rizio-Hamilton** is Co-Head of BLB&G's Securities Litigation Department. One of America's top shareholder litigators, John has recovered billions of dollars for investors. Highlights of John's experience include the following:

- Led the trial team that recovered $240 million in the *Signet Jewelers Securities Litigation*, a landmark case that marks the first successful resolution of a securities fraud class action based on allegations of sexual harassment.

- Key part of the trial team that prosecuted the *Bank of America Securities Litigation*, which settled for $2.425 billion. This is the largest securities class action recovery related to the subprime meltdown, and one of the top securities litigation recoveries in history.

- Served as counsel on behalf of the institutional investor plaintiffs in the *Citigroup Bond Litigation*, which settled for $730 million. This is the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities.

- Member of the team that prosecuted the *Wachovia Corp. Bond/Notes Litigation*, in which the firm recovered $627 million, one of the 15 largest securities class action recoveries in history.

- Key member of the team that recovered $150 million for investors in the *JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of the trading activities of the so-called "London Whale."

In addition to his direct litigation responsibilities, John is responsible for the firm's client outreach in Canada, where he advises institutional investor clients on potential securities fraud and investor claims. John also manages the firm's settlements and claims administration department, which is responsible for obtaining court approval of all settlements and distributing the proceeds to class members.

For his remarkable accomplishments, John was named a "Litigation Trailblazer" by *The National Law Journal*. He has been recognized as a "Litigation Star" by *Benchmark Litigation*, and by *Law360* as a "Rising Star," a "Legal MVP," and one of the country's "Top Attorneys Under 40."

Before joining BLB&G, John clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit, and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

**Education:** Brooklyn Law School, 2004, J.D., *summa cum laude*, Editor-in-Chief of the Brooklyn Law Review; first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition; Johns Hopkins University, 1997, B.A., with honors

**Bar Admissions:** New York; United States District Court for the Southern District of New York

**Katie Sinderson** is a partner in the firm's New York office. She focuses her practice on advising and representing clients in securities fraud class actions and leads teams that have recovered billions of dollars for investors. Katie played a key role in two of the firm's largest cases, both of which settled near trial for billions of dollars on behalf of investors. In *In re Merck Securities Litigation*, she was a leader of the small trial team that achieved a $1.062 billion settlement in the action arising from Merck's marketing of the recalled drug Vioxx. She was also an integral member of the trial team prosecuting *In re Bank of America Securities Litigation*, which resulted in a recovery of $2.425 billion, one of the largest shareholder recoveries in history. Most recently, Katie led the team that recovered $450 million in the securities class action involving Kraft Heinz and Brazilian private equity firm 3G Capital (subject to court approval).



Katie also led the team that recovered $74 million in the take-private merger litigation *San Antonio Fire* and *Police Pension Fund et al. v. Dole Food Co. et al.*, and served as a senior member of the teams that recovered $210 million in *In re Salix Pharmaceuticals, Ltd. Securities Litigation*, $216.75 million in *In re Washington Mutual Securities Litigation*, and $210 million in *In re Wilmington Trust Securities Litigation.* In addition to her litigation responsibilities, Katie co-chairs the firm's Women's Forum along with partner Hannah Ross. This annual event offers opportunities for the firm's clients to network and share ideas and knowledge with female leaders in pension funds and institutional investors around the world. Katie also co-chairs the Federal Bar Council Securities Litigation Committee. Katie's success has earned her many recognitions, including being named a "Litigation Trailblazer" by the National Law Journal. She has been recognized as a "Titan of the Plaintiffs Bar" and a national "Rising Star" by Law360, as well as a "Future Star" by *Benchmark Litigation*. For six straight years, Katie was named to *Benchmark Litigation's* "Under 40 Hot List," which recognized her as one the nation's most accomplished legal partners under the age of 40. She has been named a "Rising Star" by *New York Law Journal* and is regularly selected as a New York "Rising Star" by Thomson Reuters' *Super Lawyers*. She has also been named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon* and a "Next Generation Partner" by *Legal 500*.

**Education**: Georgetown University Law Center, 2006, J.D., *cum laude*, Dean's Scholar Full Scholarship Award Recipient; Articles Editor for The Georgetown Journal of Gender and the Law; Baylor University, 2002, B.A., *cum laude*, Regents Full Scholarship Award Recipient

**Bar Admissions**: New York; United States District Court for the Southern District of New York; United States District Court for the Western District of Wisconsin; United States Court of Appeals for the Second Circuit; United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Fifth Circuit

# Senior Counsel

**David Duncan's** practice concentrates on the settlement of class actions and other complex litigation and the administration of class action settlements.

Prior to joining BLB&G, David worked as a litigation associate at Debevoise & Plimpton, where he represented clients in a wide variety of commercial litigation, including contract disputes, antitrust and products liability litigation, and in international arbitration. In addition, he has represented criminal defendants on appeal in New York State courts and has successfully litigated on behalf of victims of torture and political persecution from Sudan, Côte d'Ivoire and Serbia in seeking asylum in the United States.

While in law school, David served as an editor of the *Harvard Law Review*. After law school, he clerked for Judge Amalya L. Kearse of the U.S. Court of Appeals for the Second Circuit.

**Education:** Harvard Law School, 1997, J.D; *magna cum laude;* Harvard College, 1993, A.B., *magna cum laude*, Social Studies

**Bar Admissions:** New York; Connecticut; United States District Court for the Southern District of New York



**John Esmay** prosecutes securities fraud and shareholder rights litigation on behalf of the firm's institutional clients. John has worked on federal securities litigations that have returned more than $3 billion to defrauded investors. He has deep experience with complex litigation and has prepared and participated in trials and hearings in federal and state courtrooms around the country from California to New York. He has also taken part in private arbitration proceedings as well as disciplinary hearings before securities regulatory organizations such as the SEC and FINRA. John graduated *magna cum laude* from Brooklyn Law School, where he served on the Journal of Law and Policy. He received his Bachelor of Science degree in physics from Pomona College. While attending Brooklyn Law School, John interned for the Honorable Edward R. Korman, and later clerked for the Honorable William H. Pauley III. Prior to attending law school, John worked as a securities broker at the investment banking subsidiary of a prominent bank.

**Education:** Brooklyn Law School, 2007, J.D., *magna cum laude*; Pomona College, 1998, B.A., Physics

**Bar Admissions**: New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York

**John Mills'** practice focuses on negotiating, documenting, and obtaining court approval of the firm's securities, merger, and derivative settlements.

Over the past decade, John was actively involved in finalizing the following settlements, among others: *In re Wachovia Preferred Sec. and Bond/Notes Litig.* (S.D.N.Y.) ($627 million settlement); *In re Wilmington Trust Sec. Litig.* (D. Del.) ($210 million settlement); *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litig.* (Del. Ch.) ($153.75 million settlement); *Medina, et al. v. Clovis Oncology, Inc., et al.* (D. Colo.) ($142 million settlement); *In re News Corp. S'holder Litig.* (Del. Ch.) ($139 million recovery and corporate governance enhancements); *In re Mut. Funds Invest. Litig. (MFS, Invesco, and Pilgrim Baxter Sub-Tracks)* (D. Md.) ($127.036 million total recovery); *Fresno County Employees' Ret. Ass'n, et al. v. comScore, Inc., et al.* (S.D.N.Y.) ($110 million settlement); *In re El Paso Corp. S'holder Litig.* (Del. Ch.) ($110 million settlement); *In re Starz Stockholder Litig.* (Del. Ch.) ($92.5 million settlement); *The Dep't of the Treasury of the State of New Jersey and its Div. of Invest. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($85 million settlement).

John received his J.D. from Brooklyn Law School, *cum laude*, where he was a Carswell Merit Scholar recipient and a member of *The Brooklyn Journal of International Law*. He received his B.A. from Duke University.

**Education:** Brooklyn Law School, 2000, J.D., *cum laude*, Member of *The Brooklyn Journal of International Law*; Carswell Merit Scholar recipient; Duke University, 1997, B.A.

**Bar Admissions:**  New York; United States District Court for the Southern District of New York; United States District Court for the Eastern District of New York

# Associates

**Christopher Miles** [Former Associate] practiced out of the New York office in the securities litigation department. He represented the firm's institutional investor clients in securities fraud-related matters.

Prior to joining the firm, Christopher was an associate practicing litigation at Sullivan & Cromwell LLP, where he specialized in complex litigation, including securities and class actions. Christopher is a 2014 graduate of Harvard Law



School and served as an editor for the *Harvard Law Review*. He received his undergraduate degree from the University of Nevada, Reno.

**Education:** Harvard Law School, J.D., 2014, *Harvard Law Review*; University of Nevada, B.A., 2010, *Dean's List*.

**Bar Admissions:** New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**Brandon Slotkin** [Former Associate] practiced out of the firm's New York office and prosecuted securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients.

Prior to his role at BLB&G, Brandon worked as an Associate at Kirkland & Ellis, focusing primarily on securities litigation, and has experience with corporate governance matters and white-collar investigations. He also maintained an active pro bono practice, including filing an amicus curiae brief on behalf of undocumented migrants seeking relief from imminent deportation.

Brandon received his J.D. from Cornell Law School, serving as an Articles Editor of *Cornell Journal of Law and Public Policy* and an Associate for the Legal Information Institute's *Supreme Court Bulletin*. He also served as legal research and writing teaching assistant as an Honors Fellow with the Cornell Lawyering Program. In addition to classroom coursework, Brandon worked as a full-time extern within the Trial Unit at the Securities and Exchange Commission's New York Regional Office.

Brandon received his J.D./M.B.A. from Cornell Law School and the Samuel Curtis Johnson Graduate School of Management at Cornell University, and his B.A. in Philosophy, Politics and Economics (PPE) from the University of Pennsylvania.

**Education:** University of Pennsylvania, B.A., 2016, Philosophy, Politics and Economics (PPE); Cornell University, 2021, M.B.A., Cornell Law School, 2021, J.D.

**Bar Admissions:** New York

# Senior Staff Attorneys

**Erika Connolly** is a senior staff attorney practicing out of the firm's New York office in the securities litigation department. Erika has worked on several high-profile cases with the firm, including *Merck* (Vioxx-Related*), Wells Fargo, MF Global Holdings Limited, Signet Jewelers Limited, Green Mountain Coffee Roasters, HeartWare International, Qualcomm, Stericycle*, and currently *Allergan (Drug Pricing)*. While attending Fordham University School of Law, Erika served as a judicial intern for the Honorable Anthony A. Scarpino Jr. She also interned at both the New York City Council, General Counsel and New Jersey Office of the Attorney General, Division of Law, and participated in the Tax & Consumer Litigation Clinic. Erika graduated *magna cum laude* from Boston University, where she received a Bachelor of Arts degree in Music.

**Education:** Fordham University School of Law, 2011, J.D. Boston University, 2007, B.A., *magna cum laude*, Music

**Bar Admissions**: New York; New Jersey



**Ryan McCurdy** is a senior staff attorney in the Los Angeles office, where he assists with securities fraud class actions. Since joining the firm, Ryan has worked on several matters, including *Impinj, Merit Medical Systems, Allianz, Symantec, Valeant Pharmaceuticals*, and *EQT*. Prior to joining the firm, Ryan worked with a small aircraft products liability boutique, a large firm in mortgagebacked securities, and with a major eDiscovery vendor. Ryan received his J.D. from UCLA, School of Law and he received his B.A. in political science from Emory University.

**Education:** University of California, Los Angeles, 2003, J.D. Emory University, 1999, B.A., Political Science

**Bar Admissions:** California

# Staff Attorneys

**Jimmy Brunetto** practices out of the firm's New York office, prosecuting securities fraud, corporate governance, and shareholder rights litigation on behalf of the firm's institutional investor clients. He is a member of the firm's case development and client advisory group, in which he, as part of a team of attorneys, financial analysts, and investigators, counsels public pension funds and other institutional investors on potential legal claims.

Prior to joining the firm, Jimmy investigated and prosecuted securities fraud with the New York State Office of the Attorney General's Investor Protection Bureau, where he worked on a number of high-profile matters. While in law school, Jimmy was honored as a John Marshall Harlan Scholar and served as a Staff Editor for the *New York Law School Law Review*.

**Education:** New York Law School, 2011, J.D., cum laude, John Marshall Harlan Scholar; Staff Editor, New York Law School Law Review; University of Florida, 2007, B.A., *cum laude*, Political Science; University of Florida, 2007, B.S.B.A, Finance

**Bar Admissions:** New York

**Dylan A. Yaeger** has worked on several matters at BLB&G, including *In re Allianz Global Investors U.S. LLC Alpha Series Litigation.*

Prior to joining the firm, Dylan was an Adjunct Professor with Stony Brook University. Previously, Dylan was a Litigation Attorney with several law firms including Norton Rose and McCarter & English.

**Education:** Concordia University, Montreal, B.A., 1999; Osgoode Hall Law School, York University, Toronto, J.D., 2002; *Faculte De Droit*, *Universite De Montreal*, Canada, LL.B., 2003; New York University School of Law, LL.M, 2007; Fordham University School of Law, S.J.D.,2019.

**Bar Admissions:** New York. Quebec, Canada.

# Exhibit 3B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> SIX FLAGS ENTERTAINMENT CORPORATION, ET AL., <br><br> Defendants. | Civil Action No. 4:20-cv-00201-P <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF ROBERT D. KLAUSNER
ON BEHALF OF KLAUSNER, KAUFMAN, JENSEN & LEVINSON
IN SUPPORT OF LEAD COUNSEL'S MOTION FOR
<u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

I, Robert D. Klausner, hereby declare as follows:

1.      I am a principal of the law firm of Klausner, Kaufman, Jensen & Levinson ("Klausner Kaufman"). I submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees in connection with services rendered by Lead Counsel and Klausner Kaufman in the above-captioned securities class action ("Action").[1]  Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      My firm is outside counsel for Key West Police & Fire Pension Fund ("Key West"), a Named Plaintiff in the Action. In that capacity, my firm acts as a fiduciary to Key West. During the course of Key West's involvement in this litigation, my firm worked closely with Lead Counsel

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated September 3, 2024 (ECF No. 145).

Bernstein Litowitz Berger & Grossmann LLP in providing client communications and coordinating with Key West. My firm performed the following tasks, among others: reviewed and commented on substantive pleadings; participated in the settlement negotiation process; and consulted with Key West in formulating their decision-making throughout the case, including their review of the proposed Settlement.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each Klausner Kaufman attorney and professional support staff employee who devoted ten (10) or more hours to the Action from its inception through and including December 13, 2024, and the lodestar calculation for those individuals based on their current hourly rates. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Klausner Kaufman. All time expended in preparing this application for fees and expenses has been excluded.

4.      The number of hours expended by Klausner Kaufman in the Action, from inception through December 13, 2024, as reflected in Exhibit 1, is 83.2 hours. The lodestar for my firm, as reflected in Exhibit 1, is $62,400.00.

5.      The hourly rates for the personnel set forth in Exhibit 1 are the same as the regular rates for their services in securities litigation and certain non-contingency matters. My firm's hourly rates are largely based upon a combination of the title, the specific years of experience for each attorney and professional support staff employee, as well as market rates for practitioners in the field. These hourly rates are the same as, or comparable to, rates submitted by Klausner Kaufman and accepted by courts in other complex contingent class actions for purposes of "cross-checking" lodestar against a proposed fee based on the percentage-of-the-fund method, as well as determining a reasonable fee under the lodestar method.

2

6.    I believe that the number of hours expended and the services performed by the attorneys and professional support staff employees at Klausner Kaufman were reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

7.    As set forth in Exhibit 2 hereto, Klausner Kaufman is seeking payment for $3,710.91 in expenses incurred in connection with the prosecution and resolution of the Action. Expense items are reported separately and are not duplicated in my firm's hourly rates.

8.    The expenses incurred by Klausner Kaufman in the Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. I believe these expenses were reasonable and expended for the benefit of the Settlement Class in the Action.

9.    With respect to the standing of my firm, attached hereto as Exhibit 3 is a firm résumé, which includes information about my firm and biographical information concerning the firm's attorneys who worked on this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on December 18th, 2024.

Robert D. Klausner

**EXHIBIT 1**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

**TIME REPORT**

From Inception Through December 13, 2024

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Robert D. Klausner | 34.3 | $750 | $25,725 |
| Stuart A. Kaufman | 48.9 | $750 | $36,675 |
| | | | |
| TOTALS: | 83.2 | $750 | $62,400 |

## EXHIBIT 2

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.*,
Civil Action No. 4:20-cv-00201-P

## KLAUSNER, KAUFMAN, JENSEN & LEVINSON

## EXPENSE REPORT

| CATEGORY | AMOUNT |
|---|---|
| Out-of-Town Travel – Airfare | $ 1,640.96 |
| Out-of-Town Travel – Hotel | $ 2,013.48 |
| Out-of-Town Travel – Meals | $    56.47 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **TOTAL:** | **$3,710.91** |

**EXHIBIT 3**

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entertainment Corp.,*
Civil Action No. 4:20-cv-00201-P

## KLAUSNER, KAUFMAN, JENSEN & LEVINSON

### FIRM RESUME

The law firm of **Klausner, Kaufman, Jensen & Levinson** specializes exclusively in the representation of retirement and benefit systems and related labor and employment relations matters. The firm has provided legal services to more than 200 state and local government retirement systems in more than 25 states and territories. The firm is composed of eight lawyers in South Florida and Robert E. Tarzca, Of Counsel (New Orleans). In addition, we have six clerical/paraprofessional employees, an administrator, and a deputy administrator.

As a result of our substantial involvement on a national level in public employee retirement matters, we have developed a unique level of knowledge and experience. By concentrating our practice in the area of public employee retirement and related employment issues, we are able to keep a focus on changing trends in the law that more general practitioners would consider a luxury.

The law firm of Klausner, Kaufman, Jensen & Levinson, among the most highly regarded in the country in the area of pension issues, is frequently called upon as an educational and fiduciary consultant by state and local governments throughout the United States on some of the newest and most sophisticated issues involving public retirement systems. The examples of those areas are:

### Plan Design

The firm provides services to dozens of public employee pension plans throughout the United States in the area of plan review, design, and legislative drafting. On both the state and local levels, statutes and ordinances are reviewed for the purposes of maintaining compliance with current and pending Internal Revenue Code Regulations affecting public plans, as well as compliance with provisions of the Americans With Disabilities Act, the Older Workers Protections Act, Veterans' re-employment laws, and the Pension Protection Act. When benefit changes occur we prepare all necessary legislative drafts and appear before the appropriate legislative body to answer questions concerning those drafts. We also offer creative solutions to plan design issues brought about by unexpected economic pressures and balancing those solutions against constitutional or statutory benefit guarantees.

### Fiduciary Education

The primary duty of a pension fund lawyer is to ensure that the trustees do the right thing. It is our practice to design and present a variety of educational materials and programs which explain the general principles of fiduciary responsibility, as well as more specific principles regarding voting conflicts, compliance with open meeting laws, conflict of interest laws, etc. We regularly apprise the boards of trustees and administrators through newsletters, memoranda and updates on our website of changes in the law, both legislatively and judicially, which impact upon their duties.

We also conduct training workshops to improve the trustees' skills in conducting disability and other benefit hearings. As a result of our regular participation and educational programs on a monthly basis, all of the materials prepared as speaker materials for those programs are distributed without additional charge to our clients.

## Plan Policies, Rules, and Procedures

It has been our experience that boards of trustees find themselves in costly and unnecessary litigation because of inconsistency in the administration of the fund. Accordingly, we have worked with our trustee clients in developing policies, rules, and procedures for the administration of the trust fund. The development of these rules ensures uniformity of plan practices and guarantees the due process rights of persons appearing before the board. They also serve to help organize and highlight those situations in which the legislation creating the fund may be in need of revision. By utilizing rule making powers, the board of trustees can help give definition and more practical application to sometimes vague legislative language.

## Legal Counseling

In the course of its duties, the board of trustees and administrators will be called upon from time to time to interpret various provisions of the ordinance or statute which governs its conduct. The plan will also be presented with various factual situations which do not lend themselves to easy interpretation. As a result, counsel to the plan is responsible for issuing legal opinions to assist the trustees and staff in performing their function in managing the trust. It is our practice to maintain an orderly system of the issuance of legal opinions so that they can form part of the overall body of law that guides the retirement plan. As changes in the law occur, it is our practice to update those legal opinions to ensure that the subjects which they cover are in conformance with the current state of the law.

## Summary Plan Descriptions

Many state laws require that pension plans provide their members with a plain language explanation of their benefits and rights under the plan. Given the complexity of most pension laws, it is also good benefits administration practice. Part of the responsibilities of a fiduciary is to ensure that plan members understand their rights and the benefits which they have earned. We frequently draft plain language summary plan descriptions using a format which is easily updatable as plan provisions change. We are also advising plans on liability issues associated with electronic communication between funds and members as part of our continuing effort at efficient risk management.

## Litigation

Despite the best efforts and intentions of the trustees and staff, there will be times when the plan finds itself as either a plaintiff or defendant in a legal action. We have successfully defended retirement plans in claims for benefits, actions regarding under-funding, constitutional questions, discrimination in plan design, and failure of plan fiduciaries to fulfill their responsibilities to the trust. The firm has substantial state and federal court trial and appellate experience, including the successful defense of a state retirement system in the Supreme Court of the United States. The firm

also has a substantial role in monitoring securities litigation and regularly argues complex appellate matters on both the state and federal levels. We pride ourselves on the vigorous representation of our clients while maintaining close watch on the substantial costs that are often associated with litigation. We are often called upon to provide support in a variety of cases brought by others as expert witnesses or through appearance as an *amicus curiae* (Friend of the Court).

## ATTORNEY BIOGRAPHIES

### ROBERT D. KLAUSNER:

ROBERT D. KLAUSNER is the principal in the law firm of Klausner, Kaufman, Jensen & Levinson. For more than 47 years, he has been engaged in the practice of law, specializing in the representation of public employee pension funds. The firm represents state and local retirement systems in more than 20 states.

As part of its practice of representing public employee pension funds, the firm has advised numerous clients in connection with their service as plaintiffs or class representatives in federal securities class actions. Among many others, Mr. Klausner represented the Louisiana Sheriffs Pension & Relief Fund in the *In re Wells Fargo & Co. Securities Litigation*, No. 1:20-cv-04494-GHW-SN (S.D.N.Y.), which settled for $1 billion in 2023; the Fort Worth Employees' Retirement Fund in the *In re Bank of America Corp. Securities Litigation*, No. 09 MDL 2058 (S.D.N.Y.), which settled for $2.425 billion in 2013; advised the Louisiana Firefighters' Retirement System in the *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.), which settled for $730 million in 2013; and represented the Jacksonville Police & Fire Pension Fund in *Lloyd v. CVB Financial Corp.*, No. 10-cv-06256 (C.D. Cal.), which settled for $6.2 million in 2017.

Mr. Klausner has assisted in the drafting of many state and local laws on public employee retirement throughout the United States. Mr. Klausner is a frequent speaker on pension education programs and has also published numerous articles on fiduciary obligations of public employee pension trustees. He is co-author of the book State and Local Government Employment Liability, published by Thomson Reuters Publishers and is the author of the first comprehensive book on the law of public employee retirement systems, State and Local Government Retirement Law: A Guide for Lawyers, Trustees, and Plan Administrators, first published in April 2009 and an expanded version published in November 2024. In 2008, Mr. Klausner successfully represented the Commonwealth of Kentucky and the Kentucky Retirement Systems in the United States Supreme Court in *Kentucky Retirement Systems v. Equal Employment Opportunity Commission*, 554 U.S. 135 (2008).

EDUCATION:    University of Florida (B.A. with honors, 1974); University of Florida College of Law (J.D., 1977). Adjunct professor, Nova University Law School (1987 - 2005); adjunct professor, New York Institute of Technology, School of Labor Relations(1999-2003); instructor, Florida State University Center for Professional Development and Public Service (1980 - present); instructor, International Foundation of Employee Benefit Plans (1986 - present); instructor, instructor, National Association of State Retirement Administrators Conference (1996 - present); instructor, Texas Association

of Public Employee Retirement Benefit Conferences (2000 - present); instructor, Florida Division of Retirement Pension Trustees School (1980 - present); instructor, Louisiana Association of Public Employee Retirement Systems Conference (2000-present); Texas Local Firefighter Retirement Association Education Conference (2024).

BAR ADMISSIONS: Florida, Texas, Wisconsin, U.S. District Courts for the Southern District of Florida, Middle District of Florida, Northern District of Texas, Eastern District of Wisconsin, U.S. Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits, U.S. Court of Claims, U.S. Supreme Court.

MEMBER: The Florida Bar; Texas Bar; Wisconsin Bar; American Bar Association; Phi Beta Kappa; Phi Kappa Phi.

PUBLICATIONS: Co-Author, State and Local Government Employment Liability, Thomson Reuters Publishing.

Author, State and Local Government Retirement Law: A Guide for Lawyers, Trustees, and Plan Administrators, Thomson Reuters Publishing.

**STUART A. KAUFMAN** is a partner in the law firm of Klausner, Kaufman, Jensen & Levinson. After graduation from the University of Miami School of Law in 1989, Mr. Kaufman returned to New York where he practiced in a small firm in New York City for three years as a general litigator. He returned to Florida in 1993 and joined the law firm as an associate specializing in different facets of labor and employment law, including the representation of public employee pension funds.

In 1997, Mr. Kaufman was retained as General Counsel for the Professional Law Enforcement Association of Dade County, an employee organization dedicated to protecting the rights of law enforcement officers, where he served until January 2001. Mr. Kaufman was also a sole practitioner at the time operating a general civil practice with an emphasis on employment related matters. Additionally, he volunteered and served as General Counsel for Cops for Kids, Inc., a charitable organization operated by police officers which benefits underprivileged children in South Florida. He has represented several hundred police officers throughout Dade and Broward Counties in all matters related to their employment, including disciplinary appeals, grievances, and at shooting scenes.

Since rejoining Klausner, Kaufman, Jensen & Levinson in February 2001, Mr. Kaufman has been solely dedicated to representing public employee pension funds.

EDUCATION: State University of New York at Binghamton, B.A., Political Science, 1986; University of Miami School of Law, J.D., 1989.

BAR ADMISSIONS: New York, Florida, U.S. District Court for the Southern District of Florida, U.S. Court of Appeals for the Eleventh Circuit.

# Exhibit 4

**Compendium of Unpublished Authority**

# Exhibit 4A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| TIM DOYLE, Individually and On Behalf of All Others Similarly Situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REATA PHARMACEUTICALS, INC., *et al.*, <br><br> Defendants. | Case No. 4:21-cv-00987 <br> LEAD <br><br> <u>CLASS ACTION</u> <br><br> Judge Amos L. Mazzant, III |

**ORDER AWARDING ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

This matter came before the Court for a hearing on March 29, 2024 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses filed in the above-captioned action (the "Action"). The Court having considered all matters submitted to it at the Settlement Hearing and all papers filed and proceedings had herein; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the requested award of attorneys' fees and Litigation Expenses,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated October 30, 2023 (ECF No. 74-2) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction to enter this Order awarding attorneys' fees and Litigation Expenses, and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, due process, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Lead Counsel is hereby awarded attorneys' fees in the amount of 30% of the Settlement Fund (including interest earned thereon at the same rate as the Settlement Fund) and $204,323.08 in reimbursement of Plaintiffs' Counsel's out-of-pocket Litigation Expenses (including interest earned thereon at the same rate as the Settlement Fund), which sums the Court finds to be fair and reasonable.

5.      In making this award of attorneys' fees and Litigation Expenses to be paid from the Settlement Fund, the Court has considered and found that:

      a.  The Settlement has created a fund of $45,000,000 in cash that has been funded into an escrow account pursuant to the terms of the Stipulation, and numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

      b.  At least 46,829 copies of the Notice were mailed to potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees

in an amount not to exceed 33 1/3% of the Settlement Fund and for reimbursement of Litigation Expenses in an amount not to exceed $500,000, and there were no objections to the requested attorneys' fees and Litigation Expenses;

c.  Plaintiffs' Counsel undertook their representation of Lead Plaintiff and the Settlement Class on a fully contingent basis, and received no compensation during the Action, and any fee and expense award has been contingent upon the result achieved in the Action;

d.  The fee sought is based on a retainer agreement entered into between Lead Plaintiff, a sophisticated institutional investor that actively supervised the prosecution and resolution of the Action, and Lead Counsel, at the outset of the litigation, and the requested fee has been reviewed and approved as reasonable by Lead Plaintiff;

e.  Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy, and are highly experienced in the field of securities class action litigation;

f.  The Action raised a number of complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

g.  Had Plaintiffs' Counsel failed to achieve the Settlement, there would remain a significant risk that Lead Plaintiff and other Settlement Class Members may have recovered less than the Settlement Amount or nothing at all from Defendants;

h.  Plaintiffs' Counsel devoted over 7,464.2 hours, with a lodestar value of approximately $6,018,937.50, to achieve the Settlement; and

i.    The amount of attorneys' fees awarded and Litigation Expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.    Lead Plaintiff is hereby awarded $10,000 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.    Any appeal or challenge affecting this Court's award of attorneys' fees and Litigation Expenses shall in no way disturb or affect the finality of the Judgment.

8.    Exclusive jurisdiction is hereby retained over the Parties and Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

9.    In the event that the Settlement is terminated, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

**IT IS SO ORDERED.**

**SIGNED this 29th day of March, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

4

App. 187

# Exhibit 4B

**FILED**

July 28, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **SO**

DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| IN RE SOLARWINDS CORPORATION SECURITIES LITIGATION | Case No. 1:21-cv-00138-RP <br><br> <u>CLASS ACTION</u> |

**[PROPOSED] ORDER AWARDING**
**<u>ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

This matter came on for hearing on July 28, 2023 (the "Settlement Fairness Hearing") on Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Fairness Hearing and otherwise; it appearing that: (i) the Notice of the Settlement Fairness Hearing was mailed to all Settlement Class Members who or which could be identified with reasonable effort substantially in the form approved by the Court and (ii) a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and released over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 28, 2022 (ECF No. 97-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded, or $6,426,697 (plus interest earned at the same rate as the Settlement Fund).  Plaintiffs' Counsel are also hereby awarded $270,449.02 for payment of their litigation expenses.  These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner in which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of litigation expenses from the Settlement Fund, the Court has considered and found that:

a.      The Settlement has created a fund of $26,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

b.      The requested fee has been reviewed and approved as reasonable by Lead Plaintiff, an institutional investor that actively supervised the Action;

2

      c.      Copies of the Notice were mailed to over 25,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $500,000 and no objections to the requested award of attorneys' fees or Litigation Expenses were submitted;

      d.      Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

      e.      The Action raised a number of complex issues;

      f.      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

      g.      Plaintiffs' Counsel devoted over 6,200 hours, with a lodestar value of approximately $3.4 million, to achieve the Settlement; and

      h.      The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.      Lead Plaintiff New York City District Council of Carpenters Pension Fund is hereby awarded $22,760.30 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

App. 191

8.      Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 28th day of July, 2023.

_____
The Honorable Robert Pitman
United States District Judge

4

# Exhibit 4C

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually And On Behalf Of All Others Similarly Situated, <br><br>         Plaintiff, <br><br> vs. <br><br> ADEPTUS HEALTH INC., *et al.*, <br><br>         Defendants. | Case No. 4:17-CV-0449-ALM <br><br> Judge Amos L. Mazzant, III |

# ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on May 20, 2020 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.  The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated November 26, 2019 (ECF No. 275-2) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 77z-1, 78u-4), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of **25%** of the Settlement Fund and **$1,382,701.72** in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable.  Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

(a)     The Settlement has created a fund of $44,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b)     The fee sought is based on retainer agreements entered into between Plaintiffs, sophisticated institutional investors that actively supervised the Action, and Lead Counsel at the outset of Plaintiffs' involvement in the Action; and the requested fee has been reviewed and approved as reasonable by Plaintiffs;

(c)     Copies of the Notice were mailed to over 62,500 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for Litigation Expenses in an amount not to exceed $1,975,000, and no objections to the requested attorneys' fees and Litigation Expenses were received;

(d)     Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(e)     The Action raised a number of complex issues;

(f)     Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g)     Plaintiffs' Counsel devoted over 40,000 hours, with a collective lodestar value of over $20.3 million, to achieve the Settlement; and

(h)     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

3

6.      Lead Plaintiff Alameda County Employees' Retirement Association is hereby awarded **$13,096.01** from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.      Lead Plaintiff Arkansas Teacher Retirement System is hereby awarded **$5,094.60** from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8.      Additional named plaintiff Miami Fire Fighters' Relief and Pension Fund is hereby awarded **$2,770.25** from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.      Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

11.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

12.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

**IT IS SO ORDERED.**
**SIGNED this 20th day of May, 2020.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

4

App. 197

# Exhibit 4D

B

# ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 11 2010

CLERK, U.S. DISTRICT COURT
By _____
Deputy

10:25 AM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| JERRY RYAN, On Behalf of Himself and All Others Similarly Situated, §<br>§<br>§ Plaintiff, §<br>§<br>vs. §<br>§<br>FLOWSERVE CORPORATION, et al., §<br>§<br>Defendants. §<br>§ | Civil Action No. 3:03-CV-01769-B<br>**(Consolidated with 3:03-CV-01827-M; 3:03-CV-01846-M; 3:03-CV-02079-M)**<br>**ECF** |

**[PROPOSED] ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES AND EXPENSES**

514034_1

THIS MATTER having come before the Court on May 11, 2010, on the motion of Plaintiffs for an award of attorneys' fees and expenses incurred in this Litigation, the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this action to be fair, reasonable, and adequate and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated as of December 18, 2009 (the "Stipulation").

2.      This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Settlement Class who have not timely and validly requested exclusion.

3.      The Court hereby awards Lead Counsel attorneys' fees of 25% of the Settlement Fund, and litigation expenses in the amount of $7,460,673.62, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of attorneys' fees awarded is fair and reasonable under both a percentage-of-recovery analysis and a lodestar analysis given the time and effort involved, the substantial risks of no recovery, the result obtained, the difficulty of the issues presented, and the customary fee awards in similar cases. *See Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Said fees and expenses shall be allocated among counsel for Plaintiffs in a manner which, in Lead Counsel's good faith judgment, reflects each such Plaintiffs' counsel's contribution to the institution, prosecution and resolution of the Litigation.

- 1 -

514034_1

4.      The awarded attorneys' fees and expenses shall be paid to Lead Counsel immediately after the date this Order is executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.3 thereof, which terms, conditions and obligations are incorporated herein.

5.      Pursuant to 15 U.S.C. §78u-4(a)(4) Lead Plaintiff Alaska Electrical Pension Fund is hereby awarded $10,329.00 in costs.  Such reimbursement is appropriate considering Lead Plaintiff's active participation in prosecuting this action.

IT IS SO ORDERED.

DATED: 5/11/10

_____
THE HONORABLE JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

514034_1

- 2 -

# Exhibit 4E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

NOV 2 5 2002

Michael N. Milby, Clerk of Court

BERGER, et al.,

                Plaintiffs,

v.

COMPAQ COMPUTER CORP., et al.,

                Defendants.

Consolidated Civil Action No. 98-1148

## ORDER AWARDING PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES

This matter came before the Court for hearing pursuant to the Order of this Court, entered July 1, 2002, on the application of the parties for approval of the settlement set forth in the Stipulation of Settlement dated as of June 21, 2002 (the "Stipulation") and the application of Plaintiffs' Lead Counsel for (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including the fees, costs and expenses of any experts or consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees, costs and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Due and adequate notice complying with Federal Rule of Civil Procedure 23 and the requirements of due process having been given to the Settlement Class as required in said Order, and the court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises, and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

148

ORIGINAL

App. 203

1.    This Order incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings set forth in the Stipulation.

2.    This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Members of the Class.

3.    The Notice of Pendency and Proposed Settlement of Class Action given to the Class was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed settlement set forth in the Stipulation and the proposed fees, costs and expenses applied for pursuant to the Fee and Expense Application, to all persons entitled to such Notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

4.    Plaintiffs' Counsel is entitled to an award of attorneys' fees in the amount of $8,603,700.00, representing 30% of the Settlement Fund, and to reimbursement of costs and expenses in the amount of $770,935.02, plus interest on such amounts in proportion to the interest earned on the Settlement Fund.  Such amounts are reasonable and appropriate under the circumstances of this case.  Payment is to be made from the Settlement Fund, and is to be allocated among Plaintiffs' Counsel, pursuant to the terms of the Stipulation and this Order.

5.    The attorneys' fees, costs and expenses, including the fees, costs and expenses of experts and consultants, as awarded in the preceding paragraph, shall be paid to the Receiving Agent from the Settlement Fund, as ordered, immediately after the entry of this Order awarding such fees, costs and expenses, and shall be subject to the undertaking of the Receiving Agent annexed hereto as Exhibit A.  In the event that, after payment to the Receiving Agent, the attorneys' fees, costs and expenses award is reduced or reversed for any reason, including, without limitation, appeal, further proceeding on remand or successful collateral attack, then the

2

Receiving Agent shall make (and/or cause Plaintiffs' Counsel to make) repayment to the Settlement Fund within ten business days of the entire amount required by any court or appellate court, with accrued interest at the average rate earned on the Settlement Fund from the time of withdrawal from the Settlement Fund until the date of the refund.  Before paying any portion of the attorneys' fees, costs and expenses award to any other Plaintiffs' Counsel, the Receiving Agent shall obtain from such Plaintiffs' Counsel who receive any payment of attorneys' fees, costs and expenses their agreement that they accept payment subject to the joint and several obligation of each and every agreeing Plaintiffs' Counsel (including their respective partners, shareholders and/or firms) who receives payments to make repayment as may be required in accordance with this paragraph 5. Furthermore, such agreement of Plaintiffs' Counsel (including their respective partners, shareholders and/or firms) shall include their agreement that they remain subject to the continuing jurisdiction of this Court for the purpose of enforcing their joint and several obligation to repay required attorneys' fees, costs and expenses to the Settlement Fund as provided in this paragraph 5. *The Court believes that the fees paid to date are sufficient to cover any additional work to be performed under this ¶*

6.     Plaintiffs' Counsel are granted leave to file a supplemental petition(s) for ~~fees and~~ expenses upon good cause shown, as well as for ~~fees and~~ expenses incurred in connection with the notice and administration of the Settlement. *If Plaintiff believes there are extraordinary circumstances warranting additional fees,*

7.     Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction over hearing and determining applications for additional attorneys' fees, costs, interest and reimbursement of expenses in the Litigation.

8.     In the event that the settlement does not become effective in accordance with the terms of the Stipulation, or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants, then this Order shall be rendered null ~~and void to~~ the extent

*Plaintiffs' Counsel may present a petition to the Court requesting additional fees but Plaintiffs must be notified.*

10/30/02 1 17 PM

provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

9.    There is no just reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and the Clerk is hereby directed to enter judgment in accordance with this Order and Final Judgment.

10.    Without in any way affecting the finality of this Order Awarding Plaintiffs' Counsel's Fees, Costs and Expenses, this Court shall retain continuing jurisdiction over the Litigation and the parties to the settlement to enter any future orders as may be necessary for the purposes of effectuating the settlement and enforcing the Final Judgment.

IT IS SO ORDERED

DATED: _N(N . 22_, 2002

THE HONORABLE VANESSA GILMORE
UNITED STATES DISTRICT JUDGE

Agreed:

HOEFFNER & BILEK L.L.P.

By:_____
Thomas E. Bilek
State Bar No. 02313525
Federal Bar No. 9338
440 Louisiana Street, Suite 720
Houston, TX 77002-1634
Telephone:  (713) 227-7720
Facsimile:   (713) 227-9404

**Attorneys-In-Charge for Plaintiffs and
Plaintiffs' Liaison Counsel**

4

VINSON & ELKINS

By: _John L. Carter_____
    John L. Carter
    State Bar No. _03920700_ (T7)
    Federal Bar No. _____
2300 First City Tower
Houston, Texas 77002-6760
Telephone:  (713) 758-2222
Facsimile:   (713) 758-2346

**Attorneys for Defendant Compaq Computer Corp. and the Individual Defendants**

/275945.1{6/28/02}

5

# Exhibit 4F

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION:
# 2023 FULL-YEAR REVIEW

By Edward Flores and Svetlana Starykh[1]

23 January 2024

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

**DAVID TABAK, PhD**
Senior Managing Director

# INTRODUCTION

There were 228 new federal securities class action suits filed in 2023, ending a four-year decline in filings seen from 2019 to 2022. The increase in filings was mainly driven by an increase in the number of suits alleging Rule 10b-5 violations. Fueled by turmoil in the banking industry, filings in the finance sector more than doubled in 2023, comprising 18% of new filings. The number of filings related to the environment quadrupled in 2023 compared to 2022.

For the sixth consecutive year, there was a decline in the number of resolutions. There were 190 cases resolved in 2023, consisting of 90 settlements and 100 dismissals, marking the lowest recorded level of resolutions in the last 10 years. More than half of the decline in resolutions was driven by a decrease in the number of settled cases with Rule 10b-5, Section 11, and/or Section 12 claims.

Aggregate settlements totaled $3.9 billion in 2023, with the top 10 settlements of the year accounting for over 66% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, accounting for 24.9% of the 2023 aggregate settlement value. The average settlement value increased by 17% in 2023 to $46 million, though this was largely driven by the presence of a $1 billion settlement. The median settlement value for 2023 was $14 million, a nominal 7% increase from the inflation-adjusted median settlement value in 2022.



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 211

# TRENDS IN FILINGS

From 2019 to 2022, there was a decline in the number of federal filings. In 2023, there were 228 new cases filed, an increase from the 206 cases filed in 2022 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, accounted for most new filings with 206.[3] In particular, filings involving only Rule 10-5 claims increased by 34% from 137 in 2022 to 184 in 2023. On the other hand, there were only seven merger-objection suits filed in 2023, marking a 10-year low. There was also a decline in filings involving crypto unregistered securities, dropping to 11 in 2023 from the 16 observed in 2022.[4] See Figure 2.

Figure 1.  **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2023



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE).
The 2023 listings data are as of October 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 212

Figure 2. **Federal Filings by Type**
January 2014–December 2023



Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector accounted for 22% of new filings, the largest proportion of any sector. After hitting a five-year low in 2022, there was a resurgence in filings in the finance sector in 2023, accounting for 18% of new filings. This is more than double the percentage in 2022 and was partly due to the banking crisis in early 2023. On the other hand, the percentage of suits in the health technology and services sector declined from 27% in 2022 to 19% in 2023, partially driven by a decline in COVID-19-related suits. See Figure 3.

Figure 3.  **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second, Third, and Ninth Circuits continue to be the jurisdictions with the most cases filed, together accounting for 155 of the 210 non-merger-objections, non-crypto unregistered securities filings. The Ninth Circuit witnessed 66 new filings, marking a 22% increase from 2022. The number of filings in the Second Circuit declined by 24% to 54, marking a five-year low. The Third Circuit accounted for 35 filings, more than double the number of cases in 2022. Elsewhere, there were 14 cases filed in the Eleventh Circuit, marking a five-year high. See Figure 4.

Figure 4.  **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Among filings of standard cases, 31% included an allegation related to missed earnings guidance and 29% included an allegation related to misled future performance.[5] Meanwhile, the percentage of standard cases containing an allegation related to merger-integration issues declined by one-third to 11%, partially driven by a decline in SPAC-related filings. See Figure 5.

Figure 5. **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2019–December 2023



# FILINGS AGAINST FOREIGN COMPANIES

Historically, foreign companies with securities listed on US exchanges have been targeted with securities class action suits at a higher rate than their proportion of US listings, though this trend has reversed over the past two years.[6] In 2023, 18.9% of filings of standard cases were against foreign companies, compared to 24.1% of US listings represented by foreign companies. See Figure 6.

In 2023, there were 39 standard suits filed against foreign companies, a slight increase from 2022 (see Figure 7). Suits against companies in Asia accounted for 19 filings, while another 14 filings were against European companies. Nearly 36% of cases involving foreign companies had an allegation related to regulatory issues, compared to 23% for US companies. See Figure 8.

App. 216

Figure 6.  **Foreign Companies: Share of Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 217

Figure 7.  **Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2014–December 2023



Note: Foreign issuer status determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 218

Figure 8. **Allegations by US and Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2023–December 2023

Percentage of Federal Filings
40%
35%
30%
25%
20%
15%
10%
5%
0%
US
Foreign
22%
21%
34%
18%
31%
21%
23%
36%
11%
8%
Accounting Issues
Missed Earning Guidance
Misled Future Performance
Regulatory Issues
Merger-Integration Issues

# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas that we have identified for securities class actions over the past five years (see Figures 9 and 10). Due to the small number of cases in some categories, the findings summarized here may be driven by one or two cases.

## Crypto Cases

Since 2020, there have been at least 10 crypto-related federal filings each year, comprised of cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency sector. In 2023, there were 16 crypto-related federal filings, a 28% decline from the 26 filings observed in 2022.

Figure 9. **Number of Crypto Federal Filings**
January 2016–December 2023



## 2023 Banking Turmoil

The first securities class action suit alleging problems in the banking industry was filed on 7 December 2022 against bank holding company Silvergate Capital Corporation, which provided a banking platform through its subsidiary, Silvergate Bank.[7] Silvergate Bank's voluntary liquidation on 8 March 2023 started a rapid chain of bank failures that intensified during the spring, which saw the collapse of Silicon Valley Bank, Signature Bank, and First Republic Bank,[8] and continued through 3 November 2023, when Citizens Bank of Sac City was closed by the Iowa Division of Banking.[9] Between December 2022 and October 2023, there were 12 securities class action suits filed against banking institutions. Of those, 11 cases were filed in 2023, representing nearly 30% of all filings in the finance sector. Four of the 11 cases were filed against Credit Suisse Group AG, after Credit Suisse, the second-largest bank in Switzerland, collapsed in March 2023 and was bought by rival UBS Group AG.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 220

# Environment

In recent years, there has been an increased focus by governments and regulators on issues related to the environment, fossil fuel emissions, quality of drinking water, and climate change. During the past five years, there have been 20 environment-related securities class action suits filed. Eight of these cases were filed in 2023, quadruple the number from the two cases filed in 2022. Among the cases filed in 2023 include a suit against Hawaiian Electric Industries, Inc. in connection with wildfires in Hawaii, two cases related to train derailments with severe environmental consequences against Norfolk Southern Corporation, and three cases involving telecommunication companies AT&T, Verizon Communications, and Lumen Technologies for ownership of thousands of miles of lead-covered cables.

# Cannabis

In 2019, there were 13 securities class action suits filed against defendants in the cannabis industry. The number of filings has declined in subsequent years, with only one suit filed per year in each of 2022 and 2023.

# Money Laundering

In each of 2019 and 2020, three cases were filed with claims related to money laundering. In 2021, there were no such cases filed, while in 2022 and 2023, only one such suit was filed in each year.

# Cybersecurity and Customer Privacy Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity and/or customer privacy breach. While there were seven such filings in 2021, there were only three filings in 2023.

# COVID-19

Since March 2020, there have been 85 securities class actions filed with claims related to the COVID-19 pandemic. Of these, 33 cases were filed in 2020. In 2021 and 2022, the number of suits declined to 20 each year, while in 2023, there were only 12 such filings.

# SPAC

Filings related to special purpose acquisition companies (SPACs) peaked in 2021 with 31 securities class action suits filed that year. Since then, new federal filings related to SPACs have declined each year to 24 in 2022 and 14 in 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 221

Figure 10. **Event-Driven and Other Special Cases by Filing Year**
January 2019–December 2023



Number of Filings

# TRENDS IN RESOLUTIONS

In 2023, the number of resolved cases declined by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years. Of these resolved cases, 90 were settlements and 100 were dismissals.[10] While resolutions declined across all categories of cases, more than half of this decline was due to

App. 222

a reduction in the number of settled standard cases, which had a record-setting year in 2022. The number of merger-objection cases resolved declined to nine in 2023, consistent with the reduced number of filings of such cases in recent years. See Figure 11.

Since 2015, more cases filed have been dismissed than settled. This is consistent with historical trends, which indicate that dismissals tend to occur earlier in the litigation cycle and settlements occur later (see Figure 12). For cases filed in 2023, 5% of cases have been dismissed while 95% remain pending as of December 2023.

For cases filed and resolved over the past 20 years, over two-thirds were resolved within three years of the filing of the first complaint, while 16% of cases take longer than four years to resolve (see Figure 13). The median time to resolution is 2.1 years.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 12.  **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2014–December 2023



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

The number of resolved cases decreased by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 224

Figure 13. **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2004–December 2019 and Resolved January 2004–December 2023



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2014–2023 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 74% of these cases, while 17% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of motions were withdrawn by defendants. Among the cases in which a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full. See Figure 14.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 225

Figure 14.  Filing and Resolutions of Motions to Dismiss
Cases Filed and Resolved January 2014–December 2023



## Motion for Class Certification

A motion for class certification was filed in only 18% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases in which a motion for class certification was filed, while nearly all remaining 40% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases. See Figure 15.

Approximately 64% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 16). The median time is about 2.7 years.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 226

Figure 15. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2014–December 2023



Figure 16. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2014–December 2023



App. 227

# TRENDS IN SETTLEMENT VALUES[11]

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight decline from the inflation-adjusted total of $4.2 billion from 2022.[12]  In 2023, the average settlement value was approximately $46 million, a 17% increase over the 2022 inflation-adjusted average settlement value of $39 million and the second consecutive year that this value has increased (see Figure 17). The increase in the average settlement value is largely driven by a $1 billion settlement by Wells Fargo & Company.[13]

Figure 17.    **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million, a decrease of 12% from the $39 million inflation-adjusted amount in 2022 (see Figure 18). The median settlement value was $14.4 million, which is a slight increase from the $13.5 million inflation-adjusted value seen in 2022 (see Figure 19). Aside from a decrease in the percentage of settlements between $10 and $19.9 million and a roughly similar increase in the percentage of settlements between $20 to $49.9 million in 2023, the distribution of settlement values in 2023 looks similar to that of 2022 (see Figure 20).

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

App. 228

Figure 18. **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million in 2023, a decrease of 12% from the $39 million inflation-adjusted amount in 2022.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 229

Figure 19.  **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities,
and Settlements for $0 to the Class
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 230



Figure 20. **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2019–December 2023

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight drop relative to the inflation-adjusted total of $4.2 billion from 2022.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 231

# TOP SETTLEMENTS

The 10 largest settlements in 2023 ranged from $90 million to $1 billion and together accounted for over 66% of the $3.9 billion aggregate settlement amount reached in 2023. Wells Fargo & Company appears twice on this list, taking the top spot in a $1 billion settlement in a case involving misrepresentations regarding its progress in overhauling its internal controls[14] as well as the third-highest spot in a $300 million settlement in a matter involving allegations of misconduct in its auto insurance practices.[15] The Second, Seventh, and Ninth circuits accounted for nine of the top 10 settlements.

Table 1.  **Top 10 2023 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo & Company (2020) (S.D.N.Y.) | 11 Jun 2020 | 8 Sep 2023 | $1,000.0 | $181.1 | 2nd | Finance |
| 2 | The Kraft Heinz Company (N.D. Ill.) | 24 Feb 2019 | 12 Sep 2023 | $450.0 | $92.7 | 7th | Consumer Non-Durables |
| 3 | Wells Fargo & Company (2018) | 14 Feb 2019 | 17 Aug 2023 | $300.0 | $77.0 | 9th | Finance |
| 4 | Exelon Corporation (2019) | 16 Dec 2019 | 7 Sep 2023 | $173.0 | $45.3 | 7th | Utilities |
| 5 | McKesson Corporation | 25 Oct 2018 | 2 Jun 2023 | $141.0 | $36.3 | 9th | Distribution Services |
| 6 | Alexion Pharmaceuticals, Inc. (D. Conn.) | 17 Nov 2016 | 20 Dec 2023 | $125.0 | $32.8 | 2nd | Health Technology |
| 7 | Cardinal Health, Inc. (2019) | 1 Aug 2019 | 11 Sep 2023 | $109.0 | $33.4 | 6th | Distribution Services |
| 8 | Micro Focus International plc (S.D.N.Y.) (SEC 11) | 28 Mar 2018 | 27 Jul 2023 | $107.5 | $36.7 | 2nd | Technology Services |
| 9 | Grupo Televisa S.A.B. | 5 Mar 2018 | 8 Aug 2023 | $95.0 | $29.6 | 2nd | Communications |
| 10 | The Allstate Corporation | 10 Nov 2016 | 19 Dec 2023 | $90.0 | $27.1 | 7th | Finance |
| | **Total** | | | **$2,590.0** | **$591.9** | | |

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2023. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 232

Table 2.  **Top 10 Federal Securities Class Action Settlements (As of 31 December 2023)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | $32,334 | $13,249 | $1,017 | $3,358 | | |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[16]

A statistical review reveals that while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 23% of Investor Losses, while in cases with more than $50 million in Investor Losses, the median settlement value is less than 4% of Investor Losses. See Figure 21.

Since 2014, annual median Investor Losses have ranged from a low of $358 million to a high of $984 million. For cases settled in 2023, the median Investor Losses were $923 million, a 6% decline from 2022 and the second highest recorded value during the 2014–2023 period. Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%. See Figure 22.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 234

Figure 21.  Median Settlement Value as a Percentage of NERA-Defined Investor Losses
By Level of Investor Losses
Cases Settled January 2014–December 2023



The median Investor Losses were $923 million, a 6% decline relative to 2022 and the second highest recorded value during the 2014–2023 period.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 22.  **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2014–December 2023



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 23).

Among cases settled between January 2012 and December 2023, these factors in NERA's statistical model can explain over 70% of the variation observed in actual settlements.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 23.  **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2023



# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Over the past 10 years, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $489 million in 2017 to a high of $1.6 billion in 2016. In 2023, aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, a slight decline from the $1.0 billion seen in 2022 (see Figure 24). Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled since the passage of the PSLRA in 1996 reveals that fees and expenses as a percentage of the settlement amount decline as the settlement size increases. For instance, for cases settled during the 2014–2023 period, median percent fees and expenses ranged from 36.1% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

In the past 10 years, median percent attorneys' fees have increased for settlements under $5 million and for settlements over $500 million relative to the 1996–2013 period. This increase is more pronounced for settlements of $1 billion or higher, although this is partly due to this category having only five cases in the post-2013 period (see Figure 25).

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 237

Figure 24.  Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size
January 2014–December 2023



Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

App. 238

Figure 25.  **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

# CONCLUSION

In 2023, federal filings increased by 11% from 206 in 2022 to 228 in 2023, ending a four-year period of annual declines in filings from 2019 to 2022. Of the 228 cases filed in 2023, 206 were standard cases with alleged violations of Rule 10b-5, Section 11, and/or Section 12, and 18.9% of standard cases were against foreign companies. Filings against companies in the information technology and technology services, health technology and services, and the finance sectors accounted for 59% of non-merger objections, non-crypto unregistered securities filings.

The number of resolved cases declined by 15% from 223 in 2022 to 190 in 2023. There were 90 settlements and 100 dismissals, marking the lowest level of both settlements and dismissals in the last 10 years. Excluding the presence of settlements of $1 billion or higher, the average settlement value for 2023 was $34 million and the median settlement value was $14 million. Aggregate settlements totaled $3.9 billion in 2023, with aggregate plaintiffs' attorneys' fees and expenses accounting for $972 million, or 24.9%, of the 2023 aggregate settlement value. Over the last 10 years, the median plaintiffs' attorneys' fees and expenses as a percentage of settlement value has ranged from 18.6% for settlements of $1 billion or higher to 36.1% for settlements of $5 million or lower.

App. 239

# NOTES

1  This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other of NERA's securities and finance researchers for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2  NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3  Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which will be considered as a separate category.

4  In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5  Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

6  In our analysis, a company is defined as a foreign company based on the location of its principal executive office.

7  Class Action Complaint for Violations of the Federal Securities Laws, *In re Silvergate Capital Corporation Securities Litigation*, 7 December 2023.

8  Madeleine Ngo, "A Timeline of How the Banking Crisis Has Unfolded," *The New York Times*, 1 May 2023, available at https://www.nytimes.com/2023/05/01/business/banking-crisis-failure-timeline.html.

9  "Iowa Trust & Savings Bank, Emmetsburg, Iowa, Assumes All of the Deposits of Citizens Bank, Sac City, Iowa," FDIC Press Release, 3 November 2023, available at https://www.fdic.gov/news/press-releases/2023/pr23091.html.

10  "Dismissed" is used here as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

11  Unless otherwise noted, the analyses in this section exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

12  For our analysis, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its settlement size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

13  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

14  Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

15  Lauren Berg, "Wells Fargo Investors Ink $300M Deal in Auto Insurance Suit," *Law360.com*, 7 February 2023, available at https://www.law360.com/articles/1573911/.

16  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

App. 240

# RELATED EXPERTS



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 448 4123
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit www.nera.com/subscribe.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

# ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allows us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2024
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# Exhibit 4G

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| DEKA INVESTMENT GMBH, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:15-cv-02129-K |
| Plaintiffs, | § § | CLASS ACTION |
| | § | Hon. Ed Kinkeade |
| vs. | § § | |
| SANTANDER CONSUMER USA HOLDINGS INC., et al., | § § § | |
| Defendants. | § § § | |
| | § § | |

**APPENDIX OF DECLARATIONS IN SUPPORT OF (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) APPROVAL OF PLAN OF ALLOCATION, (3) AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (4) AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

In connection with the application of Lead Plaintiffs' counsel for final approval of class action settlement and the Plan of Allocation, and an award of attorneys' fees and expenses and award to Lead Plaintiffs, attached hereto are true and correct copies of the following:

|  | Tab | Page Number |
|---|---|---|
| Joint Declaration of Willow E. Radcliffe and Daniel L. Berger in Support of Lead Plaintiffs' Motion for (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation, (3) Award of Attorneys' Fees and Expenses, and (4) Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) | 1 | App. 001 – App. 040 |
| Declaration of Willow E. Radcliffe Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses/Charges | 2 | App. 041 – App. 203 |
| Declaration of Daniel L. Berger on Behalf of Grant & Eisenhofer P.A. in Support of Application for Award of Attorneys' Fees and Expenses | 3 | App. 204 – App. 269 |
| Declaration of Balon B. Bradley Filed on Behalf of the Law Firm of Balon B. Bradley in Support of Application for Award of Attorneys' Fees | 4 | App. 270 – App. 276 |
| Declaration of Joe Kendall Filed on Behalf of Kendall Law Group, PLLC in Support of Application for an Award of Attorneys' Fees and Expenses | 5 | App. 277 – App. 297 |
| Declaration of John J. Riley, II on Behalf of Lead Plaintiff City of Dearborn Heights Act 345 Police & Fire Retirement System | 6 | App. 298 – App. 302 |
| Declaration of Carla Zinkand on Behalf of Lead Plaintiff Deka Investment GmbH | 7 | App. 303 – App. 308 |
| Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date | 8 | App. 309 – App. 343 |

- 1 -

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| DEKA INVESTMENT GMBH, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:15-cv-02129-K |
| Plaintiffs, | § § § | CLASS ACTION |
| vs. | § § § | Hon. Ed Kinkeade |
| SANTANDER CONSUMER USA HOLDINGS INC., et al., | § § § § | |
| Defendants. | § § § | |
| | § | |

**DECLARATION OF WILLOW E. RADCLIFFE FILED ON BEHALF OF ROBBINS
GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD
OF ATTORNEYS' FEES AND EXPENSES/CHARGES**

I, WILLOW E. RADCLIFFE, declare as follows:

1. I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of my Firm's application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Litigation").

2. This Firm is Co-Lead Counsel of record for Lead Plaintiffs Deka Investment GmbH, City of Dearborn Heights Act 345 Police & Fire Retirement System, and the Classes herein.

3. The information in this declaration regarding the Firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the entries on the reports as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation. As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment. Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation. In addition, I believe that these expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

4. After the reductions referred to above, the number of hours spent on the Litigation by the Firm is 4,009.75. A breakdown of the lodestar is provided in the attached Exhibit A. The lodestar amount for attorney/paraprofessional time based on the Firm's current rates is

- 1 -

$2,638,641.25. The hourly rates shown in Exhibit A are the usual and customary rates set by the Firm for each individual.

5.     The Firm seeks an award of $348,834.97 in expenses and charges in connection with the prosecution of the Litigation. Those expenses and charges are summarized by category in the attached Exhibit B.

6.     The following is additional information regarding certain of these expenses:

(a)     Filing, Witness and Other Fees: $842.63. These expenses have been paid to the Court for filing fees and to an attorney service firm to obtain copies of court documents for plaintiffs. The vendors who were paid for these services are set forth in the attached Exhibit C.

(b)     Transportation, Hotels & Meals: $32,826.23. In connection with the prosecution of this case, the Firm has paid for travel expenses to, among other things, attend court hearings, meet with witnesses, mediators and opposing counsel and take or defend depositions. The date, destination and purpose of each trip is set forth in the attached Exhibit D.

(c)     Photocopies: $1,582.20. In connection with this case, the Firm made 10,548 photocopies. Robbins Geller requests $0.15 per copy for a total of $1,582.20. Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the number of in-house copies were identified as related to the Litigation.

(d)     Online Legal and Financial Research: $35,149.38. This category includes vendors such as LexisNexis Products, Lexpat, PACER, Thomson Financial, and Westlaw. These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs. This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation. The charges for these vendors vary depending upon the type of services requested. For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services. When Robbins Geller utilizes online services provided by a

- 2 -

vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, the Classes enjoy substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients.  For example, the "market rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(e)     My Firm maintained a litigation expense fund for certain common expenses in connection with the prosecution of this case.  The category entitled "Litigation Fund Contribution" in each plaintiffs' counsel's fee and expense declaration represents contributions to this expense fund.  A breakdown of the contributions to and payments made from the litigation expense fund is attached as Exhibit E.

7.     The expenses pertaining to this case are reflected in the books and records of this Firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

8.     The identification and background of my Firm and its partners is attached hereto as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th day of December, 2020, at San Francisco, California.

<div align="right">
s/Willow E. Radcliffe

WILLOW E. RADCLIFFE
</div>

4810-9241-3394.v1

# EXHIBIT A

**EXHIBIT A**

*Deka Investment GmbH v. Santander Consumer USA Holdings, Inc., et al.*, No. 3:15-cv-02129-K
Robbins Geller Rudman & Dowd LLP
Inception through October 20, 2020

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Alba, Mario | (P) | 9.00 | 870 | $ 7,830.00 |
| Alpert, Matthew I. | (P) | 397.90 | 840 | 334,236.00 |
| Burkholz, Spencer A. | (P) | 6.50 | 1,200 | 7,800.00 |
| Gusikoff Stewart, Ellen A. | (P) | 80.10 | 1,080 | 86,508.00 |
| Henssler, Jr., Robert R. | (P) | 215.30 | 880 | 189,464.00 |
| Myers, Danielle S. | (P) | 0.85 | 840 | 714.00 |
| Radcliffe, Willow E. | (P) | 1,201.55 | 935 | 1,123,449.25 |
| Robbins, Darren J. | (P) | 20.30 | 1,325 | 26,897.50 |
| Rosenfeld, David A. | (P) | 8.00 | 920 | 7,360.00 |
| Deshmukh, Hadiya K. | (A) | 73.80 | 250 | 18,450.00 |
| Hegazi, Nadim G. | (A) | 311.95 | 515 | 160,654.25 |
| Sarkis, Sunny S. | (A) | 636.45 | 525 | 334,136.25 |
| Schwartz, Andrew L. | (A) | 55.20 | 460 | 25,392.00 |
| Bays, Lea M. | (OC) | 4.75 | 775 | 3,681.25 |
| Walton, David C. | (OC) | 3.70 | 1,080 | 3,996.00 |
| Barhoum, Anthony J. | (EA) | 10.25 | 430 | 4,407.50 |
| Uralets, Boris | (EA) | 25.90 | 415 | 10,748.50 |
| Vue, Chong | (EA) | 19.85 | 335 | 6,649.75 |
| Roelen, Scott R. | (RA) | 17.00 | 295 | 5,015.00 |
| Brandon, Kelley T. | (I) | 2.00 | 290 | 580.00 |
| Browning, Aaron C. | (LS) | 0.75 | 290 | 217.50 |
| Freer, Brad C. | (LS) | 4.50 | 290 | 1,305.00 |
| Keita, Omar C. | (LS) | 15.50 | 290 | 4,495.00 |
| Lee, Alexander J. | (LS) | 12.00 | 220 | 2,640.00 |
| Torres, Michael | (LS) | 68.40 | 375 | 25,650.00 |
| Frazier, Joshua E. | (LC) | 28.00 | 170 | 4,760.00 |
| Chwa, Jessilyn J. | (SUA) | 47.00 | 175 | 8,225.00 |
| Paralegals | | 653.95 | 275-350 | 221,484.50 |
| Document Clerks | | 79.30 | 150 | 11,895.00 |
| **TOTAL** | | **4,009.75** | | **$ 2,638,641.25** |

(P) Partner  (EA) Economic Analyst  (LS) Litigation Support
(A) Associate  (RA) Research Analyst  (LC) Law Clerk
(OC) Of Counsel  (I) Investigator  (SUA) Summer Associate

# TAB 3

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

| | | |
|---|---|---|
| DEKA INVESTMENT GMBH, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:15-cv-02129-K |
| Plaintiffs, | § § | CLASS ACTION |
| | § | Hon. Ed Kinkeade |
| vs. | § § | |
| SANTANDER CONSUMER USA HOLDINGS INC., et al., | § § § | |
| Defendants. | § § § | |
| | § § | |

**DECLARATION OF DANIEL L. BERGER ON BEHALF OF GRANT & EISENHOFER P.A. IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, DANIEL L. BERGER declare as follows:

1.      I am a director of Grant & Eisenhofer P.A. ("Grant & Eisenhofer"), counsel for lead plaintiffs Deka Investment GmbH ("Deka") and City of Dearborn Heights Act 345 Police & Fire Retirement System, and the court-appointed counsel for the Class.

2.      With other directors at Grant & Eisenhofer, I oversaw and/or conducted the day-to-day activities in the litigation.

3.      The information in this declaration regarding Grant & Eisenhofer's time and expenses is taken from time and expense printouts and supporting documentation prepared and/or maintained by the firm in the ordinary course of business.  I reviewed these printouts (and backup documentation where necessary or appropriate) in connection with preparing this declaration.

4.      The review I conducted of the time and expense reports undertook to confirm that the reports were accurate, and also to evaluate whether the time and expenses committed to the litigation was necessary and reasonable.  As a result of this review, I can confirm that the time reflected in the firm's lodestar calculation and expenses for which payment is sought as set forth in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private marketplace.

5.      Attorneys and paralegals at Grant & Eisenhofer spent 5,155 hours working on this litigation.  A breakdown of the lodestar is provided in Exhibit A.  The lodestar amount for time based on Grant & Eisenhofer's current rates is $3,700,312.5.  The hourly rates shown in Exhibit A are the usual and customary rates set by the firm for each individual.   Grant & Eisenhofer's firm resume, which includes a description of certain of the attorneys who worked on this action, is attached as Exhibit C.

- 1 -

6.       Grant & Eisenhofer also seeks an award of $366,305.40 in unreimbursed expenses and charges in connection with the prosecution of the litigation. Those expenses and charges are summarized by category in Exhibit B.

7.       The expenses are reasonable and were necessary to carry out the prosecution of the claims on behalf of the Class. From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover any of their out-of-pocket expenses until the Action was successfully resolved. Thus, counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

8.       These expenses include a contribution of $276,068.65 to a litigation fund maintained together with co-lead counsel, Robbins Geller Rudman & Dowd LLP. As set forth in Exhibit E to the Joint Declaration of Willow E. Radcliffe and Daniel L. Berger, these funds were used to pay vendors, including Forensic Economics, Inc., which performed damages and market efficiency analyses, and which provided, through its expert Frank Torchio, expert testimony in the form of two expert reports, a deposition, and testimony before the Court in connection with the May 31, 2017 evidentiary hearing on class certification. In addition, the funds from the litigation fund were used to pay Granite Intelligence, which provided investigative services related to the action.

9.       The expenses include $23,058.73 of travel expenses. These expenses included (i) travel by my colleagues Charles Caliendo, Esq. and Caitlin M. Moyna, Esq. to Dallas, Texas in January 2017 to prepare for and defend the deposition of Ms. Carla Zinkand, a representative of Dek; (ii) travel by Mr. Caliendo and Ms. Moyna to Dallas, Texas, to prepare for and participate in the in-person hearing regarding Lead Plaintiffs' Motion for Class Certification, which was held by the Court on May 31, 2017; (iii) travel by Ms. Moyna to Atlanta, Georgia, in February 2017 to

- 2 -

participate in a deposition of a representative of the investment manager of co-lead plaintiff City of Dearborn Heights Act 345 Police & Fire Retirement; and (iv) travel by myself and Ms. Moyna to Los Angeles, California to participate in an all-day, in-person mediation which was facilitated by Mr. Robert A. Meyer, Esq., who is associated with JAMS.

10.     Case-related research expenses of $23,427.30 were necessary to achieve the result in the Settlement. This research was conducted to respond to Defendants' motion to dismiss the class action complaint and to prepare Lead Plaintiffs' Motion for Class Certification, which included an opening memorandum as well as a lengthy reply memorandum to respond to Defendants' many, complicated arguments opposing the motion.

11.     The other expenses for which Grant & Eisenhofer seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely billed to clients who are otherwise billed by the hour. These expenses include, among other things, court fees, mediators' costs, copying costs, transcriptions services, meeting expenses, and electronic-discovery processing and hosting services.

12.     The expenses pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge. Executed this 8th day of December 2020, at East Hampton, New York.

DANIEL L. BERGER

- 3 -

# EXHIBIT A

**EXHIBIT A**

*Deka Investment GmbH v. Santander Consumer USA Holdings, Inc. et al.*, No. 3:15-cv-02129-K
Grant & Eisenhofer P.A.
Inception through July 31, 2020

| NAME | TITLE | HOURS | RATE | LODESTAR |
|------|-------|-------|------|----------|
| Daniel L. Berger | Partner | 111.70 | 1,000.00 | $111,700.00 |
| Charles Caliendo | Partner | 3,137.10 | 800.00 | $2,509,680.00 |
| James J. Sabella | Partner | 139.40 | 1,000.00 | $139,400.00 |
| Caitlin Moyna | Sr. Counsel | 823.4 | 750.00 | $617,550.00 |
| Viola Vetter | Sr. Counsel | 29.60 | 575.00 | $22,200.00 |
| Jeremy Cole | Associate | 95.10 | 425.00 | $40,417.50 |
| Robert Gerson | Associate | 352.80 | 450.00 | $158,760.00 |
| Cathy Aldinger | Paralegal | 3.50 | 210.00 | $735.00 |
| Valisity Beal | Paralegal | 6.20 | 220.00 | $1,364.00 |
| Max Brandy | Paralegal | 13.00 | 210.00 | $2,730.00 |
| Robyn Finnimore-Pierce | Paralegal | 314.40 | 220.00 | $69,168.00 |
| Roger Jones | Paralegal | 3.80 | 200.00 | $760.00 |
| Meghan Leyh | Paralegal | 1.20 | 220.00 | $264.00 |
| Toby Saviano | Paralegal | 27.80 | 220.00 | $6,116.00 |
| Trineka Schuster | Paralegal | 1.20 | 220.00 | $264.00 |
| Larry Silvestro | Paralegal | 90.30 | 200.00 | $18,060.00 |
| Ronald E. Wittman | Paralegal | 1.30 | 240.00 | $312.00 |
| Carolynn A. Nevers | Paralegal Mgr | 3.20 | $260.00 | $832.00 |
| | *TOTAL* | **5,155** | | **$3,700,312.5** |

# Exhibit 4H

Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, TX 77002
Tel: (713) 691-9385
Facsimile: (713) 691-9407
mwarner@pszjlaw.com
bwallen@pszjlaw.com

Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Tel: (212) 561-7700
Facsimile: (212) 561-7777
rfeinstein@pszjlaw.com
bsandler@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

In re:
CORSICANA BEDDING, LLC, *et al.*,

    Debtors.

Chapter 11
Case No. 22-90016-ELM-11
Jointly Administered

**COVER SHEET OF FIRST AND FINAL APPLICATION OF PACHULSKI STANG
ZIEHL & JONES LLP, AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING
THE PERIOD FROM JULY 11, 2022 THROUGH DECEMBER 19, 2022**

**Final Fee Application of:** Pachulski Stang Ziehl & Jones LLP

**Capacity**: Counsel to the Official Committee of Unsecured Creditors
**First and Final Time Period:** July 11, 2022 – December 19, 2022
**Bankruptcy Petition Filed on:** June 25, 2022
**Date of Entry of Retention Order:** August 26, 2022   **Status of Case:** Open

| Amount Requested: | | Reductions: | |
|---|---|---|---|
| Fees: | **$701,758.00** | Voluntary fee reductions: | N/A |
| Expenses: | **$1,075.61** | Expense reductions: | N/A |
| Other: | **N/A** | | |
| **Total Requested:** | **$702,833.61** | **Total Reductions:** | N/A |

| Draw Down Request: | | Expense Detail: | |
|---|---|---|---|
| Retainer received: | N/A | Conference Call | $ 50.05 |
| Previous Draw Down(s): | N/A | Filing Fee | $300.00 |
| Remaining Retainer (now): | N/A | Lexis/Nexis – Legal Research | $179.29 |

DOCS_LA:345938.3 15806/002

App. 260

Main Document    Page 24 of 120

| Draw Down Request: | | Expense Detail: | |
|---|---|---|---|
| Requested Draw Down: | N/A | Outside Service | $180.90 |
| Retainer Remaining (after): | N/A | Pacer – Court Research | $ 56.70 |
| | | Reproduction / Scan Copy | $292.10 |
| | | Travel Expense | $ 16.57 |
| **Total Draw Down Request** | N/A | **Total  Expense** | **$1,075.61** |

| Hourly Rates (Final Fee Period) | Attorney | Paralegal/Clerical |
|---|---|---|
| Highest Billed Rate: | $1,595.00 | $495.00 |
| Total Hours Billed: | 522.50 | 34.90 |
| Blended Rate: | $1,264.57 | $474.66 |

2

Summary of Professionals for the Compensation Period (July 11, 2022 through October 31, 2022):[1]

| NAME OF POFESSIONAL | POSITION | YEAR ADMITTED | HOURLY BILLING RATE | NUMBER OF RATE INCREASES SINCE RETENTION DATE | TOTAL BILLED HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|---|---|
| Andrew W. Caine | Partner | 1984 | $1,295.00 | N/A | 0.30 | $ 388.50 |
| Ben L. Wallen | Associate | 2016 | $825.00 | N/A | 10.50 | $ 8,662.50 |
| Beth E. Levine | Counsel | 1992 | $1,045.00 | N/A | 7.40 | $ 7,733.00 |
| Bradford J. Sandler | Partner | 1996 | $1,445.00 | N/A | 125.10 | $180,769.50 |
| Colin R. Robinson | Counsel | 1997 | $1,025.00 | N/A | 12.10 | $ 12,402.50 |
| Denise L. Mendoza | Other | N/A | $395.00 | N/A | 7.10 | $ 2,804.50 |
| Gina F. Brandt | Counsel | 1976 | $995.00 | N/A | 0.90 | $ 895.50 |
| Jordan A. Kroop | Counsel | 1998 | $1,195.00 | N/A | 62.50 | $ 74,687.50 |
| Kerri L. LaBrada | Paralegal | N/A | $495.00 | N/A | 49.40 | $ 24,453.00 |
| La Asia S. Canty | Paralegal | N/A | $495.00 | N/A | 0.20 | $ 99.00 |
| Leslie A. Forrester | Law Lib. Dir. | N/A | $495.00 | N/A | 2.30 | $ 1,138.50 |
| Maxim B. Litvak | Partner | 1997 | $1,275.00 | N/A | 45.80 | $ 58,395.00 |
| Michael D. Warner | Partner | 1995 | $1,350.00 | N/A | 17.00 | $ 22,950.00 |
| Michael D. Warner | Partner | 1995 | $675.00 | Travel Rate | 2.00 | $ 1,350.00 |
| Patricia J. Jeffries | Paralegal | N/A | $495.00 | N/A | 25.30 | $ 12,523.50 |
| Paul J. Labov | Partner | 2002 | $1,195.00 | N/A | 98.10 | $117,229.50 |
| Robert J. Feinstein | Partner | 1982 | $1,525.00 | N/A | 34.20 | $ 52,155.00 |
| Richard J. Gruber | Counsel | 1982 | $1,425.00 | N/A | 3.80 | $ 5,415.00 |
| Shirley S. Cho | Counsel | 1997 | $1,145.00 | N/A | 102.80 | $117,706.00 |
| | | | | | | $701,758.00 |

I.    Fees by Project Category for the Compensation Period (July 11, 2022 through October 31, 2022):

| TASK CODE | PROJECT CATEGORY | TOTAL BILLED HOURS | AVERAGE HOURLY RATE | TOTAL COMPENSATION |
|---|---|---|---|---|
| AA | Asset Analysis / Recovery | 13.70 | $1,151.20 | $ 15,771.50 |
| AD | Asset Disposition | 183.30 | $1,248.00 | $228,759.50 |
| BL | Bankruptcy Litigation | 7.60 | $ 751.78 | $ 5,713.50 |
| CA | Case Administration | 24.60 | $ 691.794 | $ 17,018.00 |
| CO | Claims Administration / Objection | 32.30 | $1,246.11 | $ 40,249.50 |
| CP | Compensation of Professionals | 12.80 | $ 816.09 | $ 10,446.00 |
| CPO | Compensation of Professionals / Other | 6.20 | $1,032.10 | $ 6,399.00 |
| EB | Employee Benefits / Pension | 16.20 | $1,147.16 | $ 18,584.00 |
| EC | Executory Contracts | 4.90 | $ 973.78 | $ 4,771.50 |

[1] In addition to the fees and expenses incurred through October 31, 2022, PSZJ anticipates that it will incur additional fees and expenses through December 19, 2022. PSZJ will submit a supplemental fee application with additional time and expenses incurred through or anticipated to be incurred through December 19, 2022 as soon as practicable.

3

| TASK CODE | PROJECT CATEGORY | TOTAL BILLED HOURS | AVERAGE HOURLY RATE | TOTAL COMPENSATION |
|---|---|---|---|---|
| FF | Financial Filings | 10.90 | $ 645.00 | $ 7,030.50 |
| FN | Financing | 124.10 | $1,314.15 | $162,962.00 |
| FD | First Day | 6.50 | $1,255.77 | $ 8,162.50 |
| GC | General Creditors' Committee | 44.00 | $ 999.42 | $ 43,974.50 |
| HE | Hearing | 35.50 | $1,111.34 | $ 39,452.50 |
| MC | Meeting of Creditors | 1.90 | $1,102.89 | $ 2,095.50 |
| OP | Operations | 15.30 | $1,311.34 | $ 20,063.50 |
| PD | Plan and Disclosure Statement | 2.50 | $1,137.00 | $ 2,842.50 |
| RP | Retention of Professionals | 10.60 | $ 943.02 | $ 9,996.00 |
| RPO | Retention of Professionals / Other | 21.60 | $ 997.57 | $ 21,547.50 |
| SL | Stay Litigation | 30.30 | $1,140.87 | $ 34,568.50 |
| TR | Travel (Billed at ½ rate) | 2.00 | $ 675.00 | $ 1,350.00 |
| | **Totals** | **606.80** | | **$701,758.00** |

II.    Expense Summary for the Compensation Period (July 11, 2022 through October 31, 2022):

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Conference Call | $ 50.05 |
| Filing Fee | $300.00 |
| Lexis/Nexis – Legal Research | $179.29 |
| Outside Service | $180.90 |
| Pacer – Court Research | $ 56.70 |
| Reproduction / Scan Copy | $292.10 |
| Travel Expense | $ 16.57 |
| **Total** | **$1,075.61** |

4

# Exhibit 4I

Stephen M. Pezanosky
State Bar No. 15881850
Eli O. Columbus
State Bar No. 24028062
David L. Staab
State Bar No. 24093194
Thomas J. Zavala
State Bar No. 24116265
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile:  817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: eli.columbus@haynesboone.com
Email: david.staab@haynesboone.com
Email: tom.zavala@haynesboone.com

**ATTORNEYS FOR DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Corsicana Bedding, LLC, *et al.*,[1] | § | Case No. 22-90016-elm11 |
| | § | |
| Debtors. | § | Jointly Administered |

**FIRST AND FINAL APPLICATION OF HAYNES AND BOONE, LLP, COUNSEL
FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE
AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MONDAY,
DECEMBER 19, 2022 AT 1:30 P.M. (CENTRAL TIME) VIA WEBEX AT
HTTPS://US-COURTS.WEBEX.COM/MEET/MORRIS.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST
RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE
COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corsicana Bedding, LLC (3019) ("Corsicana"); Thetford Leasing LLC (7227) ("Thetford"); Olive Branch Building, LLC (7227) ("Olive Branch") (case dismissed effective Sept. 16, 2022); Eastern Sleep Products Company (1185) ("Eastern Sleep"); Englander-Symbol Mattress of Mississippi, LLC (5490) ("Englander Symbol"); Hylton House Furniture, LLC (5992) ("Hylton House"); Luuf, LLC (3450) ("Luuf"); Symbol Mattress of Florida, Inc. (4172) ("Symbol Florida"); Symbol Mattress of Pennsylvania, Inc. (3160) ("Symbol Pennsylvania"); Symbol Mattress of Wisconsin, Inc. (0871) ("Symbol Wisconsin"); Symbol Mattress Transportation, Inc. (1185) ("Symbol Transportation"); and Master Craft Sleep Products, Inc. (4961) ("Master Craft"). The location of the Debtors' service address is P.O. Box 3233, Fort Worth, TX 76113.

FIRST AND FINAL FEE APPLICATION OF HAYNES AND BOONE, LLP

THE BANKRUPTCY COURT AT 501 W. 10TH STREET, ROOM 147, FORT WORTH, TX 76102 BEFORE CLOSE OF BUSINESS ON DECEMBER 14, 2022, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

## SUMMARY SHEET

I.      **REQUESTING FIRM:**    Haynes and Boone, LLP

II.     **CLIENT:**    Debtors and Debtors in Possession

III.    **TIME PERIOD:**    June 25, 2022 – October 31, 2022

IV.    **PETITION DATE:**  June 25, 2022

V.     **RETENTION:**    Order entered August 9, 2022, effective as of June 25, 2022
          [Docket No. 287]

VI.    **STATUS OF CASE:**    Motion to Dismiss filed November 23, 2022
          [Docket No. 501], set for hearing on December 19, 2022

VII.    **TOTAL AMOUNT OF FEES AND EXPENSES REQUESTED:**

| | |
|---|---|
| **Fees** | **$1,928,875.00** |
| **Expenses** | **$29,032.61** |
| **Total Fees and Expenses Incurred**[1] | **$1,957,907.61** |
| **Less: Payments Received to Date** | **- $1,466,305.01** |
| **Total Amount Outstanding** | **$491,602.60** |
| **Less: Retainer** | **- $14,105.80** |
| **Total Payment Requested**[2] | **$477,496.80** |

VIII.  **RETAINER:**    $ 14,105.80

IX. HOURLY RATES:

| | Attorney | Paralegal/Clerical |
|---|---|---|
| Highest Billed Rate: | $1,150 | $450 |
| Total Hours Billed: | 2,169.0 | 270.3 |
| Blended Rate: | $840.04 | $395.25 |
| Blended Rate for all Professionals: | $790.75 | |
| Minimum Fee Increments: | 0.10 hours | |

**EXPENSES:**    **$29,032.61** (See Exhibit 3 for detailed summary of all expenses)

---

[1] H&B incurred additional fees and expenses after October 31, 2022 in connection with concluding pending matters and preparation of the Motion to Dismiss. H&B intends to file a supplement prior to the hearing on this Application for the additional fees and expenses incurred after October 31, 2022.

[2] Pursuant to the terms of the Fee Procedures Order, H&B expects to receive additional payment(s) prior to the hearing on this Application on account of its First and Second Post-Closing Monthly Statements, which will reduce the total payment request.

## SUMMARY OF TOTAL FEES FOR BILLING PROFESSIONALS
### (June 25, 2022 – October 31, 2022)

| SUMMARY OF TOTAL FEES FOR ALL BILLING PROFESSIONALS (Ranked by Total Hours Worked) | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | **Total Hours** | **Total Fees** |
| Stephen M. Pezanosky | Partner | $1,150 | 453.9 | $521,985.00 |
| Thomas Zavala | Associate | $550 | 358.2 | $197,010.00 |
| Eli O. Columbus | Partner | $895 | 296.8 | $265,636.00 |
| Ian T. Peck | Partner | $950 | 283.7 | $269,515.00 |
| Kim Morzak | Paralegal | $400 | 251.5 | $100,600.00 |
| Jordan Chavez | Associate | $650 | 244.5 | $158,925.00 |
| David Staab | Associate | $725 | 178.0 | $129,050.00 |
| Martha Wyrick | Associate | $675 | 114.4 | $77,220.00 |
| Matt Ferris | Partner | $900 | 110.6 | $99,540.00 |
| Valisa Berber-Thayer | Associate | $800 | 49.8 | $39,840.00 |
| Hayley Hervieux | Associate | $700 | 35.9 | $25,130.00 |
| Alecia Tipton | Paralegal | $325 | 17.8 | $5,785.00 |
| Thomas Hogan | Counsel | $950 | 7.9 | $7,505.00 |
| Reem Abdelrazik | Associate | $700 | 6.3 | $4,410.00 |
| Randall E. Colson | Partner | $975 | 5.8 | $5,655.00 |
| Sakina Foster | Partner | $925 | 5.8 | $5,365.00 |
| Tom D. Harris | Partner | $1,100 | 4.9 | $5,390.00 |
| Don Shiman | Partner | $900 | 3.5 | $3,150.00 |
| Raquel Alvarenga | Partner | $740 | 2.6 | $1,924.00 |
| Angel Rendon | Associate | $525 | 2.3 | $1,207.50 |
| Susan Wetzel | Partner | $1,100 | 1.9 | $2,090.00 |
| Daniel Collins | Associate | $525 | 1.1 | $577.50 |
| Ken Rusinko | Paralegal | $450 | 1.0 | $450.00 |
| Karen Coomer Denney | Partner | $750 | 0.7 | $525.00 |
| J. Frasher Murphy | Partner | $975 | 0.4 | $390.00 |
| **TOTALS** | | | **2,439.30** | **$1,928,875.00** |

# Exhibit 4J

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 20-41455-MXM |
| | § | |
| **Yuma Energy, Inc., et al.,**[1] | § | Chapter 11 |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

## FEE APPLICATION COVER SHEET FOR FINAL APPLICATION OF LOCKE LORD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| Capacity: | | Time Period: | May 6, 2020 – October 19, 2020[2] |
|---|---|---|---|
| **Bankruptcy Petition Filed on:** | April 15, 2020 | | |
| **Amount Requested:** | | **Reductions:** | |
| Fees: | $654,208.50 | Voluntary fee reductions: | $65,420.85 |
| Expenses | $1,404.32 | Expense reductions: | |
| Other: | | **Total Reductions:** | $65,420.85 |
| **Total Fees After Reduction:** | **$588,787.65** | | |
| | | | |
| **Draw Down Request:** | | **Expense Detail:** | |
| Retainer Received: | $50,000.00 | Long Distance Calls: | $64.20 |
| Previous Draw Down: | $00.00 | Court Fees: | $15.00 |
| Remaining Retainer: | $50,000.00 | Computer Research: | $1,198.72 |
| Requested Draw Down: | $50,000.00 | PACER: | $26.40 |
| Retainer Remaining (after): | $00.00 | Pro Hac Vice Filing Fees | $100.00 |
| | | | |
| **Hourly Rates:** | **Attorney:** | **Paralegal/Clerical:** | |
| Highest Billed Rate: | $1,040.00 | | $325.00 |
| Total Hours Billed: | 778.30 | | 8.0 |
| Blended Rate: | $838.06 | | $243.75 |
| | | | |
| **Total Blended Rate After Voluntary Reduction:** | | | **$748.80** |

---

[1]    The following cases are consolidated for procedural purposes only and are jointly administered by order entered on April 17, 2020, under Lead Case No. 20-41455-11, Yuma Energy, Inc. The remaining Debtors are as follows: Yuma Exploration & Production Company, Inc., Case No. 20-41456-11; Davis Petroleum Corp., Case No. 20- 41453-11; and The Yuma Companies, Inc., Case No. 20-41454-11.

[2]    As the Committee's counsel, Locke Lord, LLP includes fees in this Fee Application for (i) work it performed related to the implementation of the Plan through the Conversion Date of October 19, 2020; and (ii) work it performed preparing this fee application before and after the Conversion Date.

90958734v.1

| | | |
|---|---|---|
| Philip G. Eisenberg | Matthew H. Davis | Omer F. Kuebel, III |
| Texas Bar Number 24033923 | Texas Bar Number 24069580 | Louisiana State Bar No. 21682 |
| Simon R. Mayer | LOCKE LORD LLP | LOCKE LORD LLP |
| Texas Bar Number 24060243 | 2200 Ross Avenue, Suite 2800 | 601 Poydras Street, Suite 2660 |
| LOCKE LORD, LLP | Dallas, Texas 75201 | New Orleans, Louisiana 70130 |
| 600 Travis Street, Suite 2800 | Telephone: 214-740-8000 | Telephone: (504) 558-5155 |
| Houston, TX 77002 | Facsimile: 214-740-8800 | Facsimile: (504) 558-5200 |
| Telephone: 713-226-1200 | | |
| Facsimile: 713-226-3717 | | |

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 20-41455-MXM** |
| | § | |
| **Yuma Energy, Inc., et al.,**[3] | § | **Chapter 11** |
| | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |
| | § | |

## FIRST AND FINAL APPLICATION OF LOCKE LORD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT ELDON B. MAHON U.S. COURTHOUSE, 501 W. 10TH ST., RM. 147, FORT WORTH, TEXAS 76102-3643 BEFORE CLOSE OF BUSINESS ON APRIL 5, 2021, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

---

[3]    The following cases are consolidated for procedural purposes only and are jointly administered by order entered on April 17, 2020, under Lead Case No. 20-41455-11, Yuma Energy, Inc. The remaining Debtors are as follows: Yuma Exploration & Production Company, Inc., Case No. 20-41456-11; Davis Petroleum Corp., Case No. 20- 41453-11; and The Yuma Companies, Inc., Case No. 20-41454-11.

90958734v.1

-2-

| Timekeeper | Title | Year Admitted | Department | Hourly Billing Rate | Total Hours Billed | Total Fees |
|---|---|---|---|---|---|---|
| Barry J. Bendes | Partner | 1975 | Corporate and Transactional | $910.00 | 2.40 | $2,184.00 |
| Eric Boylan | Associate | 2017 | Litigation | $450.00 | 23.6 | $10,620.00 |
| Matthew .H. Davis | Partner | 2009 | Litigation | $650.00 | 0.7 | $455.00 |
| Neha Dubney | Associate | 2019 | Litigation | $405.00 | 5.8 | $2,349.00 |
| Philip G. Eisenberg | Partner | 1984 | Corporate and Transactional | $1,040.00 | 17.7 | $18,408.00 |
| Ira S. Greene | Partner | 1972 | Litigation | $1,025.00 | 18.1 | $18,552.50 |
| Michael B. Kind | Associate | 2011 | Litigation | $645.00 | 1.8 | $1,161.00 |
| Omer F. (Rick) Kuebel | Partner | 1992 | Litigation | $960.00 | 292.5 | $280,800.00 |
| Ashley Lohr | Paralegal | N/A | N/A | $225.00 | 6.5 | $1,462.50 |
| Simon R. Mayer | Senior Counsel | 2007 | Litigation | $745.00 | 321.2 | $239,294.00 |
| James Simonelli | Paralegal | N/A | N/A | $325.00 | 1.5 | $487.50 |
| Aaron C. Smith | Partner | 1995 | Litigation | $830.00 | 94.5 | $78,435.00 |

# Exhibit 4K

Case 20-42002-elm11 Doc 767 Filed 11/20/20 Entered 11/20/20 16:10:09 Page 1 of 359
Case 4:20-cv-00201-P Document 149 Filed 12/24/24 Page 274 of 324 PageID 5491
Docket #0767 Date Filed: 11/20/2020

Stephen M. Pezanosky
State Bar No. 15881850
Matthew T. Ferris
State Bar No. 24045870
David L. Staab
State Bar No. 24093194
Alexandra Kirincic
State Bar No. 24116621
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: matt.ferris@haynesboone.com
Email: david.staab@haynesboone.com
Email: alex.kirincic@haynesboone.com

**ATTORNEYS FOR REORGANIZED DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Vista Proppants and Logistics, LLC, et al.,[1] | § | Case No. 20-42002-ELM-11 |
| | § | |
| Reorganized Debtors. | § | Jointly Administered |

**FIRST AND FINAL APPLICATION OF HAYNES AND BOONE, LLP, COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MONDAY, DECEMBER 14, 2020 AT 1:30 P.M. IN ROOM 204, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST**

---

1 The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vista Proppants and Logistics, LLC (7817) ("Vista HoldCo"); VPROP Operating, LLC (0269) ("VPROP"); Lonestar Prospects Management, L.L.C. (8451) ("Lonestar Management"); MAALT Specialized Bulk, LLC (2001) ("Bulk"); Denetz Logistics, LLC (8177) ("Denetz"); Lonestar Prospects, Ltd. (4483) ("Lonestar Ltd."); and MAALT, LP (5198) ("MAALT"). The location of the Debtors' service address is 4413 Carey Street, Fort Worth, TX 76119-4219.

FIRST AND FINAL FEE APPLICATION OF HAYNES AND BOONE, LLP



2042002201120000000000005

**SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

### SUMMARY SHEET

**I.**  **REQUESTING FIRM:**  Haynes and Boone, LLP

**II.**  **CLIENT:**  Debtors and Debtors in Possession

**III.**  **TIME PERIOD:**  June 9, 2020 – November 6, 2020

**IV.**  **PETITION DATE:**  June 9, 2020

**V.**  **RETENTION:**  Order entered August 6, 2020, effective as of June 9, 2020 [Docket No. 364]

**VI.**  **STATUS OF CASE:**  Plan confirmed October 28, 2020

**VII.**  **TOTAL AMOUNT OF FEES AND EXPENSES REQUESTED:**

| | | |
|---|---|---|
| a. | Fees: | **$ 2,190,834.00** |
| b. | Expenses: | **$    24,670.74** |
| c. | Less: Payments received to date: | **$ 1,314,525.68** |
| d. | Total Amount Requested: | **$   900,979.06** |
| e. | Retainer to be Applied: | **$   156,837.35** |
| f. | Total Payment Requested: | **$   744,141.71²** |

**VIII.  RETAINER:**  $ 156,837.35

**IX. HOURLY RATES:**

| | **Attorney** | **Paralegal/Clerical** |
|---|---|---|
| Highest Billed Rate: | $1,200 | $395 |
| Total Hours Billed: | 3,313.1 | 249.1 |
| Blended Rate: | $636.04 | $335.48 |
| Blended Rate for all Professionals: | $615.02 | |
| Minimum Fee Increments: | 0.10 hours | |

**EXPENSES:**  **$24,670.74** (See Exhibit 3 for detailed summary of all expenses)

---

² Pursuant to the terms of the Compensation Procedures order, H&B expects to receive a payment of approximately $400,000 before the end of November on account of its Fourth Monthly Fee Statement, which will reduce the total payment request.

## SUMMARY OF TOTAL FEES FOR BILLING PROFESSIONALS
### (June 9, 2020 – November 6, 2020)

| SUMMARY OF TOTAL FEES FOR ALL BILLING PROFESSIONALS (Ranked by Total Hours Worked) | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hourly Rate** | **Total Hours** | **Total Fees** |
| David Staab | Associate (TX) 2014 Restructuring | $500 | 859.3 | $429,650.00 |
| Matt Ferris | Partner (TX), 2004 Restructuring | $710 | 801.5 | $569,065.00 |
| Stephen M. Pezanosky | Partner (TX), 1991 Restructuring | $900 | 666.4 | $599,760.00 |
| Alex Kirincic | Associate (TX), 2019 Restructuring | $380 | 383.5 | $145,730.00 |
| Kim Morzak | Paralegal (TX) Restructuring | $335 | 247.1 | $82,778.50 |
| Martha Wyrick | Associate (TX) 2016 Restructuring | $530 | 139.7 | $74,041.00 |
| Sakina Foster | Partner (TX) 2003 Finance | $735 | 103.8 | $76,293.00 |
| Phong Tran | Associate (TX), 2014 Finance | $490 | 94.6 | $46,354.00 |
| Daniel Wei | Associate (TX), 2019 Finance | $400 | 67.3 | $26,920.00 |
| Aimee M. Furness | Partner (TX) 2000 Litigation | $825 | 36.4 | $30,030.00 |
| Mei Zhang | Associate (TX), 2015 Finance | $490 | 34.3 | $16,807.00 |
| Matt Troia | Associate (TX), 2017 Real Estate | $495 | 31.4 | $15,543.00 |
| Ronald W. Breaux | Partner (TX), 1989 Litigation | $1,000 | 29.2 | $29,200.00 |
| Kourtney Lyda | Counsel (TX) 2000 Restructuring | $825 | 10.5 | $8,662.50 |
| Rachel O'Donnell | Associate (TX), 2017 Capital Markets/Securities | $495 | 8.7 | $4,306.50 |
| Lauren White | Partner (TX), 2009 Tax | $700 | 8.0 | $5,600.00 |
| Jordan Chavez | Associate (TX) 2018 Restructuring | $425 | 6.0 | $2,550.00 |
| Brian Sung | Counsel (NY), 2000 Finance | $900 | 5.3 | $4,770.00 |
| Matthew L. Fry | Partner (TX), 2007 Capital Markets/Securities | $735 | 5.1 | $3,748.50 |
| Kenneth K. Bezozo | Partner (NY) 1981 Tax | $900 | 4.9 | $4,410.00 |

| SUMMARY OF TOTAL FEES<br>FOR ALL BILLING PROFESSIONALS<br>(Ranked by Total Hours Worked) | | | | |
|---|---|---|---|---|
| Keenan Kolendo | Partner (TX), 2003<br>Real Estate | $900 | 2.9 | $2,610.00 |
| Cody Cravens | Associate (TX) 2015<br>Finance | $500 | 2.5 | $1,250.00 |
| Mary S. Mendoza | Partner (TX), 1994<br>Tax | $725 | 2.1 | $1,522.50 |
| James Markus | Partner (TX), 1977<br>Finance | $1,180 | 2.0 | $2,360.00 |
| Jeff Gunnell | Summer Associate (TX)<br>Restructuring | $395 | 2.0 | $790.00 |
| Scott Thompson | Associate (TX), 2012<br>Employee Benefits | $660 | 1.6 | $1,056.00 |
| Ellen McGinnis | Partner (DC), 1985<br>Finance | $1,200 | 1.3 | $1,560.00 |
| Don Shiman | Associate (NY) 2012<br>Tax | $675 | 1.3 | $877.50 |
| Ernest Martin, Jr. | Partner (TX), 1987<br>Litigation | $975 | 1.1 | $1,072.50 |
| Omar Shariff | Associate (TX), 2017<br>Mergers & Acquisitions | $475 | 1.1 | $522.50 |
| Patrick L. Hughes | Partner (TX), 1983<br>Restructuring | $750 | 0.5 | $375.00 |
| Charlie Jones | Partner (TX), 2008<br>Litigation | $750 | 0.4 | $300.00 |
| Paul H. Amiel | Partner (TX) 1983<br>Finance | $945 | 0.2 | $189.00 |
| Paloma Ahmadi | Counsel (TX), 2010<br>Labor & Employment | $650 | 0.2 | $130.00 |
| **TOTALS** | | | **3,562.2** | **$2,190,834.00** |

# Exhibit 4L

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:    (212) 839-5300
Facsimile:     (212) 839-5599
Email:         wcurtin@sidley.com
               anne.wallice@sidley.com

SIDLEY AUSTIN LLP
Thomas R. Califano (TX Bar No. 24122825)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| EIGER BIOPHARMACEUTICALS, INC., *et al.*[1] | Case No. 24-80040 (SGJ) |
| Debtors. | (Jointly Administered) |

## SUMMARY COVER SHEET
## FOR FIRST INTERIM AND FINAL FEE APPLICATION
## OF SIDLEY AUSTIN LLP AS COUNSEL TO THE DEBTORS
## FROM APRIL 1, 2024 THROUGH AND INCLUDING SEPTEMBER 5, 2024

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are:  Eiger BioPharmaceuticals, Inc. (1591); EBPI Merger Inc. (9986); EB Pharma LLC (8352); Eiger BioPharmaceuticals Europe Limited (N/A); and EigerBio Europe Limited (N/A).  The Debtors' service address is 2100 Ross Avenue, Dallas, Texas 75201.

> If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.
>
> A hearing will be conducted on the matters set forth in this motion on October 24, 2024 at 9:30 a.m. (prevailing Central Time) in Courtroom #1, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Suite 1254, Dallas, Texas 75242.
>
> You may participate in the hearing either in person or by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. The meeting code is 2304-154-2638. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judge-jernigans-hearing-dates .
>
> Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance , click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.

**First Interim and Final Fee Application of:** Sidley Austin LLP

**Capacity:** <u>Attorneys for the Debtors</u>

**Bankruptcy Petition Filed on:**
<u>April 1, 2024</u>

**Time Period:**
<u>April 1, 2024 – September 5, 2024   </u>

**Date of Entry of Retention Order:**
<u>May 13, 2024 [Dkt. No. 256]</u>

**Fee Period:**
<u>April 1, 2024 – September 5, 2024   </u>

**Status of Case:**
<u>Plan confirmed on September 5, 2024</u>

| **Amount Requested Fee Period:** | | **Reductions Fee Period:** | |
|---|---|---|---|
| Fees: | $7,698,866.00 | Voluntary Fee Reductions: | $160,752.00[2] |
| Expenses: | $175,940.86 | Expense Reductions: | $6,235.00[3] |
| Other: | $0.00 | **Total Reductions:** | **$166,987.00** |
| **Total:** | **$7,874,806.86** | | |

---

[2] This amount includes a write-down of $160,752.00 for the months of April through September, 2024.

[3] This amount includes a write-down of $6,235.00 for the months of April through September, 2024.

**Draw Down Request:**

| | |
|---|---|
| Retainer Received: | $1,470,432.40 |
| Previous Draw Downs: | $1,092,476.51 |
| Remaining Retainer (now): | $377,955.89 |
| Requested Draw Down: | $0.00 |
| Retainer Remaining (after): | $377,955.89 |

**Draw Down Request Fee Period:**

| | |
|---|---|
| Retainer Received: | $0.00 |
| Previous Draw Downs: | $0.00 |
| Remaining Retainer (now): | $0.00 |
| Requested Draw Down: | $0.00 |
| Retainer Remaining (after): | $0.00 |

**Expense Detail Final Fee Period:**

Copies - per page cost and total:
$0.13 / $16,211.13

| | |
|---|---|
| Fax - per page cost and total: | $0.00 |
| Computer Research: | $41,498.19 |
| Other: | $102.98 |

**Hourly Rates Fee Period:**

| **Attorneys** | | **Paralegal** |
|---|---|---|
| Highest Billed Rate: | $2,125.00 | $590.00 |
| Total Hours Billed: | 6329.40 | 280.60 |
| Blended Rate: | $1,192.02 | $561.21 |

3

**Exhibit C-1**

**Summary of Hours Billed by Sidley Attorneys and Paraprofessionals for the
Interim Fee Period**

| Name | Position / Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate ($) | Total Hours Billed | Total Compensation ($) |
|---|---|---|---|---|---|
| Advani, Suresh | Partner / Tax | 1992 | 2125 | 23.00 | 48,875.00 |
| Perry, Corey | Partner / M&A and Private Equity | 2004 | 1900 | 1.30 | 2,470.00 |
| Califano, Thomas R. | Partner / Restructuring | 1989 | 1875 | 249.00 | 466,875.00 |
| Brody, Sara B. | Partner /Litigation | 1987 | 1850 | 6.80 | 12,580.00 |
| Kuster, John J. | Partner / Litigation | 1992 | 1850 | 32.60 | 60,310.00 |
| Mendenhall, James | Partner / Litigation | 1993 | 1850 | 0.70 | 1,295.00 |
| Barros, Sonia Gupta | Partner / Capital Markets | 2001 | 1775 | 0.40 | 710.00 |
| Hajdu, Istvan A. | Partner / Capital Markets | 2005 | 1725 | 0.30 | 517.50 |
| Joyce, Eamon P. | Partner / Litigation | 2003 | 1675 | 0.50 | 837.50 |
| Le Regulski, Cathryn | Partner / M&A and Private Equity | 1999 | 1675 | 2.40 | 4,020.00 |
| Nonaka, Scott T. | Partner / Litigation | 1992 | 1675 | 0.20 | 335.00 |
| Frey, Nicholas F. | Partner / Employee Benefits | 2010 | 1650 | 2.60 | 4,290.00 |
| Fleming, Carlton | Partner / M&A and Private Equity | 2008 | 1600 | 186.80 | 298,880.00 |
| Klaben, Katie | Partner / Capital Markets | 2010 | 1600 | 0.40 | 640.00 |
| Abreu, Stephen | Partner / M&A and Private Equity | 2007 | 1550 | 258.20 | 400,210.00 |
| Curtin, William E. | Partner / Restructuring | 2002 | 1525 | 663.00 | 1,011,075.00 |
| Carlson, Walter C. | Partner / Litigation | 1978 | 1825 | 1.30 | 2,372.50 |
| Marden, Emily | Senior Counsel / Healthcare | 1999 | 1500 | 7.00 | 10,500.00 |
| Muenz, Jon | Counsel / Litigation | 2009 | 1425 | 284.00 | 404,700.00 |
| Hunter, Ellen E. | Managing Associate / M&A and Private Equity | 2015 | 1390 | 9.90 | 13,761.00 |
| Wallice, Anne G. | Managing Associate / Restructuring | 2018 | 1350 | 837.60 | 1,130,760.00 |
| Chao, Wesley | Managing Associate / Litigation | 2018 | 1280 | 20.70 | 26,496.00 |

| Name | Position / Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate ($) | Total Hours Billed | Total Compensation ($) |
|---|---|---|---|---|---|
| Sands, Deborah | Managing Associate / Litigation | 2019 | 1280 | 119.30 | 152,704.00 |
| Townsell, Andrew | Managing Associate / Restructuring | 2018 | 1280 | 244.70 | 313,216.00 |
| Kloeber, Ross O., IV | Managing Associate / Litigation | 2018 | 1280 | 0.40 | 512.00 |
| Fonteyne, Jaclyn G. | Managing Associate / Healthcare | 2019 | 1230 | 13.90 | 17,097.00 |
| Zhuang, BinQuang | Managing Associate / M&A and Private Equity | 2015 | 1230 | 352.00 | 432,960.00 |
| Elner, Nathan | Managing Associate / Restructuring | 2021 | 1150 | 63.10 | 72,565.00 |
| McKenzie, Rachel | Managing Associate / Litigation | 2022 | 1150 | 86.60 | 99,590.00 |
| Belysheva, Kseniya K. (formerly Scott) | Managing Associate / Litigation | 2023 | 1150 | 0.60 | 690.00 |
| Embry, Parker | Associate | 2021 | 1035 | 480.70 | 497,524.50 |
| Garcia, Paige | Associate | 2021 | 1035 | 1.30 | 1,345.50 |
| Gomez-Reichman, Michelle | Associate | 2022 | 1035 | 130.50 | 135,067.50 |
| Henry, Daniel L. | Associate | 2021 | 1035 | 15.50 | 16,042.50 |
| Radder Quick, Lucia | Associate | 2022 | 1035 | 42.20 | 43,677.00 |
| Rocha, Caitlan | Associate | 2021 | 1035 | 59.80 | 61,893.00 |
| Courtney, Veronica | Associate | 2022 | 895 | 369.30 | 330,523.50 |
| Dalton, Meghan E. | Associate | 2023 | 895 | 32.90 | 29,445.50 |
| Landreth, Jake A. | Associate | 2023 | 895 | 357.20 | 319,694.00 |
| McManus, Chelsea | Associate | 2022 | 895 | 283.00 | 253,285.00 |
| Owolabi, Tomide K. | Associate | 2022 | 895 | 113.70 | 101,761.50 |
| Rabinowitz, Raphael | Associate | 2023 | 895 | 124.30 | 111,248.50 |
| Taylor, Todd N. | Associate | 2022 | 895 | 29.00 | 25,955.00 |
| Ballantyne, Rochelle | Associate | 2024 | 760 | 85.00 | 64,600.00 |
| Cook. Sinclair | Associate | 2024 | 760 | 108.50 | 82,460.00 |
| Gordon, Eric E. | Associate | 2024 | 760 | 28.60 | 21,736.00 |
| Iams, Sophia | Associate | 2023 | 760 | 101.20 | 76,912.00 |
| Jean, Natalie T. | Associate | 2024 | 760 | 49.90 | 37,924.00 |
| Lopez, Jessie | Associate | 2024 | 760 | 4.20 | 3,192.00 |

| Name | Position / Area of Expertise | Year of Admission / Years of Experience | Hourly Billing Rate ($) | Total Hours Billed | Total Compensation ($) |
|---|---|---|---|---|---|
| Page, Bennett S. | Associate | 2024 | 760 | 30.90 | 23,484.00 |
| Rahie, Amanda | Associate | 2023 | 760 | 243.90 | 185,364.00 |
| Rakowski, Daniela | Associate | 2023 | 760 | 27.40 | 20,824.00 |
| Shair, Maya | Associate | 2024 | 760 | 41.90 | 31,844.00 |
| Tong, Tong | Associate | 2023 | 760 | 41.30 | 31,388.00 |
| Su, Samson | Associate | * | 760 | 53.90 | 40,964.00 |
| Berninzoni, Thomas P. | Paralegal | 32 years | 590 | 21.10 | 12,449.00 |
| Lutes, David J. | Paralegal | 38 years | 590 | 14.30 | 8,437.00 |
| Santos, Pamela | Paralegal | 23 years | 570 | 230.20 | 131,214.00 |
| Shteynbok, Olga | Paralegal | 22 years | 570 | 0.50 | 285.00 |
| Taylor, Katie M. | Paralegal | 2 years | 335 / 425 | 14.50 | 5,262.50 |
| Alsip, Marissa N. | Librarian | 2 years | 305 | 2.00 | 610.00 |
| Bosh, Jeffrey V. | Librarian | 2 years | 305 | 2.00 | 610.00 |
| | | | **Total** | **6,610.00** | **$7,698,866.00** |
| | Total All Attorney Blended Rate | | $1,192.02 | | |
| | Total Non-Attorney Blended Rate | | $561.82 | | |
| | Total All Timekeepers Blended Rate | | $1,164.73 | | |

*Not yet admitted to practice.

# Exhibit 4M

Holland & Knight LLP
Jessica Magee
Texas Bar No. 24037757
Steven J. Levitt
Texas Bar No. 24092690
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214-964-9500
Jessica.Magee@hklaw.com
Steven.levitt@hklaw.com

*COUNSEL FOR P-ROP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **WHITESTONE INDUSTRIAL-** | § | **Case No. 24-30653-mvl-11** |
| **OFFICE, LLC, *et al.*,**[1] | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

---

**COVER SHEET FOR FIRST AND FINAL APPLICATION FOR PAYMENT OF FEES
AND EXPENSES OF HOLLAND & KNIGHT, LLP
AS SPECIAL COUNSEL TO THE DEBTOR**

---

**First and Final Application of:** Holland & Knight, LLP

**Capacity:**  Counsel to Debtor Pillarstone Capital REIT Operating Partnership, LP

**Time Period:**  June 3, 2024 through October 23, 2024

**Bankruptcy Petition Filed on:** March 4, 2024

**Date of Entry of Retention Order:** September 12, 2024

**Status of Case:**  Chapter 11 Plan Confirmed

---

[1] The jointly administered cases are Whitestone Industrial-Office, LLC, Case No. 24-30653; Whitestone Offices, LLC, Case No. 24-30654; Whitestone CP Woodland Ph 2, LLC, Case No. 24-30655; Pillarstone Capital REIT Operating Partnership, LP, Case No. 24-30656; and Pillarstone Capital REIT, Case No. 24-30657.

Main Document    Page 2 of 18

| **Amount Requested:** | | **Reductions:** | |
|---|---|---|---|
| Fees: | $785,687.50 | Voluntary fee reductions: | $214,393.00 |
| Expenses: | $5,896.80 | Expense reductions: | $0 |
| Other: | $0 | **Total Reductions:** | $214,393.00 |
| **Total:** | $791,584.30 | | |

| **Draw Down Request:** | | **Expense Detail:** | |
|---|---|---|---|
| Retainer Received: | $0 | Copies - per page cost and total: | $0 |
| Previous Draw Down(s): | N/A | Fax - per page cost and total: | $0 |
| Remaining Retainer (now): | N/A | Computer Research: | $466.37 |
| Requested Draw Down: | N/A | Other: | $5,430.43 |
| Retainer Remaining (after): | $0 | Total: | $5,896.80 |

| **Hourly Rates** | **Attorney** | **Paralegal/Clerical** |
|---|---|---|
| Highest Billed Rate: | $1,800.00 | $400.00 |
| Total Hours Billed: | 869.9 | 43.4 |
| Blended Rate: | $894.27 | $178.80 |

# EXHIBIT B

HOLLAND & KNIGHT LLP
TIMEKEEPER SUMMARY

| Name of Professional | Position with H&K and Date Admitted to Practice | Practice Area | Hourly Billing Rate | Hours | Fee |
|---|---|---|---|---|---|
| Theresa Wanat | Partner, 2010 | Litigation | $930.00 | 26.3 | $24,459.00 |
| Theresa Wanat | Partner, 2010 | Litigation | $880.00 | 88.90 | $78,232.00 |
| Theresa Wanat | Partner, 2010 | Litigation | $880.00 | 9.40 | No Charge |
| Jessica Magee | Partner, 2002 | Litigation | $1,325.00 | 13.50 | $17,887.50 |
| Jessica Magee | Partner, 2002 | Litigation | $1,215.00 | 130.70 | $158,800.50 |
| Jessica Magee | Partner, 2002 | Litigation | $1,215.00 | 29.00 | No Charge |
| Steven Levitt | Partner, 2014 | Bankruptcy and Restructuring | $900.00 | 17.00 | $15,300.00 |
| Steven Levitt | Partner, 2014 | Bankruptcy and Restructuring | $855.00 | 162.40 | $138,852.00 |
| Steven Levitt | Partner, 2014 | Bankruptcy and Restructuring | $855.00 | 17.10 | No Charge |
| Michael Stockham | Partner, 2002 | Litigation | $1,395.00 | 15.00 | $20,925.00 |
| Michael Stockham | Partner, 2002 | Litigation | $1,250.00 | 118.50 | $148,125.00 |
| Michael Stockham | Partner, 2002 | Litigation | $1,395.00 | 3.70 | No Charge |
| Michael Stockham | Partner, 2002 | Litigation | $1,250.00 | 1.60 | No Charge |
| Megan Schmid | Partner, 2010 | Litigation | $1,055.00 | 15.20 | $16,036.00 |
| Megan Schmid | Partner, 2010 | Litigation | $950.00 | 36.70 | $34,865.00 |
| Megan Schmid | Partner, 2010 | Litigation | $950.00 | 3.80 | No Charge |
| Martin Seidel | Partner, 1990 | Litigation | $1,800.00 | 17.90 | $32,220.00 |
| Martin Seidel | Partner, 1990 | Litigation | $1,800.00 | 9.10 | No Charge |
| Cameron Rivers | Associate, 2019 | Bankruptcy and Restructuring | $625.00 | 23.70 | $14,812.50 |
| Cameron Rivers | Associate, 2019 | Bankruptcy and Restructuring | $625.00 | 15.10 | No Charge |
| Hunter Bezner | Associate, 2021 | Litigation | $855.00 | 21.20 | $18,126.00 |
| Hunter Bezner | Associate, 2021 | Litigation | $690.00 | 63.50 | $43,815.00 |

| Name of Professional | Position with H&K and Date Admitted to Practice | Practice Area | Hourly Billing Rate | Hours | Fee |
|---|---|---|---|---|---|
| Hunter Bezner | Associate, 2021 | Litigation | $690.00 | .30 | No Charge |
| Christopher Bailey | Associate, 2018 | Bankruptcy and Restructuring | $760.00 | 7.50 | $5,700.00 |
| Christopher Bailey | Associate, 2018 | Bankruptcy and Restructuring | $760.00 | .7 | No charge |
| Katia Sophia Leiva | Associate, 2019 | Litigation | $665.00 | 2.00 | $1,330.00 |
| Katia Sophia Leiva | Associate, 2019 | Litigation | $665.00 | 2.50 | No Charge |
| Miguel Escobar | Associate, 2023 | Litigation | $630.00 | 13.40 | $8,442.00 |
| Miguel Escobar | Associate, 2023 | Litigation | $630.00 | 4.20 | No Charge |
| Deron Smith | eData Project Manager | Litigation Support | $400.00 | 5.80 | $2,320.00 |
| Jose Sanchez | eData Project Specialist | Litigation Support | $330.00 | 3.60 | $1,188.00 |
| Jose Sanchez | eData Project Specialist | Litigation Support | $330.00 | 0.60 | No Charge |
| Chandra Elia | eData Analyst | Litigation Support | $225.00 | 10.40 | $2,340.00 |
| Anh Huynh | eData Analyst | Litigation Support | $240.00 | 1.30 | $312.00 |
| Anh Huynh | eData Analyst | Litigation Support | $240.00 | 1.00 | No Charge |
| Jophy Cheng | eData Analyst | Litigation Support | $240.00 | 1.00 | $240.00 |
| Elizabeth Hadden Peck | Senior Research Analyst | Litigation Support | $400.00 | 1.90 | $760.00 |
| Daniel Healey | E-Discovery Manager | Litigation Support | $400.00 | 0.50 | $200 |
| Morgan Wood | Senior Research Analyst | Litigation Support | $400.00 | 1.00 | $400.00 |
| Angela K. Smith | Practice Assistant | Legal Support | $100.00 | 8.40 | No Charge |
| Nicole Cullinane | Special Assistant | Legal Support | $375.00 | 6.40 | No Charge |
| Margaret A Fennessey | Special Assistant | Legal Support | $375.00 | 1.5 | No Charge |
| **TOTAL** | | | $860.27 | 913.3 | $785,687.50 |

# Exhibit 4N

United States District Court
Southern District of Texas

**ENTERED**

September 15, 2022

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE: VENATOR MATERIALS PLC SECURITIES LITIGATION | Civil Action No. 4:19-cv-03464 |

## ORDER AWARDING
## ATTORNEYS' FEES AND LITIGATION EXPENSES

This matter came on for hearing on September 9, 2022 (the "Settlement Hearing")
on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The
Court having considered all matters submitted to it at the Settlement Hearing and
otherwise; and it appearing that Notice of the Settlement Hearing substantially in the form
approved by the Court was mailed to all Settlement Class Members who or which could be
identified with reasonable effort, and that a summary notice of the hearing substantially in
the form approved by the Court was published in *Investor's Business Daily* and released
over *PR Newswire* pursuant to the specifications of the Court; and the Court having
considered and determined the fairness and reasonableness of the award of attorneys' fees
and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     This Order incorporates by reference the definitions in the Stipulation and
Agreement of Settlement dated March 11, 2022 (ECF No. 117-2) (the "Stipulation") and
all terms not otherwise defined herein shall have the same meanings as set forth in the
Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended, and all other applicable laws and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 25% of the Settlement Fund net of Litigation Expenses, or $4,686,294 (plus interest on that amount at the same rate as earned by the Settlement Fund), as well as $240,253.64 in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

A.     The Settlement has created a fund of $19,000,000 in cash that has been

funded into escrow pursuant to the terms of the Stipulation, and that numerous

Settlement Class Members who submit acceptable Claim Forms will benefit from

the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

B.     The requested fee has been reviewed and approved as reasonable by

Plaintiffs, three sophisticated institutional investors that actively supervised the

Action;

C.     Copies of the Notice were mailed to over 24,800 potential Settlement

Class Members and nominees stating Lead Class Counsel would apply for

attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for

Litigation Expenses in an amount not to exceed $350,000, and no objections to the

requested attorneys' fees and Litigation Expenses were received;

D.     Plaintiffs' Counsel conducted the litigation and achieved the

Settlement with skill, perseverance, and diligent advocacy;

E.     The Action raised a number of complex issues;

F.     Had Plaintiffs' Counsel not achieved the Settlement there would

remain a significant risk that Plaintiffs and the other members of the Settlement

Class may have recovered less or nothing from Defendants;

G.     Plaintiffs' Counsel devoted over 4,200 hours, with a lodestar value of

over $2,585,000, to achieve the Settlement; and

App. 293

H.     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     Lead Plaintiff Fresno County Employees' Retirement Association is hereby awarded $12,150.44 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

7.     Lead Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust is hereby awarded $1,500.00 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8.     Lead Plaintiff City of Pontiac General Employees' Retirement System is hereby awarded $918.91 from the Settlement Fund in reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

10.     Exclusive jurisdiction is hereby retained over the Parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

11.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

4

12.     There is no just reason for delay in the entry of this Order, and immediate

entry by the Clerk of the Court is expressly directed.

SO ORDERED this   15th   day of September, 2022.

_____
The Honorable George C. Hanks, Jr.
United States District Judge

App. 295

# Exhibit 4O

Hearing Date: July 18, 2024 at 11:00 a.m. (prevailing Eastern Time)
Objection Deadline: July 11, 2024 at 4:00 p.m. (prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel to the Plan Administrator for the Remaining Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.,* | **Case No. 22-22549 (JLG)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**FIFTH INTERIM AND FINAL FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP FOR
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR (I) THE FIFTH INTERIM
PERIOD FROM JANUARY 1, 2024 THROUGH AND INCLUDING APRIL 23, 2024,
AND (II) THE FINAL PERIOD FROM AUGUST 16, 2022
THROUGH AND INCLUDING APRIL 23, 2024**

---

*General Information*

| | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |

---

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

| | |
|---|---|
| Authorized to Provide Services to: | Endo International plc, *et al.* |
| Petition Date: | August 16, 2022 |
| Date of Retention: | September 30, 2022, *nunc pro tunc* to August 16, 2022 |

### Summary of Fees and Expenses Sought in the Application for the Fifth Interim Period

| | |
|---|---|
| This is a/an: | ___ monthly application<br>_x_ interim application<br>___ final application |
| Period for Which Compensation and Expense Reimbursement is Sought: | January 1, 2024 through and including April 23, 2024 (the "Fifth Interim Period") |
| Amount of Actual, Reasonable and Necessary Compensation Attributable to the Fifth Interim Period: | $27,084,827.72[2] |
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary in the Fifth Interim Period: | $75,789.87 |
| Voluntary Fee Waiver and Expense Reduction in the Fifth Interim Period: | $262,387.25 |
| Total Compensation and Expense Reimbursement Attributable to the Fifth Interim Period: | $27,160,617.59[3] |

### Summary of Fees, Professionals, Rates and Staffing for the Fifth Interim Period

| | |
|---|---|
| Compensation Sought in this Application for the Fifth Interim Period Already Sought Pursuant to Monthly Fee Statements but Not Yet Allowed: | $11,924,421.07[4] |

---

[2] This amount represents 100% of Skadden's fees during the Fifth Interim Period.

[3] Skadden submitted monthly fee statements for the months of January 2024 through February 2024. This amount includes payments Skadden has received to date on account of those monthly fee statements. This amount also includes the aggregate 20% holdbacks from the monthly fee statements and all unpaid amounts for March 2024 and April 2024, the allowance and payment of which Skadden is seeking at this time.

[4] This amount comprises 100% of the fees requested in Skadden's fee statements for the months of January 2024 and February 2024. To date, Skadden has been paid 80% of the fees requested therein ($9,539,536.86). As

*(cont'd)*

| | |
|---|---|
| Expenses Sought in this Application for the Fifth Interim Period Already Sought Pursuant to Monthly Fee Statements but Not Yet Allowed: | $23,755.28[5] |
| Blended Rate in this Application for All Attorneys during the Fifth Interim Period: | $1,296.41[6] |
| Blended Rate in this Application for All Timekeepers during the Fifth Interim Period: | $1,249.53 |
| Number of Professionals and Paraprofessionals Included in this Application for the Fifth Interim Period: | 154 |
| Number of Professionals and Paraprofessionals Who Billed Fewer than 15 Hours to these Cases during the Fifth Interim Period: | 60[7] |

---

*(cont'd from previous page)*

explained in more detail herein, Skadden did not file monthly fee statements for the months of March 2024 or April 2024.

[5]   This amount comprises 100% of the expenses requested in Skadden's fee statements for the months of January 2024 and February 2024, all of which have already been paid.

[6]   This blended attorney rate includes time billed by partners, counsel, of counsel, associates, law clerks/trainee solicitors, staff attorneys, and international visiting attorneys, as applicable.

[7]   This number, consistent with the approach adopted in connection with prior Interim Applications and discussions with the Fee Examiner, does not include partners and counsel who billed fewer than one hour and associates and paraprofessionals who billed fewer than three hours in any given month.  Skadden voluntarily reduced its requested fees by writing off time for such professionals in advance of filing the applicable monthly fee statements/finalizing monthly fee materials for the months of March and April, 2024. In certain monthly fee statements, a couple timekeepers with amounts below such thresholds were inadvertently included.

| | |
|---|---|
| Increase in Rates: | On January 1, 2024, Skadden implemented firm-wide rate increases applicable generally to clients in both bankruptcy and non-bankruptcy matters.  Pursuant to Skadden's retention order [Docket No. 319], Skadden provided advance notice of these increases to the Debtors, the United States Trustee, the official committee of unsecured creditors, the official committee of opioid claimants, and any party that had requested notice pursuant to Bankruptcy Rule 2002 [Docket Nos. 990 & 3342]. |

### *Summary of Fees and Expenses Sought in the Application for the Entire Case Period*

| | |
|---|---|
| This is a/an: | ___ monthly application |
| | ___ interim application |
| | _x_ final application |
| Final Period for Which Compensation and Expense Reimbursement is Sought: | August 16, 2022 through and including April 23, 2024 (the "Entire Case Period") |
| Amount of Actual, Reasonable and Necessary Compensation Attributable to the Entire Case Period as Sought in Monthly Fee Statements (and including March and April, 2024): | $115,138,893.30[8] |
| Post-Filing Fee Reductions: | $288,730.40 |
| Amount of Actual, Reasonable and Necessary Compensation Attributable to the Entire Case Period Net of Post-Filing Fee Reductions: | $114,850,162.90 |

---

[8]   The fees for the Entire Case Period listed here and throughout this Application reflect "billed" fees (i.e., the fees set forth in monthly fee statements, or in the case of March and April, 2024, the time detail attached hereto). However, as discussed herein, after filing each Interim Application, Skadden agreed to certain reductions after discussions with the Fee Examiner. For administrative convenience, these reductions were not applied to the fees associated with particular matters/hours, but instead were written off from the total amounts that were sought to be paid in a specific Interim Period. Accordingly, all matter-by-matter fees for the Entire Case Period listed herein reflect the fees as originally presented in Skadden's monthly fee materials and Interim Applications. All previous and subsequently agreed to Skadden fee reductions will be netted out from the release of holdbacks to be authorized pursuant to the final fee order.

A-4

| | |
|---|---|
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary in the Entire Case Period as Sought in Monthly Fee Statements (and including March and April, 2024): | $864,209.56 |
| Post-Filing Expense Reductions: | $13,414.66 |
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary in the Entire Case Period Net of Post-Filing Expense Reductions: | $850,794.90 |
| Voluntary Fee Waiver and Expense Reduction in the Entire Case Period: | $1,941,892.05[9] |
| Total Compensation and Expense Reimbursement Attributable to the Entire Case Period, Net of Post-Filing Reductions: | $115,700,957.80 |

### Summary of Fees, Professionals, Rates and Staffing for the Entire Case Period[10]

| | |
|---|---|
| Compensation Sought in this Application for the Entire Case Period Already Sought Pursuant to Monthly Fee Statements but Not Yet Allowed: | $99,689,756.25[11] |
| Expenses Sought in this Application for the Entire Case Period Already Sought Pursuant to Monthly Fee Statements but Not Yet Allowed: | $798,760.31[12] |

---

[9]   This amount is comprised of the sum of $1,370,628.38 in pre-filing fee reductions, $288,730.40 in post-filing fee reductions, $269,118.61 in pre-filing expense reductions, and $13,414.66 in post-filing expense reductions.

[10]   Skadden submitted monthly fee statements for the months covered by the Entire Case Period, other than the Reserve Period (as defined below), on various dates throughout the Entire Case Period. Pursuant to the Compensation Procedures Order (as defined below), and including amounts received in connection with services rendered during the First Interim Period, the Second Interim Period, the Third Interim Period, the Fourth Interim Period, and the Fifth Interim Period (each as defined below), Skadden has already received payments for compensation and expenses totaling $82,269,393.59 as of May 17, 2024.

[11]   This amount reflects agreed reductions in the amount of $288,730.40 based on discussions with the Fee Examiner. Skadden initially sought compensation in the amount of $99,978,486.65 in connection with its monthly fee statements.

[12]   This amount reflects agreed reductions in the amount of $13,414.66 based on discussions with the Fee Examiner. Skadden initially sought expense reimbursement in the amount of $812,174.97 in connection with its monthly fee statements.

| | |
|---|---|
| Blended Rate in this Application for All Attorneys during the Entire Case Period: | $1,246.33[13] |
| Blended Rate in this Application for All Timekeepers during the Entire Case Period: | $1,246.19 |
| Number of Professionals and Paraprofessionals Included in this Application for the Entire Case Period: | 339 |
| Number of Professionals and Paraprofessionals Who Billed Fewer than 15 Hours to these Cases during the Entire Case Period: | |
| Increase in Rates: | Effective September 1, 2022 and September 1, 2023, Skadden implemented firm-wide step increases to reflect class on class progression and promotions of certain Skadden professionals. These increases constituted annual "step increases," as defined in section B.2.d of the U.S. Trustee Guidelines (defined below), determined by Skadden in the ordinary course regarding attorneys and other billers throughout the firm due to advancing seniority and promotion. Pursuant to the U.S. Trustee Guidelines, such "step increases" do not constitute "rate increases." |
| | On January 1, 2023 and January 1, 2024, Skadden implemented firm-wide rate increases applicable generally to clients in both bankruptcy and non-bankruptcy matters. Pursuant to Skadden's retention order [Docket No. 319], Skadden provided advance notice of these increases to the Debtors, the United States Trustee, the Official Committee of Unsecured Creditors, the Official Committee of Opioid Claimants, and any party that had requested notice pursuant to Bankruptcy Rule 2002 [Docket Nos. 990 & 3342]. |

---

[13]   This blended attorney rate includes time billed by partners, counsel, of counsel, associates, law clerks/trainee solicitors, staff attorneys, and international visiting attorneys, as applicable.

## PRIOR FEE STATEMENTS OF
## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| Date Filed | Docket Number | Period Covered | Fees Requested[14] | Expenses Requested | Fees Authorized | Expenses Authorized |
|---|---|---|---|---|---|---|
| 11/1/2022 | 547 | 8/16/22 – 8/31/22* | $2,578,051.27 (80% of $3,222,564.09) | $164,395.29 | $2,578,051.27 (80% of $3,222,564.09) | $164,395.29 |
| | | 9/1/22 – 9/30/22* | $4,807,091.952 (80% of $6,008,864.90) | $96,662.95 | $4,807,091.952 (80% of $6,008,864.90) | $96,662.95 |
| 11/30/2022 | 794 | 10/1/22 – 10/31/22* | $4,978,106.75 (80% of $6,222,633.44) | $74,598.90 | $4,978,106.75 (80% of $6,222,633.44) | $74,598.90 |
| 12/30/2022 | 1115 | 11/1/22 – 11/30/22* | $5,889,231.85 (80% of $7,362,231.85) | $77,935.22 | $5,889,231.85 (80% of $7,362,231.85) | $77,935.22 |
| 1/30/2023 | 1270 | 12/1/22 – 12/31/22* | $3401,912.31 (80% of $4,252,390.39) | $41,256.83 | $3401,912.31 (80% of $4,252,390.39) | $41,256.83 |
| 2/28/2023 | 1413 | 1/1/23 – 1/31/23** | $5,095,219.22 (80% of $6,369,024.02) | $136,194.50 | $5,095,219.22 (80% of $6,369,024.02) | $136,194.50 |
| 3/31/2023 | 1762 | 2/1/23 – 2/28/23** | $4,465,042.66 (80% of $5,581,303.33) | $17,117.08 | $4,465,042.66 (80% of $5,581,303.33) | $17,117.08 |
| 4/30/2023 | 1850 | 3/1/23 – 3/31/23** | $4,676,649.85 (80% of $5,845,812.31) | $22,155.70 | $4,676,649.85 (80% of $5,845,812.31) | $22,155.70 |
| 5/31/2023 | 2137 | 4/1/23 – 4/30/23** | $2,884,236.99 (80% of $3,605,296.24) | $3,734.55 | $2,884,236.99 (80% of $3,605,296.24) | $3,734.55 |
| 6/30/23 | 2364 | 5/1/23- 5/31/23*** | $3,866,305.76 (80% of $4,832,882.20) | $10,346.50 | $3,866,305.76 (80% of $4,832,882.20) | $10,346.50 |

---

[14]   Pursuant to discussions with David Klauder, the court appointed Fee Examiner (as defined below), (1) Skadden agreed to voluntarily reduce its fees sought in connection with the First Interim Application in the amount of $112,388.10 and its expenses sought in the amount of $12,914.66, aggregating a total reduction of fees and expenses in the amount of $125,302.76; (2) Skadden agreed to voluntarily reduce its fees sought in connection with the Second Interim Application in the amount of $54,000; (3) Skadden agreed to voluntarily reduce its fees sought in connection with the Third Interim Application in the amount of $53,000 and its expenses in the amount of $500, aggregating a total reduction of fees and expenses in the amount of $53,500; and (4) Skadden agreed to voluntarily reduce its fees sought in connection with the Fourth Interim Application in the amount of $69,342.30.

| Date Filed | Docket Number | Period Covered | Fees Requested[14] | Expenses Requested | Fees Authorized | Expenses Authorized |
|---|---|---|---|---|---|---|
| 7/30/23 | 2553 | 6/1/23-6/30/23*** | $3,821,734.25 (80% of $4,777,167.81) | $18,516.79 | $3,821,734.25 (80% of $4,777,167.81) | $18,516.79 |
| 8/30/23 | 2750 | 7/1/23-7/31/23*** | $4,980,928.05 (80% of $6,226,160.06) | $59,287.61 | $4,980,928.05 (80% of $6,226,160.06) | $59,287.61 |
| 9/29/23 | 2987 | 8/1/23-8/31/23*** | $3,906,526.77 (80% of $4,883,158.46) | $59,847.90 | $3,906,526.77 (80% of $4,883,158.46) | $59,847.90 |
| 10/30/23 | 3080 | 9/1/23-9/30/23**** | $3,242,126.94 (80% of $4,052,658.67) | $1,104.74 | $3,242,126.94 (80% of $4,052,658.67) | $1,104.74 |
| 11/30/23 | 3295 | 10/1/23-10/31/23**** | $3,857,654.80 (80% of $4,822,068.50) | $1,023.40 | $3,857,654.80 (80% of $4,822,068.50) | $1,023.40 |
| 12/29/23 | 3489 | 11/1/23-11/30/23**** | $4,147,171.55 (80% of $5,183,964.44) | $3,648.93 | $4,147,171.55 (80% of $5,183,964.44) | $3,648.93 |
| 1/30/24 | 3595 | 12/1/23-12/31/23**** | $3,844,707.90 (80% of $4,805,884.87) | $592.80 | $3,844,707.90 (80% of $4,805,884.87) | $592.80 |
| 2/29/24 | 3761 | 1/1/24-1/31/24 | $4,312,320.26 (80% of 5,390,400.33) | $16,468.20 | $4,312,320.26 (80% of 5,390,400.33) | $16,468.20 |
| 3/29/24 | 4143 | 2/1/24-2/29/24 | $5,227,216.59 (80% of $6,534,020.74) | $7,287.08 | $5,227,216.59 (80% of $6,534,020.74) | $7,287.08 |

* Skadden previously filed its first interim fee application (the "First Interim Application") pertaining to these monthly fee periods (the "First Interim Period") [Docket No. 1337], which has been approved [Docket No. 1868], subject to continued 10% holdbacks.

** Skadden previously filed its second interim fee application (the "Second Interim Application") pertaining to these monthly fee periods (the "Second Interim Period") [Docket No. 2224], which has been approved [Docket No. 2992], subject to continued 10% holdbacks.

*** Skadden previously filed its third interim fee application (the "Third Interim Application") pertaining to these monthly fee periods (the "Third Interim Period") [Docket No. 3031], which has been approved [Docket No. 3370], subject to continued 10% holdbacks.

**** Skadden previously filed its fourth interim fee application (the "Fourth Interim Application") pertaining to these monthly fee periods (the "Fourth Interim Period") [Docket No. 3672], which has been approved [Docket No. 4240], subject to continued 10% holdbacks.

**TIME SUMMARY TO FIFTH INTERIM FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP DURING THE
FIFTH INTERIM PERIOD FROM JANUARY 1, 2024 – APRIL 23, 2024**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Dispositions (PSA) | 990.9 | $1,175,409.45 |
| Asset Dispositions (RSA/363 Process) | 8.3 | $10,143.90 |
| Business Operations / Strategic Planning | 273.7 | $485,584.20 |
| Case Administration | 113.7 | $57,003.30 |
| Claims Admin. (General) | 121.7 | $138,715.65 |
| Creditor Meetings / Statutory Committees | 6.8 | $11,500.20 |
| Disclosure Statement / Voting Issues | 869.5 | $997,987.50 |
| Employee Matters (General) | 740.2 | $1,016,217.00 |
| Executory Contracts (Personalty) | 398.4 | $465,909.30 |
| Foreign/Cross-Border | 1,158.2 | $1,533,806.55 |
| Future Claims Representative | 0.5 | $954.00 |
| General Corporate Advice | 389.6 | $550,868.40 |
| Insurance | 108.8 | $168,303.60 |
| Intellectual Property | 127.8 | $99,938.25 |
| Leases (Real Property) | 30.1 | $33,012.90 |
| Litigation (General) | 457.7 | $635,143.95 |
| Litigation (Opioid) | 400.0 | $489,331.97 |
| Mediation | 514.9 | $822,229.95 |
| NY Attorney General Assurance of Discont | 9.9 | $5,197.50 |
| Post Emergence Credit Facility | 1,538.5 | $1,783,861.20 |
| Post Emergence Finance | 2,671.3 | $3,263,791.05 |
| Preliminary Injunction | 55.6 | $68,706.00 |
| Regulatory and SEC Matters | 440.3 | $627,343.20 |
| Reorganization Plan / Plan Sponsors | 8,392.9 | $10,408,995.45 |
| Reports and Schedules | 1.9 | $2,637.00 |
| Retention / Fee Matters (SASM&F) | 405.9 | $402,078.15 |
| Retention / Fee Matters / Objections (Ot | 73.0 | $76,826.70 |
| Tax Matters | 331.1 | $482,808.60 |
| TLC Adversary Proceeding | 196.1 | $250,272.45 |
| Vendor Matters | 1.3 | $1,766.70 |
| Wind Down Process | 847.4 | $1,018,483.65 |
| **TOTAL** | **21,676.0** | **$27,084,827.72** |

A-9

**SUMMARY OF SERVICES RENDERED BY PROFESSIONAL BY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP DURING THE
FIFTH INTERIM PERIOD FROM JANUARY 1, 2024 – APRIL 23, 2024**

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| PARTNER | | | | |
| Richard T. Bernardo | 1988 | $1,590.00 | 37.3 | $59,307.00 |
| Jisun Choi | 2011 | $1,674.00 | 2.0 | $3,348.00 |
| Abby Davis | 2013 | $1,809.00 | 256.9 | $464,732.10 |
| Adrian J. S. Deitz | 1996 | $1,908.00 | 2.1 | $4,006.80 |
| Frederic Depoortere | 1998 | $1,908.00 | 1.1 | $2,098.80 |
| Shana A. Elberg | 2002 | $1,908.00 | 591.7 | $1,128,963.60 |
| M. Oren Epstein | 2004 | $1,674.00 | 30.4 | $50,889.60 |
| Gregory A. Fernicola | 1986 | $2,133.00 | 2.0 | $4,266.00 |
| Cliff C. Gardner | 2009 | $1,908.00 | 1.5 | $2,862.00 |
| Bruce Goldner | 1993 | $1,908.00 | 12.4 | $23,659.20 |
| Evan A. Hill | 2012 | $1,395.00** | 1.5 | $2,092.50 |
| | | $1,674.00 | 702.2 | $1,175,482.80 |
| Albert L. Hogan III | 1997 | $1,908.00 | 82.1 | $156,646.80 |
| Lisa Laukitis | 2000 | $1,908.00 | 398.0 | $759,384.00 |
| Paul Leake | 1989 | $1,989.00 | 584.7 | $1,162,968.30 |
| Danielle Li | 2006 | $1,809.00 | 360.9 | $652,868.10 |
| Peter Luneau | 2004 | $1,908.00 | 25.8 | $49,226.40 |
| Maxim Mayer-Cesiano | 2006 | $1,908.00 | 116.4 | $222,091.20 |
| Michael H. Menitove | 2009 | $1,674.00 | 3.6 | $6,026.40 |
| Steven Messina | 1998 | $1,908.00 | 43.8 | $83,570.40 |
| Peter Newman | 2005 | $1,908.00 | 13.9 | $26,521.20 |
| Ryne C. Posey | 2014 | $1,674.00 | 1.9 | $3,180.60 |
| Nina R. Rose | 2006 | $1,508.00 | 1.3 | $1,959.75 |
| Susan L. Saltzstein | 1992 | $2,133.00 | 4.7 | $10,025.10 |
| Erica Schohn | 2004 | $1,764.00** | 1.2 | $2,116.80 |
| | | $1,908.00 | 62.8 | $119,822.40 |
| David E. Schwartz | 1994 | $1,989.00 | 39.1 | $77,769.90 |
| Nicole Stephansen | 2009 | $1,809.00 | 7.3 | $13,205.70 |
| Brandon Van Dyke | 2003 | $1,989.00 | 77.0 | $153,153.00 |
| Darren M. Welch | 2000 | $1,395.00 | 1.3 | $1,813.50 |
| Clive Wells | 1991 | $1,908.00 | 7.6 | $14,500.80 |
| Richard H. West | 2010 | $1,674.00 | 1.6 | $2,678.40 |
| B. Chase Wink | 2008 | $1,908.00 | 177.8 | $339,242.40 |

A-10

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|------|------|------|------|------|
| Michael A. Wiseman | 2015 | $1,674.00 | 40.9 | $68,466.60 |
| Geoffrey M. Wyatt | 2005 | $1,590.00** | 20.8 | $33,072.00 |
|  |  | $1,908.00 | 8.5 | $16,218.00 |
| Michael J. Zeidel | 1996 | $1,989.00 | 167.5 | $333,157.50 |
| **TOTAL PARTNER** |  |  | 3,891.6 | $7,231,393.65 |
| | | | | |
| OF COUNSEL | | | | |
| Andrew J. Brady | 1996 | $1,674.00 | 18.6 | $31,136.40 |
| **TOTAL OF COUNSEL** |  |  | 18.6 | $31,136.40 |
| | | | | |
| COUNSEL | | | | |
| F. Joseph Ciani-Dausch | 2004 | $1,521.00 | 26.4 | $40,154.40 |
| Pallas A. Comnenos | 1997 | $1,521.00 | 2.1 | $3,194.10 |
| SF Cornely | 2014 | $1,521.00 | 1.3 | $1,977.30 |
| James D. Falconer | 2014 | $1,521.00 | 497.6 | $756,849.60 |
| Thomas E. Fox | 1984 | $1,268.00** | 5.1 | $6,464.25 |
|  |  | $1,521.00 | 1.7 | $2,585.70 |
| Nicole L. Grimm | 1999 | $1,521.00 | 296.7 | $451,280.70 |
| Milli Kanani Hansen | 2012 | $1,268.00** | 27.0 | $34,222.50 |
|  |  | $1,521.00 | 0.5 | $760.50 |
| Adam M. Howard | 2009 | $1,521.00 | 1.7 | $2,585.70 |
| Wentian Huang | 2012 | $1,521.00 | 255.7 | $388,919.70 |
| Jason M. Liberi | 2003 | $1,521.00 | 476.3 | $724,452.30 |
| Jeffrey A. Lieberman | 1985 | $1,620.00 | 6.0 | $9,720.00 |
| Peter Luneau | 2004 | $1,620.00 | 47.2 | $76,464.00 |
| Brendan Macreadie | 2011 | $1,422.00 | 3.3 | $4,692.60 |
| Joy E. Maddox | 1988 | $1,521.00 | 1.5 | $2,281.50 |
| Patricia A. McNulty | 1986 | $1,268.00 | 113.0 | $143,227.50 |
| Rui Qi | 2015 | $1,409.00** | 1.4 | $1,971.90 |
|  |  | $1,521.00 | 2.1 | $3,194.10 |
| Michael J. Sheerin | 2013 | $1,521.00 | 2.2 | $3,346.20 |
| Michael A. Wiseman | 2015 | $1,521.00 | 165.1 | $251,117.10 |
| Nancy D. Wuamett | 2011 | $1,268.00** | 143.9 | $182,393.25 |
|  |  | $1,521.00 | 13.9 | $21,141.90 |
| Sooryun Youn | 1994 | $1,620.00 | 27.2 | $44,064.00 |
| **TOTAL COUNSEL** |  |  | 2,118.9 | $3,157,060.80 |
| | | | | |
| ASSOCIATE/LAW CLERK/TRAINEE SOLICITOR | | | | |
| Jack Angers | 2021 | $1,121.00 | 8.7 | $9,748.35 |

A-11

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| Zeinab Bakillah | 2021 | $1,121.00 | 8.8 | $9,860.40 |
| Alexis K. Banks | 2023 | $855.00 | 198.5 | $169,717.50 |
| Crystal D. Barnes | 2020 | $1,197.00 | 17.5 | $20,947.50 |
| John J. Battaglia | 1996 | $1,359.00 | 11.6 | $15,764.40 |
| Brittany A. Blank | 2022 | $855.00 | 13.1 | $11,200.50 |
| Douglas A. Bresnick | 2021 | $1,121.00 | 233.9 | $262,084.95 |
| Jamie S. Brumberger | 2021 | $1,197.00 | 684.0 | $818,748.00 |
| Vincent J. Cannizzaro III | 2014 | $1,359.00 | 6.8 | $9,241.20 |
| Robin L. Caskey | 2019 | $1,197.00 | 277.4 | $332,047.80 |
| Ambra Casonato | 2003 | $855.00 | 30.9 | $26,419.50 |
| Jon D. Cohen | 2023 | $855.00 | 236.6 | $202,293.00 |
| Paola V. Correia | 2022 | $918.00** | 3.4 | $3,121.20 |
|  |  | $1,013.00 | 15.7 | $15,896.25 |
| Victoria E. Crynes | 2023 | $716.00 | 51.2 | $36,633.60 |
| Jackie Dakin | 2019 | $1,197.00 | 176.4 | $211,150.80 |
| Stephen J. Della Penna | 2015 | $1,359.00 | 269.4 | $366,114.60 |
| Matthew S. DeLuca | 2020 | $1,197.00 | 153.3 | $183,500.10 |
| Graham Dench | 2009 | $1,359.00 | 171.8 | $233,476.20 |
| Liz Downing | 2012 | $1,359.00 | 623.9 | $847,880.10 |
| Anna E. Drootin | 2023 | $855.00 | 3.6 | $3,078.00 |
| Kevin Foley | 2022 | $1,121.00 | 5.4 | $6,050.70 |
| David Gross* | * | $608.00 | 530.0 | $321,975.00 |
| Rachel Guffy | 2019 | $1,121.00 | 10.1 | $11,317.05 |
| Nicholas S. Hagen | 2019 | $1,238.00 | 528.8 | $654,390.00 |
| Brianna N. Henderson | 2019 | $1,238.00 | 506.5 | $626,793.75 |
| Andrew R. Herrera* | * | $608.00 | 217.1 | $131,888.25 |
| Laura Hogikyan | 2023 | $1,121.00 | 3.2 | $3,585.60 |
| Angeline J. Hwang | 2018 | $1,287.00 | 446.9 | $575,160.30 |
| Moshe S. Jacob | 2019 | $1,238.00 | 843.2 | $1,043,460.00 |
| Anthony Joseph | 2018 | $1,148.00** | 1.2 | $1,377.00 |
|  |  | $1,238.00 | 200.6 | $248,242.50 |
| Daniel C. Kennedy | 2020 | $1,197.00 | 677.4 | $810,847.80 |
| Jason N. Kestecher | 2015 | $1,359.00 | 656.3 | $891,911.70 |
| Robert J. Kiernan | 2024 | $716.00**** | 189.2 | $135,372.60 |
|  |  | $608.00 | 74.7 | $45,380.25 |
| Jaclyn F. Kleban | 2021 | $1,121.00 | 813.5 | $911,526.75 |
| Parker Kolodka | 2021 | $1,121.00 | 204.3 | $228,918.15 |
| Rosemary Laflam | 2019 | $1,238.00 | 287.1 | $355,286.25 |
| Justin Lau | 2018 | $1,193.00 | 3.1 | $3,696.75 |

A-12

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|------|------|------|------|------|
| | | $1,287.00*** | 10.0 | $12,870.00 |
| Sebin Lee | 2022 | $1,121.00 | 94.3 | $105,663.15 |
| Jacob G. Lefkowitz | 2016 | $1,359.00 | 4.5 | $6,115.50 |
| Michael K. Lenker | 2022 | $1,013.00 | 467.9 | $473,748.75 |
| Jit Qi Lim | 2022 | $1,238.00 | 8.0 | $9,900.00 |
| Teresa Lotufo | 2018 | $1,013.00 | 28.0 | $28,350.00 |
| Rose Ma* | * | $608.00 | 411.3 | $249,864.75 |
| Victoria L. Mobilio | 2022 | $1,013.00 | 188.9 | $191,261.25 |
| Michael S. Modak-Truran* | * | $608.00 | 25.1 | $15,248.25 |
| Rebekah J. Mott | 2012 | $1,359.00 | 83.2 | $113,068.80 |
| Olivia Moul* | * | $522.00 | 4.1 | $2,140.20 |
| Kelly J. Nabaglo | 2021 | $1,121.00 | 61.2 | $68,574.60 |
| Yelena L. Nersesyan | 2011 | $1,359.00 | 87.0 | $118,233.00 |
| Simon M. Parmeter | 2018 | $1,121.00 | 520.6 | $583,332.30 |
| Colin J. Paulauskas | 2023 | $716.00 | 15.5 | $11,090.25 |
| Zizi Petkova | 2017 | $1,359.00 | 130.2 | $176,941.80 |
| Ally M. Ramella | 2024 | $716.00 | 81.0 | $57,955.50 |
| Greta W. Riebe | 2019 | $1,238.00 | 141.7 | $175,353.75 |
| Emily D. Safko | 2018 | $1,287.00 | 87.6 | $112,741.20 |
| Benjamin Salzer | 2018 | $1,287.00 | 6.7 | $8,622.90 |
| Chloe Schwarz | 2023 | $855.00 | 33.1 | $28,300.50 |
| Joshua Shainess | 2015 | $1,359.00 | 4.5 | $6,115.50 |
| Sharon Shaoulian | 2019 | $1,121.00 | 22.6 | $25,323.30 |
| Catrina A. Shea | 2018 | $1,287.00 | 82.8 | $106,563.60 |
| Eric H. Silverstein | 2023 | $855.00 | 616.6 | $527,193.00 |
| Elizabeth A. Simon | 2014 | $1,359.00 | 34.2 | $46,477.80 |
| Caroline A. Sprague | 2024 | $596.00** | 3.0 | $1,788.75 |
| | | $716.00 | 11.1 | $7,942.05 |
| Bram A. Strochlic | 2015 | $1,359.00 | 653.6 | $888,242.40 |
| Colin B. Sylvester | 2023 | $855.00 | 49.3 | $42,151.50 |
| Corey M. Vacca | 2023 | $855.00 | 239.7 | $204,943.50 |
| Evan L. Wadler | 2023 | $855.00 | 67.1 | $57,370.50 |
| David Y. Wang | 2019 | $1,197.00 | 4.6 | $5,506.20 |
| Ashley A. Whelan | 2017 | $1,359.00 | 7.0 | $9,513.00 |
| Chambliss Williams | 2019 | $1,238.00 | 617.6 | $764,280.00 |
| Clark L. Xue | 2016 | $1,359.00 | 8.0 | $10,872.00 |
| **TOTAL ASSOCIATE/LAW CLERK/TRAINEE SOLICITOR** | | | 14,306.7 | $16,049,763.90 |

A-13

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| STAFF ATTORNEY/STAFF LAW CLERK | | | | |
| Brian Baggetta | 2005 | $525.00** | 9.9 | $25,197.50 |
| | | $630.00 | 6.0 | $3,780.00 |
| Marta Levytska | 2021 | $657.00 | 5.0 | $3,285.00 |
| **TOTAL STAFF ATTORNEY/STAFF LAW CLERK** | | | 20.9 | $12,262.50 |
| INTERNATIONAL VISITING ATTORNEY | | | | |
| Neta Brenner | 2020 | $716.00 | 156.5 | $111,975.75 |
| **TOTAL INTERNATIONAL VISITING ATTORNEY** | | | 156.5 | $111,975.75 |
| TRIAL CONSULTANT | | | | |
| Todd J. Frank | N/A | $621.00 | 9.4 | $5,837.40 |
| **TOTAL TRIAL CONSULTANT** | | | 9.4 | $5,837.40 |
| CLIENT SPECIALIST | | | | |
| Sarah Efroymson | N/A | $611.00 | 30.3 | $18,520.97 |
| Robert Hochberg | N/A | $518.00** | 3.0 | $1,552.50 |
| | | $621.00 | 2.2 | $1,366.20 |
| **TOTAL CLIENT SPECIALIST** | | | 35.5 | $21,439.67 |
| PARAPROFESSIONALS | | | | |
| Scarlett Bach | N/A | $338.00** | 1.3 | $438.75 |
| | | $405.00 | 617.3 | $250,006.50 |
| Andrea T. Bates | N/A | $522.00 | 41.0 | $21,402.00 |
| Emily Furfaro | N/A | $293.00 | 61.6 | $18,018.00 |
| Sage Geyer | N/A | $270.00** | 3.2 | $864.00 |
| | | $293.00 | 9.2 | $2,691.00 |
| Christopher M. Heaney | N/A | $522.00 | 50.2 | $26,204.40 |
| John Kim | N/A | $459.00 | 43.4 | $19,920.60 |
| Nicholas Kriak | N/A | $405.00 | 13.9 | $5,629.50 |
| Giovanni Moreira | N/A | $293.00 | 70.6 | $20,650.50 |
| Daniel S. Morse | N/A | $522.00 | 46.1 | $24,064.20 |
| Amanda Pallas | N/A | $405.00 | 5.8 | $2,349.00 |
| Katherine Vicente | N/A | $522.00 | 10.1 | $5,272.20 |
| Stephanie Yu | N/A | $293.00 | 16.4 | $4,797.00 |
| Kevin M. Barnes | N/A | $522.00 | 7.5 | $3,915.00 |
| Stella Chan | N/A | $450.00 | 4.5 | $2,025.00 |
| Janet Griffin | N/A | $293.00 | 6.2 | $1,813.50 |

A-14

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| Matthew L. Hostetler | N/A | $450.00 | 4.7 | $2,115.00 |
| Tiffany Idoko | N/A | $419.00** | 6.4 | $2,678.40 |
| | | $450.00 | 9.6 | $4,320.00 |
| Norman K. Isaksson | N/A | $450.00 | 6.5 | $2,925.00 |
| C. James Jahn | N/A | $450.00 | 10.2 | $4,590.00 |
| Ann Link | N/A | $450.00 | 4.5 | $2,025.00 |
| Wandy Liu | N/A | $263.00 | 12.0 | $3,150.00 |
| Breeana S. Moore | N/A | $450.00 | 5.4 | $2,430.00 |
| Monique L. Ribando | N/A | $621.00 | 41.1 | $25,523.10 |
| Mark P. Sullivan | N/A | $450.00 | 9.2 | $4,140.00 |
| **TOTAL PARAPROFESSIONALS** | | | 1,117.9 | $463,957.65 |
| **GRAND TOTAL** | | | **21,676.0** | **$27,084,827.72** |

\*        Law clerks or Trainee Solicitors are law school graduates who are not presently admitted to practice.

\*\*       Rate reduced by 25% due to time billed to matter 44 - Litigation (Opioid) or matter 47 - Litigation (Opioid) – Canada.

\*\*\*      2024 Rate Increase.

\*\*\*\*     Increased rate due to admission to the Bar.

A-15

# Exhibit 4P

Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
Neligan LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

**Proposed Attorneys for Debtors**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NATIONAL RIFLE ASSOCIATION OF | ) Case No. 21-30085 (HDH) |
| AMERICA and SEA GIRT LLC[1] | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO
SECTION 327(e) OF THE BANKRUPTCY CODE AUTHORIZING THE RETENTION
AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
INTERNATIONAL LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF JANUARY 15, 2021**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 29, 2021
AT 10:30 AM IN COURTROOM #3, EARL CABELL FEDERAL BUILDING, 1100
COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS. IF YOU OBJECT TO THE
RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY
ANSWERING EACH PARAGRAPH OF THIS APPLICATION. UNLESS OTHERWISE
DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK**

---

[1]    The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The
Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

**OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS APPLICATION. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE APPLICATION AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

[*Remainder of Page Intentionally Left Blank*]

The above-captioned debtors and debtors in possession, Sea Girt LLC ("Sea Girt") and the National Rifle Association of America (the "NRA"), (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as special litigation counsel effective as of the Petition Date (as defined herein). In support of this Application, the Debtors submit the declaration of Erin E. Murphy, a partner at Kirkland (the "Murphy Declaration"), which is attached hereto as **Exhibit B** and the declaration of Michael T. Jean, the Director of the Office of Litigation Counsel of the National Rifle Association of America, Inc., Institute for Legislative Action (the "Jean Declaration"), which is attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

1.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(e) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

## Background

4.      On January 15, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

App. 315

5.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

6.      On January 20, 2021, the Court entered an order [Docket No. 36] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On February 4, 2021, the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 105].

7.      Under Rule 2014-1 of the Local Rules, "[i]f a motion for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous."  Here, the Debtors are moving for approval of Kirkland's retention and employment a day after the 30 days of the commencement of Kirkland's provision of services to the Debtors.[2]  The Debtors were prepared to file this Application on February 16, 2021 (within the 30-day time period), however, due to power outages and a lack of internet as a result of the winter storm the filing was delayed by one day. Accordingly, the Debtors submit that good cause exists to deem the Debtors' retention of Kirkland as contemporaneous.

## Relief Requested

8.      By this Application, the Debtors seek entry of the Order authorizing the retention and employment of Kirkland as their special litigation counsel in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Kirkland effective

---

[2]      Thirty days after the Petition Date is Sunday, February 14, 2021.  In accordance with Bankruptcy Rule 9006(a)(1)(C), the Debtors have until Tuesday, February 16, 2021 to file this Application.

as of October 17, 2016 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as **<u>Exhibit 1</u>** to **<u>Exhibit A</u>** and incorporated herein by reference.

<div align="center"><b><u>Kirkland's Qualifications</u></b></div>

9.  The Debtors selected Kirkland as special litigation counsel because of Kirkland's extensive experience representing the Debtors in the matters described herein and Kirkland's track record of providing the Debtors with effective and efficient legal services. The Debtors believe that both the interruption and duplicative cost involved in obtaining substitute counsel at this juncture would be extremely harmful to the Debtors and their estates.

10. Kirkland is a full service, 2,700-attorney law firm representing global clients in a wide range of matters. Kirkland has provided legal services to the Debtors through a core group of dedicated attorneys and staff that has developed a close working relationship with the Debtors and has become intimately familiar with key issues that may become critical in potential litigation. For these reasons, the Debtors believe that Kirkland is well-qualified to provide the requested services and that Kirkland's employment as special litigation counsel for the purposes specified herein is in the best interest of the Debtors' estates.

<div align="center"><b><u>Services to be Provided</u></b></div>

11. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Kirkland to render certain legal services in its capacity as special litigation counsel only upon the Debtors' request. Specifically, Kirkland will continue to provide legal services to the Debtors regarding certain pending constitutional litigations, appeals, Supreme Court matters, and/or future litigations that may be brought in this or another court and the specific matters set forth on **<u>Schedule 2</u>** to **<u>Exhibit B</u>**.

12. Kirkland is uniquely positioned to handle these matters for the Debtors because it has been advising the Debtors regarding the constitutional issues presented by these matters for

<div align="center">5</div>

several years and is intimately familiar with the relevant facts and legal issues. Moreover, Kirkland has a long-standing relationship with the Debtors, and Kirkland has gained considerable knowledge of the Debtors' business operations to the extent necessary to effectively provide the anticipated services. If the Debtors were required to retain different counsel to provide these services, the Debtors would incur significant expenses in transitioning to new counsel and bringing new counsel up to speed. Accordingly, the Debtors seek to continue to employ Kirkland to provide the above-referenced services during the chapter 11 cases.

13.     Accordingly, in light of the scope of services to be provided by Kirkland during these Chapter 11 Cases, Kirkland is properly employed pursuant to section 327(e) of the Bankruptcy Code.

## Professional Compensation

14.     Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with the services rendered, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court. The hourly rates and corresponding rate structure Kirkland will use is are the same hourly rates and corresponding rate structure that Kirkland uses in other litigation matters, as well as similar complex corporate, securities, and restructuring matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that certain complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

15.     Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

App. 318

16.      Kirkland's current hourly rates for matters related to these Chapter 11 Cases range

as follows:[3]

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $1,085-$1,895 |
| Of Counsel | $625-$1,895 |
| Associates | $625-$1,195 |
| Paraprofessionals | $255-$475 |

17.      Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for

the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly

rates vary with the experience and seniority of the individuals assigned.  These hourly rates are

subject to periodic adjustments to reflect economic and other conditions.[5]

18.      Kirkland represented the Debtors during the twelve-month period before the

Petition Date, using the hourly rates listed above and in the Murphy Declaration.  Moreover, these

---

[3]      For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[4]      Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[5]      For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

hourly rates are consistent with the rates that Kirkland charges other comparable litigation clients, regardless of the location of the litigation. [6]

19.     The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform for the Debtors.

20.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

21.     To ensure compliance with all applicable deadlines, from time to time Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

22.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Kirkland does not charge its clients for incoming facsimile transmissions.  Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research.  Computer-assisted legal research is used whenever the researcher determines that using

---

[6]     As set forth in the Murphy Declaration, Kirkland provides the Debtors with a 15% discount as a product of the preexisting attorney-client relationship between Debtors and the principal partners on Debtors' matters while those partners were practicing at a different law firm.

App. 320

Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

23. Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

24. As of the Petition Date, the Debtors owe Kirkland $325,997.82 for legal services rendered before the Petition Date.

## No Adverse Interest

25. To the best of the Debtors' knowledge, and as set forth in the Murphy Declaration: (a) Kirkland does not represent or hold any interest adverse to the Debtors or to their estate with respect to the matters upon which it is seeking to be employed as special litigation counsel as required by section 327(e) of the Bankruptcy Code, and (b) Kirkland has no connection to the Debtors, their creditors, or their related parties, except as may be disclosed herein or in the Murphy Declaration.

26. Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

27. The Debtors seek retention of Kirkland as special litigation counsel pursuant to section 327(e) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

App. 321

> [M]ay employ, for a specified special purpose . . . an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

28.      Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

29.      In considering whether to appoint special litigation counsel, courts generally consider whether "(1) employment of the attorney [is] for a specified special purpose, which does not include representing the trustee in conducting the case, (2) the attorney . . . previously represented the debtor, (3) the employment of the attorney [is] in the best interest of the estate, and (4) the attorney [does] not have any interest adverse to the debtor or the estate[.]" *In re Johnson*, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010); *see also In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special litigation counsel and the interest of the estate are identical with respect to the matter for which special litigation counsel is retained, there is no conflict and the representation can stand").

30.      The Debtors are requesting authorization to retain Kirkland only with respect to the specific matters listed on **Schedule 2** to **Exhibit B**.  From time to time, Kirkland provides the Debtors with general litigation strategy advice that may result in Kirkland's retention on a new matter.  To the extent Kirkland is retained on an additional matter not listed in **Schedule 2** to

**Exhibit B** during these cases, Kirkland will file a supplemental declaration disclosing such matter. Moreover, Kirkland has represented the Debtors in these matters or matters raising comparable issues for the last four years and allowing Kirkland to continue this representation will provide beneficial continuity to the Debtors' estate. The Debtors submit that for all the reasons stated above and in the Murphy Declaration, the employment of Kirkland by the Debtors is in the best interests of the Debtors' estates and satisfies all other standards for retention under section 327(e) and Rule 2014(a).

## Notice

31.    The Debtors have caused notice of this Application to be provided by electronic mail, facsimile, regular or overnight mail, and/or hand delivery to the Master Service List. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

32.    No prior application for the relief requested herein has been made to this or any other court.

App. 323

WHEREFORE, for the reasons set forth herein and in the Murphy Declaration, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as the Court may deem just and proper.

Dated: February 17, 2021

/s/ Patrick J. Neligan, Jr.

Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
Neligan LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301